**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELLEN GERHART, et al.,** | : | |
| **Plaintiffs** | : | **No. 1:17-cv-01726** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **ENERGY TRANSFER** | : | |
| **PARTNERS, L.P., et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by: (1) Defendants Sheriff William Walters, Deputy Sheriff Doe, Deputy Sheriff Poe, and Deputy Sheriff Roe (the "Sheriff/Deputies Defendants") (Doc. No. 17); (2) Defendants Energy Transfer Partners, L.P. ("Energy Transfer Partners"), Sunoco Logistics, L.P. ("Sunoco Logistics"), and Sunoco Pipeline, L.P. ("Sunoco Pipeline") (collectively referred to herein as the "Sunoco Defendants") (Doc. No. 19); (3) Defendant TigerSwan, LLC ("TigerSwan") (Doc. No. 33); and (4) Defendant Nick Johnson ("Johnson") (Doc. No. 47). For the reasons provided herein, the Court will grant the motions.

## I.  BACKGROUND

### A.  Procedural Background

Plaintiffs Ellen Gerhart, Elise Gerhart, Alex Lotorto ("Lotorto"), and Elizabeth Glunt ("Glunt") (collectively referred to herein as "Plaintiffs") initiated the above-captioned action by filing a complaint in this Court on September 25, 2017. (Doc. No. 1.) That eight-count complaint asserts claims of: malicious prosecution, false arrest, abuse of civil process, nuisance, invasion of privacy, trespass, and violations of First Amendment and Equal Protection rights against numerous defendants. (Id. at 29-35.)

On November 28, 2017, the Sheriff/Deputies Defendants[1] and the Sunoco Defendants filed motions to dismiss for failure to state a claim. (Doc. Nos. 17, 19.) Defendant TigerSwan timely filed a motion to dismiss for failure to state a claim on January 2, 2018. (Doc. No. 33.) Defendant Johnson timely filed a motion to dismiss for failure to state a claim on March 8, 2018. (Doc. No. 47.) On March 22, 2018, Plaintiffs filed an unopposed motion to amend/correct their complaint. (Doc. No. 49.) The Court granted that motion on March 26, 2018, and Plaintiffs' amended complaint was deemed filed as of March 22, 2018. (Doc. No. 51.) Additionally, the Court ordered that all motions to dismiss filed by Defendants were deemed to be responsive to the amended complaint and that all briefs in support of and in opposition to those motions would be treated as briefs in support of and in opposition to the motions to dismiss the amended complaint. (Id.) Similar to the original complaint, Plaintiffs' eight-count amended complaint (Doc. No. 49-1), also asserts claims of: malicious prosecution, false arrest, abuse of civil process, nuisance, invasion of privacy, trespass, and violations of First Amendment and Equal Protection rights against numerous defendants. (Id. at 30-36.) Accordingly, as all four pending motions to dismiss are fully briefed, they are ripe for disposition.[2]

---

[1] After Sheriff Walters and Deputy Sheriffs Doe, Poe, and Roe filed their motion to dismiss (Doc. No. 17), Plaintiffs filed an amended complaint (Doc. No. 49-1), and the Court ordered that the pending motions to dismiss would be deemed responsive to the amended complaint (Doc. No. 51). In the amended complaint, Plaintiffs remove Deputy Sheriff Doe, Deputy Sheriff Poe, and Deputy Sheriff Roe as defendants, while adding Huntingdon County Deputy Sheriffs Jeffrey E. Leonard, Nathan Betts, Daniel McCartney, Larry Cressman, and Nathan Goshorn as defendants. (Doc. No. 49-1 at 2.) Therefore, the Court will construe the motion to dismiss filed by Sheriff Walters and Deputy Sheriffs Doe, Poe, and Roe as applicable to Deputy Sheriffs Leonard, Betts, McCartney, Cressman, and Goshorn. The Court will hereafter refer to Defendants Walters, Leonard, Betts, McCartney, Cressman, and Goshorn as the "Sheriff/Deputies Defendants."

[2] Defendants Lieutenant William Benson, Trooper Michael Ehgartner, and Trooper Dunsmore of the Pennsylvania State Police (the "PSP Defendants") filed a motion to dismiss on November 28, 2017. (Doc. No. 20.) They later filed an answer to Plaintiffs' amended complaint on May 21, 2018. (Doc. No. 55.) On September 28, 2018 the Court deemed the PSP Defendants' previously

### B.    Factual Background[3]

The allegations in the amended complaint stem from several incidents involving demonstrations in opposition to the construction of the Mariner East 2 pipeline on an easement over property owned by Plaintiff Ellen Gerhart in Huntingdon, Pennsylvania.[4] (Doc. No. 49-1.) These demonstrations occurred on March 29, March 30, and April 7, 2016, when tree-cutters began to clear trees on the easement. (Id. ¶¶ 20, 59, 81-82.) In addition, Plaintiffs' allegations also relate to an alleged surveillance and media campaign conducted by several defendants against two of the plaintiffs and their supporters based on their opposition to the pipeline construction. (Id. ¶¶ 95, 100, 102, 107.) Before turning to the events that prompted the instant action, the Court sets forth the numerous parties to this action.

#### 1.    The Parties

##### a.    Plaintiff Ellen Gerhart

Plaintiff Ellen Gerhart resides at 15357 Trough Creek Valley Pike in Huntingdon, Pennsylvania (the "Property"), which she owns with her husband, Stephen Gerhart. (Id. ¶¶ 3, 12.) She was present at the Property during the demonstration in opposition to the pipeline construction on March 30, 2016. (Id. ¶¶ 59-60.) She was arrested during the demonstration on March 30, 2016 and charged with indirect criminal contempt and disorderly conduct. (Id. ¶¶ 63-67.) The next week, on April 7, 2016, she was arrested again on the Property and charged with

---

filed motion to dismiss withdrawn pursuant to Local Rule 7.5.1. (Doc. No. 56.) Thus, the Court does not address the claims against the PSP Defendants.

[3] Except where indicated otherwise, the following background information is taken from the allegations of Plaintiffs' amended complaint. (Doc. No. 49-1.)

[4] The Mariner East 2 pipeline is a proposed natural gas pipeline that runs through Pennsylvania, West Virginia, and Ohio. (Doc 49-1 at 2, ¶ 96.)

indirect criminal contempt and disorderly conduct after a separate confrontation with police and a tree-cutting crew. (Id. ¶¶ 68-74.)

### b. Plaintiff Elise Gerhart

Plaintiff Elise Gerhart also resides at the Property with Ellen and Stephen Gerhart. (Id. ¶¶ 3, 12.) She was present during the demonstrations on the Property on March 29, 2016 and April 7, 2016. (Id. ¶¶ 78-82.) On both March 29 and April 7, Elise engaged in tree-sitting, which entails occupying a tree as a form of protest so that it cannot be cut down without seriously injuring or harming the occupant. (Id.) On April 7, 2016, while Elise was tree-sitting, an unidentified law enforcement officer informed her that she would be charged with a crime. (Id. ¶ 86.) Subsequently, Elise Gerhart was charged with summary and misdemeanor disorderly conduct. (Id. ¶ 87.)

### c. Plaintiffs Alex Lotorto and Elizabeth Glunt

Plaintiffs Alex Lotorto and Elizabeth Glunt are supporters of the Gerharts who were on the Property on March 29, 2016 during the demonstration in opposition to the pipeline construction, with the Gerharts' permission. (Id. ¶¶ 4, 5, 28-29, 42.) Both Plaintiffs Lotorto and Glunt were arrested during the demonstration on March 29, 2016 and charged with disorderly conduct and criminal contempt. (Id. ¶¶ 32-36, 50-52.)

### d. Pennsylvania State Police Defendants and Huntingdon County Sheriff's Office Defendants

Defendants Lieutenant William Benson, Trooper Michael Ehgartner, and Trooper Dunsmore (the "PSP Defendants") are officers of the Pennsylvania State Police.[5] (Id. ¶ 7.) Defendants Sheriff William Walters and Deputy Sheriffs Nathan Betts, Larry Cressman, Nathan

---

[5] As noted supra, the Court deemed the motion to dismiss filed by the PSP Defendants withdrawn, and those Defendants have filed an answer to Plaintiffs' amended complaint. This Memorandum, therefore, does not address the claims asserted against them.

Goshorn, Jeffery E. Leonard, and Daniel McCartney (the "Sheriff/Deputies Defendants") are members of the Huntingdon County Sheriff's Office.[6]  (Id. ¶ 8.)  Plaintiffs allege that the PSP Defendants and the Sheriff/Deputies Defendants were present on the Property during the demonstrations at the Property on March 29, March 30, and April 7, 2016 and participated in the decisions to arrest and charge Plaintiffs, as well as their subsequent arrests, on those dates. (Id. ¶¶ 28, 32-37, 44, 49-54 63, 66-67, 72-74, 88-90.)

### e.      Energy Company Defendants

Defendants Energy Transfer Partners, L.P. ("Energy Transfer Partners"), Sunoco Pipeline, L.P. ("Sunoco Pipeline"), and Sunoco Logistics, L.P. ("Sunoco Logistics") (all three collectively the "Sunoco Defendants") are entities that are involved in the construction of the Mariner East 2 pipeline.  (Id. ¶¶ 13, 95.)  Sunoco Logistics was a subsidiary of Energy Transfer Partners, and Sunoco Logistics owned and operated Sunoco Pipeline, prior to April 28, 2017, when Energy Transfer Partners and Sunoco Logistics merged.[7]  (Id. ¶ 6-6B.)

### f.      Defendant TigerSwan, LLC

Defendant TigerSwan, LLC ("TigerSwan") is a private security company located in North Carolina that had previously been hired by Energy Transfer Partners to provide surveillance and other "military-style counterterrorism measures" during the 2016 Standing Rock

---

[6] While the amended complaint lists Deputy Sheriffs Cressman and Goshorn as parties to this action (Doc. No. 49-1 at ¶ 8), they are not named in any of the amended complaint's counts (id. at 29-35).  Accordingly, the Court will terminate Defendants Cressman and Goshorn as defendants in this action.  See Barrett v. City of Allentown, 152 F.R.D. 50, 54 (E.D. Pa. 1993) (citing Schwartz v. Steven Kramer & Assoc., No. 90-cv-4943, 1991 WL 133507 (E.D. Pa. July 17, 1991)) ("It is axiomatic that a plaintiff can collect damages under a count only where the defendants are named as responsible parties.").

