## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELLEN GERHART,** | : | |
| **ELISE GERHART,** | : | **CIVIL ACTION No.** |
| **ALEX LOTORTO, AND** | : | |
| **ELIZABETH GLUNT,** | : | **HON.** |
| | : | |
| **Plaintiffs,** | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| **v.** | : | |
| | : | |
| **ENERGY TRANSFER PARTNERS,** | : | |
| **L.P., SUNOCO PIPELINE, L.P.,** | : | |
| **SUNOCO LOGISTICS, L.P.,** | : | |
| **TIGERSWAN, LLC,** | : | |
| **NICK JOHNSON,** | : | |
| **LIEUTENANT WILLIAM BENSON,** | : | |
| **TROOPER MICHAEL EHGARTNER,** | : | |
| **TROOPER DUNSMORE,** | : | |
| **UNNAMED TROOPERS #1-10,** | : | |
| **SHERIFF WILLIAM WALTERS,** | : | |
| **DEPUTY SHERIFFS  JEFFREY E.** | : | |
| **LEONARD, NATHAN BETTS,** | : | |
| **DANIEL MCCARTNEY, LARRY** | : | |
| **CRESSMAN, and NATHAN GOSHON,** | : | |
| | : | |
| **Defendants.** | : | |

## AMENDED COMPLAINT (CIVIL ACTION)

## I.     INTRODUCTION

The tension between the development of clean, renewable energy,

preservation of natural resources, and the extraction and transportation of fossil

fuels is a contentious matter of public concern in Pennsylvania and the nation.  In 2014, Pennsylvania produced more than 4,000,000,000,000 cubic feet of natural gas, more than every other state except Texas.  A Task Force commissioned by Governor Wolf found in 2016 that the pace of natural gas production in the state far outpaces the capacity of infrastructure to transport and deliver it. On February 13, 2017, PADEP approved the permit applications for the "Mariner East 2" pipeline project.

As the Standing Rock, North Dakota demonstrations against the Dakota Access Pipeline during the summer of 2016 showed, energy companies such as Energy Transfer Partners increasingly rely on a *de facto* private-public partnership with government to strong-arm opposition to pipeline construction.

In the Spring of 2016, before the Mariner East 2 pipeline was even permitted, Energy Transfer Partners, then Sunoco Logistics, through its subsidiary Sunoco Pipeline, utilized a similar *de facto* public-private partnership with law enforcement officers in Huntingdon County to silence opposition to its Mariner East 2 pipeline.

Plaintiffs bring this action for compensatory damages and other relief pursuant to  42 U.S.C. § 1983.  They allege that defendants' violation of their rights guaranteed by the  First, Fourth, and Fourteenth Amendments – and conspiracy to do the same – caused them severe harm and injuries.

## II.   JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is founded

   upon 28 U.S.C. § 1331.  This Court has jurisdiction to adjudicate plaintiff's

   state law claims under 28 U.S.C. § 1367(a).

2. Venue is properly laid in this judicial district, as all defendants are found

   therein, and all acts and events giving rise to the complaint occurred therein.

## III.   PARTIES

3. Ellen Gerhart and Elise Alcyone Gerhart reside at 15357 Trough Creek Valley

   Pike in Huntingdon, Pennsylvania, (hereinafter the "Gerhart property").

4. Alex Lotorto is a resident of Pennsylvania and at all relevant times hereto was

   on or near the Gerhart property, with permission of the Gerharts.

5. Elizabeth Glunt is a resident of Pennsylvania and at all relevant times hereto

   was on or near the Gerhart property, with permission of the Gerharts.

6. At all times relevant hereto, and until on or about April 28, 2017, Sunoco

   Logistics LP (hereinafter "Sunoco Logistics") owned and operated Sunoco

   Pipeline LP (hereinafter "Sunoco Pipeline"). Until April 28, 2017, each was

   headquartered in Pennsylvania and at all times relevant hereto conducting

   business on or near the Gerhart property within this judicial district.

   A. Until on or about April 28, 2017, Sunoco Logistics, L.P. was a subsidiary

      of Energy Transfer Partners, L.P.

3

B. On or about April 28, 2017, Energy Transfer Partners and Sunoco Logistics announced the closure of a successful merger which was originally announced on November 21, 2016.  In connection with the merger, Sunoco Logistics changed its name to Energy Transfer Partners, L.P. and its general partner became a consolidated subsidiary of Energy Transfer Equity, L.P.  Energy Transfer Partners, L.P. continues to do business as Sunoco Logistics and Sunoco Pipeline.  *See*, *e.g.*, https://marinerpipelinefacts.com/ (Identifying "Sunoco Pipeline" as an "Energy Transfer Company" and attributing the website's copyright to "Energy Transfer Partners").

C. Prior to the merger, Energy Transfer Partners owned the general partner, 100% of the incentive distribution rights, and approximately 67.1 million common units in Sunoco Logistics Partners L.P.

D. Energy Transfer Partners, L.P. still maintains a regional office in Pennsylvania and continues to conduct business on or near the Gerhart property.

E. Because, as set forth above, Sunoco Logistics and Sunoco Pipeline were subsumed by Energy Transfer Partners, the three entities are referenced interchangeably herein.  Each acted under color of state law in the course

4

of participating in concerted action with defendants named in Paragraphs 8 through 10 hereinbelow, to violate plaintiffs' civil rights.

