## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELLEN GERHART,** | : | |
| **ELISE GERHART,** | : | **No. 1:17-cv-1726** |
| **ALEX LOTORTO, AND** | : | |
| **ELIZABETH GLUNT,** | : | **(Judge Kane)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ENERGY TRANSFER PARTNERS,** | : | |
| **L.P., SUNOCO PIPELINE, L.P.,** | : | |
| **SUNOCO LOGISTICS, L.P.,** | : | |
| **TIGERSWAN, LLC,** | : | |
| **NICK JOHNSON,** | : | |
| **LIEUTENANT WILLIAM BENSON,** | : | |
| **TROOPER MICHAEL EHGARTNER,** | : | |
| **TROOPER DUNSMORE, and** | : | |
| **UNNAMED TROOPERS #1-10,** | : | |
| | : | |
| **Defendants.** | : | |

## SECOND AMENDED COMPLAINT (CIVIL ACTION)

## I.     INTRODUCTION

The tension between the development of clean, renewable energy,

preservation of natural resources, and the extraction and transportation of fossil

fuels is a contentious matter of public concern in Pennsylvania and the nation.

In 2014, Pennsylvania produced more than 4,000,000,000,000 cubic feet of

natural gas, more than every other state except Texas. A Task Force
commissioned by Governor Wolf found in 2016 that the pace of natural gas
production in the state far outpaces the capacity of infrastructure to transport
and deliver it. On February 13, 2017, PADEP approved the permit applications
for the "Mariner East 2" pipeline project.

As the Standing Rock, North Dakota demonstrations against the Dakota
Access Pipeline during the summer of 2016 showed, energy companies such as
Energy Transfer Partners increasingly rely on a *de facto* private-public partnership
with government to strong-arm opposition to pipeline construction.

In the Spring of 2016, before the Mariner East 2 pipeline was even
permitted, Energy Transfer Partners, then Sunoco Logistics, through its subsidiary
Sunoco Pipeline, utilized a similar *de facto* public-private partnership with law
enforcement officers in Huntingdon County to silence opposition to its Mariner
East 2 pipeline.

Plaintiffs bring this action for compensatory damages and other relief
pursuant to 42 U.S.C. § 1983. They allege that defendants' violation of their
rights guaranteed by the First, Fourth, and Fourteenth Amendments – and
conspiracy to do the same – caused them severe harm and injuries.

## II.    JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is founded upon 28 U.S.C. § 1331. This Court has jurisdiction to adjudicate plaintiff's state law claims under 28 U.S.C. § 1367(a).

2. Venue is properly laid in this judicial district, as all defendants are found therein, and all acts and events giving rise to the complaint occurred therein.

## III.    PARTIES

3. Ellen Gerhart and Elise Alcyone Gerhart reside at 15357 Trough Creek Valley Pike in Huntingdon, Pennsylvania, (hereinafter the "Gerhart property").

4. Alex Lotorto is a resident of Pennsylvania and at all relevant times hereto was on or near the Gerhart property, with permission of the Gerharts.

5. Elizabeth Glunt is a resident of Pennsylvania and at all relevant times hereto was on or near the Gerhart property, with permission of the Gerharts.

6. At all times relevant hereto, and until on or about April 28, 2017, Sunoco Logistics LP (hereinafter "Sunoco Logistics") owned and operated Sunoco Pipeline LP (hereinafter "Sunoco Pipeline"). Until April 28, 2017, each was headquartered in Pennsylvania and at all times relevant hereto conducting business on or near the Gerhart property within this judicial district.

   A. Until on or about April 28, 2017, Sunoco Logistics, L.P. was a subsidiary

of Energy Transfer Partners, L.P.

B. On or about April 28, 2017, Energy Transfer Partners and Sunoco Logistics announced the closure of a successful merger which was originally announced on November 21, 2016. In connection with the merger, Sunoco Logistics changed its name to Energy Transfer Partners, L.P. and its general partner became a consolidated subsidiary of Energy Transfer Equity, L.P. Energy Transfer Partners, L.P. continues to do business as Sunoco Logistics and Sunoco Pipeline. *See*, *e.g.*, https://marinerpipelinefacts.com/ (Identifying "Sunoco Pipeline" as an "Energy Transfer Company" and attributing the website's copyright to "Energy Transfer Partners").

C. Prior to the merger, Energy Transfer Partners owned the general partner, 100% of the incentive distribution rights, and approximately 67.1 million common units in Sunoco Logistics Partners L.P.

D. Energy Transfer Partners, L.P. still maintains a regional office in Pennsylvania and continues to conduct business on or near the Gerhart property.

E. Because, as set forth above, Sunoco Logistics and Sunoco Pipeline were subsumed by Energy Transfer Partners, the three entities are referenced interchangeably herein. Each acted under color of state law in the course

4

of participating in concerted action with defendants named in Paragraphs

8 through 10 hereinbelow, to violate plaintiffs' civil rights.

7.  Defendants Lieutenant William Benson, Trooper Michael Ehgartner, Trooper

Dunsmore are officers of the Pennsylvania State Police.   Each is a *person* as

the term is used in 42 U.S.C. § 1983, and at all times material hereto, acted

pursuant to, or under color of, state law.

8.  Sheriff William Walters and Deputy Sheriffs Jeffery E. Leonard, Nathan

Betts, Daniel McCartney, Larry Cressman, and Nathan Goshorn, were at all

relevant times members of the Huntingdon County Sheriff's Department.

Each is a *person* as the term is used in 42 U.S.C. § 1983, and at all times

material hereto, acted pursuant to, or under color of, state law.[1]

9.  Unnamed State Police Troopers #1-10 are as of this time unidentified but

participated in the events herein as set forth more fully below. The former are

officers of the Pennsylvania State Police and the latter are members of the

Huntingdon County Sheriff's Department. Each is a *person* as the term is used

---

[1] Sheriff William Walters and Deputy Sheriffs Jeffery E. Leonard, Nathan Betts, Daniel McCartney, Larry Cressman, and Nathan Goshorn are no longer parties to this action, pursuant to the Court's December 14, 2018 Order, but are included herein because of their integral role in the facts asserted hereinbelow.  This acknowlement that Sheriff William Walters and Deputy Sheriffs Jeffery E. Leonard, Nathan Betts, Daniel McCartney, Larry Cressman, and Nathan Goshorn are no longer parties should not be construed as an abandonment of the claims previously asserted against them, as Plaintiffs specifically reserve their appellate rights.

in 42 U.S.C. § 1983, and at all times material hereto, acted pursuant to, or under color of, state law.

10. TigerSwan, LLC is a North Carolina entity whose members are citizens of North Carolina.

11. Nick Johnson is an individual residing in North Carolina, a social media consultant, and a member of Chasing Chains LLC, a social media company.

## IV.   FACTUAL ALLEGATIONS

12. Ellen Gerhart, with her husband Stephen, owns the Gerhart property, a 27-acre property in Huntingdon County, Pennsylvania. The property is substantially wooded, with a small westward-flowing stream feeding a small pond on the southern edge of the property. The stream discharges to the Little Trough Creek, a tributary of the Juniata River. The stream bed and pond are surrounded by a wetlands area. The Gerharts constructed a home in the interior portion of the parcel, where they live. The Gerharts bought the 27-acre property in 1983 and have engaged in conservation on their land consistent with the state's Forest Stewardship Program.

