**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELLEN GERHART, <u>et</u> <u>al.</u>,** | : | |
| **Plaintiffs** | : | **No. 1:17-cv-01726** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **ENERGY TRANSFER** | : | |
| **PARTNERS, L.P., <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court are motions to dismiss Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by: (1) Defendant TigerSwan LLC ("Defendant TigerSwan"); (2) Defendants Energy Transfer Partners, L.P., Sunoco Logistics, L.P., and Sunoco Pipeline, L.P. (the "Sunoco Defendants"); (3) Defendant Nick Johnson ("Defendant Johnson"); and (4) Defendants William Benson, Trooper Dunsmore, and Michael Ehgartner (the "PSP Defendants"). (Doc. Nos. 61-64.) For the reasons stated herein, the Court will grant in part and deny in part the motions.

**I. BACKGROUND**

**A. Procedural Background**

Plaintiffs Ellen Gerhart, Elise Gerhart, Alex Lotorto ("Plaintiff Lotorto"), and Elizabeth Glunt ("Plaintiff Glunt") (collectively referred to herein as "Plaintiffs") initiated the above-captioned action by filing a complaint in this Court on September 25, 2017. (Doc. No. 1.) That eight-count complaint asserts claims of malicious prosecution, false arrest, abuse of civil process, nuisance, invasion of privacy, trespass, and violations of First Amendment and Equal Protection rights against numerous defendants. (<u>Id.</u> at 29-35.) On March 22, 2018, Plaintiffs filed an unopposed motion to amend/correct their complaint. (Doc. No. 49.) The Court granted that

motion on March 26, 2018, and Plaintiffs' amended complaint was deemed filed as of March 22, 2018. (Doc. No. 51.) Like the original complaint, Plaintiffs' eight-count amended complaint (Doc. No. 49-1) asserts claims of malicious prosecution, false arrest, abuse of civil process, nuisance, invasion of privacy, trespass, and violations of First Amendment and Equal Protection rights against numerous defendants. (Id. at 30-36.) On December 14, 2018, the Court granted the motions to dismiss Plaintiffs' first amended complaint asserted by various defendants and dismissed Plaintiffs' first amended complaint without prejudice to their filing of a second amended complaint that corrected the pleading deficiencies identified by the Court. (Doc. Nos. 57, 58.) On January 14, 2019, Plaintiffs filed the operative eight-count second amended complaint. (Doc. No. 60.) On January 28, 2019, Defendant TigerSwan, the Sunoco Defendants, Defendant Johnson, and the PSP Defendants filed motions to dismiss the second amended complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 61-64.) Those defendants filed briefs in support of their motions to dismiss on February 11, 2019 (Doc. Nos. 65-68), and Plaintiffs filed a brief in opposition to all four motions to dismiss on March 4, 2019 (Doc. No. 71). On March 18, 2019, the PSP Defendants, the Sunoco Defendants, and Defendant TigerSwan filed reply briefs in further support of their motions to dismiss. (Doc. Nos. 72-74.) In June of 2019, the Sunoco Defendants filed two notices of supplemental authority. (Doc. Nos. 75, 77.) Several of the parties filed additional briefing in January and February of 2020. (Doc. Nos. 83-1, 87-89.)[1] Because the period for further briefing has ended, the motions are ripe for disposition.

---

[1] The Court notes that it has reviewed these filings, but "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B.  Factual Background[2]

The allegations in the second amended complaint stem from several incidents involving demonstrations in opposition to the construction of the Mariner East 2 Pipeline on an easement over property owned by Plaintiff Ellen Gerhart in Huntingdon, Pennsylvania.[3]  (Doc. No. 60.) These demonstrations occurred on March 29, March 30, and April 7, 2016, when tree-cutters began to clear trees on the easement.  (Id. ¶¶ 21, 60-61, 101, 123-24.)  In addition, Plaintiffs' allegations relate to an alleged surveillance and media campaign conducted by several defendants against two of the plaintiffs and their supporters based on their opposition to the pipeline construction.  (Id. ¶¶ 143-49, 158-61, 164-69, 171-73.)  Before turning to the events that prompted the instant action, the Court will describe the numerous parties to this action.

#### 1.  The Parties

##### a.  Plaintiff Ellen Gerhart

Plaintiff Ellen Gerhart resides at 15357 Trough Creek Valley Pike in Huntingdon, Pennsylvania (the "Property"), which she owns with her husband, Stephen Gerhart.  (Id. ¶¶ 3, 12.)  On March 30, 2016, she was arrested on the Property during the demonstration in opposition to the pipeline construction and was charged with indirect criminal contempt and disorderly conduct.  (Id. ¶¶ 101-02, 108.)  The next week, on April 7, 2016, she was arrested again on the Property and charged with indirect criminal contempt and disorderly conduct after a separate confrontation with police and a tree-cutting crew.  (Id. ¶¶ 110-14.)

However, even if the Court were to consider the incidents described in Plaintiffs' sur-reply brief (Doc. No. 83-1), such consideration would not change the Court's disposition of the instant motions.

[2] Except where otherwise indicated, the following background information is taken from the allegations asserted in Plaintiffs' second amended complaint.  (Doc. No. 60.)

[3] The Mariner East 2 Pipeline is a proposed natural gas pipeline that runs through Pennsylvania, West Virginia, and Ohio.  (Id. at 1-2, ¶ 139.)

### b. Plaintiff Elise Gerhart

Plaintiff Elise Gerhart also resides at the Property with Ellen and Stephen Gerhart. (Id. ¶¶ 3, 12.)  She was present during the demonstrations on the Property on March 29 and April 7, 2016.  (Id. ¶¶ 120, 123-24.)  On both March 29 and April 7, she engaged in tree-sitting, which entails occupying a tree as a form of protest so that the tree cannot be cut down without seriously injuring or harming the occupant.  (Id.)  On April 7, 2016, while Plaintiff Elise Gerhart was tree-sitting, an unidentified law enforcement officer informed her that she would be charged with a crime.  (Id. ¶ 129.)  Subsequently, she was charged with summary and misdemeanor disorderly conduct.  (Id. ¶ 130.)

### c. Plaintiffs Alex Lotorto and Elizabeth Glunt

Plaintiffs Alex Lotorto ("Plaintiff Lotorto") and Elizabeth Glunt ("Plaintiff Glunt") are supporters of the Gerharts who, with the Gerharts' permission, were on the Property on March 29, 2016 during the demonstration in opposition to the pipeline construction.  (Id. ¶¶ 4, 5, 60, 61, 81.)  Both Plaintiffs Lotorto and Glunt were arrested during the demonstration on March 29, 2016 and charged with disorderly conduct and criminal contempt.  (Id. ¶¶ 68-70, 91-93.)

### d. Pennsylvania State Police Defendants

Defendants Lieutenant William Benson ("Defendant Benson"), Trooper Michael Ehgartner ("Defendant Ehgartner"), and Trooper Dunsmore ("Defendant Dunsmore") (collectively referred to herein as the "PSP Defendants") are officers of the Pennsylvania State Police.  (Id. ¶ 7.)  Plaintiffs allege that the PSP Defendants, along with several members of the Huntingdon County Sheriff's Office,[4] were present on the Property during the demonstrations at

---

[4] Sheriff William Walters and Deputy Sheriffs Nathan Betts, Larry Cressman, Nathan Goshorn, Jeffery E. Leonard, and Daniel McCartney are members of the Huntingdon County Sheriff's

the Property on March 29, March 30, and April 7, 2016 and participated in the decisions to arrest and charge Plaintiffs, as well as their subsequent arrests, on those dates.  (Id. ¶¶ 27, 60, 63, 65-70, 91-94, 105, 109, 114-16, 125, 129-33.)

### e. Energy Company Defendants

Defendants Energy Transfer Partners, L.P. ("Energy Transfer Partners"), Sunoco Pipeline, L.P. ("Sunoco Pipeline"), and Sunoco Logistics, L.P. ("Sunoco Logistics") (all of which are collectively referred to herein the "Sunoco Defendants") are entities that are involved in the construction of the Mariner East 2 Pipeline.  (Id. ¶¶ 13, 138.)  Sunoco Logistics was a subsidiary of Energy Transfer Partners, and Sunoco Logistics owned and operated Sunoco Pipeline, prior to April 28, 2017, when Energy Transfer Partners and Sunoco Logistics merged.[5]  (Id. ¶¶ 6-6B.)

### f. Defendant TigerSwan, LLC

Defendant TigerSwan, LLC ("TigerSwan") is a private security company located in North Carolina that had previously been hired by Energy Transfer Partners to provide surveillance and other "military-style counterterrorism measures" during the 2016 Standing Rock demonstrations in the Midwestern United States.  (Id. ¶¶ 10, 136.)  Plaintiffs allege that Energy Transfer Partners hired TigerSwan to provide their services, including surveillance, social media engagement, and counterintelligence, in relation to the construction of the Mariner East 2 Pipeline project in Pennsylvania.  (Id. ¶ 138.)

### g. Defendant Nick Johnson

---

Office.  (Doc. No. 60 ¶ 8.)  They were dismissed as defendants in this action pursuant to the Court's December 14, 2018 Memorandum and Order.  (Doc. Nos. 57, 58.)

[5] Plaintiffs refer to the Sunoco Defendants interchangeably throughout the amended complaint because "Sunoco Logistics and Sunoco Pipeline were subsumed by Energy Transfer Partners." (Doc. No. 60 ¶ 6E.)

Defendant Nick Johnson ("Defendant Johnson") is a social media consultant from North Carolina.  (Id. ¶ 11.)  Plaintiffs allege that Energy Transfer Partners hired Johnson to produce and disseminate content in opposition to the Gerharts and their supporters through social media and other online platforms.  (Id. ¶¶ 150-52, 158-68, 172-73.)

### 2. The Gerhart Property, the Mariner East 2 Pipeline, and the Court of Common Pleas Order

As previously noted, Plaintiff Ellen Gerhart and her husband own and reside at 15357 Trough Creek Valley Pike in Huntingdon, Pennsylvania (the "Property").  (Id. ¶ 12.)  The Gerharts purchased the 27-acre parcel of land in 1983 and have since constructed their home on it.  (Id.)  The Property is substantially wooded and includes a stream, a small pond, and a wetlands area.  (Id.)

On July 21, 2015, Sunoco Logistics, acting through Sunoco Pipeline, filed a Declaration of Taking in the Huntingdon County Court of Common Pleas pertaining to a section of the Property in order to facilitate the construction of the Mariner East 2 Pipeline.  (Id. ¶ 13.)  As a result of that filing, the Huntingdon County Court of Common Pleas granted Sunoco Logistics an easement over the Property (the "Easement").[6]  (Id.)

Over nine months later, on March 28, 2016, the day before the Sunoco Defendants began clearing trees on the Easement (id. ¶ 24), the Huntingdon County Court of Common Pleas issued an order (the "Court of Common Pleas Order"), stating, in pertinent part, as follows:[7]

---

[6] The legality of this taking and easement are the subject of separate, ongoing litigation in Pennsylvania state court.  (Id. ¶ 14.)

[7] Although Plaintiffs' second amended complaint (Doc. No. 60) does not state the full text of the Court of Common Pleas Order, the Court may consider matters of public record when examining a Rule 12(b)(6) motion.  See Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").  Accordingly,

6

Stephen Gerhart and Ellen Gerhart and any and all parties or persons acting in concert with them as well as any and all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof are hereby restrained and enjoined pending further Order of Court from barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerharts' property. . . . Stephen and Ellen Gerhart and all persons acting in concert with them as well as all persons on property owned by Stephen and Ellen Gerhart or in the vicinity thereof are hereby restrained and enjoined pending further Order of Court from barring, preventing, or otherwise interfering in any way with Sunoco Pipeline's removing of or clearing trees and shrubbery on said easement.

(Doc. No. 62-2 at 63.)  The Court of Common Pleas Order further states that:

[T]he Sheriff of Huntingdon County is directed to coordinate with the Pennsylvania State Police to enforce this Court's Order.  In the event that the Sheriff finds that anyone is in violation of this Court's Order, they shall be taken into custody, charged with indirect criminal contempt and brought directly to this Court on the next time and date the Court is in business.

(Id. at 64.)

### 3.    Demonstration and Arrests at the Property on March 29, 2016

On the same day that the Huntingdon County Court of Common Pleas issued its order, the Clean Air Council created a public Facebook event called "Stop Sunoco's Pipeline Law Breaking in PA!," which encouraged opposition to the tree-cutting and pipeline construction that was set to occur on the Easement.  (Doc. No. 60 ¶ 19.)  On March 29, 2016, the next day, dozens of demonstrators arrived at the Property to express their support for the Gerharts and their opposition to the pipeline construction.  (Id. ¶ 21.)

Plaintiffs allege that the Sunoco Defendants also arrived at the Property on March 29, 2016, escorted by Pennsylvania State Police troopers and members of the Huntingdon County Sheriff's Office, to begin cutting down and clearing trees on the Easement.  (Id. ¶ 25.)  Plaintiffs allege that the PSP Defendants and members of the Huntingdon County Sheriff's Office had

because the Court of Common Pleas Order is a matter of public record, the Court has considered its text in full and included relevant portions of that text in this Memorandum.

entered into an agreement with the Sunoco Defendants prior to arriving at the Property on March 29, 2016, to "act as a private security force" for the Sunoco Defendants and to improperly arrest anyone who approached the Easement. (Id. ¶ 26.)[8] Plaintiffs further allege that the Sunoco Defendants provided those law enforcement personnel with a list of the names of individuals "from whom they anticipated resistance." (Id.) At some point on March 29, 2016, Plaintiff Lotorto approached Defendant Benson and Sheriff Walters on the Gerhart Property to discuss safety concerns regarding the tree-cutting on the Easement. (Id. ¶ 60.) Plaintiff Lotorto was using a Walkie-Talkie to communicate with other demonstrators on the Property in order to advise them as to where tree-cutting crews were located so that the demonstrators could avoid being injured by falling trees. (Id. ¶ 61.) According to the second amended complaint, Plaintiff Lotorto neither directed anyone to interfere with the tree-cutting or access to the Easement nor entered the Easement at any point. (Id. ¶¶ 61-62.) Several hours after Plaintiff Lotorto first spoke with Defendant Benson and Sheriff Walters, Defendant Benson went to his car, retrieved

---

[8] Plaintiffs further assert various allegations pertaining to the Sunoco Defendants' cooperation and association with law enforcement personnel in other locations across Pennsylvania and the country. (Id. at 29-48, 51-52.) Plaintiffs assert that the Sunoco Defendants coordinated with the Pennsylvania State Police to publish a blog post that falsely alleged that equipment involved in the construction of the Mariner East 2 Pipeline was purposefully damaged in Delaware County, Pennsylvania as an act of solidarity with the Gerharts. (Id. ¶¶ 29-39.) Plaintiffs also assert allegations pertaining to a meeting between Melissa DiBernardino—a pipeline opponent—and Chief Bernot of the Westtown-East Goshen Police Department in Chester County, Pennsylvania, which was attended by representatives of the Sunoco Defendants upon the invitation of Chief Bernot. (Id. ¶¶ 40-48.)

 Further, Plaintiffs reference allegations that the Sunoco Defendants hired off-duty law enforcement personnel as security contractors in Louisiana and that those off-duty officers then directed on-duty law enforcement personnel to improperly arrest demonstrators. (Id. ¶ 51.) Plaintiffs also contend that the Sunoco Defendants have a history of collaborating with law enforcement personnel, citing an article from The Intercept that alleges coordination between the Sunoco Defendants—through their security contractor, Defendant TigerSwan—and law enforcement personnel in the Midwestern United States in relation to the demonstrations against the Dakota Access Pipeline. (Id.)

several sheets of paper, then approached Plaintiff Lotorto and asked, "Is your name Alex Lotorto?" (Id. ¶ 63.) Plaintiff Lotorto responded affirmatively. (Id. ¶ 64.) A short time later, Deputy Sheriff Leonard read the Court of Common Pleas Order to Plaintiff Lotorto, at which point Plaintiff Lotorto was handcuffed and placed in a Pennsylvania State Police vehicle. (Id. ¶ 66.)

