# EXHIBIT A

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION-IN REM

IN RE: CONDEMNATION BY SUNOCO     :     Docket No.
PIPELINE L.P. OF PERMANENT AND    :
TEMPORARY RIGHTS OF WAY FOR       :     2015-0972
THE TRANSPORTATION OF             :
ETHANE, PROPANE, LIQUID           :
PETROLEUM GAS, AND OTHER          :     EMINENT DOMAIN – IN REM
PETROLEUM PRODUCTS IN THE         :
TOWNSHIP OF UNION, HUNTINGDON     :
COUNTY, PENNSYLVANIA, OVER THE    :
LANDS OF STEPHEN GERHART AND      :
ELLEN S. GERHART                  :

*The Original of the Document has been filed in the Office of the Prothonotary/Clerk of Court on JUL 2 1 2015*

## NOTICE TO CONDEMNEES

**TO: CONDEMNEES STEPHEN GERHART AND ELLEN S. GERHART**

In accordance with Section 305 of the Eminent Domain Code, 26 Pa.C.S. § 305, Sunoco

Pipeline L.P. notifies you that:

1.      The Condemnor is Sunoco Pipeline L.P. ("Sunoco Pipeline").

2.      The Condemnor's office address is:

Sunoco Pipeline L.P.
525 Fritztown Road
Sinking Spring, Pennsylvania 19608

3.      A Declaration of Taking, a copy of which is attached hereto as Exhibit "A," was

filed on July 21, 2015, in the Court of Common Pleas of Huntingdon County to the above docket

number.

4.      Sunoco Pipeline is exercising its power of eminent domain pursuant to Section

1511 of Title 15 of the Pennsylvania Consolidated Statutes, which states that:

(a)      General Rule. -- **A public utility corporation shall,** in addition to any
other power of eminent domain conferred by any other statute, **have the
right to take, occupy and condemn property for one or more of the**

**following principal purposes** and ancillary purposes reasonably
necessary or appropriate for the accomplishment of the principal purposes:

> (2)     **The transportation of** artificial or natural gas, electricity,
> **petroleum or petroleum products** or water or any combination of
> such substances for the public.

15 Pa.C.S. § 1511(a)(2)(emphasis added).

5.     The Declaration of Taking is made and authorized by virtue of the Resolution,
and duly adopted by the Condemnor on June 8, 2015  The record and the original Resolution
may be examined at the Condemnor's offices, located at 1818 Market Street, Suite 1500,
Philadelphia, Pennsylvania 19103.  A copy of the Resolution is attached as Exhibit I to the
Declaration of Taking (Exhibit A hereto) and incorporated herein by reference.

6.     A portion of your property has been condemned for the purpose of acquiring
permanent and temporary easements necessary to construct, install, maintain, operate, repair,
inspect, alter, protect, change the size of, relocate, replace in whole or in part, remove, and
abandon two (2) pipelines and other appurtenant facilities including, but not limited to, above-
ground markers, test stations and cathodic protection equipment for the purpose of transporting
petroleum and petroleum products including but not limited to ethane, propane, and liquid
petroleum gas in, over, through, across, under, and along the lands owned by Condemnees as
shown on the plan attached hereto as Exhibit H to the Declaration of Taking, located at 15357
Trough Creek Valley Pike, Union Township, Huntingdon County, Pennsylvania 16652.

7.     The purpose of the within condemnation is to construct, install, maintain, operate,
repair, inspect, alter, protect, change the size of, relocate, replace in whole or in part, remove,
and abandon two (2) pipelines and other appurtenant facilities including, but not limited to,
above-ground markers, test stations and cathodic protection equipment for the purpose of

2

transporting petroleum and petroleum products including but not limited to ethane, propane, and liquid petroleum gas in, over, through, across, under, and along the lands owned by Condemnees. *See* 15 Pa.C.S. § 1511.

8.      A description identifying and specifying the location of the property hereby condemned is attached as Exhibit H to the Declaration of Taking (Exhibit A hereto).

9       Plans showing the property hereby condemned may be inspected in the Office of the Recorder of Deeds of the aforesaid County. On the same day as this Declaration of Taking was filed with the Prothonotary, plans showing the property condemned were lodged of record in the Office of the Recorder of Deeds in and for Huntingdon County in accordance with Section 304 of the Eminent Domain Code.

10.     The nature of the title acquired hereby is a permanent easement and a temporary construction easement.

11.     The names of the reputed record owners of the condemned property are Stephen Gerhart and Ellen S. Gerhart.

12.     The payment of just compensation in this matter is secured by a Bond that was filed with the Prothonotary on the date the Declaration of Taking was filed of record.

13.     If you wish to challenge the power or right of Sunoco Pipeline to appropriate the condemned property, the sufficiency of the security, the procedure followed by the Condemnor or the Declaration of Taking, you are required to file preliminary objections within thirty (30) days after being served with this notice.

McNEES WALLACE & NURICK LLC

By: _____

Stephanie Carfley
Pa. I.D. No. 79136
Kandice Kerwin Hull
Pa. I.D. No. 86345
Dana W. Chilson
Pa. I.D. No. 208718
100 Pine Street, P.O. Box 1166
Harrisburg, PA  17108
(717) 232-8000

*Counsel for Condemnor Sunoco Pipeline L.P.*

Dated:  July 21, 2015

Exhibit A

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION-IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO | : | Docket No. *2015-972* |
| PIPELINE L.P. OF PERMANENT AND | : | |
| TEMPORARY RIGHTS OF WAY FOR | : | |
| THE TRANSPORTATION OF | : | |
| ETHANE, PROPANE, LIQUID | : | |
| PETROLEUM GAS, AND OTHER | : | EMINENT DOMAIN – IN REM |
| PETROLEUM PRODUCTS IN THE | : | |
| TOWNSHIP OF UNION, HUNTINGDON | : | |
| COUNTY, PENNSYLVANIA, OVER THE | : | |
| LANDS OF STEPHEN GERHART AND | : | |
| ELLEN S. GERHART | : | |

## DECLARATION OF TAKING

Condemnor Sunoco Pipeline L.P., by and through its undersigned counsel, submits this

Declaration of Taking based on the provisions of Chapter 3, Section 302 of the Eminent Domain

Code, Act of May 4, 2006, P.L. 112, No. 34 §1, 26 Pa.C.S. § 302, as amended, and

Pennsylvania's Business Corporation Law ("BCL"), 15 Pa.C.S. § 1511.

1.      Condemnor Sunoco Pipeline L.P. ("Sunoco Pipeline") is a limited partnership

organized and existing under the laws of the State of Texas and registered to do business in the

Commonwealth of Pennsylvania.

2.      Sunoco Pipeline has an office at 525 Fritztown Road, Sinking Spring,

Pennsylvania 19608.

3.      Sunoco Pipeline was formed in 2001 as part of the restructuring of some

subsidiaries of Sunoco, Inc.

**A. SUNOCO PIPELINE'S REGULATION AS A PUBLIC UTILITY**

4.      Since 2002, Sunoco Pipeline has been a public utility corporation regulated by the

Pennsylvania Public Utility Commission (the "Commission" or "PUC"), providing petroleum

The Original of the Document has
been filed in the Office of the
Prothonotary/Clerk of Court on

JUL 2 1 2015

products and refined petroleum products pipeline transportation service within Pennsylvania, subject to the Commission's oversight and jurisdiction.

5.      As described more fully herein, the Commission has reaffirmed in three final PUC Orders in 2014 and two final PUC Orders in 2015 that Sunoco Pipeline is a public utility subject to regulation as a public utility by the PUC.  Additionally, the PUC has recognized that the service that is the subject of this action, the Mariner East service, is a public utility service. Specifically, as will be outlined in more detail below the:

    (1) PUC July 24, 2014 Final 703(g) Order;
    (2) August 21, 2014 Mariner East Tariff;
    (3) PUC August 21, 2014 Final CPC Order;
    (4) PUC January 15, 2015 Sunoco Pipeline Mariner East Tariff; and
    (5) PUC March 26, 2015 Sunoco Pipeline Mariner East Tariff,

establish, *a fortiori*, that the PUC has regulated and continues to regulate Sunoco Pipeline as a public utility for the Mariner East service and, consequently, Sunoco Pipeline is a "public utility corporation" for purposes of exercising eminent domain under the Business Corporation Law ("BCL") and the Eminent Domain Code.

6.      In 2002, the PUC approved the transfer of the assets (including an integrated pipeline system) and the merger of Sun Pipe Line Company's and Atlantic Pipeline Corporation to Sunoco Pipeline.

7.      Included with the PUC's approval was a Certificate of Public Convenience ("CPC") providing the right of Sunoco Pipeline to transport petroleum products and refined petroleum products in the former service territory of Sun Pipe Line and Atlantic Pipeline Corporation.  Attached hereto as Exhibit A is the 2002 CPC.

2

8.      In 2012, Sunoco Pipeline announced the "Mariner East" project with the stated intent of transporting petroleum products such as propane, ethane, and butane within the territories set forth in the 2002 CPC. The Mariner East project is designed to relieve oversupply of natural gas liquids in the Marcellus and Utica Shale basins and to alleviate supply-side shortages of propane in Pennsylvania and the Northeast United States.

9.      While the first phase of the Mariner East project ("Mariner East 1") initially prioritized the *interstate* pipeline transportation service of propane and ethane from the Marcellus and Utica basins, eastward to the Marcus Hook Industrial Complex, located in both Delaware County, Pennsylvania and Claymont, Delaware, Sunoco Pipeline's business plan for the Mariner East project as a whole always contemplated *intrastate* transportation of propane for delivery to customers in Pennsylvania.

10.      During and following the 2013-2014 winter season, Sunoco Pipeline experienced a significant increase in shipper demand for *intrastate* shipments of propane due to an increase in local consumer demand for propane. These changes in market conditions were due to propane shortages caused by harsh winter conditions and a deficit of pipeline infrastructure. The resulting price spikes and shortages prompted unprecedented emergency measures from both the state and federal governments. In reaction to the unfolding market conditions and shipper interest, Sunoco Pipeline accelerated its business plans to provide *intrastate* shipments of propane within the Commonwealth, in addition to interstate shipments of propane and ethane.

11.      Because the *intrastate* service provided by Sunoco Pipeline is subject to PUC oversight and regulation, Sunoco Pipeline initiated several proceedings with the PUC.

3

12.     On May 21, 2014, Sunoco Pipeline filed with the PUC an application pursuant to Section 703(g) of the Public Utility Code, 66 Pa.C.S. § 703(g), to clarify a prior Commission Order (issued August 29, 2013) that granted Sunoco Pipeline the authority to suspend and abandon its provision of east-to-west gasoline and distillate service (and the corresponding tariffs) in certain territories along its pipeline in order to enable the west-to-east Mariner East service of natural gas liquids in those territories.[1]

13.     On July 24, 2014, the PUC issued an Opinion and Order, which is now final, granting Sunoco Pipeline's Application (the "PUC July 24, 2014 Final 703(g) Order") and reaffirming Sunoco Pipeline's authority under its existing CPCs to transport petroleum products and refined petroleum products, including propane, between Delmont, Westmoreland County, Pennsylvania and Twin Oaks, Delaware County, Pennsylvania.

14.     In issuing the July 24, 2014 Final 703(g) Order, the Commission specifically noted that Sunoco Pipeline had retained its authority under its 2002 CPC to provide petroleum products and refined petroleum products transportation service between Delmont and Twin Oaks, Pennsylvania, notwithstanding its suspension and abandonment of gasoline and distillate service.  A true and correct copy of the PUC July 24, 2014 Final 703(g) Order is attached hereto as Exhibit B.

15.     The PUC July 24, 2014 Final 703(g) Order additionally recognized that:

        a.  The factual circumstances surrounding the Mariner East project have changed since August 2013 in that Sunoco Pipeline now intends to provide intrastate

---

[1] Because it is a public utility, Sunoco Pipeline must apply to, and get the approval of, the PUC in the event it wishes to discontinue, suspend, or abandon any part of its public utility service.

transportation service of propane in response to developing market conditions and increased shipper interest in securing intrastate pipeline service facilities;

b.  The definition of "petroleum products" is interpreted broadly to encompass propane; and

c.  The proposed provision of intrastate propane service will result in numerous public benefits by, inter alia, allowing Sunoco Pipeline "to immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter season."

*See* Exhibit B at pp. 8-9.

16.     Consistent with the PUC July 24, 2014 Final 703(g) Order, Sunoco Pipeline filed Tariff Pipeline Pa. P.U.C. No. 16 on June 11, 2014, to be effective on October 1, 2014.

17.     This tariff reflected the PUC-regulated pipeline transportation rate for the west-to-east intrastate movement of propane from Mechanicsburg, Pennsylvania to Twin Oaks, Pennsylvania.

18.     By final Order dated August 21, 2014, in Docket No. R-2014-2426158 (August 21, 2014 Tariff) the Commission permitted the tariff to become effective on October 1, 2014. A true and correct copy of the August 21, 2014 Tariff is attached hereto as Exhibit C.

19.     Only a public utility regulated by the PUC has the ability to apply to the PUC for the authority to file a tariff.

20.     Section 1302 of the Public Utility Code states that "every *public utility* shall file with the Commission...tariffs showing rates established by it and collected or enforced, *within the jurisdiction of the Commission*." 66 Pa. C.S § 1302 (emphasis added). As such, a tariff, by definition, constitutes direct regulation by the PUC of a public utility, in this case, Sunoco Pipeline with respect to the Mariner East service. Stated differently, a PUC tariff is the very

5

essence of and indicia of being a public utility rendering public utility service regulated by the PUC.

21.     By virtue of Sunoco Pipeline's existing CPCs, the Commission recognized and authorized Sunoco Pipeline as a public utility to transport as a public utility service petroleum and refined petroleum products bi-directionally in, *inter alia*, the following counties in Pennsylvania in which the Mariner East project is situated:  Allegheny, Westmoreland, Indiana, Cambria, Blair, Huntingdon, Juniata, Perry, Cumberland, York, Dauphin, Lebanon, Lancaster, Berks, Chester, and Delaware Counties.

22.     Sunoco Pipeline's service territory did not originally include Washington County, to the south of Pittsburgh, because Sunoco Pipeline did not maintain facilities in that county and had not applied for authority in that county.  However, because the Mariner East service would originate in Washington County, on June 6, 2014, Sunoco Pipeline filed an application to expand its service territory into Washington County.

23.     By Order dated August 21, 2014, which is now final, the PUC granted Sunoco Pipeline's application and authorized the provision of *intrastate* petroleum and refined petroleum products pipeline transportation service in Washington County, thereby expanding the service territory in which Sunoco Pipeline is authorized to provide its *intrastate* Mariner East service.  A true and correct copy of the August 21, 2014 Order (the "PUC August 21, 2014 Final CPC Order") is attached hereto as Exhibit D.  In so doing, the Commission expressly recognized that the service proposed in the application is in the public interest, stating:

> [W]e believe that approval of this Application is necessary and proper for the service, accommodation, and convenience of the public.  We believe granting Sunoco authority to commence intrastate transportation of propane in Washington County will enhance delivery options for the transport of natural gas and natural

6

gas liquids in Pennsylvania. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, ensuring that Pennsylvania's citizens enjoy access to propane heating fuel. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

*See* Exhibit D at p. 4.

24.     A CPC constitutes the PUC's declaration that the entity to which it is issued is a public utility, is rendering a public utility service, and is regulated by the PUC.

25.     CPC's are only granted by the PUC to public utilities for public utility service.

26.     Section 1101 of the Public Utility Code states that, "[u]pon application of any proposed public utility and the approval of such application by the commission evidenced by its [CPC],...it shall be lawful for any such proposed public utility to begin to offer, render, furnish, or supply service within this Commonwealth." 66 Pa. C.S. § 1101.

27.     Section 1102 of the Public Utility Code further provides that, "[u]pon the application of any public utility and the approval of such application by the [PUC], evidenced by its [CPC] first had and obtained, and upon compliance with existing laws, it shall be lawful for...[that] public utility [to offer service] to a different territory...." 66 P. C.S. § 1102.

28.     That, in fact, is exactly the case with respect to the CPC applied for and granted for the Mariner East service in Washington County. Sunoco Pipeline, an existing public utility, applied for a CPC to expand its public utility service territory, and the PUC by Order entered on August 21, 2014 expressly authorized Sunoco Pipeline to "offer, render, furnish, or supply intrastate petroleum and refined petroleum products pipeline service to the public in Washington

7

County" for Mariner East Service. *See* Exhibit D at p. 5. Under the Public Utility Code, only an entity that provides public utility service may be granted a CPC by the PUC.[2]

29.     On November 6, 2014, Sunoco Pipeline filed Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 (Supplement No. 2) to become effective January 5, 2015.

30.     Supplement No. 2 proposed to add the new origin point of Houston, Washington County, Pennsylvania for west-to-east intrastate movement of propane (*i.e.* through Huntingdon County), consistent with the CPC's described above.

31.     On December 18, 2014, Sunoco Pipeline filed Supplement No. 4 voluntarily postponing the effective date to January 16, 2015.

32.     By Order entered on January 15, 2015 in Docket No. R-2014-2452684, ("PUC January 15, 2015 Tariff") the Commission again acknowledged and reaffirmed Sunoco Pipeline's status as a public utility corporation by permitting Supplement No. 2 to become effective on January 16, 2015.[3] A true and a correct copy of the PUC January 15, 2015 Tariff is attached hereto as Exhibit E.

33.     By Order entered on March 26, 2015, the Commission permitted Tariff Pipeline Supplement No. 5 Pa P.U.C. 16 to become effective March 30, 2015, for shipment from

---

[2] The Code further provides that, "A certificate of public convenience shall be granted by order of the [PUC], only if the [PUC] shall find or determine that the granting of such certificate is necessary or proper for the service..." 66 Pa. C.S. § 1103. Thus, the granting of multiple CPC's to Sunoco Pipeline, in addition to the filing and approval of Sunoco Pipeline's multiple tariffs and tariff supplements for the Mariner East service, establish that the PUC found that Sunoco Pipeline is a public utility and that the service is a public utility service.

[3] Under sections 1303 and 1304 of the Public Utility Code, 66 Pa.C.S.A. §§ 1303 and 1304, the filed tariff is lawfully binding on the public and Sunoco Pipeline, and Sunoco Pipeline is legally obligated, as a public utility, to offer the public utility service at the rates specified in the tariff.

Delmont, Westmoreland County, to Twin Oaks, Delaware County.  A true and correct copy of the March 26, 2015 Tariff Order is attached hereto as Exhibit F.

34.     Accordingly, as set forth at length above, per the:

(1) PUC July 24, 2014 Final 703(g) Order;
(2) August 21, 2014 Mariner East Tariff;
(3) PUC August 21, 2014 Final CPC Order;
(4) PUC January 15, 2015 Sunoco Pipeline Mariner East Tariff; and
(5) PUC March 26, 2015 Sunoco Pipeline Mariner East Tariff,

Sunoco Pipeline is regulated as a public utility by the PUC and is a public utility corporation, and the Mariner East service is a public utility service rendered by Sunoco Pipeline within the meaning of the BCL.

35.     Further evidence of Sunoco Pipeline's public utility status is found in the fact that Sunoco Pipeline is obligated to pay the Pennsylvania Public Utility Realty Tax Assessment and the annual Pennsylvania Public Utility Gross Receipts Tax.

36.     Sunoco Pipeline is also exempt from registration required under the Gas and Hazardous Liquids Pipelines Act ("Act 127") due to its public utility status.  Act 127 provides that "a pipeline operator shall register with the commission." 58 P.S. § 801.301.  However, Act 127 specifically defines a "pipeline operator" to exclude public utilities.  58 P.S. § 801.102.  Each of these are further indicia that Sunoco Pipeline is, and has been, regulated as a public utility in Pennsylvania.

**B.     THE MARINER EAST PROJECT.**

37.     The first phase of the Mariner East Project, known as "Mariner East 1," has been constructed and is providing valuable services to the public.

9

38.     Sunoco Pipeline, in support of its objective of efficiently providing ethane, propane, and other petroleum product transportation services to its customers and consumers, has begun work on the second phase of the Mariner East Project, known as "Mariner East 2."

39.     Plans for this second phase of the Mariner East Project include the placement of two (2) pipelines adjacent to one another, and separated by a distance of approximately five (5) feet, over the portion of the Mariner East line which runs from Delmont, Pennsylvania to the Marcus Hook Industrial Complex, and the placement of a single line over the portion of the Mariner East line which runs between Delmont, Pennsylvania and the West Virginia border.

40.     In its August 21, 2014 Order granting Sunoco Pipeline's application for a CPC for Washington County, the PUC expressly recognized that the Mariner East Project might include this second phase. The PUC stated:

> Subject to continued shipper interest, Sunoco intends to undertake a second phase of the Mariner East project, which will expand the capacity of the project by constructing: (1) a 16 inch or larger pipeline paralleling its existing pipeline from Houston, PA to the Marcus Hook Industrial Complex and along much of the same route, and (2) a new 15 miles of pipeline from Houston, PA to a point near the Pennsylvania-Ohio boundary line. This second phase, sometimes referred to as "Mariner East 2", will increase the take-away capacity of natural gas liquids from the Marcellus Shale and will enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both intrastate and interstate propane shipments.

*See* Exhibit D at pp. 2-3. Sunoco Pipeline's CPC for Washington County thus acknowledges all phases of Mariner East service.[4]

---

[4] In an Opinion and Order dated October 29, 2014 granting Sunoco Pipeline's Exceptions to an Initial Decision, consistent with its prior decisions, the Commission noted that "Sunoco is certificated in Pennsylvania as a public utility to transport petroleum and refined petroleum products, including propane, from Delmont, Pennsylvania to Twin Oaks, Pennsylvania" and further that its "certificated authority is not limited to a specific pipe or set of pipes, but rather, includes both the upgrading of current facilities and the expansion of existing capacity as needed for the provision of the authorized service within the certificated territory." *See* October 29,

10

41.     The Mariner East Project is one of the largest investments in the history of the Commonwealth. The project is expected to result in a potential $4.2 billion economic impact on Pennsylvania, creating more than 30,100 jobs during the construction period, with job earnings of $1.9 billion.  (*See* http://marcelluscoalition.org/2015/02/new-study-highlights-shales-significant-impact-for-pa-s-economy/).

42.     With the exception of some of the valves, Mariner East 2 will be routed below ground level, with most of it paralleling and within the existing right of way of the Mariner East 1 pipeline.

43.     Part of Mariner East 2 will be located in Huntingdon County, Pennsylvania, which is within the geographic scope of the Certificates of Public Convenience issued by the PUC to Sunoco Pipeline.

## C.     SUNOCO PIPELINE'S POWER OF EMINENT DOMAIN

44.     Section 1511(a)(2) of the BCL specifies that:

(a)     General Rule. -- **A public utility corporation shall,** in addition to any other power of eminent domain conferred by any other statute, **have the right to take, occupy and condemn property for one or more of the following principal purposes** and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes:

(2)     **The transportation of** artificial or natural gas, electricity, **petroleum or petroleum products** or water or any combination of such substances for the public.

*See* 15 Pa. CSA § 1511(a)(2) (emphasis added).

45.     A "public utility corporation" is defined in Section 1103 of the BCL as follows:

---

2014 Order, pp. 36, 39.  A true and correct copy of the October 29, 2014 Order is attached hereto as Exhibit G.  Accordingly, Sunoco Pipeline's CPC's include the authority to provide the Mariner East 2 service, which service is merely an expansion of the Mariner East 1 service.

11

> "Public utility corporation." Any domestic or foreign corporation for profit that: (1) Is subject to regulation as a public utility by the Pennsylvania Public Utility Commission or an officer or agency of the United States;....

*See* 15 Pa. CSA § 1103, Definitions.

46.     As set forth at length above, Sunoco Pipeline clearly is regulated as a public utility by the PUC.  As such, Sunoco Pipeline is a "public utility corporation" as that term is defined by the BCL.[5]

47.     Additionally, the definition of "petroleum products" is interpreted broadly to encompass propane and ethane, the products which Mariner East 2 will transport.

48.     Indeed, in its October 29, 2014 decision, the PUC specifically stated that:

> The product to be shipped by Sunoco – 'petroleum products – is a broad term that includes both propane and ethane.  While gasoline and fuel oil were the original products that were shipped in the pipelines until 2013, there is no restriction in any approved Certificate limiting Sunoco's services to these particular products.  In *Petition of Granger Energy of Honey Brook, LLC*, Docket No. P-00032043 (Order entered August 19, 2004), at 9, we gave the undefined term 'petroleum products,' as used in Section 102 of the Code, a broad meaning as a 'catch all phrase' to include what would otherwise be an exhaustive list of products.  Similarly **we specifically held in the *Amendment Order* that propane is a petroleum product.  While ethane is not expressly identified in 49 C.F.R. § 192.3, it also fits within the definition of 'petroleum gas.'  Under 49 C.F.R. § 195.2, NGLs are encompassed under the terms 'petroleum' and 'petroleum product.'** The U.S. Energy Information Administration's definition of NGLs includes ethane and propane, which, in turn, is included in the definition of 'petroleum and other liquids.'  In light of the above, we presumptively conclude that Sunoco's existing Certificate encompasses the movement of ethane and propane.

---

[5] It is beyond dispute that the term "Public utility corporation" is not limited strictly to corporations, but also includes partnerships and limited liability companies. *See* 18 Pa.C.S. § 8102(a)(2) ("A domestic or foreign partnership or limited liability company may exercise any right, power, franchise or privilege that a domestic or foreign corporation engaged in the same line of business might exercise under the laws of this Commonwealth, including powers conferred by section 1511 (relating to additional powers of certain public utility corporations) or other provisions of law granting the right to a duly authorized corporation to take or occupy property and make compensation therefor").

*See* Exhibit G, Oct. 29, 2014 Order, pp. 37-38, footnotes omitted (emphasis added).

49.     Accordingly, and by virtue of its status and authority as a Pennsylvania-regulated public utility with Certificates of Public Convenience issued and tariffs approved by the PUC, Sunoco Pipeline has the power to condemn property in connection with Mariner East 2 under Section 1511(a)(2) of the BCL.

D.     **THE EASEMENT**

50.     An easement is necessary for the construction, operation, and maintenance of Mariner East 2, which will be located over, in part, and upon certain lands in the Township of Union, Huntingdon County, Pennsylvania (the "Property") owned by Stephen Gerhart and Ellen S. Gerhart (together, "Condemnees"), who acquired the Property via deed dated August 20, 1996, which was filed in the Recorder's Office of Huntingdon County at Deed Book Volume 417, Page 449.

51.     The Property is also known as 15357 Trough Creek Valley Pike, Union Township, Huntingdon County, Pennsylvania 16652, and has Tax Parcel I.D. No. 50-13-02.

