# EXHIBIT B

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION - IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO PIPELINE L.P.  OF PERMANENT AND TEMPORARY RIGHTS OF WAY FOR THE TRANSPORTATION OF ETHANE, PROPANE, LIQUID PETROLEUM GAS, AND OTHER PETROLEUM PRODUCTS IN THE TOWNSHIP OF UNION, HUNTINGDON COUNTY, PENNSYLVANIA, OVER THE LANDS OF STEPHEN GERHART AND ELLEN S. GERHART | : : : : : : : : : : : | Docket No.  2015-0972<br><br><br><br>EMINENT DOMAIN – IN REM |

**ORDER**

AND NOW, this _18_ day of April, 2017, upon consideration of Condemnor Sunoco Pipeline L.P.'s Emergency Motion to Make Rule Absolute and Issue Writ of Possession, it is hereby ORDERED that said Motion is GRANTED.  The Court will issue the Writ of Possession, in the form attached to Motion, forthwith.

BY THE COURT:

_George Le Zanie_
                                        J.

NOTICE OF ENTRY OF ORDER OR DECREE PURSUANT TO PA. R. C. P. NO. 236 NOTIFICATION   THIS DOCUMENT HAS BEEN FILED IN THIS CASE. PROTHONOTARY, HUNTINGDON COUNTY, PA DATE:

APR 1 8 2017

2015-00972

RAIDERS RICH
210 WEST PENN AVENUE
PO BOX 223
ROBESONIA PA   19551

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION - IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO | : | Docket No.  2015-0972 |
| PIPELINE L.P.  OF PERMANENT AND | : | |
| TEMPORARY RIGHTS OF WAY FOR | : | |
| THE TRANSPORTATION OF | : | |
| ETHANE, PROPANE, LIQUID | : | |
| PETROLEUM GAS, AND OTHER | : | EMINENT DOMAIN – IN REM |
| PETROLEUM PRODUCTS IN THE | : | |
| TOWNSHIP OF UNION, HUNTINGDON | : | |
| COUNTY, PENNSYLVANIA, OVER THE | : | |
| LANDS OF STEPHEN GERHART AND | : | |
| ELLEN S. GERHART | : | |

## **ORDER**

AND NOW, this ____ day of April, 2017, upon consideration of Condemnor Sunoco

Pipeline L.P.'s Emergency Motion to Make Rule Absolute and Issue Writ of Possession, it is

hereby ORDERED that said Motion is GRANTED.  The Court will issue the Writ of Possession,

in the form attached to Motion, forthwith.

BY THE COURT:

_____
                                                                       J.

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION - IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO | : | Docket No.  2015-0972 |
| PIPELINE L.P.  OF PERMANENT AND | : | |
| TEMPORARY RIGHTS OF WAY FOR | : | |
| THE TRANSPORTATION OF | : | |
| ETHANE, PROPANE, LIQUID | : | |
| PETROLEUM GAS, AND OTHER | : | EMINENT DOMAIN – IN REM |
| PETROLEUM PRODUCTS IN THE | : | |
| TOWNSHIP OF UNION, HUNTINGDON | : | |
| COUNTY, PENNSYLVANIA, OVER THE | : | |
| LANDS OF STEPHEN GERHART AND | : | |
| ELLEN S. GERHART | : | |

## EMERGENCY MOTION OF SUNOCO PIPELINE L.P.
## TO MAKE RULE ABSOLUTE AND ISSUE WRIT OF POSSESSION

Condemnor Sunoco Pipeline L.P. ("Sunoco Pipeline"), by and through its undersigned

attorneys, hereby moves to make the Rule issued by the Court absolute and to issue a Writ of

Possession.  In support thereof, Sunoco Pipeline states as follows:

**I.      Procedural History of the Declaration of Taking**

1.      Condemnees Stephen Gerhart and Ellen S. Gerhart ("Condemnees") own a parcel

of property known as 15357 Trough Creek Valley Pike, in Union Township, Huntingdon

County, Pennsylvania 16652, having Tax Parcel I.D. No. 50-13-02 (the "Property").

2.      On July 21, 2015, Sunoco Pipeline filed a Declaration of Taking in the above-

captioned case to condemn certain easements across the Property.

3.      On August 19, 2015, Condemnees filed Preliminary Objections to the Declaration

of Taking.

4.     On January 6, 2016, following a hearing and briefing, the Court overruled all of Condemnees' Preliminary Objections.

