IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELLEN GERHART, ELISE             :
GERHART, ALEX LOTORTO            :
and ELIZABETH GLUNT,             :
    Plaintiffs                   :   CIVIL ACTION NO. 1:17-cv-1726-YK
                                 :
    v.                           :
                                 :
ENERGY TRANSFER                  :   (Judge Kane)
PARTNERS L. P., et. al.,         :
    Defendants                   :

_____

**BRIEF OF COUNTERCLAIMANTS ENERGY TRANSFER
PARTNERS L.P., SUNOCO PIPELINE, L.P., AND
SUNOCO LOGISTICS L.P., IN OPPOSITION
TO MOTION TO DISMISS AMENDED COUNTERCLAIMS**

_____

McNEES WALLACE & NURICK LLC
Alan R. Boynton, Jr. (PA 39850)
Stephanie Carfley (PA 79316)
Courtney M. Wentzel (PA 324131)
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000

*Attorneys for Defendants Energy
Transfer Partners, L.P., Sunoco
Pipeline, L.P, and Sunoco Logistics,
L.P.*

# **TABLE OF CONTENTS**

**I. RELEVANT FACTUAL HISTORY** ........................................................ 1

**II. RELEVANT PROCEDURAL HISTORY** .............................................. 3

**III. ISSUE PRESENTED** ......................................................................... 4

**IV. ARGUMENT** ...................................................................................... 4

      **A.**   **The request to dismiss Counterclaim I (trespass) should be denied.** ........................................ 4

      **B.**   **The request to dismiss Counterclaim II (nuisance) should be denied.** ....................................... 8

      **C.**   **The request to dismiss Counterclaim III (violation of a court order) should be denied.** ........... 12

      **D.**   **The request to dismiss Counterclaim IV (for interference with the Easement) should be denied.** ........................................................................ 15

**V.**   **CONCLUSION** ........................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*Allen v. Chase Manhattan Bank*, 49 Misc. 2d 514, 267 N.Y.S. 2d
620 (NY County 1966) ........................................................................ 13

*Associates of Philipsburg v. Hurwitz*, 292 Pa. Super. 406, 413, 437
A.2d 447 (1981) .................................................................................. 5

*Association of Orange Cty Deputy Sheriffs v. County of Orange*,
2015 Cal. App. Unpubl. LEXIS 1922 (Cal. App. 4th Appellate
Div. 2015) ......................................................................................... 13

*Bayer Bus. & Tech. Services v. AGR Premier Consulting, Inc.*, 550
Fed. Appx. 115, 122-123, 2014 U.S. App. LEXIS 437 (3d Cir.
2014) ............................................................................................... 10

*Bradish v. Riolo*, 1994 Ohio App., LEXIS 4486 *7, 1994 WL 530899
(1994) ............................................................................................... 6

*CHoPP Computer Corp. v. United States*, 5 F.3d 1344, 1351 (9th Cir.
1993) ............................................................................................... 14

*Columbia Gas Trans. Corp. v. Bennett*, 594 N.E.2d 1, 8 (Ohio App.
1990) ................................................................................................. 5

*Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018)............................................. 16

*Dommell Props., LLC v. Jonestown Bank & Trust Co.,* 2014 U.S.
Dist. LEXIS 93026, *43 (M.D. Pa. 2014) ............................................. 8

*Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340 (3d Cir. 2010) ............... 11

*Duhring Res. Co. v. United States*, 775 Fed. Appx. 742, 747 (3d.
Cir. 2019)........................................................................................... 15

*Enon Valley Tel. Co. v. Market*, 90 Pa. Commw. 53, 57, 493 A.2d
800 (Pa. Commw. 1985).................................................................... 11

*First Nat'l Bank v. First Nat'l Bank S. D.*, 2008 U.S. Dist. LEXIS
25708 (D. S.D. 2008) ............................................................. 14

*Gerhart v. Energy Transfer Partners*, 2020 U.S. Dist. LEXIS 55107,
*83 (M.D. Pa. 2020) .............................................................. 11

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 2010
(2002) ................................................................................ 12

*Green Oaks, Ltd. v. Canaan*, 749 S.W.2d 128, 131
(Tex. App. 1987) ............................................................ 12, 13

