IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELLEN GERHART, et al.,** : | |
| **Plaintiffs** : | No. 1:17-cv-01726 |
| : | |
| v. : | (Judge Kane) |
| : | |
| **ENERGY TRANSFER** : | |
| **PARTNERS, L.P., et al,** : | |
| **Defendants** : | |
| : | |
| v. : | |
| : | |
| **ELLEN GERHART,** : | |
| **Counterclaim Defendant** : | |

## MEMORANDUM

Pending before the Court is Plaintiff and Counterclaim Defendant Ellen Gerhart ("Gerhart")'s motion to dismiss (Doc. Nos. 104) the amended counterclaims (Doc. No. 101) of Energy Transfer Partners, L.P., Sunoco Pipeline, L.P. ("Sunoco Pipeline"), and Sunoco Logistics, L.P. (collectively, the "Energy Companies") for failure to state a claim upon which relief can be granted.[1]  For the reasons set forth below, the Court will grant Gerhart's motion to dismiss (Doc. No. 104) the amended counterclaims in part and deny it in part.[2]

**I.   BACKGROUND**

　**A.**　**Procedural Background**

Plaintiffs commenced this action in September 2017 by filing an eight-count complaint

---

[1] Plaintiffs are Gerhart, Elise Gerhart, Alex Lotorto, and Elizabeth Gunt (collectively, "Plaintiffs").  (Doc. No. 60.)

[2] Also pending before the Court is Gerhart's motion to dismiss (Doc. No. 93) the Energy Companies' initial counterclaims (Doc. No. 92).  Because the operative pleading is the Energy Companies' subsequently filed amended counterclaims (Doc. No. 101), the Court will deny as moot Gerhart's motion to dismiss (Doc. No. 93) the initial counterclaims (Doc. No. 92).

against the Energy Companies and various other defendants asserting claims for malicious prosecution, false arrest, abuse of civil process, nuisance, invasion of privacy, trespass, and violations of First Amendment and Equal Protection rights. (Doc. No. 1.) Plaintiffs filed an amended complaint in 2018 (Doc. No. 49-1), which the Court dismissed without prejudice in December 2018 (Doc. No. 58).[3] Plaintiffs filed a second amended complaint (Doc. No. 60), and the Energy Defendants again filed a motion to dismiss, which the Court granted in part (Doc. No. 91). Around the same time, in April 2020, the Energy Companies filed counterclaims asserting three counts against Gerhart pursuant to Federal Rule of Civil Procedure 13(a). (Doc. No. 92.) Gerhart then filed her pending motion to dismiss the initial counterclaims. (Doc. No. 93.)

In May 2020, the Energy Companies filed amended counterclaims against Gerhart for trespass (Count I); nuisance (Count II); violation of a preliminary injunction (Count III); and violation, breach of, and interference with a right-of-way easement (Count IV). (Doc. No. 101). On June 16, 2020, Gerhart filed the instant motion to dismiss (Doc. No. 104) pursuant to Federal Rule of Civil Procedure 12(b)(6). Having been fully briefed (Doc. Nos. 106, 107-108) the motion is ripe for disposition.

### B.     Factual Background[4]

In July 2015, Counterclaimant Sunoco Pipeline initiated condemnation proceedings in Pennsylvania state court to acquire a right-of-way easement ("Easement") on property owned by Stephen and Ellen Gerhart (collectively, the "Gerharts"). (Doc. No. 101 ¶ 2.) Sunoco Pipeline

---

[3] In addition to dismissing Plaintiffs' amended complaint, the Court terminated most of the defendants from this action, leaving only the Energy Companies as named defendants. (Doc. No. 58 at 2.)

