

Samuel Abloeser‡
David M. Cedar‡†*
Beth G. Cole‡
Shauna Friedman‡†ª
Ari Goldberger‡†
Kevin Haverty‡†*
Christopher Markos‡†
Alan H. Sklarsky†
Gerald J. Williams‡†ª

‡Member, Pennsylvania Bar
†Member, New Jersey Bar
ªMember, New York Bar

April 25, 2022

Hon. Yvette Kane
United States District Court Judge
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101
**Via email to dawn_mcnew@pamd.uscourts.gov**

Re: *Gerhart, et. al v. Energy Transfer Partners, et al.* (17-1726)

Your Honor,

I represent Plaintiffs in the above-captioned matter. I write to request the Court's resolution of a discovery dispute.

I.   The Issues in Dispute

The parties have reached an impasse on a number of issues, and despite working diligently to resolve them are not able to do so. One issue concerns a written agreement between defendants Nick Johnson and TigerSwan. The former refuses to respond to an interrogatory seeking a description of the document, (Ex. 1, Defendant Johnson's Answers and Objections to Plaintiffs' Second Set of Interrogatories) and the latter refuses to produce the document. (Ex. 2, Defendant TigerSwan's Answers and Objections to Plaintiff's Second Set of Requests for Production). Another issue concerns TigerSwan's refusal to respond at all to a separate set requests for production of documents and to requests for admission. (Ex. 3, April 21, 2022 Letter). Last, counsel for TigerSwan has also undertaken the representation of third-party witness Robert Rice. Rice was subpoenaed on March 3 – the same day as the last conference in this case - and his deposition is scheduled for May 5. (Ex. 4, Rice Subpoena). Counsel advises that Rice seeks a "limitation" on the scope of the documents requested via subpoena, but the parties have not succeeded in coming to an agreement on such a limitation. (Ex. 5, April 20, 2022, Email; Ex. 6, April 22, 2022, Email repeating earlier proposal – still unanswered as of this filing).



*Certified by the Supreme Court of New Jersey as a Civil Trial Attorney

○ One South Broad Street, Suite 1510
Philadelphia, PA 19107
215.557.0099

www.williamscedar.com

○ 8 Kings Highway West, Suite B
Haddonfield, NJ 08033
856.470.9777



II.      Overview of Discovery Efforts and Attempts to Resolve Disputes

Below is a brief history of the progress of discovery in this matter that is pertinent to the instant dispute, and the parties efforts to resolve them without the Court's intervention. On November 3, 2021, Plaintiffs served a Rule 30(b)(6) deposition notice on TigerSwan. (Ex. 7). TigerSwan objected via letter dated November 18. (Ex. 8). Plaintiffs responded via letter dated December 2. (Ex. 9). TigerSwan made further objections via letter dated December 14, to which Plaintiffs responded via letter dated December 22. (Ex. 10). The parties thereafter agreed to postpone the 30(b)(6) deposition, and that Plaintiff would serve a set of Rule 34 requests with negotiated search terms, which was done on February 1, 2022. (Ex. 11, January 19, 2022 email). After an inquiry from Plaintiffs' counsel on March 16, TigerSwan responded that it would need a "few more days" to complete the production. (Ex. 12, March 16, 2022 email). A week later, on March 21, TigerSwan advised that it needed "at a minimum another week." (Ex. 13, March 21, 2022 email). Its responses were served on April 8. (Ex. 14 – TigerSwan's Responses and Objections to Plaintiffs' Requests for Production).

On April 11, TigerSwan served responses and objections to a second set of Rule 34 requests (which were comprised of four requests and served on March 7), including its objection to producing its written agreement with Nick Johnson. (Ex. 15). Also on April 11, Plaintiff informally requested additional information based on the April 8 document production, specifically: a transcript of a "whatsapp" group chat that Nick Johnson was invited to join by TigerSwan, and copies of emails from accounts issued by TigerSwan to Nick Johnson and Robert Rice that pertain to the allegations in the complaint (all of which arguably should have been included in the April 8 documents). (Ex. 16, April 11 Email) Further, in discussing the parties respective disagreements about the discoverability of the Johson-TigerSwan agreement, counsel for TigerSwan invited additional discovery requests in order to clarify what was being requested, stating "however, as you have indicated that you are going to be serving additional discovery requests on TigerSwan, I would suggest clarifying this request in those forthcoming requests if you do not feel that our response gets at what you were seeking to ask for." (Ex.17, April 13 Email) On April 13, a set of six Rule 34 requests were served on TigerSwan, and the set was amended with two additional requests the following day. (Ex. 18).

