# EXHIBIT 28

# PROFESSIONAL SERVICES AGREEMENT
# AGREEMENT NUMBER: PSA-480-2016-25559

## BETWEEN

## DAKOTA ACCESS, LLC
## (COMPANY)

## AND

## TIGERSWAN, LLC
## (CONTRACTOR)

---

**THIS PROFESSIONAL SERVICES AGREEMENT CONTAINS TERMS, CONDITIONS AND PROVISIONS THAT OPERATE TO SURRENDER OR OTHERWISE MODIFY THE LEGAL RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING RELIEVING A PARTY FOR THE CONSEQUENCES OF ITS OWN NEGLIGENCE.**

---

## EFFECTIVE DATE: SEPTEMBER 5, 2016

ETP-0870

**AGREEMENT NUMBER: PSA-480-2016-25559**

## PROFESSIONAL SERVICES AGREEMENT

This agreement ("Agreement"), made and entered into as of September 5, 2016 by and between Dakota Access, LLC with general offices at 1300 Main Street, Houston, Texas 77002 (hereinafter referred to as "Company") and TigerSwan, LLC, with general offices at 3467 Apex Peakway, Apex, North Carolina 27502, (hereinafter referred to as "Contractor");

### WITNESSETH THAT:

**WHEREAS**, Company has need for certain services, hereinafter described, to be performed by an independent contractor; and

**WHEREAS**, Contractor understands the types of services required by Company and represents that it has the necessary personnel, experience, competence, and legal right to perform the services; and

**WHEREAS**, Company desires to engage Contractor to perform the services and Contractor desires to undertake such performance under the terms, conditions, and provisions hereinafter set forth;

**NOW, THEREFORE**, in consideration of the respective undertakings of the parties, and the monies to be paid hereunder, and of the terms, conditions, and provisions hereinafter set forth, **WHICH INCLUDE TERMS, CONDITIONS, AND PROVISIONS THAT OPERATE TO SURRENDER OR OTHERWISE MODIFY THE LEGAL RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING RELIEVING A PARTY FOR THE CONSEQUENCES OF ITS OWN NEGLIGENCE,** the parties hereto have agreed and do hereby agree as follows:

1. <u>DEFINITIONS</u>

"**Affected Party**" shall have the meaning set forth in Section 17.2.1.

"**Affiliate**" shall mean any entity that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with another entity.

"**Company's Premises**" includes all work places, land, offshore facilities right-of-way easements, surface easements, property, buildings, drilling rigs, gas terminals, temporary and permanent structures or installations, vehicles, helicopters, airplanes and other conveyances owned by, leased to, operated by and under the control of Company, its Affiliates or otherwise used for the business of the Company or its Affiliates.

"**Complying Invoice**" shall have the meaning set forth in Section 5.3.

"**Confidential Information**" shall have the meaning set forth in Section 11.1.

"**Effective Date**" shall mean that date set forth in Section 2.

"**Fixed Rates**" shall mean those rates set forth in Exhibit B, unless otherwise agreed to by the parties in the respective Tasking Letter.

"**Firm Fixed Price**" shall have the meaning set forth in Section 4.1.2.

"**Force Majeure**" shall have the meaning set forth in Section 17.1.

"**Invoice Requirements**" shall have the meaning set forth in Section 5.1.

ETP-0871

**"Proposed Tasking Letter"** shall have the meaning as set forth in Section 3.2.

**"Representative"** for a Scope of Services shall mean the individuals designated in the Tasking Letter for the Scope of Services in accordance with Section 3.1.

**"Seconded Personnel"** shall mean Contractor's personnel working directly under Company's direction, supervision and control.

**"Services"** shall mean all crisis management and global stability consulting and services or other related professional services, provision of personnel and tasks required to be performed by Contractor under this Agreement and as set forth in all Tasking Letters issued hereunder.

**"Scope of Services"** shall mean all technical, crisis management and global stability consulting and services or other related professional services, provision of personnel and tasks required to be performed by Contractor under a single Tasking Letter.

**"Tasking Letter"** shall mean a letter agreement incorporated by reference into this Agreement and entered into among the parties pursuant to this Agreement setting forth a description of Scope of Services, compensation, and special terms and conditions and other details in a form similar to the example set forth in Exhibit A and containing, at a minimum, those elements set forth in Section 3.1.

"Term" shall have the meaning and be for the time set forth in Section 2.

2.   **EFFECTIVE DATE AND TERM OF AGREEMENT**

The Effective Date of this Agreement shall be September 5, 2016 and shall continue for a primary term of 1 year from its Effective Date, and shall extend from month to month thereafter, unless and until terminated by either party giving at least thirty (30) days prior written notice to the other party,

3.   **SERVICE**

Contractor shall furnish to Company the Services required pursuant to the Tasking Letters entered into by Company and Contractor during the Term of and pursuant to this Agreement.

3.1   **Tasking Letters.** Tasking Letters issued under this Agreement shall be in a form substantially similar to that of Exhibit A.  At a minimum, each Tasking Letter shall set forth:

(A)   a description of the Scope of Services that Contractor agrees to perform;

(B)   the specific method by which Company shall compensate Contractor for performing such Scope of Services;

(C)   the projected dates of commencement and completion of the Scope of Services;

(D)   the project place(s) of performance of the Scope of Services;

(E)   qualifications of the personnel who will perform the Services; and

(F)   Contractor's and Company's representatives for the daily communications pertaining to the Scope of Services under such Tasking Letter (the "Representatives").

An executed Tasking Letter shall include by incorporation and be subject to the terms, conditions and obligations of this Agreement, and in conjunction with this Agreement

2

constitute a contract establishing obligations on the part of both parties for the Scope of Services.

**3.2**   **Proposed Tasking Letter.**  Upon Company's determination that it desires to have Contractor perform certain services under this Agreement, Company shall propose to Contractor a Tasking Letter ("Proposed Tasking Letter") describing the proposed Scope of Services to be performed, the projected date of commencement, projected date of completion, place of performance, personnel qualifications, and other pertinent details related thereto.

**3.3**   **Contractor Response to the Proposed Tasking Letter.**  Contractor shall, within 5 days of receipt of the Proposed Tasking Letter, respond in writing to the Proposed Tasking Letter(s) by either:  (i) refusing to undertake services in those areas in which it does not reasonably consider itself competent or capable of performing; or, if not previously provided, (ii) providing the following information appropriate to the Proposed Tasking Letter:

(A)   an estimate of cost to perform the proposed Scope of Services defined in the Proposed Tasking Letter; and

(B)   an estimated schedule for performance based on the Scope of Services described in the Proposed Tasking Letter.

At such time as Company and Contractor agree on the terms of a Tasking Letter, Company and Contractor shall sign the Tasking Letter, and performance of the Scope of Services shall commence immediately, unless otherwise stated in the Tasking Letter.  Subject to the terms of this Agreement, Company and Contractor may agree in writing to modifications of the Tasking Letter.  In the event Company and Contractor do not come to an agreement on the terms of the Tasking Letter, the Proposed Tasking Letter shall be deemed withdrawn.  In the event Contractor begins to work on a proposed Scope of Services prior to execution of a Tasking Letter by the parties, Contractor proceeds at its own risk; COMPANY HAS NO OBLIGATION TO PAY CONTRACTOR FOR ANY WORK PERFORMED ON A PROPOSED SCOPE OF SERVICES UNTIL RECEIVING A FULLY EXECUTED TASKING LETTER.  Contractor's failure to respond in writing within the proscribed five (5) day period shall be considered a response consistent with Section 3.3(i).

**4.**   **COMPENSATION**

Contractor shall be compensated for each Scope of Services in the manner specified in the applicable Tasking Letter.  Methods of compensation that may be used are; (i) Fixed Rates (hourly or daily) for type or classification of person or skill level, as set forth below; (ii) Firm Fixed Price for a specific Scope of Services, as set forth below; or (iii) other methods mutually agreed upon and set forth in the Tasking Letter. Company shall compensate Contractor in U.S. dollars, unless otherwise specifically agreed in writing by both parties.

**4.1**   **Compensation Methods Understandings**

**4.1.1**   **Fixed Rates For Categories of Personnel**

In the event Company and Contractor agree to use Fixed Rates by category of position or skill, or on a by name basis, such Fixed Rates are inclusive of all compensation for:  (i) Contractor's employees' time, whether the employee works overtime or regular time or is an exempt or non-exempt employee; and (ii) Contractor's allowance for payroll burden (*i.e.* payroll taxes, insurance, vacations, sick leave, holidays, excused absences, fringe benefits, etc.), overhead, general and administrative expense (*i.e.* corporate officers, sales,

ETP-0873

public relations, personnel, law, medical, finance and accounting when not directly engaged in the Scope of Services, receptionists, janitorial, advertising personnel, rent, utilities, depreciation and maintenance of staff to provide readiness to serve), routine copies of correspondence, specifications and plans, telephone calls and postage, U.S. taxes (real estate, income, and franchise on Contractor or Contractor's U.S. Affiliates or subcontractors), insurance, profits, indemnification consideration under Section 13.1, and all costs and expenses of whatever kind except as otherwise specifically set forth in this Agreement.

### 4.1.2   Firm Fixed Price

(i)     If a system of a Firm Fixed Price is used for compensation, the Firm Fixed Price constitutes full payment to Contractor for:  (i) Contractor's employees' time, whether the employee works overtime or regular time or is an exempt or non-exempt employee; (ii) Contractor's allowance for payroll burden (*i.e.* payroll taxes, insurance, vacations, sick leave, holidays, excused absences, fringe benefits, etc.), overhead, general and administrative expense (*i.e.*  corporate officers, sales, public relations, personnel, law, medical, finance and accounting when not directly engaged in the Scope of Services, receptionists, janitorial, advertising personnel, rent, utilities, depreciation and maintenance of staff to provide readiness to serve), routine copies of correspondence, specifications and plans, telephone calls and postage, U.S. taxes (real estate, income, and franchise on Contractor or Contractor's U.S. Affiliates or subcontractors), insurance, profits, indemnification consideration under Section 13.1, and all costs and expenses of whatever kind except as otherwise specifically set forth in this Agreement.

