# EXHIBIT 31



| | |
|---|---|
| **ATTACHMENT A:** | Task Order/Assignment Sheet (Amendment 1) |
| Date: | December 5, 2016 |

Independent Consultant/Contractor: Cedar Fork Partners LLC, Project Lead is Kurt Merriweather

| | |
|---|---|
| Tasks Description: | Marketing and Digital Media Support |
| Contract Name: | DAPL Information Operations |
| Reports To: | Robert Rice, Project Manager<br>Shawn Sweeney, Program Manager |
| Period of Performance: | December 1, 2016 – December 31, 2016<br>Contractor may cancel task order upon providing thirty days written notice.<br>TigerSwan may cancel at any time by providing written notice. |
| Reporting Requirements: | Reporting as directed by the TigerSwan Program Manager |
| Compensation: | $17,500.00 service fee<br>50% upfront payment with the final payment due upon project completion<br>TigerSwan will pay for airfare, lodging and transportation if required.  This will be coordinated through TigerSwan.<br>***ALL expenses MUST be approved in advance by the Program Manager.***<br>Expenses will be submitted at the conclusion of the mission<br><br>Worker Compensation Costs will be deducted from the IC's compensation at a rate of .26 per $100.00 of compensation |
| Invoice Instructions: | Submit your invoice(s) for the Services provided to the Program Manager.<br>Attach all receipts for any expenses incurred while performing such Services or payment will not be processed.<br><br>**INVOICES WILL BE PROCESSED AT START OF PROJECT AND AT PROJECT COMPLETION** |
| Signatures: | Please sign and return this Attachment A to TigerSwan to indicate your acceptance of this Task Order/ Assignment. |

12-6-2016

Independent Consultant's Signature     Date Signed

## Shawn Sweeney

Digitally signed by Shawn Sweeney
DN: cn=Shawn Sweeney, o=TigerSwan Inc, ou=Vice President Operations, email=s.sweeney@tigerswan.com, c=US
Date: 2016.12.06 11:40:50 -05'00'

Program Manager     Date Signed

## Brian S. Smith

Digitally signed by Brian S. Smith
DN: cn=Brian S. Smith, o=TigerSwan, Inc, ou,
email=b.smith@tigerswan.com, c=US
Date: 2016.12.06 12:01:11 -05'00'

VP of Finance     Date Signed

# Nick Johnson

313 Forbush Mountain Drive
Chapel Hill, NC 27514

INVOICE 11 -4/28/2017

| **Cedar Fork, LLC** | **BALANCE DUE** |
| --- | --- |
| Chapel Hill, NC 27514 | Upon Receipt |
| | $12,750 |

All of April for DAPL, April 2017.

| Item Description | Quantity | Price Per | Total |
| --- | --- | --- | --- |
| Promotion and content creation, social media monitoring. Entire month of April, 2017 for ETP/DAPL. | | | $12,750 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $12,750 |
| | | | |

# Nick Johnson
INVOICE 14 -8/23/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$12,586

## July for DAPL, 2017, other expenses

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Entire month of July, 2017 for ETP/DAPL. | | | $12,500 |
| Half of payment to Iowa leaker | | | $25 |
| Half of payment to correspondent | | | $25 |
| Half of cat mask for production | | | $30 |
| Half of coffee meetings with correspondent | | | $6 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $12,586 |
| | | | |

# Nick Johnson

INVOICE 9 -3/21/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,375

First for DAPL, March 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. First half of March, 2017 for ETP/DAPL. | | | $6,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,375 |
| | | | |

# Nick Johnson
## INVOICE 5 - 2/12/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,000

First week for DAPL and Momentive.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Week 1 for both DAPL and Momentive. | | | $6,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,000 |

CEDARFORKS005

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

**Give Form to the
requester. Do not
send to the IRS.**

Print or type
See Specific Instructions on page 2.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Nikolaos James Johnson

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

- [✓] Individual/sole proprietor or single-member LLC
- [ ] C Corporation
- [ ] S Corporation
- [ ] Partnership
- [ ] Trust/estate

- [ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

  **Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

- [ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

313 Forbush Mtn Drive

**6** City, state, and ZIP code

Chapel Hill, NC, 27514

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

or

**Employer identification number**

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign
Here**

Signature of
U.S. person ▶

Date ▶ 11/15/2016

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See *What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued), or

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of

CEDARFORKS0060

# Nick Johnson
INVOICE 6 - 2/19/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,375

Second week for DAPL and Momentive, Feb 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Week 2 for both DAPL and Momentive. | | | $6,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,375 |
| | | | |

# Nick Johnson

313 Forbush Mountain Drive
Chapel Hill, NC 27514

INVOICE 15 -9/16/2017

| **Cedar Fork, LLC** | **BALANCE DUE** |
|---|---|
| Chapel Hill, NC 27514 | Upon Receipt |
| | $12,750 |

