# EXHIBIT 32

Page 1

IN THE UNITED STATES DISTRICT COURT
for the MIDDLE DISTRICT of PENNSYLVANIA

ELLEN GERHART, ELISE GERHART,  :
ALEX LOTORTO and ELIZABETH     :
GLUNT                          :
      Plaintiffs               : NO. 17-1726-YK
                               :
      -VS-                     :
                               :
ENERGY TRANSFER PARTNERS,      :
L.P., et al.
      Defendants

\* \* \* \* \*
THURSDAY, SEPTEMBER 2, 2021
\* \* \* \* \*

Zoom Video Conferencing virtual remote deposition of KURT MERRIWEATHER, taken pursuant to notice, held in Durham, North Carolina on Thursday, September 2, 2021, beginning at 10:05 a.m., before Susan L. Singlar, Professional Court Reporter and Notary Public of the Commonwealth of Pennsylvania, there being present.

Any reproduction of this transcript is prohibited without authorization by the certifying agency.

KAPLAN, LEAMAN AND WOLFE
Registered Professional Reporters
230 South Broad Street, Suite 1303
Philadelphia, PA 19102
(215) 922-7112

Page 2

APPEARANCES:

WILLIAMS CEDAR LLC
BY:  CHRISTOPHER MARKOS, ESQUIRE
    1 South Broad Street, Suite 1510
    Philadelphia, Pennsylvania 19107
    (215) 557-0099
    Cmarkos@williamscedar.com

    Representing the Plaintiffs

LENGERT & RAIDERS LLC
BY:  RICHARD A. RAIDERS, ESQUIRE
    210 West Penn Avenue
    Robesonia, Pennsylvania 19551
    (484) 638-6538
    Rich@raiderslaw.com
    Representing the Plaintiffs

McNEES WALLACE & NURICK
BY:  KANDICE HULL, ESQUIRE
    100 Pine Street
    Harrisburg, Pennsylvania 17101
    (717) 237-5452
    Khull@mcneeslaw.com

    Representing s Energy Transfer
    Partners, L.P., Sunoco Pipeline, L.P.,
    Sunoco Logistics, L.P.,

Page 3

APPEARANCES (continued):

PA GENERAL ATTORNEY'S OFFICE
BY:  JESSICA DAVIS, ESQUIRE
    Strawberry Square, 15th Floor
    Civil Division
    Harrisburg, PA 17120
    (717) 783-6270
    Jdavis@attrorneygeneral.gov
    Representing Trooper Dunsmore and Trooper
    Ehgartner

LAVERY LAW
BY:  ELIZABETH KRAMER, ESQUIRE
    225 Market Street
    Harrisburg, Pennsylvania 17108
    (717) 233-6633
    Ekramer@laverylaw.com
    Representing TigerSwan, LLC

SIANA, BELLWOAR & MCANDREW, LLP
BY:  CHRISTOPHER P. GERBER, ESQUIRE
    941 Pottstown Pike Suite 200
    Chester Springs, Pennsylvania 19425
    (610) 321-5500
    Cpgerber@sianalaw.com

    Representing Nick Johnson

Page 4

APPEARANCES (continued):

ZARWIN BAUM
BY:  ANTHONY R. TARDOWSKI, ESQUIRE
    One Commerce Square
    2005 Market Street, 16th Floor
    Philadelphia, PA 19103-3638
    (267) 765-9621
    Artardowskio@zarwin.com
    Representing Kurt Merriweather


ALSO PRESENT:

    NICK JOHNSON

Page 5

```
 1              I N D E X
 2   WITNESS                              PAGE
 3   KURT MERRIWEATHER
 4       (Witness sworn.)                   5
 5
 6       EXAMINATION by MR. MARKOS          7
 7       EXAMINATION by MS. KRAMER         39
 8       EXAMINATION by MS. HULL           39
 9
10            E X H I B I T S
11
12   NUMBER      DESCRIPTION              PAGE
13   Cedar Ford 1-29  Collective documents  27
14              * * * * *
15
16       (Whereupon, the above-captioned exhibit
17   was not attached to the transcript per
     counsel.)
18              * * * * *
19   REQUESTS FOR PRODUCTION:
20
21            (NONE)
22
23
24
```

Page 6

```
 1        THE COURT REPORTER:  Before I swear in
 2   the witness, I will ask counsel to stipulate
 3   on the record that due to the current national
 4   emergency pandemic, the court reporter may
 5   swear in the deponent, even though she is not
 6   in the physical presence of the deponent, and
 7   that there is no objection to that at this
 8   time, nor will there be an objection to it at
 9   a future date.
10        MR. MARKOS:  I can.
11        MS. KRAMER:  Yes, I can.
12        MR. GERBER:  Yes.
13        MR. TARDOWSKI:  Agreed.
14        MS. HULL:  Yes.  That's fine.
15        MS. DAVIS:  That's fine.
16        MR. RAIDERS:  I'm co-counsel.  I accept
17   Mr. Markos' stipulation, yes.
18        THE COURT REPORTER:  And, counsel, can
19   you represent that to the best of your
20   knowledge and belief, the witness appearing
21   today via Zoom is, indeed, Kurt Merriweather?
22        MR. TARDOWSKI:  I can.
23        THE COURT REPORTER:  Usual
24   stipulations?
```

Page 7

```
 1        MR. TARDOWSKI:  That's fine with me.
 2        MR. MARKOS:  Yes.
 3        MS. DAVIS:  Yes.
 4        MS. HULL:  Yes.
 5        MS. KRAMER:  Yes.
 6        MR. GERBER:  Yes.
 7              * * * * *
 8        (It is agreed by and between counsel
 9   that reading, signing, sealing, filing, and
10   certification are hereby waived and all
11   objections, except as to the form of the
12   questions, are reserved until the time of
13   trial.)
14              * * * * *
15        KURT MERRIWEATHER, having been duly
16   sworn, was examined and testified as follows:
17              * * * * *
18             EXAMINATION
19              * * * * *
20   BY MR. MARKOS:
21       Q.   Mr. Merriweather, thank you very much
22   for being here today.  I'm sure you are very busy and
23   I'm sure you have other things to do.  I'm going to
24   do my best to keep this brief.
```

Page 8

```
 1            You are here today as a non-party
 2   witness to give a deposition in this case.  A
 3   deposition, maybe you know, I'd like to go through
 4   these guidelines anyway, is like a conversation but
 5   different.  I'm going to ask you questions and
 6   hopefully you will have answers for them.  However,
 7   it's not a memory test.  So your answer I don't know
 8   or you don't recall whatever you say is a perfectly
 9   acceptable answer today.
10            Because of the format, and especially
11   because of this digital format, it's important that
12   you let me finish asking a question, even if you're
13   anticipating what I'm going to say next, and I will
14   extend the same courtesy to you as you answer.
15            It's also important because the only
16   record of this deposition will be a written
17   transcript that while it's natural to nod your head
18   like you were just doing, you must verbalize your
19   answer or, otherwise, there's no record of your
20   answer.
21            If you need to take a break, that's
22   perfectly fine, unless I have just asked you a
23   question, we'll finish your answer, and then you can
24   take a break.  Like I said before, I don't think
```

Page 9

1  we're going to be very long and hopefully you won't
2  need to.
3       Do those instructions make sense to
4  you?
5       Do you have any questions about them?
6   A.  Yes.  That makes sense.  No.  I don't
7  have any questions.
8   Q.  Just so you're aware, I represent the
9  plaintiff in this case.  There are a number
10 defendants in this case.  Their attorneys are here.
11 After I finish asking you questions, they may have
12 questions to ask you, as well.  I have no control
13 over that.
14      Have you ever given a deposition
15 before, Mr. Merriweather?
16  A.  No.
17  Q.  Ever been a part of a lawsuit before, a
18 plaintiff or a defendant?
19  A.  No.
20  Q.  Has Cedar Fork Partners ever been party
21 to a lawsuit before?
22  A.  No.
23  Q.  Are you the only member of Cedar Fork
24 Partners?

Page 10

1       Is that the correct term?
2   A.  Yes.  It's a single member LLC.
3   Q.  How do you know Nick Johnson?
4   A.  I met Nick Johnson when I was doing
5  work at another company and we had a conversation
6  about some of the work that he was doing.  And this
7  was in -- I think in 2016, early 2016.
8   Q.  Was Cedar Fork Partners in existence at
9  that time?
10  A.  No.
11  Q.  When did Cedar Fork Partners form?
12  A.  In July of 2016.
13  Q.  And it's still a going entity today?
14  A.  Yes.
15  Q.  Do you know what that company was when
16 you met Nick Johnson?
17  A.  What company are you referring to?
18  Q.  You said you were doing -- I think you
19 said --
20  A.  Right.  I was previously employed by
21 ReverbNation, and that was the company that I was
22 working for when I met Nick Johnson.
23  Q.  Was he working for ReverbNation at the
24 time you met him?

