

Samuel Abloeser‡
David M. Cedar‡†*
Beth G. Cole‡
Shauna Friedman‡†ª
Ari Goldberger‡†
Kevin Haverty‡†*
Christopher Markos‡†
Alan H. Sklarsky†
Gerald J. Williams‡†ª

‡Member, Pennsylvania Bar
†Member, New Jersey Bar
ªMember, New York Bar

May 17, 2022

Hon. Yvette Kane
United States District Court Judge
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101
**Via ECF**

    Re: *Gerhart, et. al v. Energy Transfer Partners, et al.* (17-1726)

Your Honor,

I represent Plaintiffs in the above-captioned matter. I write this letter to reply to the responses of TigerSwan and Nick Johnson (ECF 136, 137) to my letter originally submitted on April 25 and filed on May 4 (ECF No. 134).

I. Issues Resolved Since the April 25th Letter

There is no longer a dispute about the documents requested from Robert Rice via subpoena. In his deposition, he testified that he had no responsive documents. (Ex. 39, Rice Dep. 18:11-17).

There is no longer a dispute about the Requests for Admission served on TigerSwan, which served responses and objection on May 11.

As such, TigerSwan has argued, and Plaintiff agrees that the foregoing issues are now moot. The issues that remain in dispute are the discoverability of agreement between defendants Johnson and TigerSwan, and TigerSwan's duty to respond to Plaintiffs' Third Requests for Production of Documents Directed to TigerSwan.



*Certified by the Supreme Court of New Jersey as a Civil Trial Attorney

○ One South Broad Street, Suite 1510
Philadelphia, PA 19107
215.557.0099

www.williamscedar.com

○ 8 Kings Highway West, Suite B
Haddonfield, NJ 08033
856.470.9777



May 17, 2022
Page **2** of **5**

II.    The NDA

Johnson's and TigerSwan's opposition to describing and producing the full agreement which contains the NDA have no merit, and make no sense. Plaintiffs' April 25 letter sets out in great detail the relevancy and need for this document, and other than pointing to self-serving testimony, dismissing the testimony of Nik McKinnon, and asserting (without evidence or proof) that the agreement did not relate to the Mariner East 2 Pipeline, defendants' responses are completely silent on the myriad evidence that refutes their assertions.

Both defendants beg the question that the document seeks information about "unrelated" pipelines. It's clear, however, that the information that is sought has nothing to do with whatever activity Johnson and TigerSwan engaged in regarding the Dakota Access Pipeline. Their opposition is based on their assertion that the agreement did not pertain to the Mariner East 2 pipeline, and in so doing both defendants attempt to inappropriately wield the Court's March 4 Order (ECF 131) as both a sword and shield. More importantly, what defendants' opposition obscures is, as set forth more fully in the April 25th letter, that they remained engaged with each other after all DAPL camps were cleared out and after TigerSwan withdrew completely from North Dakota. Neither defendants' arguments even attempt to engage with the damning timeline set forth in Plaintiffs' April 25th letter, or with what Johnson has admitted are payments for his social media posts about the Gerharts which correspond to invoices he submitted to Cedar Forks Partners in connection with a contract with TigerSwan (and while the invoices and apparent contract reference DAPL, as set forth more fully in the April 25th letter, it is not believable that DAPL was the actual subject of any work during those summer 2017 months, and that is further belied by the admission that the Gerharts were the subject of Johnson's work for Cedar Forks Partners *for TigerSwan* at that time). Neither has asserted that the agreement could not have been in place during the time Johnson was posting to PA Progress. Johnson himself cited the agreement to avoid answering the question whether the social media project he worked on with Robert Rice "includes things that have nothing to do with the Gerharts as well," (ECF 134 Ex. 27, 9:16), indicating that his work targeting the Gerharts overlapped with the period of time covered by the agreement that neither defendant will agree to produced.

TigerSwan relies on various testimonial denials to distance itself from PA Progress, but those denials are not sufficient to foreclose the issue in light of the evidence more fully set forth in the April 25th letter. Similarly, TigerSwan continues to deny that it sent at least one trespasser onto the Gerhart property, as alleged in the Complaint, despite documents it produced in discovery and testimony from Nik McKinnon and ETP Security Manager Frank Recknagel. As such, TigerSwan cannot rely solely on these testimonial denials when they are contradicted by other testimonial and documentary evidence.