[7] Plaintiffs refer to the Sunoco Defendants interchangeably throughout the amended complaint because "Sunoco Logistics and Sunoco Pipeline were subsumed by Energy Transfer Partners." (Doc. No. 49-1 at ¶ 6E.)

demonstrations in the Midwestern United States. (Id. ¶¶ 10, 93-94.) Plaintiffs allege that Energy

Transfer Partners hired TigerSwan to provide their services, including surveillance, social media

engagement, and counterintelligence, in relation to the construction of the Mariner East 2

pipeline project in Pennsylvania. (Id. ¶ 95.)

### g. Defendant Nick Johnson

Defendant Nick Johnson is a social media consultant from North Carolina. (Id. 11.)

Plaintiffs allege that Energy Transfer Partners hired Johnson to produce and disseminate content

in opposition to the Gerharts and their supporters through social media and other online

platforms. (Id. ¶¶ 106-08, 115-25, 129.)

### 2. The Gerhart Property, the Mariner East 2 Pipeline, and the Court of Common Pleas Order

As previously noted, Plaintiff Ellen Gerhart and her husband own and reside at 15357

Trough Creek Valley Pike in Huntingdon, Pennsylvania (the "Property"). (Id. ¶ 12.) The

Gerharts purchased the 27-acre parcel of land in 1983 and have since constructed their home on

it. (Id.) The Property is substantially wooded and includes a stream, a small pond, and a

wetlands area. (Id.)

On July 21, 2015, Sunoco Logistics, acting through Sunoco Pipeline, filed a Declaration

of Taking in the Huntingdon County Court of Common Pleas pertaining to a section of the

Property, in order to facilitate the construction of the Mariner East 2 pipeline. (Id. ¶ 13.) As a

result of that filing, the Huntingdon County Court of Common Pleas granted Sunoco Logistics an

easement over the Property (the "Easement").[8] (Id.)

---

[8] The legality of this taking and easement are the subject of separate, ongoing litigation in Pennsylvania state court. (Id. ¶ 14.)

Over nine months later, on March 28, 2016, the day before the Sunoco Defendants began clearing trees on the Easement (Id. ¶ 20), the Huntingdon County Court of Common Pleas issued an order (the "Court of Common Pleas Order"), stating, in part, as follows:[9]

> Stephen Gerhart and Ellen Gerhart and any and all parties or persons acting in concert with them as well as any and all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof are hereby restrained and enjoined pending further Order of Court from barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerharts' property . . . . Stephen and Ellen Gerhart and all persons acting in concert with them as well as all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof are hereby restrained and enjoined pending further Order of Court from barring, preventing, or otherwise interfering in any way with Sunoco Pipeline's removing of or clearing trees and shrubbery on said easement.

(Doc. No. 17-1 at 1.)  The Court of Common Pleas Order further states that:

> [T]he Sheriff of Huntingdon County is directed to coordinate with the Pennsylvania State Police to enforce this Court's Order.  In the event that the Sheriff finds that anyone is in violation of this Court's Order, they shall be taken into custody, charged with indirect criminal contempt and brought directly to this Court on the next time and date the Court is in business.

(Id. at 2.)

### 3.    Demonstration and Arrests at the Property on March 29, 2016

On the same day that the Huntingdon County Court of Common Pleas issued its order, the Clean Air Council created a public Facebook event called "Stop Sunoco's Pipeline Law Breaking in PA!," which encouraged opposition to the tree-cutting and pipeline construction that was planned to occur on the Easement.  (Doc. No. 49-1 ¶ 19.)  On March 29, 2016, the next day,

---

[9] Although Plaintiffs' amended complaint (Doc. No. 49-1), does not state the full text of the Court of Common Pleas Order, the Court can consider matters of public record when examining a Rule 12(b)(6) motion.  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").  Accordingly, because the Court of Common Pleas Order is a matter of public record, the Court has considered its text in full and included relevant portions of that text in this Memorandum.

dozens of demonstrators arrived at the Property to express their support for the Gerharts and their opposition to the pipeline construction.  (Id. ¶ 22.)

Plaintiffs allege that the Sunoco Defendants also arrived at the Property on March 29, 2016, escorted by Pennsylvania State Police troopers and members of the Huntingdon County Sheriff's Office, to begin cutting down and clearing trees on the Easement.  (Id. ¶ 20.)  At some point on March 29, 2016, Plaintiff Lotorto approached Defendants Lieutenant Benson and Sheriff Walters on the Gerhart Property to discuss safety concerns regarding the tree-cutting on the Easement.  (Id. ¶ 28.)  Plaintiff Lotorto was using a Walkie-Talkie to communicate with other demonstrators on the Property in order to advise them as to where tree-cutting crews were located so that the demonstrators could avoid being injured by falling trees.  (Id. ¶ 29.)  According to the amended complaint, at no point did Plaintiff Lotorto direct anyone to interfere with the tree-cutting or access to the Easement, nor did Plaintiff Lotorto enter the Easement at any point.  (Id. ¶¶ 29-30.)  Several hours after Plaintiff Lotorto first spoke with Defendants Benson and Walters, Lieutenant Benson went to his car, retrieved several sheets of paper, then approached Plaintiff Lotorto and asked, "Is your name Alex Lotorto?"  (Id. ¶ 31.)  Plaintiff Lotorto responded affirmatively.  (Id.)  A short time later, Defendant Deputy Sheriff Leonard read the Court of Common Pleas Order to Plaintiff Lotorto, at which point Plaintiff Lotorto was handcuffed and placed in a Pennsylvania State Police vehicle.  (Id. ¶¶ 32.)

Plaintiffs allege that Defendants Ehgartner, Benson, Walters, and Leonard knew that Plaintiff Lotorto had not entered the Easement or violated the Court of Common Pleas Order. (Id. ¶ 33.)  However, Plaintiffs assert that Defendants Ehgartner, Benson, Walters, Leonard, unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers, and the Sunoco Defendants arrested Plaintiff Lotorto and charged him with disorderly conduct and

criminal contempt.  (Id. ¶ 34.)  Plaintiff Lotorto was then detained until April 1, 2016 because he could not afford to post the initial bail assessment.  (Id. ¶¶ 38-40.)  All charges against him were eventually dismissed.  (Id. ¶ 41.)

Plaintiff Glunt was among the demonstrators present on the Property on March 29, 2016.  (Id. ¶ 42.)  Plaintiff Glunt saw tree-cutters approaching a tree that was occupied by another demonstrator.  (Id. ¶ 44.)  She then approached two tree-cutters and Defendants Deputy Sheriffs Betts and McCartney and told them that the tree-cutting was putting demonstrators occupying the trees at immediate risk of injury.  (Id.)  When nobody took action in response to her warnings, Plaintiff Glunt entered the Easement in order to warn the tree-cutters that they were endangering the demonstrators occupying the trees.  (Id. ¶ 45.)  Plaintiff Glunt did not interfere with any of the tree-cutting operations in the Easement, and exited upon warning the tree-cutters.  (Id.)

Plaintiffs allege that Defendants Betts and McCartney knew that Plaintiff Glunt had not barred, prevented, or interfered with the tree-cutting or access to the Easement (id. ¶ 49.), but that they nevertheless stopped Plaintiff Glunt when she left the right of way, read the Court of Common Pleas Order to her, told her that she had violated the Court of Common Pleas Order, and then arrested her.  (Id. ¶¶ 46, 50.)  Plaintiffs allege that Defendants Betts and McCartney, in agreement with Defendants Walters, unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers, and the Sunoco defendants, charged or caused Plaintiff Glunt to be charged with disorderly conduct and criminal contempt.  (Id. ¶ 51.)  Plaintiff Glunt was detained, during which time she was strip-searched and alleges that suffered emotional distress and humiliation.  (Id. ¶¶ 55-56.)  After less than 24 hours in detention, Plaintiff Glunt was released when her relatives posted bail.  (Id. ¶ 57.)  The charges against Plaintiff Glunt were

dropped after she successfully completed an accelerated rehabilitative disposition ("ARD") program.  (Id. ¶ 58.)

Plaintiff Elise Gerhart engaged in tree-sitting (occupation of a tree as a form of protest) on the Gerhart Property on March 29, 2016, along with several other demonstrators.  (Id. ¶¶ 78-79.)  Plaintiffs allege that multiple tree-cutters joked about hurting or killing Plaintiff Elise Gerhart while she was tree-sitting, but Defendant Dunsmore and other law enforcement officers watched and did not respond.  (Id. ¶ 83.)  Eventually, Elise Gerhart and all of the other demonstrators left their trees on that date.  (Id. ¶ 80.)

### 4.	Demonstration and Arrest at the Property on March 30, 2016

On March 30, 2016, both the tree-cutting and the demonstration against the construction of the pipeline resumed.  (Id. ¶ 59.)  Plaintiff Ellen Gerhart heard a loud crash while she was on the Property, near the Easement.  (Id. ¶ 60.)  When she saw tree-cutting occurring in a location she considered close enough to demonstrators to put them at risk of injury, she approached the Easement to warn the tree-cutters that they were too close to the demonstrators, but did not enter the Easement and maintained what she considered a safe distance from the tree-cutting.  (Id. 61-63.)

Plaintiffs allege that Defendants Trooper Dunsmore, Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, State Police troopers, and the Sunoco Defendants then approached Ellen Gerhart and suggested that she was creating a dangerous situation.  (Id. ¶ 63.)  They then handcuffed her and transported her to the Pennsylvania State Police barracks. (Id.)  On that same date, Ellen Gerhart was charged with disorderly conduct and indirect criminal contempt.  (Id. ¶ 66.)  She was released on $5,000 unsecured bond on or about March 30, 2016.  (Id. ¶ 66.)