7.  Defendants Lieutenant William Benson, Trooper Michael Ehgartner, Trooper Dunsmore are officers of the Pennsylvania State Police.   Each is a *person* as the term is used in 42  U.S.C. § 1983, and at all times material hereto, acted pursuant to, or under color of, state law.

8.  Defendants Sheriff William Walters and Deputy Sheriffs Jeffery E. Leonard, Nathan Betts, Daniel McCartney, Larry Cressman, and Nathan Goshorn, were at all relevant times members of the Huntingdon County Sheriff's Department. Each is a *person* as the term is used in 42 U.S.C. § 1983, and at all times material hereto, acted pursuant to, or under color of, state law.

9.  Unnamed State Police Troopers #1-10 are as of this time unidentified but participated in the events herein as set forth more fully below.  The former are officers of the Pennsylvania State Police and the latter are members of the Huntingdon County Sheriff's Department.  Each is a *person* as the term is used in 42 U.S.C. § 1983, and at all times material hereto, acted pursuant to, or under color of, state law.

10. TigerSwan, LLC is a North Carolina entity whose members are citizens of North Carolina.

11. Nick Johnson is an individual residing in North Carolina, a social media consultant, and a member of Chasing Chains LLC, a social media company.

## IV.   FACTUAL ALLEGATIONS

12. Ellen Gerhart, with her husband Stephen, owns the Gerhart property, a 27-acre property in Huntingdon County, Pennsylvania.  The property is substantially wooded, with a small westward-flowing stream feeding a small pond on the southern edge of the property. The stream discharges to the Little Trough Creek, a tributary of the Juniata River. The stream bed and pond are surrounded by a wetlands area.  The Gerharts constructed a home in the interior portion of the parcel, where they live. The Gerharts bought the 27-acre property in 1983 and have engaged in conservation  on their land consistent with the state's Forest Stewardship Program.

13. On July 21, 2015, Sunoco Logistics, by and through Sunoco Pipeline, filed a "Declaration of Taking" in the Huntingdon County Court of Common Pleas with respect to a portion of the Gerhart Property to facilitate the construction of the Mariner East 2 pipeline, which resulted in the establishment of an easement over the Gerhart property.

14. There is a separate litigation ongoing in Pennsylvania's state courts regarding the legality of Sunoco's taking and easement.

15. On March 28, 2016, the Huntingdon County Court of Common Pleas issued an order ("the Order") in favor of "Sunoco Pipeline L.P" and against "Stephen and Ellen Gerhart and any and all persons acting in concert with them as well as any and all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof," restraining the latter "from barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerhart's property" or with "Sunoco Pipeline's removing of or clearing trees or shrubbery on said easement."

16. As of March 28, 2016, Sunoco Pipeline did not have a permit from the Commonwealth for the construction of the Mariner East 2 pipeline and would not have a permit until February 13, 2017.

17. Nor did Sunoco Pipeline, as of March 28, 2016, have a possessory interest in the easement on the Gerhart property, and would not have such an interest until April 2017 when the Court of Common Pleas of Huntingdon County issued it a writ of possession upon the application of Sunoco/Energy Transfer Partners. Thus, without a possessory interest in the easement pursuant to a writ of possession, there was likewise no legal right of exclusion.

18. The Court further directed that anyone violating the order be "charged with criminal contempt."

19. On or around March 28, 2016, Clean Air Council posted a public event to Facebook, titled "Stop Sunoco's Pipeline Law Breaking in PA!" to encourage people to oppose the pipeline construction and tree cutting that would take place on the Gerhart property. Plaintiffs did not organize or coordinate the Clean Air Council event.

20. On March 29, 2016, Energy Transfer/Sunoco defendants, and/or their agents and assigns, arrived at the Gerhart property, chaperoned by members of the Huntingdon County Sheriff's Office and State Police troopers, to begin cutting and clearing trees.

21. Cutting trees on and around the Gerhart property after March 31 is prohibited by the U.S. Fish and Wildlife Service to protect migratory birds and the Indiana bat, which Sunoco Pipeline acknowledged in its pleadings in support of obtaining the Order.

22. As a result of the Facebook event, dozens came to the Gerhart property on March 29, 2016, to express support for the Gerharts and to peacefully express opposition to the pipeline.

23. On March 29, 2016, the Energy Transfer/Sunoco defendants, and/or their agents and assigns, were engaged in cutting down trees within the boundaries of the easement over the Gerhart property.

24. Tree-cutters and officers from the State Police and Huntingdon County Sheriff's office, including the individuals identified in paragraphs 8 through 10 hereinabove, arrived at the Gerhart property at the same time as the Energy Transfer/Sunoco defendants.

25. Defendants identified in paragraphs 8 through 10 hereinabove arrived at the Gerhart property having entered into an agreement with the Energy Transfer/Sunoco defendants to arrest pipeline opponents beyond their authority to do so under the Order or the Constitution, which agreement included fabricating evidence against arrestees to support more serious charges and targeting members of the Gerhart family, for the specific purpose of quieting and chilling the opposition to the pipeline.

26. At all times relevant hereto, the Energy Transfer/Sunoco defendants failed to properly  survey and mark the boundaries of the easement over the Gerhart property with anything other than temporary, preliminary markers, which plaintiffs nevertheless respected and abided by.