13. On July 21, 2015, Sunoco Logistics, by and through Sunoco Pipeline, filed a "Declaration of Taking" in the Huntingdon County Court of Common Pleas with respect to a portion of the Gerhart Property to facilitate the construction

of the Mariner East 2 pipeline, which resulted in the establishment of an easement over the Gerhart property.

14. There is a separate litigation ongoing in Pennsylvania's state courts regarding the legality of Sunoco's taking and easement.

15. On March 28, 2016, the Huntingdon County Court of Common Pleas issued an order ("the Order") in favor of "Sunoco Pipeline L.P" and against "Stephen and Ellen Gerhart and any and all persons acting in concert with them as well as any and all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof," restraining the latter "from barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerhart's property" or with "Sunoco Pipeline's removing of or clearing trees or shrubbery on said easement."

16. As of March 28, 2016, Sunoco Pipeline did not have a permit from the Commonwealth for the construction of the Mariner East 2 pipeline and would not have a permit until February 13, 2017.

17. Nor did Sunoco Pipeline, as of March 28, 2016, have a possessory interest in the easement on the Gerhart property, and would not have such an interest until April 2017 when the Court of Common Pleas of Huntingdon County issued it a writ of possession upon the application of Sunoco/Energy Transfer Partners.

Thus, without a possessory interest in the easement pursuant to a writ of possession, there was likewise no legal right of exclusion.

18. The Court further directed that anyone violating the order be "charged with criminal contempt."

19. On or around March 28, 2016, Clean Air Council posted a public event to Facebook, titled "Stop Sunoco's Pipeline Law Breaking in PA!" to encourage people to oppose the pipeline construction and tree cutting that would take place on the Gerhart property. Plaintiffs did not organize or coordinate the Clean Air Council event.

20. Cutting trees on and around the Gerhart property after March 31 is prohibited by the U.S. Fish and Wildlife Service to protect migratory birds and the Indiana bat, which Sunoco Pipeline acknowledged in its pleadings in support of obtaining the Order.

21. As a result of the Facebook event, dozens came to the Gerhart property on March 29, 2016, to express support for the Gerharts and to peacefully express opposition to the pipeline.

22. At all times relevant hereto, the Energy Transfer/Sunoco defendants failed to properly survey and mark the boundaries of the easement over the Gerhart property with anything other than temporary, preliminary markers, which plaintiffs nevertheless respected and abided by.

### The Agreement Between Energy Transfer/Sunoco and Law Enforcement

23. Plaintiffs were approached by the law enforcement officers before they had any interaction with any tree-cutters.

24. On March 29, 2016, the Energy Transfer/Sunoco defendants, and/or their agents and assigns, were engaged in cutting down trees within the boundaries of the easement over the Gerhart property.

25. On March 29, 2016, Energy Transfer/Sunoco defendants, and/or their agents and assigns, arrived at the Gerhart property, chaperoned by members of the Huntingdon County Sheriff's Office and State Police troopers, including the individuals identified in paragraphs 8 through 10 hereinabove, to begin cutting and clearing trees.

26. Upon information and belief, the basis for which is set forth more fully hereinbelow, the Energy Transfer/Sunoco defendants had, prior to arriving at the Gerhart property on March 29, 2016, coordinated with members of the Huntingdon County Sheriff's Office and State Police troopers, including the individuals identified in paragraphs 8 through 10 hereinabove, to act as a private security force, such that the Energy Transfer/Sunoco defendants and their agents would be escorted by law enforcement officers, that law enforcement officers would only regulate the conduct of the Gerharts and their supporters (and not that of the Energy Transfer/Sunoco defendants and their

agents), that anyone who approaches the easement is to be considered in violation of the proscription on "barring, preventing or otherwise interfering" with tree cutting and should therefore be arrested (despite the fact that proximity alone plainly does not contravene the Order), and provided them with a list of names from whom they anticipated resistance (which they sought to stymie), which list included Elise and Ellen Gerhart and Alex Lotorto.

27. Thus, Defendants identified in paragraphs 8 through 10 hereinabove arrived at the Gerhart property having entered into an agreement with the Energy Transfer/Sunoco defendants to arrest pipeline opponents beyond their authority to do so under the Order or the Constitution, and, as set forth more fully hereinbelow, engaged in several improper acts in furtherance of that agreement, including fabricating evidence against arrestees to support more serious charges and targeting members of the Gerhart family, for the specific purpose of quieting and chilling the opposition to the pipeline while protecting the interests of the Energy Transfer/Sunoco defendants.

28. The agreement set forth above persisted at least through the Fall of 2017.

29. The initial complaint was filed in the instant matter on September 25, 2017.

30. The following day, September 26, 2017, a blog called "Philly Anti-Capitalist" (https://phlanticap.noblogs.org/) published an anonymous submission, which now reads:

Earlier this week we took our first steps against the Mariner East pipeline in Pennsylvania, USA. On the eve of the fall equinox, we approached several excavators and a flat bed truck on an active ME2 construction site in Media, PA and filled their fuel tanks and other liquid receptors with sand and sugar. After removing the fuel tank lid (there are diagrams about how to do this online), we recommend removing the filter just beneath it before pouring in these abrasives, for maximum damage to the whole machine, and being careful not to spill or leave other traces which would tip off the workers inspecting the machines the following morning. Human-caused ecological collapse and mass extinction are upon us, and we feel we must push ourselves to escalate the fight against it. We take this action in solidarity with Jessica Reznicek and Ruby Montoya in Iowa,[2] and struggles against ecological devastation and settler colonial violence everywhere.

[*See* https://phlanticap.noblogs.org/action-against-mariner-east-2-pipeline/]

31. The original version of the submission indicated that the "direct action" it described was performed in solidarity with the Gerharts, *inter alia*, but Philly Anti-Capitalist removed mention thereto "[a]fter being contacted by several concerned groups mentioned in this submission." *Id.*, "Pipeline critics say blog post seeks to discredit them with 'fake news'", https://stateimpact.npr.org/pennsylvania/2017/10/02/pipeline-critics-say-blog-post-seeks-to-discredit-them-with-fake-news/ (October 2, 2017).

32. Within just over two hours of the post's publication on Philly Anti-Capitalist, which had previously re-posted a Facebook post about an infiltrator to Camp White Pine (the name of the encampment on the Gerhart property), the Philly

---

[2] The Intercept documented in detail TigerSwan's efforts, on behalf of Energy Transfer Partners, to track and monitor Reznicek and Montoya, and they were also the subject of posts on Facebook group PA Progress. *See* https://www.pastemagazine.com/articles/2017/09/the-fake-news-pipeline-how-two-small-time-clickbai.html

Anti-Capitalist post was the subject of a post on energy-industry aligned

www.papipelinereview.com, which despite the original post referencing

several groups opposing pipeline construction, sought to place the blame for

the alleged incident solely on the Gerharts:

> Looking at these unlawful actions in light of sustained efforts by the
> Gerhart family and Camp White Pine to oppose Mariner East construction
> through any means necessary, resulting on multiple occasions in several
> arrests, it paints a concerning picture of destructive and often dangerous
> methods employed by some ideologically-driven anti-pipeline groups to
> hinder infrastructure development across Pennsylvania.
>
> "UNLAWFUL ACTIONS EMPLOYED TO HALT INFRASTRUCTURE
> DEVELOPMENT," http://papipelinereview.com/2017/09/26/unlawful-
> actions-employed-halt-infrastructure-development/ (September 26, 2017)

33. The PA Pipeline Review post still contains the original version of the Philly

Anti-Capitalist post.