Plaintiffs allege that Sheriff Walters, Deputy Sheriff Leonard, and Defendants Ehgartner and Benson knew that Plaintiff Lotorto had not entered the Easement or violated the Court of Common Pleas Order. (Id. ¶ 67.) However, Plaintiffs assert that Sheriff Walters, Deputy Sheriff Leonard, Defendants Ehgartner and Benson, unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers, and the Sunoco Defendants arrested Plaintiff Lotorto and charged him with disorderly conduct and criminal contempt. (Id. ¶ 68.) Plaintiff Lotorto was then detained until April 1, 2016 because he could not afford to post the initial bail assessment. (Id. ¶¶ 75, 78, 79.) All charges against him were eventually dismissed. (Id. ¶ 80.)

Plaintiff Glunt was among the demonstrators present on the Property on March 29, 2016. (Id. ¶ 81.) Plaintiffs allege that Plaintiff Glunt saw tree-cutters approaching a tree that was occupied by another demonstrator. (Id. ¶ 83.) She then approached two tree-cutters and Deputy Sheriffs Betts and McCartney and told them that the tree-cutting was putting demonstrators occupying the trees at immediate risk of injury. (Id.) Plaintiffs assert that when nobody took action in response to her warnings, Plaintiff Glunt entered the Easement in order to warn the tree-cutters that they were endangering the demonstrators occupying the trees. (Id. ¶ 84.) According to Plaintiffs, Plaintiff Glunt did not interfere with any of the tree-cutting operations in the Easement and exited upon warning the tree-cutters. (Id. ¶ 85.)

Plaintiffs allege that Deputy Sheriffs Betts and McCartney knew that Plaintiff Glunt had not barred, prevented, or interfered with the tree-cutting or access to the Easement (id. ¶ 90), but that, nevertheless, they stopped Plaintiff Glunt when she left the right of way, read the Court of Common Pleas Order to her, told her that she had violated the Court of Common Pleas Order, and then arrested her (id. ¶¶ 86, 91). Plaintiffs allege that Deputy Sheriffs Betts and McCartney, in agreement with Sheriff Walters, unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers, and the Sunoco Defendants, charged or caused Plaintiff Glunt to be charged with disorderly conduct and criminal contempt. (Id. ¶ 92.) Plaintiff Glunt was detained and strip-searched, a process that she alleges caused her to suffer emotional distress and humiliation. (Id. ¶¶ 96-97.) After less than one day in detention, Plaintiff Glunt was released when her relatives posted bail. (Id. ¶ 98.) The charges against Plaintiff Glunt were dropped after she successfully completed an accelerated rehabilitative disposition ("ARD") program. (Id. ¶ 100.)

Plaintiff Elise Gerhart engaged in tree-sitting on the Gerhart Property on March 29, 2016, along with several other demonstrators. (Id. ¶¶ 120-21.) Plaintiffs allege that multiple tree-cutters joked about hurting or killing Plaintiff Elise Gerhart while she was tree-sitting, but Defendant Dunsmore and other law enforcement officers watched and did not respond. (Id. ¶ 125.) Eventually, Elise Gerhart and all of the other demonstrators left their trees on that date. (Id. ¶ 122.)

### 4. Demonstration and Arrest at the Property on March 30, 2016

On March 30, 2016, both the tree-cutting and the demonstration against the construction of the pipeline resumed. (Id. ¶ 101.) Plaintiff Ellen Gerhart heard a loud crash while she was on the Property, near the Easement. (Id. ¶ 102.) When she saw tree-cutting occurring in a location

she considered close enough to demonstrators to put them at risk of injury, she approached the Easement to warn the tree-cutters that they were too close to the demonstrators, but she did not enter the Easement and maintained what she considered a safe distance from the tree-cutting. (Id. ¶¶ 103-05.)

Plaintiffs allege that Defendant Dunsmore, Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, unnamed State Police troopers, and the Sunoco Defendants then approached Ellen Gerhart and suggested that she was creating a dangerous situation. (Id. ¶ 105.) They then handcuffed her and transported her to the Pennsylvania State Police barracks. (Id.) On the same date, Ellen Gerhart was charged with disorderly conduct and indirect criminal contempt and released on $5,000 unsecured bond. (Id. ¶ 108.)

### 5. Demonstration, Confrontation, and Arrests at the Property on April 7, 2016

The tree-cutting crews returned to the property on April 7, 2016, allegedly in spite of the fact that the Sunoco Defendants had already acknowledged in their court filings that they were prohibited from cutting down trees after March 31, 2016 in accordance with United States Fish and Wildlife Services ("USFWS") regulations pertaining to the protection of Indiana bat habitats. (Id. ¶ 110.) When the crews began to cut down trees, Ellen Gerhart and her daughter approached the crews and informed them that they were contravening the Court of Common Pleas Order and the USFWS regulations. (Id. ¶ 111.) Sunoco's environmental consultant disagreed and said that the Gerharts could call the police if they thought the Court of Common Pleas Order was being violated. (Id. ¶ 112.) Pennsylvania State Police troopers eventually arrived, allegedly upon the request of the Sunoco Defendants. (Id. ¶ 113.) Plaintiffs allege that Defendant Dunsmore, acting in concert with Sheriff Walters, Deputy Sheriffs Cressman and Goshorn, unnamed Pennsylvania State Police troopers, and the Sunoco Defendants, arrested

Ellen Gerhart and charged her with disorderly conduct and indirect criminal contempt. (Id. ¶ 114.) Ellen Gerhart was taken to the Huntingdon County Jail and transferred to the Centre County Correctional Facility the same day. (Id. ¶ 117.) She alleges that during her detention, she suffered mental and emotional distress and humiliation. (Id. ¶ 118.) Ultimately, all charges against Ellen Gerhart were dropped. (Id. ¶ 119.)

On April 7, 2016, Elise Gerhart again occupied a tree in protest of the tree-cutting. (Id. ¶ 124.) She remained in the tree for between one and two days. (Id.) While Elise Gerhart occupied the tree on April 7, 2016, law enforcement officers informed her that she would be charged with a crime. (Id. ¶ 129.) Elise Gerhart was ultimately charged with summary and misdemeanor disorderly conduct. (Id. ¶ 130.) She was the only tree-sitter to be charged with a criminal offense. (Id.) Plaintiffs allege that Defendant Dunsmore, Sheriff Walters, the Sunoco Defendants, and unnamed Huntingdon County deputy sheriffs and Pennsylvania State Police troopers had an opportunity to arrest and charge all of the tree-sitters, but instead chose to single out Elise Gerhart. (Id. ¶ 132.) The charges against Elise Gerhart were ultimately dismissed. (Id. ¶ 134.)

### 6. Overarching Allegations Regarding Plaintiffs' Arrests and Charges

Plaintiffs assert common allegations as to their arrests on March 29, March 30, and April 7, 2016, and the resulting charges. With respect to each of the four arrests (the arrests of Plaintiffs Lotorto and Glunt on March 29, Plaintiff Ellen Gerhart for the first time on March 30, and Plaintiff Ellen Gerhart again on April 7) and the charges brought against Plaintiff Elise Gerhart, Plaintiffs claim that the defendants involved in each decision falsely swore that Plaintiffs had persisted in their conduct "after reasonable warning or request to desist" in order to charge them with misdemeanor, rather than summary, offenses. (Id. ¶¶ 70, 93, 100, 115, 131.)

Plaintiffs also claim that the defendants involved in the arrests of Plaintiffs Ellen Gerhart (on April 7, but not on March 30), Glunt, and Lotorto, as well as the charging of Elise Gerhart, acted in order "to send a message to the Gerhart family and their supporters to discourage their opposition to the pipeline and its construction and thereby chill their First Amendment rights." (Id. ¶¶ 73, 94, 116, 133.)

### 7. Surveillance of the Property

Plaintiffs allege that Defendant Energy Transfer Partners had previously hired Defendant TigerSwan, a private security agency, to provide services pertaining to demonstrations against pipeline projects, including the Dakota Access Pipeline, in which Energy Transfer Partners was involved, and engaged TigerSwan to provide services, including surveillance, monitoring, social media engagement, and counter-intelligence, in connection with the Mariner East 2 Pipeline project in Pennsylvania. (Id. ¶¶ 135-38.) In that role, TigerSwan has been operating in Pennsylvania, where it obtained a business license, since at least April 2017, engaging in surveillance of the Property. (Id. ¶¶ 139-40, 143.) This surveillance included the flying of helicopters and drones at a low altitude over the Property (outside of the Easement), shining high-beams onto the Property at night from unmarked vehicles parked near the Property, and sending employees or agents onto neighboring properties. (Id. ¶ 143.) Plaintiffs allege that all of these activities caused unreasonable noise, annoyance, and other disturbances that have interfered with the Gerharts' use and enjoyment of the Property. (Id.)

### 8. Media Campaign Against the Gerharts and Their Supporters

Plaintiffs allege that the Sunoco Defendants and TigerSwan sent an infiltrator, who posed, under false pretenses, as a supporter of the Gerhart's interests, onto the Property. (Id. ¶ 144.) Without authorization, license, or privilege, the infiltrator took photographs of Ellen

13

Gerhart, Elise Gerhart, and their supporters, which were then posted on the Facebook page for the group PA Progress. (Id. ¶ 145.) Posts on the PA Progress Facebook page also identified where Elise Gerhart works, her car, and the Gerharts' driveway. (Id.)

Plaintiffs allege that Defendant TigerSwan and/or Defendant Johnson also made false allegations against the Gerharts and their supporters through the website blackbadgerreport.com. (Id. ¶¶ 148-50.) Plaintiffs allege that posts on blackbadgerreport.com falsely claim that Elise Gerhart and her supporters are "fronts for the Russian government to disrupt domestic energy markets" and falsely characterize a screenshot of Elise Gerhart's appearance on Occupy.com's "Act Out" as evidence of her appearing on Russian television. (Id. ¶¶ 148-49.) The article that claims that Elise Gerhart is a front for the Russian government is authored by "Nate Clay," which Plaintiffs allege is a pseudonym for Defendant Johnson. (Id. ¶ 151.)

Plaintiffs assert that Defendants TigerSwan and Johnson also coordinated, on behalf of Energy Transfer Partners, to create and disseminate a video that discredits the Gerharts and their supporters. (Id. ¶¶ 158-60.) The video features an actor whom Plaintiffs allege Defendant Johnson recruited personally. (Id. ¶ 161.) Among other commentary, the video lists multiple locations where Elise Gerhart and the group's other "ringleaders" spend time and urges viewers to stay away from Elise Gerhart and the other "ringleaders" and to call the Huntingdon County Sheriff's Office if they see anything suspicious. (Id. ¶ 159.)

Plaintiffs further allege that the PA Progress Facebook page features a posted link to the same video. (Id. ¶ 161.) Additionally, the PA Progress page allegedly included a link to the blackbadgerreport.com article that accuses Elise Gerhart of acting on behalf of the Russian government. (Id. ¶ 164.) Other posts on the PA Progress page allegedly characterize Elise Gerhart as "anarchist," claim that she is sabotaging pipelines and the environment, allege that she

associates with criminals, identify her address, and make other claims regarding Elise Gerhart and her family.  (Id. ¶ 165.)  Plaintiffs allege that the posts on the PA Progress Facebook page and blackbadgerreport.com have caused Elise Gerhart to face both reputational harm and threats of death or injury toward her and her supporters.  (Id. ¶ 166.)  Plaintiffs allege that as a result, Elise Gerhart has experienced both mental anguish and emotional distress.  (Id.)

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although the Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 675, 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.    DISCUSSION

In their second amended complaint, Plaintiffs set forth eight (8) counts against various defendants, four (4) of which are asserted pursuant to 42 U.S.C. § 1983: malicious prosecution

claims (Count I), false arrest claims (Count II), Equal Protection claims (Count III), and First

Amendment retaliation claims (Count IV). (Doc. No. 60.) The remaining claims are asserted

pursuant to Pennsylvania law and include abuse of civil process claims (Count V), nuisance

claims (Count VI), invasion of privacy claims (Count VII), and trespass claims (Count VIII).

(Id.) The Court addresses each of the claims in the second amended complaint as they pertain to

the relevant Defendants in turn.

### A. Section 1983 Claims (Count I, II, III, and IV)

#### 1. Legal Standard Applicable to a Section 1983 Claim

Section 1983 provides citizens a means to redress violations of federal law committed by

state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States of other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights, but merely a method to vindicate

violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d

311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To

state a claim under this section, a plaintiff must allege that: (1) the conduct complained of was

committed by persons acting under color of state law; and (2) the conduct violated a right,

privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v.

Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S.

42, 48 (1988)).

#### 2. Section 1983 Claims Against the Sunoco Defendants

Plaintiffs assert Section 1983 claims against the Sunoco Defendants in Counts I, II, III, and IV of the second amended complaint, respectively, asserting malicious prosecution claims by Plaintiffs Lotorto and Ellen Gerhart (Count I), false arrest claims by Plaintiffs Lotorto, Glunt, and Ellen Gerhart (Count II), Equal Protection claims by Plaintiff Elise Gerhart (Count III), and First Amendment claims by all Plaintiffs (Count IV). (Doc. No. 60 at 41-44.)

### a. State Action

To establish a Section 1983 claim, a plaintiff must allege that the conduct complained of was committed by persons acting under color of state law. See Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994) (quoting West, 487 U.S. at 48). The Sunoco Defendants argue that Plaintiffs' second amended complaint has failed to sufficiently allege that they were acting under color of state law. (Doc. No. 66 at 14-21). Plaintiffs argue that they have sufficiently alleged that the Sunoco Defendants were acting under color of state law under a theory of joint action. (Doc. No. 71 at 12-24.)

### i. Legal Standard Applicable to Section 1983 State Action

"Generally, private actors do not act under color of state law, thus are not liable under Section 1983. However, in certain circumstances, a private individual may be treated as a state actor if there is a close nexus between parties." Luck v. Mount Airy #1, LLC, 901 F. Supp. 2d 547 (M.D. Pa. 2012) (citing Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)).

One way in which to establish that private actors acted under color of state law is through a theory of joint action. See Cahill v. Live Nation, 512 F. App'x 227, 230 (3d Cir. 2013). The Third Circuit has held that to succeed in a joint action theory of private party liability in similar cases, a plaintiff must show that "(1) the private entity has a 'pre-arranged plan' with the police officers, and (2) under the plan, the police officers will 'substitute their [own] judgment' with

18

that of the private entity's."  See id. at 230 (3d Cir. 2013) (quoting Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984)).

A plaintiff may also allege state action as part of a conspiracy between private and state actors to violate an individual's rights.  See Adams v. Teamsters Local 115, 214 F. App'x 167, 173 (3d Cir. 2007).  To adequately allege state action on the theory of a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive her of a constitutional right under color of state law," with at least one of those actors being a state actor.  See Pugh v. Downs, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (citing Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)).  In a Section 1983 case alleging such a conspiracy, "the plaintiff must make specific factual allegations of combination . . . or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events."  See Sershen v. Cholish, No. 3:07-cv-1011, 2008 WL 598111, at *7 (M.D. Pa. Feb. 29, 2008) (quoting Kist v. Fatula, No. 3:06-cv-67, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2007)).  "[M]ere allegations of . . . a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss."  Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998).