52.     The easements across the Property acquired by Sunoco Pipeline are:  1) a permanent easement of 1.72 acres; 2) temporary workspace easement of 0.58 acres; and 3) additional temporary workspace of 0.86 acres.  Sunoco Pipeline intends to install both lines consecutively on the Property, within the proposed permanent easement area.

53.     The parties' rights in relation to the easement acquired by Sunoco Pipeline over the Property are set forth in the document "Right-Of-Way Easement Acquired by Condemnation," attached hereto as Exhibit H.

13

54.     The survey describing the route of Sunoco Pipeline's easement across the Property is attached as Exhibit 1 to the Right-Of-Way Easement Acquired by Condemnation.

55.     Plans showing the property hereby condemned may be inspected in the Office of the Recorder of Deeds of the aforesaid County.  On the same day as this Declaration of Taking is filed with the Prothonotary, plans showing the property condemned are being lodged of record in the Office of the Recorder of Deeds in and for Huntingdon County in accordance with Section 304 of the Eminent Domain Code.

56.     Sunoco Pipeline has been unable to reach an agreement with Condemnees concerning acquisition of the easement for Mariner East 2.  Therefore, by virtue of the power of eminent domain as provided by law, and the corporate resolution of Sunoco Pipeline dated June 8, 2015 Sunoco Pipeline has determined to condemn and appropriate an easement over and upon the Property for the purpose of constructing, operating, and maintaining Mariner East 2 for the transportation of ethane, propane, liquid petroleum gas, and other petroleum products, with Sunoco Pipeline, its successors and assigns, having the right to enter onto the easement as may be necessary for these purposes.  The record of the corporate resolution may be examined at Sunoco Pipeline's principal office located at 1818 Market Street, Suite 1500, Philadelphia, Pennsylvania 19103.  A true and correct copy of the corporate resolution is attached hereto as Exhibit I.[6]

57.     Sunoco Pipeline's bond in the amount of $6,000.00 with Westchester Fire Insurance Company ("Surety"), as surety, which is conditioned for the payment of all damages

---

[6] To protect the anonymity of the other landowners along the Mariner East 2  route, Exhibit I contains only the plat pertaining to the Property owned by Condemnees.

14

arising from the appropriation of Sunoco Pipeline's interest in the Property (the "Bond"), and by which just compensation is secured, is attached hereto as Exhibit J.

58.     The Surety has complied with all requirements for sureties set by law or rule of court.

59.     The Bond furnishes ample security for all damages that may be sustained by reason of the taking of the proposed easement(s) for the construction of Mariner East 2.

WHEREFORE, easements are hereby condemned from the property identified in the description attached hereto as Exhibit H and as indicated on the plans referenced in paragraph 55, above.

McNEES WALLACE & NURICK LLC

By: _____
        Stephanie Carfley
        Pa. I.D. No. 79136
        Kandice Kerwin Hull
        Pa. I.D. No. 86345
        Dana W. Chilson
        Pa. I.D. No. 208718
        100 Pine Street, P.O. Box 1166
        Harrisburg, PA  17108
        (717) 232-8000

*Counsel for Condemnor Sunoco Pipeline L.P.*

Dated:  July 21, 2015

15

Exhibit A

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF:   A-140001

Joint Application of Sunoco Pipeline L.P., Sun Pipe Line Company and of Atlantic Pipeline Corp., for approval of the transfer of assets and merger of Sun Pipe Line Company and of Atlantic Pipeline Corp., into Sunoco Pipeline L.P.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 26th day of February 2002.

James J. McNulty
Secretary

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF:   A-140400F2000

Application of Sun Pipe Line Company for approval of the right to abandon service within their certificated territories.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this   CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 26th day of February 2002.

James J. McNulty
Secretary

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF:   A-140075F2000

Application of Atlantic Pipeline Corporation for approval of the right to abandon service within their certificated territories.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 26th day of February 2002.

James J. McNulty

Secretary





# COMMONWEALTH OF PENNSYLVANIA
## PENNSYLVANIA PUBLIC UTILITY COMMISSION
### P.O. BOX 3265, HARRISBURG, PA 17105-3265

May 2, 2002

IN REPLY PLEASE
REFER TO OUR FILE

A-140001, A-140400F2000, A-140075F2000

THOMAS T NIESEN ESQUIRE
THOMAS THOMAS ARMSTRONG & NIESEN
212 LOCUST STREET SUITE 500
PO BOX 9500
HARRISBURG PA 17108-9500

DOCKET

MAY 22 2002

Joint Applications of Sunoco Pipeline L.P., Sun Pipe Line Company
and Atlantic PipeLine Company

DOCUMENT
FOLDER

To Whom It May Concern:

Under date of January 14, 2002 we served you with a
Certificates of Public Convenience in the above entitled proceeding
and dated January 10, 2002. At your request, we are correcting the
dates to February 26, 2002.

Enclosed are corrected Certificates of Public
Convenience. Please discard the original certificates previously
sent to you.

Very truly yours,

James J. McNulty
James J. McNulty
Secretary

JEP

Enclosures

**PENNSYLVANIA**
**PUBLIC UTILITY COMMISSION**
**Harrisburg, PA. 17105-3265**

Public Meeting held January 10, 2002

Commissioners Present:

Glen R. Thomas, Chairman
Robert K. Bloom, Vice Chairman
Aaron Wilson, Jr.
Terrance J. Fitzpatrick

Joint application of Sunoco Pipeline L.P., Sun
Pipe Line Company and of Atlantic Pipeline
Corp. for approval of the transfer of assets and
merger of Sun Pipe Line Company and Atlantic
Pipeline Corp. to Sunoco Pipeline L.P. for the
right of Sunoco Pipeline L.P. to transport
petroleum products in the former service territory
of Sun Pipe Line Company and Atlantic Pipeline
Corp. and for the abandonment of services by
Sun Pipe Line Company and Atlantic Pipeline
Corp.

Docket No:  A-140001
A-140400 F2000
A-140075 F2000



JAN 28 2002

**CORRECTED ORDER**

**BY THE COMMISSION:**

On December 11, 2001, Sunoco Pipeline L.P. (Sunoco), Sun Pipe Line
Company (Sun) and Atlantic Pipeline Corp. (Atlantic), filed the above-captioned
joint application pursuant to Chapter 11 of the Pennsylvania Public Utility Code,
66 Pa C. S. §§1101, *et seq.*, requesting approval of the transfer of assets and the
merger of Sun and Atlantic to Sunoco, for the right of Sunoco to transport
petroleum products in the former service territory of Sun and Atlantic and for the
abandonment of services by Sun and Atlantic.  The proposed merger and transfer



of assets herein affects 18 existing Pennsylvania customers of both Sun and Atlantic.

Copies of the instant joint application were served upon the 18 customers, Office of Consumer Advocate and Office of Small Business Advocate. Further notice was not required. No protests were filed.

Under the transfer of assets and merger, Sunoco will take control of both Sun and Atlantic. The joint applicants aver that the proposed transfer of assets and merger will contribute to operational efficiencies and administrative and regulatory efficiencies that will ultimately benefit the Pennsylvania customers of both Sun and Atlantic. These advantages ensure that the proposed transfer of assets and merger provides an affirmative public benefit and satisfies the standard set by *City of York v. Pa. P.U.C.*, 449 Pa. 136, 295, A.2d 825 (1972).

Sunoco proposes to adopt the Sun and Atlantic tariffs on file with this Commission; thus all of the services currently provided by Sun and Atlantic will be provided by Sunoco at the same rates, terms and conditions as Sun and Atlantic. The joint applicants aver that the proposed asset transfer will be transparent to Sun and Atlantic's existing customers and those customers will continue to receive the same quality of service as they are currently receiving.

The Commission has examined this joint application and has determined that the proposed transfer of assets, merger and abandonments are necessary or proper for the service, accommodation, convenience, or safety of the public, and

2



that the joint application is in the public interest and should be approved; **THEREFORE,**

**IT IS ORDERED:**

1. That the joint application of Sunoco Pipeline L.P., Sun Pipe Line Company and Atlantic Pipeline Corp. for approval of the transactions associated with the transfer of assets and merger to Sunoco Pipeline L.P. be approved, and that certificates of public convenience be issued evidencing such approval.

2. That the joint application for approval of the right of Sunoco Pipeline L.P. to transport petroleum products in the former service territory of Sun Pipe Line Company and Atlantic Pipeline Corp. is hereby approved.

3. That the joint application for approval of the abandonment of services by Sun Pipe Line Company and Atlantic Pipeline Corp. is hereby approved.

4. That within 15 days following consummation of the transfer of assets and merger as described in Ordering Paragraph No. 1, above, Sunoco Pipeline L.P. file a tariff adopting the tariffs of Sun and Atlantic.

5. That upon the receipt of the tariffs as required by Ordering Paragraph No. 4, above, certificates of public convenience be issued evidencing the approvals granted in Ordering Paragraph Nos. 1, 2, and 3, above.

6. That if the applicants come to determine that the instant transaction will not occur, they shall promptly file with this Commission notice of such determination.

3



7. That a copy of this order be served on the Department of Revenue, Bureau of Corporation Taxes.

BY THE COMMISSION,

James J. McNulty
Secretary

(SEAL)

ORDER ADOPTED: January 10, 2002

ORDER ENTERED:  January 14, 2002

4

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OR A-140001

Joint Application of Sunoco Pipeline L.P., Sun Pipe Line Company and of Atlantic Pipe Line Corp., for approval of the transfer of assets and merger of Sun Pipe Line Company and of Atlantic Pipe Line Corp., into Sunoco Pipeline L.P.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 10th day of January 2002.

_James J. McNulty_

Secretary

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF: A-140400 F2000

Application of Sun Pipe Line Company for approval of the right to abandon service within their certificated territories.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 10th day of January 2002.

_James J. McNulty_

Secretary



# PENNSYLVANIA
## PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF: A-140075 F2/000

Application of Atlantic Pipeline Corporation for approval of the right to abandon service within their certificated territories.

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has, by its report and order made and entered, found and determined that the granting of the application is necessary or proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this CERTIFICATE OF PUBLIC CONVENIENCE evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION has caused these presents to be signed and sealed, and duly attested by its Secretary at its office in the city of Harrisburg this 10th day of January 2002.

_James J. McNulty_

Secretary

 



COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA PUBLIC UTILITY COMMISSION
P.O. BOX 3265, HARRISBURG, PA 17105-3265

IN REPLY PLEASE
REFER TO OUR FILE

JANUARY 14 2002

A-140007
A-140400 F2000
A-140075 F2000

JEFFREY W WAGNER CHF CNSL
SUN ATLANTIC &
SUNOCO PIPELINE COMPANIES
TEN PENN CTR
1801 MARKET STREET 17TH FLOOR
PHILADELPHIA PA  19103-1699



DOCKETED

JAN 25 2002

Joint application of jurisdictional utilities Sunoco Pipeline L.P., Sun Pipe Line Company and of Atlantic PipeLine Corp., for approval of the transfer of assets and merger of Sun Pipe Line Company and Atlantic PipeLine Corp., to Sunoco Pipeline L.P., and for the abandonment of services by Sun Pipe Line Company and Atlantic PipeLine Corp.

DOCUMENT
FOLDED

To Whom It May Concern:

This is to advise you that the Commission in Public Meeting on January 10, 2002 has adopted an Order in the above entitled proceeding.

An Order has been enclosed for your records.

Very truly yours,

James J. McNulty
Secretary

fg
encls
cert. mail

See Attached Listing for Additional Parties of Record

# PENNSYLVANIA
## PUBLIC UTILITY COMMISSION
### Harrisburg, PA. 17105-3265

Public Meeting held January 10, 2002

Commissioners Present:

Glen R. Thomas, Chairman
Robert K. Bloom, Vice Chairman
Aaron Wilson, Jr.
Terrance J. Fitzpatrick

Joint application of jurisdictional utilities Sunoco
Pipleline L.P., Sun Pipe Line Company and of
Atlantic PipeLine Corp. for approval of the
transfer of assets and merger of Sun Pipe Line
Company and Atlantic PipeLine Corp. to Sunoco
Pipeline L.P.and for the abandonment of services
by Sun Pipe Line Company and Atlantic PipeLine
Corp.

Docket No:  A-140001
A-140400 F2000
A-140075 F2000



JAN 25 2002



## ORDER

**BY THE COMMISSION:**

On December 11, 2001, jurisdictional utilities Sunoco Pipeline L.P.
(Sunoco), Sun Pipe Line Company (Sun) and Atlantic PipeLine Corp. (Atlantic),
filed the above-captioned joint application pursuant to Chapter 11 of the
Pennsylvania Public Utility Code, 66 Pa C. S. §§1101, et seq., requesting approval
of the transfer of assets and the merger of Sun and Atlantic to Sunoco and for the
abandonment of services by Sun and Atlantic.  Following the merger, Sunoco will
become the surviving jurisdictional utility.  Sunoco was granted a certificate of
public convenience at A-140111 authorizing it to transport refined petroleum

products in Pennsylvania. The proposed merger and transfer of assets herein affects 18 existing Pennsylvania customers of both Sun and Atlantic.

Copies of the instant joint application were served upon the Office of Consumer Advocate and Office of Small Business Advocate. Further notice was not required and no protest period was established. No protests were filed.

Under the transfer of assets and merger, Sunoco will take control of both Sun and Atlantic. The joint applicants aver that the proposed transfer of assets and merger will contribute to operational efficiencies and administrative and regulatory efficiencies that will ultimately benefit the Pennsylvania customers of both Sun and Atlantic. These advantages ensure that the proposed transfer of assets and merger provides an affirmative public benefit and satisfies the standard set by *City of York v. Pa. P.U.C.*, 449 Pa. 136, 295, A.2d 825 (1972).

Sunoco proposes to adopt the Sun and Atlantic tariffs on file with this Commission; thus all of the services currently provided by Sun and Atlantic will be provided by Sunoco at the same rates, terms and conditions as Sun and Atlantic. The joint applicants aver that the proposed asset transfer will be transparent to Sun and Atlantic's existing customers and those customers will continue to receive the same quality of service as they are currently receiving.

The Commission has examined this joint application and has determined that the proposed transfer of assets, merger and abandonments are necessary or proper for the service, accommodation, convenience, or safety of the public, and

2

that the joint application is in the public interest and should be approved;
**THEREFORE,**

IT IS ORDERED:

1. That the joint application of Sun Pipe Line Company and Atlantic PipeLine Corp. for approval of the transactions associated with the transfer of assets and merger to Sunoco Pipeline L.P. be approved, and that a certificate of public convenience be issued evidencing such approval.

2. That the joint application for approval of the abandonment of services by Sun Pipe Line Company and Atlantic PipeLine Corp. is hereby approved.

3. That within 15 days following consummation of the transfer of assets and merger as described in Ordering Paragraph No. 1, above, Sunoco PipeLine L.P. file a tariff adopting the tariffs of Sun and Atlantic.

4. That upon the receipt of the tariffs as required by Ordering Paragraph No. 3, above, certificates of public convenience be issued evidencing the approvals granted in Ordering Paragraph No. 2, above.

3

5. That if the applicants come to determine that the instant transaction will not occur, Sunoco Pipeline L.P. shall promptly file with this Commission notice of such determination.

6. That a copy of this order be served on the Department of Revenue, Bureau of Corporation Taxes.

BY THE COMMISSION,

James J. McNulty
Secretary

(SEAL)

ORDER ADOPTED: January 10, 2002

ORDER ENTERED:    JAN 1 4 2002

4

Exhibit B

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA 17105-3265

Public Meeting held July 24, 2014

Commissioners Present:

       Robert F. Powelson, Chairman
       John F. Coleman, Jr., Vice Chairman
       James H. Cawley
       Pamela A. Witmer
       Gladys M. Brown

Petition of Sunoco Pipeline, L.P. for Amendment of        P-2014-2422583
the Order Entered on August 29, 2013

OPINION AND ORDER

BY THE COMMISSION:

      Before the Pennsylvania Public Utility Commission (Commission) for consideration and disposition is the Petition for Amendment (Petition) filed by Sunoco Pipeline, L.P. (Sunoco or Company) on May 21, 2014, relative to the Opinion and Order entered on August 29, 2013, at Docket Nos. A-2013-2371789 and P-2013-2371775 (*August 2013 Order*). No Answers have been filed in response to the Petition. For the reasons set forth herein, we shall grant the Petition.

## History of the Proceeding

Sunoco is a limited partnership formed under the laws of Texas. On or about February 26, 2002, the Commission issued Sunoco a Certificate of Public Convenience (Certificate) that approved a merger, pursuant to which Sunoco acquired all of the jurisdictional assets of Sun Pipe Line Company (Sun) and Atlantic Pipeline Corp. (Atlantic). The Commission's approval included Sunoco's right to transport petroleum products and refined petroleum products in the former service territory of Sun and Atlantic. *See, Joint Application of Sunoco Pipeline L.P., Sun Pipe Line Company and of Atlantic Pipeline Corp.*, Docket Nos. A-140001, A-140400 F2000, and A-140075 F2000 (Corrected Order entered January 14, 2002).[1] Sunoco indicates that the acquisition of the Sun and Atlantic pipeline assets permitted it to operate an integrated pipeline system that included, *inter alia*, an eight-inch pipeline that extended from Point Breeze to Montello; a twelve-inch pipeline that extended from Point Breeze to Montello; an eight-inch pipeline that extended from Twin Oaks to Exton, Fullerton, Macungie, and Montello; six, eight, and fourteen-inch pipelines that extended from Montello to Williamsport; and an eight-inch pipeline that extended from Montello to Mechanicsburg, and then from Mechanicsburg to Delmont, and from Delmont to Pittsburgh. Petition at 5.

On July 3, 2013, Sunoco filed an application, at Docket No. A-2013-2371789, pursuant to Section 1102(a)(2) of the Public Utility Code (Code), 66 Pa. C.S. § 1102(a)(2), requesting that the Commission approve the abandonment of a portion of its petroleum products pipeline transportation service within Pennsylvania

---

[1]     Sun and Atlantic transported refined petroleum products, principally gasoline and fuel oils, in intrastate and interstate service. Sun's intrastate pipeline system originated in Southeastern Pennsylvania and extended northward to New York and northeastward to New Jersey. It also had an intrastate pipeline system that originated in Pittsburgh and extended westward to Ohio. Atlantic's intrastate pipeline system originated in Southeastern Pennsylvania and extended northward to New York and westward to the Pittsburgh, Pennsylvania area. Joint Application, Docket No. A-140001, at 3.

(Abandonment Application), from (1) Point Breeze to Eldorado, Delmont, Blawnox, and Pittsburgh; (2) Montello to Eldorado, Delmont, and Blawnox; and (3) Twin Oaks to Icedale, Malvern, Eldorado, Delmont, and Pittsburgh. Also on July 3, 2013, at Docket No. P-2013-2371775, the Company submitted a Petition for Approval of Temporary Suspension of Petroleum Products Transportation Service within Pennsylvania (Suspension Petition), from (1) Point Breeze to Mechanicsburg and (2) Twin Oaks to Exton, Fullerton, Macungie, Montello, Mechanicsburg, Tamaqua, Williamsport, and Kingston. Sunoco averred that the abandonment and suspension were necessary for the construction of the Company's proposed Mariner East Pipeline, which would meet a public need for the transportation of natural gas byproducts.[2]

In the *August 2013 Order,* we approved the Company's Abandonment Application and Suspension Petition and authorized the Company to implement the requested abandonments and suspensions upon one day's notice. *August 2013 Order* at 7.

In accordance with the *August 2013 Order,* the Company filed several tariff supplements. Of relevance to the Abandonment Application, the Company filed the following tariff supplements: (1) Supplement No. 2 to Tariff Pipeline – Pa. P.U.C. No. 15 on August 30, 2013, which reflects abandoned service from Twin Oaks to Eldorado, Delmont, Icedale, Malvern, and Pittsburgh, effective September 1, 2013; (2) Supplement No. 3 to Tariff Pipeline – Pa. P.U.C. No. 15 on September 30, 2013, which reflects abandoned service from: (a) Point Breeze to Pittsburgh, Delmont, and Blawnox, and (b) Montello to Delmont and Blawnox, effective October 1, 2013; and (3) Supplement No. 4 to Tariff Pipeline – Pa. P.U.C. No. 15 on October 31, 2013, which reflects abandoned service from: (a) Point Breeze to Eldorado, and (b) Montello to Eldorado.

---

[2]       The Abandonment Application and Suspension Petition were consolidated, and the *August 2013 Order* addresses both filings.

As previously noted, the instant Petition was filed on May 21, 2014.  Sunoco
served a copy of the Petition on each recipient who was previously served in the
proceedings involving the Abandonment Application and Suspension Petition at Docket
Nos. A-2013-2371789 and P-2013-2371775.  No Answers have been filed in response to
the Petition.

Discussion

**Legal Standards**

We note that any issue or argument that we do not specifically address
herein has been duly considered and will be denied without further discussion.  It is well
settled that we are not required to consider expressly or at length each contention or
argument raised by the parties.  *Consolidated Rail Corporation v. Pa. PUC,* 625 A.2d
741 (Pa. Cmwlth. 1993); *also see, generally, University of Pennsylvania v. Pa. PUC,* 485
A.2d 1217 (Pa. Cmwlth. 1984).

The Code establishes a party's right to seek relief following the issuance of
our final decisions pursuant to Subsections 703(f) and (g), 66 Pa. C.S. §§ 703(f)
and 703(g), relating to rehearings, as well as the rescission and amendment of orders.
Such requests for relief must be consistent with Section 5.572 of our Regulations, 52 Pa.
Code § 5.572, relating to petitions for relief following the issuance of a final decision.
The standards for granting a Petition for Reconsideration were set forth in *Duick v.
Pennsylvania Gas and Water Company,* 1982 Pa. PUC Lexis 4, *12-13:

> A Petition for Reconsideration, under the provisions of
> 66 Pa. C.S. § 703(g), may properly raise any matters designed
> to convince the Commission that it should exercise its
> discretion under this code section to rescind or amend a prior
> order in whole or in part.

4

In this regard we agree with the court in the Pennsylvania Railroad Company case, wherein it was stated that:

> Parties . . . cannot be permitted by a second motion to review and reconsider, to raise the same questions which were specifically considered and decided against them . . . what we expect to see raised in such petitions are new and novel arguments, not previously heard, or considerations which appear to have been overlooked by the Commission.

Under the standards of *Duick*, a petition for reconsideration may properly raise any matter designed to convince this Commission that we should exercise our discretion to amend or rescind a prior Order, in whole or in part. Such petitions are likely to succeed only when they raise "new and novel arguments" not previously heard or considerations which appear to have been overlooked or not addressed by the Commission. *Id.* at *13.

*August 2013 Order*

In the *August 2013 Order*, we noted that the Company stated that it did not intend to provide intrastate service within Pennsylvania from the Mariner East Pipeline. We also noted that the Company indicated that "the interstate transportation of ethane and propane from west-to-east [would] make it physically impossible for the Company to continue providing east-to-west intrastate petroleum products transportation on certain segments of its pipeline system." *August 2013 Order* at 3.

In approving the Abandonment Application, we found that the Company demonstrated significant public benefits and that there was minimal impact on the few customers currently receiving service on the abandonment segment of the pipeline. *August 2013 Order* at 7. Accordingly, we ordered the following:

5

> That a Certificate of Public Convenience be issued pursuant
> to 66 Pa. C.S. § 1102(a)(2) authorizing Sunoco Pipeline, L.P.
> to abandon intrastate petroleum pipeline service in the
> Commonwealth of Pennsylvania per the proposed schedule
> on the following sections:  (1) Point Breeze to Eldorado,
> Delmont, Blawnox and Pittsburgh; (2) Montello to Eldorado,
> Delmont and Blawnox; and (3) Twin Oaks to Icedale,
> Malvern, Eldorado, Delmont and Pittsburgh.

*Id.* at 8, Ordering Paragraph No. 3.  We also directed Sunoco to file a tariff supplement,

on one day's notice, reflecting abandonment of service on the sections of the Company's

service territory set forth in Ordering Paragraph No. 3.  *Id.*, Ordering Paragraph No. 5.

## Sunoco's Petition[3]

Initially, the Company explains that its Petition relates to the Mariner East

Pipeline project, which is an approximately 300-mile pipeline that will use Sunoco's

existing pipeline infrastructure, supplemented by construction of an additional fifty-one

mile extension from Houston, Pennsylvania to Delmont, Pennsylvania, to ship valuable

natural energy resources from the Marcellus Shale in Pennsylvania to the Marcus Hook

Industrial Complex (MHIC) on the Delaware River and the Company's Twin Oaks

facilities operated in conjunction with the MHIC.  Petition at 2-3.

Sunoco requests that the Commission amend the *August 2013 Order* to

affirm the Company's authority to resume transportation service for petroleum products

and refined petroleum products in the segment of the pipeline where the tariff was

abandoned, subject to the filing of appropriate tariff supplements with the Commission.

*Id.* at 4, 13.  Sunoco explains that the *August 2013 Order* did not address the procedure it

should follow in order to recommence intrastate service of petroleum products on the

abandoned segments of the pipeline.  Sunoco states that, although the Company

---

[3]     Sunoco notes that its Petition pertains only to the Abandonment
Application and not to the Suspension Petition.

6

abandoned intrastate service for the shippers and routes on the schedules identified in the *August 2013 Order,*[4] it retained the rights granted to it in its Certificate to provide intrastate petroleum products and refined petroleum products in the service territory covered by its Certificate. Sunoco also states that certain routes in the abandonment segment of the pipeline overlapped with the suspension segment, therefore, it was clear that the abandonment applied to the tariff and the transportation of gasoline and distillates provided thereunder, and not to the certificated right to provide service. *Id.* at 4.

Sunoco avers that, pursuant to the standards set forth in *Duick, supra,* the amendment of the *August 2013 Order* is lawful and appropriate because the circumstances surrounding the Mariner East Pipeline project have changed. Sunoco explains that it had initially planned for the Mariner East pipeline system to provide only interstate transportation of ethane and propane from west-to-east to the MHIC. Petition at 8. However, Sunoco also explains that, based on the high supply of propane and other petroleum products generated by the Marcellus Shale and the need for uninterrupted deliveries of propane in Pennsylvania, the demand for intrastate transportation of propane has become significant. Sunoco states that, in response to increased shipper interest in securing intrastate pipeline facilities, and due to the public interest in ensuring adequate pipeline capacity to meet peak demand for propane during the winter, it is now proposing to offer intrastate propane service. *Id.* at 9.