5.     On or about February 4, 2016, Condemnees filed a Notice of Appeal from the Court's decision overruling the Preliminary Objections.

6.     Condemnees did *not* request a stay or supersedeas from this Court or the Commonwealth Court during the pendency of the appeal.

7.     No stay or supersedeas of the Court's January 6, 2016 decision is in place.

8.     The Commonwealth Court has directed that the matter will be resolved by a panel without oral argument.

9.     The parties have fully briefed the issues on appeal and the matter is ripe for decision by the Commonwealth Court.

10.    On February 23, 2016, Sunoco Pipeline filed a Petition to Deposit Estimated Just Compensation. The Petition sought leave to deposit the compensation owed to Condemnees as a result of the acquisition of the condemned easements with the Court because Condemnees had refused to accept receipt of the compensation directly.

11.    On March 8, 2016, Condemnees provided notice to the Court that they did not oppose the Petition and, on March 10, 2016, the Court granted the Petition and directed that estimated just compensation of $6,000 be deposited with the Prothonotary.

12.    On March 21, 2016, Sunoco Pipeline deposited the Estimated Just Compensation with the Court.

## II.   The March 2016 Preliminary Injunction Proceeding

13.     In March 2016, Sunoco Pipeline sought to clear trees from the easement area.   In response, counsel for Condemnees stated that Condemnees had informed him that they would not permit the trees to be removed.

14.     On the evening of March 23, 2016, Sunoco Pipeline learned that the Clean Air Council and the Concerned Citizens of Lebanon County had announced on social media an "event" at the Gerhart property and invited members "to come to the property in person to help deter tree-cutting crews" between March 24 and April 1, further stating that "The Gerhart family needs your support!"

15.     In light of counsel's representations of Condemnees' plans to resist the tree-clearing, in conjunction with the threats made at the site and the announced "event" for protestors to deter the tree-cutting," Sunoco Pipeline elected to avoid a potentially dangerous confrontation and deferred the tree-clearing pending judicial review of the circumstances.

16.     On March 28, 2016, following a hearing to consider Sunoco Pipeline's request for preliminary injunction, the Court granted the Motion and enjoined Condemnees and those acting in concert with them from "barring, preventing or otherwise interfering in any way with Sunoco Pipeline's access to the easement on the Gerharts' property."

17.     The tree clearing commenced the next day.  Elise Gerhart, the daughter of Condemnees, interfered with the effort by creating a platform in the trees, where she positioned herself.  Condemnee Ellen Gerhart, together with another individual on the scene, were arrested for interfering with the tree cutting and were charged with contempt of court.  However, the

3

majority of the tree cutting was successfully completed, with the remaining trees removed shortly thereafter.

18.     The preliminary injunction was dissolved shortly thereafter when the tree clearing was complete.

**III.     Sunoco Pipeline's Immediate Need for Possession of Its Easement Rights**

19.     As of April 2017, Sunoco Pipeline has obtained all necessary regulatory permits for the installation of the Mariner East 2 pipelines within the easements.

20.     Sunoco Pipeline has commenced construction activities for the Mariner East 2 Project across the Commonwealth.

21.     Construction has begun in Huntingdon County on the east shore of Raystown Lake.

22.     Sunoco Pipeline anticipates that construction activities will reach the Gerhart Property on or before April 20, 2017.

23.     On March 31, 2017, an article was published in the Wall Street Journal addressing "stiffening resistance" by pipeline opponents who have "been emboldened by North Dakota standoff." A true and correct copy of the article is attached hereto as Exhibit A.

24.     The Wall Street Journal article focused on the Gerhart Property and included a photograph of what is labeled as an "encampment" of tents on the Property within the right of way.

25.     In light of information provided in the article, in early April 2017, Sunoco Pipeline conducted a follow-up investigation and learned that Condemnees have indeed established an active encampment on the easement, which includes, among other things, tents

4

located within the right of way, camouflage netting installed to provide shelter and block views, and the construction of elevated platforms/tree stands.

26.     Sunoco Pipeline further learned from a publicly accessible Facebook page that the encampment and structures have been created specifically in an effort to block installation of the pipeline.

27.     Sunoco Pipeline reasonably anticipates that when it attempts to access its easements on the Property on or before April 20, 2017 to begin construction activities, Condemnees will prevent Sunoco Pipeline from accessing the easements.