*Heinz v. Superior Court*, 42 Cal. 2d 164, 266 P.2d 5, 12 (Cal. 1954) ........ 14

*Hodge v. Bluebeard's Castle, Inc.* 2002 WL 1022524
(Terr. V.I. 2002) ................................................................ 15

*Kao v. Haldeman*, 556 Pa. 279, 728 A.2d 345, 349 (1999) ........................ 6

*Kirby v. San Francisco Savings & Loan Society*, 95 Cal. App. 757,
273 P. 609, 609-610 (Cal. App. 1928) ............................... 14

*Montalvan v. Neville's Mobile Home Court, LLC*, 2020 U.S. Dist.
LEXIS 104150, *71 (M.D. Pa. 2020) ................................. 10

*Palmer v. Soloe*, 411 Pa. Super. 444, 448-449, 601 A.2d 1250
(1992) .................................................................................. 5

*Silver Saundors Friedman v. Friedman*, 2006 U.S. Dist. LEXIS
109462 *41 (C.D. Calif. 2006) ........................................... 13

*SynQor, Inc. v. Artesyn Techs., Inc.,* 2013 U.S. Dist. LEXIS 191999
(E.D. Tex. 2013) ................................................................ 13

*Taylor v. Heffner*, 359 Pa. 157, 164, 58 Pa. 450, 454 (1948) ..................... 5

*Young v. Unites States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787
(1987) .................................................................................. 9

## **Statutes**

Restatement (3rd) Property, Servitudes, §4.9 (2000)...................................5

Restatement of Property § 481 ....................................................................5

## **Other Authorities**

39 Pennsylvania Law Encyclopedia § 502 ................................................16

Counterclaimants Energy Transfer Partners, L.P. ("ETP"), Sunoco Pipeline, L.P. ("Sunoco Pipeline"), and Sunoco Logistics, L.P. ("Sunoco Logistics") (collectively, "Counterclaimants"), filed four amended counterclaims (citations to which are hereafter identified as "ACC") against Ellen Gerhart.  They are for trespass (count I), nuisance (count II), violation of injunction (count III), and interference with Sunoco Pipeline's easement (count IV).  Mrs. Gerhart has moved to dismiss the amended counterclaims ("Motion to Dismiss").  Counterclaimants, by their counsel, submit this brief in opposition to the Motion to Dismiss.

## I.    RELEVANT FACTUAL HISTORY

In the fall of 2015, Sunoco Pipeline filed a declaration of taking to condemn a portion of property owned by Stephen and Ellen Gerhart ("the Gerhart Property") for a right-of-way easement to install natural gas liquids pipelines ("the Easement").  ACC, ¶ 6; Motion to Dismiss, Ex. A (Declaration of Taking).  The Gerharts opposed the condemnation and filed preliminary objections to the taking.  *Id.,* ¶ 7.

In January 2016, the Court of Common Pleas of Huntingdon County issued a final decision on the merits, overruling the Gerharts' objections to the taking.  ACC, ¶ 8.  The appeal of that decision was unsuccessful and denied by the Commonwealth Court in May 2017.  *Id.,* ¶ 17.

Mrs. Gerhart thereafter engaged in civil disobedience with co-conspirators and created "Camp White Pine" to actively prevent Sunoco Pipeline's use of its easement.  *Id.*, ¶ 15.  Camp White Pine was promoted on its Facebook site as a "resistance camp" and a "forest defense camp resisting Sunoco Pipeline's Mariner East 2 Pipeline."  *Id.*, ¶ 16.

In June 2017, the Court of Common Pleas, faced with Mrs. Gerhart's ongoing and active interference, issued an injunction barring her and those working in concert with her from further engaging in obstructive behavior on the Easement.  *Id.,* ¶ 18.  She responded that she and her supporters "will not comply with the judge's order" and would not allow the installation of the pipeline on the Easement.  *Id.,* ¶¶ 19-22.  The Facebook site readily admitted that they "had been physically blocking pipeline construction of the Mariner East 2 pipeline since February…."  *Id.,* ¶ 22.