[4] The parties and the Court are familiar with the factual background of this case. Accordingly, the allegations discussed herein are only those relevant to the amended counterclaims. (Doc. No. 101.)

sought the easement for the purpose of installing natural gas pipelines on the Gerharts' property. (Id.) The Gerharts filed preliminary objections to Sunoco Pipeline's declaration of taking ("DOT") in the Pennsylvania Court of Common Pleas, but the court overruled the preliminary objections. (Id. ¶¶ 7, 9.) The Gerharts appealed that decision. (Id. ¶ 11.) While the appeal was pending, Sunoco Pipeline advised the Gerharts that a crew would begin clearing trees on the easement. (Id. ¶ 12.) Subsequently, in March 2016, environmental activist groups announced on social media that an "event" would take place at the Gerharts' property. (Id.) The Energy Companies allege that activist groups invited people to the Gerharts' property to deter the tree-cutting crews. (Id.) In March 2016, Sunoco Pipeline filed – and the state court granted – a motion for a preliminary injunction. (Id. ¶ 13.)[5]

According to the allegations in the amended counterclaims, a work crew cleared most of the trees from the Easement on March 29 and 30, and April 7, 2016, but were unable to cut down larger trees that activists had climbed and sat atop. (Id. ¶¶ 14, 16.) At some point, law enforcement officials arrested Gerhart and others for violating the preliminary injunction. (Id. ¶ 15.) Meanwhile, Gerhart and the activists allegedly continued to conspire together to block the pipeline installation and, by spring 2017, "had created 'Camp White Pine' on the Gerhart Property" for that purpose. (Id. ¶ 17.)

In May 2017, the Pennsylvania Commonwealth Court affirmed the trial court's decision to overrule the Gerharts' preliminary objections to the DOT. (Id. ¶ 19.) The Pennsylvania Supreme Court later denied the Gerharts' petition for allocatur. (Id.) Then, in June 2017, the Court of Common Pleas issued a new preliminary injunction "barring the Gerharts and anyone

---

[5] As discussed, infra, the preliminary injunction prohibited, inter alia, Gerhart from entering the Easement without Sunoco Pipeline's consent.

working in concert with them from entering the Easement or engaging in obstructive behavior on the Easement." (Id. ¶ 20); see In re Sunoco Pipeline L.P., No. 1561 C.D. 2018, 2019 WL 2400083, at *5 (Pa. Commw. Ct. May 8, 2019). The Energy Companies allege that, shortly thereafter, Gerhart publicly announced that neither she nor her friends and supporters would abide by the injunction and would instead work to prevent the pipeline's installation. (Doc. No. 101 ¶¶ 21-24.)

Beginning in 2018, when the Sunoco Pipeline survey crew began work at the Easement, Gerhart is alleged to have repeatedly violated the new preliminary injunction by entering the Easement and interfering with the construction work. (Id. ¶¶ 24-55.) Despite being reminded about the preliminary injunction and told to cease interfering with work crews, Gerhart engaged in a course of conduct that caused delays, shut down work for whole days, and attracted bears to the easement, posing a risk to work crews, neighbors, and children, all with the intention of annoying and harassing the pipeline workers. (Id.)

The Energy Companies allege that, because of Gerhart's conduct, Sunoco Pipeline filed a petition for criminal contempt in the Huntingdon County Court of Common Pleas. (Id. ¶ 56.) The court held a hearing and found what Gerhart never disputed on appeal, which is that she violated the preliminary injunction beyond a reasonable doubt by:[6] (1) setting fires near the Easement; (2) entering onto the Easement and physically obstructing workers, risking workers' safety; (3) entering onto the Easement and obstructing the movement of heavy equipment, causing safety concerns and forcing work to cease to prevent injury to her; (4) spreading rancid materials, including meat, eggs, fruits, vegetables, peanut butter, and cat feces, on trees and on

---

[6] Some of this conduct occurred after Sunoco Pipeline filed the petition but before the Court of Common Pleas ruled on it. (Doc. No. 101 ¶ 58.)