On February 1, Plaintiffs served a second set of Rule 34 requests on Nick Johnson. (Ex. 19). Those requests sought, inter alia, a copy of the non-disclosure agreement he cited in his deposition testimony. Johnson responded that he did not enter into a "'non-disclosure agreement' or any similar agreement pertaining to his publications regarding his work on the Mariner East 2 project." (Ex. 20). After a March 1 email alleging Johnson's response was deficient and evasive, counsel for Johnson informally advised that he did not possess the agreement, so Plaintiffs propounded a single interrogatory on March 7, requesting that Johnson describe the document he cited in his deposition testimony. (Ex. 21, March 1 Email; Ex. 22, Interrogatory). His response, served April 7, was substantially the same as his response to the

April 25, 2022
Page **3** of **10**

February 1 request for production. (Ex. 23). Plaintiff sent a letter dated April 11 alleging again that Johnson's responses were deficient. (Ex. 24). Johnson responded by letter dated April 21 that the agreement "was executed in relation to the Dakota Access Pipeline and unrelated to work performed with respect to the Mariner East 2 project and/or the Gerharts" and therefore not discoverable in light of the March 4 Order. (Ex. 25).

    III.    The Written Agreement Between Johnson and TigerSwan

Defendant Johnson refuses to answer the following interrogatory: "Describe in detail the agreement you referenced on pages 9 and 67-68 that you alleged bound you not to answer question "to the best of your knowledge were you in North Dakota in August of 2017," including but not limited to when any such agreement was executed, any other parties to the agreement, the consideration for any such agreement, whether the agreement is with TigerSwan and/or Cedar Fork Partners, the period of time the agreement covers, and the specific terms of any such agreement." (Ex. 22)

Johnson represents that the document "was executed in connection with the Dakota Access Pipeline" and contends it is, therefore, "unrelated to any work performed with respect to the Mariner East 2 project and/or the Gerharts." (Ex. 25)

TigerSwan's counsel advises that the document in question – a written agreement between Johnson and TigerSwan - does exist, and that it is in TigerSwan's possession, but similar to Johnson asserts that "[t]here also was no agreement entered into between TigerSwan and Nick Johnson specifically related to work he performed on ME2. Again, it remains TigerSwan's position that it was not involved in the work that Johnson performed as he was not supervised by TigerSwan employees and did not receive direction from them. Robert Rice was not and is not an employee of TigerSwan. Also, Johnson himself testified that he never had a contract with TigerSwan pertaining to any social media work he performed concerning the Gerharts."[1] (Ex. 26 – Email dated April 13, 2022).

Johnson himself also identified the existence of this document in his deposition testimony. When he was asked, after stating he worked on a "social media project" that pertains

---

[1] Regarding the last sentence, that Johnson "never had a contract with TigerSwan," the invoices he submitted to Cedar Fork Partners for payment for social media work repeatedly reference a TigerSwan "contract." (Ex. 31,CedarFork010). Regarding the claim that Robert Rice was not and is not an employee of TigerSwan, that is a legal conclusion of which TigerSwan's classification is not dispositive, and he is listed on the TigerSwan contract with Cedar Fork Partners (which bears TigerSwan letterhead) as the "Project Manager" to whom Cedar Fork Partners (and Johnson) will "report." (Id., CedarFork001). Regarding the assertion that TigerSwan was not involved in the work that Johnson performed, see the following footnote.

to the claims Plaintiffs have made, if that project included matters unrelated to the Gerharts, he responded "I'm not at liberty to speak of that." (Ex. 27, Johnson Dep., 9:5-16). Later testimony clarified that the reason he believed he was "not at liberty to speak of that" was because of an agreement he had entered into. (*Id.* at 67:2-68:16). That the document exists is not in dispute.