(ii)    The Firm Fixed Price shall also include, and Company shall have no responsibility or liability for, payments to all subcontractors of Contractor for the Scope of Services, and such payments shall not be a reimbursable expense, unless specifically stated otherwise in the Tasking Letter.

**4.2**   **Audit.**  Company, or its representative shall have the right, excluding Firm Fixed Priced Tasks, for a period of three (3) years after the later to occur of:

(A)   completion of the Scope of Services pursuant to the applicable Tasking Letter; or

(B)   completion of the Services under this Agreement; or

(C)   completion of the project for which a Scope of Services was undertaken; during reasonable business hours, upon ten (10) days prior notice, at Contractor's United States office location, and at Company's expense, to audit all books and records of Contractor, and/or its subcontractor's relating to the Services or Scope of Services performed by Contractor or such subcontractor pursuant to this Agreement or specific Tasking Letter as applicable.  Contractor shall, and shall require that its subcontractors, keep, maintain, and make available to Company complete, accurate, and up-to-date written records, including but not limited to:  records of the productive time of employees involved in performing the Services or Scope of Services as applicable, salary information of employees who worked under this Agreement, receipts, notes and records which are pertinent to the Services or Scope of Services as applicable, expenses and costs incurred under this Agreement, and payment thereof.  Such records

4

shall be provided by Contractor or its subcontractors to Company within ten (10) days of Company's request for such records from Contractor. If, from the date of this Agreement, the Fixed Rates are changed as shown in Exhibit B or as otherwise agreed to in a Tasking Letter, then the basis on which Contractor's Fixed Rates were calculated shall not be subject to audit. The actual costs charged to Company on the basis of such factors shall, however, be subject to audit in order that Company can verify that such costs are properly chargeable to Company.

**4.3**     **Full Compensation.** Payment by Company pursuant to the payment method for the Scope of Services set forth in each Tasking Letter and the terms of this Agreement constitutes full payment to Contractor for its entire performance of the Scope of Services under each Tasking Letter.

**4.4**     **Time Records**. Contractor's employees assigned to the Services shall submit a timesheet as required by Company when Services are performed in Company's offices. A labor cost statement shall be included with each invoice to substantiate Contractor's invoice for personnel and consulting services not performed in Company's facility. Contractor shall maintain time records reasonably satisfactory to Company for audit purposes as required in Section 4.2.

**5.**     **INVOICING AND PAYMENT**

**5.1**     **Invoice Format and Content.** Commercial and project management representatives of both parties shall meet within three (3) weeks after execution of this Agreement to agree upon the general form and content of the invoices to be prepared by Contractor (the "Invoice Requirements"). Additional requirements for invoices for a particular Scope of Services will be as set forth in the applicable Tasking Letter.

**5.2**     **Invoice Submittal.** Except for a Scope of Services compensated for on a Firm Fixed Price basis, for each Tasking Letter, Contractor will submit each month, invoices for the portion of the Scope of Services performed under each Tasking Letter for the prior month. Invoices for a Scope of Services performed on a Firm Fixed Price basis shall be submitted at such times and for such Scope of Services or portion thereof as set forth in the applicable Tasking Letter. Each invoice must comply with the Invoice Requirements and requirements of the applicable Tasking Letter, and Contractor shall submit with each invoice such reasonable detail and documentation sufficient to support the amount invoiced as Company may require. Contractor shall submit invoices to the email address below and must clearly indicate the Company name, AFE, Agreement and Tasking Letter numbers.

    Email Invoices to:        apinvoicesetp.mailbox@energytransfer.com

The individual to whom and address where invoices shall be submitted may be changed in accordance with Section 15.

**5.3**     **Payment of Invoiced Amounts.** Company shall, upon its receipt of each invoice, review the invoice for conformance with: (i) this Agreement; (ii) the respective Tasking Letter to which it pertains; (iii) the Invoice Requirements; and (iv) Company's documentation requirements. Company shall, within thirty (30) days of receipt by Company of an invoice complying with: (i) this Agreement; (ii) the respective Tasking Letter to which it pertains; (iii) the Invoice Requirements; and (iv) Company's documentation requirements (a "Complying Invoice"), pay to Contractor the approved amount (calculated as the invoiced amount, less any disputed amounts); provided, however, that payment of any invoices or portions of invoices shall not prejudice the right of Company to protest or question the correctness thereof or compliance of the

5

Services or any portion thereof with this Agreement or any Tasking Letters, or prejudice or constitute a waiver of any right of Company hereunder.  Any amount questioned by either party and found to be in such party's favor shall be refunded or paid, as appropriate.  The existence of any dispute shall not be cause for suspension or termination of work under a Tasking Letter.

5.4    **Withholding**

(i)    If, and to the extent that such event is not caused by Company's non-payment to Contractor, Company receives written notice from any subcontractor, vendor or supplier of Contractor that Contractor has failed to pay such subcontractor, vendor or supplier for labor, materials, services and/or equipment related to the Services, Company may, upon thirty (30) days notice to Contractor, withhold payment from Contractor in the amount claimed by the subcontractor, vendor or supplier as due and owing, unless Contractor notifies Company in writing within such thirty (30) days that Contractor, in good faith, disputes the subcontractor's, vendor's or supplier's claim.  Company may continue to withhold such amount until Company receives written notice from the subcontractor, vendor or supplier that such amount has been paid in full by Contractor.

(ii)   If, and to the extent that such event is not caused by Company's non‑ payment to Contractor, if any lien, claim, security interest or other encumbrance in favor of any subcontractor, vendor or supplier of Contractor is filed against Company or Company's property, and if Contractor has not caused the lien to be released and discharged, or has not filed a bond in lieu thereof which is satisfactory in all respects to Company within five (5) days after the lien, claim, security interest or other encumbrance is filed, Company may withhold payment from Contractor in the amount of the lien, claim, security interest or other encumbrance (and all costs, interest and other amounts which have accrued or may accrue in connection therewith) until such time as Contractor removes and secures the release of such lien, claim, security interest or other encumbrance in accordance with Section 7.7.  If any such liens, claims, security interests or other encumbrances remain filed or otherwise imposed against Company or Company's property at the time of completion of the applicable Scope of Services, Company shall have the right, but not the obligation, to pay all sums necessary to obtain a release or discharge of the liens, claims, security interests or other encumbrances and deduct all such amounts from any amounts due Contractor from Company.  Contractor shall pay Company in accordance with Section 7.7 for any amounts not deducted from amounts due Contractor.

5.5    **Lien Release.**  Upon final payment to Contractor and upon the request of Company, Contractor shall provide:

(A)    an affidavit supported by documentation reasonably requested by Company that all payrolls, bills for materials, labor and equipment, and other indebtedness connected with the Scope of Services for which Company or Company's property might be responsible or encumbered have been paid or otherwise satisfied; and

(B)    a release and waiver (in form reasonably acceptable to Company) of liens, claims, security interests and encumbrances arising out of the Scope of Services in the form set forth in Exhibit D for Contractor and each of its subcontractors, suppliers, and vendors.

ETP-0876

6.     **RELATIONSHIP OF PARTIES**

6.1     **Independent Contractor.** Contractor undertakes performance of the Services as an independent contractor. Nothing herein shall create a relationship of employer and employee, joint venture, or partnership between Company and Contractor, its agents, representatives, employees or subcontractors, for any purpose whatsoever. Except for the purposes of Section 6.2, nothing herein shall create a relationship of principal and agent between Company and Contractor, its agents, employees, representatives or subcontractors. Except for the limited purposes of Section 6.2, neither party shall have the authority to bind or obligate the other in any manner as a result of the relationship created hereby.

6.1.1     **Control and Supervision**. Company shall not have the right to control the manner(s) or prescribe the method(s) by which Contractor performs the Services. Contractor shall be wholly responsible for supervision and the methods of performance. Contractor is entirely and solely responsible for its acts and the acts of its agents, employees, representatives and subcontractors engaged in the performance of the Services. In accordance with Section 8.7, Contractor shall provide Company access to the Services at all times, wherever in preparation or progress, and shall work closely with Company in performing Services under this Agreement, and Company shall have the right to observe, inspect and review performance of the Services, but any observance, inspection or review of performance of Services shall not constitute or be deemed to be actual control or a right to control Contractor, its employees, agents, personnel or subcontractors.

6.1.2     **Employees of Contractor**. Contractor shall provide qualified personnel who shall be and remain solely the employees of Contractor, and at no time or in any manner shall said personnel be considered as or deemed to be employees of Company. Company's general coordinative efforts, suggestions and procedures with respect to the Services and Company's right of inspection, review and observation of the Services shall not make Contractor or its employees, employees of Company.

6.2     **Agency Relationships.** Pursuant to Section 6.1, Contractor, its agents, employees, representatives and subcontractors shall be independent contractors and shall not be agents or representatives of Company unless specifically authorized to be such in a Tasking Letter for the purpose of acquiring rights of way, machinery, equipment or unique services, and then only to the extent of such authorization and only for the specific purpose(s) set forth in the Tasking Letter.

6.3     **Seconded Personnel.** No personnel of Contractor shall be or be considered to be Seconded Personnel unless the Tasking Letter for such Services specifies that such employees or personnel are Seconded Personnel, and then only for the limited purposes for which they are designated as Seconded Personnel. Seconded Personnel shall remain employee(s) of Contractor. Contractor shall continue to be solely responsible for, and Company shall have no responsibility for, all compensation and benefits, and related taxes, of Seconded Personnel, including, but not limited to, salary, wages, payroll taxes (*i.e.*, FICA, Social Security, etc.), insurance of all kinds (*i.e.*, health, life, disability, Workman's Compensation, etc.), vacations, sick leave, any retirement plan payments, and any other fringe benefits. The fact that any Contractor personnel are or may become Seconded Personnel pursuant to this Section 6.3 does not and shall not alter or be deemed to alter Contractor's independent contractor status or make Contractor, its agents, employees, representatives or subcontractor's agents, employees, or representatives of Company for any reason.