## August for DAPL, 2017

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Entire month of Aug, 2017 for ETP/DAPL. | | | $12,750 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $12,750 |
| | | | |

# Nick Johnson
INVOICE 4 - 1/14/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$5,438

Second half of December contract with TigerSwan.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation. Second half deposit for contract - Dec 15 - Dec 31, 2016. | | | $5,438 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $5,438 |
| | | | |

# Nick Johnson
## INVOICE 1 - 11/15/2016

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$2,700

First half of contract with TigerSwan.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation. First half deposit for contract - Nov. 4 through 30, 2016. | | | $2,700 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $2,700 |
| | | | |

# Nick Johnson
INVOICE 13 -8/1/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$13,150

## June for DAPL, 2017, LA Trip

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Entire month of June, 2017 for ETP/DAPL. | | | $12,750 |
| Half of Louisiana trip expenses, June, 2017 - Bayou Bridge Pipeline | | | $400 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $13,150 |
| | | | |

# Nick Johnson
INVOICE 7 - 2/25/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,375

Third week for DAPL and Momentive, Feb 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Week 3 for both DAPL and Momentive. | | | $6,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,375 |
| | | | |

# Nick Johnson

INVOICE 10 - 4/3/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,375

Second half for DAPL, March 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Second half of March, 2017 for ETP/DAPL. | | | $6,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,375 |
| | | | |

# Nick Johnson
INVOICE 2 - 12/16/2016

313 Forbush Mountain Drive
Chapel Hill, NC 27514

| **Cedar Fork, LLC** | **BALANCE DUE** |
|---|---|
| Chapel Hill, NC 27514 | Upon Receipt |
| | $4,500 |

Second half of November contract with TigerSwan.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation. Second half deposit for contract - Nov. 4 through 30, 2016. | | | $4,500 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $4,500 |
| | | | |

CEDARFORKS014

# Nick Johnson
INVOICE 3 - 12/31/2016

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$7,780

First half of December, plus 50% ad split (Nov, Dec) contract with TigerSwan.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation. First half deposit for contract - Dec 1 - Dec 15, 2016. | | | $5,438 |
| 50% of ad revenue split (Nov, Dec) | | | $2,342 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $7,780 |
| | | | |

CEDARFORKS015

# Nick Johnson

INVOICE 12 -6/10/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$12,750

May for DAPL, 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Entire month of May, 2017 for ETP/DAPL. | | | $12,750 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $12,750 |
| | | | |

CEDARFORKS016

# Nick Johnson
INVOICE 8 -3/3/2017

313 Forbush Mountain Drive
Chapel Hill, NC 27514

**Cedar Fork, LLC**
Chapel Hill, NC 27514

**BALANCE DUE**
Upon Receipt
$6,375

Fourth week for DAPL and Momentive, Feb 2017.

| Item Description | Quantity | Price Per | Total |
|---|---|---|---|
| Promotion and content creation, social media monitoring. Week 4 for both DAPL and Momentive. | | | $6,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | $6,375 |
| | | | |

CEDARFORKS017



## <u>INDEPENDENT CONSULTANT/CONTRACTOR AGREEMENT</u>

THIS INDEPENDENT CONSULTANT AGREEMENT (hereinafter referred to as the "Agreement"), is made as of November 4, 2016 by and between TigerSwan, LLC, (hereinafter referred to as the "Company"), a limited liability company organized and existing under laws of the State of Delaware, with its principal office located at 3467 Apex Peakway, Apex, NC 27502 and Cedar Fork Partners LLC, (hereinafter may be referred to as "Independent Consultant/Contractor"). Company and Independent Consultant/Contractor shall be referred to for purposes of this Agreement collectively as ("parties") and singularly as a ("party").

**WITNESSETH:**

**WHEREAS**, the Company is engaged in the delivery of global professional security services to a number of commercial and industrial companies, Government agencies, and other organizations.

**WHEREAS**, the Company desires to formalize its retention of the Consultant as set forth above in the capacity of a Independent Consultant, and the Company desires to retain the Independent Consultant in such capacity.

**WHEREAS**, the Company wishes to engage the services of the Independent Consultant/Contractor to perform specific task(s), on behalf of the Company, as set forth in this Agreement and the Independent Consultant/Contractor wishes to be engaged by the Company in order to provide such services.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements hereinafter contained, the parties hereto agree as follows:

**1. Appointment; Payment of Independent Consultant/Contractor; Independent Consultant/Contractor Billing; Independent Consultant/Contractor Reporting to Company; Independent Consultant/Contractor Insurance; Independent Consultant/Contractor Income Taxes:** The Independent Consultant/Contractor is hereby appointed to perform specified tasks ("Professional Services") on behalf of the Company that shall include, but shall not be limited to Marketing and Digital Media Support as well as perform specified and mutually agreed upon task order(s) on behalf of the Company.