Page 11

1   A.  No.  He was -- he had been working with
2  a different company at that point and he -- we
3  talked.  It was an introductory meeting around some
4  business development opportunities.
5   Q.  Did those opportunities pertain to any
6  pipeline infrastructure development?
7   A.  No.
8   Q.  Did it pertain to anything related to
9  TigerSwan?
10  A.  No.
11  Q.  Did it pertain to anything related to
12 Energy Transfer Partners --
13  A.  No.
14  Q.  -- or any entity under the Sunoco
15 umbrella?
16  A.  No.
17  Q.  I don't know who made the first
18 contact.
19      How did you come into contact with
20 TigerSwan?
21  A.  I met the project manager for
22 TigerSwan, Robert Rice, doing some other activities
23 and he told me about a need that he had at TigerSwan.
24 And so that's how I got engaged with TigerSwan is

Page 12

1  through Robert Rice.
2   Q.  When did you meet Robert Rice?
3   A.  I met Robert Rice earlier in 2016, so I
4  think March of 2016.
5   Q.  Earlier meaning before you met Nick
6  Johnson?
7   A.  It was after I met Nick Johnson.
8   Q.  Those two meetings with Robert Rice and
9  Nick Johnson happened independent of each other?
10  A.  Correct.
11  Q.  How long after you met Robert Rice in
12 earlier 2016 did you enter into a contract with
13 TigerSwan?
14  A.  Roughly -- so it was spring of 2016.
15 The TigerSwan contract started in November of 2016.
16  Q.  Can you tell me between those two times
17 what conversations, if any, you had with Robert Rice?
18  A.  The conversations I had with Robert
19 Rice were related to other ventures we were working
20 on.  We were doing other things that were not related
21 to TigerSwan at that point.
22  Q.  Were you in contact with any other
23 person representing TigerSwan before November 2016?
24  A.  No.

Page 13

1  Q. I don't know if you know, this case is
2  maybe limited in this sense.  It has to do with a
3  family in south central Pennsylvania.  It doesn't
4  have to do with anybody in Louisiana or South Dakota
5  or Iowa.
6      But when you say "other things," are
7  you limiting your answer to outside of work in
8  Pennsylvania or outside of things having to do with
9  pipelines or can you narrow your answer in that way
10 for me?
11 A. The conversations we were having were
12 about a venture related to virtual reality that had
13 nothing to do with anything connected with the thing
14 that's relevant to what we're talking about today.
15 So it was a virtual reality startup.  That's what we
16 were talking about in March and in November.
17 Q. I want to ask you about that but I'm
18 not going to.
19     Between March and November of 2016,
20 besides when you met Nick Johnson, can you tell me,
21 did you meet with him subsequently?
22     Does that make sense?
23 A. Did I meet with him subsequently?
24 Q. You met him?

Page 14

1  A. Yes.
2  Q. So between that first meeting in
3  November of 2016, did you have subsequent meetings
4  with him?
5  A. No.
6  Q. And you didn't have any second meeting
7  with Nick Johnson between when you first met him and
8  when you entered into a contract with TigerSwan?
9  A. Well, actually, now that you -- I do
10 recall one conversation we were having about
11 opportunities to work together.  At that point I had
12 started Cedar Fork Partners and we were thinking
13 about other social media opportunities.  So I do
14 remember conversations, now that you mention that, in
15 between.
16 Q. I guess it might be helpful to know.
17     Can you tell me what your business is,
18 Cedar Fork Partners?
19 A. Cedar Fork Partners is a consulting
20 business focusing on helping organizations with
21 digital media and digital marketing and social media
22 communications.
23 Q. Does that mean you're helping them
24 reach wider audiences?

Page 15

1  A. Yes.
2  Q. Does it also include sort of control of
3  the message, like, a public relations kind of angle?
4  A. No.
5  Q. Was there a point between when you
6  first met Robert Rice, and I'll limit it to the end
7  of 2017, that you met with anybody else from
8  TigerSwan?
9  A. Yes.
10 Q. Do you remember who those people are?
11 A. I remember meeting with Sean Sweeney
12 and I met the CEO but didn't have a conversation with
13 him.
14 Q. Do you remember his name at the time
15 because I think it's changed?
16 A. Jim was his first name.  I can't
17 remember his last name.
18 Q. Jim, you said?
19 A. Yes.
20 Q. I want to talk about -- we've been
21 saying the contract you had with TigerSwan.
22     Was it just one contract?
23 A. Yes.  It was tied to work on the Dakota
24 Access Pipeline.

Page 16

1  Q. How long did the contract last for?
2  A. From November 2016 until August 2017.
3  Q. Was it a month-to-month contract?
4  A. Yes.
5  Q. Was there a reason it ended in August
6  of '17?
7  A. I don't know.  They decided not to
8  continue.  I don't know why.
9  Q. When you entered into the contract,
10 what was your understanding of the purpose of the
11 work that TigerSwan was seeking from you?
12 A. To do social media monitoring, as well
13 as distribution of messages related to pipeline
14 activities.
15 Q. Can you define what you mean when you
16 say social media monitoring?
17 A. Monitoring of activity on Twitter and
18 Facebook, in particular.
19 Q. For any particular purpose?
20 A. For communications that were related to
21 the pipeline in the area where TigerSwan was doing
22 security.
23 Q. I mean, was it specifically to look at
24 communications relating to opposition to the pipeline

Page 17

1  development?
2  A. There were -- there were -- from what I
3  recall, the goal was to ensure that the full picture
4  of what was happening was being represented and that
5  was -- that was the goal.
6  Q. At some point in time you hired Nick
7  Johnson, you, meaning Cedar Fork Partners, hired Nick
8  Johnson to do some work related to this contract that
9  Cedar Fork Partners had with TigerSwan; is that
10 right?
11 A. That's correct.
12 Q. Did you hire other people to do similar
13 work for this contract?
14 A. No.
15 Q. Did you delegate to Nick Johnson then
16 all of the work that was being done for TigerSwan?
17 A. Yes.
18 Q. You, yourself, or Cedar Fork Partners,
19 rather, is it fair to say was not performing the work
20 on behalf of TigerSwan?
21      MR. TARDOWSKI: Object to the form.
22 BY MR. MARKOS:
23 Q. If you don't understand the question, I
24 can try to rephrase it.

Page 18

1  A. Could you repeat that? I'm sorry.
2  Q. Yeah. I'm just trying to clarify your
3  previous answer.
4      Nick Johnson was the only person you
5  had hired to work for this contract, right? You're
6  nodding your head.
7  A. Yes. Yes. That's correct.
8  Q. Were you or Kurt Merriweather or Cedar
9  Fork entity also doing the work that TigerSwan was
10 seeking?
11 A. Could you define what doing the work
12 is?
13 Q. Actually monitoring social media, for
14 example.
15 A. I was not monitoring social media.
16 That's what Nick was doing.
17 Q. You said there was some content
18 creation, I think?
19 A. Yes. That's correct.
20 Q. Messaging?
21     Were you creating the messaging?
22 A. No.
23 Q. Did you direct the content of the
24 messaging that was done in furtherance of this

Page 19

1  contract?
2  A. No.
3  Q. When you entered into this contract,
4  when did you then bring Nick Johnson on board?
5  A. Within two weeks of the beginning of
6  the contract.
7  Q. What was Nick Johnson's relationship
8  vis-a-vis Cedar Fork Partners?
9  A. He was an independent contractor.
10 Q. To the extent that you know, did Nick
11 Johnson have a working -- similar relationship with
12 TigerSwan?
13     Is he also an independent contractor
14 for TigerSwan?
15 A. I don't know.
16 Q. When you brought Nick Johnson on board,
17 what did you tell him about the project?
18 A. I told him about the goal of the
19 project, which was to do social media monitoring, to
20 use social media channels to communicate messages in
21 and around the activities that were focused on the
22 pipeline in Dakota, or the South Dakota pipeline.
23 Q. Did you make known to Nick Johnson that
24 Cedar Fork Partners had been hired by TigerSwan

Page 20

1  specifically?
2  A. Yes.
3  Q. Did you have an understanding of the
4  entities responsible for construction of the Dakota
5  Access Pipeline?
6  A. No.
7  Q. Besides working for TigerSwan, did
8  TigerSwan explain to you their interest or
9  involvement in the Dakota Access Pipeline?
10 A. They explained that they were
11 responsible for doing security.
12 Q. Did they say who they were doing
13 security for?
14 A. No.
15 Q. At any point in time that you were
16 under contract with TigerSwan, was it made -- were
17 you made aware of any involvement with Energy
18 Transfer Partners, if that makes sense?
19 A. I wasn't made aware of the relationship
20 until there were things in the media. So I didn't
21 know prior to things that were portrayed in the
22 media.
23 Q. What you're referring to when you saw
24 things in the media, did that happen after your