TigerSwan's attempt to rehabilitate Johnson's clear dishonesty, and its dismissal of Nik McKinnon's testimony as "unqualified," is both confusing and incoherent. It is evident from the transcript of that deposition that neither TigerSwan nor Johnson took any effort to challenge McKinnon's assertions. McKinnon's testimony was based on his own personal information, in his position as Senior Security Advison. (McKinnon Dep, 17:17-18:16; 23:20-24:5) TigerSwan's assertion that Johnson's categorical and unequivocal denial that he worked for

May 17, 2022
Page **3** of **5**

TigerSwan at all in 2016 or 2017 is an honest characterization is simply obfuscating wordplay, because he was clearly doing work *for* TigerSwan, utilizing at least TigerSwan's office and email server (if not more) to perform such work, and Johnson himself does not argue that his testimony is truthful because was "technically" not employed or contracted directly by TigerSwan.

Defendants' position that the document at issue does not pertain to the Mariner East 2 pipeline is beside the point. As set forth in Plaintiffs' April 25 letter, the assertion directly conflicts with myriad evidence. The document itself is the best evidence of the extent, details, and duration of the relationship between TigerSwan and Johnson. Even TigerSwan's argument that the agreement is not "determinative" of an employment or agency relationship implicitly acknowledges that it is *relevant* to that issue.

III.   Requests for Production of Documents Directed to TigerSwan

There are eight (8) requests set forth in Plaintiff's Third Request for Production of Documents directed to TigerSwan. (ECF 134 Ex. 18). In TigerSwan's May 10 letter, it states that it cannot locate any documents responsive to Request Nos. 1, 4, and 5. As such, there is no longer any dispute regarding these three particular requests that requires the Court's intervention.

TigerSwan's response treats differently request 2 from requests 3, 6, 7, and 8.

Request No. 2 seeks emails from four email addresses (one of which, the alias "Nate Netizen" is apparently not a TigerSwan email address and therefore no longer at issue), and contains a limited set of search terms. (ECF 134 Ex. 18). TigerSwan argues that performing this search "would be overly burdenson and onerous." In support of this contention, TigerSwan is as completely silent as it was in its correspondence preceding the April 25th letter from Plaintiffs. As set forth more fully in Plaintiff's April 25th letter (ECF 134), any discovery obligation is by nature burdensome to some degree, but Rule 26 requires the objecting party to articulate the burden imposed in relation to the balancing factors set out in the rule, and TigerSwan's response further fails altogether to respond to the cases cited in Plaintiff's April 25th letter.

The request includes specific, limited search terms in an effort to avoid the issues that delayed the original production in the first place. To the extent that any documents produced by the requested search would be "duplicative," it cannot be seriously argued that comprises any burden.[1] By counsel's count, the documents already produced by TigerSwan contain three emails to or from r2@tigerswan.com; and the same number to or from

---

[1] Although TigerSwan's May 10 letter states that in responding to the First Request for Production of Documents, it was able to "notably reduce" the original 900 emails that its search uncovered "after reviewing for relevancy and duplicates," nevertheless out of the 2012 pages of its document production, well over a quarter of the documents are either duplicates or substantially similar versions of a proposal for services for and contract provided to Union Pipeline, an entity with no ostensible relevancy to this case.

n.johnson@tigerswan.com; and five emails to "Robert Rice."[2]  This limited number of documents precisely demonstrates the necessity of the new request, particularly in light of the fact that both Rice and Johnson admit utilizing these email addresses, working in TigerSwan's Apex, NC headquarters (on TigerSwan devices, according to Rice (Ex. 39, Rice Dep. at 17:22), and the fact that Johnson submitted monthly invoices starting at the end of 2016 and continuing to August 2017 for his TigerSwan work (ECF 134 Ex. 31).

Because TigerSwan has completely failed to articulate any coherent objection to Request Number 2, and because it is on its face both limited and relevant, it should be ordered to produce any and all responsive documents.