**5. Demonstration, Confrontation and Arrests at the Property on April 7, 2016**

The tree-cutting crews returned to the property on April 7, 2016, allegedly in spite of the fact that the Sunoco Defendants had already acknowledged in their court filings that they were prohibited from cutting down trees after March 31, 2016 in accordance with United States Fish and Wildlife Services ("USFWS") regulations pertaining to the protection of Indiana bat habitats. (Id. ¶ 68.) When the crews began to cut down trees, Ellen Gerhart and her daughter approached the crews and informed them that they were contravening the Court of Common Pleas Order and the USFWS regulations. (Id. ¶ 69.) Sunoco's environmental consultant disagreed and said that the Gerharts could call the police if they thought the Court of Common Pleas Order was being violated. (Id. ¶ 70.) Pennsylvania State Police troopers eventually arrived. (Id. ¶ 71.) Plaintiffs allege that Defendant Trooper Dunsmore, acting in concert with Defendants Walters, Cressman, Goshorn, unnamed Pennsylvania State Police troopers, and the Sunoco Defendants, arrested Ellen Gerhart and charged her with disorderly conduct and indirect criminal contempt. (Id. ¶ 72.) Ellen Gerhart was taken to Huntingdon County Jail and transferred to Centre County Correctional Facility the same day. (Id. ¶ 75.) During her detention, she alleges that she suffered mental and emotional distress and humiliation. (Id. ¶ 76.) Ultimately, all charges against Ellen Gerhart were dropped. (Id. ¶ 77.)

On April 7, 2016, Elise Gerhart again occupied a tree in protest of the tree-cutting. (Id. ¶ 82.) She remained in the tree for between one and two days. (Id.) While Elise Gerhart occupied the tree on April 7, 2016, law enforcement officers informed her that she would be charged with a crime. (Id. ¶ 86.) Elise Gerhart was ultimately charged with summary and misdemeanor disorderly conduct. (Id. ¶ 87.) She was the only tree-sitter to be charged with a crime. (Id.) Plaintiffs allege that Defendants Dunsmore, Walters, and the Sunoco Defendants, acting in

concert with unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers, had an opportunity to arrest and charge all of the tree-sitters, but instead chose to single out Elise Gerhart.  (Id. ¶ 89.)  Ultimately, all of the charges against Elise Gerhart were dismissed.  (Id. ¶ 91.)

### 6.     Overarching Allegations Regarding Plaintiffs' Arrests and Charges

Plaintiffs allege common allegations to each of the incidents involving their arrests on March 29, March 30, and April 7, 2016, and the charges brought against them.  For each of the four arrests (Plaintiffs Lotorto and Glunt on March 29, Plaintiff Ellen Gerhart for the first time on March 30, and Plaintiff Ellen Gerhart again on April 7) and the charges brought against Plaintiff Elise Gerhart, Plaintiffs claim that the defendants involved in each decision falsely swore that Plaintiffs had persisted in their conduct "after reasonable warning or request to desist" in order to charge them with misdemeanor, rather than summary, offenses.  (Id. ¶¶ 36, 52, 67, 73, 88.)  Plaintiffs also claim that the defendants involved in the arrests of Plaintiffs Ellen Gerhart (on April 7, but not on March 30), Glunt, and Lotorto, as well as the charging of Elise Gerhart, acted in order "to send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights."  (Id. ¶¶ 37, 53, 74, 90.)

### 7.     Surveillance of the Property

Plaintiffs allege that Defendant Energy Transfer Partners had previously hired Defendant TigerSwan, a private security agency, to provide services pertaining to demonstrations against pipeline projects, including the Dakota Access Pipeline, in which Energy Transfer Partners was involved, and engaged TigerSwan to provide services, including surveillance, monitoring, social media engagement, and counter-intelligence, in connection with the Mariner East 2 pipeline

project in Pennsylvania.  (Id. ¶¶ 92-93, 95.)  In that role, TigerSwan has been operating in

Pennsylvania, where it obtained a business license, since at least April 2017, engaging in

surveillance of the Property.  (Id. ¶¶ 96-97, 100.)  This surveillance included the flying of

helicopters and drones at a low altitude over the Property (outside of the Easement), shining

high-beams onto the Property at night from unmarked vehicles parked near the Property, and

sending employees or agents onto neighboring properties.  (Id. ¶ 100.)  Plaintiffs allege that all of

these activities have caused unreasonable noise, annoyance, and other disturbances that have

interfered with the Gerharts' use and enjoyment of the Property.  (Id.)

### 8.    Media Campaign Against the Gerharts and Their Supporters

Plaintiffs allege that the Sunoco Defendants and TigerSwan sent an infiltrator, who

posed, under false pretenses, as a supporter of the Gerhart's interests, onto the Property.  (Id. ¶

101.)  Without authorization, license, or privilege, the infiltrator took photographs of Ellen

Gerhart, Elise Gerhart, and their supporters, which were then posted on the Facebook page for

the group PA Progress.  (Id. ¶ 102.)  Posts on the PA Progress Facebook page also identified

where Elise Gehart works, her car, and the Gerharts' driveway.  (Id.)

Plaintiffs allege that Defendant TigerSwan and/or Defendant Johnson have also made

false allegations against the Gerharts and their supporters through the website

blackbadgerreport.com.  (Id. ¶¶ 105-07.)  Plaintiffs allege that posts on blackbadgerreport.com

falsely claim that Elise Gerhart and her supporters are "fronts for the Russian government to

disrupt domestic energy markets," and falsely characterize a screenshot of Elise Gerhart's

appearance on Occupy.com's "Act Out" as evidence of her appearing on Russian television.

(Id. ¶¶ 105-06.)  The article that claims that Elise Gerhart is a front for the Russian government

is authored by "Nate Clay," which Plaintiffs allege is a pseudonym of Defendant Johnson.  (Id. ¶ 108.)

Plaintiffs assert that Defendants TigerSwan and Johnson have also coordinated, on behalf of Energy Transfer Partners, to create and disseminate a video that discredits the Gerharts and their supporters.  (Id. ¶¶ 115-16.)  The video features an actor whom Plaintiffs allege Defendant Johnson recruited personally.  (Id. ¶ 118.)  Among other commentary, the video lists multiple locations where Elise Gerhart and the group's other "ringleaders" spend time and urges viewers to stay away from Elise Gerhart and the other "ringleaders" and to call the Huntingdon County Sheriff's Office if they see anything suspicious.  (Id. ¶ 116.)

Plaintiffs further allege that the PA Progress Facebook page features a posted link to the same video.  (Id. ¶ 118.)  Additionally, the PA Progress page also allegedly posted a link to the blackbadgerreport.com article that accuses Elise Gerhart of working for the Russian government.  (Id. ¶ 121.)  Other posts on the PA Progress page allegedly characterize Elise Gerhart as "anarchist," claim that she is sabotaging pipelines and the environment, allege that she associates with criminals, identify her address, and make other claims regarding Elise Gerhart and her family.  (Id. ¶ 122.)  Plaintiffs allege that the posts on the PA Progress Facebook page and blackbadgerreport.com have caused Elise Gerhart to face both reputational harm and threats of death or injury toward her and her supporters.  (Id. ¶ 124.)  Plaintiffs allege that as a result, Elise Gerhart has experienced both mental anguish and emotional distress.  (Id.)

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible

right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly

give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp. 998 F.2d at 1196).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).  With this standard in mind, the Court turns to the arguments articulated in Defendants' motions to dismiss.

## III.   DISCUSSION

In their amended complaint, Plaintiffs set forth eight counts against various defendants, four of which are asserted pursuant to 42 U.S.C. § 1983.  These four claims include malicious prosecution claims (Count I), false arrest claims (Count II), Equal Protection claims (Count III), and First Amendment claims (Count IV).  The remaining four counts are asserted pursuant to Pennsylvania law, and include abuse of civil process claims (Count V), nuisance claims (Count VI), invasion of privacy claims (Count VII), and trespass claims (Count VIII).  (Doc. No. 49-1.) The Court addresses each of the claims in the amended complaint as they pertain to the relevant Defendants in turn.

### A.    Section 1983 Claims

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 against various defendants under

Counts I, II, III, and IV of the amended complaint.

### 1.    Legal Standard Applicable to a Section 1983 Claim

Section 1983 provides citizens a means to redress violations of federal law committed by

state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States of other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate

violations of federal law committed by state actors."  Pappas v. City of Lebanon, 331 F. Supp. 2d

311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To

state a claim under this section, a plaintiff must allege that: (1) the conduct complained of was

committed by persons acting under color of state law; and (2) the conduct violated a right,

privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v.

Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S.

42, 48 (1988)).

### 2.    Section 1983 Claims Against the Sunoco Defendants (Counts I, II, III, and IV)

Plaintiffs assert Section 1983 claims against Defendants Energy Transfer Partners,

Sunoco Logistics, and Sunoco Pipeline in Counts I, II, III, and IV of the amended complaint,

respectively, asserting malicious prosecution claims by Plaintiffs Lotorto and Ellen Gerhart

(Count I), false arrest claims by Plaintiffs Lotorto, Glunt, and Ellen Gerhart (Count II), Equal

Protection claims by Plaintiff Elise Gerhart (Count III), and First Amendment claims by all Plaintiffs (Count IV).  (Doc. No. 49-1 at 30-33.)

### a.      State Action

To establish a Section 1983 claim, a plaintiff must allege that the conduct complained of was committed by persons acting under color of state law.  Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994) (quoting West, 487 U.S. at 48).   The Sunoco Defendants argue that Plaintiffs' amended complaint has failed to sufficiently allege that they were acting under color of state law.  (Doc. No. 29 at 20-21).  Plaintiffs argue that they have sufficiently alleged that the Sunoco Defendants were acting under color of state law under a theory of joint action.  (Doc. No. 35 at 17.)

### i.      Legal Standard Applicable to Section 1983 State Action

"Generally, private actors do not act under color of state law, thus are not liable under Section 1983.  However, in certain circumstances, a private individual may be treated as a state actor if there is a close nexus between parties."  Luck v. Mount Airy #1, LLC, 901 F. Supp. 2d 547 (M.D. Pa. 2012) (citing Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)).

One way in which to establish that private actors acted under color of state law is through a theory of joint action.  See Cahill v. Live Nation, 512 F. App'x 227, 230 (3d Cir. 2013).  The Third Circuit has held that to succeed in a joint action theory of private party liability in similar cases, a plaintiff must show that  "(1) the private entity has a 'pre-arranged plan' with the police officers, and (2) under the plan, the police officers will 'substitute their [own] judgment' with that of the private entity's."  Id. at 230 (3d Cir. 2013) (quoting Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984)).