27. Plaintiffs were approached by the law enforcement officers before they had any interaction with any tree-cutters.

## ALEX LOTORTO ARRESTED

28. During the tree cutting on March 29, 2016, Alex Lotorto approached Lieutenant William  Benson and Sheriff William Walters to discuss, among other things,

safety concerns that   were raised by the manner in which the tree-cutting was conducted.  At all times the  discussion was calm and respectful.

29. Lotorto was using a walkie-talkie from outside the easement to communicate with demonstrators to advise them where tree cutting crews were, so that they could avoid injury from falling trees and so that no one needed to cross the easement to stay in contact.  At no time was he, either using the walkie-talkie or otherwise, directing anyone to interfere with Sunoco's access to the easement or its activities within the easement.

30. At no time did Lotorto enter the easement or otherwise contravene the March 28, 2016 Order.

31. After talking for several hours, Lt. Benson went to his car, returned holding papers, and asked "Is your name Alex Lotorto," to which Alex responded that it was.

32. A short time thereafter, Deputy Sheriff Leonard read the Order to Alex, and then he was cuffed and placed in a State Police patrol car.

33. Trooper Michael Ehgartner, Lt. Benson, Sheriff Walters, and Deputy Sheriff Leonard knew that Lotorto had not entered the easement, or otherwise contravened the Order, at any time.

34. Nevertheless, for reasons unrelated to the administration of justice, Ehgartner, Benson,  Walters, and Leonard, with unnamed Deputy Sheriffs and State Police

Troopers and Sunoco  defendants, agreed to and did arrest Lotorto and charge
him with disorderly conduct and criminal contempt.

35. In support of charges against Lotorto and the plan alleged hereinabove,
Ehgartner, in agreement with Benson, Walters, Leonard, with unnamed Deputy
Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants
falsely swore in an affidavit that Lotorto was "giving direct orders to persons in
an effort to intefer [sic] with the efforts of Sunoco Pipelines project [sic]" with
a "wireless hand held device" and that Lotorto intentionally "created a
hazardous or physically offensive condition by an act which  served no
legitimate purpose" by creating "a hazardous or physically offensive condition
by an act which served no legitimate purpose."

36. In order to charge Lotorto with a misdemeanor rather than a summary offense,
Ehgartner, in agreement with Benson, Walters, Leonard, with unnamed Deputy
Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants,
further falsely swore that Lotorto had persisted in his conduct "after reasonable
warning or request to desist."

37. Ehgartner, Benson, Walters, and Leonard in concert with unnamed Deputy
Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants did
so not in the pursuit of justice but to send a message to the Gerhart family and

their supporters to discourage their opposition to the pipeline and its

construction and thereby chill their First Amendment rights

38. Thereafter, Lotorto was held on $200,000 bail, which he could not afford to

post, and thus remained in jail for three days.

39. On April 1, 2016, once tree-cutting could no longer take place on the Gerhart

property, Lotorto's bail was reduced to $5,000, unsecured.

40. Once his bail was so modified, Lotorto was released from jail on April 1, 2016

41. All charges against Lotorto were ultimately dismissed.

## ELIZABETH GLUNT ARRESTED

42. On March 29, 2016, Elizabeth Glunt was on the Gerhart property to express her

opposition to the tree-cutting that was to take place that day.

43. Glunt heard members of the tree-cutting crew shout expletives, including racial

slurs, at protestors, and saw the law enforcement officers present take no action

and offer no response.

44. When Glunt saw tree cutters approach a tree that was tied to a tree occupied by

a tree-sitter, she approached two tree cutters and Deputy Sheriffs Betts and

McCartney (whose photos are attached hereto as Exhibit A) and told them the

tree-cutting activity was putting individuals who were protesting the activities

by sitting in trees at immediate risk of injury.

45. When her warnings were ignored, Glunt entered the right of way, only to warn tree-cutters again that they were putting tree-sitting protestors lives at risk.  She then vacated the right of way, and at no time interfered with operations in the right of way.

46. When she left the right of way area, Glunt was stopped by Deputy Sheriffs Betts and McCartney.

47. Glunt was not a party to the case which resulted in the issuance of the Order, she was not aware of the Order when she entered the right of way area.

48. By merely warning crew members not to injure or kill activists, Glunt did not violate the Order, and had only been present briefly in the right of way.

49. Deputy Sheriffs Betts and McCartney knew that Glunt had not barred, prevented, or interfered with access to the easement or with tree-cutting.

50. Deputy Sheriffs Betts and McCartney read Glunt the Order, informed her that she had violated the Order despite knowing that was not true, and arrested her.

51. Deputy Sheriffs Betts and McCartney – in agreement with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco defendants – charged Glunt, or caused her  to be charged, with disorderly conduct and criminal contempt.

52. In order to charge Glunt with a misdemeanor rather than a summary offense, Deputy Sheriffs Betts and McCartney – in agreement with Sheriff Walters,

unnamed Deputy Sheriffs and State Police Troopers, and Energy

Transfer/Sunoco defendants – further falsely swore that she had persisted in her

conduct "after reasonable warning or request to desist."