34. At least as of September 26, 2017, the Mariner East 2 is not being constructed

in Media, Pennsylvania, and no other pipeline is undergoing active

construction in Media, Pennsylvania.

35. The Media Borough Police confirmed that the purported direct action had

never occurred.

36. Before September 29, 2017, Pennsylvania State Police spokesperson Trooper

Timothy Greene stated he was not aware of any such attack.

37. On September 29, 2017, Trooper Greene then said that the State Police were

investigating "incidents," but specifically declined an invitation to confirm that

the incident set forth in the Philly Anti-Capitalist blog post had occurred..

38. When contacted by a journalist, Sunoco spokesperson Jeff Shields specifically refused to confirm the original post's accuracy when asked to do so, and would not say whether any equipment had been damaged as purported, and instead said Sunoco would "defer to the State Police."

https://stateimpact.npr.org/pennsylvania/2017/10/02/pipeline-critics-say-blog-post-seeks-to-discredit-them-with-fake-news/

39. The post anonymously submitted to Philly Anti-Capitalist described an incident that did not happen, and, uon information and belief, the basis for which is set forth more fully above, was instead the result of continued coordinated efforts of Sunoco and the State Police to discredit the Gerharts and protect Sunoco, and would not have appeared but for the joint efforts of Sunoco and the State Police to manufacture, spread, and perpetuate a false story.

40. On October 13, 2017, Melissa DiBernardino, a member of a community group opposed to pipeline development in Chester County, brought a photographer to a pipeline construction site where drilling spills had occurred.

41. She was followed by a truck from Texas, the driver of which took a photo of her and her car, and warned her to stay off the construction easements (she was on a public road or parking lot at all times).

42. DiBernardino called the Westtown-East Goshen police to report the incident, and was informed that Sunoco had just filed a complaint against her for trespass, and was advised to find alternate transportation as the vehicle she was driving was going to be subject to surveillance.

43. DiBernardino requested and received a meeting with the Westtown-East Goshen Chief of Police Bernot to discuss concerns about the incident.

44. Chief Bernot also, on her own initiative, invited Sunoco representatives to the meeting.

45. Sunoco representative Frank Recknagel confirmed to DiBernardino at that meeting that Sunoco had engaged TigerSwan to provide security and surveillance services.

46. Recknagel and Chief Bernot insisted to DiBernardino that the incident from the Philly Anti-Capitalist posting was real and the subject of a State Police investigation after DiBernardino expressed skepticism the incident actually occurred.

47. Recknagel said to DiBernardino "I know you don't *want* to break the law. I know you don't *want* to get arrested," to which Chief Bernot nodded along affirmatively.

48. DiBernardino understood Chief Bernot's unspoken affirmation to unambiguously mean that Bernot's officers would arrest her or anyone else at

Sunoco's request, while purposefully protecting Sunoco from scrutiny as she had done at this meeting.

49. As set forth more fully below, each plaintiff was arrested on identical charges of indirect criminal contempt misdemeanor charges of disorderly conduct (the latter carrying a maximum penalty of one year confinement).

50. The identical charges of misdemeanor disorderly conduct were filed against each plaintiff by the parties identified in paragraphs 8-10, in furtherance of the plan set forth more fully herein, in an attempt to insulate the arrests from scrutiny because compliance with the Order would not be an available defense.

51. The agreement set forth more fully above was a continuation of and consistent with previous efforts of the Energy Transfer/Sunoco defendants to collaborate closely with law enforcement (https://theintercept.com/2017/05/27/leaked-documents-reveal-security-firms-counterterrorism-tactics-at-standing-rock-to-defeat-pipeline-insurgencies/) and consistent with efforts by Energy Transfer/Sunoco defendants in Louisiana which are ongoing, as indicated by arrests made of protestors for "trespassing" in a public waterway fort he benefit of Energy Transfer/Sunoco by off-duty law enforcement officers working for Energy Transfer contractors (while wearing official or official-appearing uniforms and using state-issued property), with the help of sheriff deputies whose actions were directed by the off-duty officers

(https://theappeal.org/louisiana-police-arrest-bayou-bridge-pipeline-protestors).

52. Energy Transfer/Sunoco has also retained Leighton Security for its Mariner East 2 construction, which in turn hires off-duty law enforcement officers to act as private security for Energy Transfer/Sunoco, for the express reason that their commission as law enforcement officers empowers them to arrest and detain people, and, upon information and belief, does so hire off-duty law enforcement officers for that reason at the direction of Energy Transfer/Sunoco.  https://theintercept.com/2018/08/22/recent-arrests-under-new-anti-protest-law-spotlight-risks-that-off-duty-cops-pose-to-pipeline-opponents/

<u>ALEX LOTORTO ARRESTED</u>

53. Prior to the tree cutting on March 29, 2016, Alex Lotorto responded to the Clean Air Council-sponsored Facebook event, indicating he planned to attend.

54. The Energy Transfer/Sunoco defendants cited the Clean Air Council-sponsored Facebook event in its motion seeking the March 28 Order as evidence of the need for the Order to be issued, and presented to the court a printed-out copy of the event, along with the number of invitees to the event and the number who expressed an interest or intent to attend.

55. Lotorto had engaged in many peaceful protests before March 28, 2016,

including one in February of 2013, in which he chained himself to an access gate to protest pipeline construction in Northeast Pennsylvania.

56. Lotorto was also an organizer of the Occupy Scranton encampment in the fall of 2011.

57. Lotorto is an outspoken critic of fracking and pipelines who is well-known to the energy and extraction industries such that he is the subject of posts written before March 29, 2016, by pro-energy websites like Energy in Depth (https://www.energyindepth.org/), Marcellus Drilling News (https://marcellusdrilling.com), and Natural Gas Now (https://naturalgasnow.org).

58. As of March 29, 2016, and for several years prior, Lotorto was an organizer working with the Energy Justice Network, a non-profit which according to its website (http://www.energyjustice.net/about#goals), "support[s] communities threatened by polluting energy and waste technologies" and "advocate[s] a clean energy, zero-emission, zero-waste future for all."

59. Lotorto wrote a blog post for Energy Justice Network titled "How to Fight a Pipeline," written before March 2, 2016, which noted his role in supporting a landowner resisting pipeline development by organizing "a picket line where we've turned away tree crews for 16 days straight."