### ii.     Parties' Arguments

The Sunoco Defendants argue that Plaintiffs' second amended complaint again fails to allege sufficient facts that plausibly support an inference that the Sunoco Defendants acted under color of state law in relation to the events on the Property in March and April of 2016.  (Doc. No. 66 at 14-21.)  They contend that apart from the averments previously deemed insufficient by the Court, the only new averment relating to the arrests is the contention that "prior to arriving at the [Property] on March 29, 2016, [the Sunoco Defendants] coordinated with [law enforcement] . . .

to act as a private security force . . . and provided them with a list of names from whom they anticipated resistance[.]" (Id. at 16) (second, third, fourth, and fifth alterations in original) (internal quotation marks and citation omitted). The Sunoco Defendants contend that this statement did not add any new facts "and is simply an expanded conclusory averment." (Id.) They contend that the allegation that a list of names was provided to law enforcement personnel is insufficient to support a finding that the Sunoco Defendants acted under color of state law. (Id. at 16-17.) The Sunoco Defendants further argue that the allegations regarding the blog post relating to events in Delaware County, Pennsylvania contain no facts that plausibly link the Sunoco Defendants or the State Police to the publication of the blog post. (Id. at 17-18.) Further, the Sunoco Defendants maintain that the allegations involving Melissa DiBernardino are irrelevant because they "have nothing to do with Plaintiffs." (Id. at 18.) The Sunoco Defendants contend that Plaintiffs have fallen short of sufficiently pleading the existence of an agreement between the Sunoco Defendants and law enforcement personnel prior to Plaintiffs' arrests, which is necessary to establish state action by the Sunoco Defendants. (Id. at 19.) Finally, Defendants argue that none of the factual averments in the second amended complaint allege state action in relation to the non-arrest conduct allegedly taken to chill Plaintiffs' free speech rights, and, therefore, Count IV should be dismissed. (Id. at 20.)

In response, Plaintiffs argue that their second amended complaint contains sufficient allegations that "support the conclusion that a pre[]arranged agreement existed between ETP and the law enforcement officers who came to the Gerhart property in March and April [of] 2016." (Doc. No. 71 at 14.) First, Plaintiffs argue that their second amended complaint contains numerous allegations establishing that the Sunoco Defendants' modus operandi is to collaborate with local law enforcement personnel in order to quell the opposition to its pipeline projects. (Id.

at 14-17.)  In support of that assertion, Plaintiffs cite the second amended complaint's allegations pertaining to Melissa DiBernardino's meeting with Chief Bernot in Chester County, Pennsylvania; the Sunoco Defendants' retention of Leighton Security in connection with the Mariner East 2 Pipeline; Leighton Security's use of off-duty law enforcement personnel while working for the Sunoco Defendants in Louisiana; and the coordination between Defendant TigerSwan and law enforcement personnel in connection with the Dakota Access Pipeline in the Midwestern United States.  (Id.)  Next, Plaintiffs argue that the allegations in the second amended complaint show that the law enforcement personnel on the Property during the demonstrations were acting as a security detail for the Sunoco Defendants and specifically targeting Plaintiffs.  (Id. at 17-20.)  In support of that argument, Plaintiffs cite the fact that they were amongst the most high-profile demonstrators and several of the pertinent arrests occurred after they raised safety concerns with law enforcement personnel and the Sunoco Defendants. (Id. at 18-20.)  Plaintiffs further assert that the allegations relating to the blog post publication also support an inference that an agreement existed between the Sunoco Defendants and law enforcement personnel.  (Id. at 20-21.)  Finally, Plaintiffs contend that their second amended complaint sufficiently sets forth that an agreement existed between the Sunoco Defendants and law enforcement personnel.  (Id. at 22-24.)

### iii. Whether Plaintiffs Have Alleged State Action on the Part of the Sunoco Defendants

Upon careful review of Plaintiffs' second amended complaint, the briefs of the parties, and the relevant authorities, the Court finds that Plaintiffs have failed to allege sufficient facts from which a reasonable factfinder could infer that the Sunoco Defendants acted under the color

of state law under a theory of joint action or any other theory.[9]  Upon consideration of the first

element of joint action—the existence of a pre-arranged agreement between the private actor

defendant and state actors—the Court finds that Plaintiffs have failed to sufficiently allege the

existence of such an agreement or facts from which a reasonable factfinder could infer that such

an agreement was formed.  The pertinent allegation in Plaintiffs' second amended complaint

regarding the existence of an agreement between the Sunoco Defendants and law enforcement

personnel is as follows:

> Upon information and belief, the basis for which is set forth more
> fully hereinbelow, the [Sunoco Defendants] had, prior to arriving
> at the [Property] on March 29, 2016, coordinated with members of
> the Huntingdon County Sheriff's Office and State Police troopers,
> including the individuals identified in paragraphs 8 through 10
> hereinabove, to act as a private security force, such that the
> [Sunoco Defendants] and their agents would be escorted by law
> enforcement officers, that law enforcement officers would only
> regulate the conduct of the Gerharts and their supporters (and not
> that of the Energy Transfer/Sunoco [D]efendants and agents), that
> anyone who approaches the easement is to be considered in
> violation of the proscription on "barring, preventing or otherwise
> interfering" with tree cutting and should therefore be arrested
> (despite the fact that proximity alone plainly does not contravene
> the Order), and provided them with a list of names from whom
> they anticipated resistance (which they sought to stymie), which
> list included Elise and Ellen Gerhart and Alex Lotorto.

(Doc. No. 60 at ¶ 26.)  Such an allegation is a slightly modified version of the allegation

presented in the first amended complaint and, like the allegation in the first amended complaint,

is impermissibly conclusory.  See, e.g., Adams, 214 F. App'x at 173; Surina v. S. River Bd. of

---

[9] As to the allegations of the second amended complaint that were included in the first amended
complaint, the Court will not write again to explain why these allegations are not sufficient to
support a finding that the Sunoco Defendants acted under color of law in connection with the
events at the Property in the spring of 2016.  Instead, the Court refers to its analysis of this issue
in the context of the first amended complaint in its December 14, 2018 Memorandum.  (Doc. No.
57 at 21-25.)

Educ., No. 17-cv-2173, 2018 WL 1327111, at *4 (D.N.J. Mar. 15, 2018) (finding an allegation "that [the defendant] 'acted in concert with one or more of the other individual defendants'" to be conclusory). Conclusory allegations of agreement alone, with no supporting facts, are insufficient to sustain an inference by a reasonable factfinder of the existence of an agreement. See id. at *4-5; see also Twombly, 550 U.S. at 556-57 (finding that conclusory allegations of an agreement are insufficient on their own to allege that agreement's existence in the context of a claim asserted under Section 1 of the Sherman Act).[10]

Plaintiffs argue that pursuant to Twombly and Iqbal, they are required to allege only "enough factual matter (taken as true) to suggest that an agreement was made." (Id. at 22) (internal quotations marks omitted) (citing Twombly, 550 U.S. at 556; Iqbal, 566 U.S. at 678). However, the Court finds that Plaintiffs have failed to allege facts that support a plausible inference by a reasonable jury that such an agreement existed between law enforcement personnel and the Sunoco Defendants. For example, Plaintiffs cite a meeting between a Melissa DiBernardino and a municipal police chief in Chester County that was attended by the Sunoco Defendants allegedly upon invitation of the police chief and without prior notice to DiBernardino. (Id. at 14-15.) Any connection between those events, which occurred a significant distance from the Property and did not involve Plaintiffs or any law enforcement personnel with a connection to the events on the Property in March and April of 2016, is simply too attenuated to support an inference of any agreement between the Sunoco Defendants and law enforcement personnel in Huntingdon County. Likewise, the allegations regarding the blog post

---

[10] Like the complaint in Twombly, Plaintiff's second amended complaint fails to mention any specific time or place where the alleged agreement occurred, nor does it identify any specific person or persons who formed the agreement on behalf of the Sunoco Defendants. See Twombly, 550 U.S. at 565 n.10.

(Doc. No. 60 ¶¶ 29-39) fail to demonstrate any plausible connection between the publication of the post and State Police personnel or the Sunoco Defendants, let alone support a plausible inference that an agreement existed between the State Police and the Sunoco Defendants.[11] The Court similarly finds that the allegations that Plaintiffs claim indicate that they were specifically targeted for arrest (Doc. No. 71 at 17-20) are too attenuated to plausibly permit an inference that an agreement was formed between the Sunoco Defendants and local law enforcement personnel.[12] Finally, Plaintiffs cite various allegations relating to the Sunoco Defendants' coordination with law enforcement personnel in various locales across the country, arguing that these assertions show the Sunoco Defendants' modus operandi of coordinating with local law enforcement personnel when dealing with demonstrations against their projects. (Id. at 14-17.) However, these allegations are not sufficient to support the existence of the alleged agreement at issue in this case because they do not pertain to any of the law enforcement personnel involved in the events at the Property. Considering all of the facts pled in the second amended complaint, the Court concludes that no reasonable factfinder could plausibly infer that the Sunoco Defendants and law enforcement personnel entered into a prearranged agreement sufficient to support the first prong of the joint action test.[13] Accordingly, the Court will grant the Sunoco

---

[11] In support of their assertion that these allegations support an inference of the alleged agreement, Plaintiffs appear to rely on the allegation that a spokesperson for the Pennsylvania State Police stated that he was unaware of the incidents alleged in the blog post but later indicated that the State Police were investigating "incidents," while declining to confirm that the incident alleged in the blog post occurred. (Doc. No. 71 at 20-21.) The Court finds that deeming such statements indicative of the alleged agreement is, at best, speculative.

[12] The Court notes that while Plaintiffs allege that the Sunoco Defendants provided law enforcement a list of demonstrators "from whom they expected resistance" (Doc. No. 60 ¶ 26), such an allegation on its own does not plausibly support a reasonable inference that the Sunoco Defendants and law enforcement personnel had entered into the alleged agreement.

[13] Assuming, arguendo, that Plaintiffs' second amended complaint could support a reasonable factfinder's inference of a pre-arranged agreement, the Court finds that Plaintiffs' second

Defendants' motion to dismiss as to the claims asserted against them in Counts I, II, III, and IV of the second amended complaint.

### 3.    Section 1983 Claims Against the PSP Defendants

Plaintiffs assert Section 1983 claims against the PSP Defendants in Counts I, II, III, and IV of the second amended complaint, asserting malicious prosecution claims by Plaintiff Lotorto against Defendants Ehgartner and Benson, and by Plaintiff Ellen Gerhart against Defendant Dunsmore (Count I); false arrest claims by Plaintiff Lotorto against Defendants Ehgartner and Benson, and by Plaintiff Ellen Gerhart against Defendant Dunsmore (Count II); an Equal Protection claim by Plaintiff Elise Gerhart against Defendant Dunsmore; and First Amendment retaliation claims by Plaintiffs Ellen Gerhart and Elise Gerhart against Defendant Dunsmore, and by Plaintiff Lotorto against Defendants Ehgartner and Benson (Count IV).  (Doc. No. 60 at 41-44.)

### a.    Malicious Prosecution Claims (Count I)

In Count I of the second amended complaint, Plaintiff Lotorto asserts malicious prosecution claims against Defendants Ehgartner and Benson on the basis that Defendants Ehgartner and Benson lacked probable cause to arrest and charge him on March 29, 2016 and fabricated evidence to charge him, and Plaintiff Ellen Gerhart asserts a malicious prosecution

---

amended complaint also fails to plead facts from which a reasonable jury could plausibly infer that law enforcement personnel substituted the judgment of the Sunoco Defendants for their own, the second prong of the joint action test.

Turning to a theory of joint action based on conspiracy, the Court notes that conspiracy is a distinct theory that, although often "present in the same case," requires a test separate from the joint action test.  See Sershen, 2008 WL 598111, at *5.  Consistent with the Court's analysis regarding the first prong of the joint action test supra, the Court finds that Plaintiffs have failed to allege facts that would permit a reasonable factfinder's plausible inference that the Sunoco Defendants reached any agreement with law enforcement personnel, let alone one to violate Plaintiffs' rights.  Therefore, Plaintiffs' second amended complaint fails to sufficiently plead state action under a theory of conspiracy to survive the Sunoco Defendants' motion to dismiss.

claim against Defendant Dunsmore on the basis that he lacked probable cause to arrest and charge her on March 30, 2016 and April 7, 2016 and fabricated evidence to charge her. (Id. at 41.) The PSP Defendants have moved to dismiss the claims asserted at Count I, arguing that they are entitled to qualified immunity because "the law was not clearly established at the time of the events at issue in this case." (Doc. No. 65 at 5.)

### i. Legal Standard Applicable to a Malicious Prosecution Claim

To state a claim for malicious prosecution, a plaintiff must establish that:

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Regarding the first element of a malicious prosecution claim, although prosecutors are typically responsible for the initiation of criminal proceedings, a police officer "may be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." See Francis v. Harmon, No. 13-cv-6009, 2014 WL 617138, at *3 (E.D. Pa. Feb. 18, 2014) (quoting Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. Mar. 30, 2012)).

In regard to the third element, a lack of probable cause, a "police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." See Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). However, probable cause will be found to exist when "reasonably trustworthy information or circumstances within a [law enforcement] officer's knowledge are

sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person [in question]." See Spiker v. Whittaker, 553 F. App'x 275, 278 (3d Cir. 2014) (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)). "[T]he probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989). "[A]lthough false arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee, 'probable cause on one charge does not foreclose a malicious prosecution cause of action' based on additional charges for which there was no probable cause." Dempsey v. Bucknell Univ., 834 F.3d 457, 477 (3d Cir. 2016) (quoting Johnson v. Knorr, 477 F.3d 75, 83 (3d Cir. 2007)).

The determination of whether there was probable cause in a Section 1983 claim is generally for the jury. See Collick v. William Paterson Univ., No. 16-cv-471, 2016 WL 6824374, at *14 (D.N.J. Nov. 17, 2016) (quoting Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)). However, the Court may appropriately find probable cause as a matter of law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [the plaintiff's arrest]." See Montgomery, 159 F.3d at 124 (citation omitted).

### ii.    Legal Standard Applicable to Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In

order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley, 475 U.S. at 341). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[14] See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a

---

[14] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

"clearly established" right.  See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The Supreme Court has emphasized that "the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'"  See Wesby, 138 S. Ct. at 590 (quoting Mullenix, 136 S. Ct. at 308).

### iii.    Parties' Arguments

The PSP Defendants argue that even if the Court "conclude[s that Plaintiffs have sufficiently alleged] a possible violation of Plaintiffs' rights, the rights were not clearly established in law at the time of the events at issue in the [second] amended complaint."  (Doc. No. 65 at 5.)  They assert that because Plaintiffs have failed to identify any binding precedent "holding that a law enforcement officer's decision to arrest and charge an individual with criminal contempt based on a Court Order in similar circumstances violated the individual's rights under the Fourth Amendment," the law was not clearly established, and the PSP Defendants are, therefore, entitled to qualified immunity.  (Id.)[15]

In response, Plaintiffs argue that the PSP Defendants' arguments fail to account for the fact that Plaintiffs have accused the PSP Defendants of fabricating evidence to support Plaintiffs' arrests and prosecution.  (Doc. No. 71 at 8-9.)  Plaintiffs contend that the right at issue in the instant case is the right "not to face arrest and criminal charges based only on evidence fabricated by law enforcement officers."  (Id. at 9-10.)  Such a right, Plaintiffs argue, "is so sufficiently clear and well established that any reasonable officer is, at the very least, on 'fair warning' of the

---

[15] The Court notes that the PSP Defendants make these arguments in the context of all claims asserted against them and do not assert any arguments specifically pertaining to the malicious prosecution claims asserted against Defendants Ehgartner, Benson, and Dunsmore.

unlawfulness." (Id. at 10.) Plaintiffs argue that, accordingly, the PSP Defendants are not entitled to qualified immunity.[16]

### iv. Whether Plaintiff Lotorto Has Stated a Malicious Prosecution Claim Against Defendants Ehgartner and Benson

As noted supra, when the defendant is a police officer, the first element of a malicious prosecution claim is satisfied by showing that the officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." See Weaver v. Beveridge, No. 09-cv-2357, 2012 WL 7964544, at *7 (M.D. Pa. Sept. 12, 2012) (quoting Domenech v. City of Phila., No. 06-cv-1325, 2009 WL 1109316, at *8 (E.D. Pa. Apr. 23, 2009) (internal quotation marks omitted)). Here, although Plaintiffs allege that Defendant Ehgartner swore to false statements in an affidavit in support of charging Plaintiff Lotorto,[17] in regard to Defendant Benson, Plaintiffs allege only that Defendant Ehgartner did so "in agreement" with Defendant Benson and various other individuals. Accordingly, the Court finds that Plaintiffs have failed to sufficiently allege that Defendant Benson "initiated a criminal proceeding" against Plaintiff Lotorto and, therefore, have failed to allege sufficient facts to state a malicious prosecution claim against Defendant Benson. See Lockhoff v. Slonaker, No. 16-cv-2893, 2017 WL 2423790, at *13 (E.D. Pa. June 5, 2017).