Sunoco plans to initially resume service in the suspension segment of the pipeline and will file a tariff supplement to implement intrastate propane service between Mechanicsburg and its Twin Oaks facility. *Id.* at 9-10. Sunoco indicates that, subject to the approval of this Petition, it will commence intrastate propane service from Delmont, Pennsylvania, moving the origination point further west and closer to the Marcellus Shale

---

[4]     Exhibit "A" to the Petition is a map depicting the segments of the pipeline on which service was abandoned, as well as the segments of the pipeline on which service was temporarily suspended.

region, to its Twin Oaks facility. Sunoco also indicates that, subject to the Commission's grant of a Certificate to extend its petroleum products and refined petroleum products transportation service territory into Washington County, Pennsylvania, it will be able to offer pipeline transportation service, both interstate and intrastate, from Houston, Pennsylvania by an interconnection with the existing pipeline at Delmont to the MHIC and its Twin Oaks facility. *Id.* at 10.

Disposition

As stated above, Petitions for Reconsideration are governed by *Duick*, which essentially requires a two-step analysis. First, we determine whether a party has offered new and novel arguments, or identified considerations that appear to have been overlooked or not addressed by the Commission in its previous order. We will not reconsider our previous decision based on arguments that have already been considered. However, we will not necessarily modify our prior decision just because a party offers a new and novel argument, or identifies a consideration that was overlooked or not addressed by the Commission in its previous order. The second step of the *Duick* analysis is therefore to evaluate the new or novel argument, or overlooked consideration, in order to determine whether to exercise our discretion to modify our previous decision.

Based on our review of the Petition and the applicable law, we find that Sunoco has satisfied the standards set forth in *Duick*. We conclude that Sunoco has identified new considerations in its Petition, based on its averments that the circumstances surrounding the Mariner East Pipeline project have changed since the issuance of the *August 2013 Order*. When we approved Sunoco's Abandonment Application, the Company did not intend to provide intrastate service within Pennsylvania from the Mariner East Pipeline and planned to provide only interstate transportation of ethane and propane from west-to-east to the MHIC. *August 2013 Order* at 3. The Company's plans have since changed due to the increased demand for intrastate

8

transportation of propane, and Sunoco now intends to offer intrastate propane service in response to the increased shipper interest in securing intrastate pipeline facilities.

We additionally conclude that it is appropriate, under the circumstances in this case, to amend the *August 2013 Order* in the form of a clarification regarding the procedure Sunoco should follow to commence providing intrastate propane service on the abandoned segment of the pipeline. While Sunoco received authorization in the *August 2013 Order* to cease the transportation of gasoline and distillates as to the shippers and routes on the schedules identified in the *August 2013 Order*, it retained its authority under its Certificate to provide petroleum products and refined petroleum products transportation service on its pipelines between Twin Oaks and Delmont, Pennsylvania.[5] As such, Sunoco is certificated to provide intrastate propane service on the abandoned segment of the pipeline. In order to begin providing this service, the Company will be required to file tariff supplements with the Commission providing the terms and conditions and rates for the proposed service to be provided.

We find that approval of the Petition is in the public interest, as Sunoco's proposed provision of intrastate propane service will result in numerous potential public benefits. Sunoco intends to commence intrastate propane service from Delmont, Pennsylvania, moving the origination point further west and closer to the Marcellus Shale

---

[5]       The Commission has interpreted the definition of "petroleum products" broadly to encompass what would otherwise be an exhaustive list of products. *See, Petition of Granger Energy of Honey Brook, LLC*, Docket No. P-00032043, at 9 (Order entered August 19, 2004). This list includes propane. This is consistent with the definition of "petroleum gas" in the federal gas pipeline transportation safety regulations at 49 C.F.R. Part 192. Part 192 has been adopted by the Commission and defines "petroleum gas" to include propane. 49 C.F.R. § 192.3. Our interpretation is also consistent with the definition of "petroleum" in the federal hazardous liquids pipeline safety regulations at 49 C.F.R. Part 195. Part 195 has also been adopted by the Commission and defines "petroleum" to include natural gas liquids and liquefied petroleum gas, which can include propane. 49 C.F.R. § 195.2.

region, to its Twin Oaks facility.  While this will enable Sunoco to implement one aspect of the overall planned Mariner East Pipeline project, it will also enable the Company to immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season.  It will further assist shippers in avoiding the added expense and risks associated with trucking the propane from the Marcellus Shale region to Mechanicsburg.

For these reasons, we will amend the *August 2013 Order* in the form of a clarification regarding the procedure the Company must follow to resume transportation service for petroleum products and refined petroleum products in the segment of the pipeline where the tariff was abandoned.

## Conclusion

Based upon our review of the Petition and the applicable law, we shall grant Sunoco's Petition in the form of a clarification regarding the procedure the Company must follow to resume transportation service for petroleum products and refined petroleum products in the segment of the pipeline where the tariff was abandoned. We direct Sunoco to file tariff supplements with the Commission providing the terms, conditions and rates for the service it proposes to provide; **THEREFORE,**

**IT IS ORDERED:**

1.    That the Petition for Amendment filed by Sunoco Pipeline, L.P. on May 21, 2014, is granted, in the form of a clarification, consistent with this Opinion and Order.

10

2.      That the Opinion and Order entered on August 29, 2013, at Docket Nos. A-2013-2371789 and P-2013-2371775, shall be amended in the form of a clarification regarding the procedure Sunoco Pipeline, L.P. must follow to resume transportation service for petroleum products and refined petroleum products in the segment of the pipeline where the tariff was abandoned, consistent with this Opinion and Order.

3.      That, in all other respects, the Opinion and Order entered on August 29, 2013, at Docket Nos. A-2013-2371789 and P-2013-2371775, shall remain in full force and effect.

4.      That Sunoco Pipeline, L.P. shall file tariff supplements, on sixty (60) days' notice, providing the terms and conditions and rates for the service it proposes to provide, consistent with this Opinion and Order.

5.      That a copy of this Opinion and Order shall be served on each recipient who was previously served in the proceedings at Docket Nos. A-2013-2371789 and P-2013-2371775 and on the Commission's Bureau of Technical Utility Services.

6.      That this proceeding shall be marked closed.

BY THE COMMISSION

Rosemary Chiavetta
Secretary

(SEAL)

ORDER ADOPTED: July 24, 2014
ORDER ENTERED: JULY 24, 2014

11

Exhibit C

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA  17105-3265

Public Meeting held August 21, 2014

Commissioners Present:

Robert F. Powelson, Chairman
John F. Coleman, Jr., Vice Chairman
James H. Cawley
Pamela A. Witmer
Gladys M. Brown

Sunoco Pipeline L.P. Request for Approval of Tariff
Pipeline-Pa P.U.C. No. 16 and Waiver of 52 Pa.
Code §53.52(b)(2) and (c)(1) through (5)

Docket Number:
R-2014-2426158

### ORDER

**BY THE COMMISSION:**

On June 12, 2014, Sunoco Pipeline L.P. (Sunoco or the company), Utility Code 140001, filed Tariff Pipeline-Pa P.U.C. No. 16, proposing to add a new origin point in Mechanicsburg and a new destination point in Twin Oaks for the west to east movement of propane on the Company's system.  Tariff Pipeline-Pa P.U.C. No. 16 was filed to become effective on October 1, 2014.  The company also requests a waiver of Section 53.52 of the P.U.C.'s Rules of Administrative Practice and Procedure, 52 Pa. Code § 53.52, to extent that Subsections (b) (2) and (c) (1) through (5) of said Section would require the submission of an income statement, balance sheet and other financial information dated within 120 days of the filing of Tariff No. 16 (the "120 Day Rule").

Sunoco states that the proposed Tariff adds the new origin point of Mechanicsburg and the new destination point of Twin Oaks for the west to east intrastate

movement of propane originating from the Marcellus Shale production areas to markets in Southeastern Pennsylvania as part of the company's Mariner East project. Sunoco submits that the filing is being made in response to shipper interest and is necessary to meet demand during the upcoming 2014-2015 winter season. Sunoco avers that approval of this filing will allow it to implement an earlier transport of propane by pipeline from Mechanicsburg prior to the full completion of the Mariner East pipeline and to significantly increase the delivery capacity due to the superior efficiency of truck and pipeline transportation as compared to truck and rail transportation.

Sunoco asserts that the rapid expansion of natural gas liquids production from the Marcellus Shale deposits has significantly revitalized local economies across Pennsylvania, while also enhancing the country's energy supply portfolio and redefining global energy markets. Sunoco states that as a result of the growing supply of propane and other petroleum and refined petroleum products generated by the Marcellus Shale, and given the need for uninterrupted deliveries of propane in the Commonwealth, particularly in the winter months, the demand for intrastate transportation of propane has become significant.

Sunoco intends to provide shippers with a low-cost option to bring their propane to Southeastern Pennsylvania. Sunoco expects to transport 427,700 barrels of propane from Mechanicsburg to Twin Oaks, PA during the first year of service. Sunoco notes that propane is a seasonal product and most of the shipments will occur during the winter months. Sunoco indicates that at the proposed tariff rate of $2.91/bbl, the company expects to realize $1.2 million in revenue from the proposed propane service. Sunoco says that they investigated the cost of trucking, rail, and other pipelines to bring propane from the Marcellus Shale production areas and that the proposed rate of $2.91/bbl is just and reasonable.

2

Sunoco declares that Tariff No. 16 will not increase or decrease rates to current customers. Sunoco has documented that the proposed tariff modification will not result in an increase in operating revenue greater than 3%.

Sunoco indicated that they will be investing significant capital to reactivate the Mechanicsburg to Twin Oaks segment for the transportation of propane. Sunoco claims that in addition to the capital investment to complete the Mariner East project, substantial capital will continue to be invested and substantial expense incurred in connection with the remainder of the Pennsylvania intrastate petroleum and refined petroleum products pipelines to ensure their continued safe, reliable, and environmentally prudent operation.

Sunoco notes that they do not have any propane shipping customers who will see a rate increase as a result of the application of Tariff No. 16 and the information requested by Subsections (b) and (c) of Section 53.52 may not be necessary. Sunoco indicated that to facilitate review of Tariff No. 16, the company is submitting responses to each of the information requests under Subsections (a), (b) and (c) of Section 53.52, utilizing financial information from calendar 2013. Sunoco requests a waiver of the "120 Day Rule" and acceptance of supporting financial information based on calendar year 2013.

Sunoco served its Request for Waiver of "120 Day Rule" and Tariff Pipeline-Pa P.U.C. No. 16 on the Commission's Bureau of Investigation and Enforcement, the Office of Consumer Advocate and the Office of Small Business Advocate. No complaints have been filed and no hearings held.

Upon review of Sunoco's Request for Waiver for "120 Day Rule" and Tariff No. 16, we find that the proposed rates contained therein do not appear to be unlawful, unjust, unreasonable, or contrary to the public interest.

3

Accordingly, we will grant Sunoco's Request for Waiver of 52 Pa. Code § 53.52(b)(2) and (c)(1) through (5) and allow Tariff Pipeline-Pa P.U.C. No. 16 to become effective on the date requested. However, approval of this filing does not constitute a determination that this filing is lawful, just, or reasonable, but only that further investigation or suspension does not appear to be warranted at this time; **THEREFORE,**

**IT IS ORDERED:**

1.      That Sunoco Pipeline L.P.'s Request for Waiver of 52 Pa. Code § 53.52(b)(2) and (c)(1) through (5) is granted.

2.      That Sunoco Pipeline L.P.'s Tariff Pipeline-Pa P.U.C. No. 16 is hereby permitted to become effective on October 1, 2014.

3.      That this Order is without prejudice to any issues that may be raised by any party with respect to the tariff changes implemented by Tariff Pipeline-Pa P.U.C. No. 16 in future proceedings.

4.      That a copy of this Order be served on the Office of Consumer Advocate, the Office of Small Business Advocate, and the Bureau of Investigation and Enforcement.

5.   That the proceeding at Docket No. R-2014-2426158 be marked closed.

BY THE COMMISSION,

Rosemary Chiavetta
Secretary

(SEAL)

ORDER ADOPTED:  August 21, 2014
ORDER ENTERED:  August 21, 2014

5

Exhibit D

# PENNSYLVANIA
# PUBLIC UTILITY COMMISSION

IN THE MATTER OF THE APPLICATION OF DOCKET NO: A-2014-2425633

Application of Sunoco Pipeline L.P. for approval of the right to offer, render, furnish or supply
intrastate petroleum and refined petroleum products pipeline service to the public in Washington County, Pennsylvania.

**Effective Date:**  AUGUST 21, 2014

The Pennsylvania Public Utility Commission hereby certifies that after an investigation and/or hearing, it has,
by its report and order made and entered, found and determined that the granting of the application is necessary or
proper for the service, accommodation, convenience and safety of the public and hereby issues to the applicant this
**CERTIFICATE OF PUBLIC CONVENIENCE** evidencing the Commission's approval.

In Witness Whereof, The PENNSYLVANIA PUBLIC UTILITY COMMISSION
has caused these presents to be signed and sealed, and duly attested by its secretary
at its office in the city of Harrisburg this 21ST DAY OF AUGUST 2014.

Secretary

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA. 17105-3265

Commissioners Present:

Public Meeting held August 21, 2014

*Washington County*

Robert F. Powelson, Chairman
John F. Coleman, Jr., Vice Chairman
James H. Cawley
Pamela A. Witmer
Gladys M. Brown

Application of Sunoco Pipeline L.P. for Approval
of the Right to Offer, Render, Furnish or Supply
Intrastate Petroleum and Refined Petroleum
Products Pipeline Service to the Public in
Washington County, Pennsylvania.

Docket Number:

A-2014-2425633

ORDER

BY THE COMMISSION:

On June 9, 2014, pursuant to Sections 1102(a) (1) and 1103 of the Public
Utility Code and Sections 5.11-5.14 of the Commission's regulations, Sunoco Pipeline
L.P. (Sunoco), utility code 140001, filed an Application for Commission approval of the
right to offer, render, furnish or supply intrastate petroleum and refined petroleum
products pipeline service to the public in Washington County, Pennsylvania.

Sunoco is a Texas limited partnership formed in 2001 as part of the
restructuring of certain subsidiaries of Sunoco, Inc. and is indirectly, wholly-owned by
Sunoco Logistics Partners, L.P., a publicly traded master limited partnership.

Pursuant to a certificate of public convenience dated January 10, 2002, Sunoco received approval for the transfer, merger, possession and use of, all Pennsylvania Public Utility Commission jurisdictional assets of Sun Pipe Line Company and Atlantic Pipeline Corporation. The approval included the right of Sunoco to transport petroleum products in the former service territory of Sun Pipe Line Company and Atlantic Pipeline Corp.

Sunoco states that it initiated a project, identified as the Mariner East project, to facilitate the shipment of propane and other petroleum products produced from Marcellus Shale fields in western Pennsylvania to its Twin Oaks facility in Delaware County, Pennsylvania, and to and from points in between.

Sunoco further states that the first phase of the Mariner East project consists of an approximately 300-mile pipeline that will make use of Sunoco's existing pipeline infrastructure, supplemented by construction of an additional 51-mile extension from Houston, Washington County, Pennsylvania to Delmont, Westmoreland County, Pennsylvania. Sunoco indicates that approximately 15 miles of the extension lies within Washington County. The other 36 miles of the extension lies in Allegheny and Westmoreland Counties and is covered by Sunoco's existing certificate of public convenience.

Subject to continued shipper interest, Sunoco intends to undertake a second phase of the Mariner East project, which will expand the capacity of the project by constructing: (1) a 16 inch or larger pipeline, paralleling its existing pipeline from Houston, PA to the Marcus Hook Industrial Complex and along much of the same route, and (2) a new 15 miles of pipeline from Houston, PA to a point near the Pennsylvania-Ohio boundary line. This second phase, sometimes referred to as "Mariner East 2", will increase the take-away capacity of natural gas liquids from the Marcellus Shale and will

2

enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both intrastate and interstate propane shipments.

Sunoco states that to facilitate the Mariner East project, it filed an application with the Commission, at Docket No. A-2013-2371789, to abandon certain intrastate service along portions of its pipeline system and a petition, at Docket No. P-2013-2371775, to temporarily suspend a portion of certain intrastate service along other segments. By Order entered on August 29, 2013, and subsequently clarified on October 17, 2013, the Commission approved both the application and the petition.

Sunoco states that to meet demand during the upcoming 2014-2015 winter season and in response to shipper interest, Sunoco proposes to resume service on the suspended section and has filed Tariff Pipeline – Pa. P.U.C. No. 16 (Tariff Filing), at Docket No. R-2014-2426158, that implements intrastate propane service between Mechanicsburg, Pennsylvania and its Twin Oaks facility. Sunoco also states that it filed a Petition to Amend the August 29, 2013, Order in order to reinstitute propane service from Delmont, Pennsylvania to the Twin Oaks facility. The Petition was approved by the Commission at Docket No. P-2014-2422583 by Order entered on July 24, 2014. According to Sunoco, this enables shippers to avoid the added expense and risks associated with trucking the propane from the Marcellus Shale region to Mechanicsburg.

Sunoco states that completion of this phase of the Mariner East project will provide for the contiguous movement of the Marcellus Shale production of ethane, propane and other petroleum products[1] from Houston to the Marcus Hook Industrial Complex and the Twin Oaks facility and will increase the capacity of propane that is

---

[1] Sunoco's characterization of what constitutes "petroleum products" is consistent with the Commission's previous finding that "petroleum products" includes propane. *See Petition of Sunoco Pipeline, L.P. for Amendment of the Order Entered on August 20, 2013*, P-2014-2422583 (Opinion and Order entered July 24, 2014).

3

capable of being transported by pipeline, whether via interstate or intrastate movements, and available for delivery or use in Pennsylvania.

Notice was published in the *Pennsylvania Bulletin* on June 21, 2014, and in the *Pittsburgh Post-Gazette*, a daily newspaper published in Allegheny County, Pennsylvania on June 22, 2014. Proof of publication and service to appropriate entities were filed.

As of August 12, 2014, no protests have been filed and no hearing was held.

Upon full consideration of all matters of record, we believe that approval of this Application is necessary and proper for the service, accommodation, and convenience of the public. We believe granting Sunoco authority to commence intrastate transportation of propane in Washington County will enhance delivery options for the transport of natural gas and natural gas liquids in Pennsylvania. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, ensuring that Pennsylvania's citizens enjoy access to propane heating fuel. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services. For these reasons, we conclude that approval of the Application is in the public interest; THEREFORE,

IT IS ORDERED:

1.      That the Application of Sunoco Pipeline L.P. at Docket No. A-2014-2425633 is hereby approved.

4

2. . That the Secretary shall issue to Sunoco Pipeline L.P. a Certificate of Public Convenience pursuant to Section 1102(a)(1)(i) of the Public Utility Code authorizing Sunoco Pipeline L.P. to offer, render, furnish, or supply intrastate petroleum and refined petroleum products pipeline service to the public in Washington County, Pennsylvania.

3. That Sunoco Pipeline L.P. shall file tariff supplements, on sixty (60) days' notice, providing the terms and conditions and rates for the service it proposes to provide, consistent with this Order.

4. That this proceeding at Docket No. A-2014-2425633 be closed.

BY THE COMMISSION

Rosemary Chiavetta
Secretary

(SEAL)
ORDER ADOPTED:  August 21, 2014
ORDER ENTERED:  August 21, 2014

5

Exhibit E

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA 17105-3265

Public Meeting held January 15, 2015

Commissioners Present:

    Robert F. Powelson, Chairman
    John F. Coleman, Jr., Vice Chairman
    James H. Cawley
    Pamela A. Witmer
    Gladys M. Brown

| | |
|---|---|
| Sunoco Pipeline L.P. Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 and Letter Request for Waiver of 52 Pa. Code §53.52(b)(2) and (c)(1) through (5) | Docket Number: R-2014-2452684 |

## ORDER

**BY THE COMMISSION:**

       On November 6, 2014, Sunoco Pipeline L.P. (Sunoco or the company), Utility Code 140001, filed Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 (Supplement No. 2), to become effective January 5, 2015.  On December 18, 2014, Sunoco filed Supplement No. 4 which voluntarily postpones the effective date to January 16, 2015.

       Supplement No. 2 proposes to add the new origin point of Houston, Washington County, Pennsylvania for west to east intrastate movement of propane originating from the Marcellus Shale on the previously abandoned Mechanicsburg to Delmont segment and the newly constructed Houston to Delmont pipeline segment to markets in Southeastern Pennsylvania as part of Sunoco's Mariner East Project.

On November 6, 2014, Sunoco filed a Letter of Request for Waiver of Section 53.52 of the P.U.C.'s Rules of Administrative Practice and Procedure, 52 Pa. Code § 53.52, to extent that Subsections (b) (2) and (c) (1) through (5) of said Section would require the submission of an income statement, balance sheet and other financial information dated within 120 days of the filing of Supplement No. 2 Tariff No. 16 (the "120 Day Rule").

Sunoco maintains that the proposed tariff would replace $0.8 million of the $3.1 million in lost revenue based on the level of operations for the historic test year ended December 31, 2013.

Sunoco submits that $1.2 million of the lost revenue will be replaced by the recently approved Mechanicsburg to Twin Oaks tariff.  Sunoco states that they are not seeking to increase any of its existing rates for the unabandoned and unsuspended legacy movements of petroleum and refined petroleum products.

Sunoco declares that given the increased interest expressed by shippers in securing intrastate pipeline transportation facilities sooner than originally anticipated, and in recognition of the public interest in ensuring adequate pipeline capacity to meet peak demand for propane during the winter season, Sunoco maintains it is able to answer shipper demand and support the public interest though the addition of the Houston, Pennsylvania origin point for the intrastate shipment of propane to Twin Oaks.

Sunoco indicates that they will be investing significant capital to reactivate the Delmont to Mechanicsburg segment and construct over 50 miles of new pipe and facilities from Houston to Delmont for the transportation of propane to Twin Oaks. Sunoco notes that in addition to the capital investment to complete the Mariner East project, substantial capital will continue to be invested and substantial expense incurred in connection with the remainder of the Pennsylvania intrastate petroleum and refined

2

petroleum products pipeline to ensure their continued safe, reliable, and environmentally prudent operation.

Sunoco declares that Supplement No. 2 Tariff No. 16 will generate $838,229 in revenue. Sunoco states that 5% of that revenue will be paid to the Commonwealth in gross receipts tax ($41,911).

Sunoco avers that they expect a positive effect on the service rendered, in that the tariff changes will enable it to continue the high level of reliable, environmentally responsible service it has traditionally provided to its customers.

Sunoco maintains that they provide liquid petroleum product transportation service to nine (9) intrastate shipper/customers in the Commonwealth of PA and that it does not have any current customers who will see a rate increase as a result of the application of the Supplement. Sunoco indicated that to facilitate review of Supplement No. 2, the company is submitting responses to each of the information requests under Subsections (a), (b) and (c) of Section 53.52, utilizing financial information from calendar 2013. Sunoco requests a waiver of the "120 Day Rule" and acceptance of supporting financial information based on calendar year 2013.

Sunoco served its Request for Waiver of "120 Day Rule" and Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 on the Commission's Bureau of Investigation and Enforcement, the Office of Consumer Advocate and the Office of Small Business Advocate. No complaints have been filed and no hearings held.

Upon review of Sunoco's Letter Request for Waiver for "120 Day Rule" and Supplement No. 2 Tariff No. 16, we find that the proposed rates contained therein do not appear to be unlawful, unjust, unreasonable, or contrary to the public interest.

3

Accordingly, we will grant Sunoco's Request for Waiver of 52 Pa. Code § 53.52(b)(2) and (c)(1) through (5) and allow Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 to become effective on January 16, 2015. However, approval of this filing does not constitute a determination that this filing is lawful, just, or reasonable, but only that further investigation or suspension does not appear to be warranted at this time; **THEREFORE,**

### IT IS ORDERED:

1.      That Sunoco Pipeline L.P.'s Letter Request for Waiver of 52 Pa. Code § 53.52(b)(2) and (c)(1) through (5) is granted.

2.      That Sunoco Pipeline L.P.'s Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 is hereby permitted to become effective on January 16, 2015.

3.      That this Order is without prejudice to any issues that may be raised by any party with respect to the tariff changes implemented by Supplement No. 2 Tariff Pipeline-Pa P.U.C. No. 16 in future proceedings.

4.      That a copy of this Order be served on the Office of Consumer Advocate, the Office of Small Business Advocate, and the Bureau of Investigation and Enforcement.

4

5.      That the proceeding at Docket No. R-2014-2452684 be marked closed.

BY THE COMMISSION,

Rosemary Chiavetta
Secretary

(SEAL)

ORDER ADOPTED:  January 15, 2015
ORDER ENTERED:  January 15, 2015

5

Exhibit F

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA  17105-3265

Public Meeting held March 26, 2015

Commissioners Present:

    Robert F. Powelson, Chairman
    John F. Coleman, Jr., Vice Chairman
    James H. Cawley
    Pamela A. Witmer
    Gladys M. Brown

Sunoco Pipeline L.P. Supplement No. 5 Tariff        Docket Number:
Pipeline-Pa P.U.C. No. 16                    R-2015-2465141

## ORDER

**BY THE COMMISSION:**

On January 29, 2015, Sunoco Pipeline L.P. (Sunoco or the company), Utility Code 140001, filed Tariff Pipeline Supplement No. 5 Pa P.U.C. No. 16 (Supplement No. 5), to become effective March 30, 2015.

Supplement No. 5 proposes to add a new origin point of Delmont, Westmoreland County, Pennsylvania, for the west to east intrastate movement of propane originating from the Marcellus Shale area in Southwestern Pennsylvania to markets in Southeastern Pennsylvania as part of Sunoco's Mariner East project.  Supplement No. 5 asserts that the changes will also partially offset revenue lost due to pipeline segments that were previously suspended or abandoned.  Sunoco declares that it is not seeking to increase any of its existing rates for the legacy movements of petroleum and refined petroleum products.

Sunoco claims that the Delmont, Pennsylvania origin point is within trucking distance of facilities necessary to extract propane from the natural gas stream and liquefy it into a petroleum product that can be transported via pipeline to markets in Southeastern Pennsylvania. Sunoco notes that by locating the origin of the pipeline within trucking distance of the production facilities, propane producers in Western Pennsylvania will have another option to access the pipeline.

Sunoco maintains that the rate for Delmont, Westmorland County Pennsylvania is for the transportation of propane as defined by Item 15, Specification C in Sunoco Pipeline L.P.'s Tariff Pipeline – Pa. P.U.C. No. 17.

Sunoco submits that the proposed tariff rate would replace $0.5 million of the $2.8 million in revenue lost due to segments that were abandoned. $2.1 million of the lost revenue will be replaced by the recently approved Mechanicsburg to Twin Oaks and Houston to Twin Oaks tariffs. Sunoco affirms that the new rate is designed to generate $549,945 in revenue. Sunoco states that five percent of that revenue will be paid to the Commonwealth in gross receipts tax.