28.     If Condemnees bar Sunoco Pipeline from entering the Property, Sunoco Pipeline's construction crews will be idled, at a substantial per day cost to Sunoco Pipeline and, moreover, there may be a significant delay in the project completion, threatening the viability of the entire project.

## IV.     The Request for the Writ of Possession

29.     The Pennsylvania Eminent Domain Code provides a remedy for a condemnor when a condemnee refuses to deliver possession of a condemned property. *See* 26 Pa.C.S. § 307(a)(1)(iii).

30.     The Code provides that a condemnor "shall be entitled to possession or the right of entry upon payment of or a written offer to pay to the condemnee the amount of just compensation as estimated by the condemnor." 26 Pa.C.S. § 307(a)(1)(i).

31.     Section 307(a)(1)(iii) of the Pennsylvania Eminent Domain Code provides that if a condemnee "refuses to deliver possession or permit a right of entry, the Prothonotary upon praecipe of the condemnor shall issue a rule, returnable in five days after service upon the

condemnee or the other person, to show cause why a writ of possession should not issue." 26 Pa.C.S. § 307(a)(1)(iii).

32.     The Court then has the authority to issue Writ of Possession conditioned upon payment of the estimated just compensation and other terms as the Court may direct. *See* 26 Pa.C.S. § 307(a)(1)(iv).

33.     Condemnees have made clear from their multiple actions that they are refusing to deliver possession and will not permit Sunoco Pipeline to enter and use its easement.

34.     On April 6, 2017, upon the praecipe of Sunoco Pipeline, the Prothonotary issued a a Rule to Show Cause directing Condemnees to show cause, if any, within 5 days as to why a Writ of Possession should not issue in favor of Sunoco Pipeline.

35.     Service of the Rule was made on Condemnees' counsel on April 7, 2017.

36.     On April 11, 2017, Condemnees filed Preliminary Objections to the Rule.[1]

---

[1] Sunoco Pipeline submits that Condemnees' styled their response as Preliminary Objections based on a misreading of the Code. The Code indicates that a court may issue a writ of possession unless "preliminary objections warranting delay are pending." 26 Pa.C.S. § 307(a)(1)(iv). Condemnees interpreted this as referring to preliminary objections to the writ, when, in fact, the statute is referring to preliminary objections to the declaration of taking itself, as multiple cases make clear. *In re Condemnation No. 2 by Commonwealth ex rel. Department of General Services*, 943 A.2d 997 (Pa. Cmwlth 2007); *In re Condemnation of 30.06 Acres of Land*, 572 A.2d 242 Pa. Cmwlth. 1990); *Redevelopment Authority of City of Wilkes-Barre v. Serafin*, 404 A.2d. 440 (Pa. Cmwlth. 1979). Indeed, the case cited by Condemnees themselves makes clear this point. *See In re Condemnation of Pa. Tpk. Comm'n of Prop. Located in PTC of Hampton*, 84 A.3d 768, 777-78 (Pa. Cmwlth 2014).

Sunoco Pipeline suggests that the Court should consider the Preliminary Objections as a "response to the rule to show cause," which is the substantive filing it believes Condemnees intended to make.

37.    In the Preliminary Objections, Condemnees argue that the Writ of Possession should not issue because Condemnees' appeal of the Court's Order overruling their Preliminary Objections remains pending.  Condemnees then raise several arguments related to the merits of the appeal.

38.    A court may deny a condemnor's request for a writ of possession if preliminary objections to the declaration of taking "warranting delay" remain pending. 26 Pa.C.S. § 307(a)(1)(iv).

39.    It is clear, however, that the fact that a condemnees' preliminary objections are pending on appeal alone is not a sufficient basis for refusing the request for a writ of possession. The Code states: *"A court may issue a writ of possession to a condemnor prior to the disposition of preliminary objections."* 26 Pa.C.S. § 307(2) (emphasis added).

40.    Indeed, the Commonwealth Court has repeatedly upheld decisions of trial courts to issue writs of possession to condemnors while appeals of preliminary objections are pending. *See, e.g., In re Condemnation No. 2 by Commonwealth ex rel. Department of General Services*, 943 A.2d 997 (Pa. Cmwlth 2007); *In re Condemnation of 30.06 Acres of Land*, 572 A.2d 242 (Pa. Cmwlth. 1990); *Redevelopment Authority of City of Wilkes-Barre v. Serafin*, 404 A.2d. 440 (Pa. Cmwlth. 1979).