In April 2018, while workers were removing obstructions on the site, Mrs. Gerhart pulled on a safety rope, trying to pull a worker out of a tree.  *Id.*, ¶¶ 25-27.  As work began in earnest on the Easement, Mrs. Gerhart then entered the Easement to actively and aggressively obstruct and block machinery and personnel, forcing work to stop on several occasions.  *Id.*, ¶ 29-39.  She then stole survey stakes and threw them onto her property.

2

*Id.*, ¶ 40. When questioned by State Police about doing so, she refused to answer any questions or produce identification. *Id.*, ¶ 41.

Mrs. Gerhart spread foul items, such as expired meats and eggs, and cat feces, along the edge of, and on, the Easement, in an attempt to annoy and harass workers and to draw animals, including bears, to the Easement, placing workers and neighbors in danger. *Id.,* ¶¶ 43-46. She threatened workers and readily admitted that her intention was to harass and annoy the workers. *Id.,* ¶¶ 47, 50. As noted by the Court of Common Pleas, she played "a proverbial game of chicken with work crews and heavy equipment." Motion to Dismiss, Ex. D, at 5.

As a result of her willful misconduct, Mrs. Gerhart was charged with, and convicted of, criminal contempt and sentenced to two to six months incarceration and fined $2,000. In so doing, the court noted that Mrs. Gerhart's conduct was not only criminal but, in relation to the employees who were just doing their job, "reprehensible." Motion to Dismiss Amended Counterclaims, Exhibit F (Transcript of Indirect Criminal Contempt hearing), at 81.

## II.    RELEVANT PROCEDURAL HISTORY

On May 26, 2020, Counterclaimants filed amended counterclaims against Mrs. Gerhart. On June 16, 2020, Mrs. Gerhart filed a motion to

3

dismiss the amended counterclaims.  On June 30, 2020, Mrs. Gerhart filed a brief in support of her motion to dismiss.  This brief is submitted in opposition to Mrs. Gerhart's motion.

## III.    ISSUE PRESENTED

**Whether Mrs. Gerhart's Motion to Dismiss should be denied in its entirety since the counterclaims all state claims upon which relief can be granted?**

**Suggested Answer:  The Motion to Dismiss should be denied.**

## IV.   ARGUMENT

### A.    The request to dismiss Counterclaim I (trespass) should be denied.

Mrs. Gerhart argues that she could not trespass on her own land since the Easement was non-exclusive and did not change the fact that she owned, and could enter, her own land.  The argument is without merit because (1) entering an easement, even if Mrs. Gerhart owned the servient estate, constitutes trespass if entered for the purpose of interfering with the easement holder's rights, and (2) Mrs. Gerhart's right to enter the Easement in any capacity terminated with the issuance of the court order barring her from doing so.  Entries thereafter constituted trespass since she had no right to enter the Easement.

While a landowner generally retains the right to use an easement because he/she still owns the property itself, that right of use does not

4

extend to entry onto the easement for the purpose of interfering with the easement holder's use of the easement.  Rather, Pennsylvania has adopted the Restatement (3rd) Property, Servitudes, §4.9 (2000), which provides that "the holder of the servient estate is entitled to make any use of the servient estate that **does not unreasonably interfere with the enjoyment of the servitude**."  Emphasis added.  *See Palmer v. Soloe*, 411 Pa. Super. 444, 448, 601 A.2d 1250 (1992):

> Thus, the law provides that the possessor of the land subject to the easement may not interfere unreasonably with the easement holder's use of the easement. *See Restatement of Property* § 481 (the possessor of land subject to a prescriptive easement may only make such use of the easement as is "not incompatible" with the use authorized by the easement, and the possessor of the land may not "interfere" with the use of the easement).

411 Pa. Super. at 448-449, citing *Taylor v. Heffner*, 359 Pa. 157, 164, 58 Pa. 450, 454 (1948).  *See also Associates of Philipsburg v. Hurwitz*, 292 Pa. Super. 406, 413, 437 A.2d 447 (1981) ("the grantor may make use of his land in any way that does not interfere substantially with the previously created easement"); *Columbia Gas Trans. Corp. v. Bennett*, 594 N.E.2d 1, 8 (Ohio App. 1990) ("Thus, the owner of the servient estate … has no right to interfere with the proper use and enjoyment of an easement.  The servient estate owner may use his land only in a manner that is not inconsistent with the easement."), citations omitted.