4

the ground in the vicinity of the Easement to attract wild animals; (5) throwing a large stick or tree limb onto the Easement near workers; (6) removing survey markers from the Easement and threw them onto her property; and (7) constructing what appeared to be an incendiary device from a plastic bottle and igniting the device at the boundary of the Easement in an attempt to place workers in fear of being injured.  See In re Sunoco Pipeline L.P., 2019 WL 2400083, at *2-3.  Determining that Gerhart acted with "intentional disregard for the rule of law," the Court of Common Pleas found her in indirect criminal contempt and sentenced her to a $2,000 fine and two to six months' imprisonment.  (Doc. No. 101 ¶ 61).  On appeal, the Commonwealth Court affirmed the verdict and sentence.  See In re Sunoco Pipeline L.P., 2019 WL 2400083, at *5-6.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.[7]  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal,

---

[7] "Courts use the same standard in ruling on a motion to dismiss a counterclaim as they do when considering a motion to dismiss a complaint pursuant to Rule 12(b)(6)."  Farkas v. Rich Coast Corp., No. 1:14-cv-272, 2015 WL 11517086, at *2 (M.D. Pa. Dec. 22, 2015).

556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

#### A. Res Judicata

Gerhart raises the threshold argument that the res judicata doctrine bars the Energy Companies' counterclaims as a matter of law. Res judicata is an affirmative defense that "typically may not afford the basis for a Rule 12(b)(6) dismissal unless it is 'apparent on the face of the complaint.'" See Hoffman v. Nordic Naturals, Inc., 837 F.3d 272, 280 (3d Cir. 2016) (quoting Bethel v. Jendoco Constr. Co., 570 F.2d 1168, 1174 (3d Cir. 1978)). This "avoid[s] factual contests at the motion to dismiss stage." Id. Res judicata "serve[s] to preclude a party from pursuing litigation that revisits a claim . . . that has been settled by a previous action[.]" See In re Estate of Plance, 175 A.3d 249, 270 (Pa. 2017). The doctrine "preserv[es] the interest in finality of judicial determinations, prevent[s] endless litigation, and preclud[es] parties from

obtaining the proverbial 'second bite at the apple.'" Id. Under Pennsylvania law,[8] res judicata precludes a claim "where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued." See Daley v. A.W. Chesterton, Inc., 37 A.3d 1175, 1189-90 (Pa. 2012).

Here, Gerhart argues that the Energy Companies' counterclaims merely duplicate the petition for indirect criminal contempt that they filed in state court. As a preliminary matter, the Court is unaware of – and Gerhart has not cited to – any Pennsylvania case law holding that a guilty verdict in a criminal contempt proceeding gives preclusive effect to a subsequent civil action based on the same conduct. Further, as the Energy Companies note, the United States Supreme Court has held, albeit in a different context, that "criminal contempt proceedings arising out of civil litigation 'are between the public and the defendant, and are not a part of the original cause.'" Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 804 (1987) (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 445 (1911)). Thus, even assuming that the Energy Companies' counterclaims and the criminal contempt proceedings share an identity

---

[8] The parties dispute whether state or federal law supplies the applicable standard for res judicata. (Doc. No. 106 at 7; Doc. No. 107 at 8.) Federal law mandates that "[t]he . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State[.]" See 28 U.S.C. § 1738. Section 1738 requires that federal courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged." See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982)). This requirement "may be avoided only if 'application of the state preclusion law would violate due process.'" See Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997) (quoting Peduto v. City of N. Wildwood, 878 F.2d 725, 728 (3d Cir. 1989)). Pennsylvania law therefore governs the question of whether res judicata precludes the Energy Companies' counterclaims, and Gerhart bears the burden of demonstrating that Pennsylvania state courts would "give . . . preclusive effect" to the state court's contempt verdict.

of issues and causes of action, these actions do not appear to share identity of the parties. Moreover, the issues and causes of action in the trespass and nuisance counterclaims do not mirror those implicated in the criminal contempt proceedings, which involved the narrow issue of whether Gerhart violated the preliminary injunction. Given the general rule that res judicata claims should not be resolved at the motion to dismiss stage, the dearth of any state case law indicating that criminal contempt proceedings can give rise to res judicata in a subsequent civil case arising from, inter alia, the same violation of a preliminary injunction, and the lack of identity of parties, the Court declines to dismiss the counterclaims based on res judicata.