Johnson's employment and/or agency relationship with TigerSwan is a core issue in this case. Most pertinently, Johnson testified in his deposition that, without qualification, he did not work for TigerSwan in 2016 or 2017. (*Id.* at 81:14-16). This sworn testimony is apparently untrue, as counsel for both TigerSwan and Johnson advise that the two parties executed a written agreement that included a non-disclosure clause. (Ex. 25, 26). Further, Johnson admitted that he created the PA Progress Facebook page (Ex. 27, 16:9-17:2) and former TigerSwan Senior Security Advisor Nik McKinnon testified on April 12 that PA Progress was a project of TigerSwan.[2]

This alone suffices to establish the relevance of the agreement between Johnson and TigerSwan, as it an essential piece of impeachment evidence. Johnson's claim that he was not working for TigerSwan in 2016 or 2017 simply cannot be reconciled with his and TigerSwan's admission that he entered into a written agreement with TigerSwan during that time (that it could only have been during these years is set forth more fully below) that set forth the terms of their relationship, such that the claim that the agreement is not "specific" to Mariner East 2 is wholly impertinent.[3] The agreement is the best evidence to show that Johnson's categorical denial about working for TigerSwan in 2016 or 2017 was untruthful.[4]

---

[2] His transcript is not yet available, but his videotaped deposition is, but because the video includes documents subject to the parties' confidentiality order, it will be submitted to the Court separately. (Video time 26:30-27:05) (A. From what I recall, [PA Progress] was made-up account, or organization, by folks back in Apex. Q. Meaning by TigerSwan? A. Correct.) (transcription is by counsel). McKinnon also confirmed the allegations in Paragraphs 144-146 of the Second Amended Complaint (ECF No. 60) that TigerSwan sent someone undercover onto the Gerhart property, which is independently confirmed by documents produced by TigerSwan, although TigerSwan specifically denied doing so in its Answer. (Ex. 37, DF TigerSwan 198-204, *to be submitted under seal* (highlighting added by counsel)). (McKinnon's deposition video time 30:15-33:33) (A. There was someone who was sent to Camp White Pine …. Q. For what purpose was that person sent to Camp White Pine? A. To collect intelligence. …Q. Do you recall if she went to the camp or to the home, the Gerhart home. A. I recall both.) (transcriptions by counsel). McKinnon further testified that a posting made on the PA Progress Facebook page, entitled Camp White Pine Cheat Sheet, was created using information provided by TigerSwan's infiltrator. (Video time 34:00-34:15).

[3] Johnson further admitted to having an office in TigerSwan headquarters (Ex. 27, at 82: 7-17), and TigerSwan's document production demonstrates that he had a TigerSwan.com email address and was invited to participate in a TigerSwan "WhatsApp" group chat (Ex.38, *to be filed under seal,* DF TigerSwan 1938). "Nate Johnson" is one of the aliases Johnson admits to utilizing. (Ex.30, Johnson Interrogatories No. 9)

There are, of course, additional reasons the document is relevant and important to proving the issues in this case. The agreement would also be relevant to the employment/agency relationship between the two parties. It is important to note that TigerSwan was hired by Energy Transfer affiliate "Dakota Access LLC" in 2016 to work on Dakota Access (Ex. 28, Professional Services Agreement PSA-480-2016-25559). TigerSwan continued to work for Energy Transfer on Mariner East 2 pursuant to the same Professional Services Agreement (Ex. 29, *to be filed under seal*, Tasking Letter, at Part II (stating that the Tasking Letter is subject to the 2016 Professional Services Agreement)). TigerSwan represented in unrelated litigation that it withdrew all of its employees from North Dakota "on or before June 23, 2017." *N. Dakota Priv. Investigative & Sec. Bd. v. TigerSwan, LLC*, 2019 ND 219, ¶ 4, 932 N.W.2d 756, 759 (N.D. 2019).

Johnson's refusal to answer whether his work with Robert Rice also included subjects other than the Gerharts supports the inference that the PA Progress Facebook efforts were occurring contemporaneously with campaigns against other targets. Johnson admitted to admitted to travelling to Lousiana in June 2017 (Ex. 27, 74:4-9), and to creating a video in support of the Bayou Bridge Pipeline with the same actor he used in a video he created critical of the Gerharts (*Id.* at 71:24-73:17). Although the original Facebook posts no longer exist, an article from The Intercept memorializes that the Gerhart video was posted on August 8 and the Bayou Bridge Pipeline video was posted on August 11, 2017. Alleen Brown, Will Parrish, Alice Speri, *TigerSwan Responded to Pipeline Vandalism by Launching Multistate Dragnet,* The Intercept (August 26, 2017), https://theintercept.com/2017/08/26/dapl-security-firm-tigerswan-responded-to-pipeline-vandalism-by-launching-multistate-dragnet/ (Last accessed April 23, 2022).