7

7.   **REPRESENTATIONS AND WARRANTIES**

7.1   **Authority and Ability to Conduct Business.**  Contractor is engaged in the business of, and has developed the requisite expertise necessary to perform the Services.  Contractor and its agents, employees and subcontractors have the capability, experience, expertise, and means required to perform the Services and the Services will be performed using personnel, equipment and materials qualified and/or suitable to perform the Services. Contractor acknowledges that Company is relying on Contractor's expertise and knowledge.  Upon entering into each Tasking Letter, Contractor represents that it has authority to conduct business in each location where the Services are to be performed. Each party hereto represents and warrants that the person executing this Agreement on its behalf is duly authorized and empowered to do so and that all formalities necessary for its approval of this Agreement have been satisfied.

7.2   **Standard of Care.**  Contractor represents and warrants that it will perform in a good and workmanlike manner and exercise the degree of care, skill, and diligence in the performance of the Services, including providing Seconded Personnel and acquiring rights of way, machinery, equipment or unique services under Section 6.2, in accordance and consistent with industry standards for similar circumstances. Contractor shall, within the time for original performance under the Tasking Letter (unless extended by mutual agreement) re-perform Services or any portion thereof which fail to:  (i) satisfy the foregoing standard of care; (ii) meet the stated requirements of the Tasking Letter issued by Company requesting such Services; or (iii) be in accordance with the standards, specifications, procedures or written instructions as set forth in the Tasking Letter.  Such re-performance shall consist of all corrective services, within the Scope of Services set forth in the applicable Tasking Letter(s) and as amended from time to time, necessary to conform to the foregoing warranty.  Company may, in its sole discretion and without penalty, withhold payment for any Services which require re-performance until the same are acceptably re-performed in the reasonable judgment of Company.  All costs incurred by Contractor in performing such corrective Services shall be for Contractor's account, and Company shall not be required to pay for any such corrective Services.  Contractor shall continue re-performance of the defective Services until such re-performance is completed.  In the event that Company determines that Contractor is either not capable of re-performing the corrections or not capable of performing such corrections in time to meet Company's requirements, Company may at Contractor's expense have the Services re-performed by a third party.  Contractor's warranties and representations under this section shall expire following twelve (12) months from the completion of the Services.

7.3   **Administration and Staffing.**  Contractor represents and warrants that it will use utmost skill, efforts and judgment to further the interests of Company, to furnish efficient business administration and supervision, and to furnish at all times an adequate supply of personnel and materials.

7.4   **Authority and Infringement.**  Contractor represents and warrants that it has the right and authority to enter into this Agreement, to provide the Services required of it hereunder, to convey and grant all the rights of ownership as set forth in Sections 11 and 12, and that it is capable and qualified to provide the Services required of it hereunder.  Without limiting the foregoing, Contractor represents and warrants that the Services and information provided to Company by Contractor hereunder will not infringe on any third party's patent, copyright, trademark, trade secret or other intellectual property rights.  Contractor shall bear and agrees to pay all costs, damages, losses and expenses (including, without limitation, attorney's fees and court costs) which Company may incur, be required to pay or be liable for as a result of, in connection with, arising out of or related to any such infringement, and to remedy such

8

infringement by appropriate means, including, but not limited to:  (i) obtaining for Company the right to continued use, reproduction, distribution, performance and display of the copyrighted, patented, trademark or otherwise infringed item; (ii) correction of the infringing Services and/or information such that the infringement is removed; or (iii) replacement of the infringing Services and/or information with equivalent non-infringing Services and/or information.  Contractor shall not be liable for any infringement actions arising from Company's directives or modifications of the Services.

7.5     **Company Supplied Information**.  COMPANY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, OF ANY KIND CONCERNING INFORMATION PROVIDED TO CONTRACTOR BY OR ON BEHALF OF COMPANY PURSUANT TO OR IN FURTHERANCE OF THE SERVICES PROVIDED PURSUANT TO THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY THAT THE INFORMATION IS ACCURATE, CORRECT, COMPLETE, FIT FOR ANY PARTICULAR USE OR CAN BE USED WITHOUT INFRINGING ANY PATENT, COPYRIGHT, TRADEMARK, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES UNDER THE INTELLECTUAL PROPERTY RIGHTS OF THE WORLD.  It is Contractor's responsibility to ensure that the information provided to Contractor by or on behalf of Company is accurate, correct, complete and fit for the particular purpose(s) for which Contractor utilizes it.

7.6     **Accuracy**.  Contractor represents and warrants that all Services and information presented to Company for acceptance are complete, accurate, and authentic.

7.7     **Invoices**.  Contractor represents and warrants that all amounts reflected on invoices submitted by Contractor for payment are or will be accurate, just, due and owing under the terms of this Agreement and the applicable Tasking Letter, and that all Services for which Contractor seeks payment are free and clear of liens, claims, security interests and encumbrances arising in favor of Contractor and its subcontractors, vendors, suppliers and other persons or entities able to make a claim by reason of having provided labor, materials or equipment relating to the Services or any portion thereof.  Contractor agrees and represents that in submitting an invoice, Contractor waives and releases all liens, claims, security interests and other encumbrances arising in favor of Contractor by reason of having provided labor, materials or equipment relating to the Services or any portion thereof, to the extent of payment of such invoice.  If, and to the extent that such event is caused by Company's non-payment to Contractor, Contractor agrees to remove immediately any lien, claim, security interest or other encumbrances against Company, Company's property, or Company's Affiliates' property, arising in favor of Contractor or its subcontractors, vendors, suppliers or other persons or entities by reason of having provided labor, materials or equipment related to the Services and to pay any damages, costs, losses and expenses (including, without limitation, court costs and attorneys' fees) which Company may incur, be required to pay or be liable for as a result of, in connection with, arising out of, or related to any such lien, claim, security interest or other encumbrance.

8.     **RESPONSIBILITIES**

8.1     **Other Contractors of Company**.  Contractor shall not be responsible for construction means, methods, techniques, sequences, procedures, or safety precautions and programs in connection with services performed by other contractors of Company.  In addition, Contractor shall not be responsible for the failure of any other contractor, subcontractor or vendors (other than a subcontractor, supplier or vendor of Contractor), or other project participant to fulfill contractual or other responsibilities to the Company or to comply with federal, state, or local laws, ordinances, regulations, rules, codes, orders, criteria, or standards unless provided for in the applicable Tasking Letter.

9

8.2     **Labor, Materials and Equipment.**   Subject to Section 4 herein, Contractor shall furnish and pay for all labor, materials, tools, equipment, transportation and supervision incident to and necessary for Contractor to perform the Services, and shall make all payments to any subcontractors of Contractor.

8.3     **Permits.**   Contractor shall be responsible for procuring permits, certificates, and licenses required for any construction or operation of the facility or project for which the Scope of Services is being performed in accordance with Section 9.1.

8.4     **Progress Reports.** Contractor shall furnish such progress reports, schedules, financial and cost reports and other reports concerning the Services or Scope of Services in progress as Company may from time to time require.

8.5     **Personnel; Travel; Compliance with Company Rules.** Contractor will provide evidence of personnel qualifications as requested by Company.  Contractor agrees that all of its employees may be required to travel to foreign and domestic locations in connection with the Services, unless otherwise specifically stated in writing by Contractor at the time of an employee's first assignment to the Services.  Contractor shall require all of its employees to observe all Company rules and regulations including, but not limited to plant badges, parking and entrance facilities, safety, fire, drug/alcohol, and smoking regulations.

8.6     **Seconded Personnel.**   Corrections to the portion of the Services performed by Seconded Personnel in their capacity as Seconded Personnel which are a result of such Seconded Personnel's ordinary negligence shall be a Company expense.  ALL OTHER FAILURES OF SECONDED PERSONNEL TO COMPLY WITH INDUSTRY STANDARDS OR OTHERWISE COMPLY WITH THIS AGREEMENT, INCLUDING THOSE WHICH ARE A RESULT OF SUCH SECONDED PERSONNEL'S GROSS NEGLIGENCE OR WILFUL MISCONDUCT OR FOR WHICH CONTRACTOR IS STRICTLY LIABLE AS A MATTER OF LAW WITHOUT REGARD TO FAULT, SHALL BE THE RESPONSIBILITY OF CONTRACTOR.

    8.6.1   **Qualifications.**  Contractor shall be responsible for providing Seconded Personnel who are qualified to perform, are possessed of the proper training and experience, and are capable of performing the Services for which they are supplied to Company as Seconded Personnel.  Prior to providing Company with Seconded Personnel, Contractor shall inform Company of any and all deficiencies or ways in which the proposed Seconded Personnel is lacking qualifications, training, experience or capability of performing such services or any other limitations on Seconded Personnel's qualifications, training, experience or capabilities.

8.7     **Access to Services and Inspection.** Contractor shall provide Company access to the Services at all times wherever in preparation or progress in order to inspect the Services.  Any inspection, observation, or review by Company of the performance of the Services or any portion thereof shall not prejudice, be a waiver, or be deemed to be a waiver of any of its rights hereunder or of its rights to reject defective Services.

8.8     **Responsibility for Guarantees and Warranties of Others.** In the event Company and Contractor agree in a Tasking Letter that Contractor is to procure and obtain rights of way, machinery, equipment, or unique services not normally performed by Contractor or firms similar to Contractor on behalf of and as agent of Company in accordance with Section 6.2, then Contractor shall, for the protection of Company, demand from all such vendors and/or service providers warranties and guarantees with respect to such machinery, equipment, materials and unique services, which shall be made available to Company to the full extent of the terms thereof; provided, however, that such

10

warranties and guarantees shall extend for a period of at least twelve (12) months from use or eighteen (18) months from delivery of the relevant equipment, machinery or unique services, whichever is later.