Independent Consultant/Contractor shall provide billing invoices to the VP of Finance on a monthly basis and shall be paid by Company at the end of the month with the prior approval by Company of the Independent Consultant's/Contractor's submitted invoice. Any and all applicable reasonable travel expenses will be reimbursed with Company pre-approval and in accordance with the Company's internal travel policy. All Commissions shall be paid to Independent Consultant/Contractor quarterly and shall correspond to the base period of the applicable contract(s).

The management, duration, and control of the activities of the Independent Consultant/Contractor related to or associated with executing the Professional Services set

CEDARFORKS018

forth above shall be performed entirely and exclusively by the Independent Consultant/Contractor subject only to the terms of this Agreement. It is the intention of the parties hereto that the Independent Consultant/Contractor is, and will continue to be, throughout the complete term of this Agreement, an exclusive Independent Consultant/Contractor for the Company. All income paid to Independent Consultant/Contractor under this Agreement shall constitute income from self-employment, and the Company shall not be required to pay unemployment compensation or other charges, including but not limited to, employee benefits, health insurance, etc., applicable to an employer-employee relationship except as otherwise required by special law or regulation.

Independent Consultant/Contractor shall provide, as a minimum requirement for each individual task, the following items: (i) written report(s) of itemized costs incurred by Independent Consultant/Contractor during the period of performance, as well as a summary of the individual tasks accomplished on behalf of the Company.

Prior to the execution of this Agreement by Independent Consultant/Contractor, Independent Consultant/Contractor shall provide proof of Worker's Compensation Insurance coverage. If Independent Consultant/Contractor does not carry Worker's Compensation Insurance coverage, Company will provide coverage at a cost consistent with the actual payroll dollars proportioned to the service Independent Consultant/Contractor performs for Company. Company shall make an automatic deduction from the payment to Independent Consultant/Contractor upon completion of a given signed task order(s) and Independent Consultant/Contractor Agreement.

For income tax purposes, the Independent Consultant/Contractor is considered to be an Outside Independent Consultant/Contractor to the Company. As such, Independent Consultant/Contractor shall be solely responsible for any taxes due to any regulatory authority and agency on the monies paid to Independent Consultant/Contractor for all professional services performed under this Agreement. At the end of each calendar year, the Company shall file with the United States Federal Government a Form 1099, reporting all monies paid for professional services under this Agreement to Independent Consultant/Contractor and the applicable Attachment A during the calendar year that previously just ended (if applicable).

**2. Independent Consultant Compensation:** The Company shall pay the Independent Consultant/Contractor for professional services rendered in accordance with the schedule of rates and other provisions as set forth herein. Compensation shall be mutually agreed upon by the Company and Independent Consultant/Contractor during the course of discussions relative to the specific Task Assignments prior to any services being performed under this Agreement as outlined in Attachment A incorporated herein.

**3. Cancellation of Agreement and Continuation of Consulting/Contracting Services:** Company may cancel this Agreement at any time without cause. Independent Consultant/Contractor shall only cancel this Agreement by giving Company thirty (30) days written notice of such cancellation and its effective date. Company shall be obligated to compensate Independent Consultant/Contractor for all services actually rendered under this Agreement but Company shall not be obligated for any sums in excess thereof. It is understood by Independent Consultant that this Agreement is conditioned upon continuation of work by the Company under the contract specified herein and the customer to whom Company is supporting. Independent Consultant/Contractor understands and agrees that if there is a reduction in the scope of work or any additional changes are required by the customer, it may cause a reduction in direct labor rates for the Independent Consultant/Contractor. Independent Consultant/Contractor understands and agrees that at any time, the customer, at their sole discretion may terminate any existing contract with Company

that would in effect terminate this Agreement between Company and Independent Consultant/Contractor.

**4. Standards Applicable to the Work and Conduct of Consultant/Contractor:**
Independent Consultant/Contractor warrants that the services provided hereunder shall meet the highest professional standards. Furthermore, Independent Consultant/Contractor shall conduct any and all activities in a lawful and ethical manner and shall exert its best effort to enhance the good reputation and best interests of the Company and shall refrain from any conduct that will cause, or tend to cause, any injury to the Company, its business, or its reputation.

The Company will provide ongoing evaluation and feedback of the services performed by the Independent Consultant/Contractor. Any failure to perform such services to the Company's expectations, or any lack of performance that could compromise the Company's reputation for quality or responsiveness, may result in immediate termination of this Agreement at the Company's sole discretion. Company agrees to provide descriptions of its expectations relative to deadlines, suspense dates, or other specifics associated with Task Assignments within the specific tasks performed under this Agreement.