Page 21

1  contract had ended?
2     A.  No. So there were media reports that I
3  -- that became public. I want to say it was the
4  spring of 2017.
5     Q.  To your knowledge, did you ever meet
6  with anybody representing Energy Transfer Partners in
7  2016 or 2017?
8     A.  No.
9     Q.  Sunoco Pipeline?
10    A.  No.
11    Q.  Sunoco Logistics?
12    A.  No.
13    Q.  Did you ever facilitate any meeting
14 between Nick Johnson and anybody from TigerSwan?
15    A.  Yes.
16    Q.  Do you remember who he would have met
17 with at TigerSwan?
18    A.  Robert Rice and Sean Sweeney, so these
19 two individuals, in particular.
20    Q.  Did Robert Rice ever represent to you
21 that he was an employee of TigerSwan?
22    A.  No. He said he was an independent
23 contractor.
24    Q.  What sort of, if any, supervision did

Page 22

1  TigerSwan perform of the work Cedar Fork Partners was
2  doing in furtherance of this contract?
3     A.  Nick Johnson was on-site with the
4  TigerSwan team to execute the work.
5     Q.  Do you know what site that was?
6     A.  The site here in North Carolina.
7     Q.  TigerSwan's headquarters?
8     A.  Yes, in Apex.
9     Q.  Did you ever, during the duration of
10 this contract, come to the understanding about the
11 scope of working broader than just South Dakota's
12 pipeline construction?
13    A.  I don't recall it being broader than
14 that. I don't know.
15    Q.  And more specifically, did you ever
16 come to have an understanding that the work TigerSwan
17 was looking for included the Mariner 2 pipeline?
18    A.  No.
19    Q.  The Bayou Bridge Pipeline in Louisiana?
20    A.  No.
21    Q.  Did Nick Johnson report back to you
22 what he was doing when he would go to TigerSwan for
23 this work?
24    A.  In -- in -- in -- not in detail, in

Page 23

1  general -- in general terms.
2     Q.  So you said before Nick Johnson was an
3  independent contractor of Cedar Fork Partners?
4     A.  Yes.
5     Q.  And that means that you did not direct
6  the content of his work?
7     A.  That's correct.
8     Q.  Do you know one way or the other
9  whether TigerSwan was directing the sort of work that
10 he was producing?
11    A.  I don't know.
12    Q.  Or giving him instructions or feedback?
13    A.  I don't know.
14    Q.  I don't mean this as a perjorative, but
15 is it fair to say that Cedar Fork Partners kind of
16 acted as a middleman between TigerSwan and Nick
17 Johnson?
18    A.  For the day-to-day activities Nick was
19 responsible for placing -- managing the Facebook
20 accounts, which he was doing, and managing the
21 communications. So when it came to that work, yes,
22 that's -- that's correct.
23    Q.  To what extent is that not correct?
24    A.  At the very beginning of the project I

Page 24

1  had conversations around approach on social media and
2  the things that -- around strategy there. So it was
3  to start the project off. Once it got into
4  execution, then I didn't have very much at all.
5     Q.  Early on in the project when you were
6  conveying about strategy and approach, were you
7  conveying what you understood TigerSwan's wishes or
8  goals to be?
9     A.  Conveying those wishes and goals to
10 Nick?
11    Q.  Yes.
12    A.  Yes.
13    Q.  So what was conveyed to you that you
14 then conveyed to Nick?
15    A.  The goal of the project, which was to
16 make sure that a balanced picture of what was
17 happening around the pipeline was being communicated
18 within social media channels.
19    Q.  Were you aware of the social media --
20 specific social media pages that Nick Johnson was
21 working on for this project?
22    A.  Some, but not all.
23    Q.  Which ones were you aware of, if you
24 can recall them?

Page 25

1  A. So there was a Standing Rock page, but
2  I don't remember the name of it specifically. And
3  then there was IM Metazin (phonetic), which was
4  another property. Those are the two that I know
5  about.
6  Q. Did you know about black badger report
7  dot com?
8  A. No.
9  Q. PA Progress on Facebook?
10 A. Not until -- no. Nick -- there was a
11 communication where Nick said -- he told me about
12 these pages, but I didn't visit them. So I didn't
13 know about them until after the fact.
14 Q. Did TigerSwan ever convey to you that
15 they were looking for this work but specifically for
16 pipelines in Pennsylvania?
17 A. No. TigerSwan did not convey that to
18 me.
19 Q. During the term of this contract, did
20 you have any ongoing discussions with Robert Rice
21 about the work that Nick Johnson was doing?
22 A. Yes.
23 Q. Can you relay those conversations to
24 me?

Page 26

1  A. The conversations were about Nick's
2  performance and how he was delivering what their
3  expectations were, and Robert was happy with his
4  work.
5  Q. Was it anything more specific about the
6  type of content he was creating --
7  A. No.
8  Q. -- or the subject matter of the
9  content?
10 A. Other than -- other than general
11 things, no, no specifics.
12 Q. I'm going to share some documents that
13 your attorney provided to me on the screen.
14 A. Okay.
15 Q. So you can see this?
16 A. Uh-huh.
17 Q. Can you still see it? I made it
18 smaller.
19 A. Yes, sort of, but I can see it in
20 general.
21 Q. I don't have any question on this first
22 page. Actually, while do I this, let me do something
23 that's probably helpful. I can send this to
24 everybody.

Page 27

1  MR. MARKOS: Anthony, just so you know,
2  I put what you gave me into one document. I
3  put Bates stamps and there was a Social
4  Security number that I redacted.
5  MR. TARDOWSKI: That's fine, Chris.
6  MR. MARKOS: Let's take just a
7  five-minute break so people can look at this.
8        * * * * *
9  (Whereupon, a discussion was held off
10 the record.)
11       * * * * *
12 (Whereupon, testimony resumed on the
13 stenographic record.)
14       * * * * *
15 BY MR. MARKOS:
16 Q. I put up a document on the share
17 screen. They are Bates stamp Cedar Fork 001 through
18 29, and like I said before, they're documents that
19 were provided to me by your attorney. And all I did
20 was put them into one document, added the Bates
21 stamps and redacted Social Security number. Right
22 now I have Cedar Fork 2 up on the screen.
23 Are you able to see it?
24 You can see the screen, right?

Page 28

1  A. Yes.
2  Q. Invoice. Okay.
3  This is Nick Johnson's invoice to Cedar
4  Fork, right?
5  A. Yes.
6  Q. Besides what's in the item description,
7  you wouldn't know more than what's in that box, what
8  the work that he's being paid for; is that correct?
9  A. That's correct.
10 Q. You wouldn't know if this specifically
11 had to do with any particular pipeline, as opposed to
12 a different one?
13 A. Other than it being connected to the
14 project, which was the Dakota Access Pipeline
15 contract that we were working on, that's what I would
16 expect the invoice to be related to. So that's what
17 I would know.
18 Q. In the item description, the last
19 sentence says: Entire month of April 2017 for ETP,
20 slash, DAPL.
21 Do you know what ETP mean when this
22 invoice was submitted?
23 A. I think I did at this point, yes.
24 Q. What was your understanding at that

Page 29

1  time what ETP meant?
2      A.  That ETP was a client for -- was the
3  TigerSwan client.
4      Q.  There are a number of similar-appearing
5  invoices.  They all have different item descriptions
6  and amounts on them.
7      A.  Yes.
8      Q.  These are invoices that Nick Johnson
9  submitted to you for payment --
10     A.  That's correct.
11     Q.  -- for the work pursuant to the
12 TigerSwan contract?
13     A.  That's correct.
14     Q.  This is Cedar Fork 3 on the page.
15     A.  Uh-huh.  Yes.
16     Q.  And the second, third, fourth and fifth
17 all say:  Half of something.
18         Why are these half payments; do you
19 recall?
20     A.  I don't remember.
21     Q.  Do you recall what the Iowa leaker here
22 refers to?
23     A.  No.
24     Q.  Correspondent?