TigerSwan's "objection," such as it is, to Requests 3, 6, 7, and 8 is that these "could have" been made earlier.  This argument begs the question that these requests "must have" been made earlier, which argument is devoid of merit.  Rule 26(d) explicitly leaves to a party's discretion how to sequence discovery.  It is not uncommon to serve more narrowly tailored discovery requests as a case progresses.  Here, no such tailoring could have been accomplished prior to TigerSwan's service of Responses and Objections to Plaintiff's First Requests on April 8.  In an April 13 email, after an exchange about a disagreement about the scope of an earlier requests aimed at the Johnson-TigerSwan agreement, TigerSwan acknowledged that a clarifying request may be warranted.  (Ex. 17).  That is the course Plaintiffs elected, rather than litigating the issue about the thoroughness of deficiency of TigerSwan's production.  Request Number 7 is precisely this clarification.  Requests 6 and 8 are also more narrowly tailored requests focusing on the issue of TigerSwan's role in, and to some extent ETP's knowledge of, the PA Progress Facebook page, which documents, according to Nik McKinnon's testimony (that it was created by TigerSwan), should exist and, more importantly, would be responsive to the earlier requests.

As for Request Number 3, which seeks documents which support TigerSwan's averments in its answer, such documents are at least arguably encompassed by what Rule 26(a)(1) requires to be disclosed in advance of a written discovery request.  To the extent they are not subject to Initial Disclosures, this request is warranted by the absence of any documents already produced that are responsive to this new request, and by the testimony thus far in the case.  Nick Johnson, in his sworn interrogatory responses, admitted that he contributed to blackbadgerreport.com, along with Robert Rice, then contradicted those sworn responses in his deposition testimony.  (Ex. 30, Interrogatories 3-4; Ex. 27, 19:24-20:2).  In contrast to Johnson's assertions, Rice testified that he had no recollection of any involvement in PA Progress, had no involvement in the video posted to PA Progress, and that he did nothing more than set up blackbadgerreport.com for Nick Johnson to use.  (Ex. 39, 38:3-13; 39:5-40:22; 43:14-19; 44:15-21; 61:15-24).[3]

TigerSwan has consistently denied any involvement in the internet campaign targeting the Gerharts, but those denials have become increasingly incoherent.  For example, Johnson admitted in his interrogatories to authoring content posted to blackbadgerreport.com, then contradicted that earlier sworn answer in his deposition, then Rice testified that he gave Johnson the "keys" to the website.  Blackbadgerreport.com posts overlap with PA Progress's in a few

---

[2] Rice testified that the "r2@tigerswan.com" email account was set up as a "forwarding alias to the actual [TigerSwan email account."  (Ex. 39, 20:11-16).
[3] McKinnon testified that Rice was involved with PA Progress "for sure."  (McKinnon Dep; 18:1-5).

ways: PA Progress linked to a blackbadgerreport.com article, and blackbadgerreport.com published an article attacking The Intercept, which published stories critical of TigerSwan. TigerSwan's many denials of involvement in PA Progress are increasingly incoherent in light of Nik McKinnon's testimony that TigerSwan was involved in its creation and execution, and the fact that Nick Johnson was working out of TigerSwan's office on social media campaigns at the same time that PA Progress was active, and could articulate no personal interest in the Gerharts, Camp White Pine, or the Mariner East 2 pipeline to call into question whether he was utilizing PA Progress on TigerSwan's behalf, since PA Progress clearly served TigerSwan (and ETP's) ends.  TigerSwan has denied other allegations, which denials are not credible.  Not only did TigerSwan produce the documents that are Exhibit 37 to Plaintiffs' April 25th letter (ECF 134) from its own server, consistent with Nik McKinnon's testimony that TigerSwan used infiltrators to enter the Gerhart's property, but even ETP's Security Manager, Frank Recknagel, who testified on Friday May 13, acknowledged that TigerSwan utilized operatives to gain intelligence about the Gerharts and Camp White Pine, including sending at least one onto the property.  What Request Number 3 seeks is any documentary evidence that TigerSwan purports support its increasingly incredible denials about its role in the internet campaign that harmed Ellen and Elise, because as is evident from its May 10 letter, it is heretofore relying solely on testimonial denials that it had no role in the campaign.

  IV.  Conclusion

  For the foregoing reasons, Johnson should be ordered to describe the document containing the non-disclosure agreement, and TigerSwan should be ordered to produce that document and respond to the Third Request for Production of Documents Nos. 2, 3, 6, 7, and 8.

           Very respectfully,

           */s/ Christopher Markos*

           CHRISTOPHER MARKOS
           Attorney for Plaintiffs


cc: All counsel (via ECF)