A plaintiff can also allege state action as part of a conspiracy between private and state actors to violate an individual's rights.  See Adams v. Teamsters Local 115, 214 F. App'x 167, 173 (3d Cir. 2007).  To adequately allege state action on the theory of a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive her of a constitutional right under color of state law," with at least one of those actors being a state actor.  Pugh v. Downs, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (citing Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)).  In a Section 1983 case alleging such a conspiracy, "the plaintiff must make specific factual allegations of combination . . . or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events."  Sershen v. Cholish, Civ. Act. No. 3:07-CV-1011, 2008 WL 598111, at *7 (M.D. Pa. Feb. 29, 2008) (quoting Kist v. Fatula, Civ. Act. No. 3:2006-67, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2007)). "[M]ere allegations of . . . a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss."  Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998).

### ii.    Parties' Arguments

The Sunoco Defendants argue that while the Plaintiffs make several conclusory allegations that the Sunoco Defendants acted in agreement with or in concert with law enforcement officers to deprive Plaintiffs of their constitutional rights, Plaintiffs never allege any facts to support such conclusory claims.  (Doc. No. 29 at 21.)  They argue that merely making conclusory allegations of such an agreement does not sufficiently allege state action.  (Id. at 20.) In response, Plaintiffs argue that their amended complaint sufficiently pleads state action on the

part of the Sunoco Defendants under a theory of joint action.[10]  (Doc. No. 35 at 17.)  Plaintiffs

argue that their amended complaint alleges multiple facts demonstrating that an agreement

existed between the Sunoco Defendants and law enforcement personnel.[11]  (Doc. No. 35 at 15-

16, 18.)

---

[10] Plaintiffs appear to advocate for a joint action test that does not require the second prong of the two-prong test first set forth by the Third Circuit in Cruz, 727 F.2d at 81-82.  (Doc. No. 35 at 17-18) ("A private entity participates in joint action through an agreement, understanding, or conspiracy with law enforcement to violate constitutional rights, rendering it a state actor.")  Plaintiffs cite only one case from this Circuit that purports to apply the joint action test in the manner they suggest.  See id.  That case, Drum v. Nasuti, 648 F. Supp. 888 (E.D. Pa. 1986), seems to require only the first prong of the Cruz test to be satisfied in order to allege state action.  See id. at 899-900.  However, the alleged state action in that case, which involved a dispute over the terms of a plea agreement, id. at 899, differs significantly from the alleged state action in this case, which pertains to the arrests and charges brought by law enforcement personnel against Plaintiffs.  The Court's review of the relevant precedent after Cruz reveals that courts in this Circuit have applied Cruz's two-prong approach to this issue in the context of allegations of state action relating to actions of law enforcement officers.  See, e.g., Cahill, 512 F. App'x at 230; Heilimann v. O'Brien, No. 3:14cv1271, 2017 WL 895581, at *3-4 (M.D. Pa. Mar. 7, 2017); Greenberg v. Caesars Entm't Corp., No. 14-cv-4796, 2016 WL 1106885, at *7-9 (E.D. Pa. Mar. 21, 2016); Donnelly v. Kutztown Area Transp. Serv., 198 F. Supp. 3d 499, 509 (E.D. Pa. 2016); Win & Son, Inc. v. City of Phila., No. 13-cv-5977, 2014 WL 641359, at *5 (E.D. Pa. Feb. 19, 2014); Vazquez v. City of Atl. City, No. 12-cv-01752, 2014 WL 2920820, at *4-5 (D.N.J. June 27, 2014).  Accordingly, the Court will apply the Cruz test in this case.

[11] These alleged facts include: that the Sunoco Defendants have admitted their goal of "neutraliz[ing] opposition" to the pipeline construction (Doc. No. 49-1 at ¶ 126.); that law enforcement officers approached Plaintiffs before they interacted with tree-cutters (id. ¶ 27); that the Sunoco Defendants arrived at the Property on March 29, 2016 chaperoned by law enforcement personnel (id. ¶¶ 20, 24); that Defendant Dunsmore and other law enforcement officers did not react when they heard tree-cutters joke about killing or injuring Plaintiff Elise Gerhart when she was tree-sitting (id. ¶ 83); that Defendant Benson consulted several sheets of paper before identifying then arresting Plaintiff Lotorto; the factual circumstances surrounding the arrests of Plaintiffs Lotorto, Glunt, and Ellen Gerhart and the charging of Plaintiff Elise Gerhart (id. ¶¶ 36, 48-54, 62-63, 68-74,79, 85-90); and that the Sunoco Defendants hired Defendant TigerSwan to provide surveillance and counterintelligence services relating to the pipeline construction (id. ¶¶ 93-99).

### iii.    Whether Plaintiffs Have Alleged State Action on Part of the Sunoco Defendants

Upon careful review of Plaintiffs' amended complaint, the briefs of the parties, and the relevant authorities, the Court finds that the Plaintiffs have failed to allege sufficient facts from which a reasonable factfinder could infer that the Sunoco Defendants acted under the color of state law under a theory of joint action or any other theory.  As to the first element of joint action—the existence of a pre-arranged agreement between the private actor defendant and state actors—the Court finds that Plaintiffs have failed to allege facts from which a reasonable factfinder could infer that such an agreement was formed.  The pertinent allegation in Plaintiffs' amended complaint regarding the existence of an agreement between the Sunoco Defendants and law enforcement personnel is as follows:

> [Law enforcement defendants] arrived at the Gerhart property having entered into an agreement with the Energy Transfer/Sunoco defendants to arrest pipeline opponents beyond their authority to do so under the Order or the Constitution, which agreement included fabricating evidence against arrestees to support more serious charges and targeting members of the Gerhart family, for the specific purpose of quieting and chilling the opposition to the pipeline.

(Doc. No. 49-1 at ¶ 25.)  Such an allegation is impermissibly conclusory.  See, e.g., Adams, 214 F. App'x at 173; Surina v. South River Bd. Of Educ., Civ. Act. No. 17-2173(FLW), 2018 WL 1327111, at *4 (D.N.J. Mar. 15, 2018) (finding an allegation "that [the defendant] 'acted in concert with one or more of the other individual defendants'" to be conclusory).  Conclusory allegations of agreement alone, with no supporting facts, are insufficient to sustain an inference by a reasonable factfinder of the existence of an agreement.  See id. at *4-5; see also Twombly, 550 U.S. at 556-57 (finding that conclusory allegations of an agreement are insufficient on their own to allege that agreement's existence in the context of a claim asserted under Section 1 of the Sherman Act).  The other allegations in the amended complaint that pertain to the alleged

agreement between the Sunoco Defendants and law enforcement personnel are likewise conclusory.[12]

Further, Plaintiffs simply allege no facts that plausibly support an inference that such an agreement between the Sunoco Defendants and law enforcement personnel was ever formed. Plaintiffs cite a long list of allegations in their amended complaint as facts from which a reasonable jury could plausibly infer that an agreement existed between the Sunoco Defendants and law enforcement personnel to violate Plaintiffs' rights. (Doc. No. 35 at 15.) The Court finds these facts, when considered in their totality, insufficient to support a reasonable factfinder's inference that any agreement existed between the Sunoco Defendants and law enforcement personnel, as the alleged facts are simply too attenuated to plausibly lead to such a conclusion. For example, the allegation that Defendant Benson retrieved several sheets of paper from his car before he approached Plaintiff Lotorto to identify him before his arrest (Doc. No. 49-1 at ¶ 31), with no allegation as to the content of those sheets of paper, does not plausibly connect Defendant Benson's actions to any sort of agreement between him and the Sunoco Defendants. Likewise, Plaintiffs refer to the various allegations surrounding their arrests in March and April of 2016. (Doc. No. 35 at 15-16, 18.) Besides making conclusory claims that the actions were done "in agreement with" or while "acting in concert with" the Sunoco Defendants, none of the allegations offer facts suggesting any pre-arranged agreement between the Sunoco Defendants and law enforcement personnel.

---

[12] See, e.g., Doc. No. 49-1 at ¶ 36. ("In order to charge Lotorto with a misdemeanor rather than a summary offense, Ehgartner, in agreement with Benson, Walters, Leonard, with unnamed Deputy Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants, further falsely swore that Lotorto had persisted in his conduct "after reasonable warning or request to desist."); see also id. ¶¶ 35, 37, 52-54, 63, 67, 72-74, 88-90.

Plaintiffs also reference the contents of an online article[13] (whose link was included in the amended complaint) in arguing that they have sufficiently alleged that the Sunoco Defendants were acting under color of state law.  (Doc. No. 35 at 16.)  While Plaintiffs did not make any of these specific allegations in their amended complaint, because the link was included in the amended complaint, the Court will regard that link as incorporated into the amended complaint and consider its contents in this analysis.  See Buck, 452 F.3d at 260 (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)) ("In evaluating a motion to dismiss, [the Court] may consider . . . any 'matters incorporated by reference or integral to the claim.'").  Here, the Court finds that because the facts alleged in the article relate to cooperation between Defendant TigerSwan, on behalf of the Sunoco Defendants, and law enforcement in relation to the Dakota Access pipeline in North Dakota, and make no mention of the Mariner East 2 pipeline project or the law enforcement agencies involved in this case, the allegations in the article have no bearing on the existence of any alleged agreement between the Sunoco Defendants and law enforcement in Huntingdon County.  Considering all of the facts pled in the amended complaint, the Court concludes that no reasonable factfinder could plausibly infer that the Sunoco Defendants and law enforcement personnel entered into a pre-arranged agreement sufficient to support the first prong of the joint action test.