53. Deputy Sheriffs Betts and McCartney, in concert with Sheriff Walters,

unnamed Deputy Sheriffs and State Police Troopers, and Energy

Transfer/Sunoco defendants did so not in the pursuit of justice but to send a

message to the Gerhart family and their supporters to discourage their

opposition to the pipeline and its construction and thereby chill their First

Amendment rights.

54. Deputy Sheriffs Betts and McCartney, acting in concert with Sheriff Walters,

unnamed Deputy Sheriffs, and Energy Transfer/Sunoco defendants did so not in

the pursuit of justice but to send a message to the Gerhart family to discourage

their opposition to the pipeline and its construction and thereby chill their First

Amendment rights.

55. Glunt was detained on $100,000.00 bail.

56. While she was detained, Glunt was strip searched, and otherwise suffered

emotional distress and humiliation.

57. After less than 24 hours in jail, her relatives posted bail and she came home.

58. After she agreed to participate in ARD, and successfully completed it, charges

against Glunt were dismissed.

## ELLEN GERHART ARRESTED

59. Tree-cutting resumed on March 30, 2016, and tree-sitting protestors continued to occupy trees.

60. While on her property and not far from the easement, Ellen Gerhart heard a loud crash.

61. She looked in the direction of the sound of the crash and saw tree-cutting occurring close enough to the tree-sitting to put the tree-sitters at risk of injury or death.

62. She approached, but did not enter, the easement area to warn tree-cutters that they were too close to the tree-sitters.

63. Although she was a safe distance from the tree-cutting, and did not enter the easement, she was approached by defendant Trooper Dunsmore, Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, and State Police Troopers, and Energy Transfer/Sunoco defendants, acting in concert suggested that she was creating a dangerous situation, handcuffed her, and escorted her off her own property, into a police vehicle, and to the State Police barracks.

64. While in custody at the State Police barracks, her phone was confiscated and searched, without her permission and without probable cause or any legitimate justification.

65. At no time did Ellen act in contravention of the Order.

66. On or about March 30, 2016, she was charged with disorderly conduct and indirect   criminal contempt, and released on $5,000 unsecured bail.

67. In order to charge her with a misdemeanor rather than a summary offense, Dunsmore, in    agreement with Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, Unnamed State Police Troopers, and Energy Transfer/Sunoco defendants further falsely swore that she had persisted in her conduct "after reasonable warning or request to desist."

68. Although Sunoco was prohibited, as it acknowledged in its application for an injunction, from cutting trees on the Gerhart property and easement after March 31 due to United States Fish and Wildlife Service (USFWS) regulations that protect Indiana bat habitats, its crews returned to the Gerhart property on April 7, 2016 and resumed cutting trees.

69. Ellen and her daughter approached the crew and informed them they were cutting trees in  contravention of the Court's order and USFWS regulations.

70. Sunoco's environmental consultant disputed the Gerhart's claim and suggested they could call the police if they felt the court's order was violated.

71. State Troopers eventually arrived at the Gerhart property.

72. Instead of carrying out the Court's previous order that tree-cutting not occur after March 31, Defendant Trooper Dunsmore, acting in concert with Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, unnamed State Police

Troopers, and Energy Transfer/Sunoco defendants, arrested Ellen and charged her with disorderly conduct and indirect criminal contempt.

73. In order to charge her with a misdemeanor rather than a summary offense, Dunsmore, in agreement with Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, unnamed State Police Troopers, and Energy Transfer/Sunoco defendants, further falsely swore that she had persisted in her conduct "after reasonable warning or request to desist."

74. Trooper Dunsmore acting in concert with Sheriff Walters, Deputy Sheriffs Cressman and Goshron, unnamed State Police Troopers, and Energy Transfer/Sunoco defendants did so not in the pursuit of justice but to send a message to the Gerhart family and their supports to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights.

75. Ellen was brought to Huntingdon County Jail and later that day transferred to Centre County Correctional Facility.

76. While in jail, Ellen suffered mental and emotional distress and humiliation.

77. All charges against Ellen were ultimately dismissed.

## ELISE GERHART

78. On March 29, 2016, Elise Gerhart was engaged in "tree-sitting," occupying a tree on her family's property so that it could not be cut down without killing or seriously injuring her.

79. Several other individuals were also engaged in "tree-sitting" in different trees.

80. Eventually, all tree-sitters left their trees.

81. On April 7, 2016, at which time no tree clearing on the Gerhart property was permitted, Sunoco returned to the Gerhart property to resume tree cutting without notifying the Gerharts.

82. Elise returned to a tree to protest Sunoco's tree cutting and remained in the tree for one-to-two days.

83. While Elise was in the tree on or around March 29, 2016, members of the tree cutting crews working for Sunoco joked about hurting or killing her, while Trooper Dunsmore and other law enforcement officers watched and did nothing.

84. Elise endured further verbal harassment while in the tree on April 7, 2016.

85. On both March 29 and April 7, 2016, Sunoco's employees and/or agents took pictures and/or video of Elise.

86. While in the tree on April 7, 2016, she was informed by a law enforcement officer that she would be charged with a crime.

87. Out of the several tree-sitters, only Elise Gerhart was charged with a crime, to wit, summary and misdemeanor disorderly conduct.

88. In order to charge Elise with a misdemeanor offense, Dunsmore, in agreement with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Sunoco defendants, further falsely swore that she persisted in her conduct "after reasonable warning or request to desist."