60. During the tree cutting on March 29, 2016, Lotorto approached Lieutenant William Benson and Sheriff William Walters to discuss, among other things, safety concerns that were raised by the manner in which the tree-cutting was conducted. At all times the discussion was calm and respectful.

61. Lotorto was using a walkie-talkie from outside the easement to communicate with demonstrators to advise them where tree cutting crews were, so that they could avoid injury from falling trees and so that no one needed to cross the easement to stay in contact. At no time was he, either using the walkie-talkie or otherwise, directing anyone to interfere with Sunoco's access to the easement or its activities within the easement.

62. At no time did Lotorto enter the easement or otherwise contravene the March 28, 2016 Order.

63. After talking for several hours, Lt. Benson went to his car, returned holding papers, and asked "Is your name Alex Lotorto?," as he read from the papers.

64. Lotorto responded that it was.

65. Upon information and belief, considering Lotorto's reputation and Sunoco's awareness of his attendance at the March 29, 2016 demonstration, Lotorto's name had been provided to the State Police and he was identified as a potential agitator by the Energy Transfer/Sunoco defendants before their arrival at the Gerhart Property on March 29, 2016.

1 of 52

66. A short time thereafter, Deputy Sheriff Leonard read the Order to Alex, and then he was cuffed and placed in a State Police patrol car.

67. Trooper Michael Ehgartner, Lt. Benson, Sheriff Walters, and Deputy Sheriff Leonard knew that Lotorto had not entered the easement, or otherwise contravened the Order, at any time.

68. Nevertheless, for reasons unrelated to the administration of justice, and in furtherance of the agreement alleged hereinabove, Ehgartner, Benson, Walters, and Leonard, with unnamed Deputy Sheriffs and State Police Troopers and Sunoco defendants, did arrest Lotorto and charge him with disorderly conduct and criminal contempt.

69. In support of charges against Lotorto and the plan alleged hereinabove, Ehgartner, in agreement with Benson, Walters, Leonard, unnamed Deputy Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants, and in furtherance of the agreement alleged hereinabove, falsely swore in an affidavit that Lotorto was "giving direct orders to persons in an effort to intefer [sic] with the efforts of Sunoco Pipelines project [sic]" with a "wireless hand held device" and that Lotorto intentionally "created a hazardous or physically offensive condition by an act which served no legitimate purpose" by creating "a hazardous or physically offensive condition by an act which served no legitimate purpose."

70. In order to charge Lotorto with misdemeanor rather than a summary offense grade disorderly conduct, Ehgartner, in agreement with Benson, Walters, Leonard, with unnamed Deputy Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants, and in furtherance of the agreement alleged hereinabove, further falsely swore that Lotorto had persisted in his conduct "after reasonable warning or request to desist."

71. No "reasonable warning or request to desist" was ever issued to Lotorto.

72. The criminal complaint against Lotorto specifically referenced the Gerhart Property and the Order.

73. Ehgartner, Benson, Walters, and Leonard in concert with unnamed Deputy Sheriffs and State Police Troopers and Energy Transfer/Sunoco defendants did so not in the pursuit of justice but to send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights.

74. Lotorto would not have been arrested but for the agreement alleged hereinabove.

75. Thereafter, Lotorto's bail for the indirect criminal contempt charge at $100,000, which he could not afford to post, and thus remained in jail for three days.

76. Shortly thereafter, Lotorto's bail was increased by an additional $100,000

with respect to the disorderly conduct charge.

77. Another detainee in the Huntingdon County Jail at the same time as Lotorto was charged with child molestation and had bail set at $75,000.

78. On April 1, 2016, once tree-cutting could no longer take place on the Gerhart property, Lotorto's bail was reduced to $5,000, unsecured.

79. Once his bail was so modified, Lotorto was released from jail on April 1, 2016.

80. All charges against Lotorto were ultimately dismissed.

## ELIZABETH GLUNT ARRESTED

81. On March 29, 2016, Elizabeth Glunt was on the Gerhart property to express her opposition to the tree-cutting that was to take place that day.

82. Glunt heard members of the tree-cutting crew shout expletives, including racial slurs, at protestors, and saw the law enforcement officers present take no action and offer no response.

83. When Glunt saw tree cutters approach a tree that was tied to a tree occupied by a tree-sitter, she approached two tree cutters and Deputy Sheriffs Betts and McCartney (whose photos are attached hereto as Exhibit A) and told them the tree-cutting activity was putting individuals who were protesting the activities by sitting in trees at immediate risk of injury or death.

84. When her warnings were ignored, Glunt entered the right of way, only to warn

tree-cutters again that they were putting tree-sitting protestors' lives at risk.

85. She then vacated the right of way, and at no time interfered with operations in the right of way.

86. When she left the right of way area, Glunt was stopped by Deputy Sheriffs Betts and McCartney.

87. Betts and McCartney knew that the tree cutters were engaged in conduct that put others at grave risk of physical harm but, pursuant to the agreement alleged hereinabove, did not investigate or intervene.

88. Glunt was not a party to the case which resulted in the issuance of the Order, she was not aware of the Order when she entered the right of way area.

89. By merely warning crew members not to injure or kill activists, Glunt did not violate the Order, and had only been present briefly in the right of way (conduct which was plainly not proscribed by the order).

90. Deputy Sheriffs Betts and McCartney knew that Glunt had not barred, prevented, or interfered with access to the easement or with tree-cutting.

91. Deputy Sheriffs Betts and McCartney read Glunt the Order, informed her that she had violated the Order despite knowing that was not true, and, in furtherance of the agreement alleged hereinabove, arrested her.

92. Deputy Sheriffs Betts and McCartney – in agreement with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Energy

Transfer/Sunoco defendants and in furtherance of the agreement alleged hereinabove – charged Glunt, or caused her to be charged, with disorderly conduct and criminal contempt.

93. In order to charge Glunt with misdemeanor rather than a summary offense grade disorderly conduct, Deputy Sheriffs Betts and McCartney – in agreement with Sheriff Walters,

unnamed Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco defendants and in furtherance of the agreement alleged hereinabove – further falsely swore that she had persisted in her conduct "after reasonable warning or request to desist," which warnings or requests were never uttered.

94. Deputy Sheriffs Betts and McCartney, in concert with Sheriff Walters, unnamed Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco defendants did so not in the pursuit of justice but to send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights.

95. Glunt would not have been arrested but for the agreement alleged hereinabove.

96. Glunt was detained on $100,000.00 bail, which was set at that figure in order to deter

her continued perceived resistance, with the intention that she would not be able to return to the Gerhart property before the end of March 2016, and to deter further demonstrations in support of the Gerharts.

97. While she was detained, Glunt was strip searched, and otherwise suffered emotional distress and humiliation.

98. After less than 24 hours in jail, her relatives posted bail and she came home.

99. She did not return to the Gerhart property in March 2016.

100. After she agreed to participate in ARD, and successfully completed it, the charges against Glunt were dismissed.

## ELLEN GERHART ARRESTED

101. Tree-cutting resumed on March 30, 2016, and tree-sitting protestors continued to occupy trees.

102. While on her property and not far from the easement, Ellen Gerhart heard a loud crash.

103. She looked in the direction of the sound of the crash and saw tree-cutting occurring close enough to the tree-sitting to put the tree-sitters at risk of injury or death.