---

[16] The Court notes that Plaintiffs make these arguments in the context of all claims asserted against the PSP Defendants and do not assert any arguments specifically pertaining to the malicious prosecution claims asserted against Defendants Ehgartner, Benson, and Dunsmore.

[17] Specifically, Plaintiffs allege that Defendant Ehgartner "falsely swore in an affidavit that [Plaintiff] Lotorto was 'giving direct orders to persons in an effort to [interfere] with the efforts of [pipeline construction]' with a 'wireless hand held device'" and "further falsely swore that [Plaintiff] Lotorto had persisted in his conduct 'after reasonable warning or request to desist.'" (Doc. No. 60 ¶¶ 69, 70.)

As to Defendant Ehgartner, however, the Court finds that Plaintiffs have sufficiently stated a claim for malicious prosecution. By alleging that the charges against Defendant Lotorto were dismissed, Plaintiffs have sufficiently alleged that the proceedings terminated in his favor. See Gera v. Pennsylvania, No. 3:07-cv-764, 2007 WL 2234591, at *4 (M.D. Pa. Aug. 2, 2007). Further, by asserting that Plaintiff Lotorto remained incarcerated at the Huntingdon County Jail after he could not post bail (Doc. No. 60 ¶¶ 75, 76), Plaintiffs have sufficiently alleged the adequate deprivation of liberty for a malicious prosecution claim. See Liberty Bell Temple III v. Trenton City Police Dep't, No. 3:16-cv-1339, 2019 WL 4750836, at *21 (D.N.J. Sept. 30, 2019) ("Courts in this circuit have hewn closely to the established precedents . . . recognizing that a 'seizure' generally relates to securing appearance in court (e.g., actual detention, posting of bonds, and restriction from travel) . . . ."). The Court also finds that, based on the alleged factual circumstances underlying Plaintiff Lotorto's arrest and charging, a reasonable jury could plausibly conclude that there was not probable cause to charge Plaintiff Lotorto with a crime. Finally, the Court concludes that by asserting that Defendant Ehgartner swore to false statements in order to substantiate criminal charges against Plaintiff Lotorto, Plaintiffs have alleged sufficient facts that would plausibly support a jury's reasonable conclusion that Defendant Ehgartner acted "maliciously or for a purpose other than bringing the plaintiff to justice." See Hayes v. City of Phila., No. 04-cv-554, 2005 WL 3054550, at *6 (E.D. Pa. Nov. 15, 2005) ("[V]iewing the facts in the light most favorable to [the p]laintiff, coercing false statements and submitting them to the judge determining probable cause is evidence of [the defendant] acting 'maliciously or for a purpose other than bringing the plaintiff to justice.'"). Accordingly, the Court concludes that Plaintiff Lotorto has sufficiently alleged a constitutional violation for purposes of Defendant' Ehgartner's assertion of qualified immunity.

Turning to the second prong of the qualified immunity analysis, the Court concludes that the right at question—the right to be free from the initiation of criminal proceedings based upon officers' false statements—was clearly established at the time of the underlying events. See Halsey v. Pfeiffer, 750 F.3d 273, 296 (3d Cir. 2014) ("Reasonable officers should have known that . . . they certainly could not fabricate inculpatory evidence against a suspect or defendant."); see also Lockhoff, 2017 WL 2423790, at *14 (finding that a police officer defendant was not entitled to qualified immunity as to a malicious prosecution claim after concluding that "it is clearly established that a police officer's falsification of evidence violates the constitution"). Therefore, at this stage of the proceedings, Defendant Ehgartner is not entitled to qualified immunity in regard to the malicious prosecution claim asserted by Defendant Lotorto. Accordingly, the Court will grant the PSP Defendants' motion to dismiss as it pertains to Plaintiff Lotorto's malicious prosecution claim against Defendant Benson deny the PSP Defendants' motion to dismiss as it pertains to Plaintiff Lotorto's malicious prosecution claim against Defendant Ehgartner.

### v. Whether Plaintiff Ellen Gerhart Has Stated a Malicious Prosecution Claim Against Defendant Dunsmore

The Court concludes that Plaintiff Ellen Gerhart has failed to state a claim for malicious prosecution against Defendant Dunsmore because she has not alleged facts that support a finding that she "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding," which is the fifth element of a malicious prosecution claim. See Kossler, 564 F.3d at 186 (quoting Estate of Smith, 318 F.3d at 521). "Malicious prosecution differs from false arrest inasmuch as '[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'" Johnson, 477 F.3d at 82 (quoting Montgomery, 159 F.3d at 126) (citing Heck v.

Humphrey, 512 U.S. 477, 484) (1994); Montgomery, 159 F.3d at 128-29 (Roth, J., dissenting))

Accordingly, this element of a malicious prosecution claim is satisfied only when such a deprivation occurs after the issuance of process or arraignment.  See, e.g., Heillimann v. O'Brien, No. 14-cv-1271, 2017 WL 898160, at *6 (M.D. Pa. Mar. 7, 2017) (granting summary judgment in favor of the defendants as to the claimant's malicious prosecution claims because, inter alia, the claimant's detention at a county correctional facility occurred in the immediate aftermath of his arrest, before arraignment or issuance of process, and the pretrial restrictions imposed on the claimant did "not amount to a deprivation of liberty").  While "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure" and satisfy the deprivation of liberty element of a malicious prosecution claim, the requirement to attend court proceedings does not meet such a threshold.  See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005); see also Basile v. Twp. of Smith, 752 F.Supp. 2d, 643, 660 (W.D. Pa. 2010).

In regard to her March 30, 2016 arrest, Plaintiff alleges that she was released on $5,000.00 unsecured bond after she was charged with disorderly conduct and indirect criminal contempt.  (Doc. No. 60 ¶ 108.)  She does not allege any pretrial conditions with which she had to comply between that time and the time at which those charges were dropped.  In regard to her April 7, 2016 arrest, Plaintiff Ellen Gerhart indicates that she was initially taken to Huntingdon County Jail, then "later that day transferred to [the] Centre County Correctional Facility."  (Id. ¶ 117.)  However, the second amended complaint is silent as to whether Plaintiff Ellen Gerhart remained in detention after she was arraigned and fails to assert any conditions of her release.  Accordingly, the Court finds that the second amended complaint fails to assert sufficient facts that would support a finding that Plaintiff Ellen Gerhart "suffered deprivation of liberty

consistent with the concept of seizure as a consequence of a legal proceeding." See Kossler, 564 F.3d at 186 (quoting Estate of Smith, 318 F.3d at 521). Therefore, the Court will grant the PSP Defendants' motion to dismiss as to Plaintiff Ellen Gerhart's malicious prosecution claim against Defendant Dunsmore.

### b. False Arrest Claims (Count II)

In Count II of the amended complaint, Plaintiff Lotorto asserts false arrest claims against Defendants Ehgartner and Benson, and Plaintiff Ellen Gerhart asserts a false arrest claim against Defendant Dunsmore on the basis that Defendants Ehgartner, Benson, and Dunsmore lacked probable cause to arrest them on the dates of March 29, March 30, and April 7, 2019. (Doc. Nos. 60 at 41-42.) The PSP Defendants argue that the dismissal of these claims is warranted because they are entitled to qualified immunity. (Doc. Nos. 65, 72.)

### i. Legal Standard Applicable to a False Arrest Claim

"The proper inquiry in a Section 1983 claim based on false arrest . . . is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. Phila., 855 F.2d 136, 141 (3d Cir. 1988). Additionally, "the test for probable cause is an objective one and 'need only exist as to any offense that could be charged under the circumstances.'" See Primrose v. Mellott, 541 F. App'x 177, 181 (3d Cir. 2013) (quoting Barna, 42 F.3d at 819). In determining whether a plaintiff has sufficiently alleged the lack of probable cause, the Court assesses whether the "facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." See Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).

ii.    **Whether Plaintiff Lotorto Has Stated a Claim for False Arrest Against Defendants Ehgartner and Benson[18]**

Based upon the factual circumstances surrounding Plaintiff Lotorto's arrest asserted in the second amended complaint (Doc. No. 60), the Court concludes that Plaintiff Lotorto has asserted facts from which a reasonable jury could plausibly conclude that probable cause did not exist to arrest Defendant Lotorto on March 29, 2016.[19]  Turning to qualified immunity, the Court concludes that Plaintiff Lotorto has alleged sufficient facts to support a conclusion that the conduct of Defendants Ehgartner and Benson violated Plaintiff Lotorto's right not to be arrested without probable cause, which satisfies his pleading requirements at this state of the proceedings in regard to the first prong of the qualified immunity analysis.  See Davison v. Kennedy, No. 15-cv-1373, 2016 WL 538906, at *8 (M.D. Pa. Feb. 11, 2016) ("[T]he facts alleged in the complaint are sufficient to state plausible claims that [the defendants'] conduct violated [the] plaintiff's Fourth and Fourteenth Amendment rights, fulfilling the first prong of qualified immunity in favor of the plaintiff.").

As to the second prong of the qualified immunity analysis, the Court finds that the right in question—the right not to be arrested without probable cause in the alleged circumstances

---

[18] Because the parties did not provide arguments specific to each count, the Court will not rewrite its synopsis of the arguments included supra in its discussion of Count I.

[19] The PSP Defendants' arguments focus on the second prong of the qualified immunity analysis and do not specifically challenge the sufficiency of any of the claims beyond their assertion that the pertinent rights were not clearly established.  The Court further notes that the probable cause inquiry for each offense is the same for false arrest and malicious prosecution claims.  See Romich v. Sears Holding Corp., No. 12-cv-5383, 2013 WL 5925082, at *5 (E.D. Pa. Nov. 4, 2013) (quoting Wright v. City of Phila., 409 f.3d 595, 604 (3d Cir. 2005)) ("When the plaintiff 'bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest and prosecution' for the same offense, the establishment of probable cause under the false arrest claim 'also disposes of [the plaintiff's] remaining § 1983 claim [for] malicious prosecution.'").

surrounding Plaintiff's Lotorto's arrest—was not clearly established at the time of the arrest.

First, although the right not to be arrested without probable cause was clearly established at the time of Plaintiff Lotorto's arrest, see Orsatti, 71 F.3d at 483 ("[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of [the plaintiff's] arrest."), the Supreme Court has emphasized that the Court must define the right in question at a level that is "'particularized' to the facts of the case," see White, 137 S. Ct. at 552 (citing Anderson, 483 U.S. at 640); see also Wesby, 138 S. Ct. at 590 ("In the context of a warrantless arrest, the rule must obviously resolve 'whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause.'" (internal quotation marks omitted) (quoting Mullenix, 136 S. Ct. at 309)). The Court is unaware of any case law addressing facts similar to the unique alleged facts surrounding Plaintiff Lotorto's arrest and thus concludes that the right not to be arrested without probable cause in the alleged circumstances surrounding Plaintiff Lotorto's arrest was not clearly established at the time of the arrest. Additionally, given the alleged factual circumstances surrounding Plaintiff Lotorto's arrest, including the broad language of the Court of Common Pleas Order, Plaintiff Lotorto's communication via Walkie-Talkie with other demonstrators on the Property, and the participation of some of the demonstrators in tree-sitting on the Easement on the day of Plaintiff Lotorto's arrest, the Court finds that a reasonable officer could have concluded that there was probable cause to believe that Plaintiff was "interfering . . . with [the Sunoco Defendants'] removing of or clearing trees and shrubbery on [the] [E]asement" in violation of the Court of Common Pleas Order.[20] Thus, the unlawfulness—i.e., lack of probable cause—of Plaintiff's

---

[20] "[U]nder Pennsylvania law . . . a violation [of a court order] is sufficient to justify an arrest on the charge of an indirect criminal contempt." See Kauffman v. Kauffman, No. 11-cv-4896, 2014 WL 1281134, at *3 (E.D. Pa. Mar. 27, 2014).

arrest was not "beyond debate," and the particularized right does not fall into the category of "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," see Wesby, 138 S. Ct. at 590 (quoting Brosseau, 543 U.S. at 199). Accordingly, because the Court finds Plaintiff Lotorto's right not to be arrested in the alleged circumstances surrounding his arrest was not clearly established at the time of his arrest, Defendants Ehgartner and Benson are entitled to qualified immunity as to the false arrest claims asserted against them.[21] Therefore, the Court will grant the PSP Defendants' motion to dismiss as to Plaintiff Lotorto's false arrest claims against Defendants Ehgartner and Benson.

### iii.   Whether Plaintiff Ellen Gerhart Has Stated a Claim for False Arrest Against Defendant Dunsmore

Plaintiff Ellen Gerhart alleges that she was arrested by Defendant Dunsmore on both March 30, 2016 and April 7, 2016. (Doc. No. 60 ¶¶ 105, 114.) In regard to the arrest on March 30, Plaintiff Ellen Gerhart asserts that Defendant Dunsmore arrested her after "[s]he approached, but did not enter, the [E]asement area to warn tree-cutters that they were too close to the [tree-sitting demonstrators]" while remaining "a safe distance from the tree-cutting." (Id. ¶¶ 102-05.) In regard to her April 7 arrest, Plaintiff Ellen Gerhart alleges that after she and an environmental

---

[21] Although Plaintiff Lotorto cites the alleged false sworn statements made in support of charging and prosecuting Plaintiff Lotorto and asserts that such allegations preclude Defendants Ehgartner and Benson's entitlement to qualified immunity at this stage of the proceedings (Doc. No. 71 at 10), the Court finds that such allegations have no bearing on the qualified immunity analysis in regard to a false arrest claim, which turns on whether probable cause existed at the time of the arrest. See Dowling, 855 F.2d at 141 ("The proper inquiry in a Section 1983 claim based on false arrest . . . is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense."). Any actions taken by Defendants Ehgartner and Benson after Plaintiff Lotorto's arrest, such as the preparation of sworn affidavits to support Plaintiff's charging and prosecution, may be pertinent to Plaintiff Lotorto's malicious prosecution claims, as addressed supra, but do not preclude qualified immunity in regard to the false arrest claims.

consultant for the Sunoco Defendants disagreed as whether the tree-cutting by the Sunoco Defendants on that day was prohibited by the Court of Common Pleas Order and USFWS regulations, the Sunoco Defendants "summoned" Pennsylvania State Police troopers to the Property, and Defendant Dunsmore arrested her after she informed him that the Sunoco Defendants were not supposed to be on the Property at that time.  (Id. ¶¶ 110-14.)  The Court finds that as to both arrests, Plaintiff Ellen Gerhart has alleged sufficient facts from which a reasonable jury could plausibly conclude that probable cause did not exist to arrest Plaintiff Ellen Gerhart, and, accordingly, has stated a claim for false arrest against Defendant Dunsmore.

In regard to qualified immunity, the Court concludes that Defendant Dunsmore is not entitled to qualified immunity as to this claim at this stage of the proceedings  The Court first concludes that Plaintiff Ellen Gerhart has alleged sufficient facts to support a conclusion that Defendant Dunsmore's conduct violated Plaintiff Ellen Gerhart's right not to be arrested without probable cause, which satisfies her pleading requirements at this state of the proceedings in regard to the first prong of the qualified immunity analysis.  See Davison, 2016 WL 538906, at *8 ("[T]he facts alleged in the complaint are sufficient to state plausible claims that [the defendants'] conduct violated [the] plaintiff's Fourth and Fourteenth Amendment rights, fulfilling the first prong of qualified immunity in favor of the plaintiff.")