Sunoco declares that they will notify all potential shippers that the service is available and ready for use upon completion of the necessary facilities.

Sunoco maintains that Supplement No. 5 will allow producers in the Marcellus Shale to reliably ship propane to markets in Southeastern Pennsylvania to meet heating demand during the winter.

Sunoco served Tariff Pipeline Supplement No. 5 Pa P.U.C. No. 16 on the Commission's Bureau of Investigation and Enforcement, the Office of Consumer Advocate and the Office of Small Business Advocate. No complaints have been filed and no hearings held.

2

Upon review of Sunoco's Supplement No. 5, we find that the proposed modifications contained therein do not appear to be unlawful, unjust, unreasonable, or contrary to the public interest.

Accordingly, we will grant Sunoco's Tariff Pipeline Supplement No. 5 Pa P.U.C. No. 16 to become effective on March 30, 2015. However, approval of this filing does not constitute a determination that this filing is lawful, just, or reasonable, but only that further investigation or suspension does not appear to be warranted at this time; **THEREFORE,**

**IT IS ORDERED:**

1.      That Sunoco Pipeline L.P.'s Tariff Pipeline Supplement No. 5 Pa P.U.C. No. 16 is hereby permitted to become effective on March 30, 2015.

2.      That this Order is without prejudice to any issues that may be raised by any party with respect to the tariff changes implemented by Tariff Pipeline Supplement No. 5 Pa P.U.C. No. 16 in future proceedings.

3.      That a copy of this Order be served on the Office of Consumer Advocate, the Office of Small Business Advocate, and the Bureau of Investigation and Enforcement.

4.      That the proceeding at Docket No. R-2015-2465141 be closed.

BY THE COMMISSION,

Rosemary Chiavetta
Secretary

(SEAL)

ORDER ADOPTED:  March 26, 2015
ORDER ENTERED:  March 26, 2015

4

Exhibit G

PENNSYLVANIA
PUBLIC UTILITY COMMISSION
Harrisburg, PA 17105-3265

Public Meeting held October 2, 2014

Commissioners Present:

    Robert F. Powelson, Chairman
    John F. Coleman, Jr., Vice Chairman
    James H. Cawley, Dissenting Statement
    Pamela A. Witmer
    Gladys M. Brown, Statement


Petition of Sunoco Pipeline, L.P.                          P-2014-2411941
for a finding that a building to shelter the
Walnut Bank valve control station
in Wallace Township, Chester County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public


Petition of Sunoco Pipeline, L.P.                          P-2014-2411942
for a finding that a building to shelter the
Blairsville pump station
in Burrell Township, Indiana County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public


Petition of Sunoco Pipeline, L.P.                          P-2014-2411943
for a finding that a building to shelter the
Middletown Junction valve control station
in Lower Swatara Township, Dauphin County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public


Petition of Sunoco Pipeline, L.P.                          P-2014-2411944
for a finding that a building to shelter the
Cramer pump station
in East Wheatfield Township, Indiana County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411945
for a finding that a building to shelter the
Old York Road valve control station
in Fairview Township, York County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411946
for a finding that a building to shelter the
Conodoquist River West valve control station
in North Middleton Township, Cumberland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411948
for a finding that a building to shelter the
Juniata River West valve control station
in Frankston Township, Blair
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411950
for a finding that a building to shelter the
Ebensburg pump station
in Cambria Township, Cambria County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411951
for a finding that a building to shelter the
West Conemaugh River valve control station
in Derry Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                         P-2014-2411952
for a finding that a building to shelter the
West Loyalhanna Dam valve control station
in Loyalhanna Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411953
for a finding that a building to shelter the
Old Chestnut Lane valve control station
in Penn Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411954
for a finding that a building to shelter the
Old Harmony Road valve control station
in Hempfield Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411956
for a finding that a building to shelter the
Youghiogheny River South valve control station
in Rostraver Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411957
for a finding that a building to shelter the
Hollidaysburg pump station
in Allegheny Township, Blair County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411958
for a finding that a building to shelter the
Monongahela River West valve control station
in Union Township, Washington
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                    P-2014-2411960
for a finding that a building to shelter the
Ross Road valve control station
in North Strabane Township, Washington
County, Pennsylvania is reasonably necessary

for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411961
for a finding that a building to shelter the
Marklesburg pump station and
Raystown Lake West valve control station
in Penn Township, Huntingdon County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411963
for a finding that a building to shelter the
Houston-Mark West, Houston-Williams
and West Pike Street valve control stations
in Chartiers Township, Washington
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411964
for a finding that a building to shelter the
Mount Union pump station
in Shirley Township, Huntingdon County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411965
for a finding that a building to shelter the
Twin Oaks pump station
in Upper Chichester Township, Delaware County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411966
for a finding that a building to shelter the
Boot pump station
in West Goshen Township, Chester County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                           P-2014-2411967
for a finding that a building to shelter the

Doylesburg pump station
in Toboyne Township, Perry County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411968
for a finding that a building to shelter the
Eagle pump station
in Upper Uwchlan Township, Chester County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411971
for a finding that a building to shelter the
Beckersville pump station
in Brecknock Township, Berks County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411972
for a finding that a building to shelter the
Montello pump station and valve control station
in Spring Township, Berks County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411974
for a finding that a building to shelter the
Mechanicsburg pump station
in Hampden Township, Cumberland County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411975
for a finding that a building to shelter the
Blainsport pump station
in West Cocalico Township, Lancaster County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.                                          P-2014-2411976
for a finding that a building to shelter the
Middletown pump station

in Londonderry Township, Dauphin
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

Petition of Sunoco Pipeline, L.P.
for a finding that a building to shelter the
Cornwall pump station
in West Cornwall Township, Lebanon County,
Pennsylvania is reasonably necessary for the
convenience or welfare of the public

P-2014-2411977

Petition of Sunoco Pipeline, L.P.
for a finding that a building to shelter the
Plainfield pump station
in Lower Frankford Township, Cumberland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

P-2014-2411979

Petition of Sunoco Pipeline, L.P.
for a finding that a building to shelter the
Delmont pump station
in Salem Township, Westmoreland
County, Pennsylvania is reasonably necessary
for the convenience or welfare of the public

P-2014-2411980

## OPINION AND ORDER

**BY THE COMMISSION:**

Before the Pennsylvania Public Utility Commission (Commission) for consideration and disposition are the Exceptions filed by Sunoco Pipeline, L.P. (Sunoco) on August 19, 2014, to the Initial Decision Sustaining Preliminary Objections and Dismissing Petitions (Initial Decision or I.D.) of Administrative Law Judges (ALJs) David A. Salapa and Elizabeth H. Barnes, issued on July 30, 2014.  On August 29, 2014, the Concerned Citizens of West Goshen Township (CCWGT), the Delaware Riverkeeper Network (DRN), the Mountain Watershed Association (MWA), the Clean Air Council (CAC), and West Goshen Township (WGT) filed Replies to Exceptions.  For the reasons set forth herein, we shall grant Sunoco's Exceptions; reverse the Initial Decision; and remand this case to the Office of Administrative Law Judge (OALJ) for further proceedings, consistent with this Opinion and Order.

### Procedural History

On March 21, 2014, Sunoco filed a Petition for a Finding that the Situation of Structures to Shelter Pump Stations and Valve Control Stations is Reasonably Necessary for the Convenience or Welfare of the Public, pursuant to 52 Pa. Code § 5.41 and Section 619 of the Municipalities Planning Code (MPC), 53 P.S. § 10619.  The Petition contained thirty-one separate locations in its caption, and the Commission's Secretary treated the Petition as thirty-one separate petitions and assigned thirty-one docket numbers to the Petition.

Notice of Sunoco's thirty-one petitions was published in the *Pennsylvania Bulletin* on April 5, 2014, at 44 *Pa. B.* 2145, and provided that the deadline for filing formal

protests, comments, or petitions to intervene was April 21, 2014.  Numerous parties filed comments, protests, and petitions to intervene.

On April 18, 2014, CCWGT filed Preliminary Objections.  On April 21, 2014, DRN also filed Preliminary Objections.  On April 28, 2014, Sunoco filed an Answer to the Preliminary Objections of CCWGT.  On April 30, 2014, Sunoco filed an Answer to the Preliminary Objections of DRN.

On May 8, 2014, Sunoco filed thirty-one separate amended petitions (Amended Petitions) pursuant to 52 Pa. Code § 5.41 and Section 619 of the MPC, 53 P.S. § 10619, requesting that the Commission find that structures to shelter eighteen pump stations and seventeen valve control stations along Sunoco's proposed Mariner East pipeline are reasonably necessary for the convenience or welfare of the public and, therefore, exempt from any local zoning ordinance.[1]

Notice of Sunoco's Amended Petitions was published in the *Pennsylvania Bulletin* on May 24, 2014, at 44 *Pa. B.* 3204-3215, and provided that the deadline for filing formal protests, comments, or petitions to intervene was June 9, 2014.  Various parties filed comments, protests, and a petition to intervene.

On May 28, 2014, CAC filed Preliminary Objections to all thirty-one of Sunoco's Amended Petitions.  CAC averred that the Commission lacked jurisdiction over Sunoco's Amended Petitions because Sunoco is not a public utility as defined by the Public Utility Code (Code), 66 Pa. C.S. § 101, *et seq.*, and is not a public utility corporation under the MPC.  Alternatively, CAC averred that Sunoco's Amended

---

[1]     Unless otherwise indicated, all citations related to statements in the Amended Petitions will be to the Amended Petition at Docket No. P-2014-2411941 for ease of reference.

2

Petitions were legally insufficient because they did not allege facts sufficient to show that the Mariner East pipeline is necessary for the convenience or welfare of the public. CAC also stated that Sunoco's Amended Petitions failed to address the environmental impact of the proposed valve stations and pump stations which, according to CAC, will emit various air pollutants and affect air quality.

On June 6, 2014, DRN filed Preliminary Objections to all thirty-one of Sunoco's Amended Petitions. DRN also averred that the Commission lacked jurisdiction over Sunoco's Amended Petitions because Sunoco is not a public utility as defined by the Code and is not a public utility corporation under the MPC. DRN contended that Sunoco's Amended Petitions were legally insufficient because they did not allege facts sufficient to show that the Mariner East pipeline is necessary for the convenience or welfare of the public.

On June 9, 2014, CCWGT filed Preliminary Objections to Sunoco's Amended Petition at Docket No. P-2014-2411966, relating to a building to shelter the Boot pump station in West Goshen Township, Chester County, Pennsylvania. CCWGT also argued that the Commission lacked jurisdiction over Sunoco's Amended Petitions because Sunoco is not a public utility as defined by the Code and is not a public utility corporation under the MPC. In addition, CCWGT averred that Sunoco lacked Commission authority to use the pipeline segment in West Goshen Township. CCWGT stated that the portion of Sunoco's pipeline on which service was suspended between Mechanicsburg and Twin Oaks is not located near West Goshen Township. CCWGT concluded that the Commission lacked jurisdiction over the Boot Road site in West Goshen Township because the pipeline at that location did not appear to CCWGT to be part of the proposed pipeline route between Mechanicsburg and Twin Oaks.

3

CCWGT additionally contended that Sunoco's Amended Petition at Docket No. P-2014-2411966 was legally insufficient because it failed to include all buildings that Sunoco plans to construct at the location designated as Boot station. CCWGT asserted that Sunoco intended to construct a vapor combustion unit in addition to a control building, but Sunoco's Petition did not provide information on the vapor combustion unit other than to allege that there was no building involved. CCWGT stated that the vapor combustion unit would include a large chimney and housing for the combustion equipment and that the chimney and structure are buildings. CCWGT further contended that Sunoco's Petition at Docket No. P-2014-2411966 lacked sufficient specificity, because it failed to include a complete description of the Boot pump station property on which Sunoco plans to construct the shelter building, failed to provide information on the environmental impact of the proposed shelter building, and failed to discuss the impact of the proposed shelter building on the West Goshen Township zoning and comprehensive plans.

On June 9, 2014, MWA filed Preliminary Objections to all thirty-one of Sunoco's Amended Petitions. MWA's Preliminary Objections stated that MWA adopted DRN's Preliminary Objections and requested that the Commission deny Sunoco's Petitions.

On June 9, 2014, Sunoco filed an Answer to the Preliminary Objections of CAC. Sunoco stated that it is a public utility as defined by the Code, because it has been certificated and regulated by the Commission as a public utility since 2002. Sunoco averred that, since it is subject to regulation as a public utility by the Commission, it is also a public utility corporation under the MPC. Sunoco contended that, because the Commission has determined that it is a public utility, CAC may not challenge that determination in this proceeding. Therefore, Sunoco asserted that the Commission has jurisdiction over its Amended Petitions. Sunoco also averred that its Amended Petitions

were legally sufficient because the Petitions only need to address whether the siting of the buildings are reasonably necessary, not whether the Mariner East pipeline is necessary for the convenience and welfare of the public.

On June 18, 2014, Sunoco filed an Answer to the Preliminary Objections of DRN. Similar to its response to CAC's Preliminary Objections, Sunoco stated that it is a public utility as defined by the Code, because it has been certificated and regulated by the Commission as a public utility since 2002. Sunoco averred that, because it is subject to regulation as a public utility by the Commission, it is also a public utility corporation under the MPC. Sunoco also pointed out that the issue of the need for the Mariner East pipeline is not at issue in these proceedings.

On June 19, 2014, Sunoco filed an Answer to the Preliminary Objections of MWA. Sunoco's Answer referenced its Answer to DRN's Preliminary Objections and requested that the Commission deny MWA's Preliminary Objections.

Also on June 19, 2014, Sunoco filed an Answer to the Preliminary Objections of CCWGT. Sunoco again averred that it is a public utility as defined by the Code, because it has been certificated and regulated by the Commission as a public utility since 2002. Sunoco stated that, since it is subject to regulation as a public utility by the Commission, it is also a public utility corporation under the MPC. Additionally, Sunoco denied that the vapor combustion unit is a building and contended that the vapor combustion unit is a piece of equipment and, therefore, is a public utility facility not properly before the Commission in this proceeding.

Further, Sunoco denied that its Amended Petition lacked sufficient specificity on the basis that previous Commission Orders have held that 53 P.S. § 10619 does not require the specificity that CCWGT contends it does. Sunoco also denied that

5

there was any environmental impact involved in the construction of the proposed shelter building and that it was required by the Commission to evaluate the environmental impact of the construction of the proposed shelter building.

The ALJs' Initial Decision was dated July 23, 2014, but was not issued by the Commission until July 30, 2014. ALJs Salapa and Barnes sustained the Preliminary Objections filed by CAC, DRN, CCWGT, and the MWA and dismissed Sunoco's thirty-one Amended Petitions. I.D. at 23.

Sunoco filed Exceptions to the Initial Decision on August 19, 2014.

On August 29, 2014, CCWGT, DRN, MWA,[2] CAC, and WGT filed Replies to Exceptions.

## Background

### Sunoco's Certificates of Public Convenience

Sunoco is the product of various mergers and acquisitions of two pipeline companies that were originally certificated by the Commission's predecessor, the Pennsylvania Public Service Commission, in the early 1930s to transport petroleum and refined petroleum products.[3] These pipeline companies were Susquehanna Pipe Line Co.

---

[2]     MWA adopts verbatim DRN's Replies to Exceptions.
[3]     Pursuant to Section 5.408(a) of the Commission's Regulations, 52 Pa. Code § 5.408(a), we take administrative notice of the history of Certificates and Orders issued by the Commission and predecessor agencies. Under Section 103 of the Code, 66 Pa. C.S. § 103, any Certificates granted under prior iterations of the Code remain valid and have the full force and effect of law. WGT provided many of these documents for inclusion in our deliberations here as Appendix A to its Replies to Exceptions. We agree with WGT that these are "public records."

6

(Susquehanna) and the Keystone Pipe Line Company (Keystone). *See, Application of Susquehanna Pipe Line Co.*, Docket No. 21736-30, Folder No. 2 (Report and Order dated March 25, 1930); *Application of Keystone Pipe Line Company*, Docket No. 23566-1931, Folder No. 2 (Report and Order dated May 11, 1931). The pipeline path for Susquehanna traversed the length of Pennsylvania latitudinally between Philadelphia-area refinery plants and the Ohio border and longitudinally to the New York border. The Keystone Certificate linked the refinery region in Southeastern Pennsylvania "at or near Point Breeze, Philadelphia" to the Ohio and New York borders. These original pipeline authorities were subsequently expanded over the decades that followed. Title to these pipelines and Certificates have changed hands several times as applications for transfer were submitted to, and approved by, the relevant Commission.

Eventually, Keystone became owned by Atlantic Pipeline Corp. and Susquehanna by Sun Pipe Line Company. In 2002, this Commission approved the transfer of assets of both companies to Sunoco and granted Sunoco authority "to transport petroleum products in the former service territory of Sun Pipe Line Company and Atlantic Pipeline Corp[.]" *Joint Application of Sunoco Pipeline L.P., Sun Pipe Line Company and of Atlantic Pipeline Corp.*, Docket Nos. A-140001, A-140400 F2000, and A-140075 F2000 (Corrected Order entered January 14, 2002). Simultaneously, abandonment of those services by Susquehanna and Keystone were approved by Commission-issued Certificates. Notably, both the original Susquehanna and Keystone Certificates contained a restrictive amendment, stipulated to by the applicants and various protesting local gas distribution companies, that "no right, power or privilege" is granted "to use the pipe lines constructed hereunder…for the transportation, storage or distribution of natural, manufactured or mixed natural or artificial gas" absent first obtaining Pennsylvania Public Service Commission approval. However, the 2002 Certificate issued to Sunoco contained no restrictive amendments like those adopted in the 1930 and 1931 Certificates.

7

In 2013, Sunoco advised the Commission that it intended to revise its operations in view of the rapid development and limited infrastructure available to move Marcellus Shale natural gas and natural gas liquids (NGLs) to market. To that end, Sunoco filed an Application with the Commission at Docket No. A-2013-2371789 to abandon certain intrastate service along portions of its pipeline system and a Petition at Docket No. P-2013-2371775 to temporarily suspend a portion of certain intrastate service along other segments. Sunoco averred that the abandonment and suspension were necessary to construct its proposed Mariner East pipeline, which would meet a public need for the transportation of natural gas byproducts. By Order entered on August 29, 2013, and subsequently clarified on October 17, 2013, the Commission approved both the Application and the Petition. *See, Application of Sunoco Pipeline LP for a Certificate of Public Convenience to Abandon a Portion of its Petroleum Products Pipeline Transportation Service in Pennsylvania and a Petition for Approval of Temporary Suspension of a Portion of its Petroleum Product Pipeline Transportation Service in Pennsylvania*, Docket Nos. A-2013-2371789 and P-2013-2371775 (Order entered on August 29, 2013) (*August 2013 Order*).

Circumstances surrounding the Mariner East project changed, and Sunoco subsequently filed a petition with the Commission to amend the Commission's prior abandonment decision and to resume transportation service for petroleum products and refined petroleum products on a segment of its pipeline where its tariff was previously abandoned.[4] Sunoco explained that it had initially planned for the Mariner East pipeline to provide only interstate transportation of ethane and propane from west-to-east. However, Sunoco explained that, based on the high supply of propane and other petroleum products generated by the Marcellus Shale and the need for uninterrupted deliveries of propane in Pennsylvania, it now proposed to offer intrastate propane service. Specifically, Sunoco stated that it would change the directional flow from west-to-east

---

[4]   Sunoco's Petition was unopposed.

8

and would be transporting propane and ethane once the pipelines were reconfigured in the Mariner East project. In our Order approving Sunoco's request to resume service, we found that that "the Company has demonstrated that there are significant public benefits to be gained" from enhancing delivery options for Marcellus Shale producers. *Petition of Sunoco Pipeline, L.P. for Amendment of the Order Entered on August 29, 2013*, Docket No. P-2014-2422583 (Order entered July 24, 2014) at 7 (*Amendment Order*).

In our *Amendment Order*, we also clarified the procedures that Sunoco must follow to resume pipeline operations where its tariffs had been abandoned. We noted Sunoco's stated intent to resume service by initially shipping propane from Delmont, Pennsylvania to its Twin Oaks Pennsylvania facility. In doing so, we recognized our prior rulings and those of federal agencies holding that propane is a "petroleum product" and that "approval of the Petition is in the public interest, as Sunoco's proposed provision of intrastate propane service will result in numerous potential public benefits," including the need for adequate pipeline capacity to meet peak demand for propane and the avoidance of "the added expense and risks associated with trucking propane from the Marcellus Shale region." *Id.* at 9-10. Unopposed tariffs were subsequently filed and approved for the institution of the intrastate movement of propane at a rate of $2.91/bbl. *Sunoco Pipeline, L.P. Request for Approval of Tariff Pipeline - Pa. P.U.C. No. 16 and Waiver of 52 Pa. Code § 53.52(b)(2) and (c)(1) through (5)*, Docket No. R-2014-2426158 (Order entered August 21, 2014) (*Tariff No. 16 Order*).

Finally, in August of this year, Sunoco received our approval to extend its service territory to include Washington County. *Application of Sunoco Pipeline, L.P. for Approval of the Right to Offer, Render, Furnish or Supply Intrastate Petroleum and Refined Petroleum Products Pipeline Service to the Public in Washington County, Pennsylvania*, Docket No. A-2014-2425633 (Order entered August 21, 2014)

9

(*Washington County Application Order*).[5]  In seeking this additional certification, Sunoco stated its intent to establish the Houston, Washington County location as part of the first phase of the Mariner East project as the new origination point for the NGLs of propane and ethane to be transported and the expansion of its pipeline system in a second phase of the Mariner East project.  This second phase will be a new sixteen-inch or larger pipeline, paralleling the existing pipeline from Houston, Pennsylvania to the Marcus Hook Industrial Complex (MHIC) and running along much of the same route, as well as the addition of fifteen miles of pipeline from Houston, Pennsylvania to a point near the Pennsylvania-Ohio boundary line.  *Id.* at 2-3.  In approving the Washington County Certificate, we stated:

> We believe granting Sunoco authority to commence intrastate transportation of propane in Washington County will enhance delivery options for the transport of natural gas and natural gas liquids in Pennsylvania.  In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, ensuring that Pennsylvania's citizens enjoy access to propane heating fuel.  Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

*Id.* at 4.

**Sunoco's Amended Petitions**

Sunoco indicated that its Amended Petitions relate to the Mariner East project.  Sunoco described the project as an approximately 300-mile pipeline that will use Sunoco's existing pipeline infrastructure, supplemented by construction of an additional fifty-one mile extension from Houston, Pennsylvania to Delmont, Pennsylvania, to ship valuable natural energy resources from the Marcellus Shale in Pennsylvania to the MHIC

---

[5]      The application was unopposed.

10

on the Delaware River and Sunoco's Twin Oaks facilities operated in conjunction with the MHIC. Amended Petition at 2. Sunoco indicated that, as part of the Mariner East pipeline project and the repurposing of its existing pipeline assets, it will construct eighteen new pump stations and seventeen new valve control stations along the pipeline. Sunoco stated that these pump stations and valve control stations will be located in thirty-one municipalities in Pennsylvania. Amended Petition at 12. Sunoco explained that the pump stations will be used to inject energy into the flow of ethane and propane moving through the pipeline, and the valve control stations will provide a safety enhancement for the pipeline facilities by monitoring the temperature and pressure of the ethane and propane and automatically cutting off flows on the lines if there is a pressure loss. *Id.* at 13.

Sunoco averred that each pump station has two structures that could be characterized by municipalities as "buildings." Sunoco indicated that each station has a structure that surrounds the pump and functions to reduce noise, protect the pump equipment from weather impacts, and enable convenient maintenance of the pump equipment. Sunoco also indicated that each pump station has a power distribution center, which is a modular building that houses the electrical, control, and communication equipment for the pump. Similarly, Sunoco noted that each of the valve control stations has a single structure that protects the stations from weather impacts and allows for convenient maintenance of the site. Sunoco explained that this structure is smaller than the power distribution centers for pump stations and houses the electrical, control, and communication equipment for the valve control site. *Id.* at 14.

Sunoco stated that the pump and valve control stations are reasonably necessary for the convenience or welfare of the public. First, Sunoco averred that the locations of the pump and valve control stations are reasonably necessary to ensure efficient and safe operation of the new pipeline facilities. *Id.* at 14-15. Second, Sunoco

11

averred that the pump stations ensure that the propane is flowing properly, and, thus, contribute to the safety and efficiency of the project. Likewise, Sunoco submitted that the valve control stations ensure that the pipeline facilities operate safely and prevent harm to the public and the environment. Third, Sunoco emphasized that the Mariner East project, as a whole, will result in increased infrastructure for the continued development of Marcellus Shale resources by providing an efficient outlet for NGLs that are extracted from Marcellus Shale wells. *Id.* at 15.

### Discussion

Based on a thorough review of the various pleadings, the Initial Decision, and the Exceptions and Replies to Exceptions, we have determined that there are serious misconceptions regarding (1) Sunoco's regulated history with the Commission and (2) the specific issues that need to be disposed of in this proceeding. In this proceeding, the Commission has been asked to decide a very narrow question: whether enclosures (walls and a roof) that are built around and over a valve control or pump station should be exempt from municipal zoning regulation. To answer this question, we must decide whether it is in the convenience or welfare of the public for Sunoco to enclose the planned facilities with walls and roofs, even if those enclosures may conflict with local zoning ordinances. Sunoco is not seeking (1) a Certificate of Public Convenience; (2) authorization to build the Mariner East pipeline or any facilities attendant thereto (such as valve control or pump stations); (3) approval of the siting or route of the pipeline; or (4) a finding that the proposed pipeline complies with relevant public safety or environmental requirements. Those issues are outside the scope of this proceeding.

For these reasons, in addition to resolving the Exceptions and all outstanding Preliminary Objections, we will make several legal determinations in this Opinion and Order regarding the following: (1) the status and scope of Sunoco's current

12

certificated authority under the jurisdiction of this Commission; (2) the nature of intrastate propane and methane pipeline transportation service; and (3) the issues to be addressed when making a determination under Section 619 of the MPC. We will also remand this matter to the OALJ for a determination on Sunoco's Amended Petitions.

**Legal Standards**

### General

The ALJs made fifteen Findings of Fact and reached five Conclusions of Law. I.D. at 9-11, 22-23. We shall adopt and incorporate herein by reference the ALJs' Findings of Fact and Conclusions of Law, unless they are reversed or modified by this Opinion and Order, either expressly or by necessary implication.