41.    "The use of the phrase "preliminary objections *warranting delay*" indicates that there needs to be more than the mere existence of pending preliminary objections." *In re Condemnation of 30.06 Acres of Land*, 572 A.2d 242, 245 (Pa. Cmwlth. 1990) (emphasis added in the original).

42.    Crucial to the analysis of the Commonwealth Court in these cases is the fact that the Code provides a remedy to a condemnee where preliminary objections are ultimately

7

sustained by an appellate court. In such situations, a condemnee may recover damages, including actual costs and attorneys' fees. 26 Pa.C.S. § 307(2)(ii).

43.     Condemnees' Preliminary Objections currently pending before the Commonwealth Court on appeal are not preliminary objections that warrant any delay in the issuance of the writ of possession.

44.     As an initial matter, Sunoco Pipeline notes that Condemnees failed to request a stay of this Court's decision in connection with the appeal, and thus, any objections now to the writ of possession should be considered waived.

45.     Moreover, there are no issues on appeal that warrant a delay in the issuance of the writ of possession. The issues raised by Condemnees in their Preliminary Objections to the Declaration of Taking, and on appeal, were conclusively decided in Sunoco Pipeline's favor in *In re Condemnation of Sunoco Pipeline L.P.*, 143 A.3d 1000 (Pa. Cmwlth. 2016) *(en banc)*, *allocator denied*, ____ A.3d _____ (Pa. Dec. 29, 2016).

46.     In the Preliminary Objections to the Writ of Possession, Condemnees argue issues set forth in their Supplemental Brief to the Commonwealth Court.

47.     These issues are without merit. More significantly, however, Condemnees have waived these arguments by: 1) failing to properly raise those issues before the trial court in the Preliminary Objections to the Declaration of Taking; 2) failing to include those issues in their Concise Statement of Issues Complained of on Appeal; and 3) failing to include those issues in their statement of questions presented for review in their opening brief before the Commonwealth Court.

48.     A review of the record before this Court demonstrates unequivocally that the issues on which Condemnees seek to prevent the issuance of the Writ of Possession were not raised in the Preliminary Objections to the Declaration of Taking.

49.     Any issues not raised in preliminary objections to a declaration of taking are waived. *See* 26 Pa.C.S. § 306(b).

50.     Condemnees should not be permitted to raise new issues, which they previously waived, just days before construction and Sunoco Pipeline's need for access to its easements in order to stop Sunoco Pipeline from exercising its validly obtained rights.

51.     There is no requirement to preserve the status quo on the Property. *See In re Condemnation of Pa. Tpk. Comm'n of Prop. Located in PTC of Hampton*, 84 A.3d 768, 777-78 (Pa. Cmwlth 2014).

52.     Indeed, even the irreversible destruction of improvements on a property has not been found to be a basis for denying the issuance of a writ of possession where preliminary objections are pending on appeal. *See In re Condemnation No. 2 by Commonwealth ex rel. Department of General Services*, 943 A.2d 997, 1004 (Pa. Cmwlth 2007) ("Although Condemnee is correct that, once demolished, the building cannot be restored, we are not persuaded that the trial court abused its discretion by granting possession to Condemnor).

53.     In *Redevelopment Authority of City of Wilkes-Barre v. Serafin*, 404 A.2d. 440 (Pa. Cmwlth. 1979), the Commonwealth Court held that *only* "if the condemnee alleges facts which if proved would show that the condemnor has acted fraudulently or in palpable bad faith in making and offering estimated just compensation and if the condemnee thereafter *proves* the facts alleged by clear, precise and indubitable evidence, *then and only then should the trial court*

9

*refuse to issue the writ of possession.*" 404 A.2d at 466-67 (emphasis added).  There are no such facts alleged, let alone proven, in this case.

54.     Condemnees have alleged no sufficient basis for denying the issuance of the writ of possession.

55.     Sunoco Pipeline has complied with all prerequisites for the issuance of a writ of possession, including payment of the just compensation owed to Condemnees into the Court.

56.     The Eminent Domain Code provides a remedy to condemnors faced with precisely the situation presented here, a condemnee unwilling to turn over property legally obtained by the condemnor.