Courts applying Section 4.9 have deemed a landowner's interference with the use of the easement to constitute trespass.  *See Bradish v. Riolo*, 1994 Ohio App., LEXIS 4486 *7, 1994 WL 530899 (1994) (holding that landowner is "a trespasser to the extent that [he/she] interfered with the [easement holder's] use and enjoyment of their easement.").  In *Bradish*, the court affirmed the lower court decision finding that the landowner trespassed on the easement and damaged it.

In support of her position, Mrs. Gerhart surprisingly relies upon the Pennsylvania Supreme Court decision in *Kao v. Haldeman*, 556 Pa. 279, 728 A.2d 345 (1999).  In that case, the court pointed out that an easement holder can obtain relief against the landowner "when there has been an interference with the use of the easement."  *Id.*, at 349.  Also, contrary to Mrs. Gerhart's representation, there is nothing in that opinion that suggests that an easement holder is limited to injunctive relief, particularly where it can prove substantial damages from the conduct of the landowner.

Here, Counterclaimants have averred that Mrs. Gerhart physically entered the property to block work and threw foul odor items onto it with the intent of interfering with the use of the easement by blocking the pipeline installation.  Indeed, she was effective in wholly shutting down operations on several occasions and lured bears onto the easement, further hindering

6

use of the easement.  By intentionally entering the easement with the clear

purpose of interfering with the use of the easement and the admitted

purpose of annoying and harassing the workers, she clearly engaged in

trespass.

Moreover, here, Mrs. Gerhart's right to enter the easement

terminated, at least on a temporary basis, by court order.  In the injunction

issued by the Court of Common Pleas, it was ordered that:

> 2.  Unless their presence on the easement is consented
> to by Condemnor, all persons are enjoined and restrained,
> pending further order of this Court, from entering, or being on
> the easement granted to Condemnor until the pipelines are
> installed and all remediation and restoration efforts are
> complete.

Motion to Dismiss, Ex. C, at 40-41.  Thus, as of the spring of 2018, Mrs.

Gerhart not only was barred under common law from entering the

easement to interfere with the use of the easement (which she did), she

simply had no right to enter the easement at all.  At that point, Mrs.

Gerhart's entry onto the easement constituted a willful and defiant trespass,

subjecting her to liability for such conduct.

Finally, Mrs. Gerhart argues that this claim is barred by the doctrine

of *res judicata*.  She argues that this issue is "set forth more fully below."

Supporting Brief, at 6.  Since the issue is addressed in the request to

7

dismiss the nuisance claim but is applicable to each tort count, it will be
addressed below as well.

**B.    The request to dismiss Counterclaim II (nuisance)
        should be denied.**

Mrs. Gerhart argues that the nuisance counterclaim is barred by the

doctrine of *res judicata* because Sunoco Pipeline filed a criminal contempt

petition in the condemnation action and could have sought civil contempt

remedies for nuisance at that time.  This position is without merit.

> Under Pennsylvania law, the following elements must be
> present for res judicata to apply:  "(1) identity of the thing sued
> upon; (2) identity of the cause of action; (3) identity of the
> parties; (4) identity of the capacity of the parties.

*Dommell Props., LLC v. Jonestown Bank & Trust Co.,* 2014 U.S. Dist.

LEXIS 93026, *43 (M.D. Pa. 2014) (citation omitted).

Here, there is no identity in either the thing sued upon or the causes

of action.  The prior litigation was a condemnation action initiated in the fall

of 2015, long before Mrs. Gerhart engaged in tortious conduct on the

easement, and before the Easement was even granted.  That case was

resolved on the merits in January 2016, when the Court of Common Pleas

rejected the Gerharts' objections to the taking.  That decision, which also

predated any tortious conduct by Mrs. Gerhart, constituted a final judgment

on the merits and, in February 2016, was appealed as such by the

8

Gerharts to the Commonwealth Court.  At that point, the Court of Common

Pleas ceased to have jurisdiction over the matter other than to implement

and enforce its decision.