### B.      Sufficiency of the Energy Companies' Counterclaims

For the reasons set forth below, the Court concludes that Count I states a claim for relief but Counts II, III, and IV do not and will therefore be dismissed.

#### 1.      Trespass (Count I)

In Count I of the amended counterclaims, the Energy Companies assert that Gerhart trespassed on the Easement by entering and intentionally interfering with Sunoco Pipeline's use thereof. (Doc. No. 101 at 14.) As an alternative basis for liability, the Energy Companies assert, "to the extent that [] Gerhart was permitted under common law to enter the Easement, such authority was terminated, on a temporary basis, by order of the Court of Common Pleas dated June 28, 2017," i.e., the state court injunction. (Id.)

##### a.      Legal Standard Applicable to a Trespass Claim

To "prevail on a cause of action for trespass, the plaintiff must demonstrate that the defendant (1) intentionally, (2) entered the property of another, (3) without the privilege to do so." See Berger v. Peco Energy Co., No. 3778 EDA 2015, 2016 WL 5266623, at *7 (Pa. Super. Ct. Sept. 22, 2016); see also Kennedy v. Consol Energy Inc., 2015 PA Super 93, 116 A.3d 626,

8

636 (2015) (citing Kopka v. Bell Tel. Co., 371 Pa. 444 (1952); Restatement of Torts § 163, comment b) (noting that "[i]t is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in possession of another without a privilege to do so"); Restatement (Second) of Torts § 158 (1965) (stating, "[o]ne is subject to liability to another for trespass, irrespective of whether [she] thereby causes harm to any legally protected interest of the other, if [she] intentionally . . . enters land in possession of the other").

### b. The Parties' Arguments

Gerhart argues that the Easement was non-possessory and non-exclusive, and she cannot have trespassed on land that she owned. (Doc. Nos. 100 at 6.) Gerhart relies on Kao v. Haldeman, 728 A.2d 345, 349 (Pa. 1999), to argue that disputes between the owner of a dominant estate (the Energy Companies) and the owner of a servient estate (Gerhart) are resolved "via injunctive relief . . . of the sort already obtained by Sunoco." (Id.) Gerhart further submits that the claim for trespass "sets forth a new 'theory' that the Common Pleas injunction barring her entry onto the [E]asement terminated any legal right to enter the easement, and therefore transforming her violation of the order into a 'trespass.'" (Id. at 7.)

### c. Whether the Energy Companies Have Stated a Trespass Claim Against Gerhart

The Court finds that the Energy Companies have sufficiently stated a claim for trespass. Regarding the first basis offered in support of the trespass claim, the owner of property encumbered by a non-exclusive easement does not enjoy unfettered rights to access and use the easement. Rather, "[w]here an easement is concerned, . . . the owners of the dominant and servient estates must not unreasonably interfere with each other's uses . . . ." See Kao, 728 A.2d

9

at 349.[9]  Consistent with this rationale, "the transferor of an easement for an underground pipeline retains the right to enter and make any use of the area covered by the easement that is not specifically prohibited by the easement and that does not unreasonably interfere with use of the easement for pipeline purposes."  Restatement (Third) of Property (Servitudes) § 1.2 (2000).[10]  In "disputes between owners of dominant and servient estates, relief can be obtained when there has been an actual interference with an owner's use."  See Kao, 728 A.2d at 349.

Less clear, however, is whether a claim based on a servient estate owner's unreasonable interference with the dominant estate owner's use of an easement sounds in a claim for trespass.  The Energy Companies point to Ohio case law under which a landowner is a trespasser to the extent that the landowner "interfered with the . . . use and enjoyment of [an] easement" on the landowner's property.  See Bradish v. Riolo, No. 66233, 1994 WL 530899, at *3 (Ohio Ct. App. Sept. 29, 1994).  But neither party has cited to any Pennsylvania cases in which courts have recognized – or declined to recognize – a cause of action against a landowner for trespass on a nonpossessory, nonexclusive easement.  The Energy Companies' allegations, at least as to their first ground for relief on this cause of action, do not fit neatly into the elements of a trespass claim: while Gerhart intentionally entered the Easement, over which Sunoco Pipeline held the dominant estate, it cannot be said that she entered "without the privilege to do so."  See Berger, 2016 WL 5266623, at *7.  While unclear, it appears doubtful that Pennsylvania courts would

---

[9]  Kao involved a claim brought by owners of an easement who sought to obtain injunctive relief to prevent a neighbor from trespassing on the easement.  See Kao, 728 A.2d at 349.  It did not involve, as here, disputes over an easement between dominant and servient estate owners. Gerhart's reliance on this case is therefore misplaced.