Thus, Defendants' position that the document is irrelevant because it was executed "in connection with" the Dakota Access Pipeline begs the question. Consistent with the use of the same original Dakota Access-related Professional Services Agreement for Mariner East 2, defendants referred to the pipelines they were working on together interchangeably and therefore inconsistently.[5] Johnson stated in answers to interrogatories that he was hired by "Cedar Fork Partners" to work as an independent contractor in 2016-2017. (Ex 30, Johnson Interrogatories No. 2). The principal of Cedar Fork Partners, Kurt Merriweather, was deposed, and produced

---

[4] It is anticipated that Defendants will argue that the evidence and inferences relied on herein are more ambiguous than Plaintiffs' make them out to be, but that argument is self-defeating. Taking such an argument at face value, the written document in question is less likely to be subject to such ambiguities.

[5] Should Defendants argue instead that parts of the document are irrelevant, that does not exclude the entire document from discovery. Further, there is a confidentiality agreement in place that all parties have signed, and the parties have further demonstrated their competency to utilize redactions where appropriate.

April 25, 2022
Page **6** of **10**

documents, confirming that he paid Nick Johnson in 2016-2017 pursuant to a "contract with TigerSwan." (Ex. 31, at CedarForks009-010; Ex. 27, at 79:5-9 (confirming Johnson noted the purpose of the invoice was for work on a TigerSwan contract). Copies of the contract between Cedar Fork Partners and TigerSwan specifically mention Dakota Access, and do not mention Mariner East 2; when it was written, at the end of 2016, permits had not yet been issued by Pennsylvania DEP for Mariner East 2 construction.[6] (Ex. 31, at CedarForks001). Johnson produced copies of two checks for work he did in June and July 2017 which reflect payment for work done in connection with the Gerharts. (Ex 30, NJ 000006-7). These checks directly correspond to invoices he submitted to Cedar Fork Partners for "Promotion and content creation, social media monitoring. Entire month of June, 2017 for ETP/DAPL" and "Promotion and content creation, social media monitoring. Entire month of July, 2017 for ETP/DAPL." (Ex. 31, CedarForks003, 011). The principal of Cedar Fork Partners testified that he was merely a middleman between TigerSwan and Nick Johnson, and that his contract (named "DAPL Information Operations" (Ex. 31, CedarForks001) with TigerSwan continued on a month-to-month basis once it was executed in late 2016. (Ex. 32, Merriweather Dep., 23:14-22, 32:5-10). The conflation of the various pipeline projects by both TigerSwan and Johnson demonstrates that the absence of a reference to "Mariner East 2" in a document could not *per se* except it from discovery in this case. While it is apparent that Johnson and TigerSwan's relationship started with Dakota Access, it clearly continued thereafter, and they did not routinely distinguish between various projects, despite the fact that Dakota Access resistance camps were disbanded in February 2017, after which time there is no apparent reason to continue to manage counter-social media campaigns.[7]

Lastly, the information sought from both Johnson and TigerSwan is not redundant. It is necessary to seek this information from both sources, and the information sought from each is slightly different. Johnson's description of the document will reflect his own understanding of its terms, while TigerSwan is asked to provide the document itself (as Johnson represents he no longer has it. It is further necessary to seek the document from TigerSwan in addition to Johnson's description of it in light of TigerSwan's pedantic response to Plaintiff's request to produce the document that Johnson cited in his deposition that the request "asks Defendant TigerSwan to speculate as to the intended meaning of Defendant Nick Johnson's deposition

---

[6] https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx, (under tab headed "Approved Chapter 105, Water Obstruction and Encroachment Permits and Chapter 102, Erosion and Sediment Control (E&S) Permits") ("On February 13, 2017, DEP approved the permit applications from Sunoco Pipeline L.P. for the PA Pipeline Project/Mariner East 2 pipeline project. DEP considered 17 Chapter 105 permit applications and 3 Chapter 102 permit applications for the project.")

[7] See https://www.nytimes.com/2017/02/23/us/standing-rock-protest-dakota-access-pipeline.html.

testimony. In particular, Defendant TigerSwan cannot speak Defendant Nick Johnson's state of mind at his deposition."

For the foregoing reasons, the Court should order Defendant Johnson to fully answer the interrogatory seeking his description of his agreement with TigerSwan, and order TigerSwan to produce the document in full.

IV.  TigerSwan did not respond to Plaintiff's Document Requests until April 8, and now claim that requests for relevant information that relate specifically to that production are now "untimely."