**8.9**  **Safety.** Contractor safety and well-being is important to Company.  As a condition of the contract Company expects all contractors, contractor personnel (including any sub-contractors) and others to comply with any and all regulatory requirements and to pursue a high level of safety performance. For this reason, Company requires all contractors; contractor personnel (including any sub-contractors) who work on site at Company facilities and operations to attend Company's Contractor Safety Orientation Program.  This Contractor Safety Orientation Program will provide a summary of Company procedures, policies, and guidelines which are in effect at all Company field sites and facilities.  Except as otherwise provided, this program does not certify or train on any particular subject, nor is it intended to replace or supersede existing State, Federal or Local regulations which must be followed at all times.  This program is intended to provide contractors and their personnel with awareness information for hazard communication and a general overview to promote safety while at a Company facility.  Company will provide the Contractor copies of the Contractor Safety Orientation Program.  The Program includes a computer CD and/or television DVD audiovisual presentation, attendance log, and individual completion cards.  A key component of the Contractor Safety Orientation Program is the audio visual presentation describing basic safety requirements of Company.  This presentation is approximately 30 minutes in length and is available in either English or Spanish.  Contractor and contractor personnel are required to view this presentation prior to working at Company field locations.  Program validity is good for one (1) year.  After 1 year the presentation program must be viewed again and the validation is renewed for another year.  New individual completion cards needs to be issued and the attendance log completed at this time.  The contractor is required to record and maintain a log for employee attendance of the presentation.  Company in its sole discretion has the right to review the Safety Orientation attendance log.  Any questions regarding applicability or other requirements of the Contractor Safety Orientation Program should be presented to Energy Transfer Company's Safety Department.

**9.**  **COMPLIANCE WITH LAWS**

**9.1**  **Contractor Conduct.**  The Services provided by Contractor shall comply with applicable regulatory requirements including, without limitation, all federal, state, and local laws, rules, ordinances, resolutions, regulations, orders, codes, criteria and all other applicable standards, export and import laws and regulations, issued or promulgated by units of government and regulatory bodies with jurisdiction over any aspect of the Services and/or project for which the Services are sought.  Contractor shall not act in violation of the U.S. Foreign Corrupt Practices Act, and in connection therewith shall not make any payments, loans, or gifts, directly or indirectly, to or for the use or benefit of any official employee, agency or instrumentality of any government, political party or candidate thereof, or any other person or entity, the payment of which would violate the laws or policies of the United States, the State of Texas, or the country or countries in which the Services are performed, in whole or in part.  Contractor shall possess or procure all permits, certificates, and licenses necessary to allow Contractor to perform the Services at all locations of performance and shall ensure that Contractor's subcontractors have all permits, certificates, and licenses necessary for such subcontractor, vendors and suppliers to perform such Services, except those permits, certificates and licenses that are project specific and normally acquired by owner or developer.  Contractor shall answer promptly and in reasonable detail any questionnaire or other written or oral communications, to the extent the same pertain to compliance with this Section 9, whether such questionnaires or communications are from Company, its outside auditors, or other representatives.

11

Contractor further agrees to pay any government assessed penalties, fines, and charges, and associated damages, costs, losses, and expenses (including, without limitation, court costs and attorneys' fees) which Company may incur, be required to pay or be liable for as a result of, in connection with, arising out of or related to any noncompliance of the Services or any portion of the Services with any or all of the above laws, regulations, rules, orders, codes, criteria, standards, ordinances or resolutions.

9.2     **Employment Practices.**  Contractor agrees that it shall be at all times during the term of this Agreement, in full compliance with all applicable federal, state and local statutes, rules and regulations, orders and guidelines, relative to Contractor's employment of employees and agents of Contractor, including, but not limited to:  the Age Discrimination Employment Act of 1967; the Americans with Disabilities Act of 1990; the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; the Fair Labor Standards Act; the Occupational Safety and Health Act of 1970; the Rehabilitation Act of 1973; the Equal Pay Act of 1963; the Immigration Reform and Control Act of 1986; the Vietnam Era Veteran's Readjustment Assistance Act of 1974; the Drug-Free Workplace Act (and any other statutes and regulations dealing with drug testing); Executive Orders of the President of the United States; and the regulations promulgated pursuant to the above.  To the extent that Contractor furnishes supplies or services which, in whole or in part, are necessary for the performance of any United States government contract, Contractor agrees that it shall comply with all applicable state and federal affirmative action obligations, unless otherwise exempted.  To the extent applicable, Contractor agrees to abide by Executive Order 11246 and its requirements, which are incorporated herein by reference and which appear at 41 C.F.R. Section 60-1.4(a)(1-7).  In addition, Contractor agrees that, to the extent applicable, it shall comply with all regulations regarding the handicapped and Vietnam Era veterans which are found at 41 C.F.R. Section 60-250.4 and 41 C.F.R. Section 60-741.4, respectively, and incorporated herein by reference.  Contractor represents and warrants that it does not and will not maintain any segregated facilities or engage in any discriminatory practices.  If applicable or unless otherwise exempted, Contractor shall obtain certifications from its subcontractors that they are and shall be at all times during performance of covered Services in full compliance with all of the above to the extent that such statutes, rules and regulations, orders and guidelines are applicable. Contractor agrees to pay any government assessed penalties, fines, and charges, and associated damages, costs, losses, expenses (including, without limitation, court costs and attorneys' fees) which Company may incur, be required to pay or be liable for as a result of, based on, in connection with, related to or arising from Contractor's or any of its subcontractors' noncompliance with this Section 9.2.  Contractor shall also comply with Company's safety procedures, provided that the safety requirements listed in Company's safety procedures shall not relieve Contractor from complying with any applicable laws, ordinances, regulations and rules, including, but not limited to, those enacted pursuant to the Occupational Safety and Health Act.

9.3     **Correction of Non Complying Services.**  Within twelve (12) months from completion of the Services and in the event any Services hereunder fail to comply with all applicable federal, state and local laws, rules, orders, ordinances, codes, resolutions, criteria, regulations, all other applicable professional standards as established in Section 7.2, or as issued or promulgated by units of government and regulatory bodies as required by Section 9.1 and that were:

(A)     in effect at the time a Scope of Services commenced under any Tasking Letter;

(B)     in effect at the time that all or a particular portion of the Services is completed; or

12

(C)     not yet in effect at the time that a Scope of Services commenced under any Tasking Letter or on the particular portion of the Services, but at such time and to the knowledge of Contractor a change to such valid applicable federal, state and local laws, ordinances, codes, resolutions, local and national standards and regulations, issued or promulgated by units of government and regulatory bodies had passed but was not yet effective upon the completion of all or a portion of such Services.

Contractor shall correct such noncomplying Services or portion thereof as necessary to comply with the above.  Contractor shall bear the costs of correction of such noncomplying Services and Company shall not be required to pay for such corrective Services.  In the event that Company determines that Contractor is either not capable, in the reasonable judgment of Company, of re-performing the corrections or not capable of performing such corrections in time to meet Company's requirements, Company may, at Contractor's sole expense, have the Services corrected by a third party. Contractor, upon request by Company, shall either pay such third party directly or reimburse Company for all such costs.  Contractor shall advise Company of any known pending changes to such federal, state and local laws, ordinances, codes, resolutions, local and national standards and regulations so that Company may make an informed decision as to whether to have the project designed in anticipation of such pending change as it affects the Scope of Services under the applicable Tasking Letter.

## 10.  TAXES AND CONTRIBUTIONS

Contractor assumes full responsibility for and agrees to pay all contributions and taxes payable under all applicable federal, state and local social security laws, unemployment compensation laws and income tax laws as to all of its employees, including Seconded Personnel, engaged in the performance of Services hereunder, and to pay any and all valid sales or use taxes levied on general office, engineering and drafting supplies, materials, equipment, and services performed by Contractor hereunder, except for:

(A)     those taxes directly associated with the materials, equipment, and unique services that Contractor, acting as agent for Company, acquires for Company pursuant to Section 6.2;

Contractor shall, where applicable, separately list on invoice(s) to Company all such valid sales taxes on Services to be provided hereunder.  Contractor further agrees to pay any tax, interest, penalty, fines, costs, losses and expenses (including, without limitation, court costs and attorney's fees) which Company may incur, be required by law to pay, or be liable for as a result of, arising from, in connection with, related to or based on any failure to withhold any amounts from any payments made or any amounts which Contractor fails to pay in connection with, as a result of, arising from or based on the Services or any portion of the Services hereunder or otherwise comply with this Section 10.

## 11.  CONFIDENTIAL INFORMATION

11.1    **Confidential Information.**  Contractor acknowledges that all information, including but not limited to, data, drawings, recordings, tracings, specifications, calculations, diaries, memoranda, manuals, correspondence, documentation, computer software, plans, programs, plants, processes, products, costs, equipment, routes, vendors, personnel, operations, customers, reports, studies, designs, know how, trade secrets, communications written or oral, of any form or media, related to the Company whether received from or on behalf of the Company, whether marked or not, is proprietary and confidential to the Company ("Confidential Information").  Confidential Information shall not include information which:

13

ETP-0883

(i)     at the time of disclosure or thereafter becomes a part of the public domain through no wrongful act or omission or noncompliance with this Section 11 by Contractor;

(ii)    is subsequently disclosed to Contractor by a third party, and which the third party did not acquire under an obligation of confidentiality;

(iii)   was in the possession of Contractor prior to entering into this Agreement and which was not previously disclosed to Contractor as Confidential Information of Company; or

(iv)   is required to be disclosed by law, rule, regulation, legal process or order of any court or government body having jurisdiction over the same.

**11.2**   **Protection of Confidential Information.**  Contractor shall not use or disclose (except to the extent reasonably required to perform Services and then only in compliance herewith) any Company Confidential -Information.  Contractor shall protect such information at least to the same extent as Contractor would protect the same or similar information owned by Contractor.  If necessary to perform the Services, Contractor may disclose Confidential Information to third parties, but only on a confidential basis satisfactory to Company and with the prior written consent of Company.  All Company Confidential Information disclosed to or used or acquired by Contractor in connection with the Services shall be and remain Company's exclusive property.  It is understood and agreed that money damages would not be a sufficient remedy for any breach of the foregoing confidentiality provisions and that the parties shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of said provisions but shall be in addition to all other remedies available at law or equity.

**11.3**   **Developed Information.**  Contractor acknowledges that all information solely developed, derived, or created hereunder which is based on, or developed, derived or created from, Company Confidential Information, shall be Confidential Information of the Company.

**11.4**   **Return of Information.**  Contractor shall deliver to Company all Company Confidential Information provided or disclosed to or used or acquired by Contractor, including all information developed, derived, or created therefrom, or portions thereof, upon the earlier of:

(A)    cessation of the need for the information for performance of Services; or

(B)    Company's request; or

(C)    completion of the Services for which it was provided, disclosed, used or acquired; or

(D)    termination, suspension, or expiration of this Agreement.