The Company may, during the term of this Agreement, terminate the Independent Consultant/Contractor (an it's employees if applicable), for cause for any of the following reasons as set forth in items 1-9 below. Independent Consultant/Contractor hereby agrees that in the event he/she is so terminated for cause, remuneration shall cease as of the date and hour of such termination. Additionally, Independent Consultant/Contractor further agrees that it shall also be responsible for payment of his/her transportation costs and that of (its employees (if applicable)), or any miscellaneous costs incurred on behalf of the Independent Consultant/Contractor as described herein, including but not limited to:

1. Failure to meet the contract requirements or violation of any term of this Agreement;
2. The Client requests the removal of the Independent Consultant/Contractor for any reason;
3. Failure to perform his/her duties in a satisfactory manner subject to the Company's sole discretion;
4. Violation of any law, regulation, procedure(s) or directive(s) of the Company, or the Company's Customer, or any country where Independent Consultant/Contractor is a citizen or resident;
5. Acts of insubordination to the Company;
6. Violation of any health, safety or security regulation, directive or procedure, or conduct which endangers the safety or well-being of others;
7. Abuse of any facility privilege extended to the Independent Consultant/Contractor;
8. Failure to abide by any of the Company, Customer(s), or Host Country's laws, regulations or directives relating to drug use, importation, or supply to others, solicitation of prostitution, alcohol abuse and/or use under working hours, or sale or purchase of goods in the black market;
9. Independent Consultant /Contractor obtains a failed drug screening lab testing result; and
10. Independent Consultant's/Contractor's failure to disclose background information involving any criminal conviction(s) and any medical condition that impedes or prohibits Independent Consultant/Contractor from regularly performing his/her job duties.

**Voluntary Termination by Independent Consultant/Contractor and Transportation to Home of Record**

Independent Consultant/Contractor shall be entitled to return transportation to his Home of Record (hereinafter "HOR") at the expense of the Company if the thirty (30) days notification requirement is met by Independent Consultant/Contractor.

**Transportation Expenses When Independent Consultant/Contractor is Terminated Without Cause**

In the event the Independent Consultant/Contractor is terminated without cause, Independent Consultant/Contractor shall be entitled to transportation to his HOR at the expense of the Company.

**Transportation Expenses When Independent Consultant/Contractor is Terminated With Cause**

In the event Independent Consultant/Contractor is terminated with cause, Independent Consultant/Contractor shall be solely responsible for any trip transportation expenses from any Host Country to his HOR. Independent Consultant/Contractor authorizes the Company to withhold transportation expenses from any payment that remains due to Independent Consultant/Contractor.

**Company Limitation of Liability**

If for any reason a termination under Paragraph 4 is later adjudged to have been without valid cause, the termination will be deemed a Termination Without Cause pursuant to Paragraph 4. Under these circumstances, the liability of the Company, its executives, employees, agents, clients, customers and its affiliates shall be limited to payments specified in Paragraph 4.

**5. Definition of Proprietary Information/Intellectual Property:** Proprietary Information and Intellectual property for the purposes of this Agreement shall mean all information related to the aforementioned purposes and which is identified as Proprietary Information, including, but not limited to, processes, procedures, technical information in the form of designs, concepts, requirements, specifications, software, interfaces, components, processes, or other tangible or intangible form, consisting of business, technical, financial, employment or personal information of the Company or of any customer, vendor, consultant, advisor or other third party with whom the Company has or is contemplating a business relationship or other engagement ("Third Parties"), whether or not marked or otherwise visibly identified as confidential or proprietary. Confidential Information includes, but is not limited to: data, technology, know-how, Inventions, Creative Works, discoveries, designs, processes, formulations, models, equipment, algorithms, computer programs and software, in object code and source code, and any derivative works, modifications, fixes and enhancements thereto, cost information, interfaces, technical documentation, product manuals, specifications, trade and business secrets, marketing and business plans, forecasts, projections and analyses, financial analyses and financial statements, sales, pricing and customer information, employee and other personnel information or data, customer technical requirements, requests for proposals, installation and service procedures, maintenance and support programs, contracts, legal tactics and attorney work product and information consisting of, concerning, or relating to, research and development work, current, future, planned or proposed products and pre-release devices. For the avoidance of doubt, wherever the terms "Proprietary Information", "Intellectual Property" and/or "Confidential Information" appear in this Agreement, either separately or together with one or more of the others, the term shall be construed to

collectively mean "Proprietary Information, Intellectual Property and Confidential Information".

**6. Limitations on Use or Disclosure:** For a period of five (5) years after the termination of this Agreement, Independent Consultant/Contractor and its employees shall hold Proprietary Information in strict confidence. Upon expiration of this protection period, all limitations this Agreement imposes on use and/or disclosure of Proprietary Information will cease. Independent Consultant/Contractor and its employees may use Proprietary Information and/or Intellectual Property only for the purposes set forth above during the term of this Agreement and to the benefit of the Company. Independent Consultant/Contractor and its employees shall not use any Proprietary Information and/or Intellectual Property that it receives under this Agreement for design, manufacture or any services that may be deemed competitive to the Company.