Page 30

1      A.  No.
2      Q.  Cat mask?
3      A.  No.
4      Q.  This is what appears to be a W9 for
5  Nick Johnson?
6      A.  Yes.
7      Q.  Do you see the date towards the bottom
8  in red?
9      A.  Yes.
10     Q.  That would be about the time that you
11 brought him on as an independent contractor for this
12 contract?
13     A.  That's correct.
14     Q.  Cedar Fork 18, do you see the second
15 line there's a date of November 4, 2016?
16     A.  Uh-huh.
17     Q.  And that's approximately --
18     A.  Yes, that's correct.
19     Q.  -- when you entered into that contract
20 with TigerSwan that we're talking about?
21     A.  Yes.  Yes.
22     Q.  Cedar Fork 20.
23         The second paragraph under number four,
24 I'll make it a little bigger, kind of asked you about

Page 31

1  that before.  The company will provide ongoing
2  evaluation and feedback of the services performed by
3  the independent consultant, slash, contractor.
4          Do you see where I am?
5      A.  Yes.
6      Q.  And you said before that Robert Rice
7  conveyed to you that they were satisfied with Nick
8  Johnson's work?
9      A.  Yes, that's right.
10     Q.  Was there any other ongoing evaluation
11 feedback conveyed to you, besides what Robert Rice
12 told you about Nick Johnson's work?
13     A.  No.
14     Q.  The next paragraph says:  The company
15 may, during the term of this agreement, terminate the
16 independent consultants, slash, contractor for cause
17 for any of the following reasons as set forth in
18 items one through nine below.  You said before you
19 didn't have any specific understanding why your
20 contract ended.
21         Was there any communication made to you
22 about the reason for the termination of the contract?
23     A.  No.
24     Q.  Did you have any discussion with Robert

Page 32

1  Rice about the termination of this contract?
2          MR. TARDOWSKI:  Object to the form.
3  BY MR. MARKOS:
4      Q.  Or the expiration of the contract?
5      A.  The way the work was executed was
6  month-to-month.  So there was an independent
7  contractor agreement, and then there were specific
8  task holders that were month-to-month task holders,
9  and so, those didn't continue.  That's what happened
10 there.
11     Q.  So this is Cedar Fork 1 and it says:
12 Task Order/Assignment Sheet.
13         Do you see at the top?
14     A.  Yes.
15     Q.  Did you have additional task orders
16 that were submitted to you by TigerSwan?
17     A.  No.
18     Q.  Just this one page?
19     A.  That's correct.
20     Q.  Cedar Fork five.
21         Do you know what Momentive is?
22     A.  Momentive was a company in New York, I
23 believe.  If I recall correctly, there was some
24 security work there with that specific company.

Page 33

1  Q. Is Momentive unrelated to TigerSwan and
2  DAPL?
3  A. It's unrelated to DAPL. I think
4  TigerSwan was doing work for them.
5  Q. This is Cedar Fork 11. The second item
6  is half of Louisiana trip expenses.
7     Did you have an understanding about any
8  work that was being done in Louisiana or related to
9  Louisiana pursuant to this TigerSwan contract?
10 A. There was no work that was being done
11 pursuant to the contract.
12 Q. Then why was he paid for it?
13 A. The one thing I do recall is that Nick
14 was doing some investigation in and around that area.
15 Q. So when you say "work," it wasn't
16 social media monitoring or digital --
17 A. No.
18 Q. -- content creation?
19 A. No.
20 Q. But if he's being paid for it pursuant
21 to this invoice, it has some connection to the
22 TigerSwan contract?
23 A. It did not have -- what I -- what I
24 remember from that is that Nick was doing some pre

Page 34

1  work in his discussions. He thought there might be
2  activity that could happen in the future. That's
3  what I recall from some dialogue that we did have
4  then.
5  Q. Did you ever communicate with Robert
6  Rice by email?
7  A. Yes.
8  Q. How about Nick Johnson?
9  A. Not about Nick Johnson.
10 Q. No. I'm sorry.
11    Did you also communicate with Nick
12 Johnson by email?
13 A. I communicated with Nick about -- yes.
14 Q. I'm talking about what we're talking
15 about today, the TigerSwan contract and work in
16 furtherance thereof.
17 A. Okay. No. We did not communicate
18 about the TigerSwan work by email. The
19 communications we had were related to payment and
20 invoices, primarily.
21 Q. In relation to this TigerSwan contract,
22 did you ever have discussion with anybody from
23 TigerSwan or with Nick Johnson about production and
24 video content?

Page 35

1  A. Could you be more specific about the
2  production piece of that?
3  Q. Yeah. I mean, I'm trying not to
4  inundate you with information. Let me ask you a
5  different question.
6     Did you have an opportunity to read the
7  Complaint in this case?
8  A. Yes.
9  Q. And there's a reference to a video that
10 was produced and posted on a Facebook site with an
11 actor named Robert Rigby, I think?
12 A. I don't know who he is but I know of
13 the video. I did not -- I did not know of the video
14 prior to its creation. I heard about it after the
15 fact.
16 Q. You answered the question I was trying
17 to ask, so thank you.
18    We haven't talked about Sean Sweeney
19 much.
20    What discussions, if any, did you have
21 with him about the work that was being done pursuant
22 to this contract?
23 A. Sean was part of the initial
24 discussions at the period beginning of the execution.

Page 36

1  And in the November and December time frame I had two
2  or three meetings where Sean was present where he was
3  talking about what the goals were.
4  Q. And then after that, not much contact?
5  A. No.
6  Q. I think we said it was around
7  August '17 that this contract expired.
8     Have you done work for or with
9  TigerSwan since that time?
10 A. No.
11 Q. Have you done any work with Nick
12 Johnson since that time?
13 A. No.
14 Q. Has he done work for you?
15 A. No.
16 Q. Is there a reason?
17 A. The contract ended and I, at that time,
18 was running Cedar Fork Partners as my primary
19 business in that I got another role in another
20 company and didn't pursue additional business as a
21 result of activities. I just couldn't manage.
22 Q. So it fair to say then it was just a
23 matter of lack of opportunity to continue to work
24 together?

9 (Pages 33 to 36)

Page 37

1    A.   Yes.
2    Q.   In the time since late 2016 and today
3  have you reviewed the actual content that Nick
4  Johnson created pursuant to this project?
5    A.   No.
6    MR. MARKOS:  Give me just a minute.
7  I'm going to go on mute.  I'm going to caucus
8  with my co-counsel and I may have a few more
9  questions, but I think I'm pretty much
10  finished.
11    THE WITNESS:  Okay.
12    * * * * *
13    (Whereupon, a discussion was held off
14  the record.)
15    * * * * *
16    (Whereupon, testimony resumed on the
17  stenographic record.)
18    * * * * *
19  BY MR. MARKOS:
20    Q.   Just a couple more questions.
21    Did you ever have any meeting or
22  contact with somebody name Derrick Borror,
23  B-O-R-R-O-R?
24    A.   No, I didn't.

Page 38

1    Q.   Anybody named Kurt Nous (phonetic)?
2    A.   No, I didn't.
3    Q.   Are you familiar with the website PA
4  Pipeline Review, or blog?
5    A.   No.
6    Q.   PAL Alliance for Energy, an entity or a
7  website with that name?
8    A.   No.
9    Q.   Are you familiar with a website called
10  Philly Anti-Capitalists?
11    A.   No.
12    MR. MARKOS:  That's all I have.  I
13  don't know if you're done yet.  I don't know
14  if anybody else has questions for you, but I'm
15  finished.  Thank you.
16    MR. GERBER:  This is Chris Gerber.  I
17  have no questions.
18    MS. DAVIS:  I am Jessica Davis.  The
19  Commonwealth has no questions.
20    MS. KRAMER:  This is Elizabeth Kramer,
21  counsel for TigerSwan.  I just have one
22  question just for clarification.
23    * * * * *
24    EXAMINATION

Page 39

1    * * * * *
2  BY MS. KRAMER:
3    Q.   You looked at a bunch of these
4  invoices.  I think they were Bates stamped Cedar Fork
5  2 through 5 and then it continues at 7 through 17.
6  There's subrogations in there that DAPL.
7    What is your understanding of what
8  those abbreviated letters stand for?
9    A.   The letters as I understand them were
10  Dakota Access Pipeline.
11    MS. KRAMER:  Thank you.  That's the
12  only question I had.
13    MS. HULL:  I just have a few questions.
14    * * * * *
15    EXAMINATION
16    * * * * *
17  BY MR. HULL:
18    Q.   Mr. Merriweather, just to confirm, you
19  never had any conversations with anyone from Energy
20  Transfer Partners?
21    A.   That's correct.
22    Q.   And you also didn't have any
23  conversation with anyone from Sunoco Pipeline;
24  correct?