Assuming, arguendo, that Plaintiffs' amended complaint could support a reasonable factfinder's inference of a pre-arranged agreement, the Court finds that Plaintiffs' amended complaint also fails to plead facts from which a reasonable jury could plausibly infer that law enforcement personnel substituted the judgment of the Sunoco Defendants for their own, the

---

[13] Alleen Brown, Will Parrish & Alice Speri, Leaked Documents Reveal Counterterrorism Tactics Used at Standing Rock to "Defeat Pipeline Insurgencies, THE INTERCEPT (May 27, 2017), https://theintercept.com/2017/05/27/leaked-documents-reveal-security-firms-counterterrorism-tactics-at-standing-rock-to-defeat-pipeline-insurgencies/.

second prong of the joint action test. This prong requires Plaintiffs to allege facts that plausibly support an inference that a private actor told law enforcement personnel to take a specific course of action and that the law enforcement personnel blindly obeyed. See Cahill, 512 F. App'x at 231. As pled, none of the allegations in the amended complaint set forth facts that plausibly suggest any sort of consultation or exchange between the officers and the Sunoco Defendants during or before Plaintiffs' arrests, let alone that the Sunoco Defendants directed the officers how to proceed and that the officers acted on their command. Accordingly, having concluded that Plaintiffs have failed to allege facts from which a reasonable factfinder could infer that the Sunoco Defendants entered into a pre-arranged agreement with law enforcement personnel, or that that the law enforcement personnel substituted the judgment of the Sunoco Defendants for their own when determining whether to arrest and charge Plaintiffs, the Court finds that Plaintiffs' amended complaint has failed to allege state action under a theory of joint action.

Although Plaintiffs argue only that they have pled state action under a theory of joint action, the Court finds that they have likewise failed to plead state action under any other theory, such as conspiracy. Conspiracy is a separate theory, that although often "present in the same case," requires a test that is distinct from the joint action test. Sershen, 2008 WL 598111, at *5. Consistent with the Court's analysis regarding the first prong of the Cruz test, supra, the Court finds that Plaintiffs have failed to allege facts that would permit a reasonable factfinder's plausible inference that the Sunoco Defendants reached any agreement with law enforcement personnel, let alone one to violate Plaintiffs' rights. Therefore, Plaintiffs' amended complaint fails to sufficiently plead state action under a theory of conspiracy to survive Defendants' motion to dismiss. Accordingly, because state action is a requirement for any claim asserted pursuant to

Section 1983, the Court will grant the Sunoco Defendants' motion to dismiss as to the claims asserted against them in Counts I, II, III, and IV of the amended complaint.

### 3. Section 1983 Claims Against the Sheriff/Deputies Defendants (Counts I, II, and IV)

Plaintiffs assert Section 1983 claims against the Sheriff/Deputies Defendants in Counts I, II, and IV of their amended complaint, respectively, asserting malicious prosecution claims by Plaintiff Lotorto against Defendants Walters and Leonard (Count I); false arrest claims by Plaintiff Lotorto against Defendants Walters and Leonard, and by Plaintiff Glunt against Defendants Betts and McCartney (Count II); and First Amendment Claims by Plaintiff Lotorto against Defendants Walters and Leonard, and by Plaintiff Glunt against Defendants Betts and McCartney (Count IV).  (Doc. No. 49-1 at 30-33.)

### a. Malicious Prosecution Claims (Count I)

In Count I of the amended complaint, Plaintiff Lotorto asserts malicious prosecution claims against Defendants Walters and Leonard on the basis that Defendants Walters and Leonard lacked probable cause to arrest and charge him on March 29, 2016.  (Doc. No. 49-1 at 30; Doc. No. 27 at 5-7.)  The Sheriff/Deputies Defendants have moved to dismiss the claims, arguing that Plaintiffs' amended complaint has failed to allege the necessary elements to sustain claims of malicious prosecution, and further, that even if Plaintiffs have sufficiently alleged the elements of a malicious prosecution claim, they are entitled to qualified immunity as to these claims.  (Doc. No. 18 at 15-19, 24-27.)

### i. Legal Standard Applicable to a Malicious Prosecution Claim

To state a claim for malicious prosecution, a plaintiff must establish that:

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable

cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  The Sheriff/Deputies Defendants argue that Plaintiffs have failed to allege facts sufficient to establish the first, third, and fourth elements.  (Doc. No. 18 at 17-18.) Accordingly, the Court addresses those three elements.

Regarding the first element of a malicious prosecution claim, although prosecutors are typically responsible for the initiation of criminal proceedings, a police officer "may be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." Francis v. Harmon, Civ. Act. No. 13-6009, 2014 WL 617138, at *3 (E.D. Pa. Feb. 18, 2014) (quoting Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. Mar. 30, 2012)).

In regard to the third element, a lack of probable cause, a "police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). However, probable cause will be found to exist when "reasonably trustworthy information or circumstances within a [law enforcement] officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person [in question]." Spiker v. Whittaker, 553 F. App'x 275, 278 (3d Cir. 2014) (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)).  "[T]he probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989).

The determination of whether there was probable cause in a Section 1983 claim is generally for the jury. Collick v. William Paterson Univ., Civ. No. 16-cv-471, 2016 WL 6824374, at *14 (D.N.J. Nov. 17, 2016) (quoting Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)). However, the Court can appropriately find probable cause as a matter of law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [the plaintiff's arrest]." See Montgomery, 159 F.3d at 124 (citation omitted). In terms of the fourth element—that the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice—malice can be inferred from a lack of probable cause. See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) abrogated on other grounds, Albright v. Oliver, 510 U.S. 266 (1994).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" District of Columbia v. Wesby, __U.S. __ (2018) (citation omitted). That means that "there must be sufficient precedent at the time of

action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, __ US __ (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." [14] Id. (internal quotation marks omitted) (quoting Mullenix v. Luna, __ U.S. __ (2015)). The Supreme Court reiterated that the clearly established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. Id. The Supreme Court has emphasized that "the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" Wesby, __ U.S. at __ (quoting Mullenix, __ U.S. at __).

### ii.    Parties' Arguments

The Sheriff/Deputies Defendants argue that Plaintiffs have failed to allege facts sufficient to establish the first, third, and fourth elements of a malicious prosecution claim. (Doc. No. 18 at 17-19.) Regarding the first element, the Sheriff/Deputies Defendants argue that Plaintiffs have failed to plead any facts demonstrating that Defendants Walters or Leonard initiated a criminal proceeding against Plaintiff Lotorto. Defendants contend that the lack of the presence of the charging affidavit as an attachment or exhibit to the amended complaint means that Plaintiff

---

[14] There may be the rare "obvious case," however, where "a body of case law" is not necessary. Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

Lotorto's claim fails the first element. Plaintiffs respond by arguing that they are not required to attach the affidavit as an exhibit to survive a motion to dismiss. (Doc. No. 27 at 5-6.)

Regarding the third element, Defendants Walters and Leonard argue that Plaintiffs have failed to sufficiently plead that the proceeding was initiated without probable cause. (Doc. No. 18 at 18.) They argue that the facts pled in the amended complaint establish that Defendants Walters and Leonard had probable cause to arrest and charge Plaintiff Lotorto. (Id.) They also allege that the amended complaint fails to meet the standard of the test set forth in Franks v. Delaware, 438 U.S. 154 (1978), which they argue is necessary to satisfy the third element. (Doc. No. 18 at 18.) Plaintiffs argue in response that their pled allegations do indicate a lack of probable cause and that Franks is inapplicable under the circumstances of Plaintiff Lotorto's claim. (Doc. No. 27 at 6-7.) Regarding the fourth element, whether the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, the Sheriff/Deputies Defendants allude to Plaintiff not satisfying this element, but fail to proffer more specific arguments in this regard. (Doc. No. 18 at 17-19.)

The Sheriff/Deputies Defendants also question Plaintiffs' mention of a Fourteenth Amendment basis for the malicious prosecution claim. (Id. at 19.) Plaintiffs respond by clarifying that they are citing the Fourteenth Amendment only for purposes of incorporation of their Fourth Amendment claims against state actors and are not asserting any other independent Fourteenth Amendment claim.[15] (Doc. No. 27 at 5.)

The Sheriff/Deputies Defendants also argue that they are entitled to qualified immunity. They argue that their actions, as alleged in Plaintiffs' amended complaint, were "always

---

[15] In regard to Defendants' Fourteenth Amendment arguments, the Court does not construe Plaintiffs' allegations as pertaining to Fourteenth Amendment substantive due process. As Plaintiffs have clarified (Doc. No. 27 at 5), the Court reads the amended complaint's reference to the Fourteenth Amendment as relating to its incorporation of the Fourth Amendment.

objectively reasonable" and that, even if they were mistaken as to the probable cause determination, their mistakes were reasonable and thus not actionable. (Doc. No. 18 at 26-27.) Plaintiffs respond by arguing that the amended complaint plausibly establishes that Defendants Leonard and Walters knowingly violated the law, which defeats their invocation of qualified immunity. (Doc. No. 27 at 12-13.)

### iii. Whether Plaintiff Lotorto Has Stated a Malicious Prosecution Claim Against Defendants Walters and Leonard

Regarding the first element of a malicious prosecution claim, whether the defendants initiated a criminal proceeding against the plaintiff, the Court finds that Plaintiffs' amended complaint sufficiently pleads that Defendants Walters and Leonard initiated the criminal proceeding against Plaintiff Lotorto. In the amended complaint, Plaintiffs allege that Defendants Walters and Leonard participated in the preparation of an affidavit containing false statements (such as Plaintiff Lotorto giving direct orders to others to interfere with the tree-cutting) which ultimately led to Plaintiff Lotorto being criminally charged. (Doc. No. 49-1 at ¶¶ 34-36.) Although Plaintiffs have not included that affidavit as an exhibit, the Court has found no authority indicating that they are required to do so to survive a motion to dismiss. By alleging Defendants' Walters' and Leonard's involvement in the preparation of the affidavit, as well as identifying the alleged falsities within that affidavit, Plaintiffs have sufficiently pleaded the first element of a malicious prosecution claim. See, e.g., Francis, 2014 WL 617138, at *2-5. The allegations in Plaintiffs' amended complaint are thus sufficient, at this early stage of proceedings, to plausibly support an inference by a reasonable factfinder that Defendants Walters and Leonard initiated a criminal proceeding against Plaintiff Lotorto.