89. Trooper Dunsmore, acting in concert with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco defendants, knew that Elise Gerhart was one of several tree-sitters, had an actual opportunity to arrest and charge all tree-sitters, but determined to arrest and charge only her.

90. Trooper Dunsmore acting in concert with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco defendants, did so not in the pursuit of justice but to arbitrarily and maliciously send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights.

91. All charges against Elise were ultimately dismissed.

## ETP'S ONGOING EFFORTS TO NEUTRALIZE THE GERHARTS' OPPOSITION

92. Energy Transfer Partners, L.P. owns and operates the Dakota Access Pipeline.

93. It was recently revealed in *The Intercept* that Energy Transfer Partners hired a private security agency called TigerSwan to target the Standing Rock demonstrators "with military-style counterterrorism measures, collaborating closely with police in at least five states," and compared demonstrators to jihadists.

94. During the 2016 Standing Rock demonstrations, Energy Transfer Partners engaged in, or caused, aerial surveillance, including use of helicopters and drones to photograph and monitor the pipeline opponents.

95. Energy Transfer Partners has again engaged TigerSwan to provide services – including but not limited to surveillance, monitoring, social media engagement, and counter-intelligence – in connection with the construction of the Mariner East 2 Pipeline in Pennsylvania.

96. In or about November 2016, TigerSwan obtained business licesnes in Pennsylvania, Ohio, and West Virginia, three states which the Mariner East 2 Pipeline traverses.

97. TigerSwan has been operating in Pennsylvania since at least April 2017, and its activities include monitoring opposition to the Mariner East 2 Pipeline.  See https://theintercept.com/2017/06/21/dakota-access-style-policing-moves-to-pennsylvanias-mariner-east-2-pipeline/

98.  On May 24, 2017, Retired Major General James "Spider" Marks, the chair of
the board of advisors of TigerSwan, published an op-ed on PennLive.com
criticizing opponents of the development of the Mariner East Two Pipeline and
warning readers that such opponents would engage in the "violence" and
"carnage" in which opponents of the Dakota Access Pipeline allegedly engaged.
The fact that he was chair of TigerSwan's board of advisors was not disclosed
in his op-ed.

99.A similar op-ed was published by Marks, again without disclosure of his
affiliation with TigerSwan, on February 8, 2017 in Lafayette, Louisiana's *Daily
Advertiser* in support of the Bayou Bridge Pipeline, an Energy Transfer Partners
project, and criticizing pipeline opponents.

100.   Energy Transfer Partners and TigerSwan, throughout 2017, have surveilled
and continue to surveille plaintiffs, flying helicopters and drones low over the
Gerhart property (and not along the easement), parking unmarked vehicles near
the property and shining high-beams onto the property at night, sending
employees, agents, and/or contractors onto the neighboring properties, all, with
attendant unreasonable noise, annoyance, and other disturbances, interfering
with Ellen and Elise Gerhart's use and enjoyment of their property.

101.   In addition to the foregoing conduct, Energy Transfer Partners and
TigerSwan have sent at least one "infiltrator" onto the Gerhart property, several

times and without license, privilege, or permission, and under the false pretense that they are allied with the Gerhart's interests, supportive of their opposition to the construction of the Mariner East 2 pipeline, and seeking to join the encampment of supporters hosted on the property.

102.   While on the property without authorization, license, or privilege, the infiltrator took photographs that were later included on flyers posted on the page of a Facebook group called PA Progress to publicize (among other things) the images of Elise and Ellen Gerhart and their supporters, and identifying where Elise works, her car, and the Gerharts' driveway.

103.   "Infiltration" is one of the tactics utilized by TigerSwan on behalf of Energy Transfer Partners during the Standing Rock demonstrations, and, as set forth above, TigerSwan continues to utilize.  See https://theintercept.com/2017/05/27/leaked-documents-reveal-security-firms-counterterrorism-tactics-at-standing-rock-to-defeat-pipeline-insurgencies/.

104.   Posts on Facebook falsely ascribe to Elise Gerhart claims that the helicopters flown over the Gerhart property are of Russian origin.

105.   Posts on blackbadgerreport.com falsely claim that Elise Gerhart and her cohorts are fronts for the Russian government to disrupt domestic energy markets, and that she has appeared on Russian TV.  See

https://www.blackbadgerreport.com/2017/08/30/russia-funding-environmental-activist-groups-shake-american-energy-markets/

106.   In support of its false assertion that Elise Gerhart appeared on Russian TV, the blackbadgerreport.com article includes a screenshot of Elise appearing on a program called "Act Out," which is a production of not of Russian origin but of occupy.com, which is owned by Occupy.com, Incorporated, a Delaware not-for-profit corporation.

107.   Blackbadgerreport.com is a project of TigerSwan and/or Nick Johnson, on behalf of Energy Transfer Partners: another blackbadgerreport.com article seeks to discredit *The Intercept*, ostensibly for its reporting on TigerSwan, falsely attributing to *The Intercept* an "affiliation" with "pro-communism events" and "anti-pipeline and anti-fascist movements."

https://www.blackbadgerreport.com/2017/08/25/intercept-news-organizations-connected-communist-groups/

108.   The article falsely claiming that Elise Gerhart is a Russian Front was authored by "Nate Clay," which is a pseudonym used by Nick Johnson.[1]

109.   Johnson, by his own admission, is not engaging in social media efforts through Chasing Chains, the LLC of which he is a member, but instead individually.[2]

---

[1] See https://www.pastemagazine.com/articles/2017/09/the-fake-news-pipeline-how-two-small-time-clickbai.html

110.   Black Badger Report's Facebook page has one review, by "Felix Moniker."

111.   Felix Moniker's public Facebook profile has just three posts, one of which is "Badger Badger Badger" and includes a link to blackbadgerreport.com.  See https://www.facebook.com/felix.moniker.33?