104. She approached, but did not enter, the easement area to warn tree-cutters that they were too close to the tree-sitters.

105.     Although she was a safe distance from the tree-cutting, and did not

enter the easement, she was approached by defendant Trooper Dunsmore,

Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, and State Police

Troopers, and Energy Transfer/Sunoco defendants, who, in furtherance of

the agreement alleged hereinabove, indicated that she was creating a

dangerous situation, handcuffed her, and escorted her off her own property,

into a police vehicle, and to the State Police barracks.

106.     While in custody at the State Police barracks, her phone was

confiscated and searched, without her permission and without probable cause

or any legitimate justification.

107.     At no time did Ellen act in contravention of the Order.

108.     On or about March 30, 2016, in furtherance of the agreement alleged

hereinabove, she was charged with disorderly conduct and indirect     criminal

contempt, and released on $5,000 unsecured bail.

109.     In order to charge her with a misdemeanor rather than a summary

offense, Dunsmore, in agreement with Sheriff Walters, Deputy Sheriffs

Cressman and Goshorn, Unnamed State Police Troopers, and Energy

Transfer/Sunoco, and in furtherance of the agreement alleged hereinabove,

defendants further falsely swore that she had persisted in her conduct "after

reasonable warning or request to desist," which reasonable warnings or

requests were never uttered.

110.     Although Sunoco was prohibited, as it acknowledged in its application

for an injunction, from cutting trees on the Gerhart property and easement after

March 31 due to United States Fish and Wildlife Service (USFWS) regulations

that protect Indiana bat habitats, its crews returned to the Gerhart property on

April 7, 2016 and resumed cutting trees.

111.     Ellen and her daughter approached the crew and informed them they

were cutting trees in contravention of the Court's order and USFWS

regulations.

112.     Sunoco's environmental consultant disputed the Gerhart's claim and

suggested they could call the police if they felt the court's order was violated.

113.     Sunoco then summoned State Troopers to the Gerhart property, who

abandoned a drug bust to attend to the Gerhart property.

114.     Instead of carrying out the Court's previous order that tree-cutting not

occur after March 31, and despite being told by the Gerharts that Sunoco was

not supposed to be present on the property at that time, Defendant Trooper

Dunsmore, acting in concert with Sheriff Walters, Deputy Sheriffs Cressman

and Goshorn, unnamed State Police Troopers, and Energy Transfer/Sunoco

defendants, and in furtherance of the agreement alleged hereinabove, again

arrested Ellen and charged her with disorderly conduct and indirect criminal

contempt.

115.    In order to charge her with misdemeanor rather than a summary

offense grade disorderly conduct, Dunsmore, in agreement with Sheriff

Walters, Deputy Sheriffs Cressman and Goshorn, unnamed State Police

Troopers, and Energy Transfer/Sunoco defendants, in furtherance of the

agreement alleged hereinabove, further falsely swore that she had persisted

in her conduct "after reasonable warning or request to desist," which

reasonable warnings or requests were never uttered.

116.    Trooper Dunsmore acting in concert with Sheriff Walters, Deputy

Sheriffs Cressman and Goshron, unnamed State Police Troopers, and Energy

Transfer/Sunoco defendants did so not in the pursuit of justice but to send a

message to the Gerhart family and their supports to discourage their opposition

to the pipeline and its construction and thereby chill their First Amendment

rights.

117.    Ellen was brought to Huntingdon County Jail and later that day

transferred to Centre County Correctional Facility.

118.    While in jail, Ellen suffered mental and emotional distress and

humiliation.

119.    All charges against Ellen were ultimately dismissed.

## ELISE GERHART

120.     On March 29, 2016, Elise Gerhart was engaged in "tree-sitting,"
occupying a tree on her family's property so that it could not be cut down
without killing or seriously injuring her.

121.     Several other individuals were also engaged in "tree-sitting" in
different trees.

122.     Eventually, all tree-sitters left their trees.

123.     On April 7, 2016, at which time no tree clearing on the Gerhart
property was permitted, Sunoco returned to the Gerhart property to resume
tree cutting without notifying the Gerharts.

124.     Elise returned to a tree to protest Sunoco's tree cutting and remained in
the tree for one-to-two days.

125.     While Elise was in the tree on or around March 29, 2016, members of
the tree cutting crews working for Sunoco joked about hurting or killing her,
while Trooper Dunsmore and other law enforcement officers watched and did
nothing.

126.     Elise endured further verbal harassment while in the tree on April 7,
2016.

127.     On both March 29 and April 7, 2016, Sunoco's employees and/or
agents took pictures and/or video of Elise.

128.     Faced with continued protest on April 7, 2016, Sunoco summoned the

State Police to the Gerhart Property.

129.     While in the tree on April 7, 2016, she was informed by a law

enforcement officer that she would be charged with a crime.

130.     Out of the several tree-sitters, only Elise Gerhart was charged with a

crime, to wit, summary and misdemeanor disorderly conduct.

131.     In order to charge Elise with misdemeanor disorderly conduct,

Dunsmore, in agreement with Sheriff Walters, unnamed Deputy Sheriffs and

State Police Troopers, and Energy Transfer/Sunoco defendants, further

falsely swore that she persisted in her conduct "after reasonable warning or

request to desist."

132.     Trooper Dunsmore, Sheriff Walters, unnamed Deputy Sheriffs and

State Police Troopers, and Energy Transfer/Sunoco defendants knew that

Elise Gerhart was one of several tree-sitters, had an actual opportunity to

arrest and charge all tree-sitters, but, in furtherance of the agreement alleged

hereinabove, and because of her connection to the property and perceived

leadership role, determined to arrest and charge only her.

133.     Trooper Dunsmore acting in concert with Sheriff Walters, unnamed

Deputy Sheriffs and State Police Troopers, and Energy Transfer/Sunoco

defendants, in furtherance of the agreement alleged hereinabove, did so not

in the pursuit of justice but to arbitrarily and maliciously send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights.

134.    All charges against Elise were ultimately dismissed.

## ETP'S ONGOING EFFORTS TO NEUTRALIZE THE GERHARTS' OPPOSITION

135.    Energy Transfer Partners, L.P. owns and operates the Dakota Access Pipeline.

136.    It was recently revealed in *The Intercept* that Energy Transfer Partners hired a private security agency called TigerSwan to target the Standing Rock demonstrators "with military-style counterterrorism measures, collaborating closely with police in at least five states," and compared demonstrators to jihadists. *See* https://theintercept.com/2017/05/27/leaked-documents-reveal-security-firms-counterterrorism-tactics-at-standing-rock-to-defeat-pipeline-insurgencies/

137.    During the 2016 Standing Rock demonstrations, Energy Transfer Partners engaged in, or caused, aerial surveillance, including use of helicopters and drones to photograph and monitor the pipeline opponents.

138.    Energy Transfer Partners has again engaged TigerSwan to provide services – including but not limited to surveillance, monitoring, social media engagement, counter-intelligence, and formalizing Energy Transfer Partners'

efforts to collaborate with law enforcement – in connection with the construction of the Mariner East 2 Pipeline in Pennsylvania.