As to the second prong of the qualified immunity analysis, the Court finds that the right in question here—the right not to be arrested without probable cause in the circumstances alleged— was clearly established and would have been apparent to any competent law enforcement officer, as would the unlawfulness of arresting Plaintiff Ellen Gerhart in such a context.  Unlike Plaintiff Lotorto, who asserts that he remained near the Easement and communicated and coordinated with other demonstrators via Walkie-Talkie at a time when some

demonstrators on the Property were engaged in tree-sitting on the Easement; Plaintiff Glunt, who asserts that she entered the Easement while the tree-cutters were present and confronted them; or Plaintiff Elise Gerhart, who, along other demonstrators, occupied trees on the Easement as a form of protest with the objective of preventing the tree-cutters from cutting down those trees, according to the allegations set forth in the second amended complaint, Plaintiff Ellen Gerhart did not engage in any behavior that would permit a reasonable person to conclude that there was probable cause to arrest her for criminal contempt, disorderly conduct, or any other crime. Although the Court is unaware of any authority addressing facts similar to the unique circumstances Defendant Dunsmore faced in the instant case, the right not to be arrested without probable cause is clearly established, see Orsatti, 71 F.3d at 483 ("[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of [the plaintiff's] arrest."), and the Court finds that based on the facts alleged, Plaintiff Ellen Gerhart's arrests fall into the category of the rare "obvious case" in which the unlawfulness of the arrest would be apparent to any competent officer, despite the lack of case law addressing the legality of an arrest in similar circumstances, see Brosseau, 543 U.S. at 199. Accordingly, the Court concludes that Defendant Dunsmore is not entitled to qualified immunity and will deny the PSP Defendants' motion to dismiss as to Plaintiff Ellen Gerhart's false arrest claim against Defendant Dunsmore.

### c. Equal Protection Claim (Count III)

In Count III of the second amended complaint, Plaintiff Elise Gerhart asserts an Equal Protection claim against Defendant Dunsmore on the basis that Defendant Dunsmore targeted, arrested, and charged Plaintiff Elise Gerhart "pursuant to a plan and policy targeting [Plaintiff Elise Gerhart] for discriminatory treatment intended to cause her harm." (Doc. No. 60 at 42.)

### i. Legal Standard Applicable to an Equal Protection Claim

"[A] plaintiff may assert a cause of action under the Equal Protection Clause as a 'class of one' even though he does not allege membership in a protected class." <u>Thomas v. Coopersmith</u>, No. 11-cv-7578, 2012 WL 3599415, at *3 (E.D. Pa. Aug. 21, 2012) (citing <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000)). The Third Circuit has "little jurisprudence discussing this 'class of one' theory," <u>see</u> <u>Phillips</u>, 515 F.3d at 243, "but 'it is clear that, at the very least, to state a claim under [this] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment'" <u>See</u> <u>Marinkovic v. Battaglia</u>, No. 14-cv-49, 2016 WL 3745856, at *8 (W.D. Pa. July 8, 2016) (quoting <u>Phillips</u>, 515 F.3d at 243).

To establish a selective enforcement equal protection claim, a plaintiff "must demonstrate: '(1) that [he] was treated differently from other similarly situated [individuals], and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right.'" <u>See</u> <u>PG Publ. Co. v. Aichele</u>, 705 F.3d 91, 115 (3d Cir. 2013) (third alteration in original) (quoting <u>Digue v. N.J. State Police</u>, 603 F.3d 181, 184 n.5 (3d Cir. 2010)) (internal quotation marks omitted).

### ii.. Parties' Arguments

The PSP Defendants assert no specific arguments pertaining to Plaintiff Elise Gerhart's Equal Protection claim against Defendant Dunsmore but, rather, appear to rely on the general qualified immunity arguments discussed <u>supra</u>. (Doc. Nos. 65, 72.) Plaintiffs likewise do not make any specific arguments pertaining to the Equal Protection claim asserted against Defendant Dunsmore but set forth specific arguments pertaining to their Equal Protection claims against the Sunoco Defendants, which the Court will construe as also pertaining to the Equal Protection

claim asserted against Defendant Dunsmore.  (Doc. No. 71 at 27-29.)  Plaintiffs assert that

Plaintiff Elise Gerhart has sufficiently stated an Equal Protection claim pursuant to both a

selective enforcement theory and a class-of-one theory, and, therefore, the Court should not

dismiss Plaintiff Elise Gerhart's Equal Protection claim.  (Id.)

### iii. Whether Plaintiff Elise Gerhart Has Stated an Equal Protection Claim Against Defendant Dunsmore

Plaintiff Elise Gerhart seeks to assert her Equal Protection claim against Defendant

Dunsmore under both a class-of-one theory and a selective enforcement theory.  Accordingly,

the Court will analyze the Equal Protection claims under each of these theories in turn.  As to a

class-of-one claim, the Court concludes that Plaintiffs have failed to allege that Elise Gerhart was

treated differently than others similarly situated.  "Persons are similarly situated under the Equal

Protection Clause when they are alike in all relevant aspects."  Spiker, 553 F. App'x at 280

(quoting Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008)) (internal quotation marks

omitted).  Plaintiffs compare Plaintiff Elise Gerhart to the other tree-sitting demonstrators on the

Gerhart Property.  (Doc. No. 60 ¶ 130.)  However, according to the second amended complaint,

the other tree-sitting demonstrators participated in tree-sitting only on March 29, 2016 (id. ¶¶

120-22), while Elise Gerhart demonstrated with the other demonstrators on March 29 and again

by herself on April 7 (id. ¶¶ 120, 123, 124).  While neither Plaintiff Elise Gerhart nor any other

demonstrators were arrested or charged following the first tree-sitting demonstration on March

29 (id. ¶ 122), Plaintiff Elise Gerhart was charged after the second instance of tree-sitting on

April 7 (id. ¶¶ 129-30).  Accordingly, the Court finds that the other tree-sitting demonstrators

were not similarly situated to Plaintiff Elise Gerhart because they participated only in the earlier

tree-sitting demonstration, whereas Elise Gerhart participated in the earlier tree-sitting

demonstration and the later demonstration, after which she was criminally charged.  Therefore,

the Court concludes that Plaintiffs have failed to allege a class-of-one Equal Protection claim against Defendant Dunsmore. See Bonasorte v. City of Pittsburgh, No. 18-cv-243, 2019 WL 1593720, at *5 (W.D. Pa. Apr. 15, 2019) (dismissing equal protection claim after concluding that the plaintiffs failed to allege that they were similarly situated to others treated differently). For the same reason, because a selective enforcement claim also requires a showing the plaintiff was treated differently than similarly situated individuals,[22] the Court concludes that Plaintiffs have failed to allege a selective enforcement Equal Protection claim against Defendant Dunsmore. Accordingly, the Court will grant the PSP Defendants' motion to dismiss as to Plaintiff Elise Gerhart's Equal Protection claim against Defendant Dunsmore.

### d.     First Amendment Retaliation Claims (Count IV)

In Count IV of the second amended complaint, Plaintiffs Ellen Gerhart and Elise Gerhart assert First Amendment retaliation claims against Defendant Dunsmore, and Plaintiff Lotorto asserts First Amendment retaliation claims against Defendants Ehgartner and Benson. (Doc. No. 60 at 43-44.)

### i.     Legal Standard Applicable to a First Amendment Retaliation Claim

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." See Hartman v. Moore, 547 U.S. 250 (2006) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). To state a First Amendment retaliation claim, a plaintiff must allege: "(1) conduct or speech protected by the First Amendment; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a causal link between the

---

[22] See PG Publ. Co., 705 F.3d at 115 (quoting Digue, 603 F.3d at 184 n.5).

constitutionally protected conduct or speech and the retaliatory action." See Gagliardi v. Fisher, 513 F. Supp. 2d 457 (W.D. Pa. 2007) (citing Thomas v. Indep. Twp, 463 F.3d 285, 296 (3d Cir. 2006)).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Further, when a Plaintiff is asserting a First Amendment retaliatory prosecution claim, as Plaintiffs are here, they "must allege and prove that the defendant's pursuit of the underlying criminal charge was unsupported by probable cause." See Gagliardi, F. Supp. 2d at 458 (citing Hartman, 547 U.S. at 252). The Supreme Court recently held that a lack of probable cause is similarly required to sustain a First Amendment retaliatory arrest claim. See Nieves v. Bartlett, 139 S. Ct. 1715, 1725 (2019) ("Absent [a lack of probable cause], a retaliatory arrest claim fails.") However, the Supreme Court also concluded that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." See id. at 1727.

> **ii.     Whether Plaintiffs Lotorto, Ellen Gerhart, and Elise Gerhart Have Stated First Amendment Retaliation**

**Claims Against Defendants Ehgartner, Benson, and Dunsmore[23]**

Here, Plaintiffs allege that Plaintiffs Lotorto, Ellen Gerhart, and Elise Gerhart were engaging in speech in opposition to the pipeline construction.  (Doc. No. 60 ¶¶ 4, 21, 53, 60, 61, 103, 104, 111, 120, 124).  This type of speech qualifies as protected speech.  See Eichenlaub v. Twp. of Ind., 385 F.3d 274, 284 (3d Cir. 2004) ("[P]rivate speech (unless obscene or fighting words or the like) is . . . protected.").  Further, Plaintiffs have alleged that in retaliation for exercising their speech in opposition to the pipeline construction, Plaintiffs Lotorto, Ellen Gerhart, and Elise Gerhart were arrested and/or charged with crimes.  (Doc. No. 60 ¶¶ 68, 114, 105, 108, 130.)  This is sufficient retaliatory action to deter a person of ordinary firmness from exercising his first amendment rights, as courts have found that a reasonable jury could infer that an arrest meets this standard.  See, e.g., McCoy v. Edwards, No. 3:06-CV-1142, 2009 WL 1794749, at *9 (M.D. Pa. June 23, 2009); Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *8 (M.D. Pa. Oct. 26, 2007).  However, the Court concludes that Plaintiffs have failed to allege sufficient facts from which a reasonable jury could infer a causal link between the protected speech and the allegedly retaliatory action, the third element of a First Amendment retaliation claim.  Although an "unusually suggestive temporal proximity" between protected speech and allegedly retaliatory actions is generally sufficient to establish a causal link,[24] "[c]ourts have consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive."  See Green v. Wetzel, No. 18-cv-93, 2019 WL 1427103, at *6 (W.D. Pa. Mar. 29, 2019) (second and third alterations in

---

[23] Because the parties did not provide arguments specific to each count, the Court will not rewrite its synopsis of the arguments included supra in its discussion of Count I.

[24] See Farrell, 206 F.3d at 279 & n.5 (finding a temporal proximity of two days sufficient to establish a causal link).

original) (quoting Victor v. Lawler, No. 07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010)); see also Evans v. Rozum, No. 07-cv-230, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (citing Royster v. Beard, No. 06-cv-842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008)) (granting summary judgment as to a First Amendment retaliation claim in favor of a defendant after noting that "there is no apparent reason why [the defendant] would want to retaliate against [the p]laintiff for filing a lawsuit against others"). Here, Plaintiffs' protected speech pertained to the pipeline construction. While one could reasonably infer a motive by the Sunoco Defendants to oppose such speech, due to their direct economic interest in the pipeline construction, the same is not true for the Defendants Ehgartner, Benson, and Dunsmore, because the pipeline construction has no apparent connection to them.[25] The Court finds that aside from conclusory assertions, Plaintiffs have failed to allege any facts that support an inference of a retaliatory motive on behalf Defendants Ehgartner, Benson, and Dunsmore. Accordingly, the Court concludes that Plaintiffs have failed to assert First Amendment retaliation claims against Defendants Ehgartner, Benson, and Dunsmore and will grant the PSP Defendants' motions to dismiss as to those claims.

### B. State Law Claims (Counts V, VI, VII, and VIII)

#### 1. State Law Claims Against the Sunoco Defendants[26]

---

[25] Whereas in the "typical" officer-involved First Amendment retaliation claim, the connection between the protected speech and the officer is apparent. See, e.g., Nieves, 139 U.S. at 1721 (addressing a First Amendment retaliation claim where the protected speech in question was "[the plaintiff's] refusal to speak with [the defendant officer] earlier in the evening").

[26] "Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Traylor v. Lanigan, No. 16-cv-7691, 2017 WL 2364189, at *8 n.10 (D.N.J. May 31, 2017) (citing 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware Cty., 983 F.2d 1277, 1284-85 (3d Cir. 1993)). "In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" Growth Horizons, Inc., 983 F.2d at 1284 (quoting

### a. Plaintiff Ellen Gerhart's Abuse of Civil Process Claims Against the Sunoco Defendants

In Count V of the second amended complaint, Plaintiff Ellen Gerhart asserts abuse of civil process claims against the Sunoco Defendants in connection with the emergency preliminary injunction filed by the Sunoco Defendants, which resulted in the Court of Common Pleas Order.  (Doc. No. 60 at 44.)

### i. Legal Standard Applicable to an Abuse of Civil Process Claim

Under Pennsylvania law, an abuse of process claim "require[s] that [the] [d]efendant instituted legal process against [the] [p]laintiff 'primarily to accomplish a purpose for which the process was not designed.'"  See Barnett v. York Cty., No. 11-cv-906, 2011 WL 2790467, at *26 (M.D. Pa. June 24, 2011) (quoting Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 558 n.15 (M.D. Pa. 2008)).  When a court considers the primary purpose, "there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action."  See Clausi v. Stuck, 74 A.3d 242, 249 (Pa. Super. Ct. 2013) (quoting Al Hamilton Contracting Co. v. Cowder, 644 A.2d 188, 192 (Pa. Super. Ct. 1994)) (internal quotation marks omitted).  A valid

---

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966))  Although the Court will dismiss the federal law claims against the Sunoco Defendants as discussed supra, the Court concludes that because other federal-law claims remain in this action, this action has been before this Court for over two years and involved substantial motions practice, and the state-law claims asserted against the Sunoco Defendants stem from factual allegations closely related to the factual allegations from which many of the remaining claims asserted against other defendants in this action stem, the balance of factors points toward maintaining supplemental jurisdiction over the state law claims asserted against the Sunoco Defendants.  See Simpson v. Coffee Cty. Sch. Dist., No. 13-cv-32, 2016 WL 4399799, at *4 (S.D. Ga. Aug. 16, 2016) (maintaining jurisdiction over pendent state law claims against a defendant where federal law claims against other defendants remained in action).  Accordingly, the Court will maintain jurisdiction over those claims.

claim asserts that "the process was used to coerce or compel [the other party] into undertaking collateral actions to which the process did not apply." See Al Hamilton Contracting Co., 644 A.2d, at 192. However, "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." See Natale v. Schwartz, No. 98-cv-3298, 1999 WL 1134535, at *10 (E.D. Pa. Dec. 10, 1999) (internal quotation marks omitted) (quoting Shaffer v. Stewart, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)).

## ii. Parties' Arguments

The Sunoco Defendants first argue that they properly sought the Easement and never filed or pursued criminal charges against Plaintiffs. (Doc. No. 66 at 26-27.) The Sunoco Defendants next contend that they sought the Court of Common Pleas Order for the legitimate purpose of preventing interference with the tree-cutting. (Id. at 27.) They further argue that because Plaintiffs provide no factual basis to support the assertion that the Sunoco Defendants used the Order for the "illegitimate purpose of silencing and intimidating opposition to the construction and development of the Mariner East 2 pipeline," the abuse of process claim fails as a matter of law. (Id.) In response, the Plaintiffs clarify that the basis of the abuse of process claim is the emergency preliminary injunction filed by the Sunoco Defendants, which resulted in the Court of Common Pleas Order. (Doc. No. 71 at 48.) Plaintiffs contend that they have alleged sufficient facts that support the conclusion that the Sunoco Defendants sought the Court of Common Pleas Order for the "illegitimate purpose of silencing and intimidating opposition to the construction and development of the Mariner East 2 pipeline." (Id. at 48-49.)[27] Plaintiffs

---

[27] Amongst the factual allegations cited by Plaintiffs are the fact that the [Court of Common Pleas] Order was used "to exercise a right of exclusion which [the Sunoco Defendants] did not legitimately possess (the [Court of Common Pleas] Order barred interference but arrests were

argue that it is immaterial that the Sunoco Defendants did not specifically request the Court of Common Pleas to order that law enforcement personnel coordinate the enforcement of the Court of Common Pleas Order because the Sunoco Defendants would have been in the same position "to coordinate with and utilize the law enforcement authority of the Sheriff and State Police to stifle opposition" if the Court of Common Pleas had issued their proposed order.  (Id. at 49.)