We note that any issue, Preliminary Objection, or Exception that we do not specifically delineate has been duly considered and will be denied without further discussion. It is well settled that we are not required to consider, expressly or at length, each contention or argument raised by the parties. *Consolidated Rail Corp. v. Pa. PUC*, 625 A.2d 741 (Pa. Cmwlth. 1993); *see also, generally, University of Pennsylvania v. Pa. PUC*, 485 A.2d 1217 (Pa. Cmwlth. 1984).

### Preliminary Objections

The ALJs dismissed Sunoco's Amended Petitions based on their ruling on Preliminary Objections. Because this case is at the preliminary objections stage, we are not ruling on the merits of Sunoco's underlying zoning exemption requests at this time. Section 5.101 of the Commission's Regulations, 52 Pa. Code § 5.101, sets forth the

13

grounds for filing preliminary objections.  In pertinent part, that section provides as
follows:

### § 5.101.  Preliminary objections.

(a)      *Grounds.* Preliminary objections are available to
parties and may be filed in response to a pleading except
motions and prior preliminary objections.  Preliminary
objections must be accompanied by a notice to plead, must
state specifically the legal and factual grounds relied upon
and be limited to the following:
　　　(1)      Lack of Commission jurisdiction or improper
service of the pleading initiating the proceeding.
　　　(2)      Failure of a pleading to conform to this chapter
or the inclusion of scandalous or impertinent matter.
　　　(3)      Insufficient specificity of a pleading.
　　　(4)      Legal insufficiency of a pleading.
　　　(5)      Lack of capacity to sue, nonjoinder of a
necessary party or misjoinder of a cause of action.
　　　(6)      Pendency of a prior proceeding or agreement
for alternative dispute resolution.
　　　(7)      Standing of a party to participate in the
proceeding.

52 Pa. Code § 5.101(a).


Commission procedure regarding the disposition of preliminary objections
is similar to the procedure utilized in Pennsylvania civil practice.  A preliminary
objection in civil practice seeking dismissal of a pleading will be granted only where
relief is clearly warranted and free from doubt.  *Interstate Traveller Services, Inc. v. Pa.
Dep't of Environmental Resources*, 486 Pa. 536, 406 A.2d 1020 (1979).  The moving
party may not rely on its own factual assertions, but must accept for the purposes of
disposition of the preliminary objection all well-pleaded, material facts of the other party,
as well as every inference fairly deducible from those facts.  *County of Allegheny v.
Commonwealth of Pa.*, 507 Pa. 360, 490 A.2d 402 (1985).  The preliminary objection

14

may be granted only if the moving party prevails as a matter of law.  *Rok v. Flaherty*, 527 A.2d 211 (Pa. Cmwlth. 1987).  Any doubt must be resolved in favor of the non-moving party by refusing to sustain the preliminary objections.  *Dep't of Auditor General, et al. v. State Employees' Retirement System, et al.*, 836 A.2d 1053, 1064 (Pa. Cmwlth. 2003) (citing *Boyd v. Ward*, 802 A.2d 705 (Pa. Cmwlth. 2002)).

### Exemptions from Local Zoning Ordinances Under the MPC

The MPC provides, in relevant part, as follows:

> This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

53 P.S. § 10619.

In order for the MPC exemption to apply, Sunoco must qualify as a "public utility corporation."[6]  Section 1103 of the Business Corporation Law (BCL) defines "public utility corporation" as including "[a]ny domestic or foreign corporation for profit that: ... is subject to regulation as a public utility by the Pennsylvania Public Utility Commission or an officer or agency of the United States."  15 Pa. C.S. § 1103.  In other words, an entity meets the definition of "public utility corporation" for MPC exemption purposes by being a "public utility" under the Public Utility Code.

---

[6]    Pennsylvania courts have held that Section 619 of the MPC must be interpreted by using the definition of "public utility corporation" in Section 1103 of the Business Corporation Law, 15 Pa. C.S. § 1103.  *Pa. PUC v. WVCH Communications, Inc.*, 351 A.2d 328 (Pa. Cmwlth. 1976).

Thus, a municipality may exercise its zoning powers over a public utility building unless the Commission determines that the "site is reasonably necessary for the public convenience or welfare." *Del-AWARE Unlimited, Inc. v. Pa. PUC*, 513 A.2d 593, 596 (Pa. Cmwlth. 1986). If the Commission finds that the location is reasonably necessary for the convenience or welfare of the public, the building is exempt from local zoning ordinances under the MPC. *Id.*

Whether the proposed buildings are reasonably necessary for the convenience or welfare of the public does not require the utility to prove that the site it has selected is absolutely necessary or that it is the best possible site. Rather, the Commission's finding that the site chosen is reasonably necessary will not be disturbed if supported by "substantial evidence," which is that quantum of evidence that a reasonable mind might accept as sufficient to support that conclusion. *O'Connor v. Pa. PUC*, 582 A.2d 427, 433 (Pa. Cmwlth. 1990).

**The Preliminary Objections based on Lack of Commission Jurisdiction**

**ALJs' Recommendation**

According to the ALJs, the Preliminary Objections contended that the Commission lacks jurisdiction over the Amended Petitions because Sunoco is not a public utility as defined by the Code and is not a public utility corporation as that term is used in the MPC. I.D. at 16. The ALJs noted that Section 102 of the Code provides the following definition for "public utility," in relevant part:

> (1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
>> (i) Producing, generating, transmitting, distributing or

16

furnishing natural or artificial gas, electricity, or steam for the production of light, heat, or power to or for the public for compensation.

\*          \*          \*

(v) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation.

66 Pa. C.S. § 102(1)(i) and (v). The ALJs held that Sunoco's proposed service did not qualify as public utility service within the meaning of Section 102 of the Code. I.D. at 21. The ALJs reasoned that Sunoco's Amended Petitions did not state that Sunoco will transport natural gas or that it is a producer of natural gas distributing directly to the public for compensation. Additionally, the ALJs reasoned that Sunoco's Amended Petitions did not state that the transportation of NGLs would be for the public in Pennsylvania, as the Amended Petitions stated that, after the NGLs are delivered from Mechanicsburg to Twin Oaks, the product could be sent to third-party storage facilities or distribution terminals. *Id.*

The ALJs concluded that Sunoco's proposed service would also not qualify as public utility service under *Drexelbrook Associates v. Pa. PUC*, 418 Pa. 430, 212 A.2d 237 (1965) *(Drexelbrook)*.[7] I.D. at 21. The ALJs could not discern from the Amended Petitions what members of the public would use Sunoco's proposed service, and the ALJs found that the nature of Sunoco's proposed service was private because it was limited to a select few shippers and was not available to members of the public. The ALJs noted

---

[7]     In *Drexelbrook*, the Pennsylvania Supreme Court found that an apartment complex landlord who sold water, electric, and natural gas services to tenants was not a public utility because only a privileged group – tenants accepted for residency – could subscribe to the services.

17

that the Amended Petitions indicated that the Twin Oaks facilities and the MHIC facility
are connected by pipeline, and the Twin Oaks terminal is operated in conjunction with
the MHIC. The ALJs believed that it appeared from the Amended Petitions that the
propane could be stored at the Twin Oaks terminal for later processing and export
through the Marcus Hook facility or to third-party distributors. *Id.*

The ALJs also found that Sunoco did not satisfy the definition of a public
utility corporation in the BCL. The ALJs determined that Sunoco's proposed transport of
ethane and propane through Pennsylvania at the Federal Energy Regulatory Commission
(FERC) approved rates was interstate common carrier service regulated by FERC
through the Interstate Commerce Clause. I.D. at 19. In reaching this conclusion, the
ALJs took judicial notice of a declaratory judgment issued on February 15, 2013, at
Docket No. OR13-9-000, in which FERC declared that Sunoco demonstrated a need for
additional pipeline capacity to transport NGLs produced in association with natural gas in
the Marcellus and Utica Shale production regions. The ALJs stated that FERC approved
Sunoco's plan to reserve ninety percent of the available capacity for select shippers
committing to ship or pay contracts at premium rates for initial ten to fifteen year terms
and to provide ten percent capacity for uncommitted shippers that do not provide
financial assurance. The ALJs also stated that FERC found that the proposed terms of
service and rate structure were reasonable. I.D. at 19.

The ALJs relied on Sunoco's statement in its Original Petition that it is
regulated by FERC under the Interstate Commerce Act (ICA) as a common carrier. I.D.
at 20 (citing Original Petition at 5-8). The ALJs indicated that the ICA regulates
common carriers of interstate commerce, not public utilities, and, accordingly, found that
Sunoco did not meet the definition of a public utility corporation as set forth in the BCL
at 15 Pa. C.S. § 1103. I.D. at 20. The ALJs also relied on a recent Court of Common
Pleas of York County decision holding that Sunoco is not a public utility corporation

18

within the meaning of the BCL because it is regulated as a common carrier by FERC. I.D. at 20 (citing *Sunoco Pipeline, L.P. v. Loper*, York County Court of Common Pleas, Docket No. 2013-SU-4518-05, slip. op. at 2 (February 25, 2014)).

Furthermore, the ALJs found that the Amended Petitions were premature. The ALJs stated that Sunoco filed the Amended Petitions before it sought and acquired Commission approval for the tariff filings regarding the transportation of NGLs, including propane and ethane in Pennsylvania from west to east. The ALJs also stated that Sunoco's Washington County Application was still pending before the Commission. *Id.* at 22.

For these reasons, the ALJs held that Sunoco's proposed Mariner East pipeline service did not constitute public utility service and, accordingly, that the proposed buildings described in the Amended Petitions were not public utility buildings. The ALJs found that, as a result, the Commission lacked jurisdiction to find that the proposed buildings were necessary for public utility service and exempt from local zoning ordinances. *Id.* at 21.

Exceptions and Replies

Sunoco

Sunoco avers that the Initial Decision erred by concluding, in Conclusion of Law No. 1, that Sunoco's proposed service did not meet the definition of public utility service under the Code. Exc. at 15. Sunoco also excepts to the related Conclusion of Law No. 4, finding that Sunoco's proposed buildings would not be used in public utility service as part of the Mariner East project. Sunoco argues that the conclusions reached in the Initial Decision distort the proposed service described in the Amended Petitions;

19

misconstrue fundamental principles of public utility law; misinterpret the decisions in *Drexelbrook, supra,* and its progeny; and ignore recent Commission precedent. Exc. at 16.

Sunoco states that, contrary to the determination in the Initial Decision, the users of public utility service are not required to be end-user or retail consumers, and the services offered may be economically feasible only to entities that have large volumes of business. *Id.* at 17 (citing *Rural Telephone Co. Coalition v. Pa. PUC*, 941 A.2d 751 (Pa. Cmwlth. 2008); *Waltman v. Pa. PUC*, 596 A.2d 1221, 1223-1224 (1991), *aff'd*, 533 Pa. 304, 621 A.2d 994 (1993)). Sunoco also states that the Commonwealth Court has ruled that a pipeline can be certificated as a public utility, even when the product will be delivered to only a few end-users, so long as the product passing through the line will belong to the shippers and the shippers can access the transportation service pursuant to filed tariffs and established rates. Exc. at 18 (citing *Independence Twp. Sch. Dist. Appeal*, 412 Pa. 302, 308, 194 A.2d 437, 440 (1963)).

Sunoco avers that the Mariner East project, as described in its Amended Petitions, meets the *Drexelbrook* standards. Sunoco explains that, during each phase of the project, the proposed intrastate service will be provided pursuant to tariffs or tariff supplements filed with the Commission. Sunoco indicates that this means that the service will be available on a nondiscriminatory basis to all shippers that demand the service, subject only to available capacity. Sunoco states that, if the demand exceeds the capacity, then service will be prorated so that no shipper desiring service is excluded. Sunoco also states that, because the service will be provided according to the uniform rates and conditions in its tariff, it will not have the ability to limit service to particular individuals. Sunoco distinguishes its proposed service from other pipeline service on the basis that the end-users for the Mariner East project will be determined by the operation of the free market, and Sunoco will not own the product being transported or dictate the

20

markets to which the product will move. Exc. at 19. Regardless, Sunoco anticipates that, due to the shortages of propane during the winter of 2013-2014, much of the propane it transports will be used in Pennsylvania for residential heating, thereby serving the public interest. *Id.* at 20.

Sunoco objects to the ALJs' suggestion that the intrastate service to be provided by the Mariner East pipeline is not "for the public" because it is being provided along with interstate service where shippers have contracted for "firm commitment" service. Sunoco indicates that it has been providing both intrastate and interstate transportation service on many of its pipelines in Pennsylvania since it was certificated in 2002. Sunoco states that the Code does not mandate that pipeline service be devoted exclusively to intrastate service. Sunoco believes that using the same pipeline to provide both intrastate and interstate service generates economies of scale and scope, resulting in benefits to intrastate and interstate shippers, their customers, and the public. *Id.* at 21.

Additionally, Sunoco contends that the Initial Decision ignored the Commission's decision in *Application of Laser Northeast Gathering Company, LLC for Approval to Begin to Offer, Render, Furnish, or Supply Natural Gas Gathering and Transporting or Conveying Service by Pipeline to the Public in Certain Townships of Susquehanna County, Pennsylvania,* Docket No. A-2010-2153371 (Order entered June 14, 2011) (*Laser June 2011 Order*). Sunoco avers that, pursuant to the *Laser June 2011 Order,* providing service to shippers constitutes providing service to and for the public in accordance with Section 102 of the Code. Exc. at 23. Sunoco also cites to the Commission's Reconsideration Order in the *Laser* proceeding to demonstrate that, similarly to Laser, Sunoco will be providing service "for the public." *See, Application of Laser Northeast Gathering Company, LLC for Approval to Begin to Offer, Render, Furnish, or Supply Natural Gas Gathering and Transporting or Conveying Service by Pipeline to the Public in Certain Townships of Susquehanna County, Pennsylvania,*

21

Docket No. A-2010-2153371 (Order entered August 25, 2011) (*Laser Reconsideration Order*). Sunoco states that it intends to serve all NGL shippers who request pipeline transportation service, subject only to sufficient pipeline capacity. Sunoco explains that, if demand exceeds pipeline capacity, committed interstate shippers will be entitled to their full capacity under their agreements, and capacity for uncommitted shippers will be subject to allocation among all uncommitted shippers. Sunoco indicates that it has made a commitment to expand service, if feasible, to maintain pace with the growing demand of shippers for take-away capacity from the Marcellus Shale in western Pennsylvania. Sunoco notes that, in its Answer to the DRN Preliminary Objections, it stated that the intrastate service it would offer was service "to and for the public" for the following reasons:

> (i) [Sunoco] will be transporting or conveying the propane by pipeline for compensation; (ii) [Sunoco] explicitly has stated that it will serve any and all potential customers needing to move propane through the pipeline system subject to the available capacity and the tariffs on file with the Commission; (iii) [Sunoco] has explicitly stated that it will be utilizing tariffs to establish technical requirements, delivery points, and other terms and conditions of service; and (iv) [Sunoco] has made a commitment to endeavor to expand the capacity of the intrastate service by building Mariner East 2, if commercial conditions so permit.

Exc. at 25 (quoting Answer to Preliminary Objections of DRN at 6).

Furthermore, Sunoco disagrees with the ALJs' statement that its Amended Petitions were filed prematurely. Sunoco avers that a tariff can be filed only when a utility is prepared to offer service, because once the tariff becomes effective, the public may demand service based on the terms and conditions in the tariff. Sunoco believes that to conclude that the Commission must approve the tariff before it can make a determination under Section 619 of the MPC creates a "Catch-22": the utility needs the

22

buildings to be ready to offer service, yet the Commission would be refusing to grant the exemptions requested to erect the buildings because service had not yet begun. Exc. at 32.

Finally, Sunoco objects to Conclusion of Law No. 2, which found that Sunoco was not a "public utility corporation" under the BCL. Exc. at 25. First, Sunoco states that the ALJs incorrectly concluded that Sunoco was not a public utility corporation due to its common carrier status under federal law. Sunoco avers that a state-regulated public utility and a federal-regulated common carrier are not mutually exclusive. Sunoco also avers that there is no conflict between the ICA and the Code, as the ICA applies to interstate movements, while the Code applies to intrastate movements. *Id.* at 26. Specifically, Sunoco states that the ICA provides that FERC has no authority to regulate intrastate shipments. *Id.* (citing *Amoco Pipeline Co.*, 1993 WL 25751 at *4). According to Sunoco, for this reason, pipeline service operators can be, and frequently are, regulated by both FERC and the Commission. Nevertheless, Sunoco notes that, to provide service in Pennsylvania, a company must first receive a Certificate under Section 1102(a)(1) of the Code, 66 Pa. C.S. § 1102(a)(1). Exc. at 27. Sunoco believes that, if the reasoning in the Initial Decision is adopted, the illogical result will be apparent: if a pipeline operator is denied a Certificate because it is also operating as a common carrier under federal law, then the operator would not be able to provide both intrastate and interstate service. *Id.* at 27-28. Sunoco indicates that it is regulated by FERC as a common carrier and by the Commission as a public utility. *Id.* at 28.

Sunoco contends that the Initial Decision's reliance on FERC's February 15, 2013 Order to support the finding that Sunoco is not a public utility corporation was misplaced. According to Sunoco, FERC ensured that a percentage of Sunoco's pipeline would remain available for intrastate shipments by providing that ten percent of the pipeline remained for uncommitted shippers. Additionally, Sunoco states that the FERC

23

decision is factually different from its Amended Petitions that are before the Commission, because when Sunoco petitioned FERC for a declaratory order, Sunoco was planning to use the Mariner East pipeline to provide interstate transportation service of NGLs and was not planning to provide intrastate transportation service for propane at that time. Sunoco indicates that, due to the increased shipper demand for intrastate shipments of propane in 2013 to 2014, it modified the scope of the first phase of the Mariner East project to provide for the acceleration of intrastate pipeline transportation service. *Id.* at 29. Sunoco notes that these changes occurred after the FERC proceeding concluded in February 2013. Sunoco avers that the FERC Order did not relate to or impact Sunoco's ability to provide intrastate service or otherwise affect its status as a public utility. *Id.* at 30.

Sunoco asserts that the Initial Decision's reliance on *Loper, supra,* is also misplaced, as that case is legally and factually distinguishable. Sunoco states that, like the FERC Order, the *Loper* decision was issued before Sunoco modified its business plans to address the rising demand for intrastate shipments of propane. Sunoco explains that, in *Loper,* the court rejected Sunoco's argument that it met the definition of a public utility corporation under the BCL because it was a common carrier regulated by FERC and, therefore, was subject to regulation as a public utility by "an officer or agency of the United States." Sunoco avers that the court could not consider whether it qualified as a public utility corporation due to regulation by the Commission at that time because Sunoco had not yet proposed to provide intrastate service. *Id.*

**CAC**

In its Replies to Exceptions, CAC avers that the ALJs correctly found that Sunoco's proposed Mariner East pipeline service does not meet the definition of public utility service under Section 102 of the Code. CAC R. Exc. at 4. CAC contends that

24

Sunoco's assertion that it plans to use a small amount of propane, specifically 5,000 barrels out of the pipeline's daily capacity of over 70,000 barrels for potential distribution to Pennsylvania consumers, when its pipeline is primarily designed to provide interstate service for eventual shipping to foreign markets, is insufficient to permit Sunoco to transform its project into public utility service for Pennsylvanians. *Id.* at 5. CAC states that Sunoco's Amended Petitions do not contain any statements that affirmatively indicate any change in the primary purpose of the proposed project, nor do they contain any statements indicating that propane delivered to the Twin Oaks facility would definitely be delivered to Pennsylvania customers. *Id.* at 5-6.

CAC believes that Sunoco's Petitions were "artfully phrased," because they stated that 5,000 barrels of propane would initially be delivered to the Twin Oaks facility, from which point it is possible that propane could then be delivered through third party distributors intrastate to Pennsylvania residents. *Id.* at 6 (citing Amended Petitions at 2). CAC also believes that, based on Sunoco's statements, it is equally possible that 5,000 barrels might be temporarily stored at Twin Oaks and later shipped to other states or to international markets. CAC asserts that Sunoco's language in its Exceptions is also broad and vague, as it attempts to argue that Sunoco's proposed project will be for the public because it will be delivering propane intrastate. CAC R. Exc. at 6. For example, CAC submits that Sunoco states that the function of the Mariner East project is to transport NGLs "from the Marcellus Shale to markets in Pennsylvania *and elsewhere*," and the Exceptions describe the primary purpose of the project as "to provide much needed take-away capacity for natural gas liquids derived from the Marcellus Shale, and provide shippers with a transportation method in which to reach local, *regional and international markets*." *Id.* at 6-7 (quoting Exc. at 14 and 19-20 (emphasis supplied by CAC)). CAC states that Sunoco has conceded that the intrastate capacity of its proposed project would be limited to no more than ten percent of the pipeline capacity, with ninety percent committed to firm interstate shippers, and that Sunoco has also indicated that it will only

25

use the proposed pipeline for propane transportation for a limited period of time until it builds the Mariner East 2 pipeline. CAC R. Exc. at 7-8. For these reasons, CAC contends that the proposed project currently under review by the Commission would at best only deliver a small amount of propane intrastate for a short and defined period. *Id.* at 8.

Additionally, CAC avers that Sunoco's proposed Mariner East project does not meet the *Drexelbrook* test. CAC R. Exc. at 8. CAC states that the fact that intrastate capacity on the proposed project would be limited to no more than ten percent indicates that Sunoco would not be committing to provide intrastate service to any and all members of the public who may require it. *Id.* at 8-9. CAC also states that Sunoco's proposed project would, at most, serve a limited number of highly specialized intrastate shippers using a fraction of the interstate pipeline capacity. *Id.* at 9. For similar reasons, CAC asserts that Sunoco's Mariner East project does not meet the standards set forth in the Policy Statement at 52 Pa. Code § 69.1401, which provides guidance for determining public utility status. CAC R. Exc. at 9. CAC indicates that the proposed project fails to satisfy the third criterion in that policy statement, because the Mariner East project would serve a defined, privileged, and limited group and would not be available to any member of the Pennsylvania public who was privileged to demand service. According to CAC, Sunoco's project also fails to satisfy the second criterion, because the Mariner East project was originally designed to serve only large shippers serving foreign markets and had to be significantly revised through the Amended Petitions to include the diversion of propane to a new facility to even feasibly serve the Pennsylvania public. *Id.* at 10, 11. CAC contrasts the facts in this case from those in the *Laser* proceeding on the basis that Laser could serve any and all interested customers without any significant construction or revision to the proposed design of its project. *Id.* at 11 (citing *Laser June 2011 Order* at 16). CAC also finds Laser distinguishable on the basis that Laser was prepared to furnish service to "any and all potential customers needing to move gas through the pipeline

26

system ... [including] large capital, largely capitalized producers, small capitalized producers, individual landowners owning wells ... [and] landowner groups." CAC R. Exc. at 11 (quoting *Laser June 2011 Order* at 25).

CAC states that the ALJs correctly found that Sunoco was not a public utility corporation as defined in the BCL. CAC R. Exc. at 12. According to CAC, Sunoco appears to misconstrue the ALJs' decision by arguing that the Initial Decision incorrectly held that Sunoco could not be regulated both at the federal level by FERC as an interstate carrier and at the state level by the Commission as an intrastate carrier. CAC indicates that the ALJs held that, in the context in which Sunoco is regulated at the federal level by an agency of the United States, it is regulated as a common carrier and not as a public utility. *Id.* (citing I.D. at 20). CAC avers that Sunoco does not meet the definition of a public utility corporation in the BCL because it is regulated by FERC, an agency of the United States, as a common carrier and not as a public utility. CAC R. Exc. at 13. CAC submits that the holding in *Loper* was that Sunoco did not meet the second part of the BCL's definition of public utility corporation because Sunoco was regulated by an agency of the United States under the ICA as a common carrier and not as a public utility. *Id.* at 14 (citing *Loper* at 5).

**DRN**

In its Replies to Exceptions, DRN avers that the ALJs correctly concluded that Sunoco's Mariner East project does not qualify as public utility service under Section 102 of the Code. DRN agrees with the ALJs that Sunoco failed to show that the transportation of NGLs would be for the public in Pennsylvania, because Sunoco did not specify who would be the end-user customer. DRN states that Sunoco admits that it has no control over who the end-user will be since it cannot dictate the markets to which the product will move. DRN R. Exc. at 2. DRN also states that Sunoco admits in its

27

Exceptions that the Twin Oaks facility is part of the MHIC and, DRN contends, this provides further evidence that the final end-user will be nearly impossible to define and that the propane could easily be stored at the Twin Oaks terminal for later processing and exportation from the MHIC. *Id.* at 2-3.

DRN asserts that Sunoco's proposed Mariner East project does not qualify as public utility service under the standards in *Drexelbrook* and its progeny. DRN R. Exc. at 3. DRN avers that *Drexelbrook* rejected the very argument that Sunoco is offering in this case: that it is a public utility because its services will be provided "according to uniform rates and conditions, as set forth in tariffs," and it will not have the "ability to confine service to particular individuals." DRN R. Exc. at 3 (quoting Exc. at 19). DRN states that Sunoco has admitted to entering into four Transportation Services Agreements with three shippers for the project and, accordingly, has retained the discretion to select its customers based on those customers meeting key terms and conditions in its contracts. Additionally, DRN believes that Sunoco's business model fits precisely into the exception to public utility service set forth in the third criterion of the policy statement at 52 Pa. Code § 69.1401, because Sunoco's intended method of operation allows it to select privileged customers. DRN R. Exc. at 4.

Further, DRN avers that, even if Sunoco could specify the public character of its small throughput of NGLs for the partitioned portion of the project, the private character of the project as a whole shows that Sunoco cannot be considered a public utility. *Id.* at 4-5. DRN submits that the primary purpose of the Mariner East project is to provide transportation service to the MHIC, as demonstrated by the high percentage of the project's capacity that is wholly dedicated to serving the MHIC. DRN also contends that the *Laser* proceeding does not support Sunoco's position that it is providing public utility service, because Laser withdrew its Application in that proceeding and is currently operating as a private pipeline. *Id.* at 5.

28

Finally, DRN argues that the ALJs correctly decided that Sunoco fails to satisfy the definition of a public utility corporation under the BCL because Sunoco is regulated as a common carrier by FERC. DRN avers that Sunoco has not cited to any precedent supporting the position that a pipeline company regulated by FERC as a common carrier for the interstate transportation of NGLs was also classified as a public utility corporation pursuant to the MPC and, in fact, such precedent does not exist. DRN R. Exc. at 6. DRN also avers that the ALJs correctly relied on *Loper*, in which the court determined that, since Sunoco was regulated as a common carrier by FERC, it was not entitled to eminent domain powers. DRN asserts that 15 Pa. C.S. § 1103 addresses public utility corporations as entire entities and, therefore, Sunoco's contention that both FERC and the Commission have jurisdiction over the Mariner East project is meritless. *Id.* at 7 (citing *National Fuel Gas Supply Corp. v. Kovalchick Corp.*, 74 Pa. D. & C.4th 22, 28 (2005)).