57.     Sunoco Pipeline requests that the Court issue the Writ of Possession, in the form attached hereto as Exhibit B, so that the Mariner East 2 Project can proceed to the benefit the citizen of Pennsylvania.[2]

---

[2] As noted in an order of the Pennsylvania Public Utility Commission on July 24, 2014, this pipeline "will result in numerous public benefits," including the ability to "ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." The PUC, in an August 21, 2014 Order, further determined that this pipeline:

> will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, ensuring that Pennsylvania's citizens enjoy access to propane heating fuel.  Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

This Court, earlier in this proceeding, also recognized the public benefit of this project. *See 1925(a) Memorandum*, at 3.

10

WHEREFORE, Sunoco Pipeline L.P. respectfully requests that the Rule to Show Cause be made absolute and the Court issue the Writ of Possession in the form attached hereto.

McNEES WALLACE & NURICK LLC

By _____

Alan R. Boynton, Jr., Pa. I.D. No. 39850
aboynton@mcneeslaw.com
Stephanie Carfley, PA I.D. No. 79136
scarfley@mcneeslaw.com
Kandice Kerwin Hull, PA I.D. No. 86345
khull@mcneeslaw.com
100 Pine Street, P.O. Box 1166
Harrisburg, PA  17108
(717) 232-8000

Dated:  April 13, 2017          *Counsel for Plaintiff Sunoco Pipeline L.P.*

# EXHIBIT A

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/pipelines-encounter-stiffening-resistance-1490952608

U.S.

# Pipelines Encounter Stiffening Resistance

### Residents are emboldened by North Dakota standoff as energy firms try to move glut of natural gas



The small encampment on Ellen Gerhart's property in Huntingdon, Pa., protesting the Mariner East 2 pipeline.
*PHOTO: KRIS MAHER/THE WALL STREET JOURNAL*

By KRIS MAHER

March 31, 2017 5:30 a.m. ET

HUNTINGDON, Pa.—As energy companies ramp up efforts to move a glut of natural gas with new pipelines in Pennsylvania and beyond, they are encountering stiffening resistance from property owners and activists.

Case 1:17-cv-01726-YK   Document 104-2

Residents and activists have set up an encampment on Ellen Gerhart's property here, where the 61-year-old has been fighting against the 350-mile Mariner East 2 pipeline. A hundred miles to the east, a bigger encampment in Lancaster dubbed "The Stand" is going up in a cornfield in the heart of Amish farm country to oppose a different pipeline. In both cases, the pipeline builders have said they have tried to accommodate landowners and avoid clashes by rerouting sections.

As the disputes rage, officials say the need for new pipeline capacity is acute in places like Pennsylvania, where fracking in the Marcellus Shale has created an oversupply of natural gas, depressing prices and hampering economic development.

A task force formed by Pennsylvania Gov. Tom Wolf, a Democrat, concluded last year that more pipelines are needed to move gas inside and beyond Pennsylvania. In February, appointees of President Barack Obama on the Federal Energy Regulatory Commission approved four major pipelines in the state, the nation's No. 2 natural-gas producer behind Texas.

A majority of Pennsylvania residents support natural-gas development and the use of fracking, according to several statewide polls conducted in the past five years. Since 2012, a fee on natural gas wells has generated a billion dollars in revenue for the state. There are more than 12,000 miles of oil and gas pipelines in Pennsylvania.

But pipeline opponents say they threaten drinking-water sources and sometimes cut an unwanted path through private land, and they feel emboldened after last year's protests against the Dakota Access Pipeline in North Dakota. That standoff galvanized Native American and environmental activists even though it ultimately failed to block the pipeline, which is soon to be in service.

Ms. Gerhart, a retired special-education teacher, has been arrested three times trying to stop the gas pipeline from crossing her property, and her 29-year-old daughter, Elise, climbed a tree last year to try to stop workers from clearing a right-of-way. The Gerhart family says Sunoco Logistics Partners LP illegally cut 200 trees on three of its 27 acres to carve a path for the $2.5 billion Mariner East 2 pipeline, which would carry natural gas liquids to refineries and export terminals near Philadelphia.

"What's happening is you have this quiet peaceful rural property being turned into an industrial zone against your will," said Elise Gerhart. A county judge permitted the company to seize the land, but the family has appealed the ruling.



Ellen Gerhart with her daughter Elise, right. *PHOTO: KRIS MAHER/THE WALL STREET JOURNAL*

Jeff Shields, a spokesman for Sunoco Logistics, said the company cleared the trees after the court condemned the land. He said the company has negotiated easements with over 2,000 landowners for the project and seeks to avoid eminent domain proceedings.