The Petition for Indirect Criminal Contempt (Motion to Dismiss, Ex. E)

filed in 2018 was for violation of the July 2017 injunction issued by the court

to enforce its judgment.  The petition did not raise, nor could it have raised,

a civil tort claim for nuisance and that term is not even mentioned in the

Petition.  Rather, the Petition was limited to Mrs. Gerhart's willful and

persistent defiance of the court order.  The United States Supreme Court

has held that criminal contempt actions "are between the public and the

defendant, and are not a part of the original cause."  *Young v. Unites

States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787 (1987).  In that setting, a

private party/attorney pursuing the petition "is appointed solely to pursue

the public interest in vindication of the court's authority."  *Id.*  While Sunoco

Pipeline was the nominal party in the criminal contempt proceeding, its role

was to enforce the order, not to obtain damages for misconduct.

Since the criminal contempt proceeding did not itself raise or address

Mrs. Gerhart's nuisance, her fallback position is that *res judicata* also

covers any claims that "could have been brought" in the condemnation

proceeding, and that Sunoco Pipeline "could" have also pursued a claim for

9

civil contempt for damages.  The argument, though, fails for several reasons.

First, a claim for civil contempt is limited to conduct in violation of the court order.  A party cannot pursue claims arising out of conduct not covered by the court's order, and remedies are limited to compensation for a party's "losses sustained as a result of the noncompliance."  *Montalvan v. Neville's Mobile Home Court, LLC*, 2020 U.S. Dist. LEXIS 104150, *71 (M.D. Pa. 2020).  As described in the counterclaim, Mrs. Gerhart engaged in continual nuisance of the workers and others in a manner that was tortious but not necessarily contemptuous and, therefore, not subject to contempt.  As such, Sunoco Pipeline could not have obtained recovery for torts beyond actual violation of the order.

Second, there is also no identity of causes of action between a civil contempt proceeding and a tort claim of nuisance.  The burden in a civil contempt proceeding is proof of all elements by "clear and convincing evidence, with ambiguities resolved in favor of the party charged with contempt."  *Bayer Bus. & Tech. Services v. AGR Premier Consulting, Inc.*, 550 Fed. Appx. 115, 122-123, 2014 U.S. App. LEXIS 437 (3d Cir. 2014). By contrast, as this Court has recognized, the burden in proving a nuisance claim is preponderance of the evidence.  *Gerhart v. Energy Transfer*

10

*Partners*, 2020 U.S. Dist. LEXIS 55107, *83 (M.D. Pa. 2020), and there is no favoring of ambiguities to the defendant.

Additionally, a condemnation proceeding is not an appropriate forum to pursue a tort claim as there is no complaint recognized in a condemnation proceeding, nor does the Eminent Domain Code, which governs such proceedings, contemplate litigation of tort claims.  *See Enon Valley Tel. Co. v. Market*, 90 Pa. Commw. 53, 57, 493 A.2d 800 (Pa. Commw. 1985) (recognizing that negligence and trespass claims may not be pursued in a condemnation action).  Indeed, there is no plaintiff or defendant in a declaration of taking, and the request here was for condemnation "over the lands of Stephen Gerhart and Ellen S. Gerhart." *See* Plaintiffs' Motion to Dismiss, Exhibit A (Declaration of Taking), at 1. Mrs. Gerhart, who was, therefore, not even a named party in that *in rem* litigation, points to no cases where a court has permitted a condemnor to pursue tort claims in a condemnation matter.

Even the single case relied upon by Mrs. Gerhart does not support her proposition that a contempt proceeding is the "the same cause of action" as a tort claim for nuisance.  In *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340 (3d Cir. 2010), the court noted that the subsequent suit must be "based on the same cause of action" as the first one.  Here, the initial

11

cause of action was limited to the condemnation of property.  The second is for a tort claim that had not arisen when the first action was initiated nor when the Court of Common Pleas issued its final decision on the merits.

The doctrine of *res judicata* is, therefore, inapplicable to Counterclaimants' tort counterclaims against Mrs. Gerhart and her motion to dismiss this count (and all of the tort counts) should be denied.