[10]  "Pipeline and electric transmission lines are typically 'exclusive' in that the servient owner is not entitled to use the pipeline or the transmission poles and lines or license others to do so, but 'nonexclusive' in that the servient owner is entitled to make other uses of the area in which the lines are located so long as the uses do not unreasonably interfere with the pipeline or transmission line."  Restatement (Third) of Property (Servitudes) § 1.2 (2000).

entertain an action for trespass based on mere unreasonable interference with an easement.

Nevertheless, the Energy Companies' alternative basis for asserting a trespass claim stands on different footing. The elements of a trespass cause of action are readily met by the allegations that Gerhart intentionally entered land in possession of the Energy Companies without the privilege to do so. The injunction plainly prohibited Gerhart from entering the Easement without Sunoco Pipeline's consent. The state court's order prohibited, among other things, Gerhart's "presence on the [E]asement" unless "consented to by [Sunoco Pipeline]." (Doc. No. 101 at 15); see (Doc. No. 104-3 at 10-11). While the Court has not found (and neither party has cited) Pennsylvania case law directly supporting the proposition that a state law cause of action for trespass may be founded upon the precise circumstances at issue here, a straightforward application of the elements of a trespass claim compels the conclusion that the Energy Companies have stated a claim for relief on this basis.

Based on the foregoing, the Court will deny Gerhart's motion to dismiss Count I of the amended counterclaims.

## 2. Nuisance (Count II)

In Count II of the amended counterclaims, the Energy Companies assert a private nuisance claim against the Energy Companies based on Gerhart's baiting of bears and other animals to the site of the Easement, which allegedly caused "significant harm" in the form of expenditure of additional resources, the rearrangement of construction schedules, and the removal of personnel from affected areas. (Doc. No. 101 at 17.)

### a. Legal Standard Applicable to a Nuisance Claim

A private nuisance exists "when a person's conduct 'invades another's interest in the private use and enjoyment of land,' and that invasion is either intentional and unreasonable or

11

unintentional but negligent." Baptiste v. Bethlehem Landfill Co., 965 F.3d 214, 222-23 (3d Cir. 2020) (quoting Youst v. Keck's Food Serv., Inc., 94 A.3d 1057, 1072 (Pa. Super. Ct. 2014)). The Second Restatement expressly recognizes the ability of easement holders to recover for private nuisance.  See Restatement (Second) of Torts § 821E(b); see also Appeal of Hacke, 101 Pa. 245, 249-50 (1882).  To collect damages, a plaintiff must prove that the nuisance caused "significant harm."  See, e.g., Clark v. Fritz, No. 1085-MDA-2015, 2016 WL 2625235, at *4 (Pa. Super. Ct. May 6, 2016) (not precedential) (quoting Restatement (Second) of Torts § 821F).  "If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying[,] or intolerable, then the invasion is significant."  Karpiak v. Russo, 676 A.2d 270, 273 (Pa. Super. Ct. 1996).

### b. The Parties' Arguments

Gerhart argues that the Energy Companies' nuisance claim is barred under Pennsylvania's economic loss doctrine.  (Doc. No. 106 at 13.)  Although the Energy Companies dispute the applicability of the economic loss doctrine to other counts, they do not raise any counterarguments concerning Gerhart's reliance on the economic loss doctrine with respect to their nuisance claim.  (Doc. No. 106 at 8-12.)