As set forth more fully above, it was in total a five month ordeal for TigerSwan to produce documents in this case. They were finally provided on April 8, and after responses to an additional set of 4 requests were served on April 11, Plaintiffs served a final set of document requests on April 14. On April 21, TigerSwan via letter advised that it would not answer these discovery requests, because they were "untimely" and because they place a "burden and hardship" on defendant. (Ex. 33).

With respect to the issue of timeliness, Plaintiffs waited less than a week between receiving documents from TigerSwan and issuing follow-up requests *necessitated* by the documents produced, after waiting five months to receive the documents and accommodating TigerSwan's requests for additional time. That position is internally inconsistent, as TigerSwan (as well as Energy Transfer) has agreed to produce witnesses after May 4, despite efforts to schedule them earlier. But, more importantly, such a position should not be countenanced or tolerated under these circumstances. A party cannot be permitted to manufacture the "untimeliness" of discovery requests. Which is not to say that its discovery responses were provided less than 30 days before May 4 for the deliberate reason to avoid additional discovery obligations, but simply that the issue of timeliness is the result of TigerSwan's own conduct, not Plaintiffs'. The responses would be due on May 13, when the parties have already scheduled the final depositions in this case, and as such the requests will not impact any case management deadlies.

Regarding the "burden" the requests place on TigerSwan: every discovery request imposes some burden on the litigant. TigerSwan's blanket assertion, however, does not satisfy Rule 26 as it takes no other factors into account, and fails to articulate the extent of any purported burden. TigerSwan merely represented, when asked to articulate the burden responding to these requests would impose, that the *prior* searches it undertook to attempt locate documents regarding the original 30(b)(6) notice and prior Rule 34 request "took up a lot of time." (Ex. 36, April 22 Email). It is an apparent shift in position in light of the fact that all counsel in this case agreed in the Joint Case Management Plan that no special agreements were needed for electronic discovery in this case.

That producing electronically stored information can be time-consuming is not a valid objection to a party's discovery obligation. In *EEOC v. FedEx Ground Package System, Inc.*,

2018 WL 1441426 (W.D.Pa. March 21, 2018), the court rejected the defendant's argument that it was burdensome to search through 363,765 documents for only 30,000-54,000 relevant ones, because when parties choose to store information electronically, they do so knowing they may bear the burden of producing that information if litigation ensues, and "the fact that these repositories create complex mechanisms to store huge amounts of information cannot be used in and of itself as a shield to avoid discovery requests otherwise permitted under the Federal Rules of Civil Procedure." *Id.* at 1441426, \*3.  Interpreting Rule 26's framework for electronic discovery, courts have concluded that "accessible data must be produced at the cost of the producing party; cost-shifting does not even become a possibility unless there is first a showing of inaccessibility.  Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." Cochran v. Caldera Medical, Inc., 2014 WL 1608664, at \*2 (E.D.Pa. April 22, 2014) (quoting *Peskoff v. Faber*, 244 F.R.D. 54, 62 (D.D.C.2007)).

   The requests at issue are narrowly tailored.  The seek clearly identifiable, singular documents (Nos. 1,4, 5, 7), material arguably subject to Rule 26 self-executing disclosures (No. 3), material necessitated by its absence in TigerSwan's April 8 production (Nos. 2, 6, 8) and material necessitated by documents TigerSwan produced and sworn testimony from former employee Nik McKinnon which contradicts its Answer (No. 4).   Any burden these impose on TigerSwan are merely the normal and attendant burdens of litigation, and no more.[8]

   For the foregoing reasons, the Court should order TigerSwan to respond to the Third Set of Requests for Production of Documents within the time provided in Rule 34.

   V.     TigerSwan's objection to answering Requests for Admission as untimely is legally incorrect

   Plaintiff also served on TigerSwan a set of Requests for Admission on April 13.[9]  (Ex. 34). In the same April 21 letter, TigerSwan advises it will not answer the Requests.  (Ex. 33).  The basis for doing so misconstrues Requests for Admission as a categorical discovery tool.  Third Circuit precedent is clear that Requests for Admission are not subject to discovery time limitations, because "requests for admission typically come late in discovery, *or even after discovery has been completed and trial is imminent*. If at that point a party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that

---

[8] Should TigerSwan offer a different basis for seeking to excuse itself of its discovery obligations, it must be noted that it had ample opportunity to present its position before the instant filing, and any shift or change in its position should be viewed in that light.  Importantly, TigerSwan has never suggested prior to this filing that the requests are "overbroad" or "irrelevant," merely untimely and burdensome.