Contractor may retain a single copy of all information upon which its Services are based for record purposes only.  In the event Contractor releases Confidential Information to a third party, Contractor shall retrieve and deliver to Company all such released Confidential Information, including any and all copies of the Confidential Information and all information developed, derived, or created therefrom, upon the earlier of:

(i)     cessation of the need for the information for performance of Services; or

(ii)    Company's request; or

ETP-0884

(iii)    completion of the Services for which it was provided, disclosed, used or acquired; or

(iv)    termination, suspension, or expiration of this Agreement.

11.5    **Limited Access.** Contractor agrees to restrict the knowledge of all Confidential Information to Contractor's employees and personnel who are directly connected with the performance of the Services and have need of such knowledge.

12.    **OWNERSHIP OF INFORMATION, INVENTIONS, DISCOVERIES AND INTELLECTUAL PROPERTY RIGHTS**

12.1    **Ownership of Information and Inventions.** The parties intend and agree that all rights, title and interest in and to all Company Confidential Information and all other information, whether written or otherwise, including but not limited to data, drawings, recordings, tracings, specifications, calculations, diaries, memoranda, manuals, correspondence, documentation, computer software, plans, programs, plants, processes, products, costs, equipment, routes, vendors, personnel, operations, customers, reports, studies, designs, know how, trade secrets, communications written or oral, of any form or media, developed and created by any party or subcontractor solely during and due to the performance of the Services shall be the exclusive property of Company. Contractor further agrees that any and all inventions or discoveries developed solely during and due to the performance of the Services under this Agreement, including improvements and modifications, whether or not patentable, and any applications for Letters Patent issuing thereon, including inventions or discoveries made by Contractor or its employees solely during and due to the performance of this Agreement, shall be the exclusive property of Company.  Contractor agrees and does hereby assign, grant, transfer and convey to Company, its successors and assigns, Contractor's entire right, title, interest and ownership in and to such Confidential Information, information, inventions, discoveries, modifications, and improvements, including, without limitation, the right to secure patent or copyright registration.  Contractor confirms that Company and its successors and assigns shall own Contractor's right, title and interest in and to, including the right to manufacture, use, reproduce, distribute by sale, rental lease or lending or by other transfer of ownership, to perform publicly, and to display, all such Confidential Information, information, inventions, discoveries, modifications, and improvements, whether or not such items constitute all "work made for hire" as defined in 17 U.S.C. Section 201(b).

12.2    **Registration and Protection of Intellectual Property Rights.** Contractor agrees to take all actions and cooperate as is necessary and agrees to execute any documents that might be necessary to perfect Company's ownership of patent, copyright and other rights in such Confidential Information, information, inventions, discoveries, modifications, and improvements, and to obtain any registrations.  Company shall have the right to file and prosecute, at Company's expense and at Company's sole discretion, all patent applications on any such inventions or discoveries, and Contractor agrees for itself and its employees to have executed and delivered to Company any and all documents, including assignments, which Company shall deem necessary in order to apply for, prosecute and obtain Letters Patent for said discoveries, patent applications based thereon and Letters Patent issuing thereon.  Contractor agrees on behalf of itself and its employees to furnish Company full assistance in the preparation, filing and prosecution of any such patent applications, including patent interference proceedings relating thereto, and to protect and enforce said patents and to assist in any proceedings and litigation in connection therewith, such assistance to be furnished by Contractor at Company's expense with Company reimbursing Contractor by the method set forth in the Tasking Letter from which the invention or discovery arose.  In the event such

15

ETP-0885

invention or discovery arose from a Firm Fixed Price Tasking Letter, such compensation shall be in accordance with Sections 4.1.2.

**12.3**  **Third Party Rights.** In the event any information covered by Section 12.1 includes intellectual property rights, proprietary information, copyrighted information of a third party, or any information or property requiring a license to use, manufacture, sell, reproduce, distribute by any means, perform publicly or display such material, Contractor shall secure the necessary copyright, license or release to allow Company to use, manufacture, sell, reproduce, distribute, perform publicly and display such information.

## 13.   INDEMNIFICATION

**13.1**  **Compensation for Indemnification.**  One percent of the amount to be paid pursuant to this Agreement represents specific consideration to Contractor for all indemnification obligations of Contractor set forth in this Agreement.

**13.2**  **CONTRACTOR INDEMNITY.**  WITH RESPECT TO CLAIMS BY THIRD PARTIES, CONTRACTOR AGREES TO INDEMNIFY, PROTECT, DEFEND, AND HOLD HARMLESS COMPANY ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, AND CONTRACTORS, AND THE DIRECTORS, OFFICERS EMPLOYEES, AGENTS, AND CONTRACTORS OF COMPANY'S AFFILIATES COMPANIES, FROM AND AGAINST ANY AND ALL DEMANDS, LIENS OR OTHER ENCUMBRANCES ON COMPANY OR ITS PROPERTY, CLAIMS, SUITS AND CAUSES OF ACTION AND ANY AND ALL LIABILITY, COSTS, EXPENSES, AND JUDGMENTS INCURRED IN CONNECTION THEREWITH (INCLUDING, WITHOUT LIMITATION, COURT COSTS AND REASONABLE ATTORNEY'S FEES), WHETHER ARISING IN EQUITY, AT COMMON LAW, OR BY STATE, FEDERAL, LOCAL OR OTHER STATUTE, RULE OR REGULATION, INCLUDING ANY ENVIRONMENTAL LAW, THE TEXAS DECEPTIVE TRADE PRACTICES ACT OR SIMILAR STATUTE OF OTHER JURISDICTIONS, OR UNDER THE LAW OF CONTRACTS, TORTS (INCLUDING, NEGLIGENCE AND STRICT LIABILITY) OR PROPERTY, BREACH OF CONTRACT OR WARRANTY, VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, OR STRICT LIABILITY, AND ARISING IN FAVOR OF OR BROUGHT BY ANY OF CONTRACTOR'S EMPLOYEES, AGENTS, SUBCONTRACTORS, OR REPRESENTATIVES, OR BY ANY GOVERNMENTAL AGENCY OR ANY OTHER THIRD PARTY (THE "CLAIMANT"), BASED UPON, IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE SERVICES AND TO THE EXTENT CAUSED BY CONTRACTOR'S NEGLIGENT ACTIONS OR INACTIONS UNDER THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY FAILURE TO COMPLY WITH ANY APPLICABLE LAWS, RULES, REGULATIONS, ORDINANCES, ORDERS, CODES, RESOLUTIONS OR STANDARDS AND INFRINGEMENT OF ANY THIRD PARTY'S OWNERSHIP OR INTELLECTUAL PROPERTY RIGHTS, PROVIDED, HOWEVER, THAT CONTRACTOR'S CONTRACTUAL OBLIGATION OF INDEMNIFICATION SHALL NOT EXTEND TO THE PERCENTAGE OF THE CLAIMANT'S DAMAGES OR INJURIES ATTRIBUTABLE TO COMPANY'S NEGLIGENCE OR WILLFUL MISCONDUCT OR TO STRICT LIABILITY IMPOSED UPON COMPANY AS A MATTER OF LAW. THIS INDEMNIFICATION OBLIGATION SHALL APPLY REGARDLESS OF THE AMOUNT OF INSURANCE COVERAGE HELD BY CONTRACTOR, INCLUDING THAT UNDER ANY WORKER'S COMPENSATION ACT, DISABILITY ACT, OR OTHER ACT OR LAW WHICH WOULD LIMIT THE AMOUNT OR TYPE OF DAMAGES, COMPENSATION, OR BENEFITS PAYABLE BY OR FOR CONTRACTOR, AND SHALL NOT BE

ETP-0886

**LIMITED BY ANY INSURANCE CARRIED OR PROVIDED BY CONTRACTOR IN ACCORDANCE WITH THIS AGREEMENT OR OTHERWISE.**

14. INSURANCE

Contractor shall maintain in effect during the Term of this Agreement insurance of the types and in the amounts in accordance with the provisions as described at Exhibit C.

15. NOTICE

Any notice, demand, or request required by or made pursuant to this Agreement shall be deemed properly made if made in writing and delivered by hand delivery, telefax and confirmed by first class mail, postage prepaid, or deposited in the United States Mail, postage prepaid, to the respective addresses and personnel specified below ("Notice Representative"):

**IF TO COMPANY:**

Keegan Pieper, Associate General Counsel
Energy Transfer Partners, L.P.
1300 Main Street
Houston, Texas  77002
Facsimile: 713-989-1212

**IF TO CONTRACTOR:**

Jim Reese, Founder and President
TigerSwan, LLC
3467 Apex Peakway
Apex, North Carolina 27502

The parties may change the address where or the individual to whom notice is to be given by providing notice of such change pursuant to this Section 15.  Nothing contained in this Section shall be construed to restrict the transmission of routine communications between representatives of Contractor and Company.

16. TERMINATION OF AGREEMENT

16.1   **Termination for Cause.** Either party may, in the event of substantial failure by the other party to perform in accordance with the terms hereof through no fault of the terminating party, upon seven days written notice, terminate this Agreement and/or a Tasking Letter to which the substantial failure applies.

16.2   **Termination Without Cause.** The Company shall have the right for its convenience and without cause to terminate or suspend, in whole or in part, Contractor's performance of Services under this Agreement or of a Scope of Services under any Tasking Letter, upon 3 days' written notice to Contractor.  Contractor shall, upon receipt of Company's notice of termination or suspension, immediately (unless directed otherwise in the Company's notice of termination or suspension) terminate or suspend performance of the Services or of a Scope of Services as directed, but only to the extent specified in Company's notice of termination or suspension.  Upon receipt of Company's notice of termination or suspension, Contractor shall not incur any further costs until directed otherwise by Company.  Company shall pay Contractor such sum as is reasonable and equitable for the Services or Scope of Services authorized and performed to the point of termination or suspension under this Section, and for which Company had not previously paid Contractor.  In the event of termination under this Section 16, Company shall also pay Contractor for all reasonable demobilization and

17

cancellation costs incurred by Contractor in connection with the termination as supported by documents pursuant to Section 4.