**7. Covenants of Independent Consultant/Contractor Relating to Proprietary Information:** Independent Consultant/Contractor recognizes that it is necessary for the Company to retain its exclusive use and benefit and to withhold from its competitors, competitors of its clients, and the general public a great deal of knowledge and information (hereinafter sometimes referred to as "Proprietary Information") including, but not limited to, projects for which the Company is competing, any or all details associated with the technical or management or cost strategies whereby the Company will seek to meet solicitation requirements for projects, the project and/or courseware materials, training products, various trade and business secrets, list of clients and customers of clients, billing practices, market studies and surveys, contracts, leases, and financial information, including earnings and details as to assets and liabilities. Independent Consultant/Contractor further recognizes that in the course of the performance of the assignment it may be given or may have access to or obtain, directly or indirectly, such Proprietary Information. Independent Consultant/Contractor hereby covenants and agrees with the Company that during and after the term of engagement hereunder, the Independent Consultant/Contractor and its employees shall not obtain or divulge for its own use or for the use of others, except as authorized in writing by the Company, such Proprietary Information obtained during the course of its engagement relating to the business of the Company or any of Company's clients. **Specifically, all rights to any product (projects, reports, materials, computer activities, or studies) belong exclusively to the Company and any future use or marketing of those materials is not allowed without the express written consent of either the Company or the applicable Company client.**

**8. Return of Confidential Information, Proprietary Information and Intellectual Property:** At any time upon written request of the disclosing party, the receiving party shall promptly return or destroy, as directed by the parties, all Confidential Information, Proprietary Information or Intellectual Property received pursuant to this Agreement, including all copies thereof in possession of the receiving party or any of its Representatives. Upon the request of the disclosing party, the receiving party shall furnish a signed affidavit providing assurances as to the return or destruction of such Confidential Information. Information which is held in electronic form shall be deemed destroyed when deleted from local hard drives so long as no attempt is made to recover such information from back-up tapes, servers, or other sources. Furthermore, the receiving party agrees to promptly return any and all equipment that may have been provided by the disclosing party pursuant to this Agreement.

**9. Injunction and Other Remedies:** Each party acknowledges that if the receiving party breaches its nondisclosure obligations under this Agreement, the disclosing party will not have an adequate remedy at law. Therefore, the disclosing party shall be entitled to seek an immediate injunction against an alleged breach or anticipated breach of this Agreement from any court of competent jurisdiction. The right to seek and obtain injunctive relief shall not

limit the disclosing party's right to pursue other remedies. All remedies available to either party for breach of this Agreement by the other party are and shall be deemed cumulative and may be exercised separately or concurrently. The exercise of a remedy shall not be an election of that remedy to the exclusion of other remedies available at law or in equity.

**10. Competitive Activity:** During the term of this Agreement, neither party shall, directly or indirectly: (i) employ, solicit for employment, or recommend for employment any person currently employed by the other (or any Affiliate); and/or (ii) use the Confidential Information of the disclosing party to engage in any business activity that is competitive with the disclosing party (or any Affiliate).

**11**. **Dispute Resolution:** In the event any dispute or controversy arising out of or relating to this Agreement, the parties agree to exercise their best efforts to resolve the dispute as soon as possible. The parties shall, without delay, continue to perform their respective obligations under this Agreement that are not affected by the dispute.

> **a. Mediation:** In the event that the parties cannot by exercise of their best efforts resolve the dispute, they shall submit the dispute to Mediation. The parties shall, without delay, continue to perform their respective obligations under this Agreement that are not affected by the dispute. The invoking party shall give to the other party written notice of its decision to do so, including a description of the issues subject to the dispute and a proposed resolution thereof. Designated representatives of both parties shall attempt to resolve the dispute within sixty (60) days after such notice. If those designated representatives cannot resolve the dispute, the parties shall meet at a mutually agreeable location and describe the dispute and their respective proposals for resolution to responsible executives of the disputing parties, who shall act in good faith to resolve the dispute. If the dispute is not resolved within one hundred-twenty (120) days after such meeting, the dispute shall be submitted to binding arbitration in accordance with the Arbitration provision of this Agreement.

> **b. Arbitration:** Any controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association. The parties shall endeavor to select a mutually acceptable arbitrator knowledgeable about issues relating to the subject matter of this Agreement. In the event the parties are unable to agree to such a selection, each party will select an arbitrator and the arbitrators in turn shall select a third arbitrator. The arbitration shall take place at a location that is reasonably centrally located between the parties, or otherwise mutually agreed upon by the parties.

All documents, materials, and information in the possession of each party that are in any way relevant to the claim(s) or dispute(s) shall be made available to the other party for review and copying no later than sixty (60) days after the notice of arbitration is served.

The arbitrator(s) shall not have the authority, power, or right to alter, change, amend, modify, add, or subtract from any provision of this Agreement or to award punitive damages. The arbitrator shall have the power to issue mandatory orders and restraining orders in connection with the arbitration. The award rendered by the arbitrator shall be final and binding on the

parties and judgment may be entered thereon in any court having jurisdiction. The agreement to arbitration shall be specifically enforceable under prevailing arbitration law. During the continuance of any arbitration proceeding, the parties shall continue to perform their respective obligations under this Agreement.