Page 40

1    A.   That's correct.
2    Q.   And do you have any knowledge of
3  conversations between TigerSwan and Energy Transfer
4  Partners?
5    A.   No.  I don't have any knowledge of
6  those conversations.
7    Q.   And the contract that we're talking
8  about here, that was specific to the Dakota Access
9  Pipeline; correct?
10    A.   That's correct.
11    Q.   And at no time was Cedar Fork Partners
12  engaged to do any work related to the Mariner East 2
13  pipeline; correct?
14    A.   That's correct.
15    Q.   Prior to learning of this lawsuit, had
16  you ever heard of Ellen Gerhard?
17    A.   No.
18    MS. HULL:  That's all I have.
19    MR. TARDOWSKI:  Is that everybody?
20    THE COURT REPORTER:  I need to ask each
21  attorney on the record for any orders.
22    Christopher, do you get a full size,
23  mini or both?
24    MR. MARKOS:  Just a mini, please.

Page 41

1    MS. KRAMER: I'll get one full size and
2 PDF is fine.
3    MS. HULL: I'll take a full size and
4 mini.
5    MS. DAVIS: Full size and mini, please.
6    MR. GERBER: Full size and mini,
7 please.
8    MR. TARDOWSKI: Kurt, do you have any
9 interest in having a transcript of your
10 deposition?
11    THE WITNESS: Give me a mini.
12    MR. MARKOS: I want to say thank you to
13 everybody. We put this together quickly
14 without a lot of notice, so I appreciate
15 everyone's effort.

17    * * * * *

19    (Whereupon, the deposition was
20 concluded at 11:06 a.m. and Kurt Merriweather
21 was excused.)

23    * * * * *

Page 42

C E R T I F I C A T I O N

    I hereby certify that the proceedings and evidence noted are contained fully and accurately in the stenographic notes taken by me upon the foregoing matter on Thursday, September 2, 2021, and that this is a correct transcript of the testimony given by the witness of the same.

_____
Susan L. Singlar
Registered Professional Reporter
and Notary Public
My Commission Expires:
November 20, 2022

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

**A**
**a.m** 1:14 41:20
**abbreviated** 39:8
**able** 27:23
**above-caption...** 5:16
**accept** 6:16
**acceptable** 8:9
**Access** 15:24 20:5,9 28:14 39:10 40:8
**accounts** 23:20
**accurately** 42:4
**acted** 23:16
**activities** 11:22 16:14 19:21 23:18 36:21
**activity** 16:17 34:2
**actor** 35:11
**actual** 37:3
**added** 27:20
**additional** 32:15 36:20
**agency** 1:17
**agreed** 6:13 7:8
**agreement** 31:15 32:7
**al** 1:6
**ALEX** 1:3
**Alliance** 38:6
**amounts** 29:6
**and/or** 42:18
**angle** 15:3
**answer** 8:7,9,14 8:19,20,23 13:7,9 18:3
**answered** 35:16
**answers** 8:6
**Anthony** 4:3 27:1
**Anti-Capitalists** 38:10
**anticipating** 8:13

**anybody** 13:4 15:7 21:6,14 34:22 38:1,14
**anyway** 8:4
**Apex** 22:8
**APPEARAN...** 3:1 4:1
**appearing** 6:20
**appears** 30:4
**apply** 42:17
**appreciate** 41:14
**approach** 24:1,6
**approximately** 30:17
**April** 28:19
**area** 16:21 33:14
**Artardowskio...** 4:6
**asked** 8:22 30:24
**asking** 8:12 9:11
**attached** 5:16
**attorney** 26:13 27:19 40:21
**ATTORNEY'S** 3:3
**attorneys** 9:10
**audiences** 14:24
**August** 16:2,5 36:7
**authorization** 1:17
**Avenue** 2:9
**aware** 9:8 20:17 20:19 24:19,23

**B**
**B** 5:10
**B-O-R-R-O-R** 37:23
**back** 22:21
**badger** 25:6
**balanced** 24:16
**Bates** 27:3,17,20 39:4

**BAUM** 4:3
**Bayou** 22:19
**beginning** 1:14 19:5 23:24 35:24
**behalf** 17:20
**belief** 6:20
**believe** 32:23
**BELLWOAR** 3:15
**best** 6:19 7:24
**bigger** 30:24
**black** 25:6
**blog** 38:4
**board** 19:4,16
**Borror** 37:22
**bottom** 30:7
**box** 28:7
**break** 8:21,24 27:7
**Bridge** 22:19
**brief** 7:24
**bring** 19:4
**Broad** 1:23 2:4
**broader** 22:11 22:13
**brought** 19:16 30:11
**bunch** 39:3
**business** 11:4 14:17,20 36:19 36:20
**busy** 7:22

**C**
**C** 2:1 42:1,1
**called** 38:9
**Carolina** 1:13 22:6
**case** 8:2 9:9,10 13:1 35:7
**Cat** 30:2
**caucus** 37:7
**cause** 31:16
**Cedar** 2:3 5:13 9:20,23 10:8

10:11 14:12,18 14:19 17:7,9 17:18 18:8 19:8,24 22:1 23:3,15 27:17 27:22 28:3 29:14 30:14,22 32:11,20 33:5 36:18 39:4 40:11
**central** 13:3
**CEO** 15:12
**certification** 7:10 42:16
**certify** 42:3
**certifying** 1:17 42:19
**changed** 15:15
**channels** 19:20 24:18
**Chester** 3:16
**Chris** 27:5 38:16
**Christopher** 2:3 3:15 40:22
**Civil** 3:4
**clarification** 38:22
**clarify** 18:2
**client** 29:2,3
**Cmarkos@wil...** 2:5
**co-counsel** 6:16 37:8
**Collective** 5:13
**com** 25:7
**come** 11:19 22:10,16
**Commerce** 4:4
**Commission** 42:13
**Commonwealth** 1:15 38:19
**communicate** 19:20 34:5,11 34:17
**communicated**

24:17 34:13
**communication** 25:11 31:21
**communicatio...** 14:22 16:20,24 23:21 34:19
**company** 10:5 10:15,17,21 11:2 31:1,14 32:22,24 36:20
**Complaint** 35:7
**concluded** 41:20
**Conferencing** 1:12
**confirm** 39:18
**connected** 13:13 28:13
**connection** 33:21
**construction** 20:4 22:12
**consultant** 31:3
**consultants** 31:16
**consulting** 14:19
**contact** 11:18,19 12:22 36:4 37:22
**contained** 42:4
**content** 18:17,23 23:6 26:6,9 33:18 34:24 37:3
**continue** 16:8 32:9 36:23
**continued** 3:1 4:1
**continues** 39:5
**contract** 12:12 12:15 14:8 15:21,22 16:1 16:3,9 17:8,13 18:5 19:1,3,6 20:16 21:1 22:2,10 25:19 28:15 29:12

Case 1:17-cv-01726-YK   Document 134-32   Filed 05/04/22   Page 14 of 19

Kurt Merriweather

Page 44

30:12,19 31:20 31:22 32:1,4 33:9,11,22 34:15,21 35:22 36:7,17 40:7
**contractor** 19:9 19:13 21:23 23:3 30:11 31:3,16 32:7
**control** 9:12 15:2 42:18
**conversation** 8:4 10:5 14:10 15:12 39:23
**conversations** 12:17,18 13:11 14:14 24:1 25:23 26:1 39:19 40:3,6
**convey** 25:14,17
**conveyed** 24:13 24:14 31:7,11
**conveying** 24:6 24:7,9
**correct** 10:1 12:10 17:11 18:7,19 23:7 23:22,23 28:8 28:9 29:10,13 30:13,18 32:19 39:21,24 40:1 40:9,10,13,14 42:7
**correctly** 32:23
**Correspondent** 29:24
**counsel** 5:17 6:2 6:18 7:8 38:21
**couple** 37:20
**court** 1:1,14 6:1 6:4,18,23 40:20
**courtesy** 8:14
**Cpgerber@si...** 3:17
**created** 37:4

**creating** 18:21 26:6
**creation** 18:18 33:18 35:14
**current** 6:3

———— D ————
**D** 5:1
**Dakota** 13:4 15:23 19:22,22 20:4,9 28:14 39:10 40:8
**Dakota's** 22:11
**DAPL** 28:20 33:2,3 39:6
**date** 6:9 30:7,15
**Davis** 3:3 6:15 7:3 38:18,18 41:5
**day-to-day** 23:18
**December** 36:1
**decided** 16:7
**defendant** 9:18
**defendants** 1:7 9:10
**define** 16:15 18:11
**delegate** 17:15
**delivering** 26:2
**deponent** 6:5,6
**deposition** 1:13 8:2,3,16 9:14 41:10,19
**Derrick** 37:22
**description** 5:12 28:6,18
**descriptions** 29:5
**detail** 22:24
**development** 11:4,6 17:1
**dialogue** 34:3
**different** 8:5 11:2 28:12 29:5 35:5