Further, in regard to the third element of a malicious prosecution claim—lack of probable cause—the Court finds that Plaintiffs have alleged facts from which a reasonable factfinder could plausibly infer that Defendants Walters and Leonard lacked probable cause to initiate criminal proceedings against Plaintiff Lotorto. Here, Plaintiff Lotorto alleges that while he was on the Property, he approached the law enforcement officers and had a calm discussion with them and communicated with other protesters on a Walkie Talkie. (Doc. No. 49-1 at ¶¶ 28-29.) The Court of Common Pleas Order prohibited the Gerharts and their supporters from "barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerharts' property" or "with Sunoco Pipeline's removing of or clearing trees and shrubbery on said easement." [16] (Doc. No. 17-1 at 2.) The question of probable cause in a Section 1983 suit is generally one for the jury. Boseman v. Upper Providence Twp., 680 F. App'x 65, 68-69 (3d Cir. 2017) (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000)). Although the language of the Court of Common Pleas Order may be characterized as broad, the Court finds that the Plaintiffs have alleged facts from which a reasonable factfinder could infer that Defendants Walters and Leonard lacked probable cause to arrest Plaintiff Lotorto for

---

[16] The dispute here is whether there was probable cause to arrest Plaintiffs for indirect criminal contempt for violating the Court of Common Pleas Order. Under Pennsylvania law, indirect criminal contempt is appropriate when a violation of a court order or decree occurs outside the presence of the court. See Commonwealth v. Brumbaugh, 932 A.2d 108, 110 (Pa. Super. Ct. 2007.) To establish indirect criminal contempt, the prosecution must establish four elements: "1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." Id. (citing Commonwealth v. Ashton, 824 A.2d 1998, 1202 (Pa. Super. Ct. 2003)). Both parties' arguments focus on the violation of the Court of Common Pleas Order in their discussions of probable cause, rather than the specific elements of indirect criminal contempt. (Doc. Nos. 18 at 18, 21-22, 24; 27 at 6-8, 10.) The Court agrees that the determination of probable cause in this circumstance turns on the question of whether plaintiffs violated the Court of Common Pleas Order. See Kauffman v. Kauffman, No. 11-CV-4896, 2014 WL 1281134, at *3 (E.D. Pa. Mar. 27, 2014) ("[U]nder Pennsylvania law . . . a violation [of a court order] is sufficient to justify an arrest on the charge of an indirect criminal contempt.").

violating the Court of Common Pleas Order.[17]  Additionally, because malice, which satisfies the fourth element of a malicious prosecution claim, can be inferred from lack of probable cause, Lippay, 996 F.2d at 1502, the Court finds that Plaintiffs have alleged sufficient facts from which a reasonable factfinder could infer malice on part of Defendants Walters and Leonard.

The Court next turns to Defendants Walters' and Leonard's assertions of qualified immunity.[18]  When assessing whether a defendant is entitled to qualified immunity, the Court must assess both prongs of the qualified immunity test. As pled, Plaintiffs' amended complaint alleges a violation of Plaintiff Lotorto's Fourth Amendment right not to be arrested and prosecuted without probable cause (Doc. No. 49-1 at 40.), which satisfies Plaintiffs' pleading obligations as to the first prong of the qualified immunity test.  See, e.g., Garlanger v. Verbeke, 223 F.Supp. 2d 596, 608 (D.N.J. Sept. 27, 2002).  In regard to the second prong, as a general matter, Fourth Amendment protections from unreasonable searches and seizures are clearly established rights.  See Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) ("[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable

_____

[17] The Court disagrees with Defendants' suggestion that Plaintiffs must satisfy the test set forth in Franks, 438 U.S. at 155-56, in order to fulfill this element.  The Franks test is applicable to challenges of the validity of search warrants, see, e.g., Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) and to false arrest claims in cases involving arrest warrants based on affidavits of probable cause.  See, e.g., Myrick v. Collingdale Borough, No. 11-cv-2791, 2012 WL 4849129, at *10-11 (E.D. Pa. Oct. 12, 2012).  Plaintiff Lotorto's claims do not involve a search warrant or an arrest warrant; rather, his claim is based on a warrantless arrest. (Doc. No. 49-1 at ¶ 34.) Thus, the Franks test is not applicable.

[18] Plaintiffs argue that the Sheriff/Deputies Defendants are not entitled to qualified immunity as to any of the claims asserted against them in the amended complaint because they knowingly violated the law.  (Doc. No. 27 at 12-13.)  The Court rejects this argument, as the qualified immunity test is an objective, rather than subjective, test.  See Johnson v. Anhorn, 416 F. Supp. 2d 338, 361 (E.D. Pa. 2006) (citing Harlow, 457 U.S. at 818-19) ("A government official performing discretionary functions is entitled to qualified immunity from suit insofar as his conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'  The test is objective, rather than subjective.") (internal citations omitted).

cause, was clearly established at the time of [Plaintiff's] arrest.").  Although this right is clearly established in a broad sense, the Court must analyze whether the law is clearly established with particular reference to the specific facts of the case.  <u>White</u>, __ U.S at __.  In order to conclude that the right was clearly established, the Court must consider the circumstances that the officers confronted and find a body of relevant case law addressing similar circumstances that put the lawfulness of the arrest beyond debate.[19]  <u>Wesby</u>, __ U.S. at __ (citing <u>White</u>, __ U.S. at__; <u>al-Kidd</u>, 563 U.S. at 741; <u>Brosseau</u>, 543 U.S. at 199).  None of the parties have addressed the inquiry at this level or cited any relevant Supreme Court or Third Circuit precedent in their briefs.  (Doc. Nos. 18, 27, 32.)  Further, the Court has not located any such precedent holding that a law enforcement officer's decision to arrest and charge an individual with criminal contempt (or a similar charge relating to the violation of a court order) in similar circumstances violated that individual's rights under the Fourth Amendment.  Therefore, the Court concludes that any alleged violation of Plaintiff's Fourth Amendment rights under the facts alleged was not a clearly established right under the second prong of the qualified immunity analysis.  Accordingly, the Court finds that Defendants Walters and Leonard are entitled to qualified immunity as to Plaintiff Lotorto's malicious prosecution claims, and the Court will grant the Sheriff/Deputies Defendants' motion to dismiss as to the claims asserted against them in Count I of the amended complaint.

### b.    False Arrest Claims (Count II)

In Count II of the amended complaint, Plaintiff Lotorto asserts false arrest claims against Defendants Walters and Leonard, and Plaintiff Glunt asserts false arrest claims against

---

[19] Without a body of relevant case law, rare "obvious cases" do exist.  <u>Brosseau</u>, 543 U.S. at 199. However, the Court concludes that this is not such a case, given the actions of Plaintiff Lotorto, as alleged in the amended complaint, and the language of the Court of Common Pleas Order.

Defendants Betts and McCartney on the basis that Defendants Walters, Leonard, Betts, and McCartney lacked probable cause to arrest them on March 29, 2016.  (Doc. Nos. 49-1 at 31-32; 27 at 8-11.)  The Sheriff/Deputies Defendants argue that the dismissal of these claims is warranted because the amended complaint fails to allege the necessary facts to sustain claims of false arrest, and further, even if Plaintiffs have sufficiently alleged the elements of a false arrest claim, Defendants are entitled to qualified immunity as to those claims.  (Doc. No. 18 at 19-22, 24-27.)

### i.  Legal Standard Applicable to a False Arrest Claim

"The proper inquiry in a Section 1983 claim based on false arrest or misuse of the criminal process is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  Additionally, "the test for probable cause is an objective one and 'need only exist as to any offense that could be charged under the circumstances.'"  Primrose v. Mellott, 541 F. App'x 177, 181 (3d Cir. 2013) (quoting Barna, 42 F.3d at 819).  In determining whether a plaintiff has sufficiently alleged the lack of probable cause, the Court assesses whether the "facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti, 71 F.3d at 482.

### ii.  Parties' Arguments

The Sheriff/Deputies Defendants argue that based on Plaintiffs Lotorto's and Glunt's actions as pled in the amended complaint, Plaintiffs Lotorto and Glunt violated the Court of Common Pleas Order and Defendants thus had probable cause to arrest them.  (Doc. No. 18 at 21-22.)  Plaintiffs argue in response that the Sheriff/Deputies Defendants ignore the fact that

probable cause determinations are appropriate for resolution by a jury, and that a jury could conclude, based on the facts alleged, that no reasonable officer could conclude that probable cause existed to arrest Plaintiffs Lotorto or Glunt.  (Doc. No. 27 at 8-10.)  Plaintiffs specifically dispute the Sheriff/Deputies Defendants' contention that Plaintiffs Lotorto's and Glunt's actions, as alleged, constitute facial violations of the Court of Common Pleas Order.  (Id. at 9-10.)

The Sheriff/Deputies Defendants also appear to argue that Plaintiff Glunt's participation in the ARD program precludes her from pursuing a false arrest claim.  (Doc. No. 18 at 22.) Plaintiffs argue in response that Plaintiff Glunt's participation in ARD is irrelevant, and that the false arrest claim rests squarely on an objective probable cause determination.  (Doc. No. 27 at 11.)  The Sheriff/Deputies Defendants also argue that they are entitled to qualified immunity. They argue that their actions, as alleged in Plaintiffs' amended complaint, were "always objectively reasonable" and that, even if they were mistaken as to the probable cause determination, those mistakes were reasonable and thus not actionable.  (Doc. No. 18 at 26-27.) Plaintiffs respond that the amended complaint plausibly alleges that Defendants Walters, Leonard, Betts, and McCartney knowingly violated the law, which defeats their invocation of qualified immunity.  (Doc. No. 27 at 12-13.)

### iii.    Whether Plaintiff Lotorto Has Stated a Claim for False Arrest Against Defendants Walters and Leonard

In its discussion of the Plaintiff Lotorto's malicious prosecution claim, supra, the Court determined that Plaintiffs have alleged sufficient facts to plausibly support an inference by a reasonable factfinder that Defendants Walters and Leonard lacked probable cause to arrest and charge Plaintiff Lotorto.  The probable cause inquiry is the same for false arrest and malicious prosecution claims.  See Romich v. Sears Holding Corp., No. 12-cv-5383, 2013 WL 5925082, at *5 (E.D. Pa. Nov. 4, 2013) (quoting Wright v. City of Phila., 409 f.3d 595, 604 (3d Cir. 2005))

("When the plaintiff 'bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest and prosecution' for the same offense, the establishment of probable cause under the false arrest claim 'also disposes of [the plaintiff's] remaining § 1983 claim [for] malicious prosecution.'"). The Court therefore concludes that Plaintiff Lotorto has sufficiently pled facts from which a reasonable factfinder could plausibly infer that Defendants Walters and Leonard lacked probable cause to arrest him on March 29, 2016. Thus, Plaintiff Lotorto has sufficiently stated a false arrest claim against Defendants Walters and Leonard.