112.   Felix Moniker's public Facebook profile further indicates he has a single "friend," Delaney Borror, a student who lives in Apex, North Carolina.

113.   Apex, North Carolina is the headquarters of TigerSwan.

114.   Derek Borror is the Vice President of Guardian Angel at TigerSwan, a "friend" of Delaney Borror on Facebook, and, upon information and belief, Delaney's father.  See https://www.linkedin.com/in/derek-borror-mba-b4332bb/

115.   TigerSwan has coordinated with Nick Johnson on Energy Transfer Partners' behalf to disseminate video – which was titled "Anarchists are building a base in rural PA" and the posting captioned "The anarchist protest cell in Huntingdon continues to call for others to come to the area" – using an actor posing as a local community member to discredit the Gerharts.

116.   The audio component of the video is comprised of the following statement:

> Hey guys its Josh Baker reporting for PA Progress here in Huntington, Pennsylvania.  So, we got some new information from the camp down the road and we wanted to catch you up on it.  So, people here are becoming more aware of the **growing cult** off 829 south of town.  **This family is called the Gerharts**.[3] They are actively **recruiting other anarchists** to the area to join them as we speak.  Many of these people are the same ones who caused so much chaos in

---

[2] Id.

[3] A photo of Ellen is shown, with a caption "AKA the Doorknob Gang"

24

Standing Rock in North Dakota.  Trust us, **we don't want these people in our community**.  Just ask people from North Dakota who had to live through this.  So far, about **a dozen intimidating supporters** have come to the area to sit in the camp they call "Camp White Pine."  The purpose of the camp is to recruit people to the property and begin **planning a direct action against the State of Pennsylvania**.  Some of their supporters come from as far away as Iowa where a **leftist anti-government cult admitted to blowing up oil pipelines** last fall.  Now, here is some of the **social media coming from their camp**.[4]  This group in Huntington has been **posting on social media about overthrowing President Trump; sabotaging pipelines and destroying buildings in large city centers.**  The local sheriff knows about this camp, but it's powerless to do anything until they act.  A judge has already written an injunction to have them removed from the property if they resist from the police.  There is no data as to when the family will be removed.  But, meanwhile they are actively asking others to join them and to come here to Huntington.  These are the ringleaders.[5]  They frequent the Farmers Market in Huntington, the Huntington Carwash and laundromat; Wildflower Café; and Rothrock Outfitters.  We are asking people in the area to please stay away from them when you see them, and if you see anything suspicious, call the number below.[6]

[Emphasis added]

117.   The full video is embedded in the article appearing at this url:

https://theintercept.com/2017/08/26/dapl-security-firm-tigerswan-responded-to-

pipeline-vandalism-by-launching-multistate-dragnet/

118.   Actors such as the one featured in the aforementioned video were

recruitedby Nick Johnson personally (using aliases), and the aforementioned

video was posted on a Facebook group called PA Progress, which is run by

Johnson and/or TigerSwan on behalf of Energy Transfer Partners to further its

---

[4] A screenshot of a Facebook post about self-defense tactics is shown.  Even if the poster is a Gerhart supporter, the video misrepresents the post as a call to violent action and falsely attributes the post to the Gerharts and all their supporters ("Now, here is some of the social media coming from *their* camp").
[5] A photo of Elise Gerhart and three others is shown.
[6] The "number below" is the number of the Huntingdon County Sheriff.

efforts to harm, silence, and discredit Elise and Ellen Gerhart and their supporters.

119.   A similar video was posted on the page of a Facebook group called Louisiana First, using the same actor (who identifies himself by a different name), attacking opponents of Energy Transfer Partners' Bayou Bridge Pipeline.

120.   When an article on paste.com noted the same actor was used in both videos, and further connected the source of the videos to Johnson and TigerSwan (and, by implication, to Energy Transfer Partners), the videos were removed within days from the Johnson/TigerSwan-managed Facebook pages, but paste.com was asked to remove links to the videos in its article when a "copyright" complaint was lodged.

121.   PA Progress posted a link to the blackbadgerreport.com article falsely accusing Elise Gerhart of being a Russian front on its Facebook page.

122.   Other posts on the PA Progress Facebook group refer to Elise Gerhart as an "anarchist" who is sabotaging pipelines and the environment, that she associates with actual and alleged criminals, selectively publicize the Gerhart address (in a place where threats of violence, including death threats, directed at Elise Gerhart and others on her property were posted), the fact that their home is heated with oil, and assert that "the family knew that there was a utility

company easement which crossed the property when they purchased their [property]," which will (inexplicably) cause local taxes to increase (a point repeated in an additional video).

123.   The latter post included copies of the Gerhart's deed, but did not include the fact that the pipelines were defunct when the property was purchased, that they were underground, and that the portion of the Gerhart property upon which those pipelines were located was sold by the Stephen and Ellen Gerhart in the 1990s, which is information that would be available to the same extent that the original deeds were available, and thus the post was deliberately misleading in order to further the scheme to harm and discredit the Gerharts.