139.     In or about November 2016, TigerSwan obtained business licenses in Pennsylvania, Ohio, and West Virginia, three states which the Mariner East 2 Pipeline traverses.

140. TigerSwan has been operating in Pennsylvania since at least April 2017, and its activities include monitoring opposition to the Mariner East 2 Pipeline. See https://theintercept.com/2017/06/21/dakota-access-style-policing-moves-to-pennsylvanias-mariner-east-2-pipeline/

141. On May 24, 2017, Retired Major General James "Spider" Marks, the chair of the board of advisors of TigerSwan, published an op-ed on PennLive.com criticizing opponents of the development of the Mariner East Two Pipeline and warning readers that such opponents would engage in the "violence" and "carnage" in which opponents of the Dakota Access Pipeline allegedly engaged. The fact that he was chair of TigerSwan's board of advisors was not disclosed in his op-ed.

142.     A similar op-ed was published by Marks, again without disclosure of his affiliation with TigerSwan, on February 8, 2017 in Lafayette, Louisiana's *Daily Advertiser* in support of the Bayou Bridge Pipeline, an Energy Transfer Partners project, and criticizing pipeline opponents.

143.   Energy Transfer Partners and TigerSwan, throughout 2017, have

surveilled and continue to surveille plaintiffs, flying helicopters and drones low

over the Gerhart property (and not along the easement), parking unmarked

vehicles near the property and shining high-beams onto the property at night,

sending employees, agents, and/or contractors onto the neighboring properties,

all, with attendant unreasonable noise, annoyance, and other disturbances,

interfering with Ellen and Elise Gerhart's use and enjoyment of their property.

144.   In addition to the foregoing conduct, Energy Transfer Partners and

TigerSwan have sent at least one "infiltrator" onto the Gerhart property, several

times and without license, privilege, or permission, and under the false pretense

that they are allied with the Gerhart's interests, supportive of their opposition

to the construction of the Mariner East 2 pipeline, and seeking to join the

encampment of supporters hosted on the property.

145.   While on the property without authorization, license, or privilege, the

infiltrator took photographs that were later included on flyers posted on the

page of a Facebook group called PA Progress to publicize (among other things)

the images of Elise and Ellen Gerhart and their supporters, and identifying

where Elise works, her car, and the Gerharts' driveway.

146.   "Infiltration" is one of the tactics utilized by TigerSwan on behalf of Energy

Transfer Partners during the Standing Rock demonstrations, and, as set forth

above, TigerSwan continues to utilize. See

https://theintercept.com/2017/05/27/leaked-documents-reveal-security-firms-

counterterrorism-tactics-at-standing-rock-to-defeat-pipeline-insurgencies/.

147.   Posts on Facebook falsely ascribe to Elise Gerhart claims that the

helicopters flown over the Gerhart property are of Russian origin.

148.   Posts on blackbadgerreport.com falsely claim that Elise Gerhart and her

cohorts are fronts for the Russian government to disrupt domestic energy

markets, and that she has appeared on Russian TV. *See*

https://www.blackbadgerreport.com/2017/08/30/russia-funding-environmental-

activist-groups-shake-american-energy-markets/[3]

149.   In support of its false assertion that Elise Gerhart appeared on Russian TV,

the blackbadgerreport.com article includes a screenshot of Elise appearing on a

program called "Act Out," which is a production of not of Russian origin but of

occupy.com, which is owned by Occupy.com, Incorporated, a Delaware not-

for-profit corporation.

150.   Blackbadgerreport.com is a project of TigerSwan and/or Nick Johnson, on

behalf of Energy Transfer Partners: another blackbadgerreport.com article seeks

---

[3] Viewable here:
https://web.archive.org/web/20171017122223/https://www.blackbadgerreport.com/2017/08/3
0/russia-funding-environmental-activist-groups-shake-american-energy-markets/

to discredit *The Intercept*, ostensibly for its reporting on TigerSwan, falsely

attributing to *The Intercept* an "affiliation" with "pro-communism events" and

"anti-pipeline and anti-fascist movements."

https://www.blackbadgerreport.com/2017/08/25/intercept-news-organizations-

connected-communist-groups/[4]

151.   The article falsely claiming that Elise Gerhart is a Russian Front was

authored by "Nate Clay," which is a pseudonym used by Nick Johnson.[5]

152.   Johnson, by his own admission, is not engaging in social media

efforts through Chasing Chains, the LLC of which he is a member, but

instead individually.[6]

153.   Black Badger Report's Facebook page has one review, by "Felix Moniker."

154.   Felix Moniker's public Facebook profile has just three posts, one of which

is "Badger Badger Badger" and includes a link to blackbadgerreport.com. See

---

[4] Viewable here:
https://web.archive.org/web/20171007054445/https://www.blackbadgerreport.com/2017/08/25/intercept-news-organizations-connected-communist-groups/

[5] See https://www.pastemagazine.com/articles/2017/09/the-fake-news-pipeline-how-two-small-time-clickbai.html

[6] See https://www.pastemagazine.com/articles/2017/09/the-fake-news-pipeline-how-two-small-time-clickbai.html

https://www.facebook.com/felix.moniker.33?[7]

155.   Felix Moniker's public Facebook profile further indicates he has a single

"friend," Delaney Borror, a student who lives in Apex, North Carolina.

156.   Apex, North Carolina is the headquarters of TigerSwan.

157.   Derek Borror is the Vice President of Guardian Angel at TigerSwan, a

"friend" of Delaney Borror on Facebook, and, upon information and belief,

Delaney's father. See https://www.linkedin.com/in/derek-borror-mba-b4332bb/

158.   TigerSwan has coordinated with Nick Johnson on Energy Transfer

Partners' behalf to disseminate video – which was titled "Anarchists are

building a base in rural PA" and the posting captioned "The anarchist protest

cell in Huntingdon continues to call for others to come to the area" – using an

actor posing as a local community member to discredit the Gerharts.

159.   The audio component of the video is comprised of the following statement:

> Hey guys its Josh Baker reporting for PA Progress here in Huntington,
> Pennsylvania. So, we got some new information from the camp down the road and
> we wanted to catch you up on it. So, people here are becoming more aware  of the
> *growing cult* off 829 south of town. ***This family is called the Gerharts***. [8]They are
> actively ***recruiting other anarchists*** to the area to join them as we speak. Many of
> these people are the same ones who caused so much chaos in
>
> Standing Rock in North Dakota. Trust us, ***we don't want these people in our***
> ***community***. Just ask people from North Dakota who had to live through this. So
> far, about ***a dozen intimidating supporters*** have come to the area to sit in the camp
> they call "Camp White Pine." The purpose of the camp is to recruit people to the
> property and begin ***planning a direct action against the State of Pennsylvania***.

---

[7] Since the filing of the original complaint, this profile was removed from Facebook.  A copy
is attached hereto as Exhibit B.
[8] A photo of Ellen is shown, with a caption "AKA the Doorknob Gang."