### iii. Whether Plaintiff Ellen Gerhart Has Stated an Abuse of Civil Process Claim Against the Sunoco Defendants

The Court concludes that Plaintiffs have failed to allege sufficient facts in the second amended complaint to state a claim of abuse of process against the Sunoco Defendants.  The Court determined supra that the second amended complaint failed to allege sufficient facts to support the conclusion that the Sunoco Defendants had entered into an agreement with law enforcement personnel to deprive Plaintiffs of their constitutional rights.  Beyond the conclusory allegations of an improper agreement between the Sunoco Defendants and law enforcement personnel, the second amended complaint alleges little to suggest an improper motive on the part of the Sunoco Defendants.  To the extent that the second amended complaint suggests that the Sunoco Defendants sought the Court of Common Pleas Order with the hope that it would be applied by law enforcement personnel in an illegal manner against Plaintiffs, the Court is unaware of any authority finding that such an allegation is a sufficient basis for an abuse of process claim.  Accordingly, the Court will grant the Sunoco Defendants' motion to dismiss as to Count V of the second amended complaint and dismiss Plaintiff Ellen Gerhart's abuse of civil process claim against the Sunoco Defendants.

---

apparently made on the basis of mere presence on the [E]asement)," that the Sunoco Defendants "had no intention of abiding by 'the seasonal restriction' not to clear trees after March 31," that arrests ultimately did occur on the Property, and "that opposition was successfully stifled." (Doc. No. 71 at 48-49.)

### b. Plaintiffs Ellen Gerhart's and Elise Gerhart's Trespass Claims Against the Sunoco Defendants

In Count VIII of the second amended complaint, Plaintiffs Ellen Gerhart and Elise Gerhart assert trespass claims against the Sunoco Defendants in connection with the Sunoco Defendants' tree-cutting on the Property in April of 2016 and ongoing surveillance of the Property. (Doc. No. 60 at 46.)

### i. Legal Standard Applicable to a Trespass Claim

"It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in possession of another without a privilege to do so." Kennedy v. Consol Energy Inc., 116 A.3d 626, 636 (Pa. Super. Ct. 2015) (citing Kopka v. Bell Tel. Co., 91 A.2d 232, 235 (Pa. 1952); Restatement of Torts § 163, comment b). "Conduct which would otherwise constitute a trespass is not a trespass if privileged." Id. (quoting Restatement (Second) of Torts § 158, comment e) (internal quotation marks omitted). Under Pennsylvania law, "the consent of the person in possession of the property to the entry onto the premises is a complete defense to a trespass action." See Lal v. CBS, Inc., 726 F.2d 97, 100 (3d Cir. 1984) (citing F.A. North & Co. v. Williams, 13 A. 723 (Pa. 1888)). Pursuant to the Restatement (Second) of Torts, however, consent is not a valid defense to trespass if it was obtained due to a substantial mistake induced by the alleged trespasser's misrepresentation. See Restatement (Second) of Torts § 892B.[28]

---

[28] Although Pennsylvania case law is silent on the specific issue of permission of entry gained by misrepresentation, Pennsylvania courts have adopted the Restatement's definition of trespass. See Kopka, 91 A.2d at 235; Liberty Place Retail Assocs., L.P. v. Israelite Sch. Of Universal Practical Knowledge, 102 A.3d 501, 506 (Pa. Super. Ct. 2014). In addition, Pennsylvania courts have cited the Restatement favorably when deciding other trespass-related issues. See, e.g., Valley Forge Gardens, Inc. v. James D. Morrissey, Inc., 123 A.2d 888, 891 (Pa. 1956); Kopka, 91 A.2d at 235-36; Sickafus v. Pugliese, No. 971 MDA 2012, 2013 Pa. Super. Unpub. LEXIS 3975 at *6 (Pa. Super. Ct. Feb. 7, 2013).

The Sunoco Defendants contend that Plaintiffs' assertion that they "had no legal right to enter [the Gerharts'] land to cut trees in April [of] 2016" is "simply not true." (Doc. No. 66 at 29.) They argue that because "a condemnor has the right to access and use its easement after denial of preliminary objections and payment of estimated just compensation" under Pennsylvania eminent domain law, "Plaintiffs had no legal right to bar the Sunoco Defendants from the [E]asement" after March 21, 2016. (Id.) The Sunoco Defendants posit that "because [they] were legally entitled to access the Property and clear the trees, Count VIII should be dismissed." (Id.) In response, Plaintiffs argue that because the Sunoco Defendants' easement was for the "construction, operation, and maintenance" of the Mariner East 2 Pipeline, their entry onto the Property in April of 2016 to clear trees "was not privileged" because they were expressly prohibited from doing so by USFWS restrictions. (Doc. No. 71 at 46-47.) Plaintiffs note that the Sunoco Defendants' assertion that their entry onto the land to clear trees in April of 2016 was lawful and in compliance with USFWS regulations contradicts the representations they made to the Court of Common Pleas of Huntingdon County when they were seeking an injunction. (Id. at 47.)

After Plaintiffs noted that the Sunoco Defendants failed to argue that the Court should dismiss the trespass claim against them to the extent that it was premised on the alleged infiltrator's entry onto the Property (Doc. No. 71 at 45), the Sunoco Defendants responded by arguing that their motion to dismiss pertains to all bases of the trespass claims asserted against them (Doc. No. 73 at 18). The Sunoco Defendants assert that the trespass claims asserted on the basis of the infiltrator fail because Plaintiffs have failed to allege any facts connecting the alleged infiltrator to the Sunoco Defendants. (Id. at 18.) The Sunoco Defendants also argue that

Plaintiffs have not alleged that anyone directed the alleged infiltrator to leave the Property and he refused to comply or that the alleged infiltrator took any action, "while on the Property, inconsistent with the landowner's rights." (Id. at 18-20.) The Sunoco Defendants assert that absent such allegations, even if the alleged infiltrator gained access to the Property through misrepresentation, Plaintiffs have failed to state a viable trespass claim. (Id.)

### iii. Whether Plaintiffs Have Stated Trespass Claims Against the Sunoco Defendants

To the extent Plaintiffs' trespass claim is premised on the Sunoco Defendants' entry onto the Easement in April of 2016, the Court concludes that Plaintiffs have failed to allege a trespass claim. "It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in possession of another without a privilege to do so." Kennedy, 116 A.3d at 636 (citing Kopka, 91 A.2d at 235; Restatement of Torts § 163, comment b). The parties do not appear to dispute the fact the Sunoco Defendants were privileged to enter the Easement for the "construction, operation, and maintenance" of the Mariner East 2 Pipeline, and Plaintiffs fail to allege that the Sunoco Defendants entered the Easement in April of 2016 for any purpose other than those relating to the pipeline construction. The Court is unpersuaded by Plaintiffs' argument that the Sunoco Defendants' alleged violation of USFWS regulations while on the Easement overrides their privilege to access the Easement for purposes related to the pipeline construction and renders them liable for trespass. The Court is unaware of—and Plaintiffs fail to cite—any authority that supports such a proposition. Accordingly, the Court concludes that Plaintiffs have failed to state trespass claims against the Sunoco Defendants in regard to the Sunoco Defendants' entry onto the Easement in April of 2016.

To the extent that Plaintiffs' trespass claims are premised on the alleged actions of the infiltrator, the Court concludes that Plaintiffs have sufficiently asserted trespass claims against

the Sunoco Defendants. Plaintiffs allege that the Sunoco Defendants and Defendant TigerSwan sent an infiltrator—who gained permission to enter the Property "under the false pretense that [he or she was] allied with the [Gerharts'] interests, supportive of their opposition to the construction of the Mariner East 2 pipeline, and seeking to join the encampment of supporters hosted on the [P]roperty"—to the Property to take photographs of the Property, the Gerharts, and their supporters. (Doc. No. 60 ¶¶ 144, 145.) Although "the consent of the person in possession of the property to the entry onto the premises is a complete defense to a trespass action,"[29] if such consent is obtained due to a substantial mistake induced by the alleged trespasser's misrepresentation, it is not a valid defense to trespass. See Restatement (Second) of Torts § 892B. While the Sunoco Defendants cite other decisions to support the contention that Plaintiffs have failed to allege trespass claims because they do not allege that the infiltrator interfered with the Gerharts' usage of their property (Doc. No. 73 at 18-20), the Court finds that those decisions involve a nuanced approach to such a determination. The Seventh Circuit, for example, has noted that in the context of determining whether consent obtained through misrepresentation is a defense to trespass and other torts, "[t]he lines are not bright—they are not even inevitable." See Desnick v. Am. Broad. Cos., Inc., 44 F.3d 1345, 1352 (7th Cir. 1995). The Seventh Circuit went on to compare various circumstances in which consent obtained through misrepresentation would or would not be a defense to trespass, emphasizing that a valid claim should involve an "invasion . . . of the specific interests that the tort of trespass seeks to protect." See id. at 1351-53.[30] The Court finds that the circumstances surrounding the alleged trespass in the instant

_____

[29] See Lal, 726 F.2d at 100 (citing F.A. North & Co., 13 A.).

[30] For example, the Seventh Circuit asserts that "[i]f a homeowner opens his door to a purported meter reader who is in fact nothing of the sort—just a busybody curious about the interior of the home—the homeowner's consent to his entry is not a defense to a suit for trespass." See Desnick, 44 F.3d at 1352 (citing State v. Donahue, 762 P.2d 1022, 1025 (Or. App. 1988);

action establish an "invasion . . . of the specific interests that the tort of trespass seeks to protect"[31] and are akin to those in cases where other courts have determined that consented entry obtained through misrepresentation did not defeat the asserted tort claim. The instance of alleged trespass in this case involves an entry onto private residential property in a non-commercial context—specifically a gathering of the Property's owner and her supporters at a time when the tone of the discourse surrounding the events underlying this action was undoubtedly contentious—in which consent to enter the Property was gained through misrepresentation. See id. at 1352-53 (citing the fact that alleged trespass, for which consent was obtained through misrepresentation, occurred in a commercial, non-private space as one factor in why the trespass claim failed); Dietemann v. Time, Inc., 449 F.2d 245 (9th Cir. 1971) (noting the private, non-commercial nature of the plaintiff's home, where he was photographed and recorded after consenting to the defendants' entry into his home based on their misrepresentation, in affirming a judgment for the plaintiff as to an invasion of privacy claim). Accordingly, the Court concludes that the alleged infiltrator's consent to entry gained through misrepresentation is not a defense to trespass, and Plaintiffs have sufficiently alleged a trespass claim against the Sunoco

---

Bouillon v. Laclede Gaslight Co., 129 S.W. 401, 402 (Mo. App. 1910)). Further, "if a competitor gained entry to a business firm's premises posing as a customer but in fact hoping to steal the firm's trade secrets," the consent to entry is likewise not a defense to the trespass. See id. (citing Rockwell Graphic Sys., Inc. v. DEV Indus., Inc., 925 F.2d 174, 178 (7th Cir. 1991); E. I. duPont deNemours & Co. v. Christopher, 431 F.2d 1012, 1014 (5th Cir. 1970)).

The Seventh Circuit contrasts these circumstances with those in which consent obtained through misrepresentation would be considered a valid defense to trespass, such as "[d]inner guests . . . [who] were false friends who never would have been invited had the host known their true character, and a consumer who in an effort to bargain down an automobile dealer falsely claimed to be able to buy the same car elsewhere at a lower price." See id. at 1351.

[31] See id. at 1352.

Defendants.[32]  Therefore, the Court will grant the Sunoco Defendants' motion to dismiss as to the trespass claims asserted against them to the extent that those claims are premised on the Sunoco Defendants' April 2016 entry onto the Easement and deny the motion to dismiss Plaintiffs' trespass claims against the Sunoco Defendants to the extent that those claims are premised on the alleged infiltrator's entry onto the Property.

### c. Plaintiffs Ellen Gerhart's and Elise Gerhart's Nuisance and Invasion of Privacy Claims Against the Sunoco Defendants

The Sunoco Defendants argue that Plaintiffs Ellen Gerhart's and Elise Gerhart's nuisance (Count VI) and invasion of privacy (Count VII) claims should be dismissed because "[t]he counts group all of the [d]efendants together, without articulating what any of them did" or, in the alternative, "the Court may decline to exercise jurisdiction over these claims" after the dismissal of the federal claims asserted against the Sunoco Defendants.  As the Court has addressed supra, it will exercise supplemental jurisdiction over the pendant state law claims asserted against the Sunoco Defendants.  As to the Sunoco Defendants' argument that "the counts group all of the [d]efendants together, without articulating what any of them did," the Court finds such an argument undeveloped and unpersuasive.  See N.J. Bldg. Laborers Benefit Funds v. Perfect Concrete Cutting, No. 2:10-cv-1540, 2010 WL 2292102, at *1 (D.N.J. June 2,

---

[32] As to the Sunoco Defendants' argument that Plaintiffs have failed to allege any facts "connecting [the alleged infiltrator] to the [Sunoco Defendants]" (Doc. No. 73 at 18), the Court is unpersuaded by this argument and concludes that Plaintiffs sufficiently alleged that the Sunoco Defendants sent the infiltrator to enter the Property.  In addition to alleging that the Sunoco Defendants sent the alleged infiltrator onto the Property (Doc. No. 60 ¶ 144), Plaintiffs assert additional facts that are supportive of this allegation, including: the publication of photographs of the Gerharts and their supporters on the Property to the PA Progress Facebook page (id. ¶ 145); various facts indicative of TigerSwan's operation of the PA Progress Facebook page on behalf of the Sunoco Defendants (id. ¶¶ 158-63); and the past practice of Defendant TigerSwan, working on the Sunoco Defendants' behalf, to use infiltration as a tactic against groups protesting the Dakota Access Pipeline (id. ¶ 146).

2010) (citing <u>Clay v. Holy Cross Hosp.</u>, 253 F.3d 1000, 1002 n.1 (7th Cir. 2001)) ("An undeveloped argument in a brief is waived.").  Accordingly, the Court will decline to dismiss the nuisance and invasion of privacy claims asserted against the Sunoco Defendants.

### 2. State Law Claims Against Defendant TigerSwan

#### a. Plaintiffs Ellen Gerhart's and Elise Gerhart's Nuisance Claims Against Defendant TigerSwan

In Count VI of the second amended complaint, Plaintiffs Ellen Gerhart and Elise Gerhart assert nuisance claims against Defendant TigerSwan in connection with its alleged surveillance of the Gerharts.  (Doc. No. 60 at 45.)

##### i. Legal Standard Applicable to a Nuisance Claim

For a claim of private nuisance, "Pennsylvania has adopted the Restatement (Second) of Torts approach,"[33] which states:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either[:]
> a. intentional and unreasonable, or
> b. unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

<u>Tiongco</u>, 214 F. Supp. 3d at 284 (quoting <u>Karpiak v. Russo</u>, 676 A.2d 270, 272 (Pa. Super. Ct. 1996)).  Further, "[t]here is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose."  <u>See</u> Restatement (Second) of Torts § 822. "Invasions are 'significant' if 'normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable.'"  <u>Roth v. Cabot</u>

---

[33] <u>See</u> <u>Tiongco v. Sw. Energy Prod. Co.</u>, 214 F. Supp. 3d 279, 284 (M.D. Pa. 2016) (citing <u>Butts v. Sw. Energy Prod. Co.</u>, No. 3:12-cv-1330, 2014 WL 3953155, at *3 (M.D. Pa. Aug. 12, 2014)).

Oil & Gas Corp., 919 F. Supp. 2d 476, 490 (M.D. Pa. 2013) (quoting Restatement (Second) of

Torts § 822).  Whether there was a significant invasion of the enjoyment and use of a property is

a determination for the trier of fact.  See Butts, 2014 WL 3953155, at *3 (quoting Kembel v.

Schlegel, 478 A.2d 11, 15 (Pa. Super. Ct. 1984)).