**CCWGT**

Similarly to CAC and DRN, CCWGT states that the ALJs correctly found that Sunoco has not alleged facts sufficient to demonstrate that it will be providing service within Pennsylvania as a public utility. CCWGT R. Exc. at 6. CCWGT avers that Sunoco has not met the standards in *Laser* for qualification as a public utility, because it has not made a commitment to serve any and all intrastate customers and to expand capacity, as necessary, to meet increased customer demand. *Id.* at 8. CCWGT notes that, instead, Sunoco has said that intrastate capacity is limited to no more than ten percent of the capacity of the pipeline and admits that, if the demand exceeds pipeline capacity, committed interstate shippers will be entitled to their full capacity under their agreements, while capacity for uncommitted shippers will be subject to allocation among all uncommitted shippers. *Id.* at 8-9. CCWGT interprets this to mean that Sunoco will

29

not serve all intrastate customers and expand capacity to meet intrastate demand and, if interstate uncommitted demand exceeds the ten percent of capacity which is not covered by firm interstate contracts, then both interstate and intrastate shippers will be curtailed. *Id.* at 9.

CCWGT emphasizes that it does not believe Sunoco has alleged sufficient facts to show that it will even provide intrastate service. CCWGT agrees with the ALJs that Sunoco stated only that it will ship propane to its affiliate's Twin Oaks facility and that the Twin Oaks terminal is operated in conjunction with the MHIC. Thus, CCWGT concurs with the ALJs that, based on the averments in the Amended Petitions, propane could be stored in the Twin Oaks terminal for later processing and export through the Marcus Hook facility. *Id.* (citing I.D. at 21).

CCWGT also agrees that the ALJs correctly held that Sunoco did not qualify as a public utility for intrastate service, and its interstate service as a common carrier did not qualify Sunoco as a public utility corporation under the MPC and the BCL. CCWGT specifically avers that the federal component of Sunoco's service, by itself, is insufficient to give the Commission jurisdiction over a Section 619 petition, because FERC regulation of petroleum pipelines is regulation as a common carrier, not as a public utility. CCWGT R. Exc. at 11.

**WGT**

In its Replies to Exceptions, WGT states various reasons why it believes Sunoco's proposed Mariner East project does not meet the definition of a public utility under the Code and Pennsylvania law. WGT avers that, until Sunoco applies for a Certificate for the project and indicates a legal basis for its plan to provide intrastate public utility service, its Amended Petition is not supported or timely. WGT R. Exc. at 6-

30

7.  First, WGT contends that Sunoco has not shown that the proposed project will serve the public in Pennsylvania, as the capacity that will be available for intrastate shippers is an open question, which WGT submits cannot properly be addressed in a Section 619 petition. *Id.* at 7-8.

Second, WGT contends that Sunoco's Certificate authorizing different services is irrelevant to the service Sunoco intends to provide through the Mariner East pipeline.  WGT states that Sunoco is required to amend its Certificate or to obtain a new Certificate, pursuant to Section 1102(a)(1) of the Code, 66 Pa. C.S. § 1102(a)(1), because, according to WGT, Sunoco will be providing service of a different nature. *Id.* at 8.  WGT cites to two Pennsylvania cases in support of its argument that Sunoco must go through an additional application proceeding in order to add services or territory not originally included in its Certificate.[8]  WGT avers that Sunoco's current Certificate does not pertain to west to east transportation of propane or ethane or to the pressure and other conditions that will apply to the Mariner East project and, as such, Sunoco does not have authorization for the proposed service. *Id.* at 8, 9, 10-15.  WGT also avers that safety concerns of the Township, its residents, and other Parties to the proceeding have not been addressed in any prior proceedings before the Commission. *Id.* at 8-9.

WGT argues that Sunoco cannot use the *Amendment Order* to expand its authority under its Certificate, because Sunoco cannot claim any rights greater than those it possessed prior to filing for abandonment. *Id.* at 17.  WGT contends that the *Amendment Order* does not address the problem that, according to WGT, Sunoco plans to offer a different service than the one that it previously abandoned.  WGT also contends that a due process problem may be created with any effort to expand authority in the

---

[8]     WGT R. Exc. at 16 (citing *Ferry v. Pa. PUC*, 192 Pa. Super. 331, 162 A.2d 266 (Pa. Super. Ct. 1960); *Rosemont Taxi Cab Co., Inc. v. Philadelphia Parking Authority*, 68 A.3d 29 (Pa. Cmwlth. 2013)).

31

context of a Petition for Amendment in the absence of notice and a hearing. *Id.* at 18 (citing *Armstrong Telecommunications, Inc. v. Pa. PUC*, 835 A.2d 409 (Pa. Cmwlth. 2003); *Popowsky v. Pa. PUC*, 805 A.2d 637 (Pa. Cmwlth. 2002)). WGT similarly argues that Sunoco's recently filed tariff supplement, Tariff Pipeline – Pa. P.U.C. No. 16, does not help Sunoco's arguments, because the tariff is not effective yet and does not contain all of the supporting data required by Section 53.52 of the Commission's Regulations, 52 Pa. Code § 53.52. WGT R. Exc. at 19.

Third, WGT avers that Section 619 of the MPC authorizes the Commission to over-ride local zoning ordinances only when it is necessary to achieve a broader public interest through the provision of public utility service. *Id.* (citing *Robinson Township v. Commonwealth of Pennsylvania*, 83 A.3d 901, 931, 954 (Pa. 2013)). WGT states that exempting a significant project from municipal zoning laws is a rare occurrence under the state Constitution and laws. WGT asserts that "[t]he assumption of M.P.C. § 619 is that a true public utility – an enterprise that meets the needs of a broad public – is of singular importance and requires a uniform system of land use regulation." WGT R. Exc. at 21. WGT also asserts that the proposed Mariner East project does not qualify for this standard. *Id.*

### Disposition

Initially, we note the procedural posture of this case: four Parties filed various Preliminary Objections to Sunoco's Amended Petitions, contending, *inter alia*, that the Commission lacks jurisdiction over the Petitions. As stated above, preliminary objections should only be granted where relief is clearly warranted and free from doubt. Therefore, in this case, the Preliminary Objections before us should only be granted if it is clear that we do not have jurisdiction over the Amended Petitions. Viewing the Amended Petitions in the light most favorable to Sunoco, as the non-moving party, we

32

conclude that the Preliminary Objections before us should be denied, because Sunoco's Amended Petitions adequately pled sufficient facts for us to find that Sunoco is both a "public utility" under Section 102 of the Code, 66 Pa. C.S. § 102, and a "public utility corporation" under the BCL and Section 619 of the MPC. As discussed in detail herein, Sunoco has been certificated as a public utility in Pennsylvania for many years, and the existence of Commission Orders granting the Certificates to Sunoco is *prima facie* evidence of the facts therein, including that Sunoco is a public utility under the Code.

The instant Petitions were filed pursuant to Section 619 of the MPC, 53 P.S. § 619, which provides as follows:

> This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

The ALJs concluded that the Commission lacks jurisdiction because it is clear that: (1) Sunoco does not meet the definition of a public utility corporation articulated in the BCL, I.D. at 20, and (2) Sunoco's proposed Mariner East pipeline service does not constitute public utility service as defined in the Code or under the standards set forth in *Drexelbrook, supra*, I.D. at 21. We disagree with these findings.

With regard to the ALJs' first finding, we disagree that it is clear that Sunoco is not a "public utility corporation." Section 1103 of the BCL defines a "public utility corporation" as including corporations that are "subject to regulation as a public utility by the Pennsylvania Public Utility Commission or an officer or agency of the United States." 15 Pa. C.S. § 1103. In this proceeding, Sunoco has not contended that it is a public utility corporation based on its federal status as a common carrier. *See,*

33

Answer to Preliminary Objections of CCWGT at 9 ("[Sunoco] admits that its Amended Petition does not assert a claim that it is a 'public utility corporation' under the MPC by virtue of its status as a federally regulated pipeline. [Sunoco] is a public utility by virtue of its existing Certificates of Public Convenience ..."). Even viewing the Amended Petitions in the light most favorable to Sunoco, Sunoco is not making an argument that it qualifies as a public utility corporation based on regulation as a public utility by an officer or agency of the United States.

Nevertheless, in this case, Sunoco has pled sufficient facts for us to conclude that it is a corporation that is subject to regulation as a public utility by this Commission. Sunoco asserted in its Amended Petitions that it is a "public utility corporation" because it holds Certificates issued by the Commission which authorize shipments of petroleum and petroleum products by pipeline in Pennsylvania. Amended Petition at 4. Moreover, the ALJs stated "Sunoco's amended petitions are at best premature," I.D. at 22, because several of Sunoco's filings related to the Mariner East project were still pending before the Commission when the ALJs wrote their Initial Decision. Since that time, we have issued Orders in several of those proceedings.[9] First, in the *Amendment Order*, we granted Sunoco's petition for an amendment of the *August 2013 Order*, which allowed Sunoco to resume transportation service for petroleum products and refined petroleum products in the segment of the pipeline where its tariff was abandoned, subject to the filing of appropriate tariff supplements. In reaching our determination, we found as follows:

> While Sunoco received authorization in the *August 2013 Order* to cease the transportation of gasoline and distillates as to the shippers and routes on the schedules identified in the *August 2013 Order*, it retained its authority under its Certificate to provide petroleum products and refined

---

[9]     Given these recent procedural developments, we do not find it necessary to address the timing of Sunoco's filing of the Amended Petitions.

34

> petroleum products transportation service on its pipelines
> between Twin Oaks and Delmont, Pennsylvania. As such,
> Sunoco is certificated to provide intrastate propane service on
> the abandoned segment of the pipeline.

*Amendment Order* at 9.

    Shortly thereafter, we permitted Sunoco's Tariff Pipeline – Pa. P.U.C. No.
16 to become effective on October 1, 2014. *Tariff No. 16 Order* at 4. This tariff added a
new origin point in Mechanicsburg and a new destination point in Twin Oaks for the west
to east intrastate movement of propane on Sunoco's system, originating from the
Marcellus Shale production areas to markets in Southeastern Pennsylvania. *Id.* at 1-2.
Additionally, we approved the application of Sunoco to offer, render, furnish, or supply
intrastate petroleum and refined petroleum products pipeline service to the public in
Washington County, Pennsylvania, and the Commission's Secretary issued to Sunoco a
Certificate authorizing Sunoco to provide such service. *Washington County Application
Order* at 4. In view of these developments, as well as the averments of Sunoco's
Amended Petition, we disagree with the ALJs' conclusion that it is clear Sunoco is not a
"public utility corporation."

    We also disagree with the ALJs' second finding, that it is clear and free
from doubt that Sunoco's proposed Mariner East pipeline project does not constitute
public utility service as defined in the Code and as interpreted in *Drexelbrook*. First, the
fact that Sunoco currently holds various Certificates is *prima facie* evidence under
Section 316 of the Code, 66 Pa. C.S. § 316,[10] that it is a public utility. Thus, using a
*Drexelbrook* or similar analysis is unnecessary. As explained above, the pipeline routes

---

[10]    Section 316 provides that "[w]henever the commission shall make any rule,
regulation, finding, determination or order, the same shall be prima facie evidence of the
facts found and shall remain conclusive upon all parties affected thereby, unless set aside,
annulled or modified on judicial review." 66 Pa. C.S. § 316.

and services described in this proceeding have been certified as public utilities by this Commission (and its predecessors) since the early 1930s. More recently, in July 2014, the Commission certificated Sunoco to resume transportation service for petroleum products and refined petroleum products in a segment of its pipeline where its tariff was previously abandoned. In August 2014, the Commission also certificated Sunoco to extend its service territory to transport petroleum products and refined petroleum products to include Washington County, Pennsylvania.   Therefore, Sunoco is certificated in Pennsylvania as a public utility to transport petroleum and refined petroleum products, including propane, from Delmont, Pennsylvania to Twin Oaks, Pennsylvania.

Even if we were to ignore the existence of Sunoco's Certificates to serve the territories covered by the instant Amended Petitions, the view that Sunoco's services do not constitute public utility services because no retail end-users are specifically identified conflicts with applicable law, including the definition of "public utility" set forth in Section 102(1)(v) of the Code and our more recent decision in the *Laser June 2011 Order*, in which we found that Laser's provision of service as a midstream gathering pipeline operator that transported natural gas from producer wells to an interstate pipeline constituted service "for the public." The Commission has held numerous times that public utility services may be economically feasible only to entities that have large volumes of business and has also held that a retail component is not a requirement for public utility service. *See, e.g., Rural Telephone Co. Coalition v. Pa. PUC,* 941 A.2d 751 (Pa. Cmwlth. 2008); *Waltman v. Pa. PUC,* 596 A.2d 1221, 1223-1224 (Pa. Cmwlth. 1991), *aff'd,* 533 Pa. 304, 621 A.2d 994 (Pa. 1993); *Application of Sprint Communications Company L.P. for Approval of the Right to Offer, Render, Furnish or Supply Telecommunications Services as a Competitive Local Exchange Carrier to the Public,* Docket No. A-310183F0002AMA, *et al.* (Order entered December 1, 2006). Thus, the provision of wholesale services can clearly fall within the definition

36

of public utility services, which is evident with the existence of numerous certificated utilities providing wholesale services, including seven certificated wholesale pipelines operating in Pennsylvania in addition to Sunoco, and numerous certificated telephone utilities providing wholesale only services. Moreover, whether a service is considered to be offered for the public does not depend on the number of persons who actually use the service. Rather, the determination depends on the service offering and whether the service is available to all members of the public, or a class of the public, who may require the service. *See, C.E. Dunmire Gas Co. v. Pa. PUC,* 413 A.2d 473, 474 (Pa. Cmwlth. 1980).

For these reasons, we believe the ALJs erred in granting the Preliminary Objections based on lack of jurisdiction. Accordingly, we shall grant Sunoco's Exception on this issue; reverse the ALJs' decision granting these Preliminary Objections; deny the pertinent Preliminary Objections of CCWGT, DRN, MWA, and CAC; and remand this case to the OALJ for further proceedings, consistent with this Opinion and Order.

**The Scope of Sunoco's Existing Certificate Authority**

The product to be shipped by Sunoco – "petroleum products" – is a broad term that includes both propane and ethane. While gasoline and fuel oil were the original products that were shipped in the pipelines until 2013, there is no restriction in any approved Certificate limiting Sunoco's services to these particular products. In *Petition of Granger Energy of Honey Brook, LLC,* Docket No. P-00032043 (Order entered August 19, 2004) at 9, we gave the undefined term "petroleum products," as used in Section 102 of the Code, a broad meaning as a "catch all phrase" to include what would otherwise be an exhaustive list of products. Similarly, we specifically held in the *Amendment Order*

37

that propane is a petroleum product.[11] While ethane is not expressly identified in 49 C.F.R. § 192.3, it also fits within the definition of "petroleum gas." Under 49 C.F.R. § 195.2, NGLs are encompassed under the terms "petroleum" and "petroleum product."[12] The U.S. Energy Information Administration's definition of NGLs includes ethane and propane, which, in turn, is included in the definition of "petroleum and other liquids."[13] In light of the above, we presumptively conclude that Sunoco's existing Certificate encompasses the movement of ethane and propane.

We also reject the argument, as raised by WGT in its Replies to Exceptions, that the Sunoco pipeline implicated in this proceeding is limited to east-to-west transportation. This argument appears to be based upon two details: (1) the description of the facilities in the original applications and Orders approving those applications, and (2) the original directional flow when other petroleum products were transported from Philadelphia area refineries to product distributors located to the West and North.

---

[11]   *See, Amendment Order* at 9 n.5, stating the following:

> This is consistent with the definition of "petroleum gas" in the federal gas pipeline transportation safety regulations at 49 C.F.R. Part 192. Part 192 has been adopted by the Commission and defines "petroleum gas" to include propane. 49 C.F.R. § 192.3. Our interpretation is also consistent with the definition of "petroleum" in the federal hazardous liquids pipeline safety regulations at 49 C.F.R. Part 195. Part 195 has also been adopted by the Commission and defines "petroleum" to include natural gas liquids and liquefied petroleum gas, which can include propane. 49 C.F.R. § 195.2.

[12]   *See*, 49 C.F.R. § 195.2 ("Petroleum means crude oil, condensate, natural gasoline, natural gas liquids, and liquefied petroleum gas. Petroleum product means flammable, toxic, or corrosive products obtained from distilling and processing of crude oil, unfinished oils, natural gas liquids, blend stocks and other miscellaneous hydrocarbon compounds.")

[13]   http://www.eia.gov/tools/glossary/index.cfm?id=A#ass_diss_nat_gas

38

Importantly, there is no directional restriction contained in any of the controlling Certificates or Commission Orders, nor do we believe it to be good public policy to adopt or interpret any such directional restrictions. To do so would likely result in the construction of new and redundant pipeline facilities, while existing facilities of the exact same nature, capable of providing the exact same services, would sit useless. This restriction, if accepted, could force the unnecessary expenditure of billions of dollars, which costs would be absorbed by the energy-using public through increased commodity prices. Moreover, as discussed previously, the Commission recently addressed this very issue with this very utility in the *Amendment Order. See also, generally, Application of UGI Penn Natural Gas, Inc. for approval of the Transfer by Sale of a 9.0 Mile Natural Gas Pipeline, Appurtenant Facilities and Right of Way located in Mehoopany, Pennsylvania,* Docket No. A-2010-2213893 (Order entered July 25, 2011).

Thus, Sunoco has the authority to provide intrastate petroleum and refined petroleum products bi-directionally through pipeline service to the public between the Ohio and New York borders and Marcus Hook, Delaware County through generally identified points. This authority is not contingent upon a specific directional flow or a specific route within the certificated territory. Additionally, this authority is not limited to a specific pipe or set of pipes, but rather, includes both the upgrading of current facilities and the expansion of existing capacity as needed for the provision of the authorized service within the certificated territory. In light of the above analysis affirming Sunoco's authority to provide intrastate pipeline transportation service from Houston, Pennsylvania to Marcus Hook, Pennsylvania, there is a rebuttable presumption that Sunoco is a public utility in this Commonwealth.

**The Scope of the Issues to be Addressed in this Section 619 Proceeding**

The specific request before us for consideration is whether Sunoco has met its burden of proof to show its entitlement to zoning exemptions pursuant to Section 619 of the MPC, 53 P.S. § 10619. There are only two parts to a Section 619 inquiry: (1) whether Sunoco is a public utility corporation, and (2) whether the proposed buildings at issue are reasonably necessary for the convenience or welfare of the public.

Regarding the first prong, the ALJs' determination on remand should specifically address the following two issues: (1) whether the presumption has been rebutted that Sunoco is a "public utility" under the Code and, hence, a "public utility corporation" under the BCL, and (2) whether Sunoco's proposed service is included within its existing authority, *i.e.*, whether Sunoco has provided credible evidence that it will be transporting propane and/or ethane, as proposed, through the territories for which it is certificated as a public utility.

Regarding the second prong of the Section 619 analysis, Pennsylvania courts have established as an enduring principle that municipalities do not have the power to zone with respect to utility structures other than buildings. *See, Duquesne Light Co. v. Upper St. Clair Twp., et al.,* 377 Pa. 323, 105 A.2d 287 (1954) (*Duquesne*).[14] As a result, an exemption is not needed for any public utility facilities, as a blanket exemption

---

[14]     We note that *Duquesne* was decided prior to both the current Public Utility Code and the MPC. Subsequent cases, however, have made it clear that the principles enumerated in *Duquesne* are still in force. *See generally, Heitzel v. Zoning Hearing Bd. of Millcreek Twp.,* 533 A.2d 832, 833 (Pa. Cmwlth. 1987); *South Coventry Twp. v. Philadelphia Elec. Co.,* 504 A.2d 368, 371 (Pa. Cmwlth. 1986).

40

exists.[15]   Moreover, it is clear under Pennsylvania law that public utility buildings, when found by this Commission to be reasonably necessary for the convenience or welfare of the public, are exempt from local zoning regulations.  Thus, there are two main limiting principles governing municipal zoning related to public utilities:  (1) municipal zoning authority regarding utilities is limited to buildings, and (2) a public utility can obtain an exemption from municipal zoning regulation for buildings upon a finding by this Commission that the exemption meets the "reasonably necessary" test enumerated in Section 619 of the MPC.

Put another way, the inquiry regarding the second prong of the Section 619 analysis concerns only *proposed buildings* as described in each of Sunoco's Amended Petitions and whether the "present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public." 53 P.S. § 10619. Sunoco is not seeking this Commission's approval to be certificated as a public utility, approval of the Mariner East project, or approval to construct the valve control and pump stations that the Company seeks to shelter.  Rather, Sunoco requests a determination as to whether the structures the company proposes to build *around* and *over* the valve control and pump stations constitute "buildings" within the meaning of the MPC, and, if so, whether such "buildings" are reasonably necessary for the convenience or welfare of the public and, therefore, exempt from local zoning ordinances. *Petition of UGI Penn Natural Gas Inc. for a Finding that Structures to Shelter Pipeline Facilities in the*

---

[15]   The term "facilities" is broadly defined by the Code as the following:

> All the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility.

66 Pa. C.S. § 102.

41

*Borough of West Wyoming, Luzerne County, To the Extent Considered To be Buildings under Local Zoning Rules, Are Reasonably Necessary for The Convenience or Welfare of the Public,* Docket No. P-2013-2347105 (Order entered December 19, 2013). Accordingly, the inquiry on remand should not address whether it is appropriate to place the valve and pump stations in certain areas, but, rather, should address whether the buildings proposed to shelter those facilities are reasonably necessary for the convenience or welfare of the public.

### The Remaining Preliminary Objections

#### ALJs' Recommendation

The ALJs concluded that, since they determined that the Commission lacks jurisdiction over the Amended Petitions, it was unnecessary to address the remaining Preliminary Objections. *Id.*

#### Exceptions and Replies

#### Sunoco

Sunoco states that the ALJs erred by not dismissing the remaining Preliminary Objections. Sunoco first addresses the remaining Preliminary Objections of CAC and DRN, which averred that Sunoco did not adequately show that the Mariner East project was reasonably necessary for the convenience and welfare of the public. Exc. at 34; DRN's Preliminary Objections at 18-23; CAC's Preliminary Objections at 8-11. Sunoco contends that these Preliminary Objections should be denied because the overall need for the Mariner East project is related to the merits of the Mariner East project, a legal issue that is not relevant to a Section 619 proceeding. Sunoco avers that the

Commonwealth Court has ruled that Section 619 only empowers the Commission to determine if there is a reasonable necessity for the site of the buildings. Exc. at 34 (citing *Del-AWARE Unlimited*, 513 A.2d at 596). Sunoco also avers that this issue is moot because the Commission found in the *Amendment Order* that the Mariner East project's provision of intrastate propane service would result in numerous public benefits. Exc. at 34 (citing *Amendment Order* at 9-10).

Second, Sunoco addresses three Preliminary Objections filed by CAC, DRN, and CCWGT. Exc. at 35. CAC's Preliminary Objection contended that Sunoco's Amended Petitions were legally insufficient because the Petitions were an inappropriate circumvention of law. CAC's Preliminary Objections at 11-12. DRN's Preliminary Objection alleged that Sunoco's improper segmentation of the Mariner East Project did not qualify it for an exemption under the MPC. DRN's Preliminary Objections at 7-11. CCWGT's Preliminary Objection averred that the Commission lacked jurisdiction because Sunoco would not be providing intrastate pipeline service. CCWGT's Preliminary Objections at 4-5. Sunoco states that all of these Preliminary Objections assert, in various ways, that the Amended Petitions are deficient because Sunoco will not be offering intrastate pipeline transportation service. Sunoco notes that, due to the modifications in its business plan in response to changing market conditions, it will be providing intrastate and interstate service and, therefore, these Preliminary Objections are moot and otherwise without legal merit. Exc. at 35.

Third, Sunoco addresses CCWGT's Preliminary Objection that the Commission lacks jurisdiction over the Amended Petition for West Goshen Township because it appears that Sunoco does not have Commission authority to use a pipeline segment near Boot Road in West Goshen Township. Exc. at 35; CCWGT's Preliminary Objections at 5-7. Sunoco responds to CCWGT's averment that a map Sunoco provided as Exhibit A to the Amended Petition showed that a portion of the pipeline service in

43

Boot Road, Chester County was part of an abandoned pipeline. Sunoco explains that, while it had suspended the tariffs for gasoline and distillates service originating in Twin Oaks and ending in Icedale, Malvern, and points West of Mechanicsburg, Sunoco continued to provide transportation service of petroleum and refined petroleum products (gasoline and distillates) on pipeline movements through the Boot Road site, using the Boot Road pump station, to Montello. Sunoco indicates that it will continue to provide these transportation services pursuant to the Certificate it received from the Commission in 2002. Exc. at 36.

Fourth, Sunoco contests the Preliminary Objections of CAC and DRN, which asserted that the Amended Petitions were legally insufficient because Article 1, Section 27 of the Pennsylvania Constitution prohibits granting the Amended Petitions; and the Preliminary Objection of CCWTG, which asserted that the Amended Petition lacked sufficient specificity because it failed to address the environmental impacts as well as the impacts on West Goshen Township's zoning and comprehensive plans. Exc. at 36; CAC's Preliminary Objections at 12-13; DRN's Preliminary Objections at 16-18; CCWTG's Preliminary Objections at 9-11. Sunoco indicates that the Preliminary Objections respectively argued that its Amended Petitions should be denied (1) based on the Supreme Court's decision interpreting Article 1, Section 27 of the Pennsylvania Constitution in *Robinson Township, supra,* and (2) because the Amended Petitions failed to address environmental and local zoning impacts. Exc. at 36. Sunoco states that *Robinson Township* involved Act 13 of 2012 and did not involve Section 619 of the MPC. Sunoco also states that Section 619 of the MPC requires the Commission to make a specific finding that the siting is necessary for the convenience and welfare of the public before exemptions from local zoning are permitted, whereas Act 13 permitted incompatible uses. Exc. at 37.

44

In response to the arguments that Sunoco failed to address environmental concerns, Sunoco states that, at this point in the proceeding, there is no evidence to indicate that the siting of the proposed structures will negatively impact the environment within the communities where the structures are located. Sunoco avers that, if any party presents such evidence during the proceeding, the Commission may consider that evidence in deciding whether the siting of the structures is for the convenience or welfare of the public. Exc. at 37. Sunoco notes that, pursuant to Section 619 of the MPC and the Policy Statement at 52 Pa. Code § 69.1101, the Commission will consider "the impact of its decisions upon local comprehensive plans and zoning ordinances." Exc. at 37. Sunoco also notes that the Environmental Rights Amendment does not expand the Commission's limited statutory authority to determine whether the proposed site of a building is reasonably necessary for the public convenience or welfare. *Id.* at 38 (citing *Del-AWARE Unlimited,* 513 A.2d at 596).