"We will continue to follow the law in everything that we do, as we have with the Gerharts, and we expect landowners or any protesters to do the same," he said.

Pipeline development has also meant jobs for people like John Carson, a 33-year-old laborer from Plymouth, Pa.

Mr. Carson has been helping build pipelines for the past nine years and said there has been little other work available at his union hall. Today he earns $28.50 an hour working on the pipeline the Gerhart family is protesting. He expects to switch later this year to the pipeline set to run through the Lancaster encampment.

"The pipeline has been literally feeding my family for the past nine years," he said. "Everybody is entitled to their own belief," he said of people fighting the projects. However, he said he thinks much of the opposition to new pipelines is misplaced because they are better engineered and use advanced coatings that he believes make them far safer than older lines.

"I think most folks in Pennsylvania understand the benefits of pipeline development," said Dave Spigelmyer, president of the Marcellus Shale Coalition, a trade group. He said new pipelines would boost jobs in construction and steel and companies in chemicals and plastics that use natural gas.

Ms. Gerhart and other protest organizers say they have no quarrel with people like Mr. Carson who earn their living in the pipeline business. Their concern is largely with the way the companies use eminent domain to force landowners to make way for the pipelines.

Williams Co s., the Lancaster pipeline's builder, said it has also tried to work with landowners and has made 477 changes to the pipeline's route to accommodate people, said Chris Stockton, a spokesman. The 185-mile Atlantic Sunrise Pipeline would cross 10 Pennsylvania counties and feed natural gas into an existing east coast pipeline to customers, potentially as far south as Alabama.

Mr. Stockton said the company respects the rights of people to protest the pipeline, which Williams estimates would support 2,500 jobs during the year it is built. "As we're constructing the line, the safety of our employees and the public is the most important thing to us," he said. "Hopefully we're not going to have a confrontation."

Organizers of the protests, meanwhile, are trying to strike their own balance by not provoking local police and others in the community. In Lancaster, protesters won't be allowed to wear masks as many did at the North Dakota protests, local organizers say. Malinda Clatterbuck, an associate pastor at a Mennonite church who sleeps at the Lancaster encampment several times a week, along with her husband and two daughters, said the group won't allow tactics that could hurt their cause by turning off local supporters.

"We're residents who are living here who are trying to protect our land," she said.

Write to Kris Maher at kris.maher@wsj.com

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

# EXHIBIT B

IN THE COURT OF COMMON PLEAS
OF HUNTINGDON COUNTY, PENNSYLVANIA
CIVIL DIVISION - IN REM

| | | |
|---|---|---|
| IN RE: CONDEMNATION BY SUNOCO | : | Docket No.  2015-0972 |
| PIPELINE L.P.  OF PERMANENT AND | : | |
| TEMPORARY RIGHTS OF WAY FOR | : | |
| THE TRANSPORTATION OF | : | |
| ETHANE, PROPANE, LIQUID | : | |
| PETROLEUM GAS, AND OTHER | : | EMINENT DOMAIN – IN REM |
| PETROLEUM PRODUCTS IN THE | : | |
| TOWNSHIP OF UNION, HUNTINGDON | : | |
| COUNTY, PENNSYLVANIA, OVER THE | : | |
| LANDS OF STEPHEN GERHART AND | : | |
| ELLEN S. GERHART | : | |

## WRIT OF POSSESSION

TO THE SHERIFF OF HUNTINGDON COUNTY:

Condemnor Sunoco Pipeline L.P. having filed a Declaration of Taking at the above-referenced docket number and having deposited the estimated just compensation owed to Condemnees with the Prothonotary of this Court, a Writ of Possession is hereby issued in favor of Sunoco Pipeline L.P.

You are directed to deliver possession of the easements over the lands of Condemnees Stephen Gerhart and Ellen S. Gerhart, which were condemned at this docket number and are more fully described in the document attached hereto as Exhibit A, to Sunoco Pipeline L.P.

BY THE COURT:

_____
J.

# EXHIBIT A

## RIGHT-OF-WAY EASEMENT ACQUIRED BY CONDEMNATION

THIS RIGHT-OF-WAY EASEMENT (the "Easement") acquired by condemnation and granting an easement to Sunoco Pipeline L.P., a Texas limited partnership, with an office at 525 Fritztown Road, Sinking Spring, Pennsylvania 19608, and its successors and assigns (hereinafter collectively called "Condemnor") over the lands of Stephen Gerhart and Ellen S. Gerhart, having an address at 15357 Trough Creek Valley Pike, Huntingdon, Pennsylvania 16652, (hereinafter called "Condemnee" whether one or more) and its successors and assigns.