### C.   The request to dismiss Counterclaim III (violation of a court order) should be denied.

Mrs. Gerhart requests dismissal of the counterclaim for violation of the injunction.  She cites no authority for her position that "there is no cause of action for recovery of damages resulting from the violation of a preliminary injunction."  *Brief,* at 12.  It is well-settled that a party is entitled to damages for harm caused by another's breach of a legal duty owed to it. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 2010 (2002).  Money damages are, of course, the classic form of relief for any resultant harm.  *Id.*  While civil actions for damages arising out of a breach of an injunction are not common, they are also not unprecedented.  In *Green Oaks, Ltd. v. Canaan*, 749 S.W.2d 128 (Tex. App. 1987), the court held as follows:

It is true that a court may punish a contempt by fine or imprisonment in order to vindicate its authority.  But in addition, a litigant injured by a contempt may file a civil suit for damages. Though such private civil suits are rare, they are necessary to insure that restraining orders concerning valuable property are respected since the relatively minor penalties imposed by section 21.002 provide little incentive to follow court orders when their subject matter is worth millions of dollars. We hold as a matter of law that Green Oaks has a cause of action for money damages against Cannan because of his wrongful violation of the TRO.

749 S.W.2d 128, 131.  *See also Allen v. Chase Manhattan Bank*, 49 Misc. 2d 514, 267 N.Y.S. 2d 620 (NY County 1966) (considering two claims by the plaintiff, "the first for damages arising out of the bank's alleged violation of an injunction of this court."); *Association of Orange Cty Deputy Sheriffs v. County of Orange*, 2015 Cal. App. Unpubl. LEXIS 1922 (Cal. App. 4th Appellate Div. 2015) (considering a cause of action alleging "over $2,000,000 in damages for the violation of preliminary injunction").

Federal courts have similarly recognized non-contempt claims for violations of injunctions.  In *SynQor, Inc. v. Artesyn Techs., Inc.,* 2013 U.S. Dist. LEXIS 191999 (E.D. Tex. 2013), the court considered a complaint in which the plaintiff sought damage because the defendants "violated the Court's injunction…."  *See also Silver Saundors Friedman v. Friedman*, 2006 U.S. Dist. LEXIS 109462 *41 (C.D. Calif. 2006) ("California recognizes an independent civil claim for violating an injunction.").

13

> In some jurisdictions, where the disobedience of an injunction
> has resulted in pecuniary loss or injury to the plaintiff, the court,
> by reason of statute, may, in imposing punishment, award an
> amount sufficient to indemnify him for his loss, while in others
> relief is given in an independent action…. But whatever the form
> of the proceeding for relief, the right to recover as against one
> who, in disobedience of the mandate of the court, violates a right
> sought to be protected thereby, to the damage of another, or who
> knowingly aids and abets such violations, is generally
> recognized.

*CHoPP Computer Corp. v. United States*, 5 F.3d 1344, 1351 (9th Cir. 1993),

quoting *Kirby v. San Francisco Savings & Loan Society*, 95 Cal. App. 757,

273 P. 609, 609-610 (Cal. App. 1928) and *Heinz v. Superior Court*, 42 Cal.

2d 164, 266 P.2d 5, 12 (Cal. 1954) (civil damages may be collected for an

act otherwise in contempt); *First Nat'l Bank v. First Nat'l Bank S. D.*, 2008

U.S. Dist. LEXIS 25708 (D. S.D. 2008) (holding that a claim for violation of

an injunction can be brought as a contempt proceeding or, as brought in

that case, as a separate request for declaratory relief).

 The logic of these decisions is apparent.  A court order creates a

legal duty upon a party.  If that legal duty is violated, causing injury to a

party, then the injured party can seek damages for the harm arising

therefrom.  A damaged party is not required to seek relief in a proceeding

that provides an elevated proof requirement and limits its remedies.  The

request to dismiss this count should be denied.

**D.    The request to dismiss Counterclaim IV (for interference with the Easement) should be denied.**

Mrs. Gerhart requests dismissal of Count IV as barred by *res judicata,* redundant to the claim for nuisance, and barred by the economic loss doctrine.  None of the arguments is meritorious.