### c. Whether the Energy Companies Have Stated a Nuisance Claim

The Court agrees with Gerhart that the Energy Companies' nuisance claim is barred under the economic loss doctrine.  The economic loss doctrine bars liability for private nuisance when the plaintiff's damages are solely economic.  See, e.g., Diehl v. CSX Transp., Inc., 349 F. Supp. 3d 487, 506 (W.D. Pa. 2018); Moore v. Pavex, Inc., 514 A.2d 137, 139 (Pa. Super. Ct. 1986).  A plaintiff's damages are solely economic when the plaintiff pleads nothing more than "monetary losses resulting from delays caused by the tort."  See Ricchiuti v. Home Depot, Inc.,

412 F. Supp. 2d 456, 459 (E.D. Pa. 2005). Non-economic damages, in contrast, include personal injury or property damage. See Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009); see also Diehl, 349 F. Supp. 3d at 506 (quoting Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa. 1990)). Accordingly, in the case sub judice, because the Energy Companies' damages are solely economic in nature, their claim for private nuisance is barred by the economic loss doctrine.

The Court will therefore grant Gerhart's motion to dismiss Count II.

### 3. Violation of the Preliminary Injunction (Count III)

In Count III of the amended counterclaims, the Energy Companies assert a claim against Gerhart for violating the state court's preliminary injunction by entering the Easement and interfering with the construction work. (Doc. No. 101 at 18-19.) That is, apparently unsatisfied with Gerhart's imprisonment and $2,000 fine, the Energy Companies seek to hold Gerhart liable for additional "compensatory and punitive damages in an amount exceeding $75,000" for Gerhart's contempt of the Common Pleas court's June 2017 injunction. (Id. at 20.) The Energy Companies cite no authority suggesting that any Pennsylvania state court, or any federal court within the Third Circuit, has ever recognized an independent civil cause of action for the violation of a preliminary injunction.

Accordingly, the Court will grant Gerhart's motion to dismiss Count III.

### 4. Violation, Breach of, and Interference with the Right-of-Way Easement (Count IV)

In Count IV of the amended counterclaims, the Energy Companies assert a cause of action based on Gerhart's intentional interference, "on a continuing and ongoing basis[,] with the purposes of the Easement." (Doc. No. 101 at 20-21.) They contend that Gerhart, by her conduct, forced Sunoco Pipeline "to stop construction operations on several occasions and to

incur additional costs to prevent harm to its employees, [] Gerhart, and others." (Id. at 21.)

### a. Applicable Legal Standard

As the Court acknowledged when addressing the Energy Companies' counterclaim for trespass, when a servient estate owner interferes with the dominant estate owner's use of an easement, "Pennsylvania law clearly recognizes a cause of action for tortious interference with [the dominant owner's] property interest." See Duhring Res. Co. v. United States, 775 F. App'x 742, 748 (3d Cir. 2019) (not precedential). The owner of a servient estate may make continued use of the area of the easement but cannot unreasonably interfere with the dominant owner's right of use. See Starling v. Lake Meade Prop. Owners Ass'n, Inc., 162 A.3d 327, 343 (Pa. 2017). As discussed, supra, in "disputes between owners of dominant and servient estates, relief can be obtained when there has been an actual interference with an owner's use." See Kao, 728 A.2d at 349.

### b. The Parties' Arguments

Gerhart argues that "Sunoco's '"interference with easement[']' claim is a claim for nuisance, wholly redundant with the nuisance claim also plead, sharing the exact same elements." (Doc. No. 106 at 13.) Gerhart refers the Court to the Restatement (Second) of Torts § 821E – relating to "Who Can Recover for Private Nuisance" – which provides, in pertinent part, "[f]or a private nuisance there is liability only to those who have property rights and privileges in respect to the use and enjoyment of the land affected, including . . . owners of nonpossessory estates in the land that are detrimentally affected by interferences with its use and enjoyment." See Restatement (Second) of Torts § 821E (1979); (Doc. No. 106 at 13-14).[11] As

---

[11] In the same vein, Gerhart cites to Hodge v. Bluebeard's Castle, Inc., 44 V.I. 242, 252 (Terr. V.I. Apr. 17, 2002), where the court held that a claim for intentional deprivation of use and enjoyment of a parcel stated a claim for private nuisance. See id. (quoting Restatement (Second)

such, Gerhart maintains that the Energy Companies' interference-with-easement claim is really a nuisance claim and therefore barred by the economic loss doctrine. (Doc. No. 106 at 14-15.) The Energy Companies respond by noting that in Duhring, the United States Court of Appeals for the Third Circuit held that "Pennsylvania law does recognize the tort of interference with a servitude," without mentioning nuisance. See Duhring Res. Co., 775 Fed. App'x at 747 (emphasis added); (Doc. No. 15-16).