[9] A separate set of Requests of Admission were also served on Nick Johnson on April 11. Unlike TigerSwan, Johnson has not explicitly advised he does not intend to respond.

admission will gut its case and subject it to summary judgment. That is what Rule 36 was intended to do—narrow the issues for trial, or even altogether obviate the need for trial." *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (emphasis added).  Relying on *Langer*, the Third Circuit held in *Shelton v. Fast Advance Funding, LLC*, 805 Fed. Appx. 156 , 158 (3d Cir. March 3, 2020) that a District Court's determination that defendants' refusal to respond to Requests for Admission due after the close of discovery (just as here) warranted a finding that the requests were proper, a response was required, and as unanswered they would therefore be deemed admitted.   So to, here, TigerSwan should be ordered to answer the Requests for Admission, at the risk of failing to do so warranting the requests be deemed admitted.

    VI.    Robert Rice subpoena

Robert Rice was served with a subpoena dated March 3, 2022, which included a request for "communications, work orders, presentations, memorandum, financial records (including travel expenses and reimbursements) and social media and blog postings (including drafts) pertaining to any work done by you for, with, on behalf of, or in conjunction with TigerSwan, Energy Transfer Partners, Sunoco Pipeline, Sunoco, Nick Johnson, and/or Cedar Fork Partners/Kurt Merriwether." (Ex. 4, Rice Subpoena).  The phrasing of this request was necessary in light of the arguments set forth more fully above, i.e. that the work being done for TigerSwan on Mariner East 2 arose and continued to relate back to the agreement entered into in 2016 for Dakota Access and would not necessarily reference "Mariner East 2," and the fact that the requests were directed to a lay, third-party witness not represented by counsel at the time they were served.

The subpoeana requested that he appear on March 31, but all counsel agreed to conduct his deposition on May 5, when he is available.

After disclaiming any connection to Robert Rice, including representing that no one at TigerSwan had contact information for Robert Rice, counsel for TigerSwan has advised that it will serve as counsel for Mr. Rice at his upcoming deposition.  Prior to undertaking Rice's representation, TigerSwan never sought to quash or otherwise object to the subpoena, and nor did the Energy Transfer group of defendants.

Not until April 20 did counsel for Rice (and TigerSwan) request a limitation to the document request included in the subpoena served on Rice. (Ex. 5).  Plaintiffs responded that they would accept the production documents deemed discoverable in light of the March 4 Order by counsel for Rice (and TigerSwan), as long as it was accompanied by a log of documents that were withheld under the contention that the March 4 order does not permit their discovery.  (Ex. 6). No response to this proposal has been provided, but time is now of the essence and requires immediate

    VII.    Additional Considerations

April 25, 2022
Page **10** of **10**

    While decisions regarding electronic discovery hold that before a court will order parties to share the cost of producing e-discovery the producing party must show that the material is inaccessible, *Cochran*, *supra*, it is important to note that there are various options available to mitigate any legally cognizable burden that stop short of simply denying Plaintiffs' access to important discovery.

    It is anticipated that defendants will characterize this as an "eleventh-hour" attempt at additional discovery.  As set forth more fully above, it took five months from the first attempt to do so to receive documents from TigerSwan, and the discovery that TigerSwan refuses to provide was served in response to their late, but accommodated, production, and was invited by TigerSwan in part due to the parties' disagreement about the agreement between TigerSwan and Johnson.  Nick Johnson identified the existence of this document in his deposition, was asked to produce the document in question, and then represented he did not have it, and then was asked to describe it, which he will not agree to do, necessitating the present effort.  Far from a last-minute effort, this is the end of a tortuous effort that has been months in the works, and one which was necessitated at this time by the positions defendants have taken only in the last several days, and one which does not necessitate affecting any case management deadlines.

    For the foregoing reasons, Defendant Johnson should be ordered to answer the interrogatory asking for his description of the agreement he executed with TigerSwan; TigerSwan should be ordered to produce the same document; TigerSwan should be ordered to fully respond to the Third Set of Requests for Production and Requests for Admission; and Robert Rice should be ordered to produce all documents requested in the subpoena to counsel, who will then produce all documents that comply with the Court's March 4 Order and a log of all documents it contends do not, sufficiently detailed enough that fair discussion can be had about any dispute of any such designation.

    Thank you for your time and attention in this matter.  I am happy to provide further information at the Court's request.

    Very respectfully,

    */s/ Christopher Markos*

    CHRISTOPHER MARKOS


Cc: All counsel (via email)