**16.3** **Continuation of Services Not Terminated or Suspended.** Termination or suspension of a Scope of Services under any Tasking Letter, in whole or in part, shall not diminish Contractor's liability or obligation to continue prosecution of Services under any other Tasking Letters.

**17.** **FORCE MAJEURE**

**17.1** **Force Majeure.** "Force Majeure" shall comprise any natural phenomena that neither Company nor Contractor could reasonably control, foresee or prevent, or any human event or a combination of human events that neither Company nor Contractor could reasonably control, foresee or prevent, and whose occurrence neither of them, their respective agents or employees acting under their directions, have contributed to, which events impede Company or Contractor from performing their obligations under this Agreement. Such Force Majeure events shall include, without being limited to, the following:

(A) acts of a public enemy, war or threat of war threat of war (declared or undeclared) occurring in or involving the United States, revolution, riot, rebellion, insurrection, military or usurped power, state of siege, declaration of a state of emergency or martial law (or any of the events or circumstances that will or may result in the declaration of a state of emergency or martial law), civil commotion, act of terrorism, vandalism or sabotage (in each case occurring in or involving the United States), embargo or blockade, declaration of public calamity (or any of the events or circumstances that will or may result in the declaration of public calamity);

(B) politically motivated or otherwise widespread strikes, suspensions, interruptions, work slow-downs or other labor disruptions;

(C) explosions, chemical or radioactive contamination or ionizing radiation;

(D) air crashes, objects falling from aircraft, pressure waves caused by aircraft or aerial devices traveling at supersonic speed;

(E) epidemics, meteorites, fire, lightning, earthquake, cyclone, whirlwind, hurricane, earthquake, tempest, storm, drought, flood, or other unusual or extreme adverse weather or environmental condition or action of the elements.

**17.2** **Procedure for Calling Force Majeure.**

**17.2.1** If one party wishes to claim relief from the performance of its obligations on account of any event or circumstance of Force Majeure (hereinafter, the "Affected Party"), then the Affected Party shall give notice to the other party of such event or circumstance as soon as reasonably practicable after becoming aware of such event or circumstance.

**17.2.2** Each notice served by an Affected Party to the other party pursuant to this Section 17.2 shall specify the event or circumstance of Force Majeure in respect of which the Affected Party is claiming relief. Noncompliance with the procedure specified herein shall relieve the other party from accepting the Affected Party's claim until notice is so provided. The Affected Party shall, by reason of any event or circumstance of Force Majeure in respect of which it has claimed relief under this Section 17.2:

18

(i)     use its reasonable best efforts to mitigate the effects of such Force Majeure and to remedy any inability to perform its obligations hereunder due to such events as promptly as reasonable practicable.

(ii)    furnish weekly reports to the other party regarding the progress in overcoming the adverse effects of such event of Force Majeure.

(iii)   resume the performance of its obligations under this Agreement as soon as is reasonably practicable after the events of Force Majeure are remedied or cease to exist.

When the Affected Party is able, or would have been able if it had complied with its obligations under this Section 17.2, to resume the performance of all of its obligations under this Agreement affected by the occurrence of an event or circumstance of Force Majeure, then the period of Force Majeure relating to such event or circumstance shall be deemed to have ended.

17.2.3  **Effects of Force Majeure.** An Affected Party shall be relieved from any liability for the non-performance of its obligations under this Agreement where and to the extent that such non-performance is attributable directly to the event of Force Majeure.  The existence of an event of Force Majeure shall not relieve either Company or Contractor of any obligations that accrued prior to the commencement of such event of Force Majeure.

## 18.   GOVERNING LAW AND FORUM

This Agreement, its interpretation and any disputes relating to, arising out of or connected with this Agreement, shall be governed by the laws of the State of Texas, without regard to its conflicts of law provisions.  Any dispute relating to, arising out of, or connected with this Agreement shall be filed and maintained in Houston, Harris County, Texas in accordance with Section 29 hereof, or, if not in arbitration pursuant to Section 29 hereof, in the State or Federal Courts located in Houston, Harris County, Texas.

## 19.   WAIVER

No waiver of any provision of the Agreement shall be of any force or effect unless such waiver is in writing, expressly stating to be a waiver of a specified provision of the Agreement, and is signed by the party to be bound thereby.  Either party's waiver of any breach or failure to enforce any of the provisions of the Agreement, at any time, shall not in any way limit or waive that party's right thereafter to enforce or compel strict compliance with this Agreement or any portion or provision or right under this Agreement.

## 20.   SEVERABILITY

The invalidity, illegality, or unenforceability of any provision of this Agreement, or the occurrence of any event rendering any portion or provision of this Agreement void, shall in no way affect the validity or enforceability of any other portion or provision of the Agreement.  Any void provision shall be deemed severed from the Agreement and the balance of the Agreement shall be construed and enforced as if the Agreement did not contain the particular portion or provision held to be void.  The parties further agree to reform the Agreement to replace any stricken provision with a valid provision that comes as close as possible to the intent of the stricken provision. The provisions of this section shall not prevent the entire Agreement from being void should a provision which is the essence of the Agreement be determined to be void.

ETP-0889

21.  **ASSIGNMENT AND RIGHTS OF AFFILIATED COMPANIES**

    21.1   **Contractor Assignment.** Contractor shall not assign or transfer, in whole or in part, any rights or obligations under or interest in (including, but without limitation, monies that are due) this Agreement without the prior written consent of Company.

    21.2   **Company Assignment.** Company may assign this Agreement, in whole or in part, to an Affiliate, joint venturer or partner, or to a third party who is under contract to Company or its Affiliates or at some subtier level contract to Company. Company shall notify Contractor of such assignment ten (10) calendar days prior to executing such assignment. Upon assignment to a third party, Contractor will be provided written assurance by Company and the assignee that Contractor will be afforded all the rights, privileges and protections as provided under this Agreement.

    21.3   **Tasking Letter by Company Affiliates.** Company's Affiliates may issue and enter into Tasking Letters with Contractor under this Agreement. BY ENTERING INTO A TASKING LETTER WITH ANY SUCH AFFILIATE, CONTRACTOR AGREES THAT THE AFFILIATE AUTOMATICALLY ASSUMES THE RIGHTS, PRIVILEGES, PROTECTIONS AND RESPONSIBILITIES OF COMPANY UNDER THIS AGREEMENT WITH RESPECT TO THE SCOPE OF SERVICES UNDER THE TASKING LETTER AND AGREES THAT COMPANY IS RELEASED AND THEREBY DOES RELEASE COMPANY FROM ANY OBLIGATIONS INCLUDING PAYMENT OBLIGATIONS, AND LIABILITY OF EVERY KIND AND CHARACTER HEREUNDER TO CONTRACTOR FOR SUCH SCOPE OF SERVICES, WHETHER BASED ON THE LAW OF CONTRACTS, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF EVERY KIND AND STRICT LIABILITY WITHOUT FAULT), OR PROPERTY, OR ARISING UNDER COMMON LAW OR STATUTORY LAW, OR AT EQUITY.

    21.4   **Subcontracting by Contractor.** Contractor may, upon approval by Company, which approval may be withheld for any reason, subcontract any portion of the Services to a subcontractor. In no case shall Company's approval of any subcontract relieve Contractor of any of its obligations under this Agreement. Contractor may have portions of the Services performed by its Affiliates or their employees, in which case Contractor shall be responsible for such Services and Company shall look solely to Contractor as if the Services were performed solely by Contractor.

22.  **SUCCESSORS AND ASSIGNS**

The provisions of this Agreement shall inure to the benefit of and be binding upon the successors, assignees, and representatives of the parties hereto.

23.  **MODIFICATION**

This Agreement may be modified during the Term of this Agreement only by written modification, which expressly provides that it is a modification of this Agreement and is signed by duly authorized representatives of both parties.

24.  **INCONSISTENCIES**

In the event of any conflict between this Agreement and any Tasking Letter, the terms and provisions of the Tasking Letter shall control regarding the Scope of Services to be provided and compensation for the Scope of Services. In the event of any conflict between this Agreement and any Tasking Letter, the terms and provisions of this Agreement shall control regarding all other contractual terms or conditions. **Additional or inconsistent contractual terms or conditions may be added only by formal amendment to this Agreement and not**

ETP-0890

**through Tasking Letters.**  Except with regard to the Scope of Services and compensation for the Scope of Services, any additional or inconsistent terms contained in Tasking Letters with respect to this Agreement will be of no force and effect.  In the event of any conflict among the Exhibits, the Exhibit of the latest date shall control.

25.    SURVIVAL

The following Sections shall survive termination of this Agreement: 4 (Compensation); 7 (Representations and Warranties); 8 (Responsibilities); 9 (Compliance with Laws); 10 (Taxes and Contributions); 11 (Confidential Information); 12 (Ownership of Information, Inventions, Discoveries and Intellectual Property Rights); 13 (Indemnification); 18 (Governing Law); 19 (Waiver); 20 (Severability); 24 (Inconsistencies); 27 (Public Releases); and 29 (Dispute Resolution).

25.1    **Continuation of Services Past Agreement Expiration**

In the event a Tasking Letter is in progress and not completed upon this Agreement's expiration date established in Section 2, the terms of this Agreement shall survive the expiration date and be effective for the duration of such Tasking Letter, which shall be prosecuted to completion under the terms hereof, unless such Tasking Letter is sooner terminated or suspended in accordance with Section 17.

26.    **NON EXCLUSIVE RIGHTS**

This Agreement is not exclusive and Company retains the right, at its sole discretion, to acquire the same or similar services from others without any obligation to Contractor.

27.    **PUBLIC RELEASES**

Nothing contained herein shall permit or be deemed to permit use by Contractor of Company's name, directly or indirectly, in the form of advertising or in a press release without the prior receipt of Company's written approval.