Nothing contained in sections 11(a) and/or 11(b) shall delay or limit a party's right to immediately seek injunctive relief in the event of an actual or anticipated breach of the other party's duty to protect Confidential Information.

**12. Attorney's Fees and Costs - Prevailing Party:** In the event of any litigation arising from breach of this Agreement, or the services provided under this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs incurred including staff time, court costs, attorney's fees, and all other related expenses incurred in such litigation at both the trial and appellate levels incurred in enforcing this Agreement.

**13. Non-Circumvention:** The parties agree that a disclosing party's Confidential Information contains valuable confidential information and agree that it shall not seek to modify the information, reverse engineer the information, decompile the information, create other works from the information, or disassemble any products from the Confidential Information disclosed unless otherwise permitted in writing by the disclosing party.

**14**. **Non-Solicitation:** For a period of two (2) years following termination of this Agreement (regardless of whether such termination is voluntary or involuntary or at the insistence of the parties; and further regardless of whether such termination is with or without cause), the parties further covenant and agree that they will not directly or indirectly, acting alone or with others, solicit, call upon, sell, provide or make services available to, any business or person who (i) has been introduced by the other party during the execution of the provision of services under this Agreement, and/or (ii) is a Client of the other party, for the purposes of providing any product or service competitive  with the products or services offered by the parties related to this Agreement or naturally progressing from performance of this Agreement, or for the purposes of encouraging any business or person to not conduct business or to cease existing business relationships with either party.  In no event does this Agreement limit or restrict the rights of the parties from quoting, offering to sell or selling to others, any items or services not uniquely identified with this Agreement, which it may regularly offer for sale and which may or may not be included in the work contemplated by this Agreement. Independent Consultant may continue to provide its services to its current client(s) provided that it does not interfere or take away from furthering Company's current and future business.

**15. Non-Assignment:** Company is relying on the services provided by Independent Consultant/Contractor. As such, neither this Agreement, nor the obligations and/or duties contained herein may be assigned by Independent Consultant/Contractor without the prior express written consent of Company.

**16. Governing Law; Entire Agreement; No Modification:** This Agreement shall be interpreted in accordance with the laws of the State of North Carolina and shall constitute the entire agreement between the parties hereto thereby superseding all prior written or oral agreements. No modification of the terms of this Agreement shall bind the Company unless executed in writing by an officer of the Company.

**17. <u>Acknowledgment of Independent Consultant/Contractor Status</u>:** Independent Consultant/Contractor is an independent consultant/contractor for all purposes, including federal and state statutes, and that Independent Consultant/Contractor shall not be deemed or construed as being an employee of Company. By executing this Agreement, Independent Consultant/Contractor expressly acknowledges that he/she is not entitled to any of the usual

and customary benefits, terms, or conditions of employment as otherwise enjoyed as employees. This Agreement does no obligate either party to enter into a teaming agreement, joint venture, partnership, or other business relationship with the other party.

**18. Precedence over Conflicting Legends:** The U.S. Government sometimes requires legends or markings on information, such as classification markings or legends concerning export control under ITAR or EAR. This Agreement does not change those requirements. The terms of this Agreement do, however, take precedence over other specific legends or statements that the originating party marks on Proprietary Information.

**19. Additional Requirements for Classified Information:** If required, the parties will handle, disclose, mark, and use classified information in accordance with the National Industrial Security Program Operating Manual (NISPOM) and any other applicable security laws or regulations. If the exchange of classified information will be required, a POC will be assigned and provided to both parties.

**20. Recitals:** The statements in the "WHEREAS" clauses above are true and correct and hereby incorporated into this Agreement.

**21. Export Control:** The parties will comply with all U.S. export control laws and regulations. The information that the parties may wish to disclose pursuant to this Agreement may be subject to the provisions of the Export Administration Act of 1979 and the Export Administration Regulations promulgated there under, the Arms Export Control Act, and the International Traffic in Arms Regulations, and the sanctions laws administered by the Office of Foreign Assets Control. The parties acknowledge that these statutes and regulations impose restrictions on import, export, sales and marketing materials and transfer to third countries of certain categories of data, and that licenses from the U.S. Department of State and/or the U.S. Department of Commerce may be required before such data can be disclosed hereunder, and that such licenses may impose further restrictions on use and further disclosure of such data. Consultant and its employees understand and agree to comply with all applicable laws and will hold the Company harmless for any actions taken that may violate such laws. Consultant assumes the sole responsibility for keeping current on all applicable laws and maintaining the proper applicable licensing for the services being provided.

**22. Foreign Corrupt Practices Act:** The parties understand and agree that they will fully comply with the specific laws and regulations of all countries, and with all U.S. laws and regulations affecting international trade, such as anti-boycott, trade sanctions, export control and foreign corrupt practices laws.