**digital** 8:11 14:21,21 33:16
**direct** 18:23 23:5 42:18
**directing** 23:9
**discussion** 27:9 31:24 34:22 37:13
**discussions** 25:20 34:1 35:20,24
**distribution** 16:13
**DISTRICT** 1:1 1:1
**Division** 3:4
**document** 27:2 27:16,20
**documents** 5:13 26:12 27:18
**doing** 8:18 10:4 10:6,18 11:22 12:20 16:21 18:9,11,16 20:11,12 22:2 22:22 23:20 25:21 33:4,14 33:24
**dot** 25:7
**due** 6:3
**duly** 7:15
**Dunsmore** 3:7
**duration** 22:9
**Durham** 1:13

———— E ————
**E** 2:1,1 5:1,10 42:1
**earlier** 12:3,5,12
**early** 10:7 24:5
**East** 40:12
**effort** 41:15
**Ehgartner** 3:7
**Ekramer@lav...** 3:12
**ELISE** 1:2

**Elizabeth** 1:3 3:10 38:20
**Ellen** 1:2 40:16
**email** 34:6,12,18
**emergency** 6:4
**employed** 10:20
**employee** 21:21
**ended** 16:5 21:1 31:20 36:17
**Energy** 1:6 2:17 11:12 20:17 21:6 38:6 39:19 40:3
**engaged** 11:24 40:12
**ensure** 17:3
**enter** 12:12
**entered** 14:8 16:9 19:3 30:19
**Entire** 28:19
**entities** 20:4
**entity** 10:13 11:14 18:9 38:6
**especially** 8:10
**ESQUIRE** 2:3,9 2:14 3:3,10,15 4:3
**et** 1:6
**ETP** 28:19,21 29:1,2
**evaluation** 31:2 31:10
**everybody** 26:24 40:19 41:13
**everyone's** 41:15
**evidence** 42:4
**EXAMINATI...** 5:6,7,8 7:18 38:24 39:15
**examined** 7:16
**example** 18:14
**excused** 41:21
**execute** 22:4

**executed** 32:5
**execution** 24:4 35:24
**exhibit** 5:16
**existence** 10:8
**expect** 28:16
**expectations** 26:3
**expenses** 33:6
**expiration** 32:4
**expired** 36:7
**Expires** 42:13
**explain** 20:8
**explained** 20:10
**extend** 8:14
**extent** 19:10 23:23

———— F ————
**F** 42:1
**Facebook** 16:18 23:19 25:9 35:10
**facilitate** 21:13
**fact** 25:13 35:15
**fair** 17:19 23:15 36:22
**familiar** 38:3,9
**family** 13:3
**feedback** 23:12 31:2,11
**fifth** 29:16
**filing** 7:9
**fine** 6:14,15 7:1 8:22 27:5 41:2
**finish** 8:12,23 9:11
**finished** 37:10 38:15
**first** 11:17 14:2 14:7 15:6,16 26:21
**five** 32:20
**five-minute** 27:7
**Floor** 3:4 4:4
**focused** 19:21

**focusing** 14:20
**following** 31:17
**follows** 7:16
**Ford** 5:13
**foregoing** 42:5
  42:16
**Fork** 9:20,23
  10:8,11 14:12
  14:18,19 17:7
  17:9,18 18:9
  19:8,24 22:1
  23:3,15 27:17
  27:22 28:4
  29:14 30:14,22
  32:11,20 33:5
  36:18 39:4
  40:11
**form** 7:11 10:11
  17:21 32:2
**format** 8:10,11
**forth** 31:17
**four** 30:23
**fourth** 29:16
**frame** 36:1
**full** 17:3 40:22
  41:1,3,5,6
**fully** 42:4
**furtherance**
  18:24 22:2
  34:16
**future** 6:9 34:2

    **G**
**general** 3:3 23:1
  23:1 26:10,20
**Gerber** 3:15
  6:12 7:6 38:16
  38:16 41:6
**Gerhard** 40:16
**GERHART** 1:2
  1:2
**give** 8:2 37:6
  41:11
**given** 9:14 42:7
**giving** 23:12
**GLUNT** 1:3

**go** 8:3 22:22
  37:7
**goal** 17:3,5
  19:18 24:15
**goals** 24:8,9 36:3
**going** 7:23 8:5
  8:13 9:1 10:13
  13:18 26:12
  37:7,7
**guess** 14:16
**guidelines** 8:4

    **H**
**H** 5:10
**half** 29:17,18
  33:6
**happen** 20:24
  34:2
**happened** 12:9
  32:9
**happening** 17:4
  24:17
**happy** 26:3
**Harrisburg** 2:15
  3:5,11
**head** 8:17 18:6
**headquarters**
  22:7
**heard** 35:14
  40:16
**held** 1:13 27:9
  37:13
**helpful** 14:16
  26:23
**helping** 14:20,23
**hire** 17:12
**hired** 17:6,7
  18:5 19:24
**holders** 32:8,8
**hopefully** 8:6
  9:1
**HULL** 2:14 5:8
  6:14 7:4 39:13
  39:17 40:18
  41:3

    **I**
**IM** 25:3
**important** 8:11
  8:15
**include** 15:2
**included** 22:17
**independent**
  12:9 19:9,13
  21:22 23:3
  30:11 31:3,16
  32:6
**individuals**
  21:19
**information**
  35:4
**infrastructure**
  11:6
**initial** 35:23
**instructions** 9:3
  23:12
**interest** 20:8
  41:9
**introductory**
  11:3
**inundate** 35:4
**investigation**
  33:14
**invoice** 28:2,3
  28:16,22 33:21
**invoices** 29:5,8
  34:20 39:4
**involvement**
  20:9,17
**Iowa** 13:5 29:21
**item** 28:6,18
  29:5 33:5
**items** 31:18

    **J**
**Jdavis@attro...**
  3:6
**Jessica** 3:3
  38:18
**Jim** 15:16,18
**Johnson** 3:18
  4:11 10:3,4,16

  10:22 12:6,7,9
  13:20 14:7
  17:7,8,15 18:4
  19:4,11,16,23
  21:14 22:3,21
  23:2,17 24:20
  25:21 29:8
  30:5 34:8,9,12
  34:23 36:12
  37:4
**Johnson's** 19:7
  28:3 31:8,12
**July** 10:12

    **K**
**KANDICE** 2:14
**KAPLAN** 1:22
**keep** 7:24
**Khull@mcnee...**
  2:16
**kind** 15:3 23:15
  30:24
**know** 8:3,7 10:3
  10:15 11:17
  13:1,1 14:16
  16:7,8 19:10
  19:15 20:21
  22:5,14 23:8
  23:11,13 25:4
  25:6,13 27:1
  28:7,10,17,21
  32:21 35:12,12
  35:13 38:13,13
**knowledge** 6:20
  21:5 40:2,5
**known** 19:23
**Kramer** 3:10 5:7
  6:11 7:5 38:20
  38:20 39:2,11
  41:1
**Kurt** 1:13 4:7
  5:3 6:21 7:15
  18:8 38:1 41:8
  41:20

    **L**

**L** 1:14 42:11
**L.P** 1:6 2:18,18
  2:18
**lack** 36:23
**late** 37:2
**LAVERY** 3:9
**LAW** 3:9
**lawsuit** 9:17,21
  40:15
**leaker** 29:21
**LEAMAN** 1:22
**learning** 40:15
**LENGERT** 2:8
**Let's** 27:6
**letters** 39:8,9
**limit** 15:6
**limited** 13:2
**limiting** 13:7
**line** 30:15
**little** 30:24
**LLC** 2:3,8 3:13
  10:2
**LLP** 3:15
**Logistics** 2:18
  21:11
**long** 9:1 12:11
  16:1
**look** 16:23 27:7
**looked** 39:3
**looking** 22:17
  25:15
**lot** 41:14
**LOTORTO** 1:3
**Louisiana** 13:4
  22:19 33:6,8,9