In regard to qualified immunity, the Court finds that because the underlying probable cause determination is the same for the malicious prosecution and false arrest claims in this context, the Court's analysis of qualified immunity as to the malicious prosecution claim, as set forth supra, is instructive here. Although the right here—the right to not be not be arrested for the violation of a court order—differs slightly from the underlying right in the malicious prosecution context, the factual circumstances surrounding the arrest are the same, and the Court has likewise failed to find any precedent that indicates such a right is clearly established. Accordingly, because the law as to this right was not clearly established at the time of the arrest, Defendants Walters and Leonard are entitled to qualified immunity on Plaintiff Lotorto's false arrest claims against them, and the Sheriff/Deputies Defendants' motion to dismiss Count II of the amended complaint will be granted as to those claims.

iv.    **Whether Plaintiff Glunt Has Stated a Claim for False Arrest Against Defendants Betts and McCartney**

Here, Plaintiffs allege that Plaintiff Glunt entered the Easement and approached the members of the tree-cutting crew to speak with them. (Doc. No. 49-1 at ¶¶ 45, 48.) Defendants Betts and McCartney witnessed this and arrested Plaintiff Glunt as she exited the Easement. (Id. ¶¶ 44, 46, 50.) At issue is whether Defendants Betts and McCartney had probable cause to

arrest Plaintiff Glunt for indirect criminal attempt, which is supported by a determination that the arrestee violated a court order. See Kauffman, 2014 WL 1281134 at *3. The language of the Court of Common Pleas Order prohibited the Gerharts and their supporters from "barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerharts' property" or "from barring, preventing, or otherwise interfering in any with Sunoco Pipeline's removing of or clearing trees and shrubbery on said easement." (Doc. No. 17-1 at 1.) The question of probable cause in a Section 1983 suit is generally one for the jury. Boseman, 680 F. App'x at 68-69 (citing Merkle, 211 F.3d at 788). In light of the language of the order and the amended complaint's factual averments regarding Plaintiff Glunt's actions leading up to her arrest, the Court finds that Plaintiff Glunt has alleged sufficient facts from which a reasonable factfinder could infer that Defendants Betts and McCartney lacked probable cause to arrest her on March 29, 2016.[20] Thus, Plaintiff Glunt has sufficiently stated a claim for false arrest against Defendants Betts and McCartney.

In regard to qualified immunity, the Court finds that the specific factual circumstances of Plaintiff's Glunt's false arrest claim and Plaintiff Lotorto's false arrest claim are extremely similar. Although the actions of the plaintiffs differed slightly in the time leading up to their respective arrests, both claims involve decisions by law enforcement officers to arrest and charge

---

[20] The Sheriff/Deputies Defendants appear to argue that because Plaintiff Glunt completed an ARD program, she is barred from asserting a false arrest claim. (Doc. No. 18 at 22.) The Court has failed to find any Supreme Court or Third Circuit precedent that directs this conclusion. The favorable termination of criminal proceedings is an element of a malicious prosecution claim, and the Third Circuit has concluded that participation in an ARD program is not a favorable termination. Gilles v. Davis, 427, F.3d 197, 211-12 (3d Cir. 2005). However, Plaintiff Glunt does not assert a malicious prosecution claim in this action, and false arrest claims do not require favorable termination. See, e.g., Berry v. Kabacinski, No. 1:15-CV-169, 2016 WL 3683158, at *5-10 (holding that lack of favorable termination barred the plaintiff's malicious prosecution claim, while not addressing favorable termination in the analysis of the plaintiff's false arrest claim). Accordingly, the Court concludes that Plaintiff Glunt's participation in an ARD program does not bar her false arrest claim.

the plaintiffs with criminal contempt for violating the Court of Common Pleas Order during the demonstration at the Property on March 29, 2016. The Court has failed to find any precedent that indicates that a Fourth Amendment right to not be arrested for criminal contempt under the alleged circumstances of Plaintiffs' amended complaint is clearly established. The Court concludes, as it did in the context of Plaintiff Lotorto's claim, that the Fourth Amendment rights allegedly violated when Plaintiff Glunt was arrested were not clearly established at that time. Accordingly, because the law was not clearly established at the time of the arrest, Defendants Betts and McCartney are entitled to qualified immunity as to Plaintiff Glunt's false arrest claims against them, and the Court will grant the Sheriff/Deputies Defendants' motion to dismiss as to those claims in Count II of the amended complaint.

### c.      First Amendment Claims (Count IV)

In Count IV of the amended complaint, Plaintiff Lotorto asserts First Amendment claims against Defendants Walters and Leonard, and Plaintiff Glunt asserts First Amendment claims against Defendants Betts and McCartney, pursuant to 42 U.S.C. § 1983, on the basis that Plaintiffs Lotorto and Glunt were arrested and charged on March 29, 2016 in retaliation for their speech in opposition to the pipeline construction. (Doc. No. 49-1 at 33; Doc. No. 27 at 11-12.) The Sheriff/Deputies Defendants argue that Plaintiffs' amended complaint does not allege sufficient facts to support First Amendment claims, and, even if Plaintiffs have sufficiently alleged First Amendment claims against them, they are entitled to qualified immunity as to those claims. (Doc. No. 18 at 23-27.)

### i.      Legal Standard Applicable to a First Amendment Claim

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."

Hartman v. Moore, 547 U.S. 250 (2006) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).  To state a First Amendment claim, a plaintiff must allege: "(1) conduct or speech protected by the First Amendment; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action."  Gagliardi v. Fisher, 513 F. Supp. 2d 457 (W.D. Pa. 2007) (citing Thomas v. Indep. Twp, 463 F.3d 285, 296 (3d Cir. 2006)).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)).  "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation."  Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).  Further, when a Plaintiff is asserting a First Amendment retaliatory prosecution claim, as Plaintiffs are here, they "must allege and prove that the defendant's pursuit of the underlying criminal charge was unsupported by probable cause." [21]  Gagliardi, F. Supp. 2d at 458 (citing Hartman, 547 U.S. at 252).

---

[21] In Hartman, the Supreme Court held that the absence of probable cause "must be pleaded and proven" by a successful plaintiff in connection with "a claim that prosecution was induced by an official bent on retaliation."  Hartman, 547 U.S. at 265-66.  More recently, in Reichle v. Howards, 566 U.S. 658 (2012), the Supreme Court explicitly declined to extend Hartman's requirement of proof of probable cause to claims for retaliatory arrest, as opposed to retaliatory prosecution.  See id.  Yet more recently, in Lozman v. City of Riviera Beach, __ U.S. __ (2018), the Supreme Court was squarely presented with the question of whether a plaintiff was required to plead and prove the lack of probable cause in connection with a claim for retaliatory arrest under the First Amendment, or, stated differently, whether the presence of probable cause bars a

The Sheriff/Deputies Defendants argue that the amended complaint's factual allegations show that Defendants Walters and Leonard did not arrest Plaintiff Lotorto because of his protected speech, but because he was violating the Court of Common Pleas Order.  (Doc. No. 18 at 9-10.)  Similarly, the Sheriff/Deputies Defendants argue that the amended complaint's factual allegations show that Defendants Betts and McCartney did not arrest Plaintiff Glunt because of her protected speech, but, rather, because she was violating the Court of Common Pleas Order. (Doc. No. 18 at 9-10.)  Plaintiffs respond by stating that their amended complaint alleges facts supporting an inference by a reasonable factfinder that the reasons for the arrests were Plaintiffs Lotorto's and Glunt's speech in opposition to the pipeline construction.  (Doc. No. 27 at 11-12.)

Defendants alternatively argue that they are entitled to qualified immunity as to these claims.  (Doc. No. 18 at 24-27.)  Plaintiffs argue in response that the amended complaint

---

First Amendment retaliation claim.  In that case, the Supreme Court declined to establish a bright-line rule, instead concluding that under the particular circumstances of the case, the existence of probable cause did not bar a First Amendment retaliation claim.  Id. at 1954. Ultimately, the Supreme Court found that whether Hartman's requirement applies to a First Amendment retaliatory arrest claim "must await a different case."  Id.  Shortly after issuing its decision in Lozman, the Supreme Court granted a petition for writ of certiorari in Bartlett v. Nieves, 712 F. App'x 613 (9th Cir. 2017), as to the following question:  "In Hartman v. Moore, 547 U.S. 250 (2006), this Court held that probable cause defeats a First Amendment retaliatory prosecution claim under 42 U.S.C. § 1983 as a matter of law.  Does probable cause likewise defeat a First Amendment retaliatory arrest claim under § 1983?"  Bartlett v. Nieves, 712 F. App'x 613 (9th Cir. 2017), cert. granted, No. 17-1174 (U.S. June 28, 2018).  Reviewing Third Circuit precedent against the backdrop of these Supreme Court cases, it remains unclear whether Hartman's probable cause rule pertaining to retaliatory prosecution applies to retaliatory arrests within this Circuit.  See Primrose, 541 F. App'x at 180 ("We have not decided whether the logic of Hartman applies to retaliatory arrest claims . . . .").  Because the Court has found, supra, that Plaintiffs Lotorto and Glunt have sufficiently alleged facts from which a reasonable factfinder could infer a lack of probable cause as to their arrests and the charges brought against them, the Court will assumes without deciding that retaliatory arrest claims require a lack of probable cause.

plausibly establishes that Defendants Leonard, Walters, Betts, and McCartney knowingly violated the law, which defeats their invocation of qualified immunity. (Doc. No. 27 at 12-13.)

>   ### iii. Whether Plaintiff Lotorto Has Stated a First Amendment Claim Against Defendants Walters and Leonard

Here, Plaintiffs allege that Plaintiff Lotorto was engaging in speech in opposition to the pipeline construction. (Doc. 49 at 4, 11-13.) This type of speech qualifies as protected speech. See Eichenlaub v. Twp. of Ind., 385 F.3d 274, 284 (3d Cir. 2004) ("[P]rivate speech (unless obscene or fighting words or the like) is . . . protected."). Second, Plaintiffs have alleged that in retaliation for his opposition to the pipeline construction, Plaintiff Lotorto was arrested and charged without probable cause. This is sufficient retaliatory action to deter a person of ordinary firmness from exercising his first amendment rights, as courts have found that a reasonable jury could infer that an arrest meets this standard. See, e.g., McCoy v. Edwards, No. 3:06-CV-1142, 2009 WL 1794749, at *9 (M.D. Pa. June 23, 2009); Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *8 (M.D. Pa. Oct. 26, 2007). The Court also finds that because of the "unusually suggestive temporal proximity" between the protected speech and the arrest—while, or at least within the same day, Plaintiff was engaged in the protected speech—Plaintiff has alleged sufficient facts from which a reasonable factfinder could infer the existence of a causal link, the third element of a retaliatory arrest claim. See Farrell, 206 F.3d at 279 & n.5 (finding a temporal proximity of two days sufficient to establish a causal link).