124.   Each of the foregoing postings on PA Progress, blackbadgerreport.com, and elsewhere are highly offensive, and have not only resulted in reputational harm, but have incited commenters to threaten to injure or kill Elise Gerhart and her supporters, which in turn have caused Elise Gerhart mental anguish and emotional distress.

125.   Energy Transfer Partners has attacked the Gerharts and the supporters hosted on their property using language similar to the language utilized by TigerSwan, and Nick Johnson, stating in legal documents that "the encampment, if not actually hijacked by anarchists, and radical eco-terrorists, has certainly taken a broad anti-pipeline, anti-fossil fuel, anti-establishment, and anti-authority bent."

126.   The foregoing acts were undertaken as part of the Energy Transfer

Partners/Sunoco defendants' broader effort to "neutralize opposition" to the

Mariner East 2 Pipeline, a goal which they have publicly acknowledged,[7] and

which is consistent with the deliberately conceived, systematic scheme to quell

legitimate protest at pipeline sites and elsewhere, as alleged in Paragraphs  12-

123, *supra*.

127.   Just as Energy Transfer Partners hired TigerSwan to coordinate efforts to

undermine opposition with law enforcement agencies in Standing Rock, Energy

Transfer Partners hired TigerSwan for the same purpose – to coordinate efforts

with law enforcement to undermine opposition – for the Mariner East 2 Pipeline

generally and with respect to the Gerharts in particular.

128.   Not only have Energy Transfer Partners and TigerSwan monitored and

surveilled plaintiffs, as set forth more fully above, but Energy Transfer Partners

sought and obtained, in summer 2017, an order to remove the Gerharts and their

supporters from the easement, authorizing the Huntingdon County Sheriff to

enforce the order, but have continued to surveille, monitor, and harass plaintiffs

rather than attempt to enforce the order.

129.   Energy Transfer Partners authorized and expected that Johnson and

TigerSwan would engage in the conduct alleged hereinabove, all of which was

---

[7] https://stateimpact.npr.org/pennsylvania/2017/07/06/sunocos-pr-firm-aims-to-neutralize-opposition-to-mariner-east-pipeline-project/

undertaken within the course and scope of Johnson's and TigerSwan's agency on behalf of and/or employment by Energy Transfer Partners.

130. As a result of the foregoing, plaintiffs suffered significant damages and harms, including but not limited to:

    a.    Pain and suffering;

    b.    emotional distress;

    c.    deprivation of liberty;

    d.    interference with daily activities;

    e.    interference with the use and enjoyment of property; and

    f.    retention of attorneys at their own expense;

    some or all of which are ongoing and/or permanent.

131. Plaintiffs' damages and harms were caused by the culpable conduct of defendants, alleged in greater detailed hereinbelow.

132. The conduct of each defendant was carried out in wanton and outrageous disregard for the Constitution and plaintiff's rights thereunder and under Pennsylvania law, and was motivated solely by their self-interest, completely unrelated to any legitimate purpose, thereby warranting an award of exemplary damages against each.

## V.    CAUSES OF ACTION

### COUNT ONE

**42 U.S.C. § 1983 (Malicious Prosecution)**
**Alex Lotoro and Ellen Gerhart v. Energy Transfer Partners, Sunoco**
**Logistics, Sunoco Pipeline**
**Alex Lotorto v. Ehgartner, Benson, Walters, and Leonard**
**Ellen Gerhart v. Dunsmore**

133.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

134.   Plaintiffs Lotorto and Ellen Gerhart suffered the harms and damages alleged

hereinabove as a direct and proximate result of defendants' violation of their

rights under the 4th and 14th Amendment to the United States Constitution.

**COUNT TWO**
**42 U.S.C. § 1983 (False Arrest)**
**Alex Lotorto, Elizabeth Glunt, and Ellen Gerhart v. Energy Transfer**
**Partners, Sunoco Logistics, Sunoco Pipeline**
**Alex Lotorto v. Ehgartner, Benson, Walters, and Leonard**
**Elizabeth Glunt v. Betts and McCartney**
**Ellen Gerhart v. Dunsmore**

135.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

136.   Defendants lacked probable cause to arrest plaintiffs.

137.   Plaintiffs Lotorto, Glunt, and Ellen Gerhart suffered the harms and damages

alleged   hereinabove as a direct and proximate result of defendants' violation

of their rights under the 4th and 14th Amendment to the United States

Constitution.

**COUNT THREE**
**42 U.S.C. § 1983 (Equal Protection)**
**Elise Gerhart v. Dunsmore, Energy Transfer Partners, Sunoco Logistics,**
**Sunoco Pipeline**

138.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

139.   The conduct of defendants alleged hereinabove, in targeting, arresting, and

charging her in 2016, comprised and/or was carried out pursuant to a plan and

policy targeting Elise for discriminatory treatment intended to cause her harm.

140.   Defendants' intentional conduct under the color of state law was arbitrary

and malicious,  served no legitimate governmental purpose, was improperly

motivated, was  unreasonable, thereby violating plaintiffs' right to equal

protection, guaranteed by the Fourteenth Amendment to the Constitution of the

United States.