Some of their supporters come from as far away as Iowa where a ***leftist anti-government cult admitted to blowing up oil pipelines*** last fall. Now, here is some of the ***social media coming from their camp***.[9] This group in Huntington has been ***posting on social media about overthrowing President Trump; sabotaging pipelines and destroying buildings in large city centers.*** The local sheriff knows about this camp, but it's powerless to do anything until they act. A judge has already written an injunction to have them removed from the property if they resist from the police. There is no data as to when the family will be removed. But, meanwhile they are actively asking others to join them and to come here to Huntington. These are the ringleaders.[10] They frequent the Farmers Market in Huntington, the Huntington Carwash and laundromat; Wildflower Café; and Rothrock Outfitters. We are asking people in the area to please stay away from them when you see them, and if you see anything suspicious, call the number below.[11]

[Emphasis added]

160. The full video is embedded in the article appearing at this url:

https://theintercept.com/2017/08/26/dapl-security-firm-tigerswan-responded-to-

pipeline-vandalism-by-launching-multistate-dragnet/

161. Actors such as the one featured in the aforementioned video were

recruited by Nick Johnson personally (using aliases), and the

aforementioned video was posted on a Facebook group called PA

Progress, which is run by Johnson and/or TigerSwan on behalf of

Energy Transfer Partners to further its efforts to harm, silence, and

---

[9] A screenshot of a Facebook post about self-defense tactics is shown. Even if the poster is a Gerhart supporter, the video misrepresents the post as a call to violent action and falsely attributes the post to the Gerharts and all their supporters ("Now, here is some of the social media coming from *their* camp").

[10] A photo of Elise Gerhart and three others is shown.

[11] The "number below" is the number of the Huntingdon County Sheriff.

discredit Elise and Ellen Gerhart and their supporters.

162.   A similar video was posted on the page of a Facebook group called Louisiana First, using the same actor (who identifies himself by a different name), attacking opponents of Energy Transfer Partners' Bayou Bridge Pipeline.

163.   When an article on pastemagazine.com noted the same actor was used in both videos, and further connected the source of the videos to Johnson and TigerSwan (and, by implication, to Energy Transfer Partners), the videos were removed within days from the Johnson/TigerSwan-managed Facebook pages, but paste.com was asked to remove links to the videos in its article when a "copyright" complaint was lodged.  *See* https://www.pastemagazine.com/articles/2017/09/the-fake-news-pipeline-how-two-small-time-clickbai.html

164.   PA Progress posted a link to the blackbadgerreport.com article falsely accusing Elise Gerhart of being a Russian front on its Facebook page.

165.   Other posts on the PA Progress Facebook group refer to Elise Gerhart as an "anarchist" who is sabotaging pipelines and the environment, that she associates with actual and alleged criminals, selectively publicize the Gerhart address (in a place where threats of violence, including death threats, directed at Elise Gerhart and others on her property were posted),

the fact that their home is heated with oil, and assert that "the family knew

that there was a utility company easement which crossed the property

when they purchased their [property]," which will (inexplicably) cause

local taxes to increase (a point repeated in an additional video).

166.    The latter post included copies of the Gerhart's deed, but did not include the

fact that the pipelines were defunct when the property was purchased, that they

were underground, and that the portion of the Gerhart property upon which

those pipelines were located was sold by the Stephen and Ellen Gerhart in the

1990s, which is information that would be available to the same extent that the

original deeds were available, and thus the post was deliberately misleading in

order to further the scheme to harm and discredit the Gerharts.

167.    Each of the foregoing postings on PA Progress, blackbadgerreport.com, and

elsewhere are highly offensive, and have not only resulted in reputational harm,

but have, by design, incited commenters to threaten to injure or kill Elise

Gerhart and her supporters, which in turn have caused Elise Gerhart mental

anguish and emotional distress.

168.    Energy Transfer Partners has attacked the Gerharts and the supporters

hosted on their property using language nearly identical to the language

utilized by TigerSwan, and Nick Johnson, stating in legal documents that "the

encampment, if not actually hijacked by anarchists, and radical eco-terrorists,

has certainly taken a broad anti-pipeline, anti-fossil fuel, anti-establishment, and anti-authority bent."

169.    The foregoing acts were undertaken as part of the Energy Transfer Partners/Sunoco defendants' broader effort to "neutralize opposition" to the Mariner East 2 Pipeline, a goal which they have publicly acknowledged,[12] and which is consistent with the deliberately conceived, systematic scheme to quell legitimate protest at pipeline sites and elsewhere, as set forth more fully hereinabove.

170.    Just as Energy Transfer Partners hired TigerSwan to coordinate efforts to undermine opposition with law enforcement agencies in Standing Rock, Energy Transfer Partners hired TigerSwan for the same purpose – to coordinate efforts with law enforcement to undermine opposition – for the Mariner East 2 Pipeline generally and with respect to the Gerharts in particular.

171.    Not only have Energy Transfer Partners and TigerSwan monitored and surveilled plaintiffs, as set forth more fully above, but even after Energy Transfer Partners sought and obtained, in summer 2017, an order to remove the Gerharts and their supporters from the easement, authorizing the Huntingdon County Sheriff to enforce the order, but have continued to surveille, monitor,

---

[12] https://stateimpact.npr.org/pennsylvania/2017/07/06/sunocos-pr-firm-aims-to-neutralize-opposition-to-mariner- east-pipeline-project/

and harass plaintiffs rather than attempt to enforce the order.

172. Consistent with the foregoing, Energy Transfer Partners and Sunoco coordinated the planting of the false story of pipeline sabotage in Media, Pennsylvania set forth more fully above with TigerSwan and Johnson.

173. Energy Transfer Partners authorized and expected that Johnson and TigerSwan would engage in the conduct alleged hereinabove, all of which was undertaken within the course and scope of Johnson's and TigerSwan's agency on behalf of and/or employment by Energy Transfer Partners.

174. As a result of the foregoing, plaintiffs suffered significant damages and harms, including but not limited to:

    a.  Pain and suffering;

    b.  emotional distress;

    c.  deprivation of liberty;

    d.  interference with daily activities;

    e.  interference with the use and enjoyment of property; and

    f.  retention of attorneys at their own expense;

        some or all of which are ongoing and/or permanent.

175. Plaintiffs' damages and harms were caused by the culpable conduct of defendants, alleged in greater detailed hereinbelow.

176. The conduct of each defendant was carried out in wanton and outrageous

disregard for the Constitution and plaintiff's rights thereunder and under

Pennsylvania law, and was motivated solely by their self-interest, completely

unrelated to any legitimate purpose, thereby warranting an award of exemplary

damages against each.

## V.     CAUSES OF ACTION[13]

### COUNT ONE
**42 U.S.C. § 1983 (Malicious Prosecution)**
**Alex Lotoro and Ellen Gerhart v. Energy Transfer Partners, Sunoco**
**Logistics, Sunoco Pipeline**
**Alex Lotorto v. Ehgartner, Benson**
**Ellen Gerhart v. Dunsmore**

177.   Plaintiffs incorporate by reference each of the foregoing paragraphs as

though set forth herein in their entirety.