## ii.    Parties' Arguments

Defendant TigerSwan argues that Plaintiffs have failed to allege private nuisance claims

against Defendant TigerSwan.  (Doc. No. 67 at 8-15.)[34]  Defendant TigerSwan first asserts that

Plaintiffs have failed to allege that Defendant TigerSwan acted intentionally in regard to the

alleged nuisance.  (Id. at 9.)[35]  Defendant TigerSwan further argues that Plaintiffs have failed to

plausibly attribute any of the complained actions underlying their nuisance claims to Defendant

TigerSwan.  (Id. at 9-10.)  Defendant TigerSwan argues that "[a]s a result, Plaintiffs do not

plausibly show that TigerSwan's actions were a 'but for' cause [of] any harm alleged [by] the

Gerharts."  (Id. at 10.)  Defendant TigerSwan asserts that Plaintiffs' "guestimat[ing]" that it was

responsible for the alleged actions underlying their nuisance claims is insufficient under Iqbal.

(Id. at 10.)  Next, Defendant TigerSwan argues that Plaintiffs have failed to allege that the

actions underlying their nuisance claims caused significant harm, as required by §822.  (Id. at 10-

12.)  Finally, Defendant TigerSwan contends that Plaintiffs fail to explain why the alleged aerial

surveillance, shining of vehicle headlight onto the Property, or noise were unreasonable, as

required by §822.  (Id. at 12-15.)

---

[34] Defendant TigerSwan also argues that Plaintiffs have failed to allege public nuisance claims. (Doc. No. 67 at 15-16.)  However, because Plaintiffs assert that they are not attempting to assert such claims (Doc. No. 71 at 35), the Court declines to address these arguments.

[35] Defendant TigerSwan notes that because Defendant has failed to assert that that the alleged invasion was "otherwise actionable" under §822(b), §822 requires that the invasion be intentional.  (Doc. No. 67 at 9.)

In response, Plaintiffs argue that Defendant is incorrect in suggesting that the second amended complaint must explain why Defendants' conduct was unreasonable to sustain their nuisance claims. (Doc. No. 71 at 32-33.) Plaintiffs argue that because "[t]he [second amended] complaint sets forth sufficient facts from which 'significant harm' and 'unreasonableness' can be found," they have sufficiently alleged nuisance claims. (Id. at 33.) Plaintiffs further argue that a claimant is not required to "establish in her pleading that the harm caused by a defendant's conduct outweighs any utility." (Id. at 34.) Finally, Plaintiffs contend that the second amended complaint alleges that Defendant TigerSwan performed the actions underlying the nuisance claims as part of a surveillance campaign against the Gerharts and not for legitimate construction-related purposes, as Defendant TigerSwan asserts in its brief. (Id. at 34-35.)

### iii. Whether Plaintiffs Have Stated Nuisance Claims Against Defendant TigerSwan

The Court finds that Plaintiffs have sufficiently alleged nuisance claims against Defendant TigerSwan. First, the Court is unpersuaded by Defendant TigerSwan's argument that the second amended complaint fails to allege that the actions underlying the nuisance claims were taken intentionally. Although the second amended complaint does not explicitly state that Defendant TigerSwan acted with the purpose of causing the alleged invasions underlying the nuisance claims, intentional invasion does not have to be perpetrated with the purpose of causing the invasion; intention is also established when the actor "know[s] that [the invasion] is resulting or is substantially certain to result from his conduct." See Restatement (Second) of Torts §825. Here, by the nature of the some of the alleged activities (e.g., flying helicopters and drones at low altitudes over the Property and shining headlights onto the Property (Doc. No. 60 ¶ 143)), and their alleged targeted purpose of surveillance of the Gerharts, the Court finds that Plaintiffs have alleged sufficient facts to plausibly support a reasonable inference that Defendant

TigerSwan knew that an invasion of the Gerharts' interests in the use and enjoyment of their land was occurring or was substantially certain to occur as a result of its conduct.

The Court also finds that the second amended complaint sufficiently attributes the activities underlying the nuisance claims to Defendant TigerSwan to survive a motion to dismiss. Plaintiffs allege that the Sunoco Defendants hired Defendant TigerSwan to conduct surveillance in connection to the Mariner East 2 Pipeline and that TigerSwan subsequently flew helicopters and drones over the Property, shined high beams onto the Property from vehicles parked nearby, and sent employees or agents onto neighboring properties, which created unreasonable noise and annoyance to the Gerharts. (Id. ¶¶ 138, 143.) Plaintiffs further allege other facts in support of these allegations, including Defendant TigerSwan's past use of drones and helicopters for the purpose of surveillance of the Standing Rock demonstrators on behalf of the Sunoco Defendants (id. ¶ 137), Defendant TigerSwan's acquisition of business licenses in Pennsylvania and the other Mariner East 2 Pipeline states in 2016, and the publication of an op-ed criticizing opponents of the Mariner East 2 Pipeline on PennLive.com by Defendant TigerSwan's board of advisors chairman in 2017. (Id. ¶¶ 137, 139, 141.) The Court finds that these allegations are more than merely conclusory assertions or allegations supporting an inference of "the mere possibility of misconduct,"[36] and, if proven true, would plausibly permit a reasonable trier of fact to conclude that the alleged actions underlying Plaintiffs' nuisance claims are attributable to Defendant TigerSwan.

Further, the Court finds that Plaintiffs' allegations are sufficient to establish that the alleged invasion caused significant harm to Plaintiffs' use and enjoyment of the Property. The second amended complaint alleges that Defendant TigerSwan participated in specific activities,

---

[36] See Iqbal, 556 U.S. at 679.

such as flying helicopters and drones low to the ground over the Property and shining high beams onto the property, which caused specific harms to Plaintiffs' enjoyment and use of the Property in the form of noise and annoyance.  (Id. ¶ 143.)  These interferences are of the type that a trier of fact could plausibly conclude are "definitely offensive, seriously annoying or intolerable."  See Restatement (Second) of Torts, § 821F, comment (d); see also Butts, 2014 WL 3953155, at *3, 10 (denying a defendant's motion for summary judgment that challenged the significance of the harm caused by the light and sound stemming from the defendant's drilling activities).  Finally, the Court is unpersuaded by Defendant TigerSwan's argument that the nuisance claims should be dismissed because the second amended complaint fails to explain why the alleged activities underlying those claims were unreasonable.  The Court is unaware of any authority that requires a complaint to provide an explanation as to why alleged activity underlying a nuisance claim is unreasonable.  Such a determination is appropriate at trial.  See Hughes v. Emerald Mines Corp., 450 A.2d 1, 17 (Pa. Super. Ct. 1982) ("Once the plaintiff had met its burden of proof of causation by a preponderance of the evidence . . . the burden shifts to the [defendant] to defend its conduct as 'reasonable.'").  Accordingly, the Court will deny Defendant TigerSwan's motion to dismiss as to the nuisance claims asserted against it.

**b.**     **Plaintiffs Ellen Gerhart's and Elise Gerhart's Invasion of Privacy Claims Against Defendant TigerSwan**

In Count VII of the second amended complaint, Plaintiffs Ellen Gerhart and Elise Gerhart assert invasion of privacy claims against Defendant TigerSwan under theories of intrusion upon seclusion and publicity placing a person in false light.  (Doc. No. 60 at 45-46.)

**i.**     **Legal Standard Applicable to an Invasion of Privacy Claim**

Under Pennsylvania law, several causes of action fall under the umbrella of invasion of privacy, including intrusion upon seclusion and publicity placing a person in false light. See Klein v. Commerce Energy, Inc., 256 F. Supp. 3d 563, 593 (W.D. Pa. 2017) (quoting Marks v. Bell Tel. Co. of Pa., 331 A.2d 424, 430 (Pa. 1975)). Pennsylvania has adopted the Restatement's definition of a claim of intrusion upon seclusion. See Harris v. Easton Pub. Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). That definition holds that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." See id. (quoting Restatement (Second) of Torts § 652B). "The invasion may be (1) by physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into [the] plaintiff's private concerns." Id. (quoting Restatement (Second) of Torts § 652B, comment b). Unlike other invasion of privacy torts, intrusion upon seclusion does not include an element of publication. See Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 622 (3d Cir. 1992) (citing Harris, 483 A.2d at 1383).

Pennsylvania follows the Restatement (Second) of Torts' definition of false light invasion of privacy, which states:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Krajewski v. Gusoff, 53 A.3d 793, 805-06 (Pa. Super. Ct. 2012) (quoting Restatement (Second) of Torts §652E).

## ii.  Parties' Arguments

Defendant TigerSwan argues that Plaintiffs have failed to allege invasion of privacy claims against it.  (Doc. No. 67 at 16-29).[37]  As to Plaintiffs' intrusion upon seclusion claims, Defendant TigerSwan first argues that Plaintiffs have failed to sufficiently allege that Defendant TigerSwan had any connection to the alleged aerial surveillance or infiltrator.  (Id. at 24.)  Next, Defendant TigerSwan asserts that Plaintiffs have failed to allege that the Gerharts had secluded themselves or that the Gerharts were engaged in private affairs and not matters of public concern. (Id.)  Defendant TigerSwan argues that "[t]he activities that were allegedly surveilled or photographed were not private as they occurred outside in plain view and concerned a public protest" and that Plaintiffs "had a diminished expectation of privacy because they were engaged in state court litigation."  (Id. at 24-25.)  Further, Defendant TigerSwan argues that Plaintiffs have failed to allege facts that support a conclusion that any intrusion was highly offensive.  (Id. at 25-26.)

In response, Plaintiffs first argue that factual disputes as to TigerSwan's involvement with the aerial surveillance or the infiltrator are questions of fact for the jury.  (Doc. No. 71 at 36.)  Plaintiffs dispute the proposition that "the publicity arising from Plaintiffs' activism defeats their intrusion upon seclusion claim."  (Id. at 37.)  Plaintiffs assert that "[e]ven assuming arguendo that all conduct occurred in public view such that Plaintiffs' had a diminished

---

[37] Defendant TigerSwan argues that Plaintiffs have failed to state publication of private facts invasion of privacy claims.  (Doc. No. 67 at 17-23.)  However, because Plaintiffs assert that they are not attempting to assert such claims (Doc. No. 71 at 35), the Court declines to address these arguments.

expectation of privacy, these assertions would not defeat the intrusion upon seclusion claim" because conduct that reaches the level of "persistent hounding, harassment, and unreasonable surveillance" may support an intrusion upon seclusion claim, even if it occurs in a public or semi-public place. (Id. at 37-38) (quoting Wolfson v. Lewis, 924 F. Supp. 1413, 1420 (E.D. Pa. 1996)) (internal quotation marks omitted). Plaintiffs further argue that the requirement that the intrusion be highly offensive may be satisfied by "conduct that recurs with 'such persistence and frequency as to amount to a course of hounding the plaintiff.'" (Id. at 38) (quoting Restatement (Second) of Torts § 652B, comment d).

As to Plaintiffs' false light claims, Defendant TigerSwan first argues that Plaintiffs have failed to sufficiently allege that Defendant TigerSwan made any publication or identify which of the alleged posts on the PA Progress Facebook page are false. (Doc. No. 67 at 27.) Further, Defendant TigerSwan argues that Plaintiffs' method of connecting it to the blackbadgerreport.com is a "convoluted stretch of the imagination," rather than the product of a set of reasonable inferences. (Id. at 27-28.) Next, Defendant TigerSwan asserts that Plaintiffs fail to allege "that the content on blackbadgerreport.com reached the community at large," noting that neither the Facebook page nor blackbadgerreport.com appears to exist anymore. (Id. at 28-29.) Finally, Defendant TigerSwan argues that Plaintiffs' claims should be dismissed because the alleged publications concern matters of public concern. (Id. at 29) (citing Smith v. Borough of Dunmore, 633 F.3d 176, 182 (3d Cir. 2011)).

In response, Plaintiffs first note that "[t]he argument that there can be no liability for 'false light' invasion of privacy if it is regarding a matter of public concern is nonsensical . . . and legally wrong." (Doc. No. 71 at 39 n.27.) Plaintiffs next argue that, contrary to Defendant TigerSwan's characterization, the second amended complaint unambiguously identifies various

published claims as false and misleading. (Id. at 40-41.) Further, Plaintiffs argue that the second amended complaint does allege that the posts on blackbadgerreport.com and the PA Progress Facebook page were publicized, citing the allegations that the posts on the PA Progress Facebook page were the subject of a pastemagazine.com news article, the posted video was discussed in another news article, and posts were circulated enough to "incite the public's ire." (Id. at 41.) Finally, Plaintiffs argue that Defendant TigerSwan's factual attacks related to the Facebook pages identified in the second amended complaint are not appropriate for consideration in the context of a Rule 12(b)(6) motion. (Id.)

### iii.   Whether Plaintiffs Have Stated Invasion of Privacy Claims Against Defendant TigerSwan

To state a claim for intrusion upon seclusion, a plaintiff must allege that the intrusion underlying the claim "would be highly offensive to a reasonable person." See Restatement (Second) of Torts § 652B. Although the Court is unaware of any authority that addresses whether intrusions substantially similar to those alleged in this case may be considered "highly offensive," the Court is guided by the Pennsylvania Supreme Court's instruction that to sustain an intrusion upon seclusion claim, a party must "aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame[,] or humiliation to a person of normal sensibilities." See Pro Golf Mfg. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002). Here, the second amended complaint identifies only a few pieces of information that were disclosed by the alleged infiltrator's entry onto the Property: the identification of those associating with the Gerharts on the Property in connection with their protest of the pipeline construction, the identification of where Elise Gerhart works, the identification of Elise Gerhart's vehicle, and the identification of the Gerharts' driveway (Doc. No. 60 ¶ 145). The second

amended complaint fails to identify any information that was disclosed by the alleged aerial surveillance. The Court concludes that these alleged disclosures of information are not the type that a reasonable jury could plausibly conclude "would have caused mental suffering, shame[,] or humiliation to a person of normal sensibilities." See Pro Golf Mfg., 809 A.2d at 247; see also Boring v. Google, Inc., 362 F. App'x 273, 279 (3d Cir. 2010) ("No person of ordinary sensibilities would be shamed, humiliated, or have suffered mentally as a result of a vehicle entering into his or her ungated driveway and photographing the view from there."); Restatement (Second) of Torts § 652B, comment d ("Thus there is no liability for knocking at the plaintiff's door . . . ."). As Plaintiffs assert, the "highly offensive" element may be satisfied by conduct that occurs "with such persistence and frequency as to amount to a course of hounding the plaintiff." See Restatement (Second) of Torts § 652B, comment d. However, Plaintiffs' second amended complaint fails to allege any specific frequency with which the alleged intrusive actions of Defendant TigerSwan took place. Plaintiffs allege that the infiltrator was sent onto the Property "several times" (Doc. No. 60 ¶ 144) and generally allege Defendant TigerSwan conducted aerial and other types of surveillance "throughout 2017" (id. ¶ 143). The Court finds that such vague allegations are not sufficient to assert an intrusion upon seclusion claim premised on a "course of hounding." See Stuart v. AR Res., Inc., No. 10-cv-3520, 2011 WL 904167, at *6 (E.D. Pa. Mar. 16, 2011) (dismissing a "course of hounding" intrusion upon seclusion claim premised on persistent harassing phone calls made by the defendant because, inter alia, the plaintiff failed to identify a specific number of calls made by the defendant). Accordingly, the Court will dismiss

Plaintiffs' invasion of privacy claims against Defendant TigerSwan to the extent they are premised on a theory of intrusion upon seclusion.[38]

As to Plaintiffs' false light claims, the Court concludes that Plaintiffs have sufficiently alleged such claims against Defendant TigerSwan. First, the Court finds that Plaintiffs have sufficiently attributed the publication of posts on blackbadgerreport.com and the PA Progress Facebook page to Defendant TigerSwan by alleging that Defendant TigerSwan published specific statements and media on those platforms. (Doc. No. 60 ¶¶ 148, 150, 158, 159 n.9, 161, 164.) The second amended complaint also explicitly identifies several assertions made in these posts as false.[39] Further, the Court finds that Plaintiffs' second amended complaint sufficiently alleges that Defendant TigerSwan "gave publicity" to the underlying alleged falsehoods. In the context of a false light claim, publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." See Restatement (Second) of Torts § 652D, comment a; see also Restatement (Second) of Torts § 652E, comment a ("On what constitutes publicity . . . see § 652D, Comment a, which is applicable to the rule stated here.'). "[A]ny publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity . . . ." Restatement (Second) of Torts § 652D,

---

[38] Because the Court has determined that Plaintiffs' intrusion upon seclusion claims against Defendant TigerSwan should be dismissed for the reasons described supra, the Court declines to address the parties' other arguments pertaining to Plaintiffs' intrusion upon seclusion claims.