Fifth, Sunoco objects to CCWGT's Preliminary Objection which argued that the vapor combustion unit at the Boot Road pump station was improperly excluded from Sunoco's request for an exemption. Exc. at 38; CCWGT's Preliminary Objections at 7-9. Sunoco states that it did not include the vapor combustion unit in its Amended Petition at Docket No. P-2014-2411966 because the unit is not a building, rather, it is a public utility facility that is not before the Commission in a Section 619 proceeding. Exc. at 38 (citing *Petition of UGI Penn Natural Gas Inc. for a Finding that Structures to Shelter Pipeline Facilities in the Borough of West Wyoming, Luzerne County, to the Extent Considered to be Buildings under Local Zoning Rules, are Reasonably Necessary for the Convenience or Welfare of the Public,* Docket No. P-2013-2347105 (Order entered December 19, 2013)).

**CAC**

45

In reply, CAC argues that, if the Commission finds that it has jurisdiction, CAC's remaining Preliminary Objections are meritorious and should be sustained by the Commission.[16] CAC R. Exc. at 14. CAC specifically states that the Commission should sustain its Preliminary Objection contending that Sunoco failed to demonstrate that the proposed project was reasonably necessary for the convenience or welfare of the public. *Id.* at 14. CAC maintains that Sunoco has misinterpreted the holding in *Del-AWARE Unlimited, supra.* According to CAC, the Commonwealth Court's decision in that case to limit its review to the siting of the buildings involved hinged on the fact that the predecessor to the Pennsylvania Department of Environmental Protection had already conducted a thorough review of the environmental impacts of the proposed project, and that review was upheld by the Environmental Hearing Board. *Id.* at 15 (citing *Del-AWARE Unlimited*, 513 A.2d at 596). CAC indicates that, in the instant case, no environmental reviews or assessments have been conducted. CAC is concerned that, if the Commission were to approve the requested exemption without considering the environmental impacts of the Mariner East project, then the project would be constructed without any comprehensive environmental review. CAC R. Exc. at 15.

**DRN**

In its Replies to Exceptions, DRN asserts that its remaining Preliminary Objections demonstrate that Sunoco's Amended Petitions should be dismissed. First, DRN argues that the structures are not reasonably necessary for the convenience or welfare of the public. DRN states that, if the Commission limits its evaluation to whether the sites of the valve control and pump stations are in the public interest, the Commission

---

[16]     We note, however, that in CAC's prayer for relief, CAC argues that the Commission should remand the matter to the OALJ for rulings on the remaining Preliminary Objections. CAC R. Exc. at 16-17.

should dismiss the Amended Petitions. DRN R. Exc. at 9. DRN indicates that Sunoco's averment that the siting of the pump stations is necessary is based entirely on a graph demonstrating that the pump stations are located based on where the amount of fluid energy drops below sub-optimal levels. *Id.* at 9 (citing Exhibit E to the Amended Petition). DRN also indicates that Sunoco admitted that the location of the pump stations was based on the entire capacity of the Mariner East project. DRN asserts that, if Sunoco was basing the siting of the pump stations on the production profile of its segmented intrastate transportation throughput, the physical location and number of pump stations would be radically different from what is depicted in Exhibit E. DRN R. Exc. at 9. Additionally, DRN avers that a finding that the siting of the buildings in this case is reasonably necessary for the convenience or welfare of the public, "which would result in the displacement of all local development guidelines and permit oil and gas infrastructure development and operation in every type of zoning district," is contrary to the holding in *Robinson Township, supra,* and Article I, Section 27 of the Pennsylvania Constitution. DRN R. Exc. at 11.

## CCWGT

In its Replies to Exceptions, CCWGT first notes that Sunoco fails to include two of CCWGT's Preliminary Objections in its listing of Preliminary Objections. CCWGT R. Exc. at 12. CCWGT avers that it objected to the insufficient specificity of the Amended Petition based on Sunoco's failure to identify (1) the specific property for which Sunoco sought a zoning exemption; and (2) the specific zoning or land use ordinances from which Sunoco sought an exemption. *Id.* at 12, 13. As such, CCWGT states that Sunoco's Exception is incomplete and inaccurate, and the Commission should not rule on the remaining Preliminary Objections at this time. *Id.* at 13.

47

Second, CCWGT avers that, if the Commission determines it has jurisdiction, this matter should be remanded to the OALJ for rulings on the remaining Preliminary Objections and all further proceedings. *Id.* at 14.  CCWGT asserts that the Commission's Regulations require preliminary objections to be decided by a presiding officer. *Id.* at 13 (citing 52 Pa. Code § 5.101(g)).  CCWGT states that the Commission's practice when it reverses an Initial Decision which found a lack of jurisdiction is to remand the matter to the OALJ to address all remaining matters in the case, including preliminary objections. CCWGT R. Exc. at 13 (citing *Robinson v. Shrewsbury Borough Municipal Authority*, Docket No. C-2011-2238127 (Order entered October 14, 2011)). CCWGT argues that Sunoco has not provided any precedent or alleged any compelling reasons for its request to circumvent the usual administrative process.

**Disposition**

Based upon the legal standard for deciding preliminary objections and a review of the relevant documents submitted by the Parties in this case, we conclude that the relief requested by the moving parties is not clearly warranted and free from doubt and that, accordingly, the preliminary objections pertaining to the legal insufficiency claims should be denied.  We also find that the issues and concerns raised in the Preliminary Objections arguing legally insufficiency are beyond the proper scope of this proceeding.  These Preliminary Objections seek to improperly expand the scope of this proceeding to issues concerning the environmental impacts of the Mariner East project and whether the overall project is reasonably necessary for the convenience and welfare of the public, which are issues that are beyond a Section 619 exemption inquiry. Accordingly, we will deny the Preliminary Objections pertaining to legal insufficiency.

In addition to these Preliminary Objections, CCWGT argues that Sunoco's Amended Petition for West Goshen Township is factually insufficient because, among other reasons, Sunoco does not sufficiently identify the buildings and ordinances at issue in the Petition affecting West Goshen Township. CCWGT also argues that a certain vapor combustion unit was improperly excluded from the exemption request and that Sunoco does not have Commission authority to use a certain segment of its pipeline in West Goshen Township. Based on the applicable legal standard and a review of the relevant documents submitted in this case, we conclude that the relief requested by CCWGT is not clearly warranted and free from doubt and that, accordingly, CCWGT's Preliminary Objections should be denied. Moreover, we find that Sunoco has pled sufficient facts to withstand Preliminary Objections and that any such factual issues are more appropriately explored and clarified through discovery.

For these reasons, we conclude that the ALJs should have denied the remaining Preliminary Objections. We shall grant Sunoco's Exception on this issue and deny the remaining Preliminary Objections of CCWGT, DRN, MWA, and CAC, consistent with this Opinion and Order.

## Conclusion

Based upon our review of the pleadings, the Parties' positions, and the applicable law, we shall grant Sunoco's Exceptions; reverse the Initial Decision Sustaining Preliminary Objections and Dismissing Petitions; deny the Preliminary Objections filed by CCWGT, DRN, MWA, and CAC; and remand this case to the OALJ for further proceedings, consistent with this Opinion and Order; **THEREFORE,**

49

**IT IS ORDERED:**

1.     That the Exceptions filed by Sunoco Pipeline, L.P. on August 19, 2014, are granted.

2.     That the Initial Decision Sustaining Preliminary Objections and Dismissing Petitions, issued by Administrative Law Judges David A. Salapa and Elizabeth H. Barnes on July 30, 2014, is reversed.

3.     That the Preliminary Objections filed by the Concerned Citizens of West Goshen Township, the Delaware Riverkeeper Network, the Mountain Watershed Association, and the Clean Air Council are denied.

4.     That this case is remanded to the Office of Administrative Law Judge for further proceedings, consistent with this Opinion and Order.

BY THE COMMISSION,

Rosemary Chiavetta
Secretary

(SEAL)

ORDER ADOPTED:  October 2, 2014

ORDER ENTERED:  October 29, 2014

50

Exhibit H

## RIGHT-OF-WAY EASEMENT ACQUIRED BY CONDEMNATION

THIS RIGHT-OF-WAY EASEMENT (the "Easement") acquired by condemnation and granting an easement to Sunoco Pipeline L.P., a Texas limited partnership, with an office at 525 Fritztown Road, Sinking Spring, Pennsylvania 19608, and its successors and assigns (hereinafter collectively called "Condemnor") over the lands of Stephen Gerhart and Ellen S. Gerhart, having an address at 15357 Trough Creek Valley Pike, Huntingdon, Pennsylvania 16652, (hereinafter called "Condemnee" whether one or more) and its successors and assigns.

Condemnor has, by Order of Court, acquired a permanent non-exclusive fifty foot (50') wide right-of-way and easement (the "Right-of-Way") and temporary workspace(s) along a route as shown on Exhibit "1" attached hereto, to construct, install, maintain, operate, repair, inspect, alter, protect, change the size of, relocate, replace in whole or in part, remove, and abandon two (2) pipelines and other appurtenant facilities including, but not limited to, above-ground markers, test stations and cathodic protection equipment (collectively the "Facilities") for the purpose of transporting petroleum and petroleum products including but not limited to ethane, propane, and liquid petroleum gas in, over, through, across, under, and along the lands owned by Condemnee in the Township of Union, County of Huntingdon, Commonwealth of Pennsylvania, described as follows:

Parcel identification number(s): 50-13-02, being all that particular tracts or parcels of land owned by Condemnee or to which Condemnee may have rights in said tracts or parcels of land, being called a parcel in Huntingdon County, Pennsylvania, being more specifically described in the Deed dated August 20, 1996, which was recorded at Deed Book Volume 417, Page 449, in the office of the Recorder of Deeds of said County and State, and being more fully described in Exhibit 1 (the "Property").

Condemnor shall have the right of ingress and egress, entry and access in, to, through, on, over, under and across the Property and any public road or public right-of-way or other easement to which Condemnor has a right of access, for any and all purposes necessary and/or incidental to the exercise by the Condemnor of the rights granted to it by this Easement.

Condemnor shall bury the pipes and related equipment to a minimum depth of thirty-six inches (36") below the surface of the ground so as to not interfere with the cultivation of the Property except where valves, equipment or other appurtenances, if any, should be installed at or above ground level and shall not therefore be buried.

The Condemnee may use the Right-of-Way for any and all purposes not inconsistent with the purposes set forth in this Easement. However, the Condemnee may not use any part of the Right-of-Way if such use may damage, destroy, injure, or interfere with Condemnor's use of the Right-of-Way for the purpose for which the Right-of-Way has been acquired by Condemnor. Activities for which the Condemnee may not use the Right-of-Way include without limitation the following: (1) construction of any temporary or permanent buildings; (2) drilling or operation of any well; (3) removal of soil or changing the grade or slope; (4) impounding surface water; (5) planting trees or landscaping; (6) installing fences over the Right-of-Way; provided, however,

that Condemnee may erect a fence perpendicularly with the Right-of-Way with Condemnor's prior written approval. Condemnee is further prohibited from any above- or below-ground obstruction that may interfere with the purposes for which this Easement is acquired being placed, erected, installed or permitted upon the Right-of-Way without the written approval of the Condemnor. In the event the terms of this paragraph are violated, such violation shall immediately be eliminated by Condemnee, at Condemnee's sole cost and expense, upon receipt of written notice from Condemnor or Condemnor shall have the immediate right to correct or eliminate such violation, at the sole expense of Condemnee. Condemnee shall promptly reimburse Condemnor for any expense related thereto. Condemnee is further prohibited from interfering in any manner with the purposes for which the Right-of-Way is being conveyed.

The Condemnor shall have the right, but not the obligation, from time to time to mow the Right-of-Way and to trim, cut down or eliminate any tree, bush, shrubbery or plant, in the sole judgment of Condemnor, its successors and assigns, as may be necessary to prevent possible interference with the construction, operation and maintenance of Condemnor's Facilities and to remove possible hazards thereto, and the right to remove or prevent the construction of, any and all buildings, structures, reservoirs or other obstructions on the Right-of-Way which in the sole judgment of the Condemnor may endanger or interfere with the efficiency, safety, or convenient operation of the Condemnor's Facilities. Condemnor shall not be liable for damages to any tree, bush, shrubbery or plant upon the Right of Way as a result of its exercise of its rights under this paragraph.

The terms, conditions and provisions of this Easement are covenants running with the land and shall extend to and be binding upon the heirs, executors and administrators, personal representative, successors and assigns of the parties hereto.

**EXHIBIT 1**

**PLAT**

PA-HU-0047.0014
Huntingdon County, Pennsylvania
Pennsylvania Pipeline Project

### Exhibit "A"

**DESCRIPTION FOR A PERMANENT EASEMENT ACROSS THE LANDS OF
STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY**

**BEING A CENTERLINE DESCRIPTION FOR A FIFTY FOOT (50') WIDE PERMANENT EASEMENT, BEING TWENTY-FIVE FEET (25') AS MEASURED PERPENDICULAR, LEFT AND RIGHT OF SAID CENTERLINE, ACROSS THE LANDS NOW OR FORMERLY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY IN UNION TOWNSHIP, HUNTINGDON COUNTY, PENNSYLVANIA, SAID LAND BEING MORE PARTICULARLY DESCRIBED IN DEED BOOK 417, PAGE 449 AS RECORDED IN THE HUNTINGDON COUNTY RECORDER OF DEEDS.**

Commencing from a point, said point being a found one inch (1") iron pin marking the southwest corner lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety; thence North 13°16'04" East a distance of 37.1 feet more or less to the POINT OF BEGINNING of the centerline described herein; thence across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety the following three (3) courses and distances; (1) South 77°52'26" East a distance of 742.0 feet more or less to a point; (2) North 63°06'32" East a distance of 754.6 feet more or less to a point; (3) South 79°56'32" East a distance of 4.2 feet more or less to a point on a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety being the POINT OF TERMINATION of the centerline of the easement described herein, said point being sixty-one feet (61') north of a found two inch (2") by two inch (2") wooden stake with stones marking an angle break along the eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.

The above described easement across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety containing 1.72 acres more or less as shown on a plan prepared by LW Survey Co. entitled "PERMANENT EASEMENT & RIGHT OF WAY CROSSING PROPERTY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY"

Notes:
1) The purpose of this Exhibit "A" document is to fully describe the area of the proposed permanent easement across the lands of Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.
2) The intent of this Exhibit "A" is NOT to supersede any of the existing easements for the existing pipelines shown on the attached Exhibit "B".
3) Bearings shown hereon are Grid bearings of NAD83 Pennsylvania State Plane Coordinate System, South Zone, U.S. Survey Feet. Distances shown hereon are Grid distances and a scale factor must be applied to convert to ground distances.
4) Record information shown hereon is based on the best available record information and provided to LW Survey Co. by Rooney Engineering.
5) For additional information, see attached easement drawing (Exhibit "B") made in conjunction with and considered an integral part of the above described permanent easement.
6) This description and the attached Exhibit "B" were prepared for the purpose of creating a permanent easement and are not intended for use as a boundary survey.

#### TEMPORARY/ADDITIONAL TEMPORARY WORKSPACE

Being an additional twenty-five foot (25') wide strip of land to be used during construction. The 25 foot wide strip of land will be on the north side, parallel to and coincident with the above described permanent easement. Said 25 foot wide strip of land will extend from a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety a distance of approximately one thousand sixteen feet (1,016') across the lands now or formerly of Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety. An additional area, beginning approximately two hundred thirty-three feet (233') southeast of westerly boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety, measuring approximately one hundred fifty feet (150') by two hundred fifty feet (250') north of and parallel to the above mentioned permeant easement will be required for construction purposes.

LW Survey Co.
1725A Oregon Pike, Suite 204
Lancaster, PA. 17601



# EXHIBIT B
## UNION TOWNSHIP
## HUNTINGDON COUNTY,
## PENNSYLVANIA

LEGEND

| | |
|---|---|
| R.O.D.H.C.PA. | HUNTINGDON CO. RECORDER OF DEEDS, PA. |
| P.O.B. | POINT OF BEGINNING |
| P.O.T. | POINT OF TERMINATION |
| ( ) | RECORD BEARING AND DISTANCE |
| ● | PROPERTY CORNER FOUND |
| ○ | PROPERTY CORNER NOT FOUND |
| △ | PROPOSED PIPELINE/DEED LINE INTERSECTION |
| ○ | PROPOSED PIPELINE VERTICE |
| | PROPOSED PERMANENT EASEMENT |
| | PROPOSED TEMPORARY WORK SPACE |
| | PROPOSED ADDITIONAL TEMPORARY WORK SPACE |

Scale: 1" = 200'

0    200    400
FEET  FEET  FEET

VICINITY MAP
NOT TO SCALE

DETAIL "B"      DETAIL "C"

**PA-HU-0047.0014**
**STEPHEN GERHART AND ELLEN S. GERHART,**
**HUSBAND AND WIFE, AS TENANTS BY THE**
**ENTIRETY**
R.O.D.H.C.PA. DEED BOOK 417, PAGE 449
27.386 ACRES

PA-HU-0047.0000
MARCELLUS SURFACE & MINERAL
HOLDINGS, LP,
A TEXAS LIMITED PARTNERSHIP
R.O.D.H.C.PA. DEED BOOK 2012,
PAGE 2744
PARCEL 1, TRACT 1, 2, 3 AND 4

SEE DETAIL "C"

5/8" IRON PIN
W/ CAP (FD.)

PROPOSED ADDITIONAL
TEMPORARY WORK SPACE
(150'X250')

CENTERLINE OF PROPOSED
PERMANENT EASEMENT
50' WIDE PROPOSED
PERMANENT EASEMENT
25' WIDE PROPOSED
TEMPORARY WORK SPACE

SEE DETAIL "B"

1" IRON PIN (FD.)

5/8" IRON PIN (FD.)

PA-HU-047.0001
MEARL R. STEEL AND JOKASTA M. STEEL,
HUSBAND AND WIFE
R.O.D.H.C.PA. DEED BOOK 441, PAGE 202

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | S77°52'26"E | 742.04' |
| L2 | N63°06'32"E | 754.63' |
| L3 | S79°56'32"E | 4.16' |
| L4 | N13°16'04"E | 37.10' |
| L5 | S13°16'04"W | 178.00' |
| L6 | N08°05'35"E | 61.02' |
| L7 | S08°05'35"W | 709.60' |

TOTAL DISTANCE ACROSS PROPERTY:      1500.83 FT
PROPOSED PERMANENT EASEMENT:         1.72 ACRES
TEMPORARY WORK SPACE:                0.58 ACRES
ADDITIONAL TEMPORARY WORK SPACE:     0.86 ACRES

TROUGH CREEK VALLEY PIKE
S.R. 0829

DETAIL "A"

NOTES:
1. THE PURPOSE OF THIS PLAN IS TO SHOW THE LIMITS OF THE PROPOSED PERMANENT AND TEMPORARY EASEMENTS CROSSING THE SUBJECT PROPERTY. THE PROPERTY LINES SHOWN HEREON, WERE COMPILED FROM THE BEST AVAILABLE RECORD INFORMATION AND IS NOT THE RESULT OF A BOUNDARY SURVEY.
2. THIS EXHIBIT WAS PREPARED WITHOUT THE BENEFIT OF A TITLE REPORT. LW SURVEY CO. HAS NOT RESEARCHED OR SHOWN ANY ADDITIONAL EASEMENTS, RIGHTS OF WAY, VARIANCES, AND/OR AGREEMENTS OF RECORD EXCEPT AS SHOWN HEREON.
3. BEARINGS SHOWN HEREON ARE GRID BEARINGS BASED ON THE PROJECT COORDINATE SYSTEM OF NAD 83, PENNSYLVANIA STATE PLANE, SOUTH ZONE, U.S. SURVEY FEET. DISTANCES SHOWN HEREON ARE GRID DISTANCES AND A SCALE FACTOR MUST BE APPLIED TO CONVERT TO GROUND DISTANCES.
4. FOR ADDITIONAL INFORMATION, SEE ATTACHED LEGAL DESCRIPTION (EXHIBIT "A") MADE IN CONJUNCTION WITH AND CONSIDERED AN INTEGRAL PART OF THE ABOVE DESCRIBED EASEMENT.

| SURVEYED BY: | LW Survey Co. 1725A Oregon Pike Suite 204 Lancaster, PA 17601 | CLIENT: | Sunoco Pipeline L.P. |
|---|---|---|---|

| REVISIONS | | | |
|---|---|---|---|
| NO. | DATE | BY | DESCRIPTION |
| 0 | 6/3/15 | JJH | ISSUED FOR REVIEW |

PERMANENT EASEMENT & RIGHT OF WAY
CROSSING PROPERTY OF
STEPHEN GERHART AND ELLEN S. GERHART,
HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

| DRAWN BY: JJH | DRAWN DATE: 6/3/15 | CHECKED BY: ARG | PLOT DATE: 6/3/15 |
|---|---|---|---|
| TRACT NO. | PA-HU-0047.0014 | | PAGE 1 OF 1 |

Exhibit I

## CERTIFICATION OF BUSINESS RECORD

Pursuant to 18 Pa.C.S. § 4904, relating to unsworn falsifications to authorities, I, Curtis N. Stambaugh, verify that I am an Assistant General Counsel for Sunoco Pipeline L.P. and Sunoco Logistics Partners Operations GP LLC, that as such I am authorized to execute this Certification, and that the following Corporate Resolution of Sunoco Logistics Partners Operations GP LLC is a true and correct copy of a portion of the original which is contained within the official business records of that entity.

Curtis N. Stambaugh

**Corporate Resolution of**
**SUNOCO LOGISTICS PARTNERS OPERATIONS GP LLC**

**CERTIFIED PLATS**

The undersigned, being the sole director of Sunoco Logistics Partners Operations GP LLC, a Delaware limited liability company (the "Company") that is the general partner of Sunoco Pipeline L.P. (the "Partnership"), does hereby consent to the taking of the following actions and adoption of the following resolutions, pursuant to and in accordance with the Delaware Limited Liability Company Act and the Company's Limited Liability Company Agreement, such actions and resolutions to have the same force and effect as though duly taken and adopted at a meeting of the sole director of the company duly called and legally held.

WHEREAS, the Board of Directors of Sunoco Partners LLC, by Resolution dated July 24, 2014, authorized the Company to do and perform all such acts and things necessary or appropriate to effectuate the implementation of the Mariner East 2 Project, as more fully set forth in the attached Exhibit A; and

WHEREAS, Management of the Company, in its capacity as a general partner of the Partnership, recommends that the Company adopt and recognize the public necessity of acquiring easements, rights of way, and/or fee title to certain real property in connection with the construction of underground pipelines to transport petroleum products in and through Harrison and Jefferson Counties, Ohio; Brooke County, West Virginia; and Washington, Allegheny, Westmoreland, Indiana, Cambria, Blair, Huntingdon, Juniata, Perry, Cumberland, York, Dauphin, Lebanon, Lancaster, Berks, Chester and Delaware Counties, Pennsylvania, (hereinafter the "Pipelines") and further grant authorization to acquire easements, rights of way, or fee title necessary to construct and operate the Pipelines by purchase or eminent domain.

NOW, THEREFORE, BE IT

RESOLVED, that there is a public necessity for the construction and operation of the Pipelines upon and across the parcels of real property shown in the attached Exhibit B for the purpose of constructing, operating, and maintaining the Pipelines for the public need and interest; and

FURTHER RESOLVED, that the Pipelines are for the public use and in the public interest and there is a public necessity for acquiring, owning and holding easements, rights of way, and/or fee title, as described in Exhibit B (the "Property Interests"), necessary for the construction, operation, and maintenance of the Pipelines; and

FURTHER RESOLVED, that the President, any Vice President, and any respective delegate thereof (each officer and/or delegate being an "Authorized Delegate") be, and hereby is authorized, empowered, and directed, on behalf of, and in the name of the Company and/or the Partnership to acquire, either by agreed purchase or by condemnation proceedings under Ohio, Pennsylvania, or West Virginia law, the Property Interests for the purpose of constructing operating, and maintaining the Pipelines, including, but not limited to, the right to construct, reconstruct, relocate, rebuild, maintain, operate, upgrade, replace (with similar or different facilities) and remove the Pipelines together with related facilities and appurtenances along the route shown and depicted in the attached Exhibit B; and

FURTHER RESOLVED, that all the actions heretofore taken by any such officer or Authorized Delegate in order to effectuate or carry out the purposes and intent of the foregoing resolutions are hereby ratified, adopted and approved; and

FURTHER RESOLVED, that an executed copy of this Resolution by Written Consent of the General Partner shall be filed with the minutes of the proceedings of the Company and the Partnership.

NOW THEREFORE, the undersigned Sole Director of the Company has executed this Resolution by Written Consent of the General Partner effective as of this ___8ᵗʰ___ day of _____June_____, 2015.

**Sunoco Pipeline L.P.**
By: Sunoco Logistics Partners Operations GP
LLC, its general partner

Name: David R. Chalson

Title: Sole Director

**EXHIBIT A**

SUNOCO PARTNERS LLC
Meeting of the Board of Directors
July 24, 2014

### RESOLUTIONS
*(Mariner East 2 Project)*

**WHEREAS,** the Board of Directors (the "*Board*") of Sunoco Partners LLC (the "*Company*"), the general partner of Sunoco Logistics Partners L.P. (the "*Partnership*") deems it advisable and in the best interest of the Partnership for the Partnership to pursue a project for a pipeline take-away solution for natural gas liquids from the Marcellus and Utica shales involving the development and construction of a 350 mile new build pipeline from origins in Ohio, West Virginia and Pennsylvania to the Marcus Hook Industrial Complex and intermittent destinations within Pennsylvania (such project referred to as the "*Mariner East 2 Project*"); and

**WHEREAS,** the Mariner East 2 project is an expansion and second phase of the Mariner East 1 project, which was fully subscribed, to bring additional NGL barrels from the Marcellus and Utica shales which will require an expansion and increase in terminal capacity of the Marcus Hook Industrial Complex, the construction of refrigerated ethane and propane storage and other modifications to the Marcus Hook Industrial Complex to handle various NGL products;

**WHEREAS,** the Board deems it advisable to authorize and approve the Partnership's execution and implementation of the Mariner East 2 Project, including the capital expenditure by the Partnership in respect of its assets necessary or required in connection with the Mariner East 2 Project as identified below.

**NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:**

**RESOLVED,** that President and Chief Executive Officer, the Senior Vice President and General Counsel, the Chief Financial Officer and the Vice President, Business Development-Refined Products/NGLs of the Company or any authorized respective delegate of any of the foregoing (each, an "*Authorized Officer*") is hereby authorized to pursue and proceed with the Mariner East 2 Project, including, without limitation, (i) the ability of the Partnership or one or more of its subsidiaries or affiliates therein in connection with and as part of the Mariner East 2 Project to make capital expenditures not to exceed $2.9 billion to construct and build the new Mariner East 2 pipeline, or to modify, convert and/or expand certain existing pipelines for use in connection with the Mariner East 2 Project, to construct, purchase, expand, modify and develop tankage, equipment and other facilities, including refrigerated ethane and propane storage facilities, at the Marcus Hook Industrial Complex or any other terminal to be used in connection with the Mariner East 2 Project; to construct, build, or purchase any other assets, equipment or facilities necessary or required to execute, perform, and implement the Mariner East 2 Project; and

**FURTHER RESOLVED,** that the entry by the Partnership or one of its operating subsidiaries into one or more transportation services agreements, terminalling agreements or other commercial agreements or arrangements, including without limitation right-of-way agreements, easements and other similar agreements upon such terms and conditions as any Authorized Officer deems reasonable or necessary in his or her judgment; and the undertaking by the Partnership or one of its operating subsidiaries of any action or proceeding necessary or required in connection with the execution or implement of the Mariner East 2 Project, including

48

the institution of condemnation proceedings or other action in connection with the use of eminent domain authority under applicable state law, hereby is authorized and approved; and

**FURTHER RESOLVED**, that the Authorized Officers are hereby authorized, empowered and directed, for and on behalf of the Company, the General Partner, the Partnership and any of the operating subsidiaries of the Partnership, to do and perform all such acts and things, and to enter into, execute and deliver all such other agreements, instruments, contracts, certificates, instruments, statements and documents, that in the judgment of the officer taking such action, are necessary or appropriate to effectuate and carry out the purposes and intent of the foregoing resolutions, with such determination to be conclusively evidenced by the taking of such action.

**FURTHER RESOLVED**, that any actions taken by the proper officers and employees of the Company prior to the date of these resolutions are hereby ratified and affirmed to the extent consistent with the intent of the foregoing resolutions.

*End of Resolutions*

**EXHIBIT B**

PA-HU-0047.0014
Huntingdon County, Pennsylvania
Pennsylvania Pipeline Project

## Exhibit "A"

### DESCRIPTION FOR A PERMANENT EASEMENT ACROSS THE LANDS OF
### STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

BEING A CENTERLINE DESCRIPTION FOR A FIFTY FOOT (50') WIDE PERMANENT EASEMENT, BEING
TWENTY-FIVE FEET (25') AS MEASURED PERPENDICULAR, LEFT AND RIGHT OF SAID CENTERLINE,
ACROSS THE LANDS NOW OR FORMERLY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND
AND WIFE, AS TENANTS BY THE ENTIRETY IN UNION TOWNSHIP, HUNTINGDON COUNTY,
PENNSYLVANIA, SAID LAND BEING MORE PARTICULARLY DESCRIBED IN DEED BOOK 417, PAGE 449 AS
RECORDED IN THE HUNTINGDON COUNTY RECORDER OF DEEDS.

Commencing from a point, said point being a found one inch (1") iron pin marking the southwest corner
lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the
entirety; thence North 13°16'04" East a distance of 37.1 feet more or less to the POINT OF BEGINNING
of the centerline described herein; thence across the lands now or formerly Stephen Gerhart and Ellen S.
Gerhart, husband and wife, as tenants by the entirety the following three (3) courses and distances; (1)
South 77°52'26" East a distance of 742.0 feet more or less to a point; (2) North 63°06'32" East a distance
of 754.6 feet more or less to a point; (3) South 79°56'32" East a distance of 4.2 feet more or less to a
point on a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband
and wife, as tenants by the entirety being the POINT OF TERMINATION of the centerline of the
easement described herein, said point being sixty-one feet (61') north of a found two inch (2") by two
inch (2") wooden stake with stones marking an angle break along the eastern boundary line lands now
or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.

The above described easement across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart,
husband and wife, as tenants by the entirety containing 1.72 acres more or less as shown on a plan
prepared by LW Survey Co. entitled "PERMANENT EASEMENT & RIGHT OF WAY CROSSING PROPERTY OF
STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY"

Notes:
1) The purpose of this Exhibit "A" document is to fully describe the area of the proposed
   permanent easement across the lands of Stephen Gerhart and Ellen S. Gerhart, husband and
   wife, as tenants by the entirety.
2) The intent of this Exhibit "A" is NOT to supersede any of the existing easements for the existing
   pipelines shown on the attached Exhibit "B".
3) Bearings shown hereon are Grid bearings of NAD83 Pennsylvania State Plane Coordinate
   System, South Zone, U.S. Survey Feet. Distances shown hereon are Grid distances and a scale
   factor must be applied to convert to ground distances.
4) Record information shown hereon is based on the best available record information and
   provided to LW Survey Co. by Rooney Engineering.
5) For additional information, see attached easement drawing (Exhibit "B") made in conjunction
   with and considered an integral part of the above described permanent easement.
6) This description and the attached Exhibit "B" were prepared for the purpose of creating a
   permanent easement and are not intended for use as a boundary survey.

### TEMPORARY/ADDITIONAL TEMPORARY WORKSPACE

Being an additional twenty-five foot (25') wide strip of land to be used during construction. The 25 foot
wide strip of land will be on the north side, parallel to and coincident with the above described
permanent easement. Said 25 foot wide strip of land will extend from a eastern boundary line lands
now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety a
distance of approximately one thousand sixteen feet (1,016') across the lands now or formerly of
Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety. An additional area,
beginning approximately two hundred thirty-three feet (233') southeast of westerly boundary line lands
now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety,
measuring approximately one hundred fifty feet (150') by two hundred fifty feet (250') north of and
parallel to the above mentioned permeant easement will be required for construction purposes.

LW Survey Co.
1725A Oregon Pike, Suite 204
Lancaster, PA. 17601



Exhibit J

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION-IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO | : | Bond No. K08887639 |
| PIPELINE L.P. OF PERMANENT AND | : | |
| TEMPORARY RIGHTS OF WAY FOR | : | |
| THE TRANSPORTATION OF | : | |
| ETHANE, PROPANE, LIQUID | : | |
| PETROLEUM GAS, AND OTHER | : | EMINENT DOMAIN |
| PETROLEUM PRODUCTS IN THE | : | |
| TOWNSHIP OF UNION, HUNTINGDON | : | |
| COUNTY, PENNSYLVANIA, OVER THE | : | |
| LANDS OF STEPHEN GERHART AND | : | |
| ELLEN S. GERHART | : | |

## BOND FOR DAMAGES UNDER RIGHT OF EMINENT DOMAIN

KNOW ALL MEN BY THESE PRESENTS, THAT Sunoco Pipeline L.P., a limited partnership organized and existing under the laws of the State of Texas, registered to do business in the Commonwealth of Pennsylvania, hereby called "Principal" or "Condemnor," and Westchester Fire Insurance Company (hereinafter "Surety"), a corporation duly authorized under the laws of the Commonwealth of Pennsylvania, is held and firmly bound under the Commonwealth of Pennsylvania, hereinafter called "Obligee," for the use and benefit of the owner or owners of the property condemned as hereinafter noted, and other proper parties and interests, for such damages as the said owner or owners of the said property and other parties in interest shall be entitled to receive after the same shall have been agreed upon or assessed in the manner prescribed by law, by reason of the condemnation by Sunoco Pipeline L.P., of certain property located in the Township of Union, County of Huntingdon, Commonwealth of Pennsylvania, being a tract of land maintained and described in the attached Exhibit "1."

WHEREAS, A true and correct copy of the condemnation plat for the tract is attached hereto as Exhibit "2."

WHEREAS, Sunoco Pipeline L.P. has appropriated a right-of-way and temporary construction easement in said property for the purpose of installing, maintaining and operating pipelines for the transportation of propane, ethane, liquid petroleum gas and other petroleum products.

WHEREAS, Sunoco Pipeline L.P. has condemned the said property and has not yet reached agreement with the owner or owners of said property upon the just compensation to be paid for the damages sustained by said owner or owners as a result of the condemnation.

WHEREAS, Sunoco Pipeline L.P. has caused an appraisal to be performed on the property that is subject to the above-referenced condemnation proceeding in Huntingdon County, to calculate the reasonable just compensation owed and based on the aforementioned appraisal has caused this bond to be issued in the amount of $6,000.00

NOW THE CONDITION, of this Bond is such that if Sunoco Pipeline L.P., the Obligor herein, shall pay or cause to be paid such amount of damages as the said owner or owners of the property and other proper parties in interest shall be entitled to receive by reason of such condemnation, after the same shall have been agreed upon or assessed in the manner provided by law, then this obligation shall be void; otherwise, to be and remain in full force and effect.

SIGNED, SEALED this 14th day of July, 2015.

SUNOCO PIPELINE L.P.
By: Sunoco Logistics Partners Operations GP LLC,
its general partner

WITNESS:

By: _Peter J Gvazdauskas_
Name: _Peter J Gvazdauskas_
Title: _CFO_

SURETY:
WESTCHESTER FIRE INSURANCE COMPANY

WITNESS: _Maureen McNeill_
Maureen McNeill

_Elizabeth Marrero_, Attorney-in-Fact

*Power of*
*Attorney*

## WESTCHESTER FIRE INSURANCE COMPANY

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into in the ordinary course of business (each a "Written Commitment"):

(1)     Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2)     Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such persons written appointment as such attorney-in-fact.

(3)     Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4)     Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5)     The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

**Does hereby nominate, constitute and appoint Annette Leuschner, Douglas R Wheeler, Elizabeth Marrero, Jaquanda Martin, Marina Tapia, Maureen McNeill, Patricia A. Rambo, Sara Owens, Wayne McVaugh, all of the City of PHILADELPHIA, Pennsylvania, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Twenty million dollars & zero cents ($20,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.**

**IN WITNESS WHEREOF**, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 15 day of June 2015.



WESTCHESTER FIRE INSURANCE COMPANY

Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA        ss.

On this 15 day of June, AD. 2015 before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney ,Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires Sept. 25, 2018

Notary Public

I, the undersigned Assistant Secretary of the **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 14th day of July, 2015

William L. Kelly, Assistant Secretary

**THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER June 15, 2017.**



**WESTCHESTER FIRE INSURANCE COMPANY**

FINANCIAL STATEMENT                                   DECEMBER 31, 2014

### ADMITTED ASSETS

| | |
|---|---|
| BONDS | $1,978,280,686 |
| SHORT - TERM INVESTMENTS | 14,407,134 |
| STOCKS | 3,117 |
| REAL ESTATE | 0 |
| CASH ON HAND AND IN BANK | (209,597,077) |
| PREMIUM IN COURSE OF COLLECTION* | 77,396,247 |
| INTEREST ACCRUED | 19,326,013 |
| OTHER ASSETS | 132,043,591 |
| TOTAL ASSETS | $2,011,859,711 |

### LIABILITIES

| | |
|---|---|
| RESERVE FOR UNEARNED PREMIUMS | $185,962,253 |
| RESERVE FOR LOSSES | 904,379,052 |
| RESERVE FOR TAXES | 2,948,809 |
| FUNDS HELD UNDER REINSURANCE TREATIES | 5,973,257 |
| OTHER LIABILITIES | 6,538,206 |
| TOTAL LIABILITIES | 1,105,801,577 |

| | |
|---|---|
| CAPITAL: 70,000 SHARES, $71.43 PAR VALUE | 5,000,100 |
| CAPITAL: PAID IN | 298,429,489 |
| AGGREGATE WRITE-INS FOR SPECIAL SURPLUS FUNDS | 124,168,040 |
| SURPLUS (UNASSIGNED) | 478,460,505 |
| SURPLUS TO POLICYHOLDERS | 906,058,134 |
| TOTAL | $2,011,859,711 |

(*EXCLUDES PREMIUM MORE THAN 90 DAYS DUE.)

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

John Taylor, being duly sworn, says that he is Senior Vice President of Westchester Fire Insurance Company and that to the best of his knowledge and belief the foregoing is a true and correct statement of the said Company's financial condition as of the 31 st day of December, 2014.

Sworn before me this   April 9, 2015

_____
Senior Vice President

_____
Notary Public

august 8, 2015
My commission expires

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Diane Wright, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Aug. 8, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

PA-HU-0047.0014
Huntingdon County, Pennsylvania
Pennsylvania Pipeline Project

## Exhibit "A"

### DESCRIPTION FOR A PERMANENT EASEMENT ACROSS THE LANDS OF
### STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

**BEING A CENTERLINE DESCRIPTION FOR A FIFTY FOOT (50') WIDE PERMANENT EASEMENT, BEING TWENTY-FIVE FEET (25') AS MEASURED PERPENDICULAR, LEFT AND RIGHT OF SAID CENTERLINE, ACROSS THE LANDS NOW OR FORMERLY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY IN UNION TOWNSHIP, HUNTINGDON COUNTY, PENNSYLVANIA, SAID LAND BEING MORE PARTICULARLY DESCRIBED IN DEED BOOK 417, PAGE 449 AS RECORDED IN THE HUNTINGDON COUNTY RECORDER OF DEEDS.**

Commencing from a point, said point being a found one inch (1") iron pin marking the southwest corner lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety; thence North 13°16'04" East a distance of 37.1 feet more or less to the POINT OF BEGINNING of the centerline described herein; thence across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety the following three (3) courses and distances; (1) South 77°52'26" East a distance of 742.0 feet more or less to a point; (2) North 63°06'32" East a distance of 754.6 feet more or less to a point; (3) South 79°56'32" East a distance of 4.2 feet more or less to a point on a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety being the POINT OF TERMINATION of the centerline of the easement described herein, said point being sixty-one feet (61') north of a found two inch (2") by two inch (2") wooden stake with stones marking an angle break along the eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.

The above described easement across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety containing 1.72 acres more or less as shown on a plan prepared by LW Survey Co. entitled "PERMANENT EASEMENT & RIGHT OF WAY CROSSING PROPERTY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY"

Notes:
1) The purpose of this Exhibit "A" document is to fully describe the area of the proposed permanent easement across the lands of Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.
2) The intent of this Exhibit "A" is NOT to supersede any of the existing easements for the existing pipelines shown on the attached Exhibit "B".
3) Bearings shown hereon are Grid bearings of NAD83 Pennsylvania State Plane Coordinate System, South Zone, U.S. Survey Feet. Distances shown hereon are Grid distances and a scale factor must be applied to convert to ground distances.
4) Record information shown hereon is based on the best available record information and provided to LW Survey Co. by Rooney Engineering.
5) For additional information, see attached easement drawing (Exhibit "B") made in conjunction with and considered an integral part of the above described permanent easement.
6) This description and the attached Exhibit "B" were prepared for the purpose of creating a permanent easement and are not intended for use as a boundary survey.

### TEMPORARY/ADDITIONAL TEMPORARY WORKSPACE

Being an additional twenty-five foot (25') wide strip of land to be used during construction. The 25 foot wide strip of land will be on the north side, parallel to and coincident with the above described permanent easement. Said 25 foot wide strip of land will extend from a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety a distance of approximately one thousand sixteen feet (1,016') across the lands now or formerly of Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety. An additional area, beginning approximately two hundred thirty-three feet (233') southeast of westerly boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety, measuring approximately one hundred fifty feet (150') by two hundred fifty feet (250') north of and parallel to the above mentioned permeant easement will be required for construction purposes.

LW Survey Co.
1725A Oregon Pike, Suite 204
Lancaster, PA. 17601



# EXHIBIT B
## UNION TOWNSHIP
## HUNTINGDON COUNTY,
## PENNSYLVANIA

LEGEND

R.O.D.H.C.PA.  HUNTINGDON CO. RECORDER OF DEEDS, PA.
P.O.B.         POINT OF BEGINNING
P.O.T.         POINT OF TERMINATION
               RECORD BEARING AND DISTANCE
               PROPERTY CORNER FOUND
               PROPERTY CORNER NOT FOUND
               PROPOSED PIPELINE/DEED LINE INTERSECTION
               PROPOSED PIPELINE VERTICE
               PROPOSED PERMANENT EASEMENT
               PROPOSED TEMPORARY WORK SPACE
               PROPOSED ADDITIONAL TEMPORARY WORK SPACE

Scale: 1" = 200'

VICINITY MAP
NOT TO SCALE

COMMONWEALTH OF
REGISTERED
PROFESSIONAL
JACK TURPIN
LAND
SURVEYOR
SU-070202
PENNSYLVANIA

DETAIL "B"

DETAIL "C"

PA-HU-0047.0014
STEPHEN GERHART AND ELLEN S. GERHART,
HUSBAND AND WIFE, AS TENANTS BY THE
ENTIRETY
R.O.D.H.C.PA. DEED BOOK 417, PAGE 449
27.386 ACRES

PA-HU-0047.0000
MARCELLUS SURFACE & MINERAL
HOLDINGS, LP,
A TEXAS LIMITED PARTNERSHIP
R.O.D.H.C.PA. DEED BOOK 2012,
PAGE 2744
PARCEL 1, TRACT 1, 2, 3 AND 4

SEE DETAIL "C"

PROPOSED ADDITIONAL
TEMPORARY WORK SPACE
(150'X250')

CENTERLINE OF PROPOSED
PERMANENT EASEMENT

50' WIDE PROPOSED
PERMANENT EASEMENT

25' WIDE PROPOSED
TEMPORARY WORK SPACE

5/8" IRON PIN W/ CAP (FD.)

2"X2" WOODEN
STAKE W/
STONES (FD.)

5/8" IRON PIN (FD.)

SEE DETAIL "B"

1" IRON PIN (FD.)

PA-HU-047.0001
MEARL R. STEEL AND JOKASTA M. STEEL,
HUSBAND AND WIFE
R.O.D.H.C.PA. DEED BOOK 441, PAGE 202

TROUGH CREEK VALLEY PIKE
S.R. 0829

1" IRON PIN (FD.)

2"x2" WOOD STAKE
W/ STONES (FD.)

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S77°52'26"E | 742.04' |
| L2 | N63°06'32"E | 754.63' |
| L3 | S79°56'32"E | 4.16' |
| L4 | N13°16'04"E | 37.10' |
| L5 | S13°16'04"W | 178.00' |
| L6 | N08°05'35"E | 61.02' |
| L7 | S08°05'35"W | 709.60' |

TOTAL DISTANCE ACROSS PROPERTY:        1500.83 FT
PROPOSED PERMANENT EASEMENT:           1.72 ACRES
TEMPORARY WORK SPACE:                  0.58 ACRES
ADDITIONAL TEMPORARY WORK SPACE:       0.86 ACRES

DETAIL "A"

NOTES:
1. THE PURPOSE OF THIS PLAN IS TO SHOW THE LIMITS OF THE PROPOSED PERMANENT AND TEMPORARY EASEMENTS CROSSING THE
   SUBJECT PROPERTY, THE PROPERTY LINES SHOWN HEREON, WERE COMPILED FROM THE BEST AVAILABLE RECORD INFORMATION AND IS
   NOT THE RESULT OF A BOUNDARY SURVEY.
2. THIS EXHIBIT WAS PREPARED WITHOUT THE BENEFIT OF A TITLE REPORT. LW SURVEY CO. HAS NOT RESEARCHED OR SHOWN ANY
   ADDITIONAL EASEMENTS, RIGHTS OF WAY, VARIANCES, AND/OR AGREEMENTS OF RECORD EXCEPT AS SHOWN HEREON.
3. BEARINGS SHOWN HEREON ARE GRID BEARINGS BASED ON THE PROJECT COORDINATE SYSTEM OF NAD 83, PENNSYLVANIA STATE PLANE,
   SOUTH ZONE, U.S. SURVEY FEET.  DISTANCES SHOWN HEREON ARE  GRID DISTANCES AND A SCALE FACTOR MUST BE APPLIED TO
   CONVERT TO GROUND DISTANCES.
4. FOR ADDITIONAL INFORMATION, SEE ATTACHED LEGAL DESCRIPTION (EXHIBIT "A") MADE IN CONJUNCTION WITH AND CONSIDERED AN
   INTEGRAL PART OF THE ABOVE DESCRIBED EASEMENT.

SURVEYED BY:

LW Survey Co.
1725A Oregon Pike
Suite 204
Lancaster, PA 17601

CLIENT:

Sunoco
Pipeline L.P.

REVISIONS

| NO. | DATE | BY | DESCRIPTION |
|-----|------|-----|-------------|
| 0 | 6/3/15 | JJH | ISSUED FOR REVIEW |

PERMANENT EASEMENT & RIGHT OF WAY
CROSSING PROPERTY OF
STEPHEN GERHART AND ELLEN S. GERHART
HUSBAND AND WIFE, AS TENANTS BY THE EN

DRAWN BY: JJH
TRACT NO.
DRAWN DATE: 6/3/15

PA-HU-0047.0014



# EXHIBIT B
## UNION TOWNSHIP
## HUNTINGDON COUNTY,
## PENNSYLVANIA
### LEGEND

R.O.D.H.C.P.A. HUNTINGDON CO. RECORDER OF DEEDS, PA.
P.O.B. POINT OF BEGINNING
P.O.T. POINT OF TERMINATION
( ) RECORD BEARING AND DISTANCE
• PROPERTY CORNER FOUND
○ PROPERTY CORNER NOT FOUND
△ PROPOSED PIPELINE/DEED LINE INTERSECTION
○ PROPOSED PIPELINE VERTICE
PROPOSED PERMANENT EASEMENT
PROPOSED TEMPORARY WORK SPACE
PROPOSED ADDITIONAL TEMPORARY WORK SPACE

**VICINITY MAP**
NOT TO SCALE

Scale: 1" = 200'

0    200    400
FEET   FEET   FEET

P.O.B. **DETAIL "B"**

P.O.T. **DETAIL "C"**

1" IRON PIN (FD.)

COMMONWEALTH OF
REGISTERED
PROFESSIONAL
JACK TURPIN
LAND
SURVEYOR
SU-075202
PENNSYLVANIA

PA-HU-0047.0014
STEPHEN GERHART AND ELLEN S. GERHART,
HUSBAND AND WIFE, AS TENANTS BY THE
ENTIRETY
R.O.D.H.C.PA. DEED BOOK 417, PAGE 449
27.386 ACRES

PA-HU-0047.0000
MARCELLUS SURFACE & MINERAL
HOLDINGS, LP,
A TEXAS LIMITED PARTNERSHIP
R.O.D.H.C.PA. DEED BOOK 2012,
PAGE 2744
PARCEL 1, TRACT 1, 2, 3 AND 4

SEE DETAIL "C"

2"X2" WOOD STAKE
W/ STONES (FD.)

TROUGH CREEK VALLEY PIKE
S.R. 0829

5/8" IRON PIN
W/ CAP (FD.)

PROPOSED ADDITIONAL
TEMPORARY WORK SPACE
(150'X250')

CENTERLINE OF PROPOSED
PERMANENT EASEMENT

50' WIDE PROPOSED
PERMANENT EASEMENT

25' WIDE PROPOSED
TEMPORARY WORK SPACE

2"X2" WOOD STAKE W/
STONES (FD.)

SEE DETAIL "B"

1" IRON PIN (FD.)

5/8" IRON PIN (FD.)

PA-HU-047.0001
MEARL R. STEEL AND JOKASTA M. STEEL,
HUSBAND AND WIFE,
R.O.D.H.C.PA. DEED BOOK 441, PAGE 202

TOTAL DISTANCE ACROSS PROPERTY:     1500.83 FT
PROPOSED PERMANENT EASEMENT:      1.72 ACRES
TEMPORARY WORK SPACE:        0.58 ACRES
ADDITIONAL TEMPORARY WORK SPACE:     0.86 ACRES

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S77°52'26"E | 742.04' |
| L2 | N63°06'32"E | 754.63' |
| L3 | S79°56'32"E | 4.16' |
| L4 | N13°16'04"E | 37.10' |
| L5 | S13°16'04"W | 178.00' |
| L6 | N08°05'35"E | 61.02' |
| L7 | S09°05'35"W | 709.60' |

PROP. PERM EASMT.
PROPOSED CENTERLINE
PROP. PERM START.

25'   25'

**DETAIL "A"**

### NOTES:
1. THE PURPOSE OF THIS PLAN IS TO SHOW THE LIMITS OF THE PROPOSED PERMANENT AND TEMPORARY EASEMENTS CROSSING THE SUBJECT PROPERTY. THE PROPERTY LINES SHOWN HEREON, WERE COMPILED FROM THE BEST AVAILABLE RECORD INFORMATION AND IS NOT THE RESULT OF A BOUNDARY SURVEY.
2. THIS EXHIBIT WAS PREPARED WITHOUT THE BENEFIT OF A TITLE REPORT. LW SURVEY CO. HAS NOT RESEARCHED OR SHOWN ANY ADDITIONAL EASEMENTS, RIGHTS OF WAY, VARIANCES, AND/OR AGREEMENTS OF RECORD EXCEPT AS SHOWN HEREON.
3. BEARINGS SHOWN HEREON ARE GRID BEARINGS BASED ON THE PROJECT COORDINATE SYSTEM OF NAD 83, PENNSYLVANIA STATE PLANE, SOUTH ZONE, U.S. SURVEY FEET. DISTANCES SHOWN HEREON ARE GRID DISTANCES AND A SCALE FACTOR MUST BE APPLIED TO CONVERT TO GROUND DISTANCES.
4. FOR ADDITIONAL INFORMATION, SEE ATTACHED LEGAL DESCRIPTION (EXHIBIT "A") MADE IN CONJUNCTION WITH AND CONSIDERED AN INTEGRAL PART OF THE ABOVE DESCRIBED EASEMENT.

| SURVEYED BY: | | CLIENT: | | | |
|---|---|---|---|---|---|
| LW Survey Co. 1725A Oregon Pike Suite 204 Lancaster, PA 17601 | | Sunoco Pipeline L.P. | | | |

| REVISIONS | | | | PERMANENT EASEMENT & RIGHT OF WAY CROSSING PROPERTY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY | | |
|---|---|---|---|---|---|---|
| NO. | DATE | BY | DESCRIPTION | | | |
| 0 | 6/3/15 | JJH | ISSUED FOR REVIEW | | | |

| DRAWN BY: | DRAWN DATE: | CHECKED BY: | PLOT DATE: |
|---|---|---|---|
| JJH | 6/3/15 | ARG | 6/3/15 |

TRACT NO.
PA-HU-0047.0014     PAGE 1 OF 1