Condemnor has, by Order of Court, acquired a permanent non-exclusive fifty foot (50') wide right-of-way and easement (the "Right-of-Way") and temporary workspace(s) along a route as shown on Exhibit "1" attached hereto, to construct, install, maintain, operate, repair, inspect, alter, protect, change the size of, relocate, replace in whole or in part, remove, and abandon two (2) pipelines and other appurtenant facilities including, but not limited to, above-ground markers, test stations and cathodic protection equipment (collectively the "Facilities") for the purpose of transporting petroleum and petroleum products including but not limited to ethane, propane, and liquid petroleum gas in, over, through, across, under, and along the lands owned by Condemnee in the Township of Union, County of Huntingdon, Commonwealth of Pennsylvania, described as follows:

Parcel identification number(s): 50-13-02, being all that particular tracts or parcels of land owned by Condemnee or to which Condemnee may have rights in said tracts or parcels of land, being called a parcel in Huntingdon County, Pennsylvania, being more specifically described in the Deed dated August 20, 1996, which was recorded at Deed Book Volume 417, Page 449, in the office of the Recorder of Deeds of said County and State, and being more fully described in Exhibit 1 (the "Property").

Condemnor shall have the right of ingress and egress, entry and access in, to, through, on, over, under and across the Property and any public road or public right-of-way or other easement to which Condemnor has a right of access, for any and all purposes necessary and/or incidental to the exercise by the Condemnor of the rights granted to it by this Easement.

Condemnor shall bury the pipes and related equipment to a minimum depth of thirty-six inches (36") below the surface of the ground so as to not interfere with the cultivation of the Property except where valves, equipment or other appurtenances, if any, should be installed at or above ground level and shall not therefore be buried.

The Condemnee may use the Right-of-Way for any and all purposes not inconsistent with the purposes set forth in this Easement. However, the Condemnee may not use any part of the Right-of-Way if such use may damage, destroy, injure, or interfere with Condemnor's use of the Right-of-Way for the purpose for which the Right-of-Way has been acquired by Condemnor. Activities for which the Condemnee may not use the Right-of-Way include without limitation the following: (1) construction of any temporary or permanent buildings; (2) drilling or operation of any well; (3) removal of soil or changing the grade or slope; (4) impounding surface water; (5) planting trees or landscaping; (6) installing fences over the Right-of-Way; provided, however,

that Condemnee may erect a fence perpendicularly with the Right-of-Way with Condemnor's prior written approval. Condemnee is further prohibited from any above- or below-ground obstruction that may interfere with the purposes for which this Easement is acquired being placed, erected, installed or permitted upon the Right-of-Way without the written approval of the Condemnor. In the event the terms of this paragraph are violated, such violation shall immediately be eliminated by Condemnee, at Condemnee's sole cost and expense, upon receipt of written notice from Condemnor or Condemnor shall have the immediate right to correct or eliminate such violation, at the sole expense of Condemnee. Condemnee shall promptly reimburse Condemnor for any expense related thereto. Condemnee is further prohibited from interfering in any manner with the purposes for which the Right-of-Way is being conveyed.

The Condemnor shall have the right, but not the obligation, from time to time to mow the Right-of-Way and to trim, cut down or eliminate any tree, bush, shrubbery or plant, in the sole judgment of Condemnor, its successors and assigns, as may be necessary to prevent possible interference with the construction, operation and maintenance of Condemnor's Facilities and to remove possible hazards thereto, and the right to remove or prevent the construction of, any and all buildings, structures, reservoirs or other obstructions on the Right-of-Way which in the sole judgment of the Condemnor may endanger or interfere with the efficiency, safety, or convenient operation of the Condemnor's Facilities. Condemnor shall not be liable for damages to any tree, bush, shrubbery or plant upon the Right of Way as a result of its exercise of its rights under this paragraph.

The terms, conditions and provisions of this Easement are covenants running with the land and shall extend to and be binding upon the heirs, executors and administrators, personal representative, successors and assigns of the parties hereto.