The issue of application of *res judicata* is raised by Mrs. Gerhart but not actively discussed, choosing instead to rely on the arguments presented elsewhere in the brief addressing the doctrine and, for the reasons discussed above, it is not applicable here either.

Mrs. Gerhart's primary argument is that this count is duplicative of the nuisance one.  Supporting Brief, at 12-14.  This is incorrect.  In support of this argument, she relies upon a Virgin Islands decision noting that interference with the use of property constitutes "a private nuisance."  *Id.*, at 13, citing *Hodge v. Bluebeard's Castle, Inc.* 2002 WL 1022524 (Terr. V.I. 2002).  That case, however, in inapplicable as the Third Circuit Court of Appeals recently recognized that "Pennsylvania law does recognize the tort of interference with a servitude."  *Duhring Res. Co. v. United States*, 775 Fed. Appx. 742, 747 (3d. Cir. 2019).  As noted by that court:

15

> Given that Duhring has an easement, *i.e.,* a type of servitude over the surface estate, Pennsylvania law clearly recognizes a cause of action for tortious interference with that property interest.

*Id.*

The *Duhring* court also addressed issues raised in Mrs. Gerhart's second argument, which is that this claim is barred by the economic loss doctrine.  In rejecting application of this doctrine to a claim for tortious interference with an easement, the court cited the recent Pennsylvania Supreme Court decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), as holding that:

> the economic loss doctrine does not apply where, as here, "the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Id.,* at 1038.  Because Duhring alleges interference with a property right, not a contract, the economic loss doctrine does not bar its claim.

*Id.*  The court also cited to 39 Pennsylvania Law Encyclopedia § 502:  "The owner of an easement, upon interference with the easement by the owner of the servient estate, may proceed by action at law for damages."[1]

---

[1]      The *Duhring* court limited the claim for damages in that case to what it called "loss in rental value of the property interest," *id.,* at 748.  It made clear, however, that such relief can include damages "for the loss of use and the cost of restoring the easement to its former condition."  *Id.*, at 749.  There is little doubt, then, that Counterclaimants can pursue their claim for loss of use of the easement and for the actual increased costs caused by Mrs. Gerhart in the development and maintenance of the easement.

Plaintiff's request to dismiss this count should be denied as it is properly based on Pennsylvania law.

## V.   CONCLUSION

For the reasons set forth herein, the Sunoco Defendants request that all counts of the Second Amended Complaint be dismissed.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By /s/ Alan R. Boynton, Jr.
   Alan R. Boynton, Jr. (PA ID 39850)
   aboynton@mcneeslaw.com
   Carol Steinour Young (PA ID 55969)
   cyoung@mcneeslaw.com
   Stephanie Carfley (PA ID 79136)
   scarfley@mcneeslaw.com
   100 Pine Street, P.O. Box 1166
   Harrisburg, PA 17108-1166
   (717) 232-8000

Dated:  July 14, 2020              *Attorneys for Defendants Energy Transfer Partners, L.P., Sunoco Pipeline, L.P, and Sunoco Logistics, L.P.*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to LR 7.8(b)(2) and subject to Fed. R. Civ. P. 11, I certify

that the total word count of the Sunoco Defendants' Brief in Support of their

Motion to Dismiss, exclusive of caption, tables of authorities and contents,

and signature block, is 3,734 words, as counted by the word count feature

of the word processing system (Microsoft Word) used to prepare the Brief.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By /s/ Alan R. Boynton, Jr.
    Alan R. Boynton, Jr. (PA 39850)
    I.D. No. 39850
    100 Pine Street
    P.O. Box 1166
    Harrisburg, PA  17108-1166
    (717) 232-8000

Dated:  July 14, 2020                    *Attorneys for Defendants Energy*
                                         *Transfer Partners, L.P., Sunoco*
                                         *Pipeline, L.P, and Sunoco Logistics,*
                                         *L.P.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was on counsel who have entered appearances through the Court's Electronic Filing System.

/s/ Alan R. Boynton, Jr.
Alan R. Boynton, Jr.

Dated:  July 14, 2020