### c. Whether the Energy Companies Have Stated an Interference-with-Easement Claim against Gerhart

The Court finds that while the Energy Companies have alleged facts establishing that Gerhart unreasonably interfered with their use of the Easement, they have failed to state a claim for money damages arising out of such interference. Preliminarily, regarding Gerhart's argument that Count IV must be construed as a claim for private nuisance, relevant authorities and case law maintain that, under Pennsylvania law, "[t]he owner of an easement, upon interference with the easement by the owner of the servient estate," to "proceed by action at law for damages," 39 Pa. L. Encyclopedia § 502, independent of or alternative to a claim for private nuisance. While Gerhart has cited cases in which courts recognize a private nuisance claim for interference with the use of an easement, those cases do not necessitate that the latter cause of action proceed as a claim for private nuisance. In this regard, the Third Circuit in Duhring relied upon 39 Pa. L. Encyclopedia § 501, which states that "[a]ny violation of the rights of the owner of an easement is actionable, whether any actual damage has resulted therefrom." See Duhring Res. Co., 775 F. App'x at 747. The Third Circuit also expressly rejected the position, urged by Gerhart, that in a

---

of Torts § 821D (1977) (referencing Great Atl. & Pac. Tea v. La Salle Nat. Bank, 77 Ill. App. 3d 478, where the court "stated that a nuisance was a nontresspassory invasion of another's interest in the private use and enjoyment of land")).

claim for unreasonable interference with enjoyment of a servitude, the only available remedy is injunctive relief.  See id. at 746.

Gerhart contends, however, that because the Third Circuit has noted that damages for "interference with an easement" are limited to "loss of rental or use value," see id. at 749, the Energy Companies have failed to state a viable claim because Sunoco Pipeline "did not lose any rental value for the lands it occupied before, during and after the alleged conduct."  (Doc. No. 108 at 8.)  This argument is well-founded.  While "loss of . . . use value" could be construed to include lost profits due to Gerhart's interference with Sunoco Pipeline's use of the Easement, the Third Circuit made clear in Duhring its "predict[ion] that the Pennsylvania Supreme Court would limit the . . . liability for this tort to loss in rental value of the servitude, and would not permit recovery of lost profits."  See Duhring Res. Co., 775 F. App'x at 747.  Similar to the Energy Companies' allegations here, Duhring had alleged that the defendant's conduct, e.g., interfering with Duhring's use of roads, caused delays in drilling operations resulting in a loss of profits.  See id. at 745.  However characterized, at bottom, the Energy Companies seek lost profits stemming from delays in construction and related costs.

Accordingly, the Court will grant Gerhart's motion to dismiss with respect to Count IV.

### C.     Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v.

NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  Here, given that the nuisance claim is barred by the economic loss doctrine, there is no such claim for mere violation of a preliminary injunction, and Pennsylvania law does not recognize the Energy Companies' claim for lost profits under an interference-with-easement theory of liability, the Court finds that permitting a curative amendment would be futile and will therefore dismiss Counts II, III, and IV with prejudice.

## IV. CONCLUSION

The Court will grant Gerhart's motion to dismiss the amended counterclaims (Doc. No. 104) as to all but Count I of the amended counterclaims and will dismiss Counts II, III, and IV with prejudice given the futility of permitting the Energy Companies to file second amended counterclaims.  Further, as indicated, supra, the Court will deny Gerhart's motion to dismiss the initial counterclaims (Doc. No. 93) as moot.  An appropriate Order shall issue.