28.    **COMPANY POLICY REGARDING DRUGS/ ALCOHOL/ WEAPONS ON COMPANY'S PREMISES.**

Contractor agrees to advise its employees and the employees of its subcontractors and agents that it is the policy of Company that:

28.1    The use, possession and/or distribution of illegal or unauthorized drugs, drug-related paraphernalia or weapons on Company's premises is prohibited and the use or possession of alcoholic beverages, except where authorized by Company's management, is also prohibited;

28.2    Entry onto or presence on Company's Premises by any person, including Contractor, Contractor's employees, subcontractors, subcontractors' employees, contract personnel, temporary employees and visitors, constitutes consent to Company to conduct searches, whether announced or unannounced, on Company's Premises of the person and his or her personal effects for such prohibited items; and consent to drug testing at any time while on Company's Premises; and

28.3    Any person who is found in violation of the policy or who refuses to permit a search or drug or alcohol test may be removed and barred from Company's Premises, at the direction of Company; and

ETP-0891

**28.4**   Contractor personnel who test positive for illegal drugs or unauthorized alcohol as a result of a test conducted on Company Premises, or upon request of Company, will be removed from any further performance or Services under this Agreement.

**29.**   <u>**DISPUTE RESOLUTION**</u>

**29.1**   <u>**Negotiation of Disputes and Disagreements**</u>

In the event of any dispute or disagreement arising out of or relating to the implementation or performance of this Agreement, which the parties hereto have been unable to settle or agree upon within a period of thirty (30) days after the dispute or disagreement arises, each party shall nominate a senior officer of its management to meet at a mutually agreed time and place not later than forty five (45) days after the dispute or disagreement has arisen to attempt to resolve such dispute or disagreement. Should a resolution of such dispute or disagreement not be obtained within fifteen (15) days after the meeting of senior officers for such purpose, either party may then by notice to the other submit the dispute to arbitration in accordance with the provisions of this Section 29.

**29.2**   <u>**Agreement to Arbitrate**</u>

Any and all claims, counterclaims, demands, cause of action, disputes, controversies, and other matters in question arising out of or relating to this Agreement, any provision hereof, the alleged breach thereof, or in any way relating to the subject matter of this Agreement or the relationship between the parties created by this Agreement, involving the parties and/or their respective representatives (all of which are referred to herein as "Claims"), even though some or all of such Claims allegedly are extra-contractual in nature, whether such Claims sound in contract, tort, or otherwise, at law or in equity, under State or federal law, whether provided by statute or the common law, for damages or any other relief, shall be resolved by binding arbitration.

**29.3**   <u>**Conduct of the Arbitration, Authority of the Arbitrators, and Choice of Law**</u>

It is the intention of the parties that the arbitration shall be conducted pursuant to the Federal Arbitration Act and administered by the American Arbitration Association in accordance with its then current Commercial Arbitration Rules, as such Act and Rules are modified by this arbitration agreement.   The validity, construction, and interpretation of this agreement to arbitrate, and all procedural aspects of the arbitration conducted pursuant to this agreement to arbitrate, including but not limited to, the determination of the issues that are subject to arbitration (i.e., arbitrability), the scope of the arbitrable issues, allegations of "fraud in the inducement" to enter into this agreement or this arbitration provision, allegations of waiver, laches, delay or other defenses to arbitrability, and the rules governing the conduct of the arbitration (including the time for filing an answer, the time for the filing of counterclaims, the times for amending the pleadings, the specificity of the pleadings, the extent and scope of discovery, the issuance of subpoenas, the times for the designation of experts, whether the arbitration is to be stayed pending resolution of related litigation involving third parties not bound by this arbitration agreement, the receipt of evidence, and the like), shall be decided by the Arbitrators.   In deciding the substance of the parties' Claims, the Arbitrators shall refer to the substantive laws of the State of Texas for guidance (excluding Texas choice-of-law principles that might call for the application of some other State's law).   Provided, however, it is expressly agreed that notwithstanding any other provision in this arbitration agreement to the contrary, the Arbitrators shall have absolutely no authority to award treble, exemplary or punitive damages of any type under any circumstances regardless of whether such damages may be available under Texas law, the law of any other State, or federal law, or under the

Federal Arbitration Act, or under the Commercial Arbitration Rules of the American Arbitration Association, the parties hereby waiving their right, if any, to recover treble, exemplary or punitive damages in connection with any such Claims.

### 29.4   Forum for the Arbitration and Selection of Arbitrators

The arbitration proceeding shall be conducted in San Antonio, Texas. Within thirty days of the notice of initiation of the arbitration procedure, each Party shall select one Arbitrator.  The two arbitrators shall select a third arbitrator, failing agreement on which within ninety days of the original notice, the parties (or either of them) shall apply to any United States District Judge for the Southern District of Texas, San Antonio Division, who shall appoint the third arbitrator.  While the third arbitrator shall be neutral, the two Party-appointed Arbitrators are not required to be neutral and it shall not be grounds for removal of either of the two Party-appointed Arbitrators or for vacating the arbitrators' award that either of such arbitrators has past or present minimal relationships with the Party that appointed such arbitrator. The decision of the arbitrators shall be final and binding upon the parties without the right of appeal to the courts.  The award rendered by the arbitration shall be final and judgment thereon may be entered by any court having jurisdiction thereof. The costs and expenses of the arbitration (including reasonable attorney's fees) will be borne by the losing party, unless the arbitrators determine that it would be manifestly unfair to honor this agreement of the parties and determine a different allocation of costs.

### 29.5   Continuation of Services

Pending final resolution of any dispute, whether or not submitted to arbitration hereunder, Company and Contractor shall continue to fulfill their respective obligations hereunder.

### 29.6   Confidentiality

To the fullest extent permitted by law, this Arbitration proceeding and the Arbitrators Award shall be maintained in confidence by the parties.

## 30.   AGREEMENT NOT AN OBLIGATION

Contractor and Company acknowledge that execution of this Agreement shall not in of itself create any obligation on the part of either party and that no obligations on the part of either party shall be created until such time as a fully executed Tasking Letter is entered into by the parties.

## 31.   REMEDIES

Neither party, nor their parent, affiliated nor subsidiary companies, nor their officers, directors, agents, employees or contractors shall be liable to the other for incidental, indirect, special, collateral, consequential, exemplary or punitive damages arising out of or related to the Services, whether based on contract, sole or other negligence, or strict liability, statutory or otherwise.

## 32.   RESERVED

## 33.   HEADINGS

Headings and titles of sections in this Agreement are included herein for convenience of reference only and shall not constitute a part of the Agreement for any other purpose and will not affect in any way the meaning or interpretation of this Agreement.

ETP-0893

34. **ENTIRE AGREEMENT**

This Agreement as executed by authorized representatives of Company and Contractor, constitutes the entire Agreement between the parties with respect to matters herein and there are no oral or written understandings, representations or commitments of any kind, express or implied, not expressly set forth herein.

**IN WITNESS WHEREOF**, this Agreement is executed on the day and year first above written, but is effective on the Effective Date.

**"COMPANY"**
Dakota Access, LLC

Signature: _____

Name: _____Joey Mahmoud_____

Title: _____Executive Vice President_____


**"CONTRACTOR"**
TigerSwan, LLC

Signature: _____

Name: _____James Reese_____

Title: _____President_____

24

ETP-0894

**Agreement Number: PSA-480-2016-25559**
**Tasking Letter No.: PSA-480-2016-25559-01**

# SAMPLE
# EXHIBIT A - TASKING LETTER

## TECHNICAL SERVICES

**PART I - REQUIREMENTS**

1.    **The Contractor is required to provide the following Scope of Services:**

    (a)    **Project: _____ Project (AFE#_____).**

    _____

    (b)    **Contractor's Scope of Services:**

    _____

2.    **Location of Services:**

    _____
    _____
    _____

3.    **Term of Tasking Letter:**

    _____
    _____
    _____

4.    **Contractor shall submit invoices to the following contact person and must clearly indicate the Agreement number and Tasking Letter number.**

    _____

    _____

    _____

**PART II - TERMS AND CONDITIONS**

This Tasking Letter is governed by the terms and conditions set forth in Professional Services Agreement No. PSA-480-2016-25559 between Dakota Access, LLC and TigerSwan, LLC , Effective September 5, 2016.

1

ETP-0895

**PART III – COMPENSATION FOR SERVICES**

Contractor shall be compensated on a time and materials basis in accordance with Contractor's Proposal not to exceed under any circumstances _____ Dollars ($_____), without prior written agreement between Company and Contractor.

Accepted to and agreed on this _____ day of _____, 20_____.

**COMPANY:**                                            **CONTRACTOR:**
**Dakota Access, LLC**                                  **TigerSwan, LLC**


**Signature:**_____          **Signature:**_____


**Name:**_____          **Name:**_____


**Title:** _____          **Title:**_____

2

**Agreement Number: PSA-480-2016-25559**

# EXHIBIT B
# CONTRACTOR RATES

The following are Fixed Rates for category of person on an (hourly/daily/weekly/monthly basis).

ETP-0897



September 15, 2016

Re: Exhibit B Contractor Rates

Dear Sir/Ma'am,

Please find TigerSwan's schedule of rates included for Professional Services Agreement Number: PSA-480-2016-25559 between Dakota Access, LLC (Company) and TigerSwan, LLC (Contractor).

| Labor Category | Daily Rate |
|---|---|
| Program Manager | |
| Deputy Program Manager | |
| Intelligence Analyst | |
| Operations Analyst | |
| Security Site Advisor | |
| GuardianAngel/IT Operator | |
| Administrator | |

| Travel | Billing Details |
|---|---|
| Airfare | Cost Plus 5.0% |
| Lodging | Cost Plus 5.0% |
| Rental Cars | Cost Plus 5.0% |
| Miscellaneous (Fuel, Parking, Tolls, etc.) | Cost Plus 5.0% |
| Meals | Included in Daily Rates |

| Other Direct Costs | Billing Details |
|---|---|
| Uniforms | (Firm Fixed-Price) |
| GuardianAngel Platform and Monitoring | (Firm Fixed-Price) |
| Misc. Tech. Equip. (Phones, Laptops, Beacons, etc.) | Cost Plus 5.0% |

If you have any questions regarding the included rate sheet, please contact Jim Reese (j.reese@tigerswan.com) or Brian Smith (b.smith@tigerswan.com).