**24. Responsibility for Employees and Agents:** Each party shall be solely responsible for any breach of this Agreement by its employees and agents, including without limitation, any improper use or disclosure by its employees and agents of the other party's Confidential Information or the disclosure to any third party of the existence of this Agreement or that discussions between the parties will or have occurred.

**25. Counterparts:** This Agreement may be executed in any number of counterparts and shall be deemed to be effective upon delivery of all of such counterparts. Each counterpart of this Agreement shall be deemed an original and all such counterparts shall be taken to be one and the same instrument, for the same effect as if all Parties hereto had signed the same signature page. Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

**26. Waiver of Breach of the Agreement:**  The failure of any party hereto to enforce any provision of this Agreement shall not be construed to be a waiver of the obligations contained in such provision or any other provision, nor shall any such failure in any way affect the validity of all or any part of this Agreement or the right of such party thereafter to enforce each and every provision hereof.  No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

**27. Limitations Imposed by Law:** All provisions of this Agreement are subject to all applicable requirements, limitations, and conditions of the federal, state and local codes, laws, ordinances, regulations and rules applicable in the state in which the event(s) are held. Further, it is understood and agreed that Consultant's/Contractor's provision of the Services hereunder are subject to and must be accomplished in accordance with all applicable federal, state, local, rules, regulations, laws, codes, ordinances, and guidelines, including without limitation all applicable federal and state Occupational Safety and Health Regulations.

**28. Force Majeure:** The parties understand and agree that neither shall be liable for any failure of or delay in the performance of this Agreement for the period that such failure or delay is due to causes beyond its reasonable control, including but not limited to acts of God, war, strikes or labor disputes, embargoes, government orders or any other force majeure event.

**29. Acknowledgment by the Parties:** The parties have carefully reviewed the nature and extent of the restrictions placed upon them as well as the rights and remedies conferred upon them under this Agreement, and hereby acknowledge and agree that the same are reasonable in time, scope and territory, are designed to eliminate competition which would be unfair to either party, are fully required to protect the legitimate interests of Company, Consultant and Company's Clients, and do not confer a benefit upon either party disproportionate to the detriment to the other party.

**30. Representations:** Each party represents and warrants to the other party that it is authorized to enter into this Agreement and to do all things necessary for the performance of the terms contemplated herein.

**31. Titles and Headings:** Titles and heading used in this Agreement are for convenience only and shall not be used to limit, expand or interpret the language used thereunder.

**31. Working Conditions and Liability:** Independent Consultant/Contractor understands and agrees that there may be imminently dangerous situations in high threat areas. Independent Consultant/Contractor further understands and agrees that on behalf of himself/herself and any and all heirs to defend, release, indemnify and hold Company, its subsidiaries, officers, affiliates, agents and employees harmless from and against any and all claims, suits, costs, damages, expenses and liabilities, including but not limited to attorneys' fees and court costs, with respect to any and all bodily injury (including death), personal and or psychological injury.

**32. Drug Testing/ Screening and Criminal Background Check:** Independent Consultant/Contractor acknowledges, understands and agrees to the Company drug screening subject to the North Carolina Controlled Substance Examination regulation Act and criminal background check prior to Independent Consultant/Contractor performing services pursuant to this Independent Consultant/Contractor Agreement. Independent Consultant/Contractor understands that the purpose of this clause is to provide a safe working environment for Company's clients and Company's employees. Accordingly, Independent Consultant/Contractor understands and consents to undergo random drug testing without cause. Independent Consultant/Contractor also understands that a positive drug test and/or criminal background check will immediately exclude him/her from performing services under this Independent Consulting/Contractor Agreement and understands that a positive drug test

shall also be cause for Independent Consultant's/Contractor's dismissal from the performance of his/her duties under this Independent Consultant/Contractor Agreement.

**33. Disclosure of Medical Incapacity:** Independent Consultant/Contractor hereby warrants that he/she does not currently suffer from any medical incapacity, mental health problem(s) or conditions and/or any other physician diagnosed medical condition(s) that would impair and prohibit the Independent Consultant/Contractor from performing his/her job duties under this Independent Consultant/Contractor Agreement.

**34. Social Media:** <u>Employees and Independent Consultants/Contractors are not authorized to speak on behalf of the Company to any news outlet source without Company's prior written permission. In addition, the Independent Consultant/Contractor is not authorized to post confidential or proprietary information about the Company, its clients, or its past and present contracts on any social media outlet or forum and agree that they shall at all times</u> protect the Company's trade secrets and private, confidential and proprietary information as well as those of the clients.