    **M**
**manage** 36:21
**manager** 11:21
**managing** 23:19
  23:20
**March** 12:4
  13:16,19
**Mariner** 22:17
  40:12
**Market** 3:10 4:4

| | | | | |
|---|---|---|---|---|
| **marketing** 14:21 | **messages** 16:13 19:20 | 18:4,16 19:4,7 19:10,16,23 | **ongoing** 25:20 31:1,10 | **party** 9:20 |
| **MARKOS** 2:3 5:6 6:10 7:2,20 17:22 27:1,6 27:15 32:3 37:6,19 38:12 40:24 41:12 | **messaging** 18:20 18:21,24 | 21:14 22:3,21 23:2,16,18 24:10,14,20 25:10,11,21 28:3 29:8 30:5 31:7,12 33:13 | **opportunities** 11:4,5 14:11 14:13 | **payment** 29:9 34:19 |
| | **met** 10:4,16,22 10:24 11:21 12:3,5,7,11 13:20,24 14:7 15:6,7,12 21:16 | | **opportunity** 35:6 36:23 | **payments** 29:18 |
| | | | **opposed** 28:11 | **PDF** 41:2 |
| | | | **opposition** 16:24 | **Penn** 2:9 |
| **Markos'** 6:17 | | | | **Pennsylvania** 1:1,15 2:4,10 2:15 3:11,16 13:3,8 25:16 |
| **mask** 30:2 | | 33:24 34:8,9 34:11,13,23 36:11 37:3 | **Order/Assign...** 32:12 | |
| **matter** 26:8 36:23 42:6 | | | | |
| **MCANDREW** 3:15 | **Metazin** 25:3 | **Nick's** 26:1 | **orders** 32:15 40:21 | **people** 15:10 17:12 27:7 |
| | **MIDDLE** 1:1 | **nine** 31:18 | | **perfectly** 8:8,22 |
| **McNEES** 2:14 | **middleman** 23:16 | **nod** 8:17 | **organizations** 14:20 | **perform** 22:1 |
| **mean** 14:23 16:15,23 23:14 28:21 35:3 | **mini** 40:23,24 41:4,5,6,11 | **nodding** 18:6 | | **performance** 26:2 |
| | | **non-party** 8:1 | **outside** 13:7,8 | |
| | | **North** 1:13 22:6 | | **performed** 31:2 |
| **meaning** 12:5 17:7 | **minute** 37:6 | **Notary** 1:15 42:12 | **P** | **performing** 17:19 |
| | **Momentive** 32:21,22 33:1 | | **P** 2:1,1 3:15 | **period** 35:24 |
| **means** 23:5 42:18 | | **noted** 42:4 | **PA** 1:23 3:3,5 4:5 25:9 38:3 | **perjorative** 23:14 |
| | **monitoring** 16:12,16,17 18:13,15 19:19 33:16 | **notes** 42:5 | | |
| **meant** 29:1 | | **notice** 1:13 41:14 | **page** 5:2,12 25:1 26:22 29:14 32:18 | **person** 12:23 18:4 |
| **media** 14:13,21 14:21 16:12,16 18:13,15 19:19 19:20 20:20,22 20:24 21:2 24:1,18,19,20 33:16 | | **Nous** 38:1 | | **pertain** 11:5,8 11:11 |
| | **month** 28:19 | **November** 12:15 12:23 13:16,19 14:3 16:2 30:15 36:1 42:13 | **pages** 24:20 25:12 | **Philadelphia** 1:23 2:4 4:5 |
| | **month-to-mon...** 16:3 32:6,8 | | **paid** 28:8 33:12 33:20 | |
| | **mute** 37:7 | | **PAL** 38:6 | **Philly** 38:10 |
| | **N** | **number** 5:12 9:9 27:4,21 29:4 30:23 | **pandemic** 6:4 | **phonetic** 25:3 38:1 |
| **meet** 12:2 13:21 13:23 21:5 | **N** 2:1 5:1 42:1 | | **paragraph** 30:23 31:14 | **physical** 6:6 |
| **meeting** 11:3 14:2,6 15:11 21:13 37:21 | **name** 15:14,16 15:17 25:2 37:22 38:7 | | **part** 9:17 35:23 | **picture** 17:3 24:16 |
| | | **NURICK** 2:14 | **particular** 16:18 16:19 21:19 28:11 | **piece** 35:2 |
| | **named** 35:11 38:1 | **O** | | **Pike** 3:16 |
| **meetings** 12:8 14:3 36:2 | **narrow** 13:9 | **O** 42:1 | **Partners** 1:6 2:18 9:20,24 10:8,11 11:12 14:12,18,19 17:7,9,18 19:8 19:24 20:18 21:6 22:1 23:3 23:15 36:18 39:20 40:4,11 | **Pine** 2:15 |
| | **national** 6:3 | **Object** 17:21 32:2 | | **pipeline** 2:18 11:6 15:24 16:13,21,24 19:22,22 20:5 20:9 21:9 22:12,17,19 24:17 28:11,14 38:4 39:10,23 40:9,13 |
| **member** 9:23 10:2 | **natural** 8:17 | **objection** 6:7,8 | | |
| **memory** 8:7 | **need** 8:21 9:2 11:23 40:20 | **objections** 7:11 | | |
| **mention** 14:14 | | **OFFICE** 3:3 | | |
| **Merriweather** 1:13 4:7 5:3 6:21 7:15,21 9:15 18:8 39:18 41:20 | **never** 39:19 | **Okay** 26:14 28:2 34:17 37:11 | | |
| | **New** 32:22 | **on-site** 22:3 | | |
| | **Nick** 3:18 4:11 10:3,4,16,22 12:5,7,9 13:20 14:7 17:6,7,15 | **Once** 24:3 | | |
| **message** 15:3 | | **ones** 24:23 | | |

**pipelines** 13:9 25:16
**placing** 23:19
**plaintiff** 9:9,18
**Plaintiffs** 1:4 2:6 2:12
**please** 40:24 41:5,7
**point** 11:2 12:21 14:11 15:5 17:6 20:15 28:23
**portrayed** 20:21
**posted** 35:10
**Pottstown** 3:16
**pre** 33:24
**presence** 6:6
**present** 1:15 4:10 36:2
**pretty** 37:9
**previous** 18:3
**previously** 10:20
**primarily** 34:20
**primary** 36:18
**prior** 20:21 35:14 40:15
**probably** 26:23
**proceedings** 42:3
**produced** 35:10
**producing** 23:10
**production** 5:19 34:23 35:2
**Professional** 1:14,22 42:12
**Progress** 25:9
**prohibited** 1:17
**project** 11:21 19:17,19 23:24 24:3,5,15,21 28:14 37:4
**property** 25:4
**provide** 31:1
**provided** 26:13 27:19
**public** 1:15 15:3

21:3 42:12
**purpose** 16:10 16:19
**pursuant** 1:13 29:11 33:9,11 33:20 35:21 37:4
**pursue** 36:20
**put** 27:2,3,16,20 41:13

**Q**

**question** 8:12,23 17:23 26:21 35:5,16 38:22 39:12
**questions** 7:12 8:5 9:5,7,11,12 37:9,20 38:14 38:17,19 39:13
**quickly** 41:13

**R**

**R** 2:1 4:3 42:1
**RAIDERS** 2:8,9 6:16
**reach** 14:24
**read** 35:6
**reading** 7:9
**reality** 13:12,15
**reason** 16:5 31:22 36:16
**reasons** 31:17
**recall** 8:8 14:10 17:3 22:13 24:24 29:19,21 32:23 33:13 34:3
**record** 6:3 8:16 8:19 27:10,13 37:14,17 40:21
**red** 30:8
**redacted** 27:4 27:21
**reference** 35:9
**referring** 10:17

20:23
**refers** 29:22
**Registered** 1:22 42:12
**related** 11:8,11 12:19,20 13:12 16:13,20 17:8 28:16 33:8 34:19 40:12
**relating** 16:24
**relation** 34:21
**relations** 15:3
**relationship** 19:7,11 20:19
**relay** 25:23
**relevant** 13:14
**remember** 14:14 15:10,11,14,17 21:16 25:2 29:20 33:24
**remote** 1:12
**repeat** 18:1
**rephrase** 17:24
**report** 22:21 25:6
**reporter** 1:14 6:1,4,18,23 40:20 42:12,19
**Reporters** 1:22
**reports** 21:2
**represent** 6:19 9:8 21:20
**represented** 17:4
**representing** 2:6 2:12,17 3:7,13 3:18 4:7 12:23 21:6
**reproduction** 1:16 42:17
**REQUESTS** 5:19
**reserved** 7:12
**responsible** 20:4 20:11 23:19
**result** 36:21

**resumed** 27:12 37:16
**ReverbNation** 10:21,23
**Review** 38:4
**reviewed** 37:3
**Rice** 11:22 12:1 12:2,3,8,11,17 12:19 15:6 21:18,20 25:20 31:6,11 32:1 34:6
**Rich@raiders...** 2:11
**RICHARD** 2:9
**Rigby** 35:11
**right** 10:20 17:10 18:5 27:21,24 28:4 31:9
**Robert** 11:22 12:1,2,3,8,11 12:17,18 15:6 21:18,20 25:20 26:3 31:6,11 31:24 34:5 35:11
**Robesonia** 2:10
**Rock** 25:1
**role** 36:19
**Roughly** 12:14
**running** 36:18