To determine whether Defendants Walters and Leonard are entitled to qualified immunity, the Court again must apply the two-prong test to the conduct and rights in question here. al-Kidd, 563 U.S. at 735. As discussed supra, Plaintiff Lotorto has sufficiently pled a First Amendment retaliation claim, satisfying the first qualified immunity prong. The second prong of

the qualified immunity inquiry requires the Court to determine whether the right at issue was clearly established at the time of its alleged violation.  Here, the Court must first define the parameters of the right, and must do so "in light of the specific context of the case, not as a broad general proposition."  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Characterizing the right as "the broad First Amendment right to be free from retaliation for engaging in protected speech" is not particularized enough.  See Reichle, 566 U.S. at 665; Montgomery v. Killingsworth, Nos. 13cv256, 13cv3081, 13cv3082, 2015 WL 289934, at *11 (E.D. Pa. Jan. 22, 2015).  The defined right must be more specific to the context of the particular facts of the case.  See Wesby, __ U.S. at __ (quoting Saucier, 533 U.S. at 202); Montgomery, 2015 WL 289934, at *11.  The Court looks to Montgomery as a good example of a case involving a similar First Amendment retaliation claim in which the district court analyzes the "clearly established" prong of the qualified immunity test in a manner that the Court believes is consistent with White and Wesby.  In Montgomery, the district court defined the specific right in question as "the right to be free from an arrest that is not supported by probable cause and was initiated in retaliation for peacefully criticizing a government official."  Id. (italics omitted).  In the instant case, the Court defines the particular right at issue as the right to be free from an arrest unsupported by probable cause and initiated in retaliation for peacefully protesting private activity in the context of a court order prohibiting interference with that private activity.  The question the Court must consider, then, is whether such a right is clearly established.

In Montgomery, the district court concluded that the right at issue in that case was clearly established.[22]  Id.  While the right identified in Montgomery is similar to the right in the instant

_____

[22] The district court in Montgomery compared the facts of its case to Losch v. Parkesburg, 736 F.2d 903 (3d Cir. 1984).  See Montgomery, 2015 WL 289934, at *11-12.  In Losch, the Third Circuit concluded that the right to be free from an arrest that lacked probable cause and was done

case in that both pertain to claims of arrest in retaliation for protected speech, the Court must consider whether the particular rights are sufficiently similar such that the Court can conclude, based on the recognition of the right in Montgomery and Losch as clearly established, that the right to be free from an arrest unsupported by probable cause and initiated in retaliation for peacefully protesting private activity in the context of a court order prohibiting interference with that private activity was clearly established. The district court in Montgomery noted in its analysis that the rights in that case and in Losch "almost mirror[]" each other and that although the cases "are not factually identical," they are "close enough" to establish that the constitutional question was beyond debate. Id. at *12 (citing al-Kidd, 563 U.S. 732 at 739-41 (2011)). This case differs factually from Montgomery and Losch in two key ways. First, those two cases involved arrestees who criticized government actors, whereas the instant case pertains to speech critical of private activity. Second, this case involves the existence of the Court of Common Pleas Order, the alleged violation of which served as the basis for Plaintiff Lotorto's arrest. Because of these key factual differences, the Court declines to conclude that the right in this case was clearly established on the basis that the right to be free from an arrest that is not supported by probable cause and was initiated in retaliation for peacefully criticizing a government official was clearly established.

The Court notes that the existence of the Court of Common Pleas Order makes the circumstances of the instant case particularly unique. The Supreme Court has advised that the

---

in retaliation for the plaintiff's criticism of a police officer was a clearly established right. Losch, 736 F.2d at 910. By comparing the right in its case to the right identified as clearly established in Losch, as well as comparing the alleged facts in its case to those in Losch, the district court concluded that the right to be free from an arrest that is not supported by probable cause and was initiated in retaliation for peacefully criticizing a government official was clearly established at the time of the plaintiff's arrest, and "any reasonable officer would have known" that the arrest was unconstitutional. See Montgomery, 2015 WL 289934, at *11-12.

fact that a case presents unique facts and circumstances should be an "important indication" that a right is not clearly established. White, 137 S. Ct. at 552. The Court has failed to find any Supreme Court or Third Circuit precedent addressing the rights of an individual arrested for violation of a court order under similar factual circumstances. Accordingly, the Court finds that the particular right at issue here—the right to be free from an arrest unsupported by probable cause and initiated in retaliation for peacefully protesting private activity in the context of a court order prohibiting interference with that private activity—was not clearly established at the time of Plaintiff Lotorto's arrest on March 29, 2016. Accordingly, Defendants Walters and Leonard are entitled to qualified immunity as to the First Amendment claims asserted against them by Plaintiff Lotorto in Count IV of the amended complaint. The Court will grant the Sheriff/Deputies Defendants' motion to dismiss as to the First Amendment claims against Defendants Walters and Leonard in Count IV.

### iv. Whether Plaintiff Glunt Has Stated a First Amendment Claim Against Defendants Betts and McCartney

Given the similar facts of Plaintiff's Glunt's First Amendment claims, a similar analysis follows. The Court finds that Plaintiffs' amended complaint has sufficiently pled the three elements of a First Amendment retaliation claim with regard to Plaintiff Glunt's claims against Defendants Betts and McCartney. Plaintiff Glunt's speech in opposition to the pipeline construction is protected speech. See Eichenlaub, 385 F.3d at 284 (finding that private speech, with specific exceptions, is protected speech). Likewise, her arrest and prosecution are sufficient to support a reasonable inference that the retaliatory action was sufficient to deter a person of ordinary firmness from exercising her First Amendment rights. See, e.g., McCoy, 2009 WL 1794749, at *9. Finally, the close temporal proximity between Plaintiff Glunt's protected speech and the alleged retaliatory act, here while Plaintiff Glunt was engaged in protected speech, are

44

sufficient to support an inference of a causal link by a reasonable factfinder.  See Farrell, 206
F.3d at 279 & n.5.

However, the Court reaches the same conclusion regarding Defendants Betts' and
McCartney's entitlement to qualified immunity as it did regarding Defendants Walters'
Leonard's entitlement to qualified immunity supra.  Given the similar factual circumstances of
Plaintiff Lotorto's arrest and Plaintiff Glunt's arrest, the Court interprets the right at issue
similarly, viewing it as the right to be free from arrest unsupported by probable cause and initiated
in retaliation for peacefully protesting private activity in the context of a court order prohibiting
interference with that private activity.  As the Court previously concluded, that right is not a
clearly established right such that it would have been clear to any reasonable officer that his
action violated the law.  Accordingly, Defendants Betts and McCartney are entitled to qualified
immunity as to the First Amendment claims asserted against them by Plaintiff Glunt in Count IV
of the amended complaint.  The Court will grant the Sheriff/Deputies Defendants' motion to
dismiss as to those First Amendment claims asserted against them in Count IV.

### B.    State Law Claims

#### 1.    State Law Claims Against the Sunoco Defendants, Defendant TigerSwan, and Defendant Johnson (Counts V, VI, VII, and VIII)

Plaintiffs assert state law claims against the Sunoco Defendants, Defendant TigerSwan,
and Defendant Johnson in Counts V, VI, VII, and VIII of the amended complaint.  Plaintiffs
assert jurisdiction under 28 U.S.C. § 1331 for the federal law claims and 28 U.S.C. § 1367(a) for
the state law claims against all parties in this case.  (Doc. No. 49-1 at ¶ 1.)  Where a district court
dismisses all claims over which it has original jurisdiction, as is the case here, the Court may
decline to exercise supplemental jurisdiction over the pendent state law claims.  See 28 U.S.C. §
1367(c)(3).  The Court's decision regarding the exercise of supplemental jurisdiction is one that

should be based on "the values of judicial economy, convenience, fairness, and comity."

Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law

claims have been dismissed and only state-law claims remain, the balance of these factors

indicates that the remaining claims properly belong in state court. Id. In the absence of a viable

federal claim, and finding nothing to distinguish this case from the usual case in which all federal

claims have been dismissed, the Court finds the balance of factors in this case "point[s] toward

declining to exercise jurisdiction over the remaining state law claims." See Cohill, 484 U.S. at

350 n.7. Accordingly, the Court will dismiss all claims against the Sunoco Defendants,

Defendant TigerSwan, and Defendant Johnson asserted in Counts V, VI, VII, and VIII without

prejudice to Plaintiffs' right to assert such claims in state court.

### C.    Leave to Amend

In civil rights cases, district courts must generally sua sponte extend to plaintiffs an

opportunity to amend the complaint before dismissal. Fletcher-Harlee Corp. v. Pote Concrete

Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, a district court can refuse to permit a

curative amendment on grounds of bad faith, undue delay, prejudice, or futility. Alston v. Parker,

363 F.3d 229, 235 (3d Cir. 2004). Based on the foregoing, the Court will grant Plaintiffs leave to

amend their amended complaint. However, Plaintiffs will not be granted leave to amend their 42

U.S.C. § 1983 claims against the Sheriff/Deputies Defendants (in Counts I, II, and IV), as any

such amendment to those claims would be futile because of the Court's determination that those

defendants are entitled to qualified immunity as to the claims asserted against them in the

amended complaint.

**IV.    CONCLUSION**

Based upon the foregoing, the Court will grant the Sheriff/Deputies Defendants' motion to dismiss (Doc. No. 17), grant the Sunoco Defendants' motion to dismiss (Doc. No. 18), grant Defendant TigerSwan's motion to dismiss (Doc. No. 33), and grant Defendant Johnson's motion to dismiss (Doc No. 47).  Plaintiffs will be granted thirty (30) days from the date of this Memorandum and corresponding Order to file an amended complaint that corrects the pleading deficiencies identified herein.  An Order consistent with this Memorandum follows.