141.   Elise Gerhart was the only tree-sitter arrested or charged in 2016 out of

several who were at various times on the Gerhart property and/or the easement.

142.   Elise Gerhart was targeted because of her family relationship to the property

owners and for purposes of chilling her opposition to the pipeline and sending a

message to other would-be tree-sitters when defendants returned the next spring

to resume cutting trees.

143.   Elise Gerhart suffered the harms and damages alleged hereinabove as a

direct and proximate result of defendants' violation of their rights under the 14th

Amendment to the United States Constitution.

### COUNT FOUR
### 42 U.S.C. § 1983 (First Amendment)
### All Plaintiffs v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline
### Ellen and Elise Gerhart v. Dunsmore
### Lotoro v. Ehgartner, Benson, Walters, and Leonard
### Glunt v. Betts and McCartney

144.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

145.   Plaintiffs have an absolute right under the First and Fourteenth Amendments

to the Constitution to express their opposition to the development and

construction of fossil fuel pipelines, including the manner and impacts of

development and construction.

146.   Each plaintiff made known to defendants his or her opposition to the

development and construction of the Mariner East 2 Pipeline.

147.   Defendants then undertook the actions set forth more fully hereinabove in

order to chill plaintiffs' First Amendment right to express their opposition.

148.   As a result, plaintiffs suffered the harms and damages alleged hereinabove

as a direct and   proximate result of defendants' violation of their rights under

the 14th Amendment to the United States Constitution.

## COUNT FIVE
### Abuse of Civil Process (Pennsylvania Law)
### Ellen Gerhart v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline

149.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

150.   Defendants did not have a right of possession, and therefore did not have a right of exclusion, on the easement referenced by the Order in March or April 2016.

151.   Nor did defendants have permits for the construction of the Mariner East 2 pipeline at that time.

152.   Defendants nevertheless sought to and did utilize the Order, enjoining the Gerharts and any of their cohorts, including Alex Lotorto and Elizabeth Glunt, for the illegitimate purpose of silencing and intimidating opposition to the construction and development of the Mariner East 2 pipeline.

153.   As a result, plaintiffs suffered the damages set forth hereinabove.

## COUNT SIX
### Nuisance (Pennsylvania Law)
### Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline, and TigerSwan

154.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

155.   Elise Gerhart, who lives on the Gerhart property, is a legal occupant of that property.

156.   Defendant's conduct as alleged more fully hereinabove, including but not

limited to the entry onto the property and cutting of trees in April 2016, use of

aerial surveillance (and attendant sound), unreasonable and obnoxious shining

of light onto the property and home, and use of manual surveillance, interfered

and continues to interfere with plaintiffs' use of their property.

157.   The foregoing conduct was undertaken in a manner which interfered with

plaintiffs' use and enjoyment of the property, and was unreasonable.

158.   As a result of the foregoing nuisance, plaintiffs suffered the harms and

damages set forth above.


**COUNT SEVEN**
**Invasion of Privacy (Pennsylvania Law)**
**Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics,**
**Sunoco Pipeline, TigerSwan, and Nick Johnson**

159.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

160.   Defendants conduct, as alleged more fully hereinabove in paragraphs 90-

123, was undertaken in a manner highly offensive to a reasonable person,

constituting an intentional intrusion upon the solitude or seclusion of plaintiffs

and their private affairs or concerns, publication of private facts, and the

publicity of plaintiffs in a false light.

161.   As a result of the foregoing invasion of privacy, plaintiffs suffered the harms and damages set forth above.

**COUNT EIGHT**
**Trespass (Pennsylvania Law)**
**Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics,**
**Sunoco Pipeline, and TigerSwan**

162.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

163.   As set forth more fully above, defendant Energy Transfer Partners, then acting through Sunoco Logistics and Sunoco Pipeline, unlawfully and intentionally entered upon plaintiffs' land in April 2016 to engage in tree-cutting, which they had no legal right to undertake.

164.   As set forth more fully above, defendants again unlawfully entered plaintiffs land without privilege, permission, or justification, intentionally and for the purpose of conducting surveillance.

165.   As a result of the foregoing trespass, plaintiffs suffered the harms and damages set forth above.

**VI.   JURY DEMAND**

166.   Plaintiff demands a jury determination of all issues so triable

**VII.   PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays the Court for judgment in his favor, against all defendants, individually, jointly and severally, and asks for the following relief:

a)  declaratory relief;

b)  compensatory and general damages;

c)  punitive damages;

d)  an order abating the nuisance and invasions of privacy;

e)  attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f)  such interest and other costs as are allowed by law;

g)  such other relief as the Court deems just and equitable.

Respectfully submitted,

**WILLIAMS CEDAR**

*/s/ CHRISTOPHER MARKOS*
By: Christopher Markos, Esquire
Attorney I.D. # 308997
1515 Market Street, Suite 1300
Philadelphia, PA 19102-1929
P:  215.557.0099
F: 215.557.0673
Email: cmarkos@wcblegal.com

and

**LENGERT & RAIDERS**
Richard A. Raiders
Attorney I.D. # 314857
210 West Penn Avenue
P.O. Box 223

Robesonia, PA 19551
P: 484.638.6538
F: 484.335.4318
Email: rraiders@lengertraiders.com


Dated:          March 22, 2018

# EXHIBIT A
# (Photo)