178.   Plaintiffs Lotorto and Ellen Gerhart suffered the harms and damages

alleged hereinabove as a direct and proximate result of defendants' violation of

their rights under the 4th and 14th Amendment to the United States Constitution.


### COUNT TWO
**42 U.S.C. § 1983 (False Arrest)**
**Alex Lotorto, Elizabeth Glunt, and Ellen Gerhart v. Energy Transfer**
**Partners, Sunoco Logistics, Sunoco Pipeline**
**Alex Lotorto v. Ehgartner, Benson**
**Ellen Gerhart v. Dunsmore**

---

[13] The claims set forth herein reflect the Court's December 14, 2018 order dismissing certain claims previously asserted with prejudice and are therefore not set forth herein, but that is not to be construed as an abandonment of those claims or of plaintiffs' appellate rights.

179.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

180.   Defendants lacked probable cause to arrest plaintiffs.

181.   Plaintiffs Lotorto, Glunt, and Ellen Gerhart suffered the harms and damages alleged hereinabove as a direct and proximate result of defendants' violation of their rights under the 4th and 14th Amendment to the United States Constitution.

**COUNT THREE**
**42 U.S.C. § 1983 (Equal Protection)**
**Elise Gerhart v. Dunsmore, Energy Transfer Partners, Sunoco Logistics,**
**Sunoco Pipeline**

182.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

183.   The conduct of defendants alleged hereinabove, in targeting, arresting, and charging her in 2016, comprised and/or was carried out pursuant to a plan and policy targeting Elise for discriminatory treatment intended to cause her harm.

184.   Defendants' intentional conduct under the color of state law was arbitrary and malicious, served no legitimate governmental purpose, was improperly motivated, was unreasonable, thereby violating plaintiffs' right to equal protection, guaranteed by the Fourteenth Amendment to the Constitution of the United States.

185.   Elise Gerhart was the only tree-sitter arrested or charged in 2016 out of several who were at various times on the Gerhart property and/or the easement.

186.   Elise Gerhart was targeted because of her relationship to the property owners and for purposes of chilling her opposition to the pipeline and sending a message to other would-be tree-sitters when defendants returned the next spring to resume cutting trees.

187.   Elise Gerhart suffered the harms and damages alleged hereinabove as a direct and proximate result of defendants' violation of their rights under the 14th Amendment to the United States Constitution.

**COUNT FOUR**
**42 U.S.C. § 1983 (First Amendment)**
**All Plaintiffs v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline Ellen and Elise Gerhart v. Dunsmore Lotoro v. Ehgartner, Benson**

188.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

189.   Plaintiffs have an absolute right under the First and Fourteenth Amendments to the Constitution to express their opposition to the development and construction of fossil fuel pipelines, including the manner and impacts of development and construction.

190.   Each plaintiff made known to defendants his or her opposition to the development and construction of the Mariner East 2 Pipeline.

191.   Defendants then undertook the actions set forth more fully hereinabove in order to chill plaintiffs' First Amendment right to express their opposition.

192.   As a result, plaintiffs suffered the harms and damages alleged hereinabove as a direct and proximate result of defendants' violation of their rights under the 14th Amendment to the United States Constitution.

**COUNT FIVE**
**Abuse of Civil Process (Pennsylvania Law)**
**Ellen Gerhart v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline**

193.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

194.   Defendants did not have a right of possession, and therefore did not have a right of exclusion, on the easement referenced by the Order in March or April 2016.

195.   Nor did defendants have permits for the construction of the Mariner East 2 pipeline at that time.

196.   Defendants nevertheless sought to and did utilize the Order, enjoining the Gerharts and any of their cohorts, including Alex Lotorto and Elizabeth Glunt, for the illegitimate purpose of silencing and intimidating opposition to the construction and development of the Mariner East 2 pipeline.

197.   As a result, plaintiffs suffered the damages set forth hereinabove.

## COUNT SIX
### Nuisance (Pennsylvania Law)
### Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline, and TigerSwan

198.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

199.   Elise Gerhart, who lives on the Gerhart property, is a legal occupant of that property.

200.   Defendant's conduct as alleged more fully hereinabove, including but not limited to the entry onto the property and cutting of trees in April 2016, use of aerial surveillance (and attendant sound), unreasonable and obnoxious shining of light onto the property and home, and use of manual surveillance, interfered and continues to interfere with plaintiffs' use of their property.

201.   The foregoing conduct was undertaken in a manner which interfered with plaintiffs' use and enjoyment of the property, and was unreasonable.

202.   As a result of the foregoing nuisance, plaintiffs suffered the harms and damages set forth above.

## COUNT SEVEN
### Invasion of Privacy (Pennsylvania Law)
### Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics, Sunoco Pipeline, TigerSwan, and Nick Johnson

203.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

204.   Defendants conduct, as alleged more fully hereinabove in paragraphs 143-172, was undertaken in a manner highly offensive to a reasonable person, constituting an intentional intrusion upon the solitude or seclusion of plaintiffs and their private affairs or concerns, and the publicity of plaintiffs in a false light.

205.   As a result of the foregoing invasion of privacy, plaintiffs suffered the harms and damages set forth above.

**COUNT EIGHT**
**Trespass (Pennsylvania Law)**
**Ellen and Elise Gerhart v. Energy Transfer Partners, Sunoco Logistics,**
**Sunoco Pipeline, and TigerSwan**

206.   Plaintiffs incorporate by reference each of the foregoing paragraphs as though set forth herein in their entirety.

207.   As set forth more fully above, defendant Energy Transfer Partners, then acting through Sunoco Logistics and Sunoco Pipeline, unlawfully and intentionally entered upon plaintiffs' land in April 2016 to engage in tree-cutting, which they had no legal right to undertake.

208.   As set forth more fully above, defendants again unlawfully entered plaintiffs land without privilege, permission, or justification, intentionally and for the purpose of conducting surveillance.

209.   As a result of the foregoing trespass, plaintiffs suffered the harms and damages set forth above.

## VI.   JURY DEMAND

210.   Plaintiff demands a jury determination of all issues so triable

## VII.   PRAYER FOR RELIEF

WHEREFORE, plaintiff prays the Court for judgment in his favor, against

all defendants, individually, jointly and severally, and asks for the following relief:

a)   declaratory relief;

b)   compensatory and general damages;

c)   punitive damages;

d)   an order abating the nuisance and invasions of privacy;

e)   attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f)   such interest and other costs as are allowed by law;

g)   such other relief as the Court deems just and equitable.


Respectfully submitted,

**WILLIAMS CEDAR**

*/s/ CHRISTOPHER MARKOS*
By: Christopher Markos, Esquire
Attorney I.D. # 308997
1515 Market Street, Suite 1300
Philadelphia, PA 19102-1929
P: 215.557.0099
F: 215.557.0673
Email:cmarkos@williamscedar.com

and

**RAIDERS LAW PC**
Richard A. Raiders , Esquire
Attorney I.D. # 314857
606 N. 5th Street
Reading, PA 19601
P: 484.509.2715
F: 610.898.4623
Email: rich@raiderslaw.com

Dated: <u>January 14, 2019</u>

# EXHIBIT A
# (Photo)



# EXHIBIT B
# (website)