[39] The second amended complaint alleges that "[p]osts on blackbadgerreport.com falsely claim that [Plaintiff] Elise Gerhart and her cohorts are fronts for the Russian government to disrupt domestic energy markets, and that she has appeared on Russian TV" (Doc. No. 60 ¶ 148), that a link to that article was posted on the PA Progress Facebook page (id. ¶ 164), and that a video published on the PA Progress Facebook page falsely attributes a Facebook post to the Gerharts and "misrepresents the post as a call to violent action" (id. ¶ 159 n.9).

comment a. "The distinction, in other words, is one between private and public communication."

Id. Here, the Court concludes that by asserting that the alleged falsehoods were posted on

blackbadgerreport.com and the PA Progress Facebook page (Doc No. 60 ¶¶ 148, 158, 159, 161,

164), and that the video at issue received enough publicity to be the subject of a subsequent news

article (id. ¶ 163), Plaintiffs have sufficiently alleged that Defendant TigerSwan gave publicity to

the alleged falsehoods. See Meyers v. Certified Guar. Co., LLC, 221 A.3d 662, 673-74 (Pa.

Super. Ct. 2019) (reversing the trial court's order of summary judgment in favor of the defendant

on a false light claim where evidence indicated that the statements at issue were disseminated on

an online message board). Finally, the Court notes that a false light claim does not require that

the alleged publications not be matters of public concern.[40] Accordingly, the Court will deny

Defendant TigerSwan's motion to dismiss as to Plaintiffs' invasion of privacy claims to the

extent those claims are premised on a false light theory.

### c. Plaintiff Ellen Gerhart's and Elise Gerhart's Trespass Claims Against Defendant TigerSwan

Defendant TigerSwan argues that Plaintiffs have failed to allege trespass claims against

Defendant TigerSwan. (Doc. Nos. 67 at 29-31, 74 at 19-20.) Defendant TigerSwan first argues

that although Plaintiffs allege that the Sunoco Defendants entered the Property to cut down trees,

they fail to allege that Defendant TigerSwan entered the Property. (Doc. No. 67 at 29-30.)

---

[40] Although Defendant TigerSwan relies on Smith v. Borough of Dunmore, 633 F.3d 176, 182 (3d Cir. 2011), for the proposition that the subject published "information cannot be of public concern" (Doc. No. 67 at 26), the court in Smith cites Strickland v. University of Scranton, 700 A.2d 979 (Pa. Super. Ct. 1997), in arriving at that conclusion. See Smith, 633 F.3d at 182 (citing Strickland, 700 A.2d at 987). However, the Pennsylvania Superior Court later clarified that Strickland's assertion that a lack of public concern is an element of a false light claim was incorrect. See Krajewski, 53 A.3d at 806 n.4 ("In this writing, we expressly disavow any suggestion that a lack of 'legitimate public concern' should be an element of a section 652E claim for false light invasion of privacy.").

Defendant TigerSwan argues that "even if Plaintiffs had alleged [Defendant] TigerSwan's presence on the land," such entry would be privileged because the Sunoco Defendants, which Plaintiffs have alleged engaged Defendant TigerSwan, had privileged use of the Easement.  (Id. at 30-31.)  Defendant TigerSwan further argues that Plaintiffs have failed to attribute the agency of the alleged infiltrator to Defendant TigerSwan.  (Doc. No. 74 at 19.)  Next, Defendant TigerSwan asserts that a trespass claim fails because Plaintiffs allege that they permitted the infiltrator to enter the Property.  (Id.)  Finally, Defendant TigerSwan asserts that the alleged aerial surveillance falls under the purview of Federal Aviation Administration regulations.  (Id. at 19-20.)  In response, Plaintiffs clarify that their trespass claims are premised on TigerSwan's role in sending the infiltrator onto the Property, rather than the Sunoco Defendants' clearing of trees on the Easement.  (Doc. No. 71 at 43.) Plaintiffs further argue that "[t]o the extent that [Defendant] TigerSwan asserts that sending the infiltrator onto Plaintiff[s'] property was 'privileged' because it was acting as the agent of an easement holder," the Sunoco Defendants' privilege to enter the Easement clearly does not give them the privilege to access any part of the Property for any purpose.  (Id. at 44-45.)

The Court concludes that Plaintiffs have sufficiently alleged trespass claims against Defendant TigerSwan.  First, the Court concludes that Plaintiffs have sufficiently alleged that Defendant TigerSwan sent the infiltrator to enter the Property.[41]  The Court further concludes, for the reasons explained supra regarding the trespass claims asserted against the Sunoco

---

[41] In addition to alleging that Defendant TigerSwan sent the alleged infiltrator onto the Property (Doc. No. 60 ¶ 144), Plaintiffs assert additional facts that are supportive of this allegation, including: the publication of photographs of the Gerharts and their supporters on the Property to the PA Progress Facebook page (id. ¶ 145); various facts indicative of TigerSwan's operation of the PA Progress Facebook page on behalf of the Sunoco Defendants (id. ¶¶ 158-63); and the past practice of Defendant TigerSwan, working on the Sunoco Defendants' behalf, to use infiltration as a tactic against groups protesting the Dakota Access Pipeline (id. ¶ 146).

Defendants, that the alleged infiltrator's consent obtained through misrepresentation does not defeat Plaintiffs' trespass claims. Further, because Plaintiffs assert that their trespass claims are premised on the infiltrator's entry onto the Property, the Court declines to address Defendant TigerSwan's arguments pertaining to the Sunoco Defendants' entry onto the Easement for purposes of tree-cutting and the alleged aerial surveillance. Accordingly, the Court will deny Defendant TigerSwan's motion to dismiss as to Plaintiffs' trespass claims.

### 3. Plaintiffs Ellen Gerhart's and Elise Gerhart's Invasion of Privacy Claims Against Defendant Johnson

Defendant Johnson argues that the Court should dismiss the invasion of privacy claims asserted against him. (Doc. No. 68 at 6-8.)[42] In regard to Plaintiffs' intrusion upon seclusion claims, Defendant Johnson first argues that Plaintiffs have failed to establish any intrusion upon the Gerharts' privacy, noting that the second amended complaint "fail[s] to attribute any of the alleged surveillance, 'infiltration,' photographing, or similar conduct to [Defendant] Johnson." (Id. at 7.) Next, Defendant Johnson argues that the Gerharts fail to allege that "they had secluded themselves" or that "they were engaged in private affairs and not matters of public concern." (Id. at 7-8.) Defendant Johnson contends that the facts alleged in the second amended complaint "fail to establish that [Plaintiffs Ellen Gerhart and Elise Gerhart] have a reasonable expectation of privacy in the matters that are germane to the claims against [Defendant] Johnson." (Id. at 8.) Finally, Defendant Johnson argues that Plaintiffs have failed to allege facts that support a conclusion that any alleged intrusion by Defendant Johnson would be highly offensive to a reasonable person. (Id. at 8.)

---

[42] Defendant Johnson argues that Plaintiffs have failed to state a publication of private facts invasion of privacy claim. (Doc. No. 68 at 10-15.) However, because Plaintiffs assert that they are not attempting to assert such claims (Doc. No. 71 at 35), the Court declines to address these arguments.

In response, Plaintiffs argue that the second amended complaint attributes the "infiltrator" incident to Defendant Johnson by asserting that he published the photographs taken by the infiltrator online. (Doc. No. 71 at 36.) Plaintiffs further argue that the allegations of the digital campaign carried out by Defendant Johnson provide a basis for their intrusion upon seclusion claims. (Id. at 36-37.) Plaintiffs also assert that Defendant Johnson "incorrectly assume[s that] the publicity arising from Plaintiffs' activism defeats their intrusion upon seclusion claim." (Id. at 37.) Finally, Plaintiffs argue that they have sufficiently alleged that Defendant Johnson's actions constituted a "course of hounding" and, therefore, have sufficiently alleged that the intrusion was "highly offensive." (Id. at 38-39.)

Defendant Johnson also argues that the Court should dismiss the false light claims asserted against him. (Doc. No. 68 at 9-10.) Defendant Johnson asserts that Plaintiffs have not plausibly alleged that Defendant Johnson posted any of the alleged statements underlying the false light claims, arguing that Plaintiffs rely solely on "attenuated conjectures." (Id.) Further, Defendant Johnson contends that Plaintiffs "have not and cannot establish that any publication of information germane to their claims was highly offensive to a reasonable person given [Plaintiffs Ellen Gerhart and Elise Gerhart's] knowing involvement in a 'contentious matter of public concern.'" (Id. at 10.) Defendant Johnson also argues that the second amended complaint fails to identify what specific claims on the PA Progress Facebook Page or blackbadgerreport.com are false. (Id.) Finally, Defendant Johnson argues that the false light claims should be dismissed because "the [second amended complaint] fails to establish that the matters surrounding [Plaintiffs Ellen Gerhart and Elise Gerhart's] open protest, widely-publicized among various social media and news outlets, were not a matter of public concern." (Id.)

In response, Plaintiffs first note that "[t]he argument that there can be no liability for 'false light' invasion of privacy if it is regarding a matter of public concern is nonsensical . . . and legally wrong." (Doc. No. 71 at 39 n.27.) Plaintiffs next argue that, contrary to Defendant Johnson's characterization, the second amended complaint unambiguously identifies various published claims as false and misleading. (Id. at 40-41.) Finally, Plaintiffs contend that they have alleged sufficient facts to permit the Court to reasonably infer that Defendant Johnson took various actions in furtherance of the digital media campaign, including the posting of false statements that underlies the false light claims. (Id. at 42-43.)

As to Plaintiffs' intrusion upon seclusion claims, the Court concludes, for the reasons discussed supra in the Court's discussion of the intrusion upon seclusion claims asserted against Defendant TigerSwan, that Plaintiff has failed to allege that the intrusions underlying the claims "would be highly offensive to a reasonable person." See Restatement (Second) of Torts § 652B.[43] Accordingly, the Court will dismiss Plaintiffs' invasion of privacy claims against Defendant Johnson to the extent that they are premised on a theory of intrusion upon seclusion.[44]

---

[43] Because the Court has determined that Plaintiffs' intrusion upon seclusion claims against Defendant Johnson should be dismissed on this basis, the Court declines to address Defendant Johnson's other arguments pertaining to Plaintiffs' intrusion upon seclusion claims.

[44] To the extent that Plaintiffs argue that their intrusion upon seclusion claims against Defendant Johnson are premised on the alleged false statements disseminated in Defendant Johnson's digital media campaign, such as the "false[] characteriz[ation of Plaintiff] Elise Gerhart as a front for the Russian government and a saboteur of pipeline infrastructure who fraternizes with criminals" and the "false characteriz[ation of Plaintiffs Ellen Gerhart and Elise Gerhart] as members of a cult, recruiting 'intimidating' supporters to 'begin planning a direct action against the State of Pennsylvania' and planning to overthrow the President" (Doc. No. 71 at 36-37), the Court concludes that those alleged statements are not sufficient bases for an intrusion upon seclusion claim. Intrusion upon seclusion claims may be premised on "physical intrusion into a place in which the plaintiff has secluded himself," an invasion in the form of "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs," or "some other form of investigation or examination into [the plaintiff's] private concerns, [such] as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an

The Court further concludes that Plaintiffs have sufficiently alleged false light claims against Defendant Johnson.  First, the Court concludes that Plaintiffs have sufficiently alleged that Defendant Johnson published the alleged false statements.[45]  Next, as addressed in the Court's discussion of the false light claims asserted against Defendant TigerSwan, the second amended complaint specifically identifies several statements as false.[46]  The Court is unpersuaded by Defendant Johnson's argument that Plaintiffs have failed to establish that any alleged false statements were highly offensive to a reasonable person due to their involvement in a "contentious matter of public concern."  (Doc. No. 68 at 10.)  In the context a false light claim, a party must establish that "the false light in which the other was placed would be highly offensive to a reasonable person."  See Restatement (Second) of Torts § 652E.  Publicity is considered highly offense to a reasonable person where the plaintiff "would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity."  See id., comment c.  In other words, this requirement is fulfilled "when there is such a major

---

inspection of his personal documents."  See Restatement (Second) of Torts § 652B, comment b.  "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined."  Id.  Here, Plaintiffs have failed to allege any facts that indicate that the previously-referenced alleged false statements were derived from or contributed to any such intrusion, and the Court is unaware of any authority holding that such allegations are sufficient to state an intrusion upon seclusion claim.

[45] The second amended complaint asserts that Defendant Johnson operates the PA Progress Facebook page, where the alleged false statements were published (Doc. No. 60 ¶ 161), Defendant Johnson recruited the actor in the video at issue (id.), Defendant Johnson authored the blackbadgerreport.com article asserting several of the alleged false statement under his pseudonym (id. ¶ 151), and that blackbadgerreport.com is Defendant Johnson's project (id. ¶ 150).

[46] The second amended complaint alleges that "[p]osts on blackbadgerreport.com falsely claim that [Plaintiff] Elise Gerhart and her cohorts are fronts for the Russian government to disrupt domestic energy markets, and that she has appeared on Russian TV" (id. ¶ 148), that a link to that article was posted on the PA Progress Facebook page (id. ¶ 164), and that a video published on the PA Progress Facebook page falsely attributes a Facebook post to the Gerharts and "misrepresents the post as a call to violent action" (id. ¶ 159 n.9).

misrepresentation of his character, history, activities[,] or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." See id. Here, the alleged false statements assert that Plaintiff Elise Gerhart is a "front[] for the Russian government to disrupt domestic energy markets" (Doc. No. 60 ¶ 148) and attribute calls for "overthrowing President Trump, sabotaging pipelines[,] and destroying buildings in large city centers" to the Gerharts (id. ¶ 159). The Court concludes that many would consider such conduct reprehensible and finds that a reasonable jury could plausibly conclude that such characterizations would be highly offensive to a reasonable person. See, e.g., Thomas v. Univ. of Pittsburgh, No. 13-cv-514, 2014 WL 3055361, at *10 (W.D. Pa. July 3, 2014) (rejecting the defendants' argument that the statements at issue were not sufficiently offensive for a false light claim upon concluding that the statements, which asserted that the plaintiff "was suspended and dismissed from the [university] basketball team for 'violating team rules,'" were "susceptible to inferences that [the p]laintiff committed a grievous violation"); Mzamane v. Winfrey, 693 F. Supp. 2d 442, 511 (E.D. Pa. 2010) (denying summary judgment for a false light claim because the "implication that [the p]laintiff would condone physical and/or sexual abuse of students under her supervision could be deemed highly offensive"). Finally, as noted supra, a lack of legitimate public concern is not an element of a false light claim. See Krajewski, 53 A.3d at 806 n.4 ("In this writing, we expressly disavow any suggestion that a lack of 'legitimate public concern' should be an element of a section 652E claim for false light invasion of privacy."). Accordingly, the Court will deny Defendant Johnson's motion to dismiss as to Plaintiffs' invasion of privacy claims to the extent those claims are premised on a false light theory.

   **C.      Leave to Amend**

In civil rights cases, district courts must generally <u>sua</u> <u>sponte</u> extend to plaintiffs an opportunity to amend the complaint before dismissal. <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007). However, a district court may deny curative amendment on grounds of bad faith, undue delay, prejudice, or futility. <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Based on the foregoing, the Court will grant Plaintiffs leave to amend their second amended complaint. Plaintiffs may, if they choose, file a third amended complaint within thirty (30) days of the date of the accompanying Order. Plaintiffs should only reassert claims, however, if they cure the associated pleading deficiencies addressed in this Memorandum. The Court notes that it is unlikely, barring exceptional circumstances, to grant further amendment beyond a third amended complaint.

**IV.  CONCLUSION**

Based on the foregoing, the Court will grant in part and deny in part Defendants' motions to dismiss. An Order consistent with this Memorandum follows.