**EXHIBIT 1**

**PLAT**

PA-HU-0047.0014
Huntingdon County, Pennsylvania
Pennsylvania Pipeline Project

## Exhibit "A"

**DESCRIPTION FOR A PERMANENT EASEMENT ACROSS THE LANDS OF
STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY**

**BEING A CENTERLINE DESCRIPTION FOR A FIFTY FOOT (50') WIDE PERMANENT EASEMENT, BEING
TWENTY-FIVE FEET (25') AS MEASURED PERPENDICULAR, LEFT AND RIGHT OF SAID CENTERLINE,
ACROSS THE LANDS NOW OR FORMERLY OF STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND
AND WIFE, AS TENANTS BY THE ENTIRETY IN UNION TOWNSHIP, HUNTINGDON COUNTY,
PENNSYLVANIA, SAID LAND BEING MORE PARTICULARLY DESCRIBED IN DEED BOOK 417, PAGE 449 AS
RECORDED IN THE HUNTINGDON COUNTY RECORDER OF DEEDS.**

Commencing from a point, said point being a found one inch (1") iron pin marking the southwest corner
lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the
entirety; thence North 13°16'04" East a distance of 37.1 feet more or less to the POINT OF BEGINNING
of the centerline described herein; thence across the lands now or formerly Stephen Gerhart and Ellen S.
Gerhart, husband and wife, as tenants by the entirety the following three (3) courses and distances; (1)
South 77°52'26" East a distance of 742.0 feet more or less to a point; (2) North 63°06'32" East a distance
of 754.6 feet more or less to a point; (3) South 79°56'32" East a distance of 4.2 feet more or less to a
point on a eastern boundary line lands now or formerly Stephen Gerhart and Ellen S. Gerhart, husband
and wife, as tenants by the entirety being the POINT OF TERMINATION of the centerline of the
easement described herein, said point being sixty-one feet (61') north of a found two inch (2") by two
inch (2") wooden stake with stones marking an angle break along the eastern boundary line lands now
or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety.

The above described easement across the lands now or formerly Stephen Gerhart and Ellen S. Gerhart,
husband and wife, as tenants by the entirety containing 1.72 acres more or less as shown on a plan
prepared by LW Survey Co. entitled "PERMANENT EASEMENT & RIGHT OF WAY CROSSING PROPERTY OF
STEPHEN GERHART AND ELLEN S. GERHART, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY"

Notes:
1) The purpose of this Exhibit "A" document is to fully describe the area of the proposed
   permanent easement across the lands of Stephen Gerhart and Ellen S. Gerhart, husband and
   wife, as tenants by the entirety.
2) The intent of this Exhibit "A" is NOT to supersede any of the existing easements for the existing
   pipelines shown on the attached Exhibit "B".
3) Bearings shown hereon are Grid bearings of NAD83 Pennsylvania State Plane Coordinate
   System, South Zone, U.S. Survey Feet. Distances shown hereon are Grid distances and a scale
   factor must be applied to convert to ground distances.
4) Record information shown hereon is based on the best available record information and
   provided to LW Survey Co. by Rooney Engineering.
5) For additional information, see attached easement drawing (Exhibit "B") made in conjunction
   with and considered an integral part of the above described permanent easement.
6) This description and the attached Exhibit "B" were prepared for the purpose of creating a
   permanent easement and are not intended for use as a boundary survey.

### TEMPORARY/ADDITIONAL TEMPORARY WORKSPACE

Being an additional twenty-five foot (25') wide strip of land to be used during construction. The 25 foot
wide strip of land will be on the north side, parallel to and coincident with the above described
permanent easement.  Said 25 foot wide strip of land will extend from a eastern boundary line lands
now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety a
distance of approximately one thousand sixteen feet (1,016') across the lands now or formerly of
Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety. An additional area,
beginning approximately two hundred thirty-three feet (233') southeast of westerly boundary line lands
now or formerly Stephen Gerhart and Ellen S. Gerhart, husband and wife, as tenants by the entirety,
measuring approximately one hundred fifty feet (150') by two hundred fifty feet (250') north of and
parallel to the above mentioned permeant easement will be required for construction purposes.

LW Survey Co.
1725A Oregon Pike, Suite 204
Lancaster, PA. 17601



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing document was served via email and first class mail upon the following:

Richard Alan Raiders, Esq.
Lengert & Raiders LLC
210 West Penn Avenue
P.O. Box 223
Robesonia, PA  19551


Kandice K. Hull
*Attorney for Sunoco Pipeline L.P.*


Dated:   April 13, 2017