Sincerely,

Brian Smith
VP, Finance
b.smith@tigerswan.com
(919) 439-4087

TigerSwan, LLC
3467 Apex Peakway, Apex, NC 27502
(919) 439-7110

# EXHIBIT C
## MINIMUM INSURANCE REQUIREMENTS

### Worker Compensation and Employers Liability Insurance

Contractor agrees to comply with Workers Compensation laws of the state where the Work is performed, and to maintain a Workers Compensation and Employers Liability policy.  This policy shall be endorsed to provide: all states coverage, voluntary compensation coverage and occupational disease.

If the Work is to be performed on or near navigable waters, the policy shall include coverage for United States Longshoremen's and Harbor Worker's, Death on the High Seas, Jones Act, and all shall contain endorsement for Borrowed Servants.

| | |
|---|---|
| Workers Compensation | Statutory |
| Employer's Liability | $1,000,000 Each Accident (Minimum) |
| | $1,000,000 Disease Each Employee |

### General Liability Insurance

General Liability insurance, endorsed to provide coverage for explosion, collapse and underground damage hazards to property of others; Contractual Liability (consistent with the applicable provisions of the "General Indemnity" section of this Contract); Contractors Protective Liability (if subcontracting is authorized) and Products and Completed Operations (for a minimum of two year after acceptance of the Work).  Watercraft exclusions deleted (if Work necessitates the use of watercraft of any kind).

| | |
|---|---|
| Bodily Injury | $1,000,000 Each Occurrence (Minimum) |
| Property Damage | $1,000,000 Each Occurrence (Minimum) |

or

| | |
|---|---|
| Bodily Injury and | |
| Property Damage | $1,000,000 Combined Single Limit Each Occurrence (Minimum) |

### Automobile Liability Insurance

Automobile Liability insurance which shall include coverage for all owned, non-owned and hired vehicles.

| | |
|---|---|
| Bodily Injury | $1,000,000 Each Person (Minimum) |
| | $1,000,000 Each Occurrence (Minimum) |
| Property Damage | $1,000,000 Each Occurrence (Minimum) |

or

| | |
|---|---|
| Bodily Injury and | |
| Property Damage | $1,000,000 Combined Single Limit Each Occurrence (Minimum) |

### Hull and Protection and Indemnity Insurance

Hull and Protection and Indemnity Insurance if the Work necessitates the use of watercraft of any kind.

ETP-0899

| | |
|---|---|
| Hull | Full Replacement of the watercraft (Minimum) |
| P&I | $1,000,000 Each Occurrence or the full value of the vessel, whichever is greater (Minimum) |

**Professional Liability (Engineers Errors or Omissions)**

$1,000,000 Combined Single Limit Each Claim (Minimum)

**Additional Requirements**

Contractor shall require any subcontractor at any tier, vendor, supplier, material dealer and others connected with the Work to provide and maintain insurance at all times during the period that their agreement related to Work under this Contract is in force and effect at the subcontractor's, vendor's, supplier's, material dealer's, or others' own cost, with insurance limits and in form and issuing companies acceptable to Company.

Contractor shall submit to Company at the time Contractor executes this Contract, a Certificate of Insurance, in form satisfactory to Company, evidencing that satisfactory coverages of the type and limits set forth hereinabove are in effect.  Policies providing such coverages shall contain provisions that no cancellation in the policies shall become effective except on thirty (30) days advance written notice thereof to Company.  Irrespective of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of Contractor, the failure of any insurance company to pay claims accruing, or the inadequacy of the limits of the insurance, shall not affect, negate or waive any to the provisions of this Contract including, without exception, the indemnity obligations of Contractor.

Contractor agrees to require any policies of insurance, except Workers Compensation and Professional Liability coverages, which are in any way related to the Work and that are secured and maintained by Contractor or its subcontractors, to include Company,  its Affiliates and their directors, officers, employees and agents, as Additional Insured.  Furthermore, Underwriters shall waive all rights of recovery against Company, its Affiliates which Contractor may have or acquire because of deductible clauses in or inadequacy of limits of, any policies of insurance maintained by Contractor.

Contractor agrees to require all such policies of insurance which are in any way related to the Work and that are secured and maintained by Contractor or its subcontractors, to include clauses providing that each underwriter shall waive its rights of recovery, under subrogation or otherwise, against Company and its Affiliates and their directors, officers, employees and agents.

2

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
9/6/2016

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| Rutherfoord, A Marsh & McLennan Agency LLC Co.<br>5500 Cherokee Avenue, Suite 300<br>Alexandria VA 22312 | PHONE (A/C, No, Ext): 703-354-1616    FAX (A/C, No): 703-354-2731<br>E-MAIL ADDRESS: certificates@rutherfoord.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : AFB Syndicate 2623/623 at Lloyds | 55555 |
| INSURED      TIGERINC1 | INSURER B : Hartford Underwriters Insurance Com | 30104 |
| Tigerswan, Inc.<br>3467 Apex Peakway<br>Apex NC 27502 | INSURER C : Wesco Insurance Company | 25011 |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: 2042385663 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X<br>X CLAIMS-MADE ☐ OCCUR | | | B0391IS1602076 | 7/31/2016 | 7/31/2017 | EACH OCCURRENCE | $3,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | POLICY ☐ PRO-JECT ☐ LOC ☐ | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY** | | | 42UECZW4081 | 7/31/2016 | 7/31/2017 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| C | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?   N   N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | WWC3187007 | 3/29/2016 | 3/29/2017 | X PER STATUTE ☐ OTH-ER | |
| | | | | | | | E L EACH ACCIDENT | $1,000,000 |
| | | | | | | | E L DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E L DISEASE - POLICY LIMIT | $1,000,000 |
| A | Professional Liability | | | B0391IS1602076 | 7/31/2016 | 7/31/2017 | $5,000,000 Aggregate<br>$3,000,000 Each Occurrence | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Dakota Access LLC, its Parent, Affiliates and their Directors, Officers, Employees and Agents are included as Additional Insureds under the General Liability and Automobile Liability with respect to work performed by the insured if required by written contract for the referenced job and/or contract. The General Liability applies as primary and non-contributory to the additional insureds own liability coverages as required by written contract. A Waiver of Subrogation under the General Liability and Automobile Liability applies in favor of the certificate holder for work performed by the insured if required by written contract for the referenced job and/or contract. Per the cancellation clause contained in the policies noted on this certificate, the policy provisions include at least 30 days notice of cancellation except for non-payment of premium.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Dakota Access, LLC, its Parent, Affiliates, and their Officers, Directors, Employees, and Agents<br>1300 Main Street<br>Houston TX 77002 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Susan Davis* |

© 1988-2014 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2014/01)     The ACORD name and logo are registered marks of ACORD

ETP-0901

Agreement Number: PSA-480-2016-25559

# EXHIBIT D
## AFFIDAVIT AND RELEASE OF LIEN

THE STATE OF _____  §

COUNTY OF _____  §

_____hereby acknowledges the receipt and sufficiency of the sum of _____and other good and valuable consideration, in full payment for furnishing _____including all labor, materials and services, for improvements known as _____to the following described property:

_____hereby acknowledges and certifies that **<Company>** paid _____all sums owing and that it has no further claims against <Company>, or any subsidiary, affiliate, or parent of <Company>.

        In consideration for such full payment,_____, on behalf of itself and its predecessors, employees, agents, officers, directors, shareholders, representatives, attorneys, successors, insurers and assigns, and on behalf of any other persons claiming by, through or under_____, does hereby waive, release, and relinquish its rights to and discharge, release and acquit <Company>, its subsidiaries, affiliates, and parent and its employees, agents, officers, directors, shareholders, representatives, attorneys, successors, insurers and assigns, from any and all causes of action, claims, demands, debts, liabilities, expenses or costs of any kind and every character and nature whatsoever, including but not limited to any lien claims or rights, whether known or unknown, contingent or fixed, either in or arising out of the law of contracts, torts or property rights, whether arising under statutory law or common law, at law or in equity, with respect to the above-referenced property. Furthermore,_____agrees to indemnify and hold harmless <Company>, its subsidiaries, affiliates and parent and all other persons or entities released by _____above against the full amount of any liability, loss, claim, damage, or expense (including attorneys' fees and any judgment required to be paid) in connection with any of the matters it has released in the event any person should assert against such released person or entity a claim under assignment or title derivative from _____and in connection with any claims made in connection with or relating to_____provision of labor, materials and/or service on the above-referenced property.

EXECUTED _____day of _____, 20___.

Company:_____

Signature:_____

Name: _____

Title: _____

1

ETP-0902

SWORN TO AN SUBSCRIBED BEFORE ME, under my official hand and seal of office on this _____ day of _____, 20_____.


_____
Notary Public in and for
the State of_____

My Commission Expires:_____

(SEAL)

<u>AFFIDAVIT</u>


THE STATE OF _____   §

COUNTY OF _____   §


BEFORE ME, the undersigned Notary Public, on this day personally came and appeared _____ known to me to be the individual whose name is subscribed to the foregoing RELEASE OF LIEN and being duly sworn, did state and acknowledge on his oath that he/she is the _____ of _____, is authorized to execute and deliver the foregoing on behalf of _____ as an act and deed of that entity for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 20_____.

ETP-0903

Agreement Number: PSA-480-2016-25559

# EXHIBIT E
## SAFETY INFORMATION

Contractors are required to comply with all applicable Federal, State and local safety, health, and environmental regulations including all Company site-specific and/or business unit policies and procedures applicable to the scope of work being conducted.  All Contractors shall have, and adhere to, their own Environmental, Health and Safety Plan. The guidelines presented in this document are not an exhaustive list of all applicable requirements and regulations for the Contractor to conduct work for the Company.  Instead, these guidelines highlight certain Company standards that may be applicable for the Contractor based on the scope of work.

It is essential that these rules and safety responsibilities are understood before starting work on Company property and/or projects.  Violating safety requirements could jeopardize the welfare of the Contractor and/or Company employees and could result in expulsion from Company property and/or project, and deny the Contractor the opportunity to be considered for future Company projects.

The Company updates this manual periodically. As part of the Contractors obligation, the Contractor shall review the Contractor Safety Manual every six (6) months throughout the term of the project.  The most current copy can be found on the Company website. This website allows access to the various forms available to achieve documentation requirements: http://www.energytransfer.com/docs/contractorssafetymanual.pdf

1