**35. Independent Consultant/Contractor Indemnification:**

    a.    Independent Consultant/Contractor agrees to defend Company from and against any claims and to indemnify and hold Company harmless from judgments arising out of any and all claims, demands, actions, suits or prosecutions that may be made or instituted by any Person who is not a Party to this Agreement may that arise out of or relate to this Agreement or any Services to be provided hereunder, including any injury or death to any Person, or any property loss, damage or other Loss, but only to the extent caused by Independent Consultant's/Contractor's negligence, gross negligence or willful misconduct ("<u>Third Party Claims</u>").

    a.    Upon receipt by Company of notice of the assertion of a Third Party Claim, Company will promptly notify Independent Consultant/Contractor in writing of any losses which Company has determined have given or could give rise to a claim. A Notice of Claim will specify, in reasonable detail, the material facts known to Company regarding the underlying claim. Company's failure to provide (or timely provide) a Notice of Claim will not affect Company's rights to indemnification hereunder except to the extent such failure adversely or materially affects Independent Consultant's/Contractor's position or ability to defend such claim.

    b.    Independent Consultant/Contractor shall be entitled to control the defense and resolution of any Third Party Claims, provided, however, that Independent Consultant/Contractor may not settle or compromise any claim in a manner which would impair the rights of Company without the prior written consent of Company, which shall not unreasonably be withheld. Company shall be consulted on the defense of any such matter and may, at Company's expense, be represented by its own counsel.

Independent Consultant/Contractor understands and accepts the fact that he will be exposed to dangers due to the nature of the work to be performed. Independent Consultant/Contractor agrees that neither the Company nor its subsidiaries, clients, officers, affiliates, agents and employees shall be held liable in the event of death, injury, or disability to the Independent Consultant/Contractor. The Company will make available insurance benefits as described in Attachment A and Consultant agrees to accept these insurance benefits as full satisfaction of any claim for death, injury or disability the Independent Consultant's/Contractor's representatives and/or heirs may have against the Company, its subsidiaries, clients, officers, affiliates, agents and employees. Independent Consultant/Contractor waives any cause of action he may have against the Company, its subsidiaries, officers, clients, affiliates, agents

employees and subcontractors. In the event of injury or death to the Independent Consultant/Contractor, the Company's Workers Compensation insurance shall be primary.

This Agreement sets forth the parties' mutual rights and obligations with respect to proprietary information, prohibited competition, and intellectual property. It is intended to be the final, complete, and exclusive statement of the terms of the parties' agreements regarding these subjects. This Agreement supersedes all other prior and contemporaneous agreements and statements on these subjects, and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements. To the extent that the practices, policies, or procedures of the parties, now or in the future, are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control unless changed in writing by the parties.

The parties acknowledge that they have had the opportunity to consult legal counsel in regard to this Agreement, that each party has read and understands this Agreement, that the parties are fully aware of its legal effect, and that the parties has entered into it freely and voluntarily and based on the parties own judgment and not on any representations or promises other that those contained in this Agreement.


      **IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the date first written below by their respective duly authorized representatives.

**TigerSwan, LLC**                          **Independent Consultant/Contractor**


By: _____         By: _____

                                   in the State of _____
                                   and Country of _____
                                   Tax ID Number or Social Security
                                   Number_____

Attachments:
Attachment A:  Assignment/Task Order
Attachment B:  W9
Attachment C:  Direct Deposit Authorization
Attachment D:  Travelers Profile

CEDARFORKS028



**TigerSwan**
Solutions to Uncertainty®

| | |
|---|---|
| ATTACHMENT A: | Task Order/Assignment Sheet |
| Date: | November 4, 2016 |

Independent Consultant/Contractor: Cedar Fork Partners LLC, Project Lead is Kurt Merriweather

| | |
|---|---|
| Tasks Description: | Marketing and Digital Media Support |
| Contract Name: | DAPL Information Operations |
| Reports To: | Robert Rice, Program Manager |
| Period of Performance: | November 4, 2016 – November 30, 2016<br>Contractor may cancel task order upon providing thirty days written notice.<br>TigerSwan may cancel at any time by providing written notice. |
| Reporting Requirements: | Reporting as directed by the TigerSwan Program Manager |
| Compensation: | $15,000.00 service fee<br>50% upfront payment with the final payment due upon project completion<br>TigerSwan will pay for airfare, lodging and transportation if required.  This will be coordinated through TigerSwan.<br>***ALL expenses MUST be approved in advance by the Program Manager.***<br>Expenses will be submitted at the conclusion of the mission<br><br>Worker Compensation Costs will be deducted from the IC's compensation at a rate of .26 per $100.00 of compensation |
| Invoice Instructions: | Submit your invoice(s) for the Services provided to the Program Manager.<br>Attach all receipts for any expenses incurred while performing such Services or payment will not be processed.<br><br>**INVOICES WILL BE PROCESSED AT START OF PROJECT AND AT PROJECT COMPLETION** |
| Signatures: | Please sign and return this Attachment A to TigerSwan to indicate your acceptance of this Task Order/ Assignment. |

_____
Independent Consultant's Signature          Date Signed

_____
 Program Manager                                      Date Signed

_____
VP of Finance                                             Date Signed