**S**

**s** 2:1,17 5:10
**satisfied** 31:7
**saw** 20:23
**saying** 15:21
**says** 28:19 31:14 32:11
**scope** 22:11
**screen** 26:13 27:17,22,24
**sealing** 7:9
**Sean** 15:11 21:18 35:18,23

36:2
**second** 14:6 29:16 30:14,23 33:5
**security** 16:22 20:11,13 27:4 27:21 32:24
**see** 26:15,17,19 27:23,24 30:7 30:14 31:4 32:13
**seeking** 16:11 18:10
**send** 26:23
**sense** 9:3,6 13:2 13:22 20:18
**sentence** 28:19
**September** 1:10 1:14 42:6
**services** 31:2
**set** 31:17
**share** 26:12 27:16
**Sheet** 32:12
**SIANA** 3:15
**signing** 7:9
**similar** 17:12 19:11
**similar-appea...** 29:4
**Singlar** 1:14 42:11
**single** 10:2
**site** 22:5,6 35:10
**size** 40:22 41:1,3 41:5,6
**slash** 28:20 31:3 31:16
**smaller** 26:18
**social** 14:13,21 16:12,16 18:13 18:15 19:19,20 24:1,18,19,20 27:3,21 33:16
**somebody** 37:22
**sorry** 18:1 34:10

| | | | | |
|---|---|---|---|---|
| **sort** 15:2 21:24 23:9 26:19 **south** 1:23 2:4 13:3,4 19:22 22:11 **specific** 24:20 26:5 31:19 32:7,24 35:1 40:8 **specifically** 16:23 20:1 22:15 25:2,15 28:10 **specifics** 26:11 **spring** 12:14 21:4 **Springs** 3:16 **Square** 3:4 4:4 **stamp** 27:17 **stamped** 39:4 **stamps** 27:3,21 **stand** 39:8 **Standing** 25:1 **start** 24:3 **started** 12:15 14:12 **startup** 13:15 **STATES** 1:1 **stenographic** 27:13 37:17 42:5 **stipulate** 6:2 **stipulation** 6:17 **stipulations** 6:24 **strategy** 24:2,6 **Strawberry** 3:4 **Street** 1:23 2:4 2:15 3:10 4:4 **subject** 26:8 **submitted** 28:22 29:9 32:16 **subrogations** 39:6 **subsequent** 14:3 **subsequently** | 13:21,23 **Suite** 1:23 2:4 3:16 **Sunoco** 2:18,18 11:14 21:9,11 39:23 **supervision** 21:24 42:19 **sure** 7:22,23 24:16 **Susan** 1:14 42:11 **swear** 6:1,5 **Sweeney** 15:11 21:18 35:18 **sworn** 5:4 7:16 ___ **T** ___ **T** 5:10 42:1,1 **take** 8:21,24 27:6 41:3 **taken** 1:13 42:5 **talk** 15:20 **talked** 11:3 35:18 **talking** 13:14,16 30:20 34:14,14 36:3 40:7 **TARDOWSKI** 4:3 6:13,22 7:1 17:21 27:5 32:2 40:19 41:8 **task** 32:8,8,12 32:15 **team** 22:4 **tell** 12:16 13:20 14:17 19:17 **term** 10:1 25:19 31:15 **terminate** 31:15 **termination** 31:22 32:1 **terms** 23:1 **test** 8:7 **testified** 7:16 | **testimony** 27:12 37:16 42:7 **thank** 7:21 35:17 38:15 39:11 41:12 **thereof** 34:16 **thing** 13:13 33:13 **things** 7:23 12:20 13:6,8 20:20,21,24 24:2 26:11 **think** 8:24 10:7 10:18 12:4 15:15 18:18 28:23 33:3 35:11 36:6 37:9 39:4 **thinking** 14:12 **third** 29:16 **thought** 34:1 **three** 36:2 **Thursday** 1:10 1:13 42:6 **tied** 15:23 **TigerSwan** 3:13 11:9,20,22,23 11:24 12:13,15 12:21,23 14:8 15:8,21 16:11 16:21 17:9,16 17:20 18:9 19:12,14,24 20:7,8,16 21:14,17,21 22:1,4,16,22 23:9,16 25:14 25:17 29:3,12 30:20 32:16 33:1,4,9,22 34:15,18,21,23 36:9 38:21 40:3 **TigerSwan's** 22:7 24:7 **time** 6:8 7:12 | 10:9,24 15:14 17:6 20:15 29:1 30:10 36:1,9,12,17 37:2 40:11 **times** 12:16 **today** 6:21 7:22 8:1,9 10:13 13:14 34:15 37:2 **told** 11:23 19:18 25:11 31:12 **top** 32:13 **transcript** 1:16 5:16 8:17 41:9 42:7,16 **Transfer** 1:6 2:17 11:12 20:18 21:6 39:20 40:3 **trial** 7:13 **trip** 33:6 **Trooper** 3:7,7 **try** 17:24 **trying** 18:2 35:3 35:16 **Twitter** 16:17 **two** 12:8,16 19:5 21:19 25:4 36:1 **type** 26:6 ___ **U** ___ **Uh-huh** 26:16 29:15 30:16 **umbrella** 11:15 **understand** 17:23 39:9 **understanding** 16:10 20:3 22:10,16 28:24 31:19 33:7 39:7 **understood** 24:7 **UNITED** 1:1 **unrelated** 33:1,3 | **use** 19:20 **Usual** 6:23 ___ **V** ___ **venture** 13:12 **ventures** 12:19 **verbalize** 8:18 **video** 1:12 34:24 35:9,13,13 **virtual** 1:12 13:12,15 **vis-a-vis** 19:8 **visit** 25:12 **VS-** 1:5 ___ **W** ___ **W9** 30:4 **waived** 7:10 **WALLACE** 2:14 **want** 13:17 15:20 21:3 41:12 **wasn't** 20:19 33:15 **way** 13:9 23:8 32:5 **we'll** 8:23 **we're** 9:1 13:14 30:20 34:14 40:7 **we've** 15:20 **website** 38:3,7,9 **weeks** 19:5 **West** 2:9 **wider** 14:24 **WILLIAMS** 2:3 **wishes** 24:7,9 **witness** 5:2,4 6:2 6:20 8:2 37:11 41:11 42:8 **WOLFE** 1:22 **work** 10:5,6 13:7 14:11 15:23 16:11 17:8,13,16,19 |

18:5,9,11 22:1
22:4,16,23
23:6,9,21
25:15,21 26:4
28:8 29:11
31:8,12 32:5
32:24 33:4,8
33:10,15 34:1
34:15,18 35:21
36:8,11,14,23
40:12
**working** 10:22
  10:23 11:1
  12:19 19:11
  20:7 22:11
  24:21 28:15
**wouldn't** 28:7
  28:10
**written** 8:16

**X**
**X** 5:1,10

**Y**
**Yeah** 18:2 35:3
**York** 32:22

**Z**
**ZARWIN** 4:3
**Zoom** 1:12 6:21

**0**
**001** 27:17

**1**
**1** 2:4 32:11
**1-29** 5:13
**10:05** 1:14
**100** 2:15
**11** 33:5
**11:06** 41:20
**1303** 1:23
**1510** 2:4
**15th** 3:4
**16th** 4:4
**17** 16:6 36:7
  39:5

**17-1726-YK** 1:4
**17101** 2:15
**17108** 3:11
**17120** 3:5
**18** 30:14
**19102** 1:23
**19103-3638** 4:5
**19107** 2:4
**19425** 3:16
**19551** 2:10

**2**
**2** 1:10,14 22:17
  27:22 39:5
  40:12 42:6
**20** 30:22 42:13
**200** 3:16
**2005** 4:4
**2016** 10:7,7,12
  12:3,4,12,14
  12:15,23 13:19
  14:3 16:2 21:7
  30:15 37:2
**2017** 15:7 16:2
  21:4,7 28:19
**2021** 1:10,14
  42:6
**2022** 42:13
**210** 2:9
**215** 1:24 2:5
**225** 3:10
**230** 1:23
**233-6633** 3:11
**237-5452** 2:16
**267** 4:5
**27** 5:13
**29** 27:18

**3**
**3** 29:14
**321-5500** 3:17
**39** 5:7,8

**4**
**4** 30:15
**484** 2:10

**5**
**5** 5:4 39:5
**557-0099** 2:5

**6**
**610** 3:17
**638-6538** 2:10

**7**
**7** 5:6 39:5
**717** 2:16 3:5,11
**765-9621** 4:5
**783-6270** 3:5

**8**

**9**
**922-7112** 